# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BRIAN HUDDLESTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION No. 4:20CV447 |
| v. | § | |
| | § | |
| FEDERAL BUREAU OF | § | |
| INVESTIGATION and UNITED | § | JUDGE AMOS MAZZANT |
| STATES DEPARTMENT OF JUSTICE, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' SECOND DECLARATION OF MICHAEL G. SEIDEL**

I, Michael G. Seidel, declare as follows:

(1) I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD"), Federal Bureau of Investigation ("FBI"), in Winchester, Virginia. My previous declaration submitted in this case contains my biographical information and is not repeated here. This declaration is filed in further support of Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Stay.

(2) Plaintiff's Opposition purports to show that the FBI has acted in bad faith in handling its FOIA obligations by, *inter alia*, comparing the FBI's previous affidavits filed in other FOIA matters with the current status of this case. Specifically, Plaintiff refers to the Declaration of David M. Hardy [Dkt 11, Exh 5], originally filed in *Clevenger v. U.S. Department of Justice, et al.*, Case No. 1:18-cv-1568 (E.D.N.Y.), and

1

subsequently filed in *Folkenflik and Edward Butowsky v. Michael Gottlieb, et al*, Case No. 4:19-cv-00180-ALM-KPJ (E.D.Tex.), in which the FBI conducted certain searches, within certain time periods, and located no responsive records to a specific FOIA request. The Hardy declaration is the best reflection of its own contents; it was examined by the E.D.N.Y. Court and was found to be adequate to support a finding of summary judgment for the Government in that action. [Case 1:18-cv-01568-LB, Dkt. 58]. This declaration will provide information regarding the timeline of this case as well as an explanation of the different search result - the location of records in response to this FOIA case.

(3) According to the Complaint, Plaintiff submitted the FOIA request for records on Seth Rich by letter dated April 9, 2020. [Dkt. 1, ¶6]. At that time, RIDS, the FBI's FOIA office, was in the midst of a temporary halt of FOIA processing operations due to the effects of the COVID-19 pandemic. RIDS resumed operations at a diminished capacity on April 29, 2020. Plaintiff then filed the Original Complaint on June 1, 2020. [Dkt. 1]. The FBI had not yet had an opportunity to send an initial response to the request.

(4) The FBI, while reviewing information relative to another FOIA request, located a clear and certain lead that indicated additional records may exist in specific FBI files. Accordingly, FBI-RIDS conducted a "text search" of those files using the terms "Seth Rich" "Seth", and "Rich". These searches located the current set of potentially responsive material. This potentially responsive material is contained in only a few

"serials"[1] that make brief references to Seth Rich but is voluminous due to the nature of the material (including an image of Seth Rich's personal laptop). Therefore, the FBI must review thousands of pages of material to determine responsiveness and, as to the responsive material, to make release determinations in accordance with applicable FOIA exemptions.

(5) In addition, since December 8, 2020, the FBI is again operating at a reduced capacity due to the effects of the COVID-19 pandemic. Furthermore, the FBI is balancing an unprecedented workload.

## UNPREDICTABLE GROWTH IN THE NUMBER OF REQUESTS SUBMITTED TO THE FBI

(6) The FBI is currently inundated with an extraordinary number of FOIPA requests. In recent years, the FBI has experienced a spike in requests submitted to the agency. In Fiscal Year ("FY") 2019, the FBI received 31,344 FOIPA requests (a 78% increase over intake from five years ago), when in FY 2014, intake was 17,653 requests. In FY 2019, the FBI resolved 31,962 FOIPA requests and reviewed over one million pages of records in response to FOIPA requests.

## INCREASE IN COMPLEXITY OF REQUESTS

(7)   Further, in recent years, requests have grown significantly more complex. Many of the requests which the FBI receives today are no longer simple, relatively

---

[1] A "serial" is a document entry in a file. Within each case file, pertinent documents of interest are "serialized," or assigned a document number in the order which the document is added to the file, typically in chronological order. A serial can be one page or thousands of pages.

straightforward, first-party requests from individuals seeking investigative records about themselves, *e.g.*, a request for a single bank robbery file. Rather, many of the requests contain numerous and/or multi-faceted subjects and often require much more coordination with external and internal stakeholders to ensure the FBI makes appropriate disclosure decisions.

(8) Additionally, RIDS has found FBI records increasingly contain more other federal government agency ("OGA") information. After reviewing the United States Government's response to the terrorist attacks of September 11, 2001, the National Commission on Terrorist Attacks upon the United States ("9/11 Commission") recommended agencies within the federal government increase their ability to share and collaborate on gathered intelligence.[2] The FBI, like other members of the United States Intelligence Community, adopted this recommendation. FBI records thus increasingly contain OGA information equities, requiring the FBI seek these OGAs' redaction determinations prior to releasing their information, and increasing the administrative burden associated with processing FOIA requests.

## INCREASE IN FOIA LITIGATION DEMANDS

(9) In addition to the burdens described above, there is a constant litigation demand imposed on the FBI by those requests that become the subject of litigation. The

---

[2] *The 9/11 Commission Report: Final Report of the National Commission on Terrorist Attacks Upon the United States.* Chapter 13, "How to do it? A Different Way of Organizing the Government." U. S. Government Printing Office.

4

FBI is currently involved in approximately 378 pending FOIPA litigations, many of which have court ordered/established processing deadlines. In the last several years, the number of FOIPA litigations has unpredictably increased to all-time program highs. The below tables represent this progression between 2014 and the present.

| Fiscal Year | Number of Pending FOIA Litigations |
|---|---|
| 2014 | 160 |
| 2015 | 180 |
| 2016 | 223 |
| 2017 | 252 |
| 2018 | 292 |
| 2019 | 338 |
| 2020 | 352 |
| Current FY 2021 | 378 |



Pending FOIA Litigation Involving the FBI

(10) Further, while there may be some correlation to the overall rise in request volume, RIDS has no data which can predict which and how many FOIPA requesters will elect to seek judicial relief. As depicted in the charts above, there was a 111% increase in FOIPA litigations involving the FBI between FY 2014 and FY 2019. In FY 2019 alone, the FBI received 151 new FOIPA lawsuits directly against the FBI, or lawsuits against

5

other government agencies that involve FBI records. This one-year increase is nearly equal to the total number of FOIPA litigations involving the FBI in FY 2014 (151 new litigations compared with 160 total pending litigations). Mirroring the trend seen in the FOIPA requests recently received by the FBI, these litigations have become increasingly more complex. In terms of monthly processing output, at least 86 of the FBI's FOIPA requests in litigation currently have processing demands. Approximately 64 of these cases require monthly releases of information. This represents approximately 25% of RIDS' resources, but only accounts for one percent of requests processed by RIDS. In other words, any increase in processing demands for litigations has a tangible negative impact on the FBI's ability to equitably distribute its resources to provide records to a wider requester community.

(11) Additionally, by nature, the work allocated to a request in litigation is much more labor intensive relative to a request processed administratively as there is a trove of additional administrative tasks which attach to requests in litigation such as: tracking the FBI's application of Exemptions to properly defend this information against potential future challenges; Bates stamping; and the added review of connecting the document processing to specific written justifications in the agency declaration in support of summary judgment. In some instances, this may as much as double the amount of resources needed when compared to traditional, administrative FOIPA requests. Many of these litigations involve complex or high volumes of records and put a particular strain on the FBI's limited FOIPA-processing resources. Particularly, such a case is 19-cv-1278,

*Leopold & Buzzfeed, Inc. v. DOJ, et al.* The FOIA requests at issue in this lawsuit, seek records related to the Office of Special Counsel ("SCO") Robert Mueller's investigation into links and/or coordination between the Russian government and individuals associated with the campaign of President Trump; and any matters that arose from the investigation. This is a uniquely burdensome case consisting of potentially millions of highly sensitive pages. With respect to the SCO records specifically, RIDS designated a single, specialized team of 23 Government Information Specialists ("GIS") to handle requests for SCO and SCO-related records. Additionally, three Office of General Counsel, FOIA Litigation Unit attorneys (half of the Unit's attorney staff) are handling lawsuits involving SCO and SCO-related records. Finally, a small but varying number of subject matter experts ("SMEs") are assisting in the review of SCO and SCO-related records[3], depending on the particular records at issue.

(12) It is within this context that the FBI is responding to the instant litigation. To meet the processing schedule requested by Plaintiff, the FBI would have to shift finite resources away from processing the requests of other requesters and apply a disproportionate amount of its limited processing resources to Plaintiffs' request. The FBI is exerting its best efforts to complete the search and provide all responsive, nonexempt records to Plaintiff.

---

[3] The number of SMEs varies pending on the particular records and subjects at issue. Nevertheless, this is a necessarily limited universe of personnel, due to the knowledge and expertise required and also given their other duties and responsibilities to conduct or provide operational support on on-going FBI investigations and enforcement/intelligence-gathering activities.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 6th day of January 2021.

MICHAEL G. SEIDEL
Section Chief
Record/Information
Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia