# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

**BRIAN HUDDLESTON**,

     Plaintiff,

vs.

**FEDERAL BUREAU OF**
**INVESTIGATION and UNITED STATES**
**DEPARTMENT OF JUSTICE**

    Defendant

**Case No. 4:20-cv-447-ALM**

## MOTION FOR IN CAMERA REVIEW

NOW COMES Brian Huddleston, the Plaintiff, moving the Court to review documents produced by the Federal Bureau of Investigation ("FBI") and the U.S. Department of Justice ("Justice Department") *in camera*:

### Introduction

On April 23, 2021, the FBI produced 68 heavily-redacted pages in response to the Plaintiff's Freedom of Information Act ("FOIA") request. A true and correct copy of that production is attached as Exhibit 1. The Court will note that another 507 pages plus a computer disk were withheld in their entirety. *Id*. at PDF p. 7.  In the Plaintiff's Response in Opposition to the Motion to Stay (Doc. No. 11), the Plaintiff noted that the FBI previously made false representations to the U.S. District Court for the Eastern District of New York as well as this Court, claiming that it could not locate any records about Seth Rich. The FBI recently admitted to this Court that it has thousands of responsive pages and, as set forth below, the FBI has now

admitted that it was already in possession of at least some of those documents *at the very time that it claimed it was unable to locate any responsive documents*.

The Plaintiff respectfully requests that the Court take judicial notice of Plaintiff's Response in Opposition to Motion to Stay (Doc. No. 11), as well as the supporting exhibits, which he incorporates herein by reference. At this point, the FBI has an established history of hiding records, especially records about Seth Rich. *Id*. Furthermore, the FBI's initial production in this case shows that it is still trying to hide information from the public via excessive and improper redactions.

### **Legal Standard**

As the Court is aware from the pleadings and perhaps from news reports, *see, e.g.*, Zachary Stieber, "FBI Releases Documents on Probe Into Death of DNC Staffer Seth Rich," April 24, 2021 *The Epoch Times*, https://www.theepochtimes.com/fbi-releases-documents-on-investigation-into-death-of-democrat-national-committee-worker-seth-rich_3789686.html, a lingering public controversy centers around the unauthorized transfer of Democratic National Committee emails to Wikileaks in 2016, specifically whether the emails were hacked by Russian agents or leaked by a disgruntled DNC employee, *i.e.*, Seth Rich. The email dispute is part of the larger controversy about whether President Donald Trump's campaign improperly colluded with the Russian government during the 2016 campaign. *Id*. Last year, the U.S. District Court for the District of Columbia ordered an *in camera* review of records related to "Russian collusion," specifically to determine whether the government was improperly redacting information in response to FOIA requests. *See Elec. Privacy Info. Ctr. v. United States Dep't of Justice*, 442 F. Supp. 3d 37, 47–48 (D.D.C. 2020). After reviewing the documents in camera, the D.C. court concluded that some of the redactions were improper, and it ordered the release of unredacted

information to the FOIA plaintiffs. *Id*. The Fifth Circuit has likewise noted the importance of *in camera* review of redacted / withheld documents:

> This court has stated that, while the FOIA "leaves to the [district] court's discretion whether to order an examination of the contents of the agency records at issue, in camera," in determining whether the claimed exemptions apply, "the legislative intent for exercise of this discretion is relatively clear." *Id*. at 1144. This is because "in instances where it is determined that records do exist, the District Court must do something more to assure itself of the factual basis and bona fides of the agency's claim of exemption than rely solely upon an affidavit." *Id*. at 1145.

*Batton v. Evers*, 598 F.3d 169, 175–76 (5th Cir. 2010). While agencies are entitled to a "presumption of legitimacy" in responding to FOIA requests, that presumption does not apply where, as here, there is evidence of bad faith in handling the FOIA request. *Id*. at 176, citing *U.S. Dep't of State v. Ray*, 502 U.S. 164, 179, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991).

<u>Argument</u>

**1. <u>The FBI has a history of acting in bad faith</u>**

In the myriad of controversies that have arisen from the 2016 Presidential election, the FBI has demonstrated a strong tendency to hide information that might undermine the partisan political objectives of the FBI or otherwise embarrass high-ranking officials or the FBI itself. *See, e.g.*, "Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation," December 2019, Oversight and Review Division Report No. 20-012, Office of the Inspector General, U.S. Department of Justice, https://www.justice.gov/storage/120919-examination.pdf.[1] The FBI has concealed information from FOIA requestors, as described below, and it has also perpetrated frauds on multiple federal courts. *Id*.

---

[1] The Plaintiff requested information related to the investigation of Hillary Clinton's secret email servers, for example, and in 2017 the FBI refused to produce the information on the grounds that it was not a matter of public concern. *See* August 18, 2017 Letter from David M. Hardy to Ty Clevenger, http://lawflog.com/wpcontent/uploads/2017/08/2017.08.12-Letter-from-FBI.pdf.[1] That laughable assertion made national news, *see, e.g.*, Stephan Dinan, "FBI says lack of public interest in Hillary emails

After the FBI told the New York court that it was unable to locate any records pertaining to Seth Rich, Plaintiff's Counsel independently obtained evidence that those statements were made in bad faith. As explained in the December 30, 2020 response in opposition (Doc. No. 11), the FBI inadvertently produced emails referencing Seth Rich in response to an unrelated FOIA request from Judicial Watch, Inc. *See* https://www.judicialwatch.org/wpcontent/uploads/2020/01/JW-v-DOJ-Strzok-Page-Prod-16-00154.pdf. Shortly thereafter, the former U.S. Attorney assigned to prosecute the Seth Rich murder acknowledged in a podcast interview that the FBI had investigated matters pertaining to Seth Rich. *See* "Conspiracyland, Episode 2: 'The Russia connection," July 9, 2019 *Yahoo!News*, https://podcasts.apple.com/us/podcast/episode-2-the-russia-connection/id1471037693?i=1000444030785.  Plaintiff's Counsel later deposed that former U.S. Attorney, Deborah Sines, on March 20, 2020 in *Ed Butowsky v. David Folkenflik, et al.*, Case No. 4:18-cv-00442-ALM (E.D.Tex.), and a true and correct copy of the deposition transcript is attached as Exhibit 2. Ms. Sines reluctantly admitted under oath that the FBI had investigated matters pertaining to Mr. Rich. *Id.* Faced with that evidence, Plaintiff Brian Huddleston submitted a new FOIA request for FBI records about Seth Rich, and this time he did not give the FBI the option of playing dumb.

With the benefit of the April 23, 2021 production (hereinafter "Production" or "Exhibit 1"), it is now all the more evident that the FBI made material misrepresentations to two federal courts in order to conceal (1) the fact that it <u>had</u> investigated matters pertaining to Seth Rich, and (2) that it <u>did</u> possess records about Seth Rich at the time of Ty Clevenger's 2017 FOIA request.

---

justifies withholding documents," August 29, 2017 *The Washington Times*, https://www.washingtontimes.com/news/2017/aug/29/fbi-lack-public-interest-emails-justifies-withhold/, and the DOJ soon reversed the FBI and ordered production of the requested information. *See* October 2, 2017 Letter from Sean R. O'Neill to Ty Clevenger, http://lawflog.com/wpcontent/uploads/2017/10/2017.10.02-EOUSA-reversed-by-OIPredacted.pdf.

*See* October 3, 2018 Declaration of David M. Hardy (Exhibit 3)(declaring that the FBI had conducted a "reasonable search" for records about Seth Rich and had found none); *see also* December 30, 2020 Plaintiff's Opposition in Response to Motion to Stay (Doc. No. 11)(explaining how the same misrepresentations were made to this Court). Of particular interest is a "302 Form" witness interview dated September 29, 2016 begins on PDF page 69 (Bates-stamped p. 423) of the Production. Various pages of the 302 Form appear to be missing, but PDF page 70 (Bates-stamped p. 424) clearly indicates that the female witness is being interviewed about the unauthorized transfer of DNC emails to Wikileaks.  Following extensive redactions, the following sentence is found toward the bottom of the same page: "SETH RICH was murdered on the morning of July 10, 2016 in Washington, DC." PDF page 72 (Bates-stamped p. 428) also appears to be part of the same interview, and it states, "DNC staffer Seth Conrad Rich was murdered [REDACTED]." PDF page 72 appears to be an appendage to the 302 Form, but it is entirely redacted except for the following statement: "NOTE: My colleague, DNS Staffer Seth Conrad Rich, was murdered that same Sunday at 4:20 a.m. in Washington, D.C. I didn't know him well – I just exchanged greetings in the hallway a couple of times." PDF pages 74-77 (Bates-stamped pp. 430-433) appear to be the same 302 Form, but it appears that it was declassified on a different date from the first 302 Form. *Compare* p. 69 *with* p. 77. Regardless, the FBI clearly had investigated matters pertaining to Seth Rich and generated records about Mr. Rich not later than September 29, 2016, *i.e.*, well before Mr. Clevenger's September 1, 2017 FOIA request, *see* Original Complaint 2, ¶7, *Ty Clevenger v. U.S. Department of Justice, et al.*, Case No. 18-cv-1568 (E.D.N.Y.)(uploaded to this case as Doc. No. 11-4), yet the government submitted affidavits to this Court and the New York court claiming that no such records could be

found.[2]

The sleight-of-hand in Mr. Hardy's October 3, 2018 declaration evinces an intent to deceive both the requestor and the Courts. In Paragraphs 22 and 23 of that declaration, Mr. Hardy testified that his staff contacted the FBI's Washington Field Office ("WFO"), and WFO confirmed that it played no role in the investigation of "the murder of Seth Conrad Rich." The plaintiff in that case, however, did not limit his request to records about "the murder of Seth Rich." Consider Exhibit 5, which is a true and correct copy of a motion that Mr. Clevenger filed in the New York case, and particularly the following excerpt:

> [The government's] letter proves one thing very clearly: the FBI has been playing word games in an attempt to conceal responsive records. Consider the following excerpt:

>> [T]he FBI met its burden of showing that its search was adequate and, therefore, is entitled to summary judgment. *See* Defs. Mem. at 17-22; Defs. Reply at 3-9. Specifically, the FBI searched its Central Records System ("CRS") recordkeeping system but did not locate any main file (file about Rich) or reference file (file with a cross-reference to Rich).4 Defs. 56.1 ¶¶ 23-32; *see also* Declaration of David M. Hardy dated October 3, 2018 (Dkt. #16-1) ("Hardy Decl.") ¶¶ 19-21. The searches of the CRS would have located any emails of investigative significance. Hardy Decl. ¶ 24. The CRS searches also would have identified any Computer Analysis and Response Team ("CART") records. Defs. 56.1 ¶ 32; *see* Hardy Decl. n.6. In addition to the CRS searches, the FBI Washington, D.C. field office was contacted to ascertain whether it had any records; it did not. Defs. 56.1 ¶¶ 33, 36; *see also* Hardy Decl. ¶¶ 22-23; Second Declaration of David M. Hardy dated July 29, 2019 (Dkt. #37) ("Second Hardy Decl.") ¶ 32 n.9.

> Mahoney Letter, p. 2 (emphasis added). The Plaintiff, however, did not limit his FOIA request to "main files," "reference files," or "emails of investigative significance." Instead, his FOIA request reads as follows:

>> I request the opportunity to view all records and correspondence pertaining to Seth Conrad Rich (DOB: January 3, 1989), who was murdered in the District of Columbia on or about July 10, 2016. This request includes, but is not limited to, any records or correspondence resulting from any investigation of his murder.

---

[2] As further evidence of the FBI's penchant for chicanery, consider the Supplemental Motion to Compel Federal Bureau of Investigation to Comply with Subpoena Duces Tecum, Doc. No. 189 in Case 4:19-cv-00180-ALM-KPJ.

*See* September 1, 2017 FOIA Request Letter (Doc. No. 16-1, internal exhibit "A").  The emails attached to Ms. Mahoney's letter clearly are "correspondence pertaining to Seth Conrad Rich." *See* August 10, 2016 Email String (Doc. No. 52-1, internal exhibit "B"). The name "Seth Rich" even appears in the email header. *Id*.

Motion for Evidentiary Hearing and In Camera Review, 2 (Doc. No. 53), *Ty Clevenger v. U.S. Department of Justice, et al.*, Case No. 1:18-cv-01568-LB (E.D.N.Y.) (emphasis in original)(attached as Exhibit 5). Mr. Hardy was playing word games by limiting the search to records about the "murder of Seth Conrad Rich," whereas the plaintiff had requested "all records and correspondence" pertaining to Seth Rich, *e.g.*, records about whether he was involved in leaking DNC emails to Wikileaks. Incidentally, the emails found on PDF pp. 16-17 of the April 23, 2021 Production originated in the Washington Field Office, which is exactly where Mr. Clevenger asked the FBI to search, but the FBI had refused. Consider the following excerpt from a document filed in 2019 in the New York case:

> According to the October 3, 2018 DECLARATION OF DAVID M. HARDY (Doc. No. 16-1)(hereinafter "FIRST HARDY DECLARATION"), the FBI's index searches for information about Seth Rich were legally adequate, but the same declaration proves that they were not:
>
>> FBI Special Agents ("SA") and/or designated support personnel may index information in the CRS by individual (persons), organization (organizational entities, places, and things), and by event (*e.g.*, a terrorist attack or bank robbery). Indexing information in the CRS is based on operational necessity, and the FBI only indexes that information considered relevant and necessary for future retrieval. Accordingly, the FBI does not index every individual name or other subject matter in the general indices.
>
> FIRST HARDY DECLARATION, 5-6, ¶14 (emphasis added).  Elsewhere in that declaration, Mr. Hardy states that his staff contacted the Washington Field Office ("WFO"), and the WFO explained that it offered its services to the Metropolitan Police Department regarding the Seth Rich murder, but the MPD declined the offer of assistance. *Id*. at 9, ¶¶22-23. That would, of course, explain why Mr. Rich's name was not entered into the CRS system. On the other hand, such an exchange almost certainly created some sort of record, *e.g.*, text messages or emails, even if it was just emails exchanged internally regarding the declined offer of assistance. Yet the FBI arbitrarily refused to search email records in the WFO, *i.e.*, the one place where such records are most likely to be found.

- 7 -

*Id*. at 10, ¶24.  The Court should, therefore, order the FBI to conduct a search of records (emails, texts, etc.) in the Washington Field Office.

September 17, 2019 Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment and Plaintiff's Motion to Enjoin Compliance or Permit Discovery (Doc. No. 32) 2-3, *Clevenger*, Case 1:18-cv-01568-LB (E.D.N.Y.)(attached as Exhibit 6). An excerpt from the subsequent paragraph reads as follows:

> Although the FBI was willing to contact the WFO to determine whether responsive records could be found there, it arbitrarily refused to contact its Computer Analysis and Response Team ("CART") to determine whether CART held responsive records.  The Plaintiff has attached the sworn declaration of one of his clients, Edward Butowsky, explaining why he believes responsive records may be found in CART, *i.e.*, because a confidential source told Mr. Butowsky that he had seen the records extracted from Seth Rich's electronic devices by CART. *See* Declaration of Edward Butowsky (Exhibit A). If records were downloaded from Mr. Rich's electronic devices, the most logical place to find those records would be CART.  Mr. Hardy concedes that some records are not indexed, and he implicitly conceded that it was reasonable to contact the Washington Field Office, thus it would only be reasonable to inquire about electronic records in the place where they are most likely to be found, *i.e.*, CART.

*Id*. at 3. The FBI has belatedly conceded that it has possession of Seth Rich's work laptop, *see* Exhibit 1 p.67 (Bates-stamped p. 406), and the undersigned would be willing to bet that CART was in possession of that laptop the whole time. Thus it appears that the FBI knowingly refused (again) to search the very place where responsive information would likely be located.

The Plaintiff respectfully requests that the Court read Exhibit 6 in its entirety. As noted therein, the FBI has gone so far as to execute secret non-disclosure agreements in a lawless attempt to hide documents from FOIA requestors *and from Congress*.  Exhibit 6 also references *Jett v. Fed. Bureau of Investigation*, 139 F. Supp. 3d 352, 367–68 (D.D.C. 2015), and the Plaintiff urges the Court to read that case in its entirety because it too illustrates the FBI's history of "hiding the ball" from FOIA requestors. The Plaintiff further requests that the Court take judicial notice of the June 2, 2021 Motion Regarding Scheduling Order Proposed by Defendant

Federal Bureau of Investigation (Doc. No. 31), *Transparency Project*, Case No. 4:20-cv-00467-SDJ-CAN (E.D. Tex.), which likewise illustrates the FBI's long-standing and institutionalized attitude of bad faith in FOIA matters.

Paragraph 24 of the Hardy Declaration (Exhibit 3) is also noteworthy. At least since the 1990s, emails have been routinely searched and produced as part of civil litigation, and many courts have adopted rules governing the production of electronic evidence. In Paragraph 24, however, Mr. Hardy admitted that the FBI had flatly refused to search its emails systems for records about Seth Rich. If it had, the records on PDF pp. 16-17 of Exhibit 1 would have been found, and that raises an important question: how can the FBI, in this day and age, justify a *policy* of refusing to search its email systems for records responsive to FOIA requests? Although an agency is "not required to search every record system, it must make a good faith effort to reasonably search systems that are likely to contain records where the requested information is likely to be found." *Viola v. United States Dep't of Justice*, 306 F. Supp. 3d 321, 325 (D.D.C. 2018), on reconsideration in part, 16-CV-1411 (TSC), 2019 WL 2437692 (D.D.C. June 11, 2019), citing *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The FBI's institutionalized refusal to search its email systems cannot possibly be squared with that standard, particularly where the FBI has already admitted that its vaunted index system depends *entirely* on the arbitrary choice of individual FBI employees to include or exclude a record from the index. *See* Hardy Declaration (Exhibit 3), 5-7, ¶14.[3] In any other area of civil litigation, and particularly in discovery matters, no court would tolerate such a self-serving standard for document searches. The Court should not tolerate it here.

---

[3] For the benefit of future FOIA requestors, the Plaintiff hopes this Court will make a finding that the FBI's policy is objectively unreasonable.

**2.  <u>The FBI's redactions are excessive and improper</u>**

In keeping with its practice of hiding information about Seth Rich, the FBI also made improper and excessive redactions in the relatively few records that it did produce on April 23, 2021. For example, on page 2 of the cover letter to the April 23, 2021 Production (found on the third page of Exhibit 1), FBI Section Chief Michael G. Seidel wrote that the agency had withheld a computer disk "in its entirety pursuant to FOIA Exemptions (b)(6), (b)(7)(C), (b)(7)(D) and (b)(7)(E)."  The FBI did not explain how many pages, emails, texts, etc. were on the disk or whether it came from Seth Rich's work computer, his personal laptop, his mobile phone, or somewhere else. That sort of conclusory response is inadequate. "An agency must use a *Vaughn* index to explain withheld information by "specify[ing] <u>in detail</u> which portions of the document are disclosable and which are allegedly exempt." *Kowal v. United States Dep't of Justice*, 490 F. Supp. 3d 53, 67 (D.D.C. 2020)(emphasis added), quoting *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973). Similarly, "an agency invoking Exemption 3 must demonstrate its applicability 'in a nonconclusory and detailed fashion,' [*Goland v. CIA*, 607 F.2d 339, 351 (D.C. Cir. 1978)], and must provide "the kind of detailed, scrupulous description [of the withheld documents] that enables a District Court judge to perform a searching *de novo* review." *Shapiro v. United States Dep't of Justice*, CV 13-555 (RDM), 2020 WL 7318014, at *16 (D.D.C. Dec. 11, 2020), quoting *Church of Scientology of Ca., Inc. v. Turner*, 662 F.2d 784, 786 (D.C. Cir. 1980).

Meanwhile, the FBI produced what is clearly the 302 Form of an interview of Ms. Sines, *see* Production pp. 66-68 (Bates-numbered pp. 405-407), yet it tried to hide her identity and the identity of others. One need only compare the 302 Form with Ms. Sines's deposition testimony, *see* Transcript of Deposition of Deborah Sines (Exhibit 2) pp. 30-31, where she acknowledges in some detail how she was interviewed by the FBI about matters pertaining to Seth and Aaron

Rich. The FBI nonetheless redacted the name of Ms. Sines, the name of Seth Rich, and the name

of Aaron Rich from the 302 Form. Those redactions were improper. Given the fact that Ms.

Sines voluntarily "outed" herself in the podcast interview with journalist Michael Isikoff, the

government cannot plausibly claim that there is any privacy interest in redacting her name from

the 302 Form. Likewise, there is little privacy interest in redacting the name of Seth Rich, who is

now deceased. *See Am. Civil Liberties Union v. U.S. Dep't of Justice*, 750 F.3d 927, 936 (D.C.

Cir. 2014)(death diminishes but does not extinguish privacy interest). Finally, there is no privacy

interest in redacting the name of Aaron Rich, who made himself a limited-purpose public figure

by granting media interviews, *see, e.g.*, Michael Isikoff, "'It is indescribable': How a harassment

campaign overwhelmed Seth Rich's friends and family," August 6, 2019 *Yahoo!News*,

https://www.yahoo.com/now/it-is-indescribable-how-a-harassment-campaign-overwhelmed-

seth-richs-friends-and-family-100000936.html, and by filing suit against individuals who

suggested that he helped leak the DNC emails. *See Aaron Rich v. Edward Butowsky, et al.*, Case

No. 1:18-cv-000681 (D.D.C.). Even Ms. Sines acknowledged in her deposition that Aaron Rich

participated in the murder investigation, *see* Transcript of Deposition of Deborah Sines p. 57,

and that deposition transcript is publicly available. *See, e.g.*, https://www.scribd.com/document/

454800604/Testimony-by-former-Assistant-US-Attorney-Deborah-Sines-in-Ed-Butowsky-vs-

David-Fokenflik.

        Toward the end of the 302 Form, Ms. Sines apparently informed her FBI interviewers

that she was aware that the FBI already had possession of Seth Rich's work laptop (as opposed

to his personal laptop, which she had already obtained). *See* Exhibit 1 p. 67 (Bates-numbered p.

406). She further asked the FBI for a mirror image of the work laptop for purposes of aiding the

murder investigation. *Id*. That necessarily infers that the FBI had previously obtained Seth Rich's

work laptop for reasons unrelated to the murder investigation, and the Form 302s on pp. 68-76 strongly infer that the FBI took custody of the work laptop as part of its investigation into the DNC email leaks. This too undermines the declaration testimony of David M. Hardy, who claimed that the FBI found no records after a "reasonable search." We now know that the FBI was interviewing witnesses about Seth Rich not later than September of 2016, and it appears that it took custody of his work computer around that time (if not sooner).

Pages 16-17 of the Production (Bates-numbered pp. 1-2) contain the email string that the FBI had inadvertently disclosed in response to the unrelated FOIA request from Judicial Watch, Inc.  Seth's name had already been disclosed publicly in those emails, ergo there was no longer a reason to redact his name. Nonetheless, pages 16-17 still contain unwarranted redactions. The identities of several email senders and recipients are redacted on the basis of the following exemptions (b)(6) and (b)(7)(C) which pertain to personal privacy, as well exhibit (b)(7)(E), which exempts disclosure of investigative techniques and guidelines "if such disclosure could reasonably be expected to risk circumvention of the law." Note that the emails on pp. 16-17 are sent by government personnel on government email accounts concerning government business. How, then, could one violate the "personal privacy" of the sender of the top email on page 16, where the unknown government agent responds to an email about Seth Rich by saying, "I squashed this with [REDACTED]"? The context seems to suggest that he or she "squashed" a story with a journalist, and the Plaintiff contends that the public should know who "squashed" what with whom, and why. How, exactly, could exemptions (b)(6), (b)(7)(C), and (b)(7)(E) apply to that information?

The Plaintiff would further direct the Court's attention to the last sentence on page 64 (Bates-numbered p. 403): "Given [REDACTED], it is conceivable that an individual or group

would want to pay for his death." If that sentence is referring to Seth Rich, then it obviously

contradicts the official narrative of the U.S. Department of Justice and the Metropolitan Police

Department that Mr. Rich died in a "botched robbery." *See, e.g.,* David Folkenflik,

"'Conspiracyland' Debunks Theories About Murder Of DNC Staffer Seth Rich," August 8, 2019

NPR, https://www.npr.org/2019/08/08/749392506/conspiracyland-debunks-theories-about-

murder-of-dnc-staffer-seth-rich (describing "botched robbery" theory). Not surprisingly, several

news outlets took note of the excerpt about an "individual or group [who] would want to pay for

his death." *See*, *e.g.,* Zachary Stieber, *supra* p. 2.  If the person referenced is Seth Rich and he is

already dead, then why did the FBI need to redact his name? Or was the sentence referring to

someone else and the FBI left it unredacted in order to create a diversion?

       Additional troubling redactions are found on PDF page 67 of the Production: "After the

homicide, [REDACTED] took Rich's personal laptop to his house in [REDACTED].

[REDACTED] was not aware if [REDACTED] deleted or changed anything on Rich's laptop."

The Plaintiff strongly suspects that Aaron Rich took his brother's laptop to his house in

Colorado, and Ms. Sines was not aware if Aaron deleted or changed anything on the laptop. *See,*

*e.g.*, Transcript of Deborah Sines, pp. 55-56 (Ms. Sines testifying that she did not know whether

Aaron Rich had altered data). These are matters of public concern because Aaron Rich publicly

denied that he played any role in transferring DNC emails, and he filed lawsuits on that basis.

*See Aaron Rich v. Edward Butowsky, et al.*, Case No. 1:18-cv-000681 (D.D.C.). If Aaron Rich

took evidence related to his brother's murder, and Ms. Sines cannot say whether he altered that

evidence, then exemptions (b)(6) and (b)(7)(C) should not apply because neither of them have a

legitimate privacy interest in concealing evidence tampering or official corruption. Likewise,

exemption (b)(7)(D) cannot not be used to protect Aaron Rich as a "confidential source" because

Ms. Sines has already publicly acknowledged Aaron's role in assisting her investigation. *See* Transcript of Deborah Sines, p. 56. If Aaron Rich absconded with his brother's laptop immediately after the murder and possibly tampered with it, then the public has a right to know that.

The Plaintiff would note that some of the redacted information has been classified, *see, e.g.*, Production PDF p. 28 (Bates-numbered p.76), but Section 1.7 of Executive Order 13526 permits the Court to declassify information where classification has been used to conceal government misconduct. *See Smith v. United States Nat'l Archives & Records Admin.*, 415 F. Supp. 3d 85, 97–98 (D.D.C. 2019).

> In no case shall information be classified, continue to be maintained as classified, or fail to be declassified in order to:
>
> > (1) conceal violations of law, inefficiency, or administrative error;
> > (2) prevent embarrassment to a person, organization, or agency;
> > (3) restrain competition; or
> > (4) prevent or delay the release of information that does not require protection in the interest of the national security.

E.O. 13526 §1.7(a). The Plaintiff moves the Court to review the classified information *in camera* to determine whether the FBI is using classification to conceal information in violation of subsections (a)(1), (a)(2), or (a)(4). On PDF page 28 of the Production, for example, the document makes reference to "Guccifer 2.0," a person/entity widely blamed as the source of the stolen DNC emails, *see, e.g.*, Natasha Bertrand, "Suspected Russian cyber spy Guccifer 2.0 altered a DNC document before releasing it," November 3, 2017 *Business Insider*, https://www.businessinsider.com/guccifer-2-0-dnc-document-russia-hillary-clinton-2017-11, but most of page 28 is classified.  In a related case, namely *The Transparency Project v. U.S. Department of Justice, et al.*, Case No. 4:20-cv-467 (E.D.Tex.), both the CIA and the NSA have refused to say whether they were responsible for fabricating and/or operating the Guccifer 2.0

persona or other "Russian" online identities purportedly involved in the email transfers. *Compare* First Amended Complaint, *Transparency Project* (Doc. No. 5) 5, ¶11(a) and 9-10, ¶15(a)(attached as Exhibit 7) *with* March 16th 2021 Joint Status Report, *Transparency Project* (Doc. No. 22) 2-3 (attached as Exhibit 8) and Undated Letter from Ronald Mapp to Ty Clevenger (attached as Exhibit 9). Both agencies issued *Glomar* responses, *i.e.*, that they would neither confirm nor deny that they played a role in fabricating "Russian fingerprints" in order to shift blame to Russia. *Id*. For that reason, the plaintiff in that case intends to ask the Court to determine, pursuant to Executive Order 13526, whether the CIA and NSA are using classification to save senior officials from embarrassment or to conceal illegal activity, *see, e.g.*, 18 U.S. Code §§ 1505, 1519, 2381, 2382, and 2383, namely by hiding any evidence that the U.S. government fabricated the "Russian fingerprints." In this case, the Plaintiff wants to know if the FBI is using classification to conceal similarly illegal or embarrassing activity. If, for example, FBI officials knew in 2016 or 2017 that Seth Rich (rather than Russian agents) was responsible for leaking DNC emails, and if they hid that information for 4-5 years while publicly blaming Russia, then the FBI cannot now use classification in order to save itself from embarrassment. E.O. 13526 §1.7(a)(2). Likewise, if the FBI has evidence that the U.S. government fabricated "Guccifer 2.0," then it cannot use classification to conceal that information. *Id* at §1.7(a)(1) and (2). [4]

On May 7, 2021, the Department of Justice produced records in response to the Plaintiff's request for information about the Office of Special Counsel, and a copy of that response is attached as Exhibit 10. Like the FBI, the Justice Department redacted a significant portion of the

---

[4] The Court will note that the email exchange on PDF pp. 16-17 occurs among FBI personnel in the "WF" (Washington Field Office) and "CD" (Counterintelligence Division). That strongly infers that the FBI was investigating (1) foreign involvement in the murder of Seth Rich, or (2) foreign activity involving Seth Rich, *e.g.*, transferring emails Wikileaks.

responsive records. *Id*. The Justice Department, for example, provided a transcript of the December 7, 2018 testimony of former FBI Director James Comey before Congress, *see* Exhibit 10, Bates-stamped pp. 12480 – 12535, but it was heavily redacted despite the fact that the entire transcript is publicly available on the Internet. *See, e.g.*, https://www.lawfareblog.com/document-transcript-james-comeys-dec-7-interview-house-committees. Given the widespread governmental chicanery in all matters pertaining to Seth Rich and "Russian collusion," the Plaintiff moves the Court to review the Justice Department documents *in camera* as well.

**3. The Court should permit counsel to review unredacted copies of all documents.**

The Plaintiff moves the Court to grant his counsel permission to view unredacted copies of all responsive, unclassified documents pursuant to an "attorneys' eyes only" protective order. *See, e.g., Am. Farm Bureau Fed'n v. McCarthy*, 13-CV-1751 ADM/TNL, 2015 WL 631341, at *1 (D. Minn. Feb. 6, 2015)(parties in FOIA litigation agreed to produce some documents under "attorney's eyes only" restriction). For classified documents, the Plaintiff moves the Court to grant him permission to add co-counsel who holds the necessary security clearances to review such documents. Given the complexity of the information requested, and the government's long history of obfuscation and bad faith, the Court would benefit from additional input by attorneys who are intimately familiar with the facts and the players.

## Conclusion

The Court should review unredacted copies of all responsive documents in camera, and it should permit counsel to review those documents pursuant to a protective order.

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
P.O. Box 20753
Brooklyn, New York 11202-0753
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Counsel for Plaintiff Brian Huddleston**

**Certificate of Conference**

On June 13, 2021, I e-mailed a near-final draft of this motion to Asst. U.S. Attorney Andrea Parker, Counsel for the Defendants, and I asked if her clients would oppose the motion. On June 14, 2021, she indicated by email that they would. I also tried to reach Ms. Parker by telephone on June 14, 2021, but I was not successful.

**/s/ Ty Clevenger**
Ty Clevenger

**Certificate of Service**

On June 14, 2021, I filed a copy of this response with the Court's ECF system, which should result in automatic notification via email to Asst. U.S. Attorney Andrea Parker, Counsel for the Defendants, at andrea.parker@usdoj.gov.

**/s/ Ty Clevenger**
Ty Clevenger