Exhibit 1



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

April 23, 2021

Mr. Brian Huddleston
c/o Mr. Ty O. Clevenger
Post Office Box 20753
Brooklyn, NY 11202-0753

FOIPA Request Nos.:  1465531-000
Subject:   Seth Rich (January 1, 2016 to present)

*Brian Huddleston v. Federal Bureau of
Investigation, et al*
Civil Action No.: 20-cv-00447

Dear Mr. Huddleston:

  The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a.   Below you will find check boxes under the appropriate statute headings which indicate the types of exemptions asserted to protect information which is exempt from disclosure.   The appropriate exemptions are noted on the enclosed pages next to redacted information.   In addition, a deleted page information sheet was inserted to indicate where pages were withheld entirely and identify which exemptions were applied.   The checked exemption boxes used to withhold information are further explained in the enclosed Explanation of Exemptions.

|  | **Section 552** |  | **Section 552a** |
|---|---|---|---|
| ☑ (b)(1) | ☑ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☑ (b)(3) | ☑ (b)(7)(C) | ☐ (k)(1) |
| 50 USC § 3024(i)(1) | ☑ (b)(7)(D) | ☐ (k)(2) |
| Federal Rules of Criminal Procedure 6 (e) | ☑ (b)(7)(E) | ☐ (k)(3) |
|  | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☑ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) |  | ☐ (k)(7) |

  576 pages were reviewed and 68 pages are being released.

  Please see the paragraphs below for relevant information specific to your request as well as the enclosed FBI FOIPA Addendum for standard responses applicable to all requests.

☐ Document(s) were located which originated with, or contained information concerning, other Government Agency (ies) [OGA].

  ☐ This information has been referred to the OGA(s) for review and direct response to you.
  ☐ We are consulting with another agency.   The FBI will correspond with you regarding this information when the consultation is completed.

Please refer to the enclosed FBI FOIPA Addendum for additional standard responses applicable to your request.   **"Part 1"** of the Addendum includes standard responses that apply to all requests.   **"Part 2"** includes additional standard responses that apply to all requests for records about yourself or any third party individuals.   **"Part 3"** includes general information about FBI records that you may find useful.   Also enclosed is our Explanation of Exemptions.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request Number listed above has been assigned to your request.   Please use this number in all correspondence concerning your request.

Although your request is in litigation, we are required by law to provide you the following information:

If you are not satisfied with the Federal Bureau of Investigation's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal.   Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of my response to your request.   If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS).   The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.   Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov.   If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

Please direct any further inquiries about this case to the Attorney representing the Government in this matter.   Please use the FOIPA Request Number and/or Civil Action Number in all correspondence or inquiries concerning your request.

☑   See additional information which follows.

Sincerely,

*M. A. L. D*

Michael G. Seidel
Section Chief
Record/Information
    Dissemination Section
Information Management Division

Enclosure(s)

In response to your Freedom of Information Act (FOIA) request and subsequent civil action case pending in the U.S. District Court for the Eastern District of Texas, enclosed is one (1) compact disc representing the FBI's 1st Interim release of information concerning records Bates Stamped FBI (20-cv-00447)-1 through FBI (20-cv-00447)-576.
These pages were located in cross-reference files as described below.   No "main" investigative files pertaining to the subject of your request were located.

Cross-references are defined as mentions of the subject of your request in files to other individuals, organizations, events, or activities.   In processing the cross-references, the pages considered for possible release included only those pages which mention the subject of your request and any additional pages showing the context in which the subject of your request was mentioned.   The cross-references were processed pursuant to the provisions of the FOIA and are being released to you in redacted form.

FBI (20-cv-00447)-422 represents a compact disc wherein all of the contents thereof is being withheld in its entirety pursuant to FOIA Exemptions (b)(6), (b)(7)(C), (b)(7)(D) and (b)(7)(E).

For your information, sealed court records are not eligible for release under the Freedom of Information Act.   Material responsive to your request has been withheld and marked "OTHER-Sealed" pursuant to appropriate orders issued by federal district courts.

Duplicate copies of the same document were not processed.

### FBI FOIPA Addendum

As referenced in our letter responding to your Freedom of Information/Privacy Acts (FOIPA) request, the FBI FOIPA Addendum provides information applicable to your request.   Part 1 of the Addendum includes standard responses that apply to all requests.   Part 2 includes standard responses that apply to requests for records about individuals to the extent your request seeks the listed information.   Part 3 includes general information about FBI records, searches, and programs.

**Part 1: The standard responses below apply to all requests:**

(i)      **5 U.S.C. § 552(c).**   Congress excluded three categories of law enforcement and national security records from the requirements of the FOIPA [5 U.S.C. § 552(c)].   FBI responses are limited to those records subject to the requirements of the FOIPA.   Additional information about the FBI and the FOIPA can be found on the www.fbi.gov/foia website.

(ii)      **Intelligence Records**.   To the extent your request seeks records of intelligence sources, methods, or activities, the FBI can neither confirm nor deny the existence of records pursuant to FOIA exemptions (b)(1), (b)(3), and as applicable to requests for records about individuals, PA exemption (j)(2) [5 U.S.C. §§ 552a (b)(1), (b)(3), and (j)(2)].   The mere acknowledgment of the existence or nonexistence of such records is itself a classified fact protected by FOIA exemption (b)(1) and/or would reveal intelligence sources, methods, or activities protected by exemption (b)(3) [50 USC § 3024(i)(1)].   This is a standard response and should not be read to indicate that any such records do or do not exist.

**Part 2: The standard responses below apply to all requests for records on individuals:**

(i)      **Requests for Records about any Individual—Watch Lists.**   The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)].   This is a standard response and should not be read to indicate that watch list records do or do not exist.

(ii)      **Requests for Records about any Individual—Witness Security Program Records.**   The FBI can neither confirm nor deny the existence of records which could identify any participant in the Witness Security Program pursuant to FOIA exemption (b)(3) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(3), 18 U.S.C. 3521, and (j)(2)].   This is a standard response and should not be read to indicate that such records do or do not exist.

(iii)      **Requests for Records for Incarcerated Individuals.**   The FBI can neither confirm nor deny the existence of records which could reasonably be expected to endanger the life or physical safety of any incarcerated individual pursuant to FOIA exemptions (b)(7)(E), (b)(7)(F), and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (b)(7)(F), and (j)(2)].   This is a standard response and should not be read to indicate that such records do or do not exist.

**Part 3: General Information:**

(i)      **Record Searches.**   The Record/Information Dissemination Section (RIDS) searches for reasonably described records by searching systems or locations where responsive records would reasonably be found.   A standard search normally consists of a search for main files in the Central Records System (CRS), an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled by the FBI per its law enforcement, intelligence, and administrative functions.   The CRS spans the entire FBI organization, comprising records of FBI Headquarters, FBI Field Offices, and FBI Legal Attaché Offices (Legats) worldwide; Electronic Surveillance (ELSUR) records are included in the CRS.   Unless specifically requested, a standard search does not include references, administrative records of previous FOIPA requests, or civil litigation files.   For additional information about our record searches, visit www.fbi.gov/services/information-management/foipa/requesting-fbi-records.

(ii)      **FBI Records.**   Founded in 1908, the FBI carries out a dual law enforcement and national security mission.   As part of this dual mission, the FBI creates and maintains records on various subjects; however, the FBI does not maintain records on every person, subject, or entity.

(iii)      **Requests for Criminal History Records or Rap Sheets.**   The Criminal Justice Information Services (CJIS) Division provides Identity History Summary Checks – often referred to as a criminal history record or rap sheet.   These criminal history records are not the same as material in an investigative "FBI file."   An Identity History Summary Check is a listing of information taken from fingerprint cards and documents submitted to the FBI in connection with arrests, federal employment, naturalization, or military service.   For a fee, individuals can request a copy of their Identity History Summary Check.   Forms and directions can be accessed at www.fbi.gov/about-us/cjis/identity-history-summary-checks. Additionally, requests can be submitted electronically at www.edo.cjis.gov.   For additional information, please contact CJIS directly at (304) 625-5590.

(iv)      **National Name Check Program (NNCP).**   The mission of NNCP is to analyze and report information in response to name check requests received from federal agencies, for the purpose of protecting the United States from foreign and domestic threats to national security.   Please be advised that this is a service provided to other federal agencies.   Private Citizens cannot request a name check.

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)     (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)     related solely to the internal personnel rules and practices of an agency;

(b)(3)     specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)     trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)     inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)     personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal  privacy;

(b)(7)     records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal   privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)     contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)     geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)     information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)     material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,   or reduce crime or apprehend criminals;

(k)(1)     information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)     investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)     material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)     required by statute to be maintained and used solely as statistical records;

(k)(5)     investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)     testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)     material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
Civil Action# 4:20-cv-00447
Total Withheld Page(s) = 507
Total Withheld CD(s)= 1

| Bates Page Reference FBI (20-cv-00447)- | Reason for Withholding (i.e., exemptions with coded rationale, duplicate, sealed by order of court, etc.) |
|---|---|
| 4-5 | Duplicate to 309-310 (2 pages) |
| 6 | b6-1; b7C-1; b7D-1,-2; b7E-2,-3,-4; (1 page) |
| 7 | b6-1; b7C-1; b7D-1,-2; b7E-2,-3; (1 page) |
| 8-9 | b6-2; b7C-2; b7D-2; b7E-3; (2 pages) |
| 12-13 | b5-1; b6-3; b7A-1; b7C-3; (2 pages) |
| 17-20 | b5-1; b6-3; b7C-3; (4 pages) |
| 21 | b5-1; b6-3; b7C-3; (1 page) |
| 24 | b5-1; b6-2,-3; b7C-2,-3; (1 page) |
| 25 | b5-1; b6-3; b7C-3; (1 page) |
| 26 | b5-1; b6-2,-3; b7C-2,-3; (1 page) |
| 27 | b5-1; b6-3; b7C-3; (1 page) |
| 28 | b5-1; b6-3; b7C-3; (1 page) |
| 31 | b5-1; b6-1,-2; b7C-1,-2; (1 page) |
| 32 | b5-1; (1 page) |
| 33-34 | Duplicate to 309-310 (2 pages) |
| 35-36 | Duplicate to 307-308 (2 pages) |
| 37 | b6-1; b7C-1; b7E-1,-2,-4,-6; (1 page) |

| 38 | Duplicate to 115 (1 page) |
| 39 | Duplicate to 116 (1 page) |
| 40-41 | Duplicate to 117-118 (2 pages) |
| 42-43 | Duplicate to 119-120 (2 pages) |
| 44-45 | b6-2; b7C-2; b7E-6; (2 pages) |
| 46 | b7E-6; (1 page) |
| 47-49 | b6-2; b7C-2; b7E-6; (3 pages) |
| 50 | b7E-6; (1 page) |
| 51-53 | b6-2; b7C-2; b7E-6; (3 pages) |
| 54 | b7E-6; (1 page) |
| 55-57 | b6-2; b7C-2; b7E-6; (3 pages) |
| 58 | b7E-6; (1 page) |
| 59-61 | b6-2; b7C-2; b7E-6; (3 pages) |
| 62 | b7E-6; (1 page) |
| 63-64 | b6-2; b7C-2; b7E-6; (2 pages) |
| 65 | b7E-6; (1 page) |
| 66-67 | b6-2; b7C-2; b7E-6; (2 pages) |
| 68 | b7E-6; (1 page) |
| 69-70 | b6-2; b7C-2; b7E-6; (2 pages) |
| 71 | b7E-6; (1 page) |

| | |
|---|---|
| 72-73 | b6-2; b7C-2; b7E-6; (2 pages) |
| 74 | b7E-6; (1 page) |
| 75 | b6-2; b7C-2; b7E-6; (1 page) |
| 78 | b1-1; b3-1; b6-4; b7C-4; b7D-3; b7E-2,-4,-6; (1 page) |
| 79 | b6-2; b7C-2; b7E-6; (1 page) |
| 80 | b7E-6; (1 page) |
| 81 | b7E-6; (1 page) |
| 82 | b3-2; b6-1,-3; b7C-1,-3; b7E-2,-6; Other-Sealed (1 page) |
| 83 | b3-2; Other-Sealed; (1 page) |
| 84 | b3-2; b6-3; b7C-3; b7E-6; Other-Sealed (1 page) |
| 85 | b3-2; b6-1,-3; b7C-1,-3; b7E-2,-6; Other-Sealed; (1 page) |
| 86-87 | b3-2; b6-1,-3; b7C-1,-3; b7E-6; Other-Sealed; (2 pages) |
| 88 | b3-2; b6-3; b7C-3; b7E-6; Other-Sealed; (1 page) |
| 89-90 | Duplicate to 83-84 (2 pages) |
| 91 | b3-2; b7E-6; Other-Sealed; (1 page) |
| 92 | b1-1; b3-1; b6-1; b7C-1; b7E-1,-2,-4,-7; (1 page) |
| 93 | b1-1; b3-3; b7E-2,-7; (1 page) |
| 94-96 | b3-1; b7E-7; (3 pages) |
| 98 | b7E-6; (1 page) |
| 99-100 | b7E-6; (2 pages) |

| 102 | b3-2; b6-2-3; b7C-2-3; b7E-6; (1 page) |
|---|---|
| 103-105 | b3-2; b6-2; b7C-2; b7E-6; (3 pages) |
| 107 | b6-1; b7C-1, b7E-2,-6; (1 page) |
| 108-109 | b6-3; b7C-3; b7E-6; (2 pages) |
| 110 | b6-1-2; b7C-1,-2; b7E-1,-2,-4,-6; (1 page) |
| 111 | b7E-2,-6; (1 page) |
| 112-113 | b7E-6; (2 pages) |
| 115-120 | b7E-6; (6 pages) |
| 121 | b6-1; b7C-1; b7E-1,-2,-4,-6; (1 page) |
| 122 | b6-1,-2; b7C-1,-2; b7E-6; Other-Sealed; (1 page) |
| 123-128 | b6-1; b7C-1; b7E-6; Other-Sealed; (6 pages) |
| 129-142 | b7E-6; (14 pages) |
| 143 | b6-2; b7C-2; b7E-6; (1 page) |
| 144 | b6-1,-3; b7C-1,-3; b7E-2,-6; Other-Sealed; (1 page) |
| 145 | b6-2,-3; b7C-2,-3; b7E-6; Other-Sealed; (1 page) |
| 146 | b6-3; b7C-3; b7E-6; Other-Sealed; (1 page) |
| 147 | b6-2,-3; b7E-2,-3; b7E-6; Other-Sealed; (1 page) |
| 152 | b5-1; b6-1; b7C-1; b7E-6; (1 page) |
| 153 | b5-1; b6-2; b7C-2; (1 page) |
| 154-155 | b5-1; b6-3; b7C-3; (2 pages) |

| 156 | b6-3; b7C-3; (1 page) |
| 162-163 | b3-1; b6-3; b7A-1; b7C-3; b7E-2; (2 pages) |
| 166 | b3-2; (1 page) |
| 168-170 | b3-2; b6-2,-3; b7A-1; b7C-2,-3; (3 pages) |
| 171 | b3-2; b7A-1; (1 page) |
| 172-173 | b3-2; b6-2,-3; b7A-1; b7C-2,-3; (2 pages) |
| 174 | b3-2; b6-3; b7A-1; b7C-3; (1 page) |
| 175-176 | b3-2; b6-2,-3; b7A-1; b7C-2,-3; (2 pages) |
| 177 | b3-2; b7A-1; (1 page) |
| 178-180 | b3-2; b6-2,-3; b7A-1; b7C-2,-3; (3 pages) |
| 181 | b3-2; b7A-1; (1 page) |
| 182 | b3-2; b6-2,-3; b7A-1; b7C-2,-3; (1 page) |
| 183-184 | b3-2; b6-3; b7A-1; b7C-3; (2 pages) |
| 186 | b3-2; b6-3; b7A-1; b7C-3; (1 page) |
| 187-188 | b3-2; b7A-1; (2 pages) |
| 189-193 | b3-2; b6-2,-3; b7A-1; b7C-2,-3; (5 pages) |
| 195 | b3-2; b6-1,-3; b7A-1, b7C-1,-3; b7E-6; (1 page) |
| 197 | b3-2; b6-1; b7C-1; b7E-2,-6; (1 page) |
| 199 | b3-2; b6-2; b7C-2; b7E-2,-6; (1 page) |
| 200-201 | b3-2; b6-2; b7C-2; b7E-6; (2 pages) |

| | |
|---|---|
| 202 | b3-2; b6-1,-3; b7C-1,-3; b7E-2,-6; Other-Sealed; (1 page) |
| 203 | b3-2; Other-Sealed; (1 page) |
| 204 | b3-2; b6-3; b7C-3; b7E-6; Other-Sealed;(1 page) |
| 205 | b3-2; b6-1,-2,-3; b7C-1,-2,-3; b7E-6; Other-Sealed; (1 page) |
| 206-214 | b3-2; b7E-6; Other-Sealed; (9 pages) |
| 215-220 | b3-2; b6-3; b7E-3; b7E-6; Other-Sealed; (6 pages) |
| 221-265 | b3-2; b7E-6; Other-Sealed;(45 pages) |
| 266 | b3-2; b6-3; b7E-3, b7E-6; Other-Sealed;(1 page) |
| 267-273 | b3-2; b7E-6; Other-Sealed; (7 pages) |
| 274 | b3-2; b6-2; b7C-2; b7E-6; Other-Sealed; (1 page) |
| 275 | b3-2; b6-1,-3; b7C-1,-3; b7E-2,-6; Other-Sealed; (1 page) |
| 276 | b3-2; Other-Sealed; (1 page) |
| 277 | b3-2; b6-3; b7C-3; b7E-6; Other-Sealed; (1 page) |
| 278 | b3-2; b6-3; b7C-3; b7E-1,-6; Other-Sealed; (1 page) |
| 279-280 | b3-2; b7E-6; Other-Sealed: (2 pages) |
| 284-286 | b6-2; b7C-2; b7E-6; (3 pages) |
| 287-290 | b7E-6; (4 pages) |
| 291 | b6-2; b7C-2; b7E-6; (1 page) |
| 292-294 | b7E-6; (3 pages) |
| 295-297 | b6-2; b7C-2; b7E-6; (3 pages) |

| 298-301 | b7E-6; (4 pages) |
|---------|------------------|
| 302 | b6-2; b7C-2; b7E-6; (1 page) |
| 303-305 | b7E-6; (3 pages) |
| 307 | b5-1; b6-2,-3; b7C-2,-3; (1 page) |
| 308 | b5-1; b6-3; b7C-3; (1 page |
| 312-313 | Duplicate to 307-308 (2 pages) |
| 314-315 | Duplicate to 309-310 (2 pages) |
| 318-319 | b5-1; b6-3; b7C-3; (2 pages) |
| 320-321 | b6-3; b7C-3 (2 pages) |
| 322-323 | b6-3; b7C-3 (2 pages) |
| 327 | b6-3; b7C-3; b7E-2,-6; (1 page) |
| 328-330 | b6-3; b7C-3; b7E-6; (3 pages) |
| 331 | b6-1,-3; b7C-1,-3; b7E-2,-6; Other-Sealed; (1 page) |
| 332-333 | Other-Sealed; (2 pages) |
| 334-336 | b6-2; b7C-2; b7E-6; Other-Sealed; (3 pages) |
| 337 | b7E-6; Other-Sealed; (1 page) |
| 338 | b6-2; b7C-2; b7E-6; Other-Sealed; (1 page) |
| 339 | b6-2; b7C-2; b7E-6; Other-Sealed; (1 page) |
| 340-341 | Other-Sealed (2 pages) |
| 342-393 | b6-2; b7C-2; b7E-6; Other-Sealed; (52 pages) |

| 394-395 | b6-1; b7C-1; b7E-2; Other-Sealed; (2 pages) |
| 396-397 | b6-2; b7C-2; b7E-6; Other-Sealed: (2 pages) |
| 400 | b5-1; b6-1,-3; b7C-1,-3; (1 page) |
| 401 | b5-1; b6-3; b7C-3; (1 page) |
| 404 | b6-3; b7C-3; b7E-6; (1 page) |
| 408-410 | b6-2,-4; b7C-2,-4; b7D-3; (3 pages) |
| 411-415 | b6-4; b7C-4; b7D-3; (5 pages) |
| 416 | b6-1,-4; b7C-1,-4; b7D-3; b7E-2; (1 page) |
| 417 | b6-1; b7C-1; b7D-3; b7E-2,-4; (1 page) |
| 418 | b6-5; b7C-5; b7D-3; (1 page |
| 419 | b6-4; b7C-4; b7D-3; (1 page) |
| 420-421 | b5-per EOUSA; b6-per EOUSA; b7C-per EOUSA (2 pages) |
| 422 | b6-2; b7C-2; b7D-3; b7E-6; (1 compact disc) |
| 427 | b6-2,-4; b7C-2,-4; b7E-6; (1 page) |
| 429 | b6-2,-4; b7C-2,-4; b7E-6; (1 page) |
| 434-436 | Duplicate to 427-429 (3 pages) |
| 440 | b5-1; b6-2,-3; b7C-1,-3; (1 page) |
| 441 | b5-1; b6-3; b7C-3; (1 page) |
| 442 | b5-1; b6-1,-3; b7C-1,-3; b7E-2; (1 page) |
| 443 | b5-1; b6-3; b7C-3; b7E-2; (1 page) |

| | |
|---|---|
| 447-464 | b6-3; b7C-3; b7E-6; (18 pages) |
| 465-467 | b7E-6; (3 pages) |
| 468-478 | b6-3; b7C-3; b7E-6; (11 pages) |
| 479 | b7E-6; (1 page) |
| 480 | b6-3; b7C-3; b7E-6; (1 page) |
| 481-483 | b7E-6; (3 pages) |
| 484-487 | b6-3; b7C-3; b7E-6; (4 pages) |
| 488-489 | b7E-6; (2 pages) |
| 490 | b6-3; b7C-3; b7E-6; (1 page) |
| 491-492 | b7E-6; (2 pages) |
| 493-509 | b6-3; b7C-3; b7E-6; (17 pages) |
| 510-513 | b7E-6; (4 pages) |
| 514-520 | b6-3; b7C-3; b7E-6; (7 pages) |
| 521-529 | b7E-6; (9 pages) |
| 530-532 | b6-3; b7C-3; b7E-6; (3 pages) |
| 533 | b7E-6; (1 page) |
| 534 | b6-3; b7C-3; b7E-6; (1 page) |
| 535-576 | b7E-6; (42 pages) |

```
XXXXXXXXXXXXXXXXXXXXXXXX
X  Deleted Page(s)    X
X No Duplication Fee  X
X  For this Page      X
XXXXXXXXXXXXXXXXXXXXXXXX
```

**Strzok, Peter P. (CD) (FBI)**

| | |
|---|---|
| **From:** | Strzok, Peter P. (CD) (FBI) |
| **Sent:** | Wednesday, August 10, 2016 7:49 PM |
| **To:** | Page, Lisa C. (OGC) (FBI) |
| **Subject:** | Fwd: Seth Rich |

-------- Original message --------
From: _____ (WF) (FBI)" _____
Date: 08/10/2016 7:09 PM (GMT-05:00)
To: "Moffa, Jonathan C. (CD) (FBI) _____ "Strzok, Peter P. (CD) (FBI)"
_____
Subject: Fwd: Seth Rich

**b6 -1**
**b7C -1**
**b7E -1**

Just FYSA. I squashed this with _____

**b6 -1**
**b7C -1**

...

-------- Original message --------
From: _____ (WF) (FBI)" _____
Date: 08/10/2016 1:25 PM (GMT-05:00)
To: _____ (WF) (FBI)" _____ (WF) (FBI)"
Cc: _____ (WF) (FBI) _____ (WF) (FBI)"
_____ (WF) (FBI)"
Subject: RE: Seth Rich

**b6 -1**
**b7C -1**
**b7E -1**

Thank _____ Will do.

From: _____ (WF) (FBI)
Sent: Wednesday, August 10, 2016 1:00 PM
To _____ (WF) (FBI) _____ WF) (FBI)
Cc _____ (WF) (FBI) _____ (WF) (FBI) _____ (WF) (FBI)
Subject: RE: Seth Rich

**b6 -1**
**b7C -1**
**b7E -1**

Hi _____

**b5 -1**
**b6 -1**
**b7C -1**
**b7E -1**

...

-------- Original message --------
From: _____ (WF) (FBI) _____          b6 -1
Date: 08/10/2016 12:54 PM (GMT-05:00)                                  b7C -1
To: _____ (WF) (FBI)"                                        b7E -1
Cc: _____ (WF) (FBI)" _____ (WF) (FBI)"
_____ (WF) (FBI)
Subject: RE: Seth Rich

Adding _____ for real.  Stupid Samsung.

-------- Original message --------
From: _____ (WF) (FBI) _____          b5 -1
Date: 08/10/2016 12:53 PM (GMT-05:00)                                  b6 -1
To: _____ (WF) (FBI)                                         b7C -1
Cc: _____ (WF) (FBI)" _____ (WF) (FBI)"             b7E -1
_____
Subject: RE: Seth Rich

Adding SSA _____ I'm aware of this reporting from earlier this week but not any specific involvement in any
related case.

-------- Original message --------
From: _____ (WF) (FBI)                                        b6 -1
Date: 08/10/2016 10:32 AM (GMT-05:00)                                  b7C -1
To: _____ (WF) (FBI)"                                        b7E -1
Cc: _____ (WF) (FBI)" _____ (WF) (FBI)"
Subject: Seth Rich

_____                                                               b6 -1
                                                                       b7C -1

I hope you are well.  I heard from the front office that you are covering for ASAC _____ this week.  Various
news outlets are reporting today that Julian Assange suggested during a recent overseas interview that DNC
Staffer, Seth Rich was a Wikileak's source, and may have been killed because he leaked the DNC e-mails to
his organization, and that Wikileak's was offering $20,000 for information regarding Rich's death last
month.  Based on this news, we anticipate additional press coverage on this matter.  I hear that you are in a
class today; however, when you have a moment, can you please give me a call to discuss what involvement
the Bureau has in the investigation.

Thanks,

_____                                                               b6 -1
                                                                       b7C -1
FBI Washington Field Office                                            b7E -1
Public Affairs
Des _____
Cell _____
_____

FBI(20-cv-447)-2

b7E -2

FD-1036 (Rev. 10-16-2009)

(U) ~~SECRET//NOFORN~~

# FEDERAL BUREAU OF INVESTIGATION

## Import Form

**Form Type:** FD-302 - Form for Reporting
Information that may become Subject of
Testimony

**Date:** 08/15/2018

b6 -1
b7C -1

**Title:** (U//~~FOUO~~) Interview of Richard Gates on 4/10/2018

```
CLASSIFIED BY: NSICG
REASON: 1.4 (C)
DECLASSIFY ON: 12-31-2043
DATE: 02-04-2021
```

**Approved By:**

**Drafted By:**

```
ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE
```

**Case ID #:**                    (U) ~~X~~/~~NF~~

b1 -1
b3 -1
b6 -3
b7C -3
b7E -2

SENSITIVE INVESTIGATIVE MATTER   (S)

**Synopsis:** (U//~~FOUO~~) Interview of Richard Gates on 4/10/2018-
originally serialized in                      Administrative
Note: Sentinel does not allow reserialization to a prohibited case.
Therefore, the official record copy is being imported into this case.

Reason: 1.4(b)
Derived From: FBI NSIC CG
Declassify On: 20431231

◆◆

(U) ~~SECRET//NOFORN~~

FBI(20-cv-447)-3

**b7E -2**

FD-302 (Rev. 5-8-10)

UNCLASSIFIED//~~FOUO~~

## FEDERAL BUREAU OF INVESTIGATION

Date of entry    08/27/2018

     JASON FISHBEIN, date of birth (DOB): ⬚ was interviewed
telephonically on his cellular phone number ⬚ after agents
tried to interview him at his residence at ⬚
⬚    After being advised of the identity of the
interviewing Agent and the nature of the interview, FISHBEIN provided the
following information:

**b6 -3**
**b7C -3**

**b6 -3**
**b7A -1**
**b7C -3**

     FISHBEIN called the interviewing agent back shortly after and explained
he had some time to talk.  FISHBEIN said ⬚

**b6 -3**
**b7A -1**
**b7C -3**

    When asked about ⬚ FISHBEIN explained

**b6 -3**
**b7A -1**
**b7C -3**

**b6 -3**
**b7A -1**
**b7C -3**

UNCLASSIFIED//~~FOUO~~

Investigation on  08/16/2018   at ⬚   United States (Phone)    **b6 -1, -3**
**b7C -1, -3**

File # ⬚                           Date drafted  08/16/2018  **b7E -2**

by ⬚

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

FD-302a (Rev. 05-08-10)

**UNCLASSIFIED/~~FOUO~~**

Continuation of FD-302 of  (U/~~FOUO~~) Telephonic interview of Jason
Fishbein on 08/16/2018                         , On  08/16/2018  , Page  2 of 4

b6 -3
b7A -1
b7C -3

b6 -3
b7A -1
b7C -3

b6 -3
b7A -1
b7C -3

b6 -3
b7A -1
b7C -3

    FISHBEIN has a high regard for [                ] and thought she displayed
great integrity in their conversations.  FISHBEIN got the impression she
had been a confidant of [          ] for many years.

b6 -3
b7A -1
b7C -3

b6 -3
b7A -1
b7C -3

FD-302 (Rev. 5-8-10)

- 1 of 11 -



## FEDERAL BUREAU OF INVESTIGATION

Date of entry    10/21/2018

(U) On 07/02/2018 Special Agent (SA) [          ]      SA [          ]          **b6 -1, -2,-3**
[          ] Intelligence Analyst [          ] and Assistant Special          **b7C -1-,-2 -3**
Counsel (ASC) Aaron Zelinsky interviewed [          ]          at the
Special Counsel's Office in Washington, DC. [          ] counsel, [          ]
[          ] was present. ASC Zelinksy admonished [          ] that lying to the FBI
is a crime. After having been advised of the identity of the interviewing
SAs and the nature of the interview, [          ] provided the following
information:

**b5 per DOJ/OIP**

**b6 -3**
**b7C -3**

**b5 per DOJ/OIP**

**b6 -3**
**b7C -3**

**b5 per DOJ/OIP**
**b6 -3**
**b7C -3**

Investigation on  07/02/2018  at  Washington, District Of Columbia, United States (In Person)

File # [                                        ]          Date drafted  07/02/2018          **b6 -1**
                                                                                              **b7C -1**
by [                                        ]                                                  **b7E -2**

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

FBI(20-cv-447)-14

FD-302a (Rev. 05-08-10)

b6 -3
b7C -3
b7E -2

Continuation of FD-302 of   {U}  Interview of                        , On  07/02/2018  , Page   6 of 11

b5 per DOJ/OIP

b6 -3
b7C -3

b5 per DOJ/OIP

b6 -3
b7C -3

b5 per DOJ/OIP

b6 -3
b7C -3

b5 per DOJ/OIP

b6 -3
b7C -3

b5 per DOJ/OIP

b6 -3
b7C -3

b5 per DOJ/OIP

b5 per DOJ/OIP

b6 -3
b7C -3

b5 per DOJ/OIP

b6 -3
b7C -3

b6 -3
b7C -3
b7E -2

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of  (U)  Interview of _____ , On  07/02/2018  , Page  9 of 11

b5 per DOJ/OIP

b6 --3
b7C -3

b5 per DOJ/OIP

b6 -3
b7C -3

b5 per DOJ/OIP

b6 -3
b7C -3

b5 per DOJ/OIP

b6 -3
b7C -3

b5 per DOJ/OIP

b6 -3
b7C -3

b5 per DOJ/OIP

b6 -3
b7C -3

b7E -2

FD-302 (Rev. 5-8-10)

UNCLASSIFIED//~~FOUO~~

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry     10/23/2018

Jason Fishbein, date of birth (DOB): [ ] phone number [ ] email addresses     b6 -1,-2, -3
[ ]                                                           was interviewed at     b7C -1,-2, -3
the Special Counsel's Office, located at 395 E Street, SW, Washington, D.C. Present for the interview were
Assistant Special Counsel (ASC) Aaron Zelinsky, Supervisory Special Agent [ ] Special
Agent [ ] Intelligence Analyst [ ] Fishbein was accompanied by his attorney [ ]
[ ] After being advised of the identities of the interviewing parties and the purpose of the interview,
Fishbein provided the following information:

b5 per DOJ/OIP

b6 -2, -3
b7C -2, -3

b5 per DOJ/OIP

b6 -2, -3
b7C -2, -3

b5 per DOJ/OIP

b6 -2, -3
b7C -2, -3

b5 per DOJ/OIP

b6 -2, -3
b7C -2, -3

b5 per DOJ/OIP

b6 -3
b7C -3

UNCLASSIFIED//~~FOUO~~

Investigation on   09/05/2018   at   Washington, District Of Columbia, United States (In Person)

File # [ ]                                                    Date drafted   09/06/2018     b6 -1
                                                                                           b7C -1
by [ ]                                                                                     b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

b7E -2

FD-302a (Rev. 05-08-10)

UNCLASSIFIED//~~FOUO~~

(U) Interview of Jason Fishbein 09/05
/2018

Continuation of FD-302 of _____ , On  09/05/2018 , Page  2 of 5

b5 per DOJ/OIP

b6 -3
b7C -3

b5 per DOJ/OIP

b6 -3
b7C -3

b5 per DOJ/OIP

b6 -2, -3
b7C -2, -3

b5 per DOJ/OIP

b6 -3
b7C -3

b5 per DOJ/OIP

b6 -3
b7C -3

b5 per DOJ/OIP

b6 -3
b7C -3

b5 per DOJ/OIP

b6 -3
b7C -3

b5 per DOJ/OIP

b6 -2, -3
b7C -2, -3

FD-302 (Rev. 5-8-10)

## FEDERAL BUREAU OF INVESTIGATION

**b6 -1,-2, -3**
**b7C -1,-2, -3**

Date of entry     10/31/2018

Paul J. Manafort, date of birth[         ] was interviewed at the Special
Counsel's Office, located at 395 E Street SE, Washington, D.
C.  Participating in the interview were Special Agent (SA) [        ]
[          ] SA [                    ] Senior Assistant Special Counsel
(SASC) Jeannie S. Rhee, SASC Andrew Weissman,and Assistant Special Counsel
Aaron Zelinsky. Manafort was accompanied by his attorneys, Richard
Westling, Thomas Zehnle, and [            ] After being advised of the
identity of the interviewing agents and the nature of the interview,
Manafort provided the following information:

Roger Stone was informally involved in the Donald J. Trump presidential
campaign in April or May of 2016.  Stone had been involved in the campaign
in the beginning, while Manafort was not, so Manafort used Stone for
institutional memory and knowledge of the campaign. Stone used Manafort
for informal access back into the campaign.

Stone recommended that Manafort bring on Michael Caputo, which Manafort
did. Caputo initially came on to help with the April primary in New York,
and then Manafort brought him on full time after that. Caputo had worked
with Stone in the past and Manafort had met him years prior.  Stone also
recommended[                                                        ]     **b6 -2**
[                                                                     ]     **b7C -2**

Manafort said Stone gave him information about Corey Lewandowski and Hope
Hicks, two members of the campaign that Manafort did not know well. Stone
hated Lewandowski, who undercut Manafort in the campaign.  Stone thought
he was helping Manafort by undercutting Lewandowski in the press, but it
did not actually help Manafort much.

Manafort explained that "the Count of Monte Cristo" was a nickname given
to him during the Dole campaign period. [            ]made that nickname up     **b6 -2**
for Manafort because of the way Manafort wore his overcoat over his         **b7C -2**
shoulders like a cape.

Stone was an effective advocate from outside of the campaign.  He was
effective with both the mainstream and the alt-right media.  Stone could
also do things from outside the campaign that the campaign may not want to

Investigation on  09/27/2018  at  Washington, District Of Columbia, United States (In Person)

File # [                          ]                              Date drafted  09/30/2018     **b6 -1**
                                                                                             **b7C -1**
by [                                          ]                                              **b7E -2**

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

b7E -2

FD-302a (Rev. 05-08-10)

(U) Interview of Paul J. Manafort

Continuation of FD-302 of (09.27.18) , On 09/27/2018 , Page 10 of 11

tape was coming out in advance. Manafort did not ask Stone about his connection to WikiLeaks or ask where the information came from; Manafort did not need to know who Stone spoke to.

Stone's statement of denial on October 11, 2016 that he had advance knowledge of the leak of the Podesta emails was "inconsistent with what he told" Manafort. Manafort believed Stone knew in advance Podesta's emails were coming out.

Manafort and Stone did not have a conversation in which Stone said Manafort should not tell anyone what he knew about the timing of the Podesta emails. They did not talk about Stone running away from what Stone had told Manafort.

In approximately the last six months, Manafort and Stone have had conversations in which Stone told Manafort he was being targeted by the Special Counsel's Office and that the investigation was costing him a lot of money. Stone said the Special Counsel's Office was accusing him of effectively controlling the timing of the leaked Podesta emails. Manafort thought it was some time in May or June 2018 that Stone told him the Special Counsel's Office thought he had a role in the Podesta emails. Stone did not expressly remind or tell Manafort what he (Stone) knew about the emails. They did not discuss the fact that Stone did actually have advance knowledge of the Podesta emails.

Stone said to Manafort that he was not the decision maker or the controller of the information. Stone said he may have had advance knowledge, but he was not the decision maker. Stone was making clear to Manafort that he did not control the emails or make decisions about them. Stone said he received information about the Podesta emails but was a conduit, not someone in a position to get them released. Manafort was confused as to the various people and hacks. Manafort asked Stone to go through the narrative of Assange, Guccifer, the DNC hack, and Seth Rich so that Manafort could understand it.

Stone knew Manafort knew that Stone's public statements were false, but Stone "confused" Manafort.

Stone did not advise Manafort to punch back or discredit the Special Counsel's Office.  Stone did not raise any desire to respond to the Special Counsel's Office investigation by planting media stories.

Manafort was not aware of any attempts on Stone's part to contact Manafort after Manafort was incarcerated.

FBI(20-cv-447)-30

b7E -2

FD-1057 (Rev. 5-8-10)

(U) ~~SECRET~~ / ~~NOFORN~~

# FEDERAL BUREAU OF INVESTIGATION

### Electronic Communication

**Title:** (U/~~FOUO~~) Information From ☐

**Date:** 09/01/2016   b6 -1, -4
b7C -1, -4
b7E -1

**CC:**

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

CLASSIFIED BY: NSICG ☐
REASON: 1.4 (C)
DECLASSIFY ON: 12-31-2041
DATE: 02-04-2021

**From:**   SAN FRANCISCO
SF-CY1
**Contact:**

**Approved By:**  SIA
SSA

**Drafted By:**

**Case ID #:**

b1 -1
b3 -1
b6 -1
b7C -1
b7E -2, -4

(U)

(S/~~NF~~) UNSUBS;
aka Guccifer2;

(S)

Democratic National Committee - Victim;
State Sponsored Computer Intrusion -   (S)

**Synopsis:**  (U/~~FOUO~~) To document information received from ☐
☐ and research conducted.

b6 -1, -4
b7C -1, -4
b7E -2, -5,- 6

~~Reason: 1.4(b)
Derived From: FBI
NSISC-20090615
Declassify On: 20411231~~

**Reference:**

**Enclosure(s):** Enclosed are the following items:

(U) ~~SECRET~~ / ~~NOFORN~~

b6 -4
b7C -4
b7E -2,- 6

(U) ~~SECRET~~//~~NOFORN~~

Title:  (U//~~FOUO~~) Information From [                    ]
Re:  [                    ]   09/01/2016

**Details:**

(U)  (S//~~NF~~) CASE BACKGROUND

(U)  (S//~~NF~~) On June 15, 2016, an article written by "Guccifer2" was posted to his personal WordPress blog. In the article, Guccifer2 implies he hacked the Democratic National Committee (DNC) servers and refutes an earlier announcement by CrowdStrike, a U.S. based cyber security company, that the DNC hack was perpetrated by two sophisticated hacker groups. In July 2016, Guccifer2 posted documents attributed to the DNC hack on his personal blog. On July 22, 2016, Wikileaks published more than 19,000 DNC emails with more than 8,000 attachments. Guccifer2 claimed responsibility for sharing the information with Wikileaks through his two Twitter accounts. On August 31, 2016, Guccifer2 released documents on his personal blog purported to be from the computer of Representative Nancy Pelosi.

b6 -4
b7C -4
b7D -3
b7E -6

(U)  ~~SECRET~~//~~NOFORN~~

FBI(20-cv-447)-77

**b3 -1**
**b7E -2**

FD-302 (Rev. 5-8-10)

UNCLASSIFIED//~~FOUO~~

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry      06/29/2018

(U//~~FOUO~~) On 10/24/2017, [            ] voluntarily produced [            ]     **b7E -6**
[                              ] The production was placed in the 1A section
of this file. Some of the production is being uploaded digitally; however,
the entire production was too large. Refer to the physical 1A for the full
data.

UNCLASSIFIED//~~FOUO~~

Investigation on   10/24/2017   at   Washington, District Of Columbia, United States (In Person)

File #  [                    ]                                        Date drafted   06/29/2018

by  [                  ]

**b3 -1**
**b6 -1**
**b7C -1**
**b7E -2**

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

**b7E -2**

FD-302 (Rev. 5-8-10)

## FEDERAL BUREAU OF INVESTIGATION

Date of entry    05/29/2018

### FEDERAL GRAND JURY INFORMATION

This document contains information pertaining to a federal grand jury proceeding. The information may not be disseminated within or outside the FBI, except as provided for under Federal Rule of Criminal Procedure 6(e)(3), wherein disclosure may be made to: (1) an attorney for the government for use in performing that attorney's official duties; or (2) any government personnel that an attorney for the government considers necessary to assist in performing that attorney's official duties.


(U) On 05/14/2018 Assistant Special Counsel Aaron Zelinksy served the attached Federal Grand Jury (FGJ) subpoenas                       **b3 -2**
                                                                                         **b6 -2, -3**
                                                                                         **b7C -2, -3**
                                                                                         **b7E -6**


(U) On 05/25/2018 the Special Counsel's Office received production from FGJ subpoena _____ which is included in the case file as a 1A.


Investigation on   05/25/2018   at  Washington, District Of Columbia, United States (Email)

File # _____                                    Date drafted   05/25/2018      **b6 -1**
                                                                                                  **b7C -1**
by _____                                                                               **b7E -2**

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

**b7E -2**

FD-302 (Rev. 5-8-10)

## FEDERAL BUREAU OF INVESTIGATION

Date of entry _____07/13/2018_____

On 07/12/2018, SSA [                                    ] (saved **b6 -1**
to the 1A) signed on 07/09/2018 on the following entities:   **b7C -1**
                                                              **b7E -6**

                                                              **b7E -6**

Investigation on ___07/12/2018___ at  Washington, District Of Columbia, United States (, Other
                                      (Service: [                ]

File # [                              ]                        Date drafted ___07/12/2018___  **b6 -1**
                                                                                               **b7C -1**
by [                        ]                                                                   **b7E -2, -6**

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

FD-1057 (Rev. 5-8-10)

 SECRET / NOFORN (U)



# FEDERAL BUREAU OF INVESTIGATION

### Electronic Communication

| | |
|---|---|
| **Title:** (U) Documentation in Support of Indictment 1:18-cr-00215-ABJ | **Date:** 08/12/2018 |

**From:** SCO
      SCO Team
       **Contact:** [                    ]

b6 -1
b7C -1
b7E -1, -2, -4

**Approved By:** [                    ]

**Drafted By:** [                    ]

**Case ID #:** [                ] (U) S//NF/ [          ]
               SPECIAL COUNSEL MATTERS;
               SENSITIVE INVESTIGATIVE MATTER

**Synopsis:** (U) To document information in support of indictment U.S.
v. Viktor Borisovich Netyksho, et al (Case 1:18-cr-00215, District of
Columbia).

          Reason: 1.4(b)
          Derived From: FBI NSIC CG
          Declassify On: 20431231

**Enclosure(s):** Enclosed are the following items:

b7E -6

[                                                                        ]

 SECRET / NOFORN (U)

FD-302 (Rev. 5-8-10)

- 1 of 14 -



## FEDERAL BUREAU OF INVESTIGATION

Date of entry _01/04/2019_

**b7E -7**

**b6 -1, -2, -3**
**b7C -1, -2, -3**

Jerome Robert Corsi, date of birth (DOB) [          ] social security
account number [        ] was interviewed at the Special Counsel's
Office, 395 E Street SW, Washington, DC in the presence of his attorney,
[          ] Present for the interview were FBI Special Agent (SA) [        ]
[        ] FBI SA [                    ] FBI Intelligence Analyst (IA)
[          ] Senior Assistant Special Counsel (SASC) Jeannie S.
Rhee, SASC Andrew Goldstein, and Assistant Special Counsel (ASC) Aaron
Zelinsky. Prior to the interview, Corsi signed a proffer agreement,
originally signed on September 21, 2018. Corsi was advised that
intentional false statements during this interview would be a violation of
federal law. After being advised of the purpose of the interview and
identities of the interviewing Agents, Corsi provided the following
information:

Corsi had remained silent on his media platforms, for approximately two
months, and since he was first approached by representatives from the
Special Counsel's Office. He will eventually return to those activities
because he depends on them for income.

Corsi spent the evening prior to this interview trying to reconstruct
events that were discussed in previous interviews. Corsi wanted to
remember certain things but could not and he became frustrated as a
result. Corsi had a hard time determining whether or not he was actually
remembering things or if he was inventing them. Corsi forgot a lot of
events given they happened over two years ago.

**b7E -6**

Investigation on _10/31/2018_ at _Washington, District Of Columbia, United States (In Person)_

File # [                    ]                                Date drafted _11/19/2018_

by [                              ]

**b6 -1**
**b7C -1**
**b7E -2**

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

FBI(20-cv-447)-148

FD-302a (Rev. 05-08-10)

b7E -2

Continuation of FD-302 of  (U) Interview of Jerome Corsi (10/31/18) , On  10/31/2018 , Page  3 of 14

period. Corsi examined the senders and recipients of each email. Corsi
also compiled a list of the emails which he posted online. What jumped out
to Corsi was that all of the emails pertained to operatives in the
Democratic National Committee (DNC). Corsi looked for emails from John
Podesta and did not find any. From that, Corsi deduced that Assange's next
release of information would likely pertain to Podesta. Corsi said he
likely shared what he had deduced with Stone.

Corsi reviewed the Schultz drop as if he was conducting a forensic exam.         b6 -3
He attempted to determine which computer systems the emails had originated       b7C -3
from in an attempt to further determine what might be coming in next drop.
He learned this concept form[                          ]Corsi explained
that by conducting a similar review he was able to determine that Guccifer
2.0 had been inside a network system called NGP VAN. The Guccifer 2.0
release contained information related to donors, voting data, and
opposition research. Assange had emails that looked different to Corsi so
he surmised they were evidence of a hack on a different system.

Corsi was asked if he also looked at what was released by DCLeaks and he
confirmed that he had. Corsi downloaded the DCLeaks release and put them
into a file. He remembered downloading a compressed [.zip] file and going
through each file one by one. Corsi remembered seeing files with the
initials NGP on them. Corsi knew those to be the initials of [        ]         b6 -2
[                          ]                                                     b7C -2

Corsi said he believed there were two ways to hack a computer. First,
having the username and password credentials for a legitimate user on a
system. Second, having access to a server where the emails passed through.
Corsi believed the information from the Schultz drop seemed they were
obtained from a server where they had passed through. In addition to the
lack of emails from Podesta, Corsi also noticed that the last email had
been sent in late May 2016. Therefore, Corsi believed the emails were
likely to have been stolen around that time.

Corsi advised that he knew Seth Rich had been killed at 4:30 AM on July
10, 2016. The circumstances surrounding Rich's death were suspicious to
Corsi. Specifically, he wanted to know where Rich's laptop went. Corsi
then explained there had been speculation as to whether or not Rich had
actually stolen the emails from the DNC, rather than them having been
hacked.

Corsi's source,[                                              ]              b6 -2
[                          ]Her ex-husband told Corsi she is crazy,          b7C -2
but Corsi continues to rely on her for information because her reporting
is good. Corsi provided an example of how [        ] had tracked down[        ]
[                ] who was involved in setting up a private server for Clinton.

FD-302a (Rev. 05-08-10)

b7E -2

Continuation of FD-302 of (U) Interview of Jerome Corsi (10/31/18) , On 10/31/2018 , Page 6 of 14

Corsi explained that by forwarding Stone's email request to Malloch he was merely complying with what Stone wanted him to do. Corsi did not expect Malloch to actually do anything with the request which was why he only wrote something to the effect of, "Ted, from Roger," and included no additional instructions for Malloch. Corsi generally had much more detailed discussions with Malloch and provided two examples; when he tried to get Malloch a job on the Trump campaign and when he introduced Malloch to Sam Clovis. Corsi did not actually think Malloch would do anything to reach Assange.

When asked if he ever remembered having a FaceTime conversation with Malloch about what Assange had planned to do, Corsi said he only remembered having such a discussion with [ ] Corsi believed that discussion occurred sometime before he left for Italy, possibly on July 25, 2016. Corsi has known [ ] since approximately 2004. [ ] also thought Rich stole the emails from the DNC and believed the British and John Brennan were behind the Fusion GPS dossier. [ ] also believed the upcoming Wikileaks information would pertain to Podesta. [ ] told Corsi he believed Assange was smart and strategic, and that if Assange didn't drop all of the emails at once then there would be a second drop sometime in October.

b6 -3
b7C -3

## 08/02/2016 EMAIL TO ROGER STONE

Corsi was shown an email [Document 4] he sent Stone on August 2, 2016. In the email he told Stone, "Word is friend in embassy plans 2 more dumps." Corsi read the email and said he had never seen it before. [**Agent note:** Corsi was then afforded time to review the email privately with his attorney.] Corsi read each line of the email out loud and provided an explanation for each one.

b6 -3
b7C -3

Sentence 2 – "Word is friend in embassy plans 2 more dumps. One shortly after I'm back. Impact planned to be very damaging." Corsi used the phrase "word is" in his email because he was boasting and inventing that he had a source who was providing him information. Corsi said it was the only explanation because he did not recall having anyone else. Corsi remembered Assange had publically stated that he had more information on Clinton, and Corsi speculated that it would likely come in the form of two more dumps, but that ultimately did not happen. Later in the interview, Corsi said

FD-302a (Rev. 05-08-10)

b7E -2

Continuation of FD-302 of  (U) Interview of Jerome Corsi (10/31/18)  , On  10/31/2018  , Page  8 of 14

b6 -3
b7C -3

Corsi was asked what he was referring to when he used the phrase "friend
in embassy" in his email. Corsi said he was referring to Assange but he
did not want to use his name because Stone may have thought Corsi was
being boastful. When asked if Corsi wrote the email to suggest that the
information was coming from Malloch, Corsi stated he did not remember that
being the case, nor did he remember having any discussions about Malloch
with Stone at that time.

Later in the interview Corsi advised he was being deliberately oblique in
his email, using "secret squirrel stuff," because he did not want the
information to be decoded. Corsi admitted he was using suggestive language
with Stone to portray that Corsi was a source of information for Stone.

Corsi explained that when he figured something out, sometimes out of left
field, he often used the phrase "word is" to provide validity to his
statements. Corsi said it seemed likely that he wanted Stone to believe he
had the information from Assange. Corsi then added that he was likely
relaying three things to Stone; 1) there would be more upcoming
information released, 2) it pertained to Podesta, and 3) it would be
released in seriatim. When asked if he shared that information with Stone
upon his return, Corsi stated that he believed he had, in a follow-up
phone call with Stone after Corsi had returned from Italy.

Later in the interview, Corsi said he did not remember receiving any
information from Wikileaks or Assange, but he was not saying that it did
not happen.

**08/10/2016 EMAIL TO**

b6 -3
b7C -3

Corsi was shown an email he sent to

**RETURN FROM ITALY 08/12/2016**

b3 -1
b7E -2

FD-1036 (Rev. 10-16-2009)

UNCLASSIFIED

# FEDERAL BUREAU OF INVESTIGATION
### Import Form

**Form Type:** OTHER - Other                    **Date:** 02/28/2020

**Title:** (U) Newspaper Article - Rohrabacher confirms he offer pardon

**Approved By:** SSRA _____                    b6 -1
                                                                b7C -1

**Drafted By:** _____

**Case ID #:** _____        (U) _____          b3 -1
                                     CDPO-Legislative Branch;       b7E -2, -4
                                     Sensitive Investigative Matter

**Synopsis:**  (U) Yahoo news article dated February 20, 2020, titled "Rohrabacher confirms he offered Trump pardon to Assange for proof Russia didn't hack DNC email".

◆◆

UNCLASSIFIED

# Rohrabacher confirms he offered Trump pardon to Assange for proof Russia didn't hack DNC email

 Follow **Michael Isikoff** Chief Investigative Correspondent, Yahoo News · February 20, 2020



WASHINGTON — Former California Republican congressman Dana Rohrabacher confirmed in a new interview that during a three-hour meeting at the Ecuadorian Embassy in August 2017, he told Julian Assange he would get President Trump to give him a pardon if he turned over information proving the Russians had not been the source of internal Democratic National Committee emails published by WikiLeaks.

In a phone interview with Yahoo News, Rohrabacher said his goal during the meeting was to find proof for a widely debunked conspiracy theory: that WikiLeaks' real source for the DNC emails was not Russian intelligence agents, as U.S. officials have since concluded, but former DNC staffer Seth Rich, who was murdered on the streets of Washington in July 2016 in what police believe was a botched robbery.

**Far-Right Politicians Are Using Coronavirus To Push Anti-Immigration Xenophobia**

HuffPost

**Virginia: Millions Outraged At New Medicare Changes**

HealthQuotes Ad

b3 -1
b7E -2

FD-302 (Rev. 5-8-10)

## FEDERAL BUREAU OF INVESTIGATION

b3 -1
b6 -1, -3
b7C -1, -3
b7E -2

Date of entry    03/05/2020

As described in ⬛⬛⬛⬛⬛⬛ subfile herein, on 10/02/2019, DANA ROHRABACHER, date of birth (DOB) ⬛⬛⬛⬛ was interviewed at ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ by FBI Special Agents ⬛⬛⬛⬛⬛⬛⬛⬛⬛ The duration of this recording is approximately 4 hours and 5 minutes, beginning at approximately 10:00 a.m. and ending at approximately 2:19 p.m.

⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ This Agent reviewed the full content of the recording. An official transcription of this recording is attached herein as a 1A.  Additionally, some photographs shown during the interview and referenced herein are attached for reference as a 1A. The following are summaries of the conversation between ROHRABACHER and the above listed Agents:

b3 -1
b7A -1
b7E -2

(Below is a partial summary of the material found in the attached transcript and is not intended to be a verbatim account of the conversations, nor does it memorialize all statements made during the conversations by the recorded parties.  The recordings captured are the actual words spoken. Due to the time limitations ROHRABACHER did not provide the FBI with all the known information known to him.)

**Regarding** ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

b6 -3
b7C -3

Rohrabacher discussed a wide variety of topic with ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ ⬛⬛⬛⬛ Rohrabacher has known ⬛⬛⬛⬛ since Rohrabacher was working in the White House with President Ronald Reagan. At that time ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ ⬛⬛⬛⬛ was never a major contributor to any of Rohrabacher's campaigns.

The investigating agents showed Rohrabacher a photograph of ⬛⬛⬛⬛⬛⬛ and Rohrabacher did not recognize the photograph, but did recall the name ⬛⬛⬛⬛⬛⬛

After ⬛⬛⬛⬛⬛⬛⬛⬛ Rohrabacher was ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

**Regarding** ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

b6 -3
b7C -3

⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

| Investigation on | 10/02/2019 | at | ⬛⬛⬛⬛⬛⬛⬛⬛⬛ United States (In Person) |
|---|---|---|---|

b3 -2
b6 -1, -3
b7A -1
b7C -1, -3
b7E -2

File # ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛    Date drafted   10/17/2019

by ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 5-8-10)

b3 -1
b7E -2

Continuation of FD-302 of  (U) Interview of Dana Rohrabacher , On 10/02/2019 , Page 5 of 15

The investigating agents showed Rohrabacher an image of [        ] and Rohrabacher provided the following information:

b6 -3
b7C -3

Rohrabacher knew [                    ] had some business relationship with [      ] but Rohrabacher did not know the nature of that relationship. [                        ] [                                        ] Rohrabacher wrote "The French Doctress" in approximately 1976 when he had a spare year to write without any distractions. Rohrabacher met [      ] [                                                        ] was involved in [                ] wanted the option on the script. [                                ] [                                ] [    ] The option has expired though [                        ] Rohrabacher cleared the sale of the option through the congressional ethics advisors.

Rohrabacher did not recall anything about a company called "C. S. Mining," "Lippo," or any sort of matter regarding Indonesia and a United States mining company.

**Regarding** [                                ]

b6 -3
b7C -3

Rohrabacher knew [                    ] Rohrabacher probably met [            ] at a White House-related function. It was possible that [                        ] [    ] but Rohrabacher does not specifically recall how Rohrabacher met [            ] [      ] was a brilliant man with many contacts.

[                        ] However, Rohrabacher did not know anything about [        ] [    ] being tasked to write articles by [        ]

b6 -3
b7A -1
b7C -3

**UNCLASSIFIED**

# UNITED STATES DEPARTMENT OF JUSTICE
# FEDERAL BUREAU OF INVESTIGATION



11000 WILSHIRE BLVD., STE. 1700
LOS ANGELES, CA  90024

| | | |
|---|---|---|
| Requesting Official(s) and Office(s): | | b3 -1<br>b6 -1 |
| File Number: | | b7C -1<br>b7E -2 |
| Disc Number (Section): | 1D-67 | |
| Transcriber(s) and Office/RA: | OST _____ Los Angeles/LAFO | |

## VERBATIM TRANSCRIPTION

**Participants**

| | | |
|---|---|---|
| SA1: | Special Agent | |
| SA2: | Special Agent | |
| SA3: | Special Agent | |
| DR: | Dana Rohrabacher | |

**Abbreviations**

| | |
|---|---|
| Primary language: | (standard) English |
| PH: | Phonetic |
| UI: | Unintelligible |
| OV: | Overlapping Voice |

b6 -1
b7C -1

**UNCLASSIFIED**

b7E -2

FD-302 (Rev. 5-8-10)

UNCLASSIFIED//~~FOUO~~

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry      09/10/2018

**FEDERAL GRAND JURY INFORMATION**

This document contains information pertaining to a federal grand jury proceeding. The
information may not be disseminated within or outside the FBI, except as provided for
under Federal Rule of Criminal Procedure 6(e)(3), wherein disclosure may be made to:
(1) an attorney for the government for use in performing that attorney's official
duties; or (2) any government personnel that an attorney for the government considers
necessary to assist in performing that attorney's official duties.


     The attached Grand Jury (GJ) subpoena was served by Assistant Special
     Counsel Aaron Zelinsky to ☐                                                    ☐     b3 -2
     ☐                                                                                     b6 -2
                                                                                          b7C -2

     The attached response was received on or about ☐               ☐

UNCLASSIFIED//~~FOUO~~

Investigation on  09/04/2018   at  Washington, District Of Columbia, United States (Email)

File # ☐                                    ☐            Date drafted  09/06/2018       b6 -1
                                                                                        b7C -1
by ☐                                    ☐                                               b7E -1

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

AO 110 (Rev. 06/09) Subpoena to Testify Before a Grand Jury

# UNITED STATES DISTRICT COURT
for the

District of Columbia

**SUBPOENA TO TESTIFY BEFORE A GRAND JURY**

To: [                    ]                                                                                     b3 -2

     **YOU ARE COMMANDED** to appear in this United States district court at the time, date, and place shown below to testify before the court's grand jury. When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place: | U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA<br>U.S. Courthouse, 3rd Floor [          ]<br>333 Constitution Avenue, N.W.<br>Washington, D.C. 20001 | Date and Time: |
|---|---|---|

You must also bring with you the following documents, electronically stored information, or objects: SEE ATTACHMENT.

Date: [                    ]

*CLERK OF COURT*

_____                                                        b3 -2
*Signature of Clerk or Deputy Clerk*

The name, address, telephone number, and email of the Assistant Special Counsel, who requests this subpoena, are:

Aaron Zelinsky, Assistant Special Counsel                                    Subpoena [          ]
Department of Justice – Special Counsel's Office
950 Pennsylvania Avenue NW
Washington, DC 20530

b3 -2

b3 -2
b7A -1

**All records produced and any questions can be directed to:**

Attn: Special Agent
U.S. Department of Justice
Special Counsel's Office, Room B-103
950 Pennsylvania Avenue NW
Washington, DC 20530
Email:

b6 -1
b7C -1
b7E -1

Attn: Special Agent
U.S. Department of Justice
Special Counsel's Office, Room B-103
950 Pennsylvania Avenue NW
Washington, DC 20530
Email

FBI(20-cv-447)-167

FD-302 (Rev. 5-8-10)

b7E -2

**UNCLASSIFIED//FOUO**

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry       10/31/2018

**FEDERAL GRAND JURY INFORMATION**

This document contains information pertaining to a federal grand jury proceeding. The information may not be disseminated within or outside the FBI, except as provided for under Federal Rule of Criminal Procedure 6(e)(3), wherein disclosure may be made to: (1) an attorney for the government for use in performing that attorney's official duties; or (2) any government personnel that an attorney for the government considers necessary to assist in performing that attorney's official duties.

The attached Grand Jury (GJ) responses were received on or about [          ]    b3 -2
[                      ] from [                              ] in response to the    b6 -2
referenced GJ subpoena request. [                                          ]    b7A -1
[                                                                          ]    b7C -2

**UNCLASSIFIED//FOUO**

| | | |
|---|---|---|
| Investigation on [          ] at [                        ] United States (Email) | | |
| File # [                    ] Date drafted 10/17/2018 | | b3 -2 |
| by [                    ] | | b6 -1 |
| | | b7C -1 |
| | | b7E -1 |

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

b7E -2

FD-1036 (Rev. 10-16-2009)

UNCLASSIFIED//FOUO

b3 -2
b6 -1
b7A -1
b7C -1
b7E -2, -4, -6

# FEDERAL BUREAU OF INVESTIGATION

**Import Form**

**Form Type:** [ ]                                    **Date:** 12/12/2018

**Title:** (U//FOUO) [ ]

**Approved By:** [ ]

**Drafted By:** [ ]

**Case ID #:** [ ]        (U) [ ] Grand Jury
Subfile; FOREIGN AGENTS REGISTRATION
ACT; SENSITIVE INVESTIGATIVE MATTER

### FEDERAL GRAND JURY INFORMATION

This document contains information pertaining to a federal grand jury
proceeding. The information may not be disseminated within or outside the
FBI, except as provided for under Federal Rule of Criminal Procedure 6(e)(3),
wherein disclosure may be made to: (1) an attorney for the government for use
in performing that attorney's official duties; or (2) any government
personnel that an attorney for the government considers necessary to assist
in performing that attorney's official duties.

**Synopsis:** (U//FOUO) [ ]            b3 -2
[ ]                                     b7A -1
                                        b7E -6

◆◆

UNCLASSIFIED//FOUO

FBI(20-cv-447)-194

b7E -2

FD-302 (Rev. 5-8-10)

## FEDERAL BUREAU OF INVESTIGATION

Date of entry    06/18/2018

On [                    ] an attorney representing [          ]     b3 -2
[          ] provided to Special Agent [                    ]         b6 -1, -2
[                    ]                                                b7C -1, -2

The records contained [                              ]               b3 -2
[                          ]                                          b6 -2
                                                                     b7C -2,
                                                                     b7E -6

Investigation on [          ] at [                    ] United States (In Person)    b3 -2
                                                                                     b6 -1
File # [                    ]                    Date drafted  06/17/2018             b7C -1
                                                                                     b7E -2
by [                    ]

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

b3 -2
b6 -1, -2
b7C -1, -2
b7E -2

FD-340c(4-11-03)

File Number _____

Field Office Acquiring Evidence _____ WFO _____

Serial # of Originating Document _____

Date Received _____

From _____
(Name of Contributor/Interviewee)

_____
(Address)

_____
(City and State)

By _____

To Be Returned ☐ Yes        ☒ No
Receipt Given ☐ Yes        ☒ No

Grand Jury Material - Disseminate Only Pursuant to Rule 6 (e)
Federal Rules of Criminal Procedure
☒ Yes        ☐ No

Federal Taxpayer Information (FTI)
☐ Yes        ☐ No

Title: _____

Reference: _____ FD-302 _____
(Communication Enclosing Material)

_____

Description: ☐ Original notes re interview of
_____

b3 -2
b7E -2, -6

_____

_____

_____

FD-302 (Rev. 5-8-10)

**UNCLASSIFIED//FOUO**

## FEDERAL BUREAU OF INVESTIGATION

Date of entry     10/30/2018

On 05/30/2018, the Democratic National Committee (DNC) and Hillary For America (HFA) provided the FBI with digital evidence in furtherance of this investigation.

Due to size limitations, original production will be maintained on a DVD in a physical 1A.

**UNCLASSIFIED//FOUO**

Investigation on   05/30/2018   at   Washington, District Of Columbia, United States (Mail)

File #                                                                Date drafted   10/29/2018

by

b6 -1
b7C -1
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

**PERKINSCOIE**

700 13ᵗʰ Street, NW          ✆ +1.202.654.6200
Suite 600                    ✆ +1.202.654.6211
Washington, DC 20005-3960      perkinscoie.com

May 30, 2018

30Graham M. Wilson
GWilson@perkinscoie.com
D  +1.202.434.1638
F  +1.202.654.9154

**VIA HAND DELIVERY**

L. Rush Atkinson
Department of Justice
Special Counsel's Office
950 Pennsylvania Avenue NW
Washington, D.C. 20530

**Re:    Request for Information**

Dear Mr. Atkinson,

On behalf of the Democratic National Committee and Hillary for America, enclosed please find the requested documents and information assembled by current and former employees of our clients, which our clients are voluntarily providing to you on an informal basis in order to assist in Special Counsel Mueller's ongoing investigation

These materials are provided to you on a confidential basis and solely for the purposes of assisting with your investigation. Producing them is not intended to serve as a waiver of any applicable privileges, including the attorney-client or work product privileges. Our clients request that before you publicly release any information or documents that they have provided or share them with any third party, you provide them with advanced notice and an opportunity to discuss that release and any applicable privilege or privacy harms.

b7E  -6

The materials our clients are providing you are contained on the enclosed CD labeled, ▭The CD is password protected, and the password will be provided to you separately.

Witnesses performed a reasonable search of the electronic records available to them for documents responsive to your request. The documents are bates numbered by client.

Please do not hesitate to contact me if you have any questions.

Perkins Coie LLP

UNCLASSIFIED//FOUO

Physical 1A/1C Cover Sheet for Serial Export

**Created From:**

**Package:**

**Stored Location:**          None

**Summary:**          (U//FOUO) Data received
from Perkins Coie

**Acquired By:**

**Acquired On:**          2018-05-30

**Attachment:**          (U//FOUO) DVD Containing
Production

b6 -1
b7C -1
b7E -2

FD-302 (Rev. 5-8-10)



UNCLASSIFIED//~~FOUO~~

### FEDERAL BUREAU OF INVESTIGATION

Date of entry   10/05/2018

Original FD-302 attached in 1A.

UNCLASSIFIED//~~FOUO~~

---

Investigation on  04/10/2018  at  Washington, District Of Columbia, United States (In Person)

File #                                                                    b3 -1

Date drafted  10/04/2018    b6 -1

by                                                                        b7C -1

                                                                          b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FBI(20-cv-447)-306

- 1 of 6 -

FD-302 (Rev. 5-8-10)



UNCLASSIFIED//~~FOUO~~

## FEDERAL BUREAU OF INVESTIGATION

Date of entry    05/10/2018

Richard Gates, was interviewed at 395 E Street SW, Washington, D.C. Present for the interview were SA [                    ] ASAC [              ]    **b6 -1**
[                ] Senior Assistant Special Counsel (SASC) Greg Andres, SASC    **b7C -1**
Jeannie Rhee, SASC Andrew Weissmann, Assistant Special Counsel (ASC) Aaron
Zelinsky, and IA [                    ] After being advised of the official    **b6 -2**
identities of the interviewing parties and the nature of the interview,    **b7C -2**
Gates provided the following information:

Gates began the interview by advising [                                ]
[                ] were not happy with Gates's cooperation with the Special
Counsel's investigation.

### Jerome Corsi

Gates advised Jerome Corsi was trying to schedule a meeting with Donald
Trump in the May/June 2016 timeframe, but Gates did not believe the
meeting took place. Corsi had written a book that Trump had read. Corsi
claimed he had information pertaining to Hillary Clinton's emails, Roger
Stone was aware of these claims. Stone had originally asked Paul Manafort
to meet with Corsi, after which Manafort told Gates about Corsi.

**b6 -3**
**b7C -3**

**b6 -2, -3**
**b7C -2, -3**

**b6 -2, -3**
**b7C -2, -3**

UNCLASSIFIED//~~FOUO~~

Investigation on   04/10/2018   at   Washington, District Of Columbia, United States (In Person)

File #  [                                        ]                               Date drafted   04/24/2018    **b6 -1**
**b7C -1**
by  [                                        ]                                                            **b7E -2**

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FBI(20-cv-447)-309

FD-302a (Rev. 05-08-10)

UNCLASSIFIED//FOUO

Continuation of FD-302 of  (U//FOUO) Richard Gates Interview 04/10/2018 , On 04/10/2018 , Page 4 of 6

b6 -3
b7C -3
b7E -2

**Campaign Response to Hacked Emails**

b6 -3
b7C -3

Gates said there was also an inside job theory about how the emails were obtained fueled by the death of Seth Rich [Note: Seth Conrad Rich was an employee of the DNC who was fatally shot in Washington, D.C. on 07/10/2016]. Gates said he was never present at any talks suggesting the campaign push the inside job theory. The Trump campaign team also thought the Democrats were pushing the Russia narrative.

Gates said Donald Trump Jr. would ask where the emails were in family meetings. Michael Flynn, Kushner, Manafort, [          ] Lewandowski, Jeff Sessions, and Sam Clovis expressed interest in obtaining the emails as well. Gates said the priority focuses of the Trump campaign opposition research team were Clinton's emails and contributions to the Clinton Foundation. Flynn, Kellogg, Sessions, Kushner, and Trump Jr. were all focused on opposition topics.

b6 -3
b7C -3

Gates said interest in the emails was ratcheting up in the April/May 2016 timeframe because it was likely the emails could help Trump's campaign.

b6 -3
b7C -3

b6 -3
b7C -3

Trump Jr. never communicated anything about the 06/09/2016 meeting with Gates. After the news broke about the 06/09/2016 meeting, Manafort asked Gates if he (Gates) was there. [Note: The 06/09/2016 meeting is a reference to a meeting that took place at Trump Tower arranged on the

UNCLASSIFIED//FOUO

FBI(20-cv-447)-310

FD-302 (Rev. 5-8-10)



UNCLASSIFIED//~~FOUO~~

## FEDERAL BUREAU OF INVESTIGATION

Date of entry    10/05/2018

Original FD-302 attached in 1A.

UNCLASSIFIED//~~FOUO~~

Investigation on   04/10/2018   at   Washington, District Of Columbia, United States (In Person)

File #                                          Date drafted   10/04/2018

by

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

b3 -1
b6 -1
b7C -1
b7E -2

b7E -2

FD-302 (Rev. 5-8-10)

## FEDERAL BUREAU OF INVESTIGATION

b6 -1, -2, -3
b7C -1, -2, -3

Date of entry          10/30/2018

                   date of birth         social security number                 was interviewed on October 3 and October 4, 2018 at the law offices of                           in the presence of his attorney,             Participating in the interview were Special Agent (SA)                SA              Senior Assistant Special Counsel (SASC) Andrew Goldstein, and Assistant Special Counsel (ASC) Aaron Zelinsky. After being advised of the identities of the interviewing agents and the purpose of the interview,            provided the following information, which is a consolidation of both days of interviews:

b6 -3
b7C -3

b6 -3
b7C -3

b6 -3
b7C -3

b6 -2, -3
b7C -2, -3

Investigation on   10/03/2018   at   New York, New York, United States (In Person)

File #                                          Date drafted   10/06/2018

by                                            

b6 -1
b7C -1
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

b6 -3
b7C -3
b7E -2

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of ___(U) Interview of [        ] (10.3.18 and 10.4.18)___ , On _10/03/2018_ , Page _13 of 21_

b6 -3
b7C -3
b7E -2

b6 -3
b7C -3

b6 -3
b7C -3

b7E -2

FD-1057 (Rev. 5-8-10)

UNCLASSIFIED//~~FOUO~~

# FEDERAL BUREAU OF INVESTIGATION

### Electronic Communication

**Title:** (U//~~FOUO~~) To provide details of a fraud   **Date:** 04/09/2019
scheme involving [                    ]

b6 -3
b7C -3

**From:** SCO
         SCO Team
              **Contact:** [                              ]

b6 -1
b7C -1
b7E -1, -2

**Approved By:** [                    ]

**Drafted By:** [                    ]

**Case ID #:** [                ]   (U) FBI DISSEM

**Synopsis:**   (U//~~FOUO~~) To refer information on a potential fraud scheme
collected in the course of a Special Counsel's Office (SCO)
investigation to the Washington Field Office (WFO).

b6 -2, -3
b7C -2, -3
b7E -6

**Enclosure(s):** Enclosed are the following items:

UNCLASSIFIED//~~FOUO~~

b6 -3
b7C -3
b7E -2

UNCLASSIFIED//~~FOUO~~

Title:  (U//~~FOUO~~) To provide details of a fraud scheme involving

Re:                                    04/09/2019

b6 -2, -3
b7C -2, -3

Fraud Scheme

b6 -3
b7C -3

(U//~~FOUO~~)

b6 -3
b7C -3

(U//~~FOUO~~)

b6 -3
b7C -3

iMessages with

b6 -3
b7C -3
b7E -6

UNCLASSIFIED//~~FOUO~~

4

FBI(20-cv-447)-325

b6 -3
b7C -3
b7E -2

UNCLASSIFIED//~~FOUO~~

Title:  (U/~~FOUO~~) To provide details of a fraud scheme involving

Re:                                            04/09/2019

(U/~~FOUO~~) Beginning on

exchanged over 2000 iMessages with phone number

b6 -3
b7C -3
b7E -6

b6 -3
b7C -3

b6 -3
b7C -3

b6 -2, -3
b7C -2, -3

UNCLASSIFIED//~~FOUO~~

FBI(20-cv-447)-326

FD-302 (Rev. 5-8-10)

UNCLASSIFIED/~~FOUO~~

## FEDERAL BUREAU OF INVESTIGATION

Date of entry   11/09/2018

telephone number    b6 -1, -3
email address    was interviewed    b7C -1, -3
telephonically. Present for the interview were Senior Assistant Special
Counsels (SASC) Jeannie Rhee and Andrew Goldstein, Assistant Special
Counsel (ASC) Aaron Zelinsky, and Special Agent
After being advised of the identity of the interviewing parties and the
nature of the interview,        provided the following information:

        advised he had recordings to provide the Special Counsel's Office    b6 -3
(SCO) on dropbox and would send them via email.    b7C -3

                                                        however       did    b3 -2
                                                                             b6 -3
acknowledge he had spoken with Jay Sekulow (Sekulow). The contact occurred    b7C -3
after
        but said it could have occurred soon thereafter.        said
Sekulow was the one who initiated contact        did not know how
Sekulow knew to get in touch with

        told Sekulow that                              had reached out    b6 -3
to                    had declined to speak with them.    b7C -3

        Sekulow wanted to know                                           b6 -3
                        Sekulow did not indicate he had asked anyone    b7C -3
else about the same set of topics. Sekulow did not indicate he had spoken
with                    Sekulow had brought up the

UNCLASSIFIED/~~FOUO~~

Investigation on  10/24/2018  at  Washington, District Of Columbia, United States  (Phone)

File #                                                        Date drafted  10/24/2018    b6 -1
                                                                                          b7C -1
by                                                                                        b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

**b6 -3**
**b7C -3**
**b7E -2**

FD-302a (Rev. 05-08-10)

**UNCLASSIFIED//~~FOUO~~**

(U//~~FOUO~~) Interview of ⬜⬜⬜⬜ 10/24
Continuation of FD-302 of _____/2018_____, On  10/24/2018 , Page  3 of 3

**b6 -3**
**b7C -3**

**b6 -3**
**b7C -3**

FD-1057 (Rev. 5-8-10)

UNCLASSIFIED

# FEDERAL BUREAU OF INVESTIGATION
### Electronic Communication

**Title:** (U) CASE OPENING & SUMMARY          **Date:** 11/07/2017

**From:** BOSTON
      BS-C6
      **Contact:** [_____]          b6 -1, -3
                                          b7A -1
**Approved By:** SSA [_____]          b7C -1, -3
                                             b7E -1

**Drafted By:** [_____]

**Case ID #:** [_____]          (U) [_____]          b6 -3
                           [_____]          b7C -3
                   DARK WEB THREAT          b7E -5, -6

**Synopsis:**   (U) Case opening and summary.

[_____]

**Enclosure(s):** Enclosed are the following items:
1.  (U) [_____]
2.  (U) [_____] main site
3.  (U) [_____] w [_____]
4.  (U) contact information
5.  (U) [_____] Lexis Nexus

**Details:**

A company called [_____] was conducting research for an
unrelated, non-law enforcement client and came upon a site called [____]          b6 -3
[_____] This site listed [_____]          b7C -3
[_____] as a target. On November 5, 2017, [_____] felt an obligation to          b7D -3
take action so they notified NYPD who in turn, contacted the Boston          b7E -6
Regional Intelligence Center (BRIC). Boston FBI attempted to contact
[_____] the same day and made successful contact on November 6, 2017.

UNCLASSIFIED

**b7A -1**

UNCLASSIFIED

Title:  (U) CASE OPENING & SUMMARY
Re: [                    ] 11/07/2017

**b7E -6**

**b6 -3**
**b7C -3**
**b7E -6**

**b6 -3**
**b7C -3**
**b7E -6**

(screen shot attached as 1A).

Given [                    ] it is conceivable that an individual or group would want to pay for his death.

◆◆

UNCLASSIFIED

3

FBI(20-cv-447)-403

b7E -2

FD-302 (Rev. 5-8-10)

## FEDERAL BUREAU OF INVESTIGATION

Date of entry          03/26/2018

- **SENSITIVE MATTER - Please do not disseminate without discussing** b6 -1, -4, -5
**the writer -**                                                              b7C -1, -4, -5
                                                                             b7D -3

On March 15, 2018, Special Agent [              ] and Attorney for
the Special Counsel's Office Heather Alpino met with Assistant US Attorney
[              ] telephone number [         ] cellular telephone [        ]
[   ] and [                     ] telephone number [         ] email
address [                   ]   The meeting took place in [        ]          b6 -2, -4
office at 555 4th Street, NW, Washington DC 20530.                            b7C -2, -4
                                                                             b7D -3

[                                                      ] the homicide
of Seth Conrad RICH (RICH), date of birth January 3, 1989, social security
account number [            ]

RICH was shot on July 10, 2016 at approximately 04:19 am EST in front  b6 -4, -5
of 2134 Flagler Place, NW, Washington DC.  RICH was pronounced dead on b7C -4, -5
July 10, 2016, at approximately 05:57am EST.                           b7D -3

[                        ] AUSA [     ] reviewed RICH's financial records b6 -4, -5
and did not identify any unusual deposits or withdrawals.                 b7C -4, -5
                                                                         b7D -3

[                    ] AUSA [   ] interviewed [                        ]
[                      ] and none of the witnesses reported anything unusual
about his life prior to the homicide. [                  ] believed, RICH
had a job interview with a recruiter for a position as a data analyst with
another company in Washington DC.

Prior to the homicide, RICH worked for the Democratic National
Committee (DNC) in Washington DC in the outreach to college
students.  RICH used Information Technology in his work at DNC.

[                              ] a witness who was [            ] at        b6 -4
the time of the homicide and recalled hearing gunshots.  At the time, the   b7C -4
witness thought the sound was the fireworks.  The witness also observed     b7D -3

Investigation on   03/15/2018   at   Washington, District Of Columbia, United States (In Person)

File # [                    ]                              Date drafted   03/20/2018      b6 -1
                                                                                         b7C -1
by [                    ]                                                                 b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

b6 -4, -5
b7C -4, -5
b7D -3
b7E -2

FD-302a (Rev. 05-08-10)

(U) SENSITIVE MATTER - Meeting with AUSA

Continuation of FD-302 of ___re. Seth Rich_____, On _03/15/2018_, Page _2 of 3_

_____ walking away from the location where the witness observed
another male laying on the ground.  The witness thought the male on the
ground was drunk and did not think anything was wrong.  The following day,
the witness observed a blood stain on the ground and police tape and
realized that something bad happened.

b6 -3
b7C -3

_____ opined that the homicide of RICH was a robbery
gone bad.  RICH was shot twice in the back and was alive when police found
him.  The police attempted to interview RICH on the way to the hospital
but were not able to obtain a statement, because RICH was very drunk.

b6 -4
b7C -4
b7D -3

_____ After the homicide,
_____ took RICH's personal laptop to his house in _____
_____ was not aware if _____ deleted or
changed anything on RICH's laptop.

b6 -2, -4
b7C -2, -4
b7D -3

b6 -4, -5
b7C -4, -5
b7D -3

_____ AUSA _____ currently do not have anyone in
custody nor any good suspects for the homicide of RICH.

b6 -4, -5
b7C -4, -5
b7D -3

_____ AUSA _____ are aware how sensitive this
matter is and how much attention the homicide of RICH received in the
media.  AUSA _____ prepared a number of memorandums to document various
misinformation and conspiracies surrounding RICH's homicide.

b6 -4, -5
b7C -4, -5
b7D -3

b7D -3

b6 -1
b7C -1
b7D -3

b6 -4
b7C -4
b7D -3

_____ AUSA _____ are aware that the FBI is in
possession of RICH's work laptop.  _____ AUSA _____
requested a forensic image of the laptop for the homicide
investigation.

b6 -4, -5
b7C -4, -5
b7D -3

b6 -4, -5
b7C -4, -5
b7D -3
b7E -2

FD-302a (Rev. 05-08-10)

(U) SENSITIVE MATTER - Meeting with AUSA

Continuation of FD-302 of  re. Seth Rich                                    , On  03/15/2018  , Page  3 of 3

FD-302 (Rev. 5-8-10)

- 1 of 6 -

b6 -1
b7C -1
b7E -2

(U) ~~SECRET/ /NOFORN~~

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry _____ 09/29/2016

[_____] date of birth [_____] was interviewed at
her residential address, [_____]
telephone numbers [_____] (newest) and [_____] After being
advised of the identity of the interviewing Agent and the nature of the
interview, [_____] provided the following information:

b6 -4
b7C -4

[blank box]

b6 -2, -4
b7C -2, -4

[blank box]

b6 -4
b7C -4

[____] MANAFORT was DONALD TRUMP's presidential campaign manager who has
suspected ties to Russia [_____]

[blank box]

b6 -4
b7C -4

Reason: 1.4(c)
Derived From: FBI NSIC, dated
20120629
Declassify On: 20411231

(U) ~~SECRET/ /NOFORN~~

Investigation on _09/14/2016_ at _Washington, District Of Columbia, United States (In Person)_

File # [_____]          Date drafted _09/16/2016_

by [_____]

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

b3 -1
b6 -1
b7C -1
b7E -2

FBI(20-cv-447)-423

b6 -4
b7C -4
b7E -2

FD-302a (Rev. 05-08-10)

(U) ~~SECRET~~//~~NOFORN~~

Continuation of FD-302 of  (U/~~FOUO~~) Interview of [_____] , On  09/14/2016 , Page  2 of 6

b6 -2, -4
b7C -2, -4

b6 -2, -4
b7C -2, -4

She also stated that she had read an article about 20,000 e-Mails taken, at which time she told [_____] that she had concern**s,** and suspected that the hackers would release the e-Mails around the time of the Democratic National Convention.

b6 -2, -4
b7C -2, -4

b6 -4
b7C -4

SETH RICH was murdered on the morning of 07/10/2016 in Washington, DC.

b6 -4
b7C -4

FD-302a (Rev. 05-08-10)

**b6 -4**
**b7C -4**
**b7E -2**

SECRET//NOFORN

(U)

Continuation of FD-302 of (U//FOUO) Interview of _____ , On 09/14/2016 , Page 5 of 6

**b6 -2, -4**
**b7C -2, -4**

**b6 -2, -4**
**b7C -2, -4**

**b6 -4**
**b7C -4**

**b6 -2, -4**
**b7C -2, -4**

**b6 -3, -4**
**b7C -3, -4**

**b6 -4**
**b7C -4**

**b6 -3, -4**
**b7C -3, -4**

DNC Staffer Seth **b6 -4**
Conrad Rich was murdered _____ **b7C -4**

**b6 -4**
**b7C -4**

**b6 -2, -4**
**b7C -2, -4**

**b6 -2, -4**
**b7C -2, -4**

**b6 -4**
**b7C -4**

(U)            SECRET//NOFORN

b6 -4
b7C -4
b7E -2

FD-302a (Rev. 05-08-10)

(U)  ~~SECRET//NOFORN~~

Continuation of FD-302 of  (U//FOUO) Interview of _____ , On  09/14/2016 , Page  6 of 6

b6 -4
b7C -4

b6 -4, -5
b7C -4, -5

b6 -4
b7C -4

b6 -2, -4
b7C -2, -4

(U)  ~~SECRET//NOFORN~~

b6 -1, -2, -4
b7C -1, -2, -4
b7E -6

NOTE:  My colleague, DNC Staffer Seth Conrad Rich was murdered that same Sunday at 4:20 AM in Washington, D.C.  I didn't know him well - just exchanged greetings in the hallway a couple of times.

FD-302 (Rev. 5-8-10)

(U) ~~SECRET~~ / ~~NOFORN~~

## FEDERAL BUREAU OF INVESTIGATION

Date of entry      09/29/2016

[                    ] date of birth [               ] was interviewed at
her residential address, [                                  ]
telephone numbers [                ] (newest) and [              ] After being
advised of the identity of the interviewing Agent and the nature of the
interview, [          ] provided the following information:

                                                                    **b6 -1**
                                                                    **b7C -1**
                                                                    **b7E -2**

                                                                    **b6 -4**
                                                                    **b7C -4**

                                                                    **b6 -2, -4**
                                                                    **b7C -2, -4**

                                                                    **b6 -4**
                                                                    **b7C -4**

[       ] MANAFORT was DONALD TRUMP's presidential campaign manager who has
suspected ties to Russia [                                          ]

                                                                    **b6 -4**
                                                                    **b7C -4**

Reason: 1.4(c)
Derived From: FBI NSIC, dated
20120629
Declassify On: 20411231

(U) ~~SECRET~~ / ~~NOFORN~~

Investigation on   09/14/2016   at   Washington, District Of Columbia, United States (In Person)

File # [                              ]                    Date drafted   09/16/2016

by [                              ]

                                                                    **b3 -1**
                                                                    **b6 -1**
                                                                    **b7C -1**
                                                                    **b7E -2**

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

b6 -4
b7C -4
b7E -2

FD-302a (Rev. 05-08-10)

(U) ~~SECRET~~ / ~~NOFORN~~

Continuation of FD-302 of (U//~~FOUO~~) Interview of _____ , On 09/14/2016 , Page 2 of 6

b6 -2, -4
b7C -2, -4

b6 -2, -4
b7C -2, -4

She also stated that she had read an article about 20,000 e-Mails taken, at
which time she told _____ that she had concern**s,** and suspected that the
hackers would release the e-Mails around the time of the Democratic
National Convention.

b6 -2, -4
b7C -2, -4

b6 -2, -4
b7C -2, -4

b6 -4
b7C -4

SETH RICH was murdered
on the morning of 07/10/2016 in Washington, DC.

b6 -4
b7C -4

FD-302a (Rev. 05-08-10)

b6 -4
b7C -4
b7E -2

(U)   ~~SECRET~~/ ~~NOFORN~~

Continuation of FD-302 of  (U/~~FOUO~~) Interview of ⬜⬜⬜⬜ , On  09/14/2016 , Page  5 of 6

b6 -2, -4
b7C -2, -4

b6 -2, -4
b7C -2, -4

b6 -4
b7C -4

b6 -2, -4
b7C -2, -4

b6 -3, -4
b7C -3, -4

b6 -4
b7C -4

b6 -3, -4
b7C -3, -4

DNC Staffer Seth    b6 -4
Conrad Rich was murdered ⬜⬜⬜    b7C -4

b6 -4
b7C -4

b6 -2, -4
b7C -2, -4

b6 -2, -4
b7C -2, -4

b6 -4
b7C -4

b6 -4
b7C -4
b7E -2

FD-302a (Rev. 05-08-10)

(U) ~~SECRET~~ / ~~NOFORN~~

Continuation of FD-302 of (U//~~FOUO~~) Interview of _____ , On 09/14/2016 , Page 6 of 6

b6 -4
b7C -4

b6 -4, -5
b7C -4, -5

b6 -4
b7C -4

b6 -2, -4
b7C -2, -4

(U) ~~SECRET~~ / ~~NOFORN~~

FBI(20-cv-447)-433

FD-302 (Rev. 5-8-10)

b7E -2

## FEDERAL BUREAU OF INVESTIGATION

Date of entry    11/02/2018

b6 -1, -3
b7C -1, -3

Paul J. Manafort, date of birth [          ] was interviewed at the Special
Counsel's Office, located at 395 E Street SE, Washington, D.
C.  Participating in the interview were Special Agent (SA) [          ]
[          ] SA [          ] Senior Assistant Special Counsel
(SASC) Jeannie S. Rhee, SASC Andrew Weissman, SASC Andrew Goldstein, and
Assistant Special Counsel Aaron Zelinsky. Manafort was accompanied by his
attorneys, Richard Westling and Thomas Zehnle. After being advised of the
identities of the interviewing agents and the nature of the interview,
Manafort provided the following information:

## Roger Stone:

Roger Stone took a "victory lap" after WikiLeaks published Podesta's
emails. Manafort remembered it because he had teased Stone the week prior
about it, because Stone said every day that something was
coming.  Manafort told Stone that if it had not come out, Stone would
still be saying something was coming.

Toward the end of September or beginning of October 2016, [          ]

b6 -3
b7C -3

Manafort was familiar with the statement Assange made on October 3, 2016,
but he did not independently remember it. He may have discussed it with
[                                              ] but he was not sure.

b6 -3
b7C -3

Manafort had a clear impression that Stone said things would come out
related to Podesta. He did not recall that Stone specifically mentioned
Podesta's emails, just that Stone said it related to Podesta. Manafort
related it to the hacking, so he related it to emails, since he knew the

Investigation on  10/01/2018  at  Washington, District Of Columbia, United States (In Person)

File # [                    ]                                    Date drafted  10/05/2018

b6 -1
b7C -1

by [                              ]

b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

FBI(20-cv-447)-437

FD-302a (Rev. 05-08-10)

b7E -2

(U) Interview of Paul J. Manafort
Continuation of FD-302 of (10.01.18) , On 10/01/2018 , Page 4 of 12

b6 -3
b7C -3

b6 -3
b7C -3

b6 -3
b7C -3

b6 -3
b7C -3

b6 -3
b7C -3

b6 -3
b7C -3

b6 -3
b7C -3

b6 -3
b7C -3

**b7E -2**

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of  (U) Interview of Paul J. Manafort
(10.01.18)  , On  10/01/2018  , Page  5 of 12

b6 -3
b7C -3

b6 -3
b7C -3

b6 -3
b7C -3

b6 -3
b7C -3

b6 -3
b7C -3

b6 -3
b7C -3

b6 -3
b7C -3

b7E -2

FD-302 (Rev. 5-8-10)

UNCLASSIFIED//~~FOUO~~

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry          11/02/2018

On October 04, 2018, Assistant Special Counsel (ASC) Aaron Zelinsky
sent two Consent to Search Computer(s) forms [FD-941] to attorney,⬚  **b6 -2, -3**
⬚ who represents Jerome Corsi in this matter. The consent forms   **b7C -2, -3**
authorize the FBI to conduct searches of the following electronic accounts:  **b7E -6**

⬚

Corsi signed the consent forms, with⬚as his witness. The completed  **b6 -2**
forms were then scanned by⬚and returned to ASC Zelinsky via email. A  **b7C -2**
copy of the completed forms has been enclosed for the file as a digital 1A
attachment to this FD-302.

On October 05, 2018 at 3:12 PM, Special Agent⬚  **b6 -1, -2, -3**
⬚ After SA⬚ was presented  **b7C -1, -2, -3**
with a two-factor authentication prompt,⬚ initiated a three-way  **b7E -6**
conference call between himself, SA⬚ and Corsi. SA⬚
⬚ SA⬚ (attached in 1A)
before being locked out of the account.

On October 11, 2018 at 9:27 AM, after receiving consent from⬚  **b6 -1, -2**
⬚ SA⬚ phoned Corsi to provide instructions on⬚  **b7C -1, -2**
⬚ During the call, Corsi  **b7E -6**
⬚ SA
⬚ Corsi was advised to change
his password after the data was downloaded.

On October 05, 2018 at 4:39 PM, SA⬚  **b6 -1**
⬚ (attached in 1A). Corsi was advised  **b7C -1**
to change his password after the data was downloaded.  **b7E -6**

UNCLASSIFIED//~~FOUO~~

Investigation on   10/11/2018   at   Washington, District Of Columbia, United States (Email)

File # ⬚                                                          **b6 -1**
Date drafted   10/31/2018                                         **b7C -1**
by ⬚                                                             **b7E -2**

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

FD-941 (2-26-01)

# CONSENT TO SEARCH COMPUTER(S)

I, Dr. Jerome Corsi _____, have been asked by Special Agents of the

Federal Bureau of Investigation (FBI) to permit a complete search by the FBI or its designees of any and all computers,

any electronic and/or optical data storage and/or retrieval system or medium, and any related computer peripherals,

described below:

[                                                    ]                                        **b6 -3**
CPU Make, Model & Serial Number (if available)                                              **b7C -3**
                                                                                            **b7E -6**

Storage or Retrieval Media, Computer Peripherals


and located at [           ] _____, which I own, possess,

control, and/or have access to, for any evidence of a crime or other violation of the law. The required passwords, logins,

and/or specific directions for computer entry are as follows [                                    ]

    I have been advised of my right to refuse to consent to this search, and I give permission for this search, freely

and voluntarily, and not as the result of threats or promises of any kind.

    I authorize those Agents to take any evidence discovered during this search, together with the medium in/on which

it is stored, and any associated data, hardware, software and computer peripherals.

Oct. 4 2018
Date

10-4-18
Date

Sign

Signature of Witness                                                                        **b6 -2**
                                                                                            **b7C -2**
Printed Full Name of Witness

Morris County, NJ
Location

FD-941 (2-26-01)

# CONSENT TO SEARCH COMPUTER(S)

I, Dr. Jerome Corsi                                          , have been asked by Special Agents of the

Federal Bureau of Investigation (FBI) to permit a complete search by the FBI or its designees of any and all computers,

any electronic and/or optical data storage and/or retrieval system or medium, and any related computer peripherals,

described below:

CPU Make, Model & Serial Number (if available)                                            b6 -3
                                                                                          b7C -3
                                                                                          b7E -6

Storage or Retrieval Media, Computer Peripherals

and located at                              , which I own, possess,

control, and/or have access to, for any evidence of a crime or other violation of the law. The required passwords, logins,

and/or specific directions for computer entry are as follows

I have been advised of my right to refuse to consent to this search, and I give permission for this search, freely

and voluntarily, and not as the result of threats or promises of any kind.

I authorize those Agents to take any evidence discovered during this search, together with the medium in/on which

it is stored, and any associated data, hardware, software and computer peripherals.

Ot. 4, 2018
Date

06-4-18
Date

Signature                                                                                 b6 -2
                                                                                          b7C -2

Signature of Witness

Printed Full Name of Witness

Morris County, NJ
Location

FBI(20-cv-447)-446