# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

BRIAN HUDDLESTON,

        Plaintiff,

        v.

FEDERAL BUREAU OF
INVESTIGATION and UNITED
STATES DEPARTMENT OF JUSTICE,

        Defendants.

CIVIL ACTION No. 4:20CV447

JUDGE AMOS MAZZANT

---

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Federal Bureau of Investigation and United States Department of
Justice move for summary judgment pursuant to Federal Rule of Civil Procedure 56 and
Local Rule 7. The reasons for this motion are set forth in the incorporated briefing, as
well as the attached declarations of Michael G. Seidel, Vanessa R. Brinkmann, and
Theodore B. Smith.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 1

    I.    PLAINTIFF'S FOIA REQUESTS ..................................................... 1

    II.    PROCEDURAL HISTORY ............................................................. 5

LEGAL STANDARDS ..................................................................................................... 12

STATEMENT OF THE ISSUES ..................................................................................... 13

ARGUMENT & AUTHORITIES ..................................................................................... 14

    I. DEFENDANTS CONDUCTED REASONABLE SEARCHES ......................... 14

        A. FBI's Search for Responsive Records .................................................. 15

        B. OIP's Search for Responsive Records .................................................. 18

        C. Defendants' Searches Were More Than Adequate .................................. 19

    II.    DEFENDANTS' *GLOMAR* RESPONSES WERE PROPER ...................... 21

        A. FBI's *Glomar* Responses .................................................................. 23

        B. OIP's *Glomar* Responses .................................................................. 24

    III.    DEFENDANTS PROPERLY WITHHELD INFORMATION
PURSUANT TO FOIA EXEMPTIONS ......................................................... 27

        A. EXPLANATION OF WITHHOLDING BY THE FBI............................. 27

        B. EXPLANATION OF WITHHOLDING BY OIP........................................ 29

        C. SUMMARY OF EXEMPTIONS ........................................................... 30

CONCLUSION ................................................................................................................ 42

## TABLE OF AUTHORITIES

**Cases**

*Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.,* 626 F.3d 678, 680-81 (2nd Cir.2010)................................................................. 41

*Amuso v. DOJ*, 600 F. Supp. 2d 78, 93 (D.D.C. 2009) ..................................... 38

*Antonelli v. FBI*, 721 F.2d 615, 618 (7th Cir. 1983) ......................................... 21

*Batton v.* Evers, 598 F.3d 169, 176 (5th Cir. 2010)........................................... 20

*Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 143 (D.D.C. 2015) ....................... 20

*Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011)........................................... 41

*Campbell v.* SSA, 446 F.App'x 477, 480 (3rd Cir. June 3, 2011)................................ 14

*CIA v. Sims,* 471 U.S. 159, 167 (1985)....................................................... 31

*Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C. Cir. 1980) ......... 35

*Defenders of Wildlife v. U.S. Dep't of Justice*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004) ......... 14

*Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995) ................................. 12

*DiBacco v. U.S.* Army, 795 F.3d 178, 191 (D.C. Cir. 2015) ............................... 14

*Elec. Privacy Info. Ctr. v. NSA*, 678 F.3d 926, 931 (D.C. Cir. 2012) ............................ 22

*Enzinna v. Dep't of Just.*, No. 97-5078, 1997 WL 404327, at *2 (D.C. Cir. June 30, 1997) ................................................................................. 22

*FBI v. Abramson*, 456 U.S. 615, 621 (1982) ................................................. 13

*Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982) ....................................... 13, 21, 22

*Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)....................... 15

*Hayden v. NSA*, 608 F.2d 1381, 1388 (D.C. Cir. 1979) ..................................... 13

*Hefferman v. Azar*, 417 F.Supp. 3d 1, 12 ..................................................... 15

*Huntington v. U.S. Dep't of Commerce*, 234 F. Supp. 3d 94, 103-04 (D.D.C. 2017).......20

*In re Sealed Case*, 121 F.3d 729, 737, 745 (D.C. Cir. 1997) .............................................35

*John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 148 (1989).......................................41

*Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 926 F.Supp.2d 121, 137 (D.D.C. 2013)34

*Keys v. DOJ*, 830 F.2d 337, 340 (D.C. Cir. 1987).............................................................38

*Kidd v. U.S. Dep't of Justice*, 362 F. Supp. 2d 291, 295 (D.D.C. 2005)...........................15

*Krikorian v. Dep't of State,* 984 F.2d 461, 465 (D.C. Cir. 1993)......................................31

*Larson v. U.S. Dep't of State*, 565F.3d 857, 865 (D.C. Cir. 2009) ................................13

*Loving v. Dep't of Def.,* 550 F.3d 32, 37 (D.C. Cir.2008)...................................................34

*Maydak v. U.S. Dep't of Justice,* 218 F.3d 760, 762 (D.C. Cir. 2000)..............................37

*Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986) ............................................14

*Murphy v. Exec. Office for U.S. Attorneys,* 789 F.3d 204, 206 (D.C. Cir. 2015) .............32

*Nat'l Parks & Conservation Ass'n v. Morton,* 498 F.2d 765, 767-70 (D.C. Cir.1974) ....33

*Nation Mag., Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995) ..................................................................................................................................22

*Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57,68 (D.C. Cir. 1990).........................13, 20

*People for the Ethical Treatment of Animals v. NIH*, 745 F.3d 535, 543-44 (D.C. Cir. 2014) ...........................................................................................................................21, 22

*Roberts v. U.S. Dep't of Justice*, Civ. A. No. 92-1707 (NHJ), 1995 WL 356320, at *1 (D.D.C. Jan. 29, 1993) ...................................................................................................15

*SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir.1991) ................................15

*Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 662 (D.C. Cir. 2003)...........................15

*Tax Analysts v. IRS,* 117 F.3d 607, 620 (D.C. Cir. 1997) ..................................................34

*Thelen v. Dep't of Justice,* 169 F.Supp.3d 128, 138 (D.D.C. 2016) .................................35

*U.S. Dep't of Justice Reporters Comm. For Freedom of Press*, 489 U.S. 749, 771-76 (1989) ...............................................................................................................................38

*U.S. Dep't of Justice v. Landano,* 508 U.S. 165, 171 (1993) ...........................................40

*U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982) ...........................38

*Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999).................14

*W. Ctr. for Journalism v. IRS*, 116 F. Supp. 2d 1, 9 (D.D.C. 2000), *aff'd*, 22 F. App'x 14 (D.C. Cir. 2001); .........................................................................................................15

*Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).................13, 14

*Wolf v. CIA*, 473F.3d 370, 374-75 (D.C. Cir. 2007)...................................................13, 22

## Statutes

18 U.S.C. §3123(d)........................................................................................................31, 32

5 U.S.C. §552 *et seq* ........................................................................................................passim

50 U.S.C. §3024(i)(1) ..........................................................................................................31

## Rules

Fed. R. Civ. P. 56(a) ........................................................................................................i, 12

Federal Rule of Criminal Procedure 6(E)....................................................................31, 32

Local Rule 7...........................................................................................................................i

## INTRODUCTION

Plaintiff Brian Huddleston filed this lawsuit pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §552 *et seq,* based on requests submitted to the Federal Bureau of Investigation ("FBI") and the Department of Justice's Office of Information Policy ("OIP") seeking documents pertaining to Seth Rich, Aaron Rich, Crossfire Hurricane, and records from the office of Special Counsel Robert Mueller. In response to Plaintiff's requests, Defendants issued *Glomar* responses to portions of Plaintiff's requests, as appropriate, refusing to confirm or deny the existence or non-existence of certain records, and otherwise produced all responsive records, subject to appropriate withholdings. As set forth in the attached detailed declarations, the FBI and OIP have established that the searches were adequate and that the withholdings under each of the FOIA exemptions were proper. This case presents no novel or difficult questions of law. Because Defendants have satisfied their obligations under FOIA, the Court should grant summary judgment in Defendants' favor.

## BACKGROUND

### I.      PLAINTIFF'S FOIA REQUESTS

#### A.      April 9, 2020 Request to FBI

On April 9, 2020, Plaintiff submitted a FOIA request to the FBI seeking records concerning Seth Rich.  Specifically, Plaintiff requested:

> 1.      All data, documents, records, or communications (electronic or otherwise) created or obtained since January 1, 2016 that discuss or reference Seth Rich or Aaron Rich.  This would include, but is not limited to, all data documents, records, or communications in

the Washington Field Office, Computer Analysis Response Team ("CART"), and any other "cyber" unit within the FBI.

2.  All data, documents, records, or communications regarding any person or entity's attempt to hack into Seth Rich's electronic or internet accounts (e.g., email) after his death.

3.  All data downloaded from all electronic devices that belonged to Seth Rich as well as all data, documents, records or communications indicating how the devices were obtained and who was responsible for downloading the information.

4.  All data, documents, communications, records or other evidence indicating whether Seth Rich, Aaron Rich, or any other person or persons involved in transferring data from the Democratic National Committee to Wikileaks in 2016, either directly or through intermediaries.  This request includes, but is not limited to, any reports from CrowdStrike, Inc. that were obtained by the FBI while assisting Special Counsel Robert Mueller's investigation.

5.  All documents, communications, records or other evidence reflecting orders or directions (whether formal or informal) for the handling of any evidence pertaining to Seth Rich's or Aaron Rich's involvement in transferring data from the Democratic National Committee to Wikileaks.

6.  All documents, records, or communications exchanged with any other government agencies (or representatives of such agencies) since January 1, 2016 regarding (1) Seth Rich's murder or (2) Seth Rich's or Aaron Rich's involvement in transferring data from the Democratic National Committee to Wikileaks.

7.  All recordings, transcripts, or notes (e.g., FD-302 forms) reflecting any interviews of Aaron Rich, Deborah Sines or any other witness regarding (1) the death of Seth Rich, (2) the transfer of data from the Democratic National Committee to Wikileaks, or (3) any attempt to hack into electronic or internet accounts (e.g., email) belonging to Seth Rich.

8.  All data, documents, records or communication obtained or produced by the FBI's Computer Analysis and Response Team ("CART") or any other FBI cyber unit regarding Seth Rich and/or Aaron Rich.

9.      All data, documents, records or communications (including texts or emails) that reflect any meetings or communications from July 10, 2016 until July 10, 2017 between former FBI Deputy Director Andrew McCabe and any and all of the following: (1) Seymour Myron "Sy" Hersh (born on or about April 8, 1937); (2) Washington, D.C. Mayor Muriel Bowser; and/or (3) former Democratic National Committee Interim Chairwoman Donna Brazile.

10.     If any of the items or things requested in this subpoena were discarded or destroyed produce all data, documents, records or communication reflecting that fact.

[ECF No. 3, Exh. 1].

B.    June 1, 2020 Request to FBI

On June 1, 2020, Plaintiff submitted a FOIA request to the FBI seeking records concerning code names assigned to individuals as part of the Crossfire Hurricane investigation, including Seth Conrad Rich and Aaron Nathan Rich.  Specifically, Plaintiff requested:

1.      Documents, records or communications revealing the code names assigned to any and all individuals as part of the Crossfire Hurricane investigation.

1.      Documents, records, or communications revealing the code names assigned to any and all sub-sections of the Crossfire Hurricane investigation.

3.      Documents, records, or communications revealing the code names assigned to Seth Conrad Rich.

4.      Documents, records, or communications revealing the code names assigned to Aaron Nathan Rich.

[ECF No. 3, Exh. 2].

C.     June 5, 2020 Request to OIP

On June 5, 2020, the Plaintiff submitted a FOIA request to OIP seeking records

from the office of Special Counsel Robert Mueller regarding Seth Rich, Aaron Rich, and

the purported "hack" into the DNC servers in 2016. In particular, Plaintiff requested:

1. All data, documents, records, or communications (electronic or
   otherwise) created or obtained since January 1, 2016 that discuss or
   reference Seth Rich or Aaron Rich.

2. All data, documents, records, or communications regarding any
   person or entity's attempt to hack into Seth Rich's electronic or
   internet accounts (*e.g.*, email) after his death.

3. All data downloaded from all electronic devices that belonged to
   Seth Rich as wellas all data, documents, records or communications
   indicating how  the devices were obtained and who was responsible
   for downloading the information.

4. All data, documents, communications, records or other evidence
   indicating whether Seth Rich, Aaron Rich, or any other person or
   persons were involved in transferring data from the Democratic
   National Committee to Wikileaks in 2016, either directly or through
   intermediaries. This request includes, but is not limited to, any
   reports from CrowdStrike, Inc. as well as any reports from other
   government entities or personnel.

5. All documents, communications, records or other evidence
   reflecting orders or directions (whether formal or informal) for the
   handling of any  evidence pertaining to Seth Rich's or Aaron Rich's
   involvement in transferring data from theDemocratic National
   Committee to Wikileaks.

6. All documents, records, or communications exchanged with any
   other governmentagencies (or representatives of such agencies)
   since January 1, 2016 regarding (1) Seth Rich's murder; (2) Seth
   Rich's or Aaron Rich's involvement in transferring data from the
   Democratic National Committee to Wikileaks; (3) the involvement
   of any other person or entity in transferring data from the DNC to
   Wikileaks.

7. All recordings, transcripts, or notes (e.g., FD-302 forms) reflecting any interviews of Aaron Rich, Deborah Sines or any other witness regarding (1) the death of Seth Rich, (2) the transfer of data from the Democratic National Committee to Wikileaks, or (3) any attempt to hack into electronic or internet accounts (e.g., email) belonging to Seth Rich.

8. All data, documents, records or communications obtained or produced by the FBI's Computer Analysis and Response Team ("CART") or any other FBI cyber unit regarding Seth Rich, Aaron Rich, and/or any other person or entity involved in the transfer of DNC emails to Wikileaks in 2016.

9. All data, documents, records or communications (including texts or emails) concerning Imran Awan, Abid Awan, Jamal Awan, Hina Alvi, and/or Rao Abbas.

10. If any of the items or things requested herein were discarded or destroyed, produce all data, documents, records or communications reflecting that fact.

[ECF No. 3, Exh. 3].

## II.     PROCEDURAL HISTORY

A.     April 9, 2020 Request to FBI (FBI FOIPA 1465531, 1468034, 1468039, 1468042)

On April 9, 2020, Plaintiff submitted a FOIA request to the FBI seeking records

concerning Seth Rich.[1] By letter dated June 19, 2020, the FBI acknowledged receipt of

Plaintiff's FOIA request. [4th Seidel Declaration, Exh. B]. By letter dated July 2, 2020,

---

[1] At the time Plaintiff transmitted his April 9, 2020 FOIA request to the FBI, the FBI's FOIA program had not resumed operation. Specifically, on March 17, 2020, RIDS temporarily halted its FOIA program in response to the COVID-19 pandemic. RIDS management continually monitored the situation and ultimately begin bringing employees back to work safely in a limited fashion in order to resume FOIA operations starting on April 29, 2020. It wasn't until June 8, 2020 that RIDS returned to a 100% staffing posture. (ECF No. 10-1, pages 4-6, ¶¶ 11-15.)

the FBI advised Plaintiff that his request was divided into four (4) separate FOIA requests, as follows:

> (1) FBI FOIPA 1465531: Seth Rich (January 1, 2016 to present);
>
> (2) FBI FOIPA 1468034: Aaron Rich
>
> (3) FBI FOIPA 1468039: Deborah Sines
>
> (4) FBI FOIPA 1468042: Meetings and Communications between former FBI Director Andrew McCabe and Seymour "Sy" Hersh, Washington, DC Mayor Muriel Bowser and/or DNC Interim Chairwoman Donna Brazile (July 10, 2016 – July 10, 2017)

[4th Seidel Declaration, Exh. C].

### 1.  Seth Rich (1465531)

By email dated February 8, 2021, OIP referred to the FBI approximately 1,296 pages and a link to an excel spreadsheet which when converted totaled 75 pages. An employee in the FBI's Record/Information Dissemination Section ("RIDS") reviewed the material and determined that some of the material consisted of court documents, draft documents originating with the U.S. Department of Justice, Special Counsel's Office ("SCO"), an Executive Session interview transcript, and SCO email communications. Following a review of the records, numerous discussions occurred between FBI counsel and OIP's counsel. Through these discussions it was agreed that the FBI would handle approximately 180 pages[2] of the material as a consultation to the FBI with a response

---

[2] The approximately 180 pages were numbered Document IDs: 0.7.5411.5788-000002, 0.7.5411.6226-000002, 0.7.5411.6240-000001, 0.7.5411.6197-000001, 0.7.5411.6236-000001, 0.7.5411.7068, 0.7.5411.7148-000039, 0.7.5411.6336, 0.7.5411.6183, 0.7.5411.7142-000001, 0.7.5411.6511, 0.7.5411.6673, 0.7.5411.5975, 0.7.5411.5236, 0.7.5411.5237, 0.7.5411.6579, 0.7.5411.5221, 0.7.5411.6890, 0.7.5411.6682, 0.7.5411.5609, 0.7.5411.5938, 0.7.5411.5935,

back to OIP, while the remaining material would be handled as a referral for direct response to the Plaintiff herein. [4th Seidel Declaration ¶14].

By letter dated April 21, 2021, the FBI responded to OIP's consult request concerning the approximately 180 pages,[3] advising that portions of information contained within the records should be withheld pursuant to FOIA Exemptions (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) and (b)(7)(E).[4] [4th Seidel Declaration ¶15].

By letter dated April 23, 2021, the FBI made a release of records to Plaintiff in response to FOIA/Privacy Act ("FOIPA") Request Number 1465531. The FBI advised Plaintiff it reviewed 576 pages and released 68 pages in full or in part, with certain information withheld pursuant to FOIA Exemptions (b)(1), (b)(3), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E). [4th Seidel Declaration ¶16; Exh. D].

By letter dated May 24, 2021, the FBI made a second release of records to Plaintiff in response to FOIPA Request Number 1465531. The FBI advised Plaintiff it reviewed 500 pages and released 52 pages in full or in part, with certain information withheld pursuant to FOIA Exemptions (b)(1), (b)(3), (b)(4), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E). [4th Seidel Declaration ¶17; Exh. E].

---

0.7.5411.5605, 0.7.5411.5202, 0.7.5411.6578-000002, 0.7.5411.12962, 0.7.5411.18555, 0.7.5411.18558, and 0.7.5411.18476.

[3] OIP later advised the FBI that one of the pages contained in the 180 pages was determined to be not responsive, thus that page would not be included in its release to Plaintiff.

[4] By letter dated May 7, 2021, OIP provided its response to Plaintiff concerning these materials. In its letter, OIP advised Plaintiff, it processed an additional 179 pages responsive to his request, withheld in full 121 pages pursuant to Exemptions 3, 5, 6, 7(C), 7(D) and 7(E) of the FOIA, 5 U.S.C. §§552 (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E), and withheld in full 58 pages pursuant to FOIA Exemptions 3, 5, 6, 7(C) and 7(E).

By letter dated June 24, 2021, the FBI made a combined release of records to Plaintiff in response to FOIPA Request Number 1465531 and 1465971. The FBI advised Plaintiff it reviewed 489 pages and released 5 pages in full or in part, with certain information withheld pursuant to FOIA Exemptions (b)(3), (b)(6), (b)(7)(C), and (b)(7)(E). [4th Seidel Declaration ¶18, Exh. F].

By letter dated July 23, 2021, the FBI made a fourth release of records to Plaintiff in response to FOIPA Request Number 1465531.[5]  The FBI advised Plaintiff it reviewed 31 pages and released two (2) pages in full or in part, with certain information withheld pursuant to FOIA Exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E). [4th Seidel Declaration ¶19; Exh. G].

By email dated November 8, 2021, OIP referred to the FBI sixteen (16) pages. An FBI RIDS employee reviewed the material and determined that the material consisted of email communications that did not originate with the FBI. Following a review of the records, communications were exchanged with OIP's counsel and it was agreed that the FBI would handle these pages[6] of the material as a consultation to the FBI with a response back to OIP. [4th Seidel Declaration ¶20].

By letter dated November 19, 2021, the FBI responded to OIP's consult request concerning the sixteen (16) pages, advising that portions of information contained within

---

[5] The FBI included in the reference portion of this release letter information concerning FOIPA Number 1465971, Subject:  Crossfire Hurricane Code names. This information was included in error as the records reviewed for this release only pertain to FOIPA Number 1465531-000, Subject: Seth Rich (January 1, 2016 to present).
[6] The sixteen (16) pages were bates-numbered 20-cv-0447-00009 through -00015, -00030 through -00036, -00227 and -00794.

the records should be withheld pursuant to FOIA Exemptions (b)(6), (b)(7)(C), and (b)(7)(E). [4th Seidel Declaration ¶21].

### 2.  Aaron Rich (1468034)

By letter dated July 2, 2020, the FBI acknowledged receipt of Plaintiff's FOIA request, and notified Plaintiff it had assigned his request FBI FOIPA Request Number 1468034. The FBI informed Plaintiff he requested information on one or more third party individuals and the FBI would neither confirm nor deny the existence of such records pursuant to FOIA Exemptions 6 and 7(C), 5 U.S.C. §§552 (b)(6) and (b)(7)(C). [4th Seidel Declaration ¶22; Exh. H].

### 3.    Deborah Sines (1468039)

By letter dated July 2, 2020, the FBI acknowledged receipt of Plaintiff's FOIA request, and notified Plaintiff it had assigned his request FBI FOIPA Request Number 1468039. The FBI informed Plaintiff he requested information on one or more third party individuals, and the FBI would neither confirm nor deny the existence of such records pursuant to FOIA Exemptions 6 and 7(C), 5 U.S.C. §§552 (b)(6) and (b)(7)(C). [4th Seidel Declaration ¶23; Exh. I].

### 4.    McCabe and Myron (1468042)

By letter dated August 6, 2020, the FBI acknowledged receipt of Plaintiff's FOIA request, and notified Plaintiff it had assigned his request FBI FOIPA Request Number 1468042. The FBI advised Plaintiff it conducted a search of the places reasonably expected to have records; however, it was unable to identify records responsive to Plaintiff's request. Additionally, the FBI advised it was closing Plaintiff's request. [4th

Seidel Declaration ¶24; Exh. J].

B.     June 1, 2020 Request to FBI (FBI FOIPA 1465971)

On June 1, 2020, Plaintiff submitted a FOIA request to the FBI seeking records concerning code names assigned to individuals as part of the Crossfire Hurricane investigation, including Seth Conrad Rich and Aaron Nathan Rich. By letter dated July 7, 2020, the FBI acknowledged receipt of Plaintiff's FOIA request, and notified Plaintiff it had assigned his request FBI FOIPA Request Number 1465971-0000. [4th Seidel Declaration ¶26; Exh. L].

By letter dated August 6, 2020, the FBI informed Plaintiff it could neither confirm nor deny the existence of records responsive to Plaintiff's request pursuant to FOIA Exemptions 6, (7)(C), and (7)(E), 5 U.S.C. §§552(b)(6), (b)((7)(C), and (b)(7)(E). Further, the FBI advised it was closing Plaintiff's request. [4th Seidel Declaration ¶27; Exh. M].

The FBI determined that its initial (b)(6), (b)(7)(C) and (b)(7)(E) *Glomar* response provided to Plaintiff in response to his June 1, 2020 request had been partially pierced as it related to Items 1 and 2 of his request. The FBI reached out to Plaintiff's counsel on or about April 13, 2021, to determine what specific documents the Plaintiff was looking for to satisfy his request, (i.e., a list of code names and the true names they correspond to for the Crossfire Hurricane investigation, etc.). Plaintiff advised that he would be willing to narrow the request to locating a single document for each individual/file that contains the code name, understanding that the records would be redacted pursuant to applicable FOIPA exemptions. (ECF No. 23-1, pages 3-4, ¶¶ 10-11.) [4th Seidel Declaration ¶28].

By letter dated June 24, 2021, the FBI made a combined release of records to Plaintiff in response to FOIPA Request Numbers 1465531 (Subject Seth Rich) and 1465971 (Subject Crossfire Hurricane Codenames). [4th Seidel Declaration, ¶29].

C.    June 5, 2020 Request to OIP (OIP FOIA-2020-001319)

On June 5, 2020, the Plaintiff submitted a FOIA request to OIP seeking records from the office of Special Counsel Robert Mueller regarding Seth Rich, Aaron Rich, and the purported "hack" into the DNC servers in 2016. By letter dated June 23, 2020, OIP acknowledged Plaintiff's FOIA request and confirmed the following tracking number: FOIA-2020-001319. [Brinkmann Declaration ¶5; Exh. B].

By letter dated April 8, 2021, OIP provided an interim response to Plaintiff's request.  With respect to the named individual in Plaintiff's request, Aaron Rich, lacking his consent, official acknowledgment of an investigation of him, or an overriding public interest, even to acknowledge the existence of such records pertaining to this individual could reasonably be expected to constitute an unwarranted invasion of his personal privacy.  Accordingly, OIP decided to refuse to confirm or deny the existence of responsive records pertaining to Aaron Rich, pursuant to Exemptions 6 and 7(C) of the FOIA, 5 U.S.C. §§552 (b)(6) and (b)(7)(C). With respect to the remainder of Plaintiff's request, OIP informed Plaintiff that searches had been conducted within SCO, and that, at that time, thirty-two pages containing records responsive to Plaintiff's request should be withheld in full pursuant to Exemption 5 of the FOIA, 5 U.S.C. §552 (b)(5). [Brinkmann Declaration ¶7; Exh. C].

By letter dated May 7, 2021, OIP sent its final response to Plaintiff's FOIA

request. OIP informed Plaintiff that OIP had referred certain law enforcement materials to the FBI for processing and direct response to Plaintiff.  OIP also informed Plaintiff that OIP had processed an additional 179 pages containing records responsive to Plaintiff's request.  OIP provided Plaintiff 121 of these pages with information withheld pursuant to Exemptions 3, 5, 6, 7(C), 7(D), and 7(E) of the FOIA, 5 U.S.C. §§552 (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E).  Additionally, OIP determined that fifty-eight pages should be withheld in full pursuant to Exemptions 3, 5, 6, 7(C), and 7(E), 5 U.S.C. §§552 (b)(3), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E). [Brinkmann Declaration ¶8; Exh.D].

In the course of reviewing its searches, OIP determined that it should conduct searches for two additional custodians. As a result of these supplemental searches, OIP identified twenty-eight additional pages containing records responsive to Plaintiff's FOIA request. OIP provided twenty of these pages to Plaintiff, through counsel, with information withheld pursuant to Exemptions 6 and 7(C) of the FOIA, 5 U.S.C. §§552 (b)(6) and (b)(7)(C).  OIP has withheld the remaining eight pages in full pursuant to Exemption 5 of the FOIA, 5 U.S.C. §552(b)(5). [Brinkmann Declaration ¶9].

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  FOIA actions are typically resolved on summary judgment, *see Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 200 (D.D.C. 2007), and the Court conducts a *de novo* review of the agency's response to any challenged FOIA requests, *see* 5 U.S.C. §552 (a)(4)(B).

When a requester challenges the adequacy of an agency's search, "[i]n order to obtain summary judgment, the agency must show that it made a good faith  effort  to  conduct  a search  for  the  requested  records,  using  methods  which  can  be  reasonably  expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *see Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The agency must also justify any records withheld (in whole or in part) subject to FOIA's statutory exemptions.  Congress recognized "that legitimate governmental and private  interests  could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982). "Summary  judgment is warranted on the basis of agency affidavits when the affidavits describe the  justifications for nondisclosure with reasonably specific detail, demonstrate that the information  withheld logically falls within the claimed exemption, and are not controverted by either contrary  evidence in the record nor by evidence of agency bad faith." *Larson v. U.S. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009) (quotation omitted).  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007) (citing *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982); *Hayden v. NSA*, 608 F.2d 1381, 1388 (D.C. Cir. 1979)).

## STATEMENT OF THE ISSUES

1.  Whether Defendants FBI and OIP conducted reasonable searches in response to Plaintiff's FOIA requests;

2.  Whether Defendants FBI and OIP properly issued *Glomar* responses in partial response to Plaintiff's FOIA requests; and

3. Whether Defendants FBI and OIP properly withheld information pursuant to FOIA exemptions in response to Plaintiff's FOIA requests.

## ARGUMENT & AUTHORITIES

## I. DEFENDANTS CONDUCTED REASONABLE SEARCHES

Courts require agencies to conduct searches "reasonably calculated to uncover all relevant documents." *Campbell v.* SSA, 446 F.App'x 477, 480 (3rd Cir. June 3, 2011)(quoting *Weisberg v.* DOJ, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). The Court may grant summary judgment concerning the adequacy of an agency's search for responsive records based on information provided in "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (quoting *Oglesby*, 920 F.2d at 68); *see Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986). "Such agency affidavits attesting to a reasonable search 'are afforded a presumption of good faith,' and 'can be rebutted only with evidence that the agency's search was not made in good faith.'" *Defenders of Wildlife v. U.S. Dep't of Justice*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004) (quoting *TransUnion, LLC v. FTC*, 141 F. Supp. 2d 62, 64 (D.D.C. 2001)).

"Adequacy - not perfection - is the standard that FOIA sets," and agencies "need not knock down every search design advanced by every requester." *DiBacco v. U.S. Army*, 795 F.3d 178, 191 (D.C. Cir. 2015). Conducting a "reasonable" search is a process that requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise" and is "hardly an area in which the courts

should attempt to micro manage the executive branch." *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 662 (D.C. Cir. 2003) (quotation omitted).

To that end, in evaluating the adequacy of a search, courts accord agency affidavits a presumption of good faith that cannot be rebutted by speculation "about the existence and discoverability of other documents." *SafeCard Servs*., *Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir.1991) (internal quotation and citation omitted); *see also Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981) (same). Rather, to establish the sufficiency of its search, the agency's affidavits need only explain the "scope and method of the search" in "reasonable detail."*Kidd v. U.S. Dep't of Justice*, 362 F. Supp. 2d 291, 295 (D.D.C. 2005); *see also*, *Hefferman v. Azar*, 417 F.Supp. 3d 1, 12 (explaining that agency "properly searched the files of all potential custodians who reasonably could have possessed [records]" where agency identified the specific custodians and locations searched and also confirmed why others were not searched.). FOIA does not require agencies to search every record system, but only those systems in which the agency believes responsive records are likely to be located. *W. Ctr. for Journalism v. IRS*, 116 F. Supp. 2d 1, 9 (D.D.C. 2000), *aff'd*, 22 F. App'x 14 (D.C. Cir. 2001); *Roberts v. U.S. Dep't of Justice*, Civ. A. No. 92-1707 (NHJ), 1995 WL 356320, at *1 (D.D.C. Jan. 29, 1993). As explained below, a reasonable search is precisely what Defendants performed here.

A.   <u>FBI's Search for Responsive Records</u>

The details of the FBI's search are set forth in the Fourth Declaration of Michael G. Seidel on pages 21-31, paragraphs 47-71. Specifically, Mr. Seidel provides an

overview of the FBI's Central Records System and Electronic Surveillance Indices, as well as the procedures used to search for, review and process responsive records. [4th Seidel Declaration, ¶¶47-71].

In total, the FBI processed a total of 1,596 pages of responsive records subject to the FOIA.[7] Of the 1,596 pages processed, the FBI released 118 pages in part, released nine (9) pages in full, and withheld 1,469 pages in full pursuant to applicable FOIA Exemptions or as duplicates to material reviewed and processed elsewhere in the productions provided to Plaintiff.[8] In addition, the FBI reviewed and marked 196 pages of consulted records it received from OIP. The consulted material was returned to OIP for further handling and inclusion in its releases to be provided to Plaintiff.  [4th Seidel Declaration, ¶4].

### 1. Seth Rich (1465531)

As set forth in detail in the 4th Seidel Declaration, RIDS conducted a search reasonably calculated to locate records responsive to Plaintiff's request concerning Seth Rich. First, RIDS conducted a term search of additional records to be processed in response to another FOIA Civil Action, as a record previously processed therein had been found to be responsive to Plaintiff's request. Second, given its comprehensive nature and scope, the CRS is the principal records system searched by RIDS, to locate information

---

[7] Of the 1,596 pages of records, 827 pages, Bates-numbered FBI(20-cv-447)-733 through -1559, were part of the records referred by OIP to the FBI for direct response to the Plaintiff herein. *See infra*. ¶ 14.
[8] Upon further review of the processed records, it was determined that fifteen (15) pages of non-responsive material was inadvertently included in the records processed herein, withheld as duplicate and assigned Bates-numbers FBI (20-cv-447)-1540 through -1554.

responsive to most FOIPA requests, because the CRS is where the FBI indexes information about individuals, organizations, events, and other subjects of investigative interest for future retrieval. Third, given Plaintiff's request seeks information about Seth Rich, such information would reasonably be expected to be located in the CRS via the index search methodology. Fourth, RIDS tailored its search to include searches within the FBI's Office of Public Affairs and the FBI's Washington Field Office. Fifth, RIDS followed a lead contained in records referred to it by OIP and conducted additional searches for responsive records. In the end, the aforementioned searches accomplished the task of locating non-indexed responsive reference records concerning Seth Rich within the responsive time frame of January 1, 2016 to June 15, 2020. [4th Seidel Declaration, ¶¶ 60-68].

## 2. McCabe and Myron (1468042)

RIDS requested a targeted search for emails through the FBI's Discovery Management Section ("DMS") of former Deputy Director Andrew McCabe's UNET email account for the date range of July 10, 2016 through July 10, 2017, using the following search terms: "Meeting", "Hersh", "Bowser", "Brazile", "Communication", "Appointment".[9]  The search yielded numerous emails which RIDS scoped for responsiveness. RIDS located no responsive records from this search. [4th Seidel Declaration, ¶ 68].

---

[9] The search included variations and combinations of each of the identified terms.

3. *Aaron Rich (1468034), Deborah Sines (1468039) and Crossfire Hurricane*
   *Code Names (1465971)*

In cases such as this, where a *Glomar* response is warranted and appropriate in response to Plaintiff's requests, the FBI does not conduct a search for the requested records. Conducting a search for records is unnecessary because the response to the requester is not dependent on the results of a search and regardless of the results, the existence or non-existence of the requested records will neither be confirmed nor denied. [4th Seidel Declaration, ¶70].

Following the piercing of the Exemption 7(E) *Glomar*, RIDS consulted with FBI personnel knowledgeable of the Crossfire Hurricane and related investigations. Based upon information provided, RIDS conducted term searches within the aforementioned investigative records, using among other terms, the terms "Page" and "Flynn". These searches identified reference records responsive to Plaintiff's narrowed request. [4th Seidel Declaration, ¶71].

B.     OIP's Search for Responsive Records

The details of OIP's search are set forth in Sections IV & V, paragraphs 20 - 31 of the Declaration of Vanessa R. Brinkmann. Specifically, the Brinkmann Declaration provides an overview of OIP's search process and methods as they pertain to conducting searches for SCO records, as well as the particular search parameters that OIP employed in response to Plaintiff's request. [Brinkmann Declaration, ¶¶20-31]. OIP's search produced 1,373 pages and one spreadsheet responsive to Plaintiffs' request. [Brinkmann Declaration, ¶29]. Of these 1,373 pages and one spreadsheet, 1,116 pages and the one

spreadsheet were referred to the FBI for further review, processing and direct response to Plaintiff; 107 pages were withheld in full; and 150 pages were released to plaintiff with certain information withheld pursuant to FOIA exemptions. [*Id*.].

In sum, the searches conducted for this request fully reflect the agile, dynamic, and comprehensive search process OIP conducts in response to FOIA requests. At this time, as described in the Brinkmann Declaration, OIP has identified the appropriate SCO email accounts, individual computer drives, and folders and files within which to conduct searches. And, OIP has conducted broad searches within these repositories, without date range restriction and using search terms reasonably tailored to Plaintiff's FOIA request. OIP then manually reviewed the results of these searches for responsiveness. The facts of this case reflect OIP's efforts to do its due diligence and to take additional steps, as appropriate, in order to ensure that its searches are adequate. In particular, once OIP determined that there existed two additional custodians whose email accounts and individual computer drives may be appropriate for searching, OIP took the additional step to search those custodians' accounts and drives. Further, once OIP identified search term leads within the records it was reviewing, OIP conducted additional searches using those additional terms. After conducting these additional searches, OIP determined that no further searching would reasonably be likely to identify potentially responsive records, nor were any further "leads" identified indicating the need to expand the search to include additional repositories, methods, or parameters. [Brinkmann Declaration, ¶30-31].

C.  <u>Defendants' Searches Were More Than Adequate</u>

The Brinkmann and Seidel declarations submitted along with this motion

Defendants' Motion for Summary Judgment                                                                    19

demonstrate that both OIP and FBI "made a good faith effort to conduct…search[es] for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68. OIP and FBI each searched "'*all* locations likely to contain responsive documents.'" *Huntington v. U.S. Dep't of Commerce*, 234 F. Supp. 3d 94, 103-04 (D.D.C. 2017)(quoting *Bartko v. U.S. Dep't of Justice*, 167 F. Supp. 3d 55, 64 (D.D.C. 2016)). Further, each declaration describes in detail the particular records searched and the search methods used to locate records responsive to the particular request. *See* Brinkmann Decl. ¶¶ 20-31; 4th Seidel Declaration ¶¶47-71].

Plaintiff cannot not overcome the patent reasonableness of OIP's and FBI's searches by speculating that there may be other responsive records that the agencies have not produced. *See, e.g., Batton v.* Evers, 598 F.3d 169, 176 (5th Cir. 2010) (affirming district court's determination that search of locations most likely to hold responsive records was reasonable because "the issue is not whether other documents may exist, but rather whether the search for undisclosed documents was adequate" (quoting *In re Wade*, 969 F.2d 241, 249 n. 11 (7th Cir. 1992)). Indeed, "[a]n agency's 'failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist,' . . . 'does not undermine the determination that the agency conducted an adequate search for the requested records.'" *Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 143 (D.D.C. 2015) (citation omitted). Here, any assertion by Plaintiff "that various records related to [its] request must have existed is 'simply conjecture' and is 'insufficient to justify a finding that the search was inadequate.'" *Id.* (citation omitted).

## II.    DEFENDANTS' *GLOMAR* RESPONSES WERE PROPER

A *Glomar* response is proper where acknowledging the existence of records would implicate one of the FOIA exemptions. *Gardels,* 689 F.2d at 1103. Here, Plaintiff's FOIA requests related to Aaron Rich and Deborah Sines implicated FOIA Exemptions 6 and 7(C). [4th Seidel Declaration ¶¶22-23; 30-46; Brinkmann Declaration ¶¶11-19]. Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. §552 (b)(6). All information that applies to a particular person falls within the scope of Exemption 6. Exemption 7(C) similarly exempts from disclosure "records or information compiled for law enforcement purposes … [when disclosure] could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. §552(b)(7)(C).

It is well settled that individuals have an obvious privacy interest cognizable under Exemptions 6 and 7(C) in keeping secret the fact that they were subjects of a law enforcement investigation. *See, e.g.*, *People for the Ethical Treatment of Animals v. NIH*, 745 F.3d 535, 543-44 (D.C. Cir. 2014) ("PETA") (upholding agency's refusal to confirm or deny existence of records that would confirm whether investigation of third party had occurred); *Antonelli v. FBI*, 721 F.2d 615, 618 (7th Cir. 1983) (finding that confirming whether third party has been the subject of investigation would likely "constitute an invasion of that person's privacy that implicates the protections of [Exemptions (b)(6) and (b)(7)(C)]").  The protection afforded by a *Glomar* response pursuant to Exemptions 6 and 7(C), however, is not limited to individuals who may

have been the actual subject of an investigation; rather, "[this] privacy interest also extends to third parties who may be mentioned in investigatory files, as well as to witnesses and informants who provided information during the course of an investigation." *Nation Mag., Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995) (citing *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992) and *King v. Dep't of Justice*, 830 F.2d 210, 233 (D.C. Cir. 1987)); *see also Enzinna v. Dep't of Just.*, No. 97-5078, 1997 WL 404327, at *2 (D.C. Cir. June 30, 1997) (finding the government's *Glomar* response appropriate because acknowledging the existence of responsive documents necessarily would associate witnesses with a criminal investigation).

To justify a *Glomar* response, "[t]he agency must demonstrate that acknowledging the mere existence of responsive records would disclose exempt information." *Elec. Privacy Info. Ctr. v. NSA*, 678 F.3d 926, 931 (D.C. Cir. 2012) (citing *Wolf*, 473 F.3d at 374). But in doing so, the agency's explanatory burden is not demanding, and the standard is, ultimately, no different than in the typical FOIA case: "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Wolf*, 473 F.3d at 374-75 (quoting *Gardels* at 1105)). "In *Glomar* cases, courts may grant summary judgment on the basis of agency affidavits that contain 'reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'" *Elec. Privacy Info. Ctr.*, 678 F.3d at 931 (quoting *Gardels*, 689 F.2d at 1105). If a *Glomar* response is appropriate, "the agency need not conduct any search

for responsive documents or perform any analysis to identifysegregable portions of

such documents." *PETA*, 745 F.3d at 540.

    A.    <u>FBI's *Glomar* Responses</u>

The FBI determined that merely acknowledging the existence or non-existence of

records responsive to Plaintiff's requests would trigger harm under FOIA Exemptions 6

and 7(C) with respect to Aaron Rich and Deborah Sines. [4th Seidel Declaration, ¶31].

Pursuant to long standing policy, the FBI will not confirm or deny the existence of

law enforcement records about a third party in the absence of a privacy waiver or proof of

death, unless the requester establishes a public interest in disclosure that outweighs the

third party's privacy interests. The FBI instituted this policy in order to protect the

privacy rights of individuals, particularly those who appear in FBI law enforcement files.

It is well-recognized that individuals have substantial privacy interests in relation to being

associated with law enforcement investigations because any such association can

engender comment, speculation, or harassment; can be embarrassing and stigmatizing;

and can, in some circumstances, result in physical harm or threats of harm or death.

Statements by an individual alluding to or acknowledging an association with a law

enforcement investigation do not extinguish his or her privacy interests or constitute a

waiver of privacy interests. [4th Seidel Declaration, §36].

If a requester establishes a public interest, then the FBI will balance those interests

against the third party's privacy interests. This balancing is done on a case-by-case basis.

The FBI will process a request for and release non-exempt law enforcement records

about a third party only if it determines that the public interest outweighs the individual's

privacy interests after conducting a balancing analysis. The balancing analysis in each case is necessarily fact specific. Thus, each request must be treated individually, and the FBI must retain flexibility in the way in which it handles each request. [4th Seidel Declaration, ¶37].

The FBI determined that Plaintiff's third-party requests for records concerning Aaron Rich and Deborah Sines were not accompanied by either privacy waivers or proofs of death, and that Plaintiff's request letters did not provide sufficient evidence of a significant public interest in disclosure of the materials sought concerning these third parties. As a result, the FBI properly issued *Glomar* responses in both of these requests pursuant to Exemptions 6 and 7(C). [4th Seidel Declaration, ¶38].

B.   OIP's *Glomar* Responses

OIP determined that merely acknowledging the existence or non-existence of SCO records responsive to Plaintiff's request would trigger harm under Exemptions 6 and 7(C) with respect to Aaron Rich. [Brinkmann Declaration, Section III, ¶¶11-19].

Plaintiff's FOIA request to OIP sought "documents, records, and information obtained or produced by Special Counsel Robert Mueller, his deputies, his assistants, and/or his investigators regarding (1) Seth Rich; (2) Aaron Rich; and (3) the purported 'hack' into the DNC servers in 2016, *i.e.*, the transfer of DNC data to Wikileaks." Because Plaintiff's request seeks records targeted to a specific, living individual[10]—

---

[10] Although Plaintiff's request also seeks records targeted to the specific individual Seth Rich, Seth Rich does not maintain the same privacy interest as Aaron Rich because Seth Rich is deceased.  Accordingly, OIP has not asserted a *Glomar* response as to Plaintiff's request to the extent it is seeking records pertaining to Seth Rich.

Aaron Rich—it would be impossible to acknowledge the existence or nonexistence of records obtained or produced by SCO pertaining to Aaron Rich[11] without violating his significant privacy interest. [Brinkmann Declaration, ¶14].

Individuals, including Aaron Rich, have a significant privacy interest in whether agencies acknowledge the existence of records within law enforcement files pertaining to themselves, even those that only include a mere mention of themselves. This certainly includes law enforcement files created as part of the law enforcement investigation carried out by SCO. Even revealing the existence of a mere mention of Aaron Rich within SCO files, should one exist, would be expected to result in unwanted and uninvited public attention and to have a stigmatizing effect. [Brinkmann Declaration, ¶15].

In order to balance the significant privacy interest that exists, discussed above, against any FOIA public interest that exists, OIP evaluated whether there is a FOIA public interest in knowing whether SCO obtained or produced records pertaining to Aaron Rich. OIP has not identified such a FOIA public interest. The fact of whether such records exist would not significantly increase the public's understanding of SCO's investigation, operations, or activities. This is especially true because SCO has completed its investigation and extensive information has been disclosed regarding the process and results of the investigation, including charges that were pursued and criminal indictments

---

[11] To the extent records exist that are responsive to Plaintiff's request on bases wholly unrelated to whether or not they pertain to Aaron Rich, and to the extent such records could be acknowledged to exist without disclosing whether or not records exist pertaining to Aaron Rich, OIP has processed such records.

that were issued by SCO against numerous individuals and entities. In light of the fact that this information is already public, the disclosure of the existence or nonexistence of records pertaining to Aaron Rich would not significantly aid the public's understanding of how SCO carried out its duties or its mission. [Brinkmann Declaration, ¶16].

On balance, OIP determined that Aaron Rich's significant privacy interest substantially outweighs the FOIA public interest in identifying the existence or nonexistence of records of records obtained or produced by SCO pertaining to Aaron Rich. Therefore, OIP determined that the existence or non-existence of such records is protected from disclosure pursuant to FOIA Exemptions 6 and 7(C). [Brinkmann Declaration, ¶17].

OIP further determined that if records existed that were obtained or produced by SCO pertaining to Aaron Rich, and if OIP were compelled to confirm the existence of such records, this would result in a foreseeable harm, specifically the clearly, and reasonably expected, unwarranted invasion of Aaron Rich's personal privacy, described above. In order to preserve the *Glomar's* effectiveness, a *Glomar* response is used in response to requests for records pertaining to private individuals, whether or not there are, in fact, any responsive records, in order to preserve the privacy interests of such individuals. [Brinkmann Declaration, ¶18].

OIP asserted a *Glomar* response pursuant to FOIA Exemptions 6 and 7(C), refusing to confirm or deny the existence of records obtained or produced by SCO pertaining to Aaron Rich in order to prevent any unwarranted violation of his personal

privacy. Therefore, by definition, there is no information that could reasonably be segregated for release. [Brinkmann Declaration, ¶19].

### III.   DEFENDANTS PROPERLY WITHHELD INFORMATION PURSUANT TO FOIA EXEMPTIONS

The FBI properly withheld information pursuant to FOIA Exemptions 1, 3, 4, 5, 6, 7(A), 7(C), 7(D), and 7(E), 5 U.S.C. §§552 (b)(1), (b)(3), (b)(4), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E). OIP properly withheld information pursuant to FOIA Exemptions 3, 5, 6, 7(C), 7(D), and 7(E), 5 U.S.C. §§552 (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E).

Both the FBI and OIP carefully examined the documents and determined the information withheld from Plaintiff in this case, if disclosed, would reveal, respective to each Exemption, classified information, statutorily protected information, confidential trade secrets and commercial information, and privileged information; could reasonably be expected to interfere with pending or prospective enforcement proceedings; would cause a clearly unwarranted invasion of the personal privacy, or could reasonably be expected to constitute an unwarranted invasion of personal privacy; could reasonably be expected to disclose the identities of confidential sources and the information they provided; and would disclose techniques and procedures for law enforcement investigations.

### A.   EXPLANATION OF WITHHOLDING BY THE FBI

The FBI processed all documents responsive to Plaintiff's requests to achieve maximum disclosure consistent with the access provisions of the FOIA. Every effort was

made to provide Plaintiff with all material in the public domain and with all reasonably segregable, non-exempt information. The FBI did not withhold any reasonably segregable, nonexempt portions from Plaintiff. Further description of the information withheld, beyond what is provided in the 4th Seidel Declaration, could identify the actual exempt information protected by the FBI. The FBI numbered all pages of its production consecutively as "FBI (20-cv-447)-1 through FBI (20-cv-447)-1596". On the pages released in full or in part, these numbers are typically located at the bottom of each page. Additionally, the FBI is including a *Vaughn* index at Exhibit N to explain where within its productions of responsive records it withheld pages in their entirety and its reasoning for doing so; and to explain on which pages it asserted various FOIA Exemptions.

Additionally, on the Bates-numbered documents provided to Plaintiff and on pages withheld in full and accounted for in the FBI's index, the FBI further categorized its application of Exemptions to better explain the nature of the information withheld pursuant to the provisions of the FOIA. Specifically, the FBI applied numerical codes that coincide with various categories of exempt information. These coded categories are provided to aid the Court's and Plaintiff's review of the FBI's explanations of the FOIA Exemptions it has asserted to withhold the material. The coded, Bates-numbered pages together with the 4th Seidel Declaration demonstrate that all material withheld by the FBI is exempt from disclosure pursuant to the cited FOIA exemptions or is so intertwined with protected material segregation is not possible without revealing the underlying protected material.

Each instance of information withheld pursuant to a FOIA Exemption is accompanied by a coded designation that corresponds to the categories listed in the 4th Seidel Declaration ¶75. For example, if "(b)(7)(C)-1" appears on a document, the "(b)(7)(C)" designation refers to FOIA Exemption 7(C) protecting against unwarranted invasions of personal privacy. The numerical designation of "1" following the "(b)(7)(C)" narrows the main category into a more specific subcategory, such as "Names and Identifying Information of FBI Special Agents and Professional Staff."

Each FOIA exemption invoked by the FBI in response to Plaintiff's FOIA requests is explained in detail in the 4th Seidel Declaration and identified in the attached *Vaughn* index. Defendant FBI incorporates and relies on the 4th Seidel declaration and *Vaughn* index in their entirety in this motion.

B.     <u>EXPLANATION OF WITHHOLDING BY OIP</u>

All Exemption 3, 7(D) and 7(E) withholdings and certain Exemption 5, 6, and 7(C) withholdings were made on behalf of the FBI, and OIP defers to FBI's respective withholdings as set forth in the 4th Seidel Declaration and accompanying *Vaughn* index. The Brinkmann Declaration and accompanying *Vaughn* index address the remaining withholdings made by OIP pursuant to Exemptions 5, 6, and 7(C). Additionally, within the context of this litigation, the FBI processed materials in response to a FOIA request submitted by Plaintiff to the FBI, and the FBI withheld portions of five pages on behalf of OIP pursuant to Exemption 5 of the FOIA, 5 U.S.C. §552 (b)(5).  The Brinkmann declaration will account for OIP's assertion of Exemption 5 as to these pages. [Brinkmann Declaration, ¶¶33-34].

The Brinkmann Declaration is intended to be read in tandem with the corresponding *Vaughn* index attached as Exhibit E to the declaration. This Index provides information regarding the records that OIP released in part with information, beyond contact information, withheld pursuant to FOIA Exemptions. This Index includes the categorical descriptions of the information withheld and an indicator about whether the FBI or OIP will address the withholding in their declaration.  For ease of reference, these records containing challenged withholdings are attached to the Index, and they are marked to distinguish information withheld by OIP (orange), information withheld by the FBI (blue), and withholdings that are undisputed (black). OIP also included in this Index information regarding the 107 pages that OIP withheld in full, as well as the five pages that the FBI released in part with certain withholdings made on behalf of OIP. [Brinkmann Declaration, ¶35].

Each FOIA exemption invoked by OIP in response to Plaintiff's FOIA requests is explained in detail in the Brinkmann Declaration and identified in the attached *Vaughn* index. Defendant OIP incorporates and relies on the Brinkmann Declaration and *Vaughn* index in their entirety in this motion.

C.    SUMMARY OF EXEMPTIONS

1.    *Exemption 1: Classified Information*

Exemption 1 protects from disclosure those records that are (a) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy; and (b) are in fact properly classified pursuant to such Executive Order. 5 U.S.C. §552 (b)(1). Executive Order 13526 ("E.O.

13526") is the current controlling executive order applicable to the protection of national security information. The FBI determined that all of the substantive, procedural, and administrative requirements set forth in E.O. 13526 were satisfied and concluded that the information protected pursuant to Exemption 1 was properly classified, continues to warrant classification at the "Secret" level, and is exempt from disclosure pursuant to E.O. 13526 § 1.4(c) - "intelligence activities (including covert action), intelligence sources or methods, or cryptology;" E.O. 13526 § 1.4 (d) - "foreign relations or foreign activities;" E.O. 13526 § 3.3(b)(1) - "intelligence sources and methods;" and E.O. 13526 § 3.3(b)(6) - "foreign government information." [4th Seidel Declaration, ¶¶76-93].

2.    *Exemption 3: Information Protected by Statute*

Exemption 3 protects from disclosure information which is specifically exempted from disclosure by statute, provided that the statute requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue. 5 U.S.C. §552 (b)(3). In weighing the validity of this exemption, a court must first consider whether the statute identified by the agency is in fact a withholding statute, and then whether the withheld material satisfies the statute's criteria. *See CIA v. Sims,* 471 U.S. 159, 167 (1985); *Krikorian v. Dep't of State,* 984 F.2d 461, 465 (D.C. Cir. 1993).

The FBI asserted Exemption 3 to withhold information pursuant to three statutes: The National Security Act of 1947, 50 U.S.C. §3024(i)(1) (to protect intelligence sources and methods); Federal Rule of Criminal Procedure 6(E) (to protect federal grand jury information); and The Pen Register Act, 18 U.S.C. §3123(d) (to protect pen register information).

Defendants' Motion for Summary Judgment                                    31

First, The National Security Act of 1947 provides that the Director of National Intelligence ("DNI") "shall protect from unauthorized disclosure intelligence sources and methods." 50 U.S.C. §3024(i)(1). On its face, the federal statute leaves no discretion to agencies to withhold from the public information about intelligence sources and methods. Thus, the protection afforded by The National Security Act of 1947 is absolute. The FBI properly withheld information that would reveal classified intelligence sources and methods pursuant to The National Security Act of 1947 under Exemption 3. [4th Seidel Declaration, ¶¶94-98; Exh. N].

Second, the FBI's withholding of the grand jury materials plainly falls under Rule 6(e)'s shield of "matters occurring before the grand jury." Fed.R.Crim.P. 6(e). Rule 6(e) is treated as a statute for purposes of Exemption 3 "because Congress has enacted it into positive law." *Murphy v. Exec. Office for U.S. Attorneys,* 789 F.3d 204, 206 (D.C. Cir. 2015). Here, the FBI properly withheld grand jury information pursuant to Rule 6(e) under Exemption 3. [4th Seidel Declaration, ¶99; Exh. N].

Finally, the FBI asserted Exemption 3 to withhold pen register information specifically exempted pursuant to 18 U.S.C. § 3123(d), the Pen Register Act, which protects from disclosure information pertaining to certain court "order(s) authorizing or approving the installation and use of a pen register or a trap and trace device;" and information pertaining to "the existence of the pen register or trap and trace device or the existence of the investigation." A pen register is a device that records phone numbers dialed to or from a target telephone. The statute mandates that a court order be obtained prior to installing or using a pen register, unless the user of the telephone consents to the

device. Orders for pen registers are sealed unless otherwise ordered by the court. Exemption 3 protects the court order in its entirety; the identity of the individual on whom it is placed; the location of the device; information obtained from the device; and any other specifics regarding the pen register/trap and trace device. Where documents at issue contain information that if disclosed would reveal the existence or use of a pen register or trap and trace device or reveal the existence of an investigation involving a pen register or trap and trace device, that information is protected from disclosure by Exemption 3. The FBI properly withheld the identities and phone numbers of individuals targeted by pen registers and individuals whose information was collected due to their contact with the targets of pen registers, as well as the information gathered by the devices, pursuant to the Pen Register Act under Exemption 3. [4th Seidel Declaration, ¶¶100-01; Exh. N].

Thus, the FBI found all of the information withheld pursuant to Exemption 3 to be protected from disclosure pursuant to these three statutes. [4th Seidel Declaration, ¶¶94-101; Exh. N].

### 3. *Exemption 4: Confidential Commercial Information*

Exemption 4 protects from disclosure trade secrets and commercial or financial information obtained from a person that is privileged or confidential. 5 U.S.C. §552 (b)(4). This exemption is intended to protect the interests of both the government and submitters of information. *See, e.g., Nat'l Parks & Conservation Ass'n v. Morton,* 498 F.2d 765, 767-70 (D.C. Cir.1974).

In reviewing the records at issue, the FBI located information that originated with a private commercial institution. In order to determine whether or not this information qualified for protection pursuant to Exemption 4, the FBI contacted the private commercial institution to establish if the information located by the FBI was customarily treated as private by the commercial institution and whether or not they provided this information to the FBI with an assurance of privacy. The FBI determined this confidential commercial information was provided to the FBI under an assurance of privacy and is exempt pursuant to Exemption 4. [4th Seidel Declaration, ¶¶102-03].

4.      *Exemption 5: Privileged Information*

Exemption 5 protects from disclosure inter-agency or intra-agency memorandums or letters that would not be available by law to a party in litigation with the agency. 5 U.S.C. §552 (b)(5). It ensures that members of the public cannot obtain through FOIA what would ordinarily be protected from disclosure in civil discovery. *See Loving v. Dep't of Def.,* 550 F.3d 32, 37 (D.C. Cir.2008). Among the privileges encompassed by Exemption 5 is the attorney work product doctrine and deliberative process privilege, both of which are relevant here. *Id.* Both the FBI and OIP withheld information under the attorney work product doctrine and the deliberative process privilege.

The attorney work product doctrine protects materials prepared in anticipation of litigation or for trial by or for another party of its representative. *Judicial Watch, Inc. v. Dep't of Homeland Sec.,* 926 F.Supp.2d 121, 137 (D.D.C. 2013) (quoting Fed.R.Civ.P. 26(b)(3)(A)). The doctrine covers both the mental impressions, conclusions, opinions, or

legal theories of an attorney and factual material prepared in anticipation of litigation. *Tax Analysts v. IRS,* 117 F.3d 607, 620 (D.C. Cir. 1997).

The deliberative process privilege applies to decision making of executive officials generally and protects documents containing deliberations that are part of the process by which government decisions are formulated. *In re Sealed Case*, 121 F.3d 729, 737, 745 (D.C. Cir. 1997). The purpose of the privilege is to prevent injury to the quality of agency decisions by encouraging frank discussions of policy matters, preventing premature disclosure of proposed policies, and avoiding public confusion that may result from disclosure of rationales that were not ultimately grounds for agency action. *Thelen v. Dep't of Justice,* 169 F.Supp.3d 128, 138 (D.D.C. 2016). To fall within the scope of the deliberative process privilege, the material must be both pre-decisional and deliberative. *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C. Cir. 1980). Material is pre-decisional if it was generated before the adoption of an agency policy. *Id.* Material is deliberative if it reflects the give-and-take of the consultive process. *Id.*

As explained in detail in the Seidel and Brinkmann Declarations and accompanying *Vaughn* indices, the FBI and OIP have invoked Exemption 5 to withhold information that is subject to the attorney work product doctrine and deliberative process privilege. Specifically, the FBI asserted Exemption 5 to protect internal deliberative communications, handwritten investigative interview notes, a draft interview prompt and outline, and draft prosecution memorandums. [4th Seidel Declaration, ¶¶104-14; Exh. N].

OIP asserted Exemption 5 to protect portions of certain FBI Form FD-302s (FBI interview summaries), internal deliberative inter-agency emails regarding a law

enforcement investigation, draft documents, and preparatory materials for an internal briefing. [Brinkmann Declaration, ¶¶36-70; Exh. E].

Both FBI and OIP have met their burden to show that release of the withheld information pursuant to Exemption 5 would cause foreseeable harm, as articulated in the FOIA Improvement Act of 2016, 5 U.S.C. §552 (a)(8). The Act directs agencies to assess "whether an agency has reasonably foreseen a specific, identifiable harm" before making a disclosure determination with respect to certain exemptions. H.R. Rep. No. 114-391, at 9. The Seidel and Brinkmann Declarations easily meet this standard with regard to withholdings under the attorney work product doctrine and the deliberative process privilege. [Brinkmann Declaration, ¶¶59-62; 67-70; 4th Seidel Declaration, ¶¶108, 111-12, 115-16]. The foreseeable harm in the disclosure of deliberative information would be to reveal the evolving thought process of government employees; hamper the ability of employees to freely engage in candid decision making; create public confusion by releasing drafts that do not reflect final agency decisions; reveal and interfere with the investigative process; and overall harm the quality and accuracy of future recommendations. [4th Seidel Declaration, ¶¶108, 111-12, 115-16; Brinkmann Declaration, ¶¶ 67-70]. The foreseeable harm in the disclosure of attorney work product information would be to interfere in the government attorneys' ability to properly prepare legal theories and strategies and to hinder them in providing the best representation to their clients. [4th Seidel Declaration, ¶ 118; Brinkmann Declaration ¶¶ 59-60].

     5.    *Exemption 7(A): Pending Law Enforcement Proceedings*

Exemption 7(A) protects from disclosure records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to interfere with enforcement proceedings. 5 U.S.C. §552 (b)(7)(A). The principal purpose of Exemption 7(A) is to prevent disclosures which might prematurely reveal the government's case in court, its evidence or strategies, or the nature, scope, direction, and focus of its investigations, and thereby enable suspects to establish defenses or fraudulent alibis or to destroy or alter evidence. *Maydak v. U.S. Dep't of Justice,* 218 F.3d 760, 762 (D.C. Cir. 2000).

Application of this exemption requires: the existence of law enforcement records; a pending or prospective law enforcement proceeding; and a determination that release of the information could reasonably be expected to interfere with the enforcement proceeding. In this case, the FBI asserted Exemption 7(A) in a limited fashion to protect information concerning a pending investigative FBI File number and the subject of an FBI pending investigation contained within the responsive records. The release of this information would reveal unknown information concerning pending enforcement procedures, to include the existence of unknown investigations. The FBI determined release of any of this material would provide criminals with information about the government's investigation/enforcement strategies in ongoing matters, allow them to predict and potentially thwart these strategies, and/or allow them to discover/tamper with witnesses and/or destroy evidence. As such, revealing this information could reasonably be expected to interfere with pending enforcement proceedings. Thus, the FBI has

applied Exemption 7(A) to protect this information. [4th Seidel Declaration, ¶¶121-22; Exh. N].

  6.    *Exemptions 6 and 7(C): Unwarranted Invasion of Personal Privacy*

Exemption 6 protects from disclosure personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. 5 U.S.C. §552 (b)(6). Exemption 7(C) similarly protects from disclosure records or information compiled for law enforcement purposed when disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C. §552 (b)(7)(C). Exemptions 6 and 7(C) balance individuals' privacy interests in protecting information from disclosure against the public interest in such disclosure. *See generally U.S. Dep't of Justice Reporters Comm. For Freedom of Press*, 489 U.S. 749, 771-76 (1989).

The purpose of Exemption 6 is to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982). The statutory language concerning files "similar" to personnel or medical files has been read broadly by the Supreme Court to encompass any "information which applies to a particular individual . . . sought from government records." *Id.* at 602. The privacy interest in Exemption 6 "belongs to the individual, not the agency." *Amuso v. DOJ*, 600 F. Supp. 2d 78, 93 (D.D.C. 2009).

For purposes of Exemption 7, records are "compiled for law enforcement purposes" if there is "a nexus between the agency's activity . . . and its law enforcement duties." *Keys v. DOJ*, 830 F.2d 337, 340 (D.C. Cir. 1987).

The FBI asserted Exemptions 6 and 7(C) to protect names and other identifying information of FBI special agents and professional staff, third parties merely mentioned, persons of investigative interest, third parties who provided information, and non-FBI federal government personnel. In addition, the FBI withheld information derived from Seth Rich's personal laptop as such information would violate the privacy rights of the survivors of Seth Rich. [4th Seidel Declaration, ¶¶123-40; Exh. N].

OIP asserted Exemptions 6 and 7(C) to protect the identify of lower level, non-public SCO employees, as well as names and information pertaining to third-party, private citizens. [Brinkmann Declaration, ¶¶71-81; Exh. E].

Both FBI and OIP have met their burden to establish that release of the withheld information pursuant to Exemptions 6 and 7(C) would cause foreseeable harm, as articulated in the FOIA Improvement Act of 2016, 5 U.S.C. §552 (a)(8). If OIP were compelled to release the withheld identifying information for lower level, non-public employees, or the identifying information of third-party, private citizens, this would result in the foreseeable harm of unwarranted invasion of these individuals' personal privacy. [Brinkmann Declaration, ¶81]. Similarly, if the FBI were compelled to release withheld information identifying FBI and non-FBI federal government personnel, the resulting foreseeable harm would be that those federal employees could be targeted with hostility, revenge, reprisal, harassment, and efforts to obtain sensitive or classified

information. [4th Seidel Declaration, ¶¶127-129, 135]. The foreseeable harm in the release of information identifying persons of investigative interest or third parties who provided information would be potential harassment, embarrassment, and undue public attention. [4th Seidel Declaration, ¶¶131-34].

7.     *Exemption 7(D): Confidential Source Information*

Exemption 7(D) protects from disclosure agency records "compiled for law enforcement purposes…by criminal law enforcement authority in the course of a criminal investigation" if release of those records "could reasonably be expected to disclose" the identity of, or information provided by, a "confidential source." 5 U.S.C. §552 (b)(7)(D); *see also U.S. Dep't of Justice v. Landano,* 508 U.S. 165, 171 (1993).

Numerous confidential sources report to the FBI on a regular basis. They provide information under an express assurance of confidentiality and are "informants" within the common meaning of the term. Others are interviewed and provide information under an implied assurance of confidentiality (i.e., under circumstances from which an assurance of confidentiality may be inferred). In either situation, these sources are considered to be confidential because they furnish information only with the understanding that their identities and the information they provide will not be divulged outside the FBI (outside of the investigative use of the information to, for example, set leads). [4th Seidel Declaration, ¶142]. "[A] source is confidential within the meaning of Exemption 7(D) if the source 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.'" *Landano,* 508 U.S. at 165.

The FBI asserted Exemption 7(D) to withhold confidential source symbol numbers, identifying information and information provided by sources under both express and implied assurances of confidentiality, and information provided by a foreign government agency under an implied assurance of confidentiality. [4th Seidel Declaration, ¶¶144-55; Exh. N].

8.    *Exemption 7(E): Investigative Techniques and Procedures*

Exemption 7(E) protects from disclosure law enforcement records where release "would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. §552 (b)(7)(E). In order to invoke Exemption 7(E), the Government must make a threshold showing that the materials be records or information compiled for law enforcement purposes. *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 148 (1989). Law enforcement "techniques and procedures" encompass "how law enforcement officials go about investigating a crime." *Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.,* 626 F.3d 678, 680-81 (2nd Cir.2010). The FBI is not required to show that the disclosure of information regarding the "techniques and procedures" in question could reasonably be expected to risk circumvention of law as a result of disclosure. *Id.* at 681. Such information is categorically exempt from FOIA disclosure without need for demonstration of harm. *Id.* Exemption 7(E) sets a "low bar for the agency to justify withholding." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011).

Defendants' Motion for Summary Judgment                                    41

The FBI has asserted Exemption 7(E) to protect non-public investigative techniques and procedures utilized by the FBI to carry out its law enforcement function, and to non-public details about techniques and procedures that are otherwise known to the public. Specifically, the FBI asserted Exemption 7(E) to protect FBI internal email addresses and non-public web addresses; sensitive investigative file numbers and sub-file names; database information; code names for investigations; types and dates of investigations; collection and analysis of information; specific law enforcement techniques utilized to conduct national security investigations; investigative focus of specific investigations; and identities of an FBI Unit, Squad and Division. [4th Seidel Declaration, ¶¶156-77; Exh. N].

## CONCLUSION

The FBI and OIP performed adequate and reasonable searches for responsive records, processed all such records, and released all reasonably segregable non-exempt information from documents responsive to Plaintiff's FOIA requests that are subject to the FOIA. The FBI and OIP processed the records under the access provisions of the FOIA to achieve maximum disclosure. Information was properly withheld pursuant to FOIA Exemptions 1, 3, 4, 5, 6, 7(A), 7(C), 7(D), and 7(E), 5 U.S.C. §§552 (b)(1), (b)(3), (b)(4), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E).  The FBI and OIP carefully examined the documents and determined the information withheld from Plaintiff in this case, if disclosed would reveal classified information; would reveal statutorily protected information; would reveal confidential trade secrets and commercial information; would reveal privileged information; could reasonably be expected to

interfere with pending or prospective enforcement proceedings; would cause a clearly unwarranted invasion of the personal privacy, or could reasonably be expected to constitute an unwarranted invasion of personal privacy; could reasonably be expected to disclose the identities of confidential sources and the information they provided; and would disclose techniques and procedures for law enforcement investigations. After extensive review of the documents at issue, the FBI and OIP have determined that there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information.

Because Defendants conducted reasonable searches in response to Plaintiff's FOIA requests, properly issued *Glomar* responses as appropriate, and properly withheld information pursuant to appropriate FOIA exemptions, Defendants are entitled to summary judgment.

Respectfully submitted,

BRIT FEATHERSTON
UNITED STATES ATTORNEY

*/s Andrea L. Parker*
ANDREA L. PARKER
Assistant United States Attorney
Texas Bar No. 00790851
550 Fannin, Suite 1250
Beaumont, Texas 77701
Tel:   (409) 839-2538
Fax:   (409) 839-2550
Email: andrea.parker@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 15, 2021, a true and correct copy of the foregoing document was filed electronically with the court and has been sent to counsel of record via the court's electronic filing system.

*/s/ Andrea L. Parker*
ANDREA L. PARKER
Assistant United States Attorney
