# Exhibit 1



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

April 23, 2021

Mr. Brian Huddleston
c/o Mr. Ty O. Clevenger
Post Office Box 20753
Brooklyn, NY 11202-0753

FOIPA Request Nos.:  1465531-000
Subject:   Seth Rich (January 1, 2016 to present)

*Brian Huddleston v. Federal Bureau of
Investigation, et al*
Civil Action No.: 20-cv-00447

Dear Mr. Huddleston:

The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a.   Below you will find check boxes under the appropriate statute headings which indicate the types of exemptions asserted to protect information which is exempt from disclosure.   The appropriate exemptions are noted on the enclosed pages next to redacted information.   In addition, a deleted page information sheet was inserted to indicate where pages were withheld entirely and identify which exemptions were applied.   The checked exemption boxes used to withhold information are further explained in the enclosed Explanation of Exemptions.

|  **Section 552**  |  |  **Section 552a**  |
|---|---|---|
| ☑ (b)(1) | ☑ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☑ (b)(3) | ☑ (b)(7)(C) | ☐ (k)(1) |
| 50 USC § 3024(i)(1) | ☑ (b)(7)(D) | ☐ (k)(2) |
| Federal Rules of Criminal Procedure 6 (e) | ☑ (b)(7)(E) | ☐ (k)(3) |
|  | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☑ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) |  | ☐ (k)(7) |

576 pages were reviewed and 68 pages are being released.

Please see the paragraphs below for relevant information specific to your request as well as the enclosed FBI FOIPA Addendum for standard responses applicable to all requests.

☐   Document(s) were located which originated with, or contained information concerning, other Government Agency (ies) [OGA].

☐   This information has been referred to the OGA(s) for review and direct response to you.
☐   We are consulting with another agency.   The FBI will correspond with you regarding this information when the consultation is completed.

Please refer to the enclosed FBI FOIPA Addendum for additional standard responses applicable to your request. **"Part 1"** of the Addendum includes standard responses that apply to all requests. **"Part 2"** includes additional standard responses that apply to all requests for records about yourself or any third party individuals. **"Part 3"** includes general information about FBI records that you may find useful. Also enclosed is our Explanation of Exemptions.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request Number listed above has been assigned to your request. Please use this number in all correspondence concerning your request.

Although your request is in litigation, we are required by law to provide you the following information:

If you are not satisfied with the Federal Bureau of Investigation's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS). The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769. Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov. If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

Please direct any further inquiries about this case to the Attorney representing the Government in this matter. Please use the FOIPA Request Number and/or Civil Action Number in all correspondence or inquiries concerning your request.

☑ See additional information which follows.

Sincerely,

Michael G. Seidel
Section Chief
Record/Information
   Dissemination Section
Information Management Division

Enclosure(s)

In response to your Freedom of Information Act (FOIA) request and subsequent civil action case pending in the U.S. District Court for the Eastern District of Texas, enclosed is one (1) compact disc representing the FBI's 1st Interim release of information concerning records Bates Stamped FBI (20-cv-00447)-1 through FBI (20-cv-00447)-576.
These pages were located in cross-reference files as described below. No "main" investigative files pertaining to the subject of your request were located.

Cross-references are defined as mentions of the subject of your request in files to other individuals, organizations, events, or activities. In processing the cross-references, the pages considered for possible release included only those pages which mention the subject of your request and any additional pages showing the context in which the subject of your request was mentioned. The cross-references were processed pursuant to the provisions of the FOIA and are being released to you in redacted form.

FBI (20-cv-00447)-422 represents a compact disc wherein all of the contents thereof is being withheld in its entirety pursuant to FOIA Exemptions (b)(6), (b)(7)(C), (b)(7)(D) and (b)(7)(E).

For your information, sealed court records are not eligible for release under the Freedom of Information Act.   Material responsive to your request has been withheld and marked "OTHER-Sealed" pursuant to appropriate orders issued by federal district courts.

Duplicate copies of the same document were not processed.

**FBI FOIPA Addendum**

**As referenced in our letter responding to your Freedom of Information/Privacy Acts (FOIPA) request, the FBI FOIPA Addendum provides information applicable to your request. Part 1 of the Addendum includes standard responses that apply to all requests. Part 2 includes standard responses that apply to requests for records about individuals to the extent your request seeks the listed information. Part 3 includes general information about FBI records, searches, and programs.**

**Part 1: The standard responses below apply to all requests:**

(i) **5 U.S.C. § 552(c).** Congress excluded three categories of law enforcement and national security records from the requirements of the FOIPA [5 U.S.C. § 552(c)]. FBI responses are limited to those records subject to the requirements of the FOIPA. Additional information about the FBI and the FOIPA can be found on the www.fbi.gov/foia website.

(ii) **Intelligence Records**. To the extent your request seeks records of intelligence sources, methods, or activities, the FBI can neither confirm nor deny the existence of records pursuant to FOIA exemptions (b)(1), (b)(3), and as applicable to requests for records about individuals, PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(1), (b)(3), and (j)(2)]. The mere acknowledgment of the existence or nonexistence of such records is itself a classified fact protected by FOIA exemption (b)(1) and/or would reveal intelligence sources, methods, or activities protected by exemption (b)(3) [50 USC § 3024(i)(1)]. This is a standard response and should not be read to indicate that any such records do or do not exist.

**Part 2: The standard responses below apply to all requests for records on individuals:**

(i) **Requests for Records about any Individual—Watch Lists.** The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)]. This is a standard response and should not be read to indicate that watch list records do or do not exist.

(ii) **Requests for Records about any Individual—Witness Security Program Records.** The FBI can neither confirm nor deny the existence of records which could identify any participant in the Witness Security Program pursuant to FOIA exemption (b)(3) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(3), 18 U.S.C. 3521, and (j)(2)]. This is a standard response and should not be read to indicate that such records do or do not exist.

(iii) **Requests for Records for Incarcerated Individuals.** The FBI can neither confirm nor deny the existence of records which could reasonably be expected to endanger the life or physical safety of any incarcerated individual pursuant to FOIA exemptions (b)(7)(E), (b)(7)(F), and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (b)(7)(F), and (j)(2)]. This is a standard response and should not be read to indicate that such records do or do not exist.

**Part 3: General Information:**

(i) **Record Searches.** The Record/Information Dissemination Section (RIDS) searches for reasonably described records by searching systems or locations where responsive records would reasonably be found. A standard search normally consists of a search for main files in the Central Records System (CRS), an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled by the FBI per its law enforcement, intelligence, and administrative functions. The CRS spans the entire FBI organization, comprising records of FBI Headquarters, FBI Field Offices, and FBI Legal Attaché Offices (Legats) worldwide; Electronic Surveillance (ELSUR) records are included in the CRS. Unless specifically requested, a standard search does not include references, administrative records of previous FOIPA requests, or civil litigation files. For additional information about our record searches, visit www.fbi.gov/services/information-management/foipa/requesting-fbi-records.

(ii) **FBI Records.** Founded in 1908, the FBI carries out a dual law enforcement and national security mission. As part of this dual mission, the FBI creates and maintains records on various subjects; however, the FBI does not maintain records on every person, subject, or entity.

(iii) **Requests for Criminal History Records or Rap Sheets.** The Criminal Justice Information Services (CJIS) Division provides Identity History Summary Checks – often referred to as a criminal history record or rap sheet. These criminal history records are not the same as material in an investigative "FBI file." An Identity History Summary Check is a listing of information taken from fingerprint cards and documents submitted to the FBI in connection with arrests, federal employment, naturalization, or military service. For a fee, individuals can request a copy of their Identity History Summary Check. Forms and directions can be accessed at www.fbi.gov/about-us/cjis/identity-history-summary-checks. Additionally, requests can be submitted electronically at www.edo.cjis.gov. For additional information, please contact CJIS directly at (304) 625-5590.

(iv) **National Name Check Program (NNCP).** The mission of NNCP is to analyze and report information in response to name check requests received from federal agencies, for the purpose of protecting the United States from foreign and domestic threats to national security. Please be advised that this is a service provided to other federal agencies. Private Citizens cannot request a name check.

## EXPLANATION OF EXEMPTIONS

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1) (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2) related solely to the internal personnel rules and practices of an agency;

(b)(3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9) geological and geophysical information and data, including maps, concerning wells.

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5) information compiled in reasonable anticipation of a civil action proceeding;

(j)(2) material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1) information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2) investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3) material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4) required by statute to be maintained and used solely as statistical records;

(k)(5) investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6) testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7) material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

**FEDERAL BUREAU OF INVESTIGATION**

**FOI/PA**
**DELETED PAGE INFORMATION SHEET**
**Civil Action# 4:20-cv-00447**
**Total Withheld Page(s) = 507**
**Total Withheld CD(s)= 1**

| **Bates Page Reference**<br>**FBI (20-cv-00447)-** | **Reason for Withholding**<br>(i.e., exemptions with coded rationale, duplicate, sealed by order of court, etc.) |
|---|---|
| 4-5 | Duplicate to 309-310 (2 pages) |
| 6 | b6-1; b7C-1; b7D-1,-2; b7E-2,-3,-4; (1 page) |
| 7 | b6-1; b7C-1; b7D-1,-2; b7E-2,-3; (1 page) |
| 8-9 | b6-2; b7C-2; b7D-2; b7E-3; (2 pages) |
| 12-13 | b5-1; b6-3; b7A-1; b7C-3; (2 pages) |
| 17-20 | b5-1; b6-3; b7C-3; (4 pages) |
| 21 | b5-1; b6-3; b7C-3; (1 page) |
| 24 | b5-1; b6-2,-3; b7C-2,-3; (1 page) |
| 25 | b5-1; b6-3; b7C-3; (1 page) |
| 26 | b5-1; b6-2,-3; b7C-2,-3; (1 page) |
| 27 | b5-1; b6-3; b7C-3; (1 page) |
| 28 | b5-1; b6-3; b7C-3; (1 page) |
| 31 | b5-1; b6-1,-2; b7C-1,-2; (1 page) |
| 32 | b5-1; (1 page) |
| 33-34 | Duplicate to 309-310 (2 pages) |
| 35-36 | Duplicate to 307-308 (2 pages) |
| 37 | b6-1; b7C-1; b7E-1,-2,-4,-6; (1 page) |

| | |
|---|---|
| 38 | Duplicate to 115 (1 page) |
| 39 | Duplicate to 116 (1 page) |
| 40-41 | Duplicate to 117-118 (2 pages) |
| 42-43 | Duplicate to 119-120 (2 pages) |
| 44-45 | b6-2; b7C-2; b7E-6; (2 pages) |
| 46 | b7E-6; (1 page) |
| 47-49 | b6-2; b7C-2; b7E-6; (3 pages) |
| 50 | b7E-6; (1 page) |
| 51-53 | b6-2; b7C-2; b7E-6; (3 pages) |
| 54 | b7E-6; (1 page) |
| 55-57 | b6-2; b7C-2; b7E-6; (3 pages) |
| 58 | b7E-6; (1 page) |
| 59-61 | b6-2; b7C-2; b7E-6; (3 pages) |
| 62 | b7E-6; (1 page) |
| 63-64 | b6-2; b7C-2; b7E-6; (2 pages) |
| 65 | b7E-6; (1 page) |
| 66-67 | b6-2; b7C-2; b7E-6; (2 pages) |
| 68 | b7E-6; (1 page) |
| 69-70 | b6-2; b7C-2; b7E-6; (2 pages) |
| 71 | b7E-6; (1 page) |

| | |
|---|---|
| 72-73 | b6-2; b7C-2; b7E-6; (2 pages) |
| 74 | b7E-6; (1 page) |
| 75 | b6-2; b7C-2; b7E-6; (1 page) |
| 78 | b1-1; b3-1; b6-4; b7C-4; b7D-3; b7E-2,-4,-6; (1 page) |
| 79 | b6-2; b7C-2; b7E-6; (1 page) |
| 80 | b7E-6; (1 page) |
| 81 | b7E-6; (1 page) |
| 82 | b3-2; b6-1,-3; b7C-1,-3; b7E-2,-6; Other-Sealed (1 page) |
| 83 | b3-2; Other-Sealed; (1 page) |
| 84 | b3-2; b6-3; b7C-3; b7E-6; Other-Sealed (1 page) |
| 85 | b3-2; b6-1,-3; b7C-1,-3; b7E-2,-6; Other-Sealed; (1 page) |
| 86-87 | b3-2; b6-1,-3; b7C-1,-3; b7E-6; Other-Sealed; (2 pages) |
| 88 | b3-2; b6-3; b7C-3; b7E-6; Other-Sealed; (1 page) |
| 89-90 | Duplicate to 83-84 (2 pages) |
| 91 | b3-2; b7E-6; Other-Sealed; (1 page) |
| 92 | b1-1; b3-1; b6-1; b7C-1; b7E-1,-2,-4,-7; (1 page) |
| 93 | b1-1; b3-3; b7E-2,-7; (1 page) |
| 94-96 | b3-1; b7E-7; (3 pages) |
| 98 | b7E-6; (1 page) |
| 99-100 | b7E-6; (2 pages) |

| | |
|---|---|
| 102 | b3-2; b6-2-3; b7C-2-3; b7E-6; (1 page) |
| 103-105 | b3-2; b6-2; b7C-2; b7E-6; (3 pages) |
| 107 | b6-1; b7C-1, b7E-2,-6; (1 page |
| 108-109 | b6-3; b7C-3; b7E-6; (2 pages) |
| 110 | b6-1-2; b7C-1,-2; b7E-1,-2,-4,-6; (1 page) |
| 111 | b7E-2,-6; (1 page) |
| 112-113 | b7E-6; (2 pages) |
| 115-120 | b7E-6; (6 pages) |
| 121 | b6-1; b7C-1; b7E-1,-2,-4,-6; (1 page) |
| 122 | b6-1,-2; b7C-1,-2; b7E-6; Other-Sealed; (1 page) |
| 123-128 | b6-1; b7C-1; b7E-6; Other-Sealed; (6 pages) |
| 129-142 | b7E-6; (14 pages) |
| 143 | b6-2; b7C-2; b7E-6; (1 page) |
| 144 | b6-1,-3; b7C-1,-3; b7E-2,-6; Other-Sealed; (1 page) |
| 145 | b6-2,-3; b7C-2,-3; b7E-6; Other-Sealed; (1 page) |
| 146 | b6-3; b7C-3; b7E-6; Other-Sealed; (1 page) |
| 147 | b6-2,-3; b7E-2,-3; b7E-6; Other-Sealed; (1 page) |
| 152 | b5-1; b6-1; b7C-1; b7E-6; (1 page) |
| 153 | b5-1; b6-2; b7C-2; (1 page) |
| 154-155 | b5-1; b6-3; b7C-3; (2 pages) |

| | |
|---|---|
| 156 | b6-3; b7C-3; (1 page) |
| 162-163 | b3-1; b6-3; b7A-1; b7C-3; b7E-2; (2 pages) |
| 166 | b3-2; (1 page) |
| 168-170 | b3-2; b6-2,-3; b7A-1; b7C-2,-3; (3 pages) |
| 171 | b3-2; b7A-1; (1 page) |
| 172-173 | b3-2; b6-2,-3; b7A-1; b7C-2,-3; (2 pages) |
| 174 | b3-2; b6-3; b7A-1; b7C-3; (1 page) |
| 175-176 | b3-2; b6-2,-3; b7A-1; b7C-2,-3; (2 pages) |
| 177 | b3-2; b7A-1; (1 page) |
| 178-180 | b3-2; b6-2,-3; b7A-1; b7C-2,-3; (3 pages) |
| 181 | b3-2; b7A-1; (1 page) |
| 182 | b3-2; b6-2,-3; b7A-1; b7C-2,-3; (1 page) |
| 183-184 | b3-2; b6-3; b7A-1; b7C-3; (2 pages) |
| 186 | b3-2; b6-3; b7A-1; b7C-3; (1 page) |
| 187-188 | b3-2; b7A-1; (2 pages) |
| 189-193 | b3-2; b6-2,-3; b7A-1; b7C-2,-3; (5 pages) |
| 195 | b3-2; b6-1,-3; b7A-1, b7C-1,-3; b7E-6; (1 page) |
| 197 | b3-2; b6-1; b7C-1; b7E-2,-6; (1 page) |
| 199 | b3-2; b6-2; b7C-2; b7E-2,-6; (1 page) |
| 200-201 | b3-2; b6-2; b7C-2; b7E-6; (2 pages) |

| | |
|---|---|
| 202 | b3-2; b6-1,-3; b7C-1,-3; b7E-2,-6; Other-Sealed; (1 page) |
| 203 | b3-2; Other-Sealed; (1 page) |
| 204 | b3-2; b6-3; b7C-3; b7E-6; Other-Sealed;(1 page) |
| 205 | b3-2; b6-1,-2,-3; b7C-1,-2,-3; b7E-6; Other-Sealed; (1 page) |
| 206-214 | b3-2; b7E-6; Other-Sealed; (9 pages) |
| 215-220 | b3-2; b6-3; b7E-3; b7E-6; Other-Sealed; (6 pages) |
| 221-265 | b3-2; b7E-6; Other-Sealed;(45 pages) |
| 266 | b3-2; b6-3; b7E-3, b7E-6; Other-Sealed;(1 page) |
| 267-273 | b3-2; b7E-6; Other-Sealed; (7 pages) |
| 274 | b3-2; b6-2; b7C-2; b7E-6; Other-Sealed; (1 page) |
| 275 | b3-2; b6-1,-3; b7C-1,-3; b7E-2,-6; Other-Sealed; (1 page) |
| 276 | b3-2; Other-Sealed; (1 page) |
| 277 | b3-2; b6-3; b7C-3; b7E-6; Other-Sealed; (1 page) |
| 278 | b3-2; b6-3; b7C-3; b7E-1,-6; Other-Sealed; (1 page) |
| 279-280 | b3-2; b7E-6; Other-Sealed: (2 pages) |
| 284-286 | b6-2; b7C-2; b7E-6; (3 pages) |
| 287-290 | b7E-6; (4 pages) |
| 291 | b6-2; b7C-2; b7E-6; (1 page) |
| 292-294 | b7E-6; (3 pages) |
| 295-297 | b6-2; b7C-2; b7E-6; (3 pages) |

| | |
|---|---|
| 298-301 | b7E-6; (4 pages) |
| 302 | b6-2; b7C-2; b7E-6; (1 page) |
| 303-305 | b7E-6; (3 pages) |
| 307 | b5-1; b6-2,-3; b7C-2,-3; (1 page) |
| 308 | b5-1; b6-3; b7C-3; (1 page |
| 312-313 | Duplicate to 307-308 (2 pages) |
| 314-315 | Duplicate to 309-310 (2 pages) |
| 318-319 | b5-1; b6-3; b7C-3; (2 pages) |
| 320-321 | b6-3; b7C-3 (2 pages) |
| 322-323 | b6-3; b7C-3 (2 pages) |
| 327 | b6-3; b7C-3; b7E-2,-6; (1 page) |
| 328-330 | b6-3; b7C-3; b7E-6; (3 pages) |
| 331 | b6-1,-3; b7C-1,-3; b7E-2,-6; Other-Sealed; (1 page) |
| 332-333 | Other-Sealed; (2 pages) |
| 334-336 | b6-2; b7C-2; b7E-6; Other-Sealed; (3 pages) |
| 337 | b7E-6; Other-Sealed; (1 page) |
| 338 | b6-2; b7C-2; b7E-6; Other-Sealed; (1 page) |
| 339 | b6-2; b7C-2; b7E-6; Other-Sealed; (1 page) |
| 340-341 | Other-Sealed (2 pages) |
| 342-393 | b6-2; b7C-2; b7E-6; Other-Sealed; (52 pages) |

| | |
|---|---|
| 394-395 | b6-1; b7C-1; b7E-2; Other-Sealed; (2 pages) |
| 396-397 | b6-2; b7C-2; b7E-6; Other-Sealed: (2 pages) |
| 400 | b5-1; b6-1,-3; b7C-1,-3; (1 page) |
| 401 | b5-1; b6-3; b7C-3; (1 page) |
| 404 | b6-3; b7C-3; b7E-6; (1 page) |
| 408-410 | b6-2,-4; b7C-2,-4; b7D-3; (3 pages) |
| 411-415 | b6-4; b7C-4; b7D-3; (5 pages) |
| 416 | b6-1,-4; b7C-1,-4; b7D-3; b7E-2; (1 page) |
| 417 | b6-1; b7C-1; b7D-3; b7E-2,-4; (1 page) |
| 418 | b6-5; b7C-5; b7D-3; (1 page |
| 419 | b6-4; b7C-4; b7D-3; (1 page) |
| 420-421 | b5-per EOUSA; b6-per EOUSA; b7C-per EOUSA (2 pages) |
| 422 | b6-2; b7C-2; b7D-3; b7E-6; (1 compact disc) |
| 427 | b6-2,-4; b7C-2,-4; b7E-6; (1 page) |
| 429 | b6-2,-4; b7C-2,-4; b7E-6; (1 page) |
| 434-436 | Duplicate to 427-429 (3 pages) |
| 440 | b5-1; b6-2,-3; b7C-1,-3; (1 page) |
| 441 | b5-1; b6-3; b7C-3; (1 page) |
| 442 | b5-1; b6-1,-3; b7C-1,-3; b7E-2; (1 page) |
| 443 | b5-1; b6-3; b7C-3; b7E-2; (1 page) |

| | |
|---|---|
| 447-464 | b6-3; b7C-3; b7E-6; (18 pages) |
| 465-467 | b7E-6; (3 pages) |
| 468-478 | b6-3; b7C-3; b7E-6; (11 pages) |
| 479 | b7E-6; (1 page) |
| 480 | b6-3; b7C-3; b7E-6; (1 page) |
| 481-483 | b7E-6; (3 pages) |
| 484-487 | b6-3; b7C-3; b7E-6; (4 pages) |
| 488-489 | b7E-6; (2 pages) |
| 490 | b6-3; b7C-3; b7E-6; (1 page) |
| 491-492 | b7E-6; (2 pages) |
| 493-509 | b6-3; b7C-3; b7E-6; (17 pages) |
| 510-513 | b7E-6; (4 pages) |
| 514-520 | b6-3; b7C-3; b7E-6; (7 pages) |
| 521-529 | b7E-6; (9 pages) |
| 530-532 | b6-3; b7C-3; b7E-6; (3 pages) |
| 533 | b7E-6; (1 page) |
| 534 | b6-3; b7C-3; b7E-6; (1 page) |
| 535-576 | b7E-6; (42 pages) |

XXXXXXXXXXXXXXXXXXXXXX
X Deleted Page(s) X
X No Duplication Fee X
X For this Page X
XXXXXXXXXXXXXXXXXXXXXX

**Strzok, Peter P. (CD) (FBI)**

| | |
|---|---|
| **From:** | Strzok, Peter P. (CD) (FBI) |
| **Sent:** | Wednesday, August 10, 2016 7:49 PM |
| **To:** | Page, Lisa C. (OGC) (FBI) |
| **Subject:** | Fwd: Seth Rich |

-------- Original message --------
From: [redacted] (WF) (FBI)" [redacted]
Date: 08/10/2016 7:09 PM (GMT-05:00)
To: "Moffa, Jonathan C. (CD) (FBI) [redacted] "Strzok, Peter P. (CD) (FBI)" [redacted]
Subject: Fwd: Seth Rich

b6 -1
b7C -1
b7E -1

Just FYSA. I squashed this with [redacted]

b6 -1
b7C -1

...

-------- Original message --------
From: [redacted] (WF) (FBI)" [redacted]
Date: 08/10/2016 1:25 PM (GMT-05:00)
To: [redacted] (WF) (FBI)" [redacted] (WF) (FBI)" [redacted]
Cc: [redacted] (WF) (FBI)" [redacted] (WF) (FBI)" [redacted] (WF) (FBI)" [redacted]
Subject: RE: Seth Rich

b6 -1
b7C -1
b7E -1

Thanks [redacted] Will do.

**From:** [redacted] (WF) (FBI)
**Sent:** Wednesday, August 10, 2016 1:00 PM
**To:** [redacted] (WF) (FBI); [redacted] (WF) (FBI)
**Cc:** [redacted] (WF) (FBI); [redacted] (WF) (FBI); [redacted] (WF) (FBI)
**Subject:** RE: Seth Rich

b6 -1
b7C -1
b7E -1

Hi [redacted]

b5 -1
b6 -1
b7C -1
b7E -1

...

-------- Original message --------
From: [redacted] (WF) (FBI)" [redacted]
Date: 08/10/2016 12:54 PM (GMT-05:00)
To: [redacted] (WF) (FBI)" [redacted]
Cc: [redacted] (WF) (FBI)" [redacted] (WF) (FBI)" [redacted] (WF) (FBI) [redacted]
Subject: RE: Seth Rich

b6 -1
b7C -1
b7E -1

Adding [redacted] for real. Stupid Samsung.

-------- Original message --------
From: [redacted] (WF) (FBI)" [redacted]
Date: 08/10/2016 12:53 PM (GMT-05:00)
To: [redacted] (WF) (FBI) [redacted]
Cc: [redacted] (WF) (FBI)" [redacted] (WF) (FBI)" [redacted]
Subject: RE: Seth Rich

b5 -1
b6 -1
b7C -1
b7E -1

Adding SSA [redacted] I'm aware of this reporting from earlier this week but not any specific involvement in any related case. [redacted]

-------- Original message --------
From: [redacted] (WF) (FBI) [redacted]
Date: 08/10/2016 10:32 AM (GMT-05:00)
To: [redacted] (WF) (FBI)" [redacted]
Cc: [redacted] (WF) (FBI)" [redacted] (WF) (FBI)" [redacted]
Subject: Seth Rich

b6 -1
b7C -1
b7E -1

[redacted]

b6 -1
b7C -1

I hope you are well. I heard from the front office that you are covering for ASAC [redacted] this week. Various news outlets are reporting today that Julian Assange suggested during a recent overseas interview that DNC Staffer, Seth Rich was a Wikileaks source, and may have been killed because he leaked the DNC e-mails to his organization, and that Wikileak's was offering $20,000 for information regarding Rich's death last month. Based on this news, we anticipate additional press coverage on this matter. I hear that you are in a class today; however, when you have a moment, can you please give me a call to discuss what involvement the Bureau has in the investigation.

Thanks,

[redacted]
*FBI Washington Field Office*
*Public Affairs*
*Des* [redacted]
*Cell* [redacted]

b6 -1
b7C -1
b7E -1

b7E -2

FD-1036 (Rev. 10-16-2009)

(U) ~~SECRET//NOFORN~~

# FEDERAL BUREAU OF INVESTIGATION

**Import Form**

**Form Type:** FD-302 - Form for Reporting Information that may become Subject of Testimony

**Date:** 08/15/2018

b6 -1
b7C -1

**Title:** (U//~~FOUO~~) Interview of Richard Gates on 4/10/2018

CLASSIFIED BY: NSICG [redacted]
REASON: 1.4 (C)
DECLASSIFY ON: 12-31-2043
DATE: 02-04-2021

**Approved By:** [redacted]

**Drafted By:** [redacted]

ALL INFORMATION CONTAINED HEREIN IS UNCLASSIFIED EXCEPT WHERE SHOWN OTHERWISE

**Case ID #:** [redacted] (U) ~~(S//NF)~~ [redacted]

[redacted] (S)

SENSITIVE INVESTIGATIVE MATTER

b1 -1
b3 -1
b6 -3
b7C -3
b7E -2

**Synopsis:** (U//~~FOUO~~) Interview of Richard Gates on 4/10/2018- originally serialized in [redacted] Administrative Note: Sentinel does not allow reserialization to a prohibited case. Therefore, the official record copy is being imported into this case.

~~**Reason: 1.4(b)**~~
~~**Derived From: FBI NSIC CG**~~
~~**Declassify On: 20431231**~~

♦♦

(U) ~~SECRET//NOFORN~~

b7E -2

FD-302 (Rev. 5-8-10)

UNCLASSIFIED//~~FOUO~~

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 08/27/2018

JASON FISHBEIN, date of birth (DOB): [redacted] was interviewed telephonically on his cellular phone number [redacted] after agents tried to interview him at his residence at [redacted] After being advised of the identity of the interviewing Agent and the nature of the interview, FISHBEIN provided the following information:

b6 -3
b7C -3

[redacted]

b6 -3
b7A -1
b7C -3

FISHBEIN called the interviewing agent back shortly after and explained he had some time to talk. FISHBEIN said [redacted]

b6 -3
b7A -1
b7C -3

When asked about [redacted] FISHBEIN explained [redacted]

b6 -3
b7A -1
b7C -3

[redacted]

b6 -3
b7A -1
b7C -3

UNCLASSIFIED//~~FOUO~~

Investigation on 08/16/2018 at [redacted] United States (Phone)

File # [redacted] Date drafted 08/16/2018

by [redacted]

b6 -1, -3
b7C -1, -3
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

b7E -2

FD-302a (Rev. 05-08-10)

UNCLASSIFIED//~~FOUO~~

Continuation of FD-302 of (U//~~FOUO~~) Telephonic interview of Jason Fishbein on 08/16/2018, On 08/16/2018, Page 2 of 4

b6 -3
b7A -1
b7C -3

b6 -3
b7A -1
b7C -3

b6 -3
b7A -1
b7C -3

b6 -3
b7A -1
b7C -3

FISHBEIN has a high regard for [redacted] and thought she displayed great integrity in their conversations. FISHBEIN got the impression she had been a confidant of [redacted] for many years.

b6 -3
b7A -1
b7C -3

b6 -3
b7A -1
b7C -3

UNCLASSIFIED//~~FOUO~~

FD-302 (Rev. 5-8-10)

# FEDERAL BUREAU OF INVESTIGATION

Date of entry 10/21/2018

(U) On 07/02/2018 Special Agent (SA) [redacted] SA [redacted] [redacted] Intelligence Analyst [redacted] and Assistant Special Counsel (ASC) Aaron Zelinsky interviewed [redacted] at the Special Counsel's Office in Washington, DC. [redacted] counsel, [redacted] [redacted] was present. ASC Zelinksy admonished [redacted] that lying to the FBI is a crime. After having been advised of the identity of the interviewing SAs and the nature of the interview, [redacted] provided the following information:

b6 -1, -2,-3
b7C -1-,-2 -3

b5 per DOJ/OIP

b6 -3
b7C -3

b5 per DOJ/OIP

b6 -3
b7C -3

b5 per DOJ/OIP
b6 -3
b7C -3

Investigation on 07/02/2018 at Washington, District Of Columbia, United States (In Person)

File # [redacted] Date drafted 07/02/2018

by [redacted]

b6 -1
b7C -1
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 05-08-10)

b6 -3
b7C -3
b7E -2

Continuation of FD-302 of (U) Interview of , On 07/02/2018 , Page 6 of 11

b5 per DOJ/OIP

b6 -3
b7C -3

b5 per DOJ/OIP

b6 -3
b7C -3

b5 per DOJ/OIP

b6 -3
b7C -3

b5 per DOJ/OIP

b6 -3
b7C -3

b5 per DOJ/OIP

b6 -3
b7C -3

b5 per DOJ/OIP

b5 per DOJ/OIP

b6 -3
b7C -3

b5 per DOJ/OIP

b6 -3
b7C -3

FD-302a (Rev. 05-08-10)

b6 -3
b7C -3
b7E -2

Continuation of FD-302 of (U) Interview of , On 07/02/2018 , Page 9 of 11

b5 per DOJ/OIP

b6 --3
b7C -3

b5 per DOJ/OIP

b6 -3
b7C -3

b5 per DOJ/OIP

b6 -3
b7C -3

b5 per DOJ/OIP

b6 -3
b7C -3

b5 per DOJ/OIP

b6 -3
b7C -3

b5 per DOJ/OIP

b6 -3
b7C -3

b7E -2

FD-302 (Rev. 5-8-10)

UNCLASSIFIED//~~FOUO~~

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 10/23/2018

Jason Fishbein, date of birth (DOB): [redacted] phone number [redacted] email addresses [redacted] was interviewed at the Special Counsel's Office, located at 395 E Street, SW, Washington, D.C. Present for the interview were Assistant Special Counsel (ASC) Aaron Zelinsky, Supervisory Special Agent [redacted] Special Agent [redacted] Intelligence Analyst [redacted] Fishbein was accompanied by his attorney [redacted] After being advised of the identities of the interviewing parties and the purpose of the interview, Fishbein provided the following information:

b6 -1,-2, -3
b7C -1,-2, -3

[redacted]

b5 per DOJ/OIP
b6 -2, -3
b7C -2, -3

[redacted]

b5 per DOJ/OIP
b6 -2, -3
b7C -2, -3

[redacted]

b5 per DOJ/OIP
b6 -2, -3
b7C -2, -3

[redacted]

b5 per DOJ/OIP
b6 -2, -3
b7C -2, -3

[redacted]

b5 per DOJ/OIP
b6 -3
b7C -3

UNCLASSIFIED//~~FOUO~~

Investigation on 09/05/2018 at Washington, District Of Columbia, United States (In Person)

File # [redacted] Date drafted 09/06/2018

by [redacted]

b6 -1
b7C -1
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

b7E -2

FD-302a (Rev. 05-08-10)

UNCLASSIFIED//~~FOUO~~

Continuation of FD-302 of (U) Interview of Jason Fishbein 09/05/2018, On 09/05/2018, Page 2 of 5

b5 per DOJ/OIP
b6 -3
b7C -3

b5 per DOJ/OIP
b6 -3
b7C -3

b5 per DOJ/OIP
b6 -2, -3
b7C -2, -3

b5 per DOJ/OIP
b6 -3
b7C -3

b5 per DOJ/OIP
b6 -3
b7C -3

b5 per DOJ/OIP
b6 -3
b7C -3

b5 per DOJ/OIP
b6 -3
b7C -3

b5 per DOJ/OIP
b6 -2, -3
b7C -2, -3

b7E -2

FD-302 (Rev. 5-8-10)

**FEDERAL BUREAU OF INVESTIGATION**

b6 -1,-2, -3
b7C -1,-2, -3

Date of entry 10/31/2018

Paul J. Manafort, date of birth [redacted] was interviewed at the Special Counsel's Office, located at 395 E Street SE, Washington, D. C. Participating in the interview were Special Agent (SA) [redacted] [redacted] SA [redacted] Senior Assistant Special Counsel (SASC) Jeannie S. Rhee, SASC Andrew Weissman,and Assistant Special Counsel Aaron Zelinsky. Manafort was accompanied by his attorneys, Richard Westling, Thomas Zehnle, and [redacted] After being advised of the identity of the interviewing agents and the nature of the interview, Manafort provided the following information:

Roger Stone was informally involved in the Donald J. Trump presidential campaign in April or May of 2016. Stone had been involved in the campaign in the beginning, while Manafort was not, so Manafort used Stone for institutional memory and knowledge of the campaign. Stone used Manafort for informal access back into the campaign.

Stone recommended that Manafort bring on Michael Caputo, which Manafort did. Caputo initially came on to help with the April primary in New York, and then Manafort brought him on full time after that. Caputo had worked with Stone in the past and Manafort had met him years prior. Stone also recommended [redacted]
[redacted]

b6 -2
b7C -2

Manafort said Stone gave him information about Corey Lewandowski and Hope Hicks, two members of the campaign that Manafort did not know well. Stone hated Lewandowski, who undercut Manafort in the campaign. Stone thought he was helping Manafort by undercutting Lewandowski in the press, but it did not actually help Manafort much.

Manafort explained that "the Count of Monte Cristo" was a nickname given to him during the Dole campaign period. [redacted] made that nickname up for Manafort because of the way Manafort wore his overcoat over his shoulders like a cape.

b6 -2
b7C -2

Stone was an effective advocate from outside of the campaign. He was effective with both the mainstream and the alt-right media. Stone could also do things from outside the campaign that the campaign may not want to

Investigation on 09/27/2018 at Washington, District Of Columbia, United States (In Person)

File # [redacted] Date drafted 09/30/2018

by [redacted]

b6 -1
b7C -1
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

tape was coming out in advance. Manafort did not ask Stone about his connection to WikiLeaks or ask where the information came from; Manafort did not need to know who Stone spoke to.

Stone's statement of denial on October 11, 2016 that he had advance knowledge of the leak of the Podesta emails was "inconsistent with what he told" Manafort. Manafort believed Stone knew in advance Podesta's emails were coming out.

Manafort and Stone did not have a conversation in which Stone said Manafort should not tell anyone what he knew about the timing of the Podesta emails. They did not talk about Stone running away from what Stone had told Manafort.

In approximately the last six months, Manafort and Stone have had conversations in which Stone told Manafort he was being targeted by the Special Counsel's Office and that the investigation was costing him a lot of money. Stone said the Special Counsel's Office was accusing him of effectively controlling the timing of the leaked Podesta emails. Manafort thought it was some time in May or June 2018 that Stone told him the Special Counsel's Office thought he had a role in the Podesta emails. Stone did not expressly remind or tell Manafort what he (Stone) knew about the emails. They did not discuss the fact that Stone did actually have advance knowledge of the Podesta emails.

Stone said to Manafort that he was not the decision maker or the controller of the information. Stone said he may have had advance knowledge, but he was not the decision maker. Stone was making clear to Manafort that he did not control the emails or make decisions about them. Stone said he received information about the Podesta emails but was a conduit, not someone in a position to get them released. Manafort was confused as to the various people and hacks. Manafort asked Stone to go through the narrative of Assange, Guccifer, the DNC hack, and Seth Rich so that Manafort could understand it.

Stone knew Manafort knew that Stone's public statements were false, but Stone "confused" Manafort.

Stone did not advise Manafort to punch back or discredit the Special Counsel's Office. Stone did not raise any desire to respond to the Special Counsel's Office investigation by planting media stories.

Manafort was not aware of any attempts on Stone's part to contact Manafort after Manafort was incarcerated.

b7E -2

FD-1057 (Rev. 5-8-10)

(U) ~~SECRET//NOFORN~~

# FEDERAL BUREAU OF INVESTIGATION

## Electronic Communication

**Title:** (U//~~FOUO~~) Information From [redacted] [redacted]

**Date:** 09/01/2016

b6 -1, -4
b7C -1, -4
b7E -1

ALL INFORMATION CONTAINED HEREIN IS UNCLASSIFIED EXCEPT WHERE SHOWN OTHERWISE

CLASSIFIED BY: NSICG [redacted]
REASON: 1.4 (C)
DECLASSIFY ON: 12-31-2041
DATE: 02-04-2021

**CC:** [redacted]

**From:** SAN FRANCISCO
SF-CY1
**Contact:** [redacted]

**Approved By:** SIA
SSA [redacted]

**Drafted By:** [redacted]

**Case ID #:** [redacted] (U) ~~(S//NF)~~ UNSUBS;
aka Guccifer2;
(S) [redacted]
Democratic National Committee - Victim;
State Sponsored Computer Intrusion -
[redacted] (S)

b1 -1
b3 -1
b6 -1
b7C -1
b7E -2, -4

**Synopsis:** (U//~~FOUO~~) To document information received from [redacted] [redacted] and research conducted.

b6 -1, -4
b7C -1, -4
b7E -2, -5,- 6

~~**Reason: 1.4(b)**~~
~~**Derived From: FBI NSISC-20090615**~~
~~**Declassify On: 20411231**~~

[redacted]

**Reference:** [redacted]

**Enclosure(s):** Enclosed are the following items:
[redacted]

(U) ~~SECRET//NOFORN~~

b6 -4
b7C -4
b7E -2,- 6

Title: (U//~~FOUO~~) Information From [redacted]
Re: [redacted] 09/01/2016

**Details:**

**(U) ~~(S//NF)~~ CASE BACKGROUND**

(U) ~~(S//NF)~~ On June 15, 2016, an article written by "Guccifer2" was posted to his personal WordPress blog. In the article, Guccifer2 implies he hacked the Democratic National Committee (DNC) servers and refutes an earlier announcement by CrowdStrike, a U.S. based cyber security company, that the DNC hack was perpetrated by two sophisticated hacker groups. In July 2016, Guccifer2 posted documents attributed to the DNC hack on his personal blog. On July 22, 2016, Wikileaks published more than 19,000 DNC emails with more than 8,000 attachments. Guccifer2 claimed responsibility for sharing the information with Wikileaks through his two Twitter accounts. On August 31, 2016, Guccifer2 released documents on his personal blog purported to be from the computer of Representative Nancy Pelosi.

[redacted]

b6 -4
b7C -4
b7D -3
b7E -6

b3 -1
b7E -2

FD-302 (Rev. 5-8-10)

UNCLASSIFIED//~~FOUO~~

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 06/29/2018

(U//~~FOUO)~~ On 10/24/2017, [redacted] voluntarily produced [redacted] [redacted] The production was placed in the 1A section of this file. Some of the production is being uploaded digitally; however, the entire production was too large. Refer to the physical 1A for the full data.

b7E -6

UNCLASSIFIED//~~FOUO~~

Investigation on 10/24/2017 at Washington, District Of Columbia, United States (In Person)

File # [redacted] Date drafted 06/29/2018

by [redacted]

b3 -1
b6 -1
b7C -1
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

b7E -2

FD-302 (Rev. 5-8-10)

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 05/29/2018

**FEDERAL GRAND JURY INFORMATION**

This document contains information pertaining to a federal grand jury proceeding. The information may not be disseminated within or outside the FBI, except as provided for under Federal Rule of Criminal Procedure 6(e)(3), wherein disclosure may be made to: (1) an attorney for the government for use in performing that attorney's official duties; or (2) any government personnel that an attorney for the government considers necessary to assist in performing that attorney's official duties.

(U) On 05/14/2018 Assistant Special Counsel Aaron Zelinksy served the attached Federal Grand Jury (FGJ) subpoenas [redacted]

b3 -2
b6 -2, -3
b7C -2, -3
b7E -6

(U) On 05/25/2018 the Special Counsel's Office received production from FGJ subpoena [redacted] which is included in the case file as a 1A.

Investigation on 05/25/2018 at Washington, District Of Columbia, United States (Email)

File # [redacted] Date drafted 05/25/2018

by [redacted]

b6 -1
b7C -1
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

b7E -2

FD-302 (Rev. 5-8-10)

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 07/13/2018

On 07/12/2018, SSA [redacted] (saved to the 1A) signed on 07/09/2018 on the following entities:

b6 -1
b7C -1
b7E -6

[redacted]

b7E -6

Investigation on 07/12/2018 at Washington, District Of Columbia, United States (, Other (Service: [redacted]

File # [redacted] Date drafted 07/12/2018

by [redacted]

b6 -1
b7C -1
b7E -2, -6

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

b6 -1
b7C -1

FD-1057 (Rev. 5-8-10)

# FEDERAL BUREAU OF INVESTIGATION

## Electronic Communication

**Title:** (U) Documentation in Support of Indictment 1:18-cr-00215-ABJ

**Date:** 08/12/2018

**From:** SCO
SCO Team
**Contact:** [redacted]

b6 -1
b7C -1
b7E -1, -2, -4

**Approved By:** [redacted]

**Drafted By:** [redacted]

**Case ID #:** [redacted] (U) ~~(S//NF)~~ [redacted]
SPECIAL COUNSEL MATTERS;
SENSITIVE INVESTIGATIVE MATTER

**Synopsis:** (U) To document information in support of indictment U.S. v. Viktor Borisovich Netyksho, et al (Case 1:18-cr-00215, District of Columbia).

~~**Reason: 1.4(b)**~~
~~**Derived From: FBI NSIC CG**~~
~~**Declassify On: 20431231**~~

**Enclosure(s):** Enclosed are the following items:
[redacted]

b7E -6

FD-302 (Rev. 5-8-10)

Official Record

# FEDERAL BUREAU OF INVESTIGATION

Date of entry 01/04/2019

b7E -7

b6 -1, -2, -3
b7C -1, -2, -3

Jerome Robert Corsi, date of birth (DOB) [redacted] social security account number [redacted] was interviewed at the Special Counsel's Office, 395 E Street SW, Washington, DC in the presence of his attorney, [redacted] Present for the interview were FBI Special Agent (SA) [redacted] FBI SA [redacted] FBI Intelligence Analyst (IA) [redacted] Senior Assistant Special Counsel (SASC) Jeannie S. Rhee, SASC Andrew Goldstein, and Assistant Special Counsel (ASC) Aaron Zelinsky. Prior to the interview, Corsi signed a proffer agreement, originally signed on September 21, 2018. Corsi was advised that intentional false statements during this interview would be a violation of federal law. After being advised of the purpose of the interview and identities of the interviewing Agents, Corsi provided the following information:

Corsi had remained silent on his media platforms, for approximately two months, and since he was first approached by representatives from the Special Counsel's Office. He will eventually return to those activities because he depends on them for income.

Corsi spent the evening prior to this interview trying to reconstruct events that were discussed in previous interviews. Corsi wanted to remember certain things but could not and he became frustrated as a result. Corsi had a hard time determining whether or not he was actually remembering things or if he was inventing them. Corsi forgot a lot of events given they happened over two years ago.

b7E -6

Investigation on 10/31/2018 at Washington, District Of Columbia, United States (In Person)

File # [redacted] Date drafted 11/19/2018

by [redacted]

b6 -1
b7C -1
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

period. Corsi examined the senders and recipients of each email. Corsi also compiled a list of the emails which he posted online. What jumped out to Corsi was that all of the emails pertained to operatives in the Democratic National Committee (DNC). Corsi looked for emails from John Podesta and did not find any. From that, Corsi deduced that Assange's next release of information would likely pertain to Podesta. Corsi said he likely shared what he had deduced with Stone.

Corsi reviewed the Schultz drop as if he was conducting a forensic exam. He attempted to determine which computer systems the emails had originated from in an attempt to further determine what might be coming in next drop. He learned this concept form [redacted] Corsi explained that by conducting a similar review he was able to determine that Guccifer 2.0 had been inside a network system called NGP VAN. The Guccifer 2.0 release contained information related to donors, voting data, and opposition research. Assange had emails that looked different to Corsi so he surmised they were evidence of a hack on a different system.

b6 -3
b7C -3

Corsi was asked if he also looked at what was released by DCLeaks and he confirmed that he had. Corsi downloaded the DCLeaks release and put them into a file. He remembered downloading a compressed [.zip] file and going through each file one by one. Corsi remembered seeing files with the initials NGP on them. Corsi knew those to be the initials of [redacted] [redacted]

b6 -2
b7C -2

Corsi said he believed there were two ways to hack a computer. First, having the username and password credentials for a legitimate user on a system. Second, having access to a server where the emails passed through. Corsi believed the information from the Schultz drop seemed they were obtained from a server where they had passed through. In addition to the lack of emails from Podesta, Corsi also noticed that the last email had been sent in late May 2016. Therefore, Corsi believed the emails were likely to have been stolen around that time.

Corsi advised that he knew Seth Rich had been killed at 4:30 AM on July 10, 2016. The circumstances surrounding Rich's death were suspicious to Corsi. Specifically, he wanted to know where Rich's laptop went. Corsi then explained there had been speculation as to whether or not Rich had actually stolen the emails from the DNC, rather than them having been hacked.

Corsi's source, [redacted] [redacted] Her ex-husband told Corsi she is crazy, but Corsi continues to rely on her for information because her reporting is good. Corsi provided an example of how [redacted] had tracked down [redacted] [redacted] who was involved in setting up a private server for Clinton.

b6 -2
b7C -2

Corsi explained that by forwarding Stone's email request to Malloch he was merely complying with what Stone wanted him to do. Corsi did not expect Malloch to actually do anything with the request which was why he only wrote something to the effect of, "Ted, from Roger," and included no additional instructions for Malloch. Corsi generally had much more detailed discussions with Malloch and provided two examples; when he tried to get Malloch a job on the Trump campaign and when he introduced Malloch to Sam Clovis. Corsi did not actually think Malloch would do anything to reach Assange.

When asked if he ever remembered having a FaceTime conversation with Malloch about what Assange had planned to do, Corsi said he only remembered having such a discussion with [redacted] Corsi believed that discussion occurred sometime before he left for Italy, possibly on July 25, 2016. Corsi has known [redacted] since approximately 2004. [redacted] also thought Rich stole the emails from the DNC and believed the British and John Brennan were behind the Fusion GPS dossier. [redacted] also believed the upcoming Wikileaks information would pertain to Podesta. [redacted] told Corsi he believed Assange was smart and strategic, and that if Assange didn't drop all of the emails at once then there would be a second drop sometime in October.

b6 -3
b7C -3

**08/02/2016 EMAIL TO ROGER STONE**

Corsi was shown an email [Document 4] he sent Stone on August 2, 2016. In the email he told Stone, "Word is friend in embassy plans 2 more dumps." Corsi read the email and said he had never seen it before. [**Agent note:** Corsi was then afforded time to review the email privately with his attorney.] Corsi read each line of the email out loud and provided an explanation for each one.

[redacted]

b6 -3
b7C -3

Sentence 2 - "Word is friend in embassy plans 2 more dumps. One shortly after I'm back. Impact planned to be very damaging." Corsi used the phrase "word is" in his email because he was boasting and inventing that he had a source who was providing him information. Corsi said it was the only explanation because he did not recall having anyone else. Corsi remembered Assange had publically stated that he had more information on Clinton, and Corsi speculated that it would likely come in the form of two more dumps, but that ultimately did not happen. Later in the interview, Corsi said

b6 -3
b7C -3

Corsi was asked what he was referring to when he used the phrase "friend in embassy" in his email. Corsi said he was referring to Assange but he did not want to use his name because Stone may have thought Corsi was being boastful. When asked if Corsi wrote the email to suggest that the information was coming from Malloch, Corsi stated he did not remember that being the case, nor did he remember having any discussions about Malloch with Stone at that time.

Later in the interview Corsi advised he was being deliberately oblique in his email, using "secret squirrel stuff," because he did not want the information to be decoded. Corsi admitted he was using suggestive language with Stone to portray that Corsi was a source of information for Stone.

Corsi explained that when he figured something out, sometimes out of left field, he often used the phrase "word is" to provide validity to his statements. Corsi said it seemed likely that he wanted Stone to believe he had the information from Assange. Corsi then added that he was likely relaying three things to Stone; 1) there would be more upcoming information released, 2) it pertained to Podesta, and 3) it would be released in seriatim. When asked if he shared that information with Stone upon his return, Corsi stated that he believed he had, in a follow-up phone call with Stone after Corsi had returned from Italy.

Later in the interview, Corsi said he did not remember receiving any information from Wikileaks or Assange, but he was not saying that it did not happen.

**08/10/2016 EMAIL TO**

b6 -3
b7C -3

Corsi was shown an email he sent to

**RETURN FROM ITALY 08/12/2016**

b3 -1
b7E -2

FD-1036 (Rev. 10-16-2009)

UNCLASSIFIED

# FEDERAL BUREAU OF INVESTIGATION

**Import Form**

**Form Type:** OTHER - Other **Date:** 02/28/2020

**Title:** (U) Newspaper Article - Rohrabacher confirms he offer pardon

**Approved By:** SSRA [redacted]

b6 -1
b7C -1

**Drafted By:** [redacted]

**Case ID #:** [redacted] (U) [redacted]
CDPO-Legislative Branch;
Sensitive Investigative Matter

b3 -1
b7E -2, -4

**Synopsis:** (U) Yahoo news article dated February 20, 2020, titled "Rohrabacher confirms he offered Trump pardon to Assange for proof Russia didn't hack DNC email".

♦♦

UNCLASSIFIED

# Rohrabacher confirms he offered Trump pardon to Assange for proof Russia didn't hack DNC email

Follow **Michael Isikoff** Chief Investigative Correspondent, Yahoo News · February 20, 2020

WASHINGTON — Former California Republican congressman Dana Rohrabacher confirmed in a new interview that during a three-hour meeting at the Ecuadorian Embassy in August 2017, he told Julian Assange he would get President Trump to give him a pardon if he turned over information proving the Russians had not been the source of internal Democratic National Committee emails published by WikiLeaks.

**Far-Right Politicians Are Using Coronavirus To Push Anti-Immigration Xenophobia**

HuffPost

In a phone interview with Yahoo News, Rohrabacher said his goal during the meeting was to find proof for a widely debunked conspiracy theory: that WikiLeaks' real source for the DNC emails was not Russian intelligence agents, as U.S. officials have since concluded, but former DNC staffer Seth Rich, who was murdered on the streets of Washington in July 2016 in what police believe was a botched robbery.

**Virginia: Millions Outraged At New Medicare Changes**

HealthQuotes Ad

b3 -1
b7E -2

FD-302 (Rev. 5-8-10)

**FEDERAL BUREAU OF INVESTIGATION**

b3 -1
b6 -1, -3
b7C -1, -3
b7E -2

Date of entry 03/05/2020

As described in [redacted] subfile herein, on 10/02/2019, DANA ROHRABACHER, date of birth (DOB) [redacted] was interviewed at [redacted] by FBI Special Agents [redacted] The duration of this recording is approximately 4 hours and 5 minutes, beginning at approximately 10:00 a.m. and ending at approximately 2:19 p.m.

[redacted] This Agent reviewed the full content of the recording. An official transcription of this recording is attached herein as a 1A. Additionally, some photographs shown during the interview and referenced herein are attached for reference as a 1A. The following are summaries of the conversation between ROHRABACHER and the above listed Agents:

b3 -1
b7A -1
b7E -2

(Below is a partial summary of the material found in the attached transcript and is not intended to be a verbatim account of the conversations, nor does it memorialize all statements made during the conversations by the recorded parties. The recordings captured are the actual words spoken. Due to the time limitations ROHRABACHER did not provide the FBI with all the known information known to him.)

**Regarding** [redacted]

b6 -3
b7C -3

Rohrabacher discussed a wide variety of topic with [redacted] [redacted] Rohrabacher has known [redacted] since Rohrabacher was working in the White House with President Ronald Reagan. At that time [redacted] [redacted] was never a major contributor to any of Rohrabacher's campaigns.

The investigating agents showed Rohrabacher a photograph of [redacted] and Rohrabacher did not recognize the photograph, but did recall the name [redacted]

After [redacted] Rohrabacher was [redacted]

**Regarding** [redacted]

b6 -3
b7C -3

[redacted]

Investigation on 10/02/2019 at [redacted] United States (In Person)

File # [redacted] Date drafted 10/17/2019

by [redacted]

b3 -2
b6 -1, -3
b7A -1
b7C -1, -3
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

b3 -1
b7E -2

The investigating agents showed Rohrabacher an image of [redacted] and Rohrabacher provided the following information:

b6 -3
b7C -3

Rohrabacher knew [redacted] had some business relationship with [redacted] but Rohrabacher did not know the nature of that relationship. [redacted] Rohrabacher wrote "The French Doctress" in approximately 1976 when he had a spare year to write without any distractions. Rohrabacher met [redacted] was involved in [redacted] wanted the option on the script. [redacted] The option has expired though [redacted] Rohrabacher cleared the sale of the option through the congressional ethics advisors.

Rohrabacher did not recall anything about a company called "C. S. Mining," "Lippo," or any sort of matter regarding Indonesia and a United States mining company.

**Regarding** [redacted]

b6 -3
b7C -3

Rohrabacher knew [redacted] Rohrabacher probably met [redacted] at a White House-related function. It was possible that [redacted] but Rohrabacher does not specifically recall how Rohrabacher met [redacted] was a brilliant man with many contacts.

[redacted] However, Rohrabacher did not know anything about [redacted] being tasked to write articles by [redacted]

b6 -3
b7A -1
b7C -3

UNCLASSIFIED

**UNITED STATES DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF INVESTIGATION**

11000 WILSHIRE BLVD., STE. 1700
LOS ANGELES, CA 90024

Requesting Official(s) and Office(s): [redacted]
File Number: [redacted]
Disc Number (Section): 1D-67
Transcriber(s) and Office/RA: OST [redacted] Los Angeles/LAFO

b3 -1
b6 -1
b7C -1
b7E -2

**VERBATIM TRANSCRIPTION**

| **Participants** | | **Abbreviations** | |
|---|---|---|---|
| SA1: | Special Agent [redacted] | Primary language: | (standard) English |
| SA2: | Special Agent [redacted] | PH: | Phonetic |
| SA3: | Special Agent [redacted] | UI: | Unintelligible |
| DR: | Dana Rohrabacher | OV: | Overlapping Voice |

b6 -1
b7C -1

UNCLASSIFIED

b7E -2

FD-302 (Rev. 5-8-10)

UNCLASSIFIED//~~FOUO~~

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 09/10/2018

**FEDERAL GRAND JURY INFORMATION**

This document contains information pertaining to a federal grand jury proceeding. The information may not be disseminated within or outside the FBI, except as provided for under Federal Rule of Criminal Procedure 6(e)(3), wherein disclosure may be made to: (1) an attorney for the government for use in performing that attorney's official duties; or (2) any government personnel that an attorney for the government considers necessary to assist in performing that attorney's official duties.

The attached Grand Jury (GJ) subpoena was served by Assistant Special Counsel Aaron Zelinsky to [redacted] [redacted]

b3 -2
b6 -2
b7C -2

The attached response was received on or about [redacted]

UNCLASSIFIED//~~FOUO~~

Investigation on 09/04/2018 at Washington, District Of Columbia, United States (Email)

File # [redacted] Date drafted 09/06/2018

by [redacted]

b6 -1
b7C -1
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

AO 110 (Rev. 06/09) Subpoena to Testify Before a Grand Jury

# UNITED STATES DISTRICT COURT

for the

District of Columbia

## SUBPOENA TO TESTIFY BEFORE A GRAND JURY

To: [redacted]

b3 -2

**YOU ARE COMMANDED** to appear in this United States district court at the time, date, and place shown below to testify before the court's grand jury. When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place: U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA<br>U.S. Courthouse, 3rd Floor [redacted]<br>333 Constitution Avenue, N.W.<br>Washington, D.C. 20001 | Date and Time: [redacted] |
|---|---|

You must also bring with you the following documents, electronically stored information, or objects: SEE ATTACHMENT.

Date: [redacted]

CLERK OF COURT

Signature of Clerk or Deputy Clerk

b3 -2

The name, address, telephone number, and email of the Assistant Special Counsel, who requests this subpoena, are:

Aaron Zelinsky, Assistant Special Counsel
Department of Justice – Special Counsel's Office
950 Pennsylvania Avenue NW
Washington, DC 20530

Subpoena [redacted]

b3 -2

b3 -2
b7A -1

**All records produced and any questions can be directed to:**

Attn: Special Agent
U.S. Department of Justice
Special Counsel's Office, Room B-103
950 Pennsylvania Avenue NW
Washington, DC 20530
Email:

b6 -1
b7C -1
b7E -1

Attn: Special Agent
U.S. Department of Justice
Special Counsel's Office, Room B-103
950 Pennsylvania Avenue NW
Washington, DC 20530
Email

b7E -2

FD-302 (Rev. 5-8-10)

UNCLASSIFIED//~~FOUO~~

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 10/31/2018

**FEDERAL GRAND JURY INFORMATION**

This document contains information pertaining to a federal grand jury proceeding. The information may not be disseminated within or outside the FBI, except as provided for under Federal Rule of Criminal Procedure 6(e)(3), wherein disclosure may be made to: (1) an attorney for the government for use in performing that attorney's official duties; or (2) any government personnel that an attorney for the government considers necessary to assist in performing that attorney's official duties.

The attached Grand Jury (GJ) responses were received on or about [redacted] [redacted] from [redacted] in response to the referenced GJ subpoena request. [redacted] [redacted]

b3 -2
b6 -2
b7A -1
b7C -2

UNCLASSIFIED//~~FOUO~~

Investigation on [redacted] at [redacted] United States (Email)

File # [redacted] Date drafted 10/17/2018

by [redacted]

b3 -2
b6 -1
b7C -1
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

b7E -2

FD-1036 (Rev. 10-16-2009)

UNCLASSIFIED//~~FOUO~~

b3 -2
b6 -1
b7A -1
b7C -1
b7E -2, -4, -6

# FEDERAL BUREAU OF INVESTIGATION

**Import Form**

**Form Type:** [redacted] **Date:** 12/12/2018

**Title:** (U//~~FOUO~~) [redacted]

**Approved By:** [redacted]

**Drafted By:** [redacted]

**Case ID #:** [redacted] (U) [redacted] Grand Jury Subfile; FOREIGN AGENTS REGISTRATION ACT; SENSITIVE INVESTIGATIVE MATTER

**FEDERAL GRAND JURY INFORMATION**

This document contains information pertaining to a federal grand jury proceeding. The information may not be disseminated within or outside the FBI, except as provided for under Federal Rule of Criminal Procedure 6(e)(3), wherein disclosure may be made to: (1) an attorney for the government for use in performing that attorney's official duties; or (2) any government personnel that an attorney for the government considers necessary to assist in performing that attorney's official duties.

**Synopsis:** (U//~~FOUO~~) [redacted] [redacted]

b3 -2
b7A -1
b7E -6

♦♦

UNCLASSIFIED//~~FOUO~~

b7E -2

FD-302 (Rev. 5-8-10)

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 06/18/2018

On [redacted] an attorney representing [redacted] provided to Special Agent [redacted]

b3 -2
b6 -1, -2
b7C -1, -2

The records contained [redacted]

b3 -2
b6 -2
b7C -2,
b7E -6

Investigation on [redacted] at [redacted] United States (In Person)

File # [redacted] Date drafted 06/17/2018

by [redacted]

b3 -2
b6 -1
b7C -1
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

b3 -2
b6 -1, -2
b7C -1, -2
b7E -2

FD-340c(4-11-03)

File Number ______

Field Office Acquiring Evidence WFO

Serial # of Originating Document ______

Date Received ______

From ______
(Name of Contributor/Interviewee)

______
(Address)

______
(City and State)

By ______

To Be Returned ☐ Yes ☑ No

Receipt Given ☐ Yes ☑ No

Grand Jury Material - Disseminate Only Pursuant to Rule 6 (e)
Federal Rules of Criminal Procedure
☑ Yes ☐ No

Federal Taxpayer Information (FTI)
☐ Yes ☑ No

Title: ______

Reference: FD-302
(Communication Enclosing Material)

Description: ☐ Original notes re interview of

b3 -2
b7E -2, -6

b7E -2

FD-302 (Rev. 5-8-10)

UNCLASSIFIED/~~/FOUO~~

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 10/30/2018

On 05/30/2018, the Democratic National Committee (DNC) and Hillary For America (HFA) provided the FBI with digital evidence in furtherance of this investigation.

Due to size limitations, original production will be maintained on a DVD in a physical 1A.

UNCLASSIFIED/~~/FOUO~~

Investigation on 05/30/2018 at Washington, District Of Columbia, United States (Mail)

File # [redacted] Date drafted 10/29/2018

by [redacted]

b6 -1
b7C -1
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

PERKINSCOIE

700 13th Street, NW
Suite 600
Washington, DC 20005-3960

+1.202.654.6200
+1.202.654.6211
perkinscoie.com

May 30, 2018

30Graham M. Wilson
GWilson@perkinscoie.com
D. +1.202.434.1638
F. +1.202.654.9154

**VIA HAND DELIVERY**

L. Rush Atkinson
Department of Justice
Special Counsel's Office
950 Pennsylvania Avenue NW
Washington, D.C. 20530

**Re: Request for Information**

Dear Mr. Atkinson,

On behalf of the Democratic National Committee and Hillary for America, enclosed please find the requested documents and information assembled by current and former employees of our clients, which our clients are voluntarily providing to you on an informal basis in order to assist in Special Counsel Mueller's ongoing investigation

These materials are provided to you on a confidential basis and solely for the purposes of assisting with your investigation. Producing them is not intended to serve as a waiver of any applicable privileges, including the attorney-client or work product privileges. Our clients request that before you publicly release any information or documents that they have provided or share them with any third party, you provide them with advanced notice and an opportunity to discuss that release and any applicable privilege or privacy harms.

b7E -6

The materials our clients are providing you are contained on the enclosed CD labeled, [redacted] The CD is password protected, and the password will be provided to you separately.

Witnesses performed a reasonable search of the electronic records available to them for documents responsive to your request. The documents are bates numbered by client.

Please do not hesitate to contact me if you have any questions.

UNCLASSIFIED/~~/FOUO~~

Physical 1A/1C Cover Sheet for Serial Export

**Created From:**

**Package:**

**Stored Location:** None

**Summary:** (U/~~/FOUO)~~ Data received from Perkins Coie

**Acquired By:**

**Acquired On:** 2018-05-30

**Attachment:** (U/~~/FOUO)~~ DVD Containing Production

b6 -1
b7C -1
b7E -2

FD-302 (Rev. 5-8-10)

UNCLASSIFIED//~~FOUO~~

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 10/05/2018

Original FD-302 attached in 1A.

UNCLASSIFIED//~~FOUO~~

Investigation on 04/10/2018 at Washington, District Of Columbia, United States (In Person)

File # [redacted] Date drafted 10/04/2018

by [redacted]

b3 -1
b6 -1
b7C -1
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.



FD-302 (Rev. 5-8-10)

UNCLASSIFIED//~~FOUO~~

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 05/10/2018

Richard Gates, was interviewed at 395 E Street SW, Washington, D.C. Present for the interview were SA [redacted] ASAC [redacted] Senior Assistant Special Counsel (SASC) Greg Andres, SASC Jeannie Rhee, SASC Andrew Weissmann, Assistant Special Counsel (ASC) Aaron Zelinsky, and IA [redacted] After being advised of the official identities of the interviewing parties and the nature of the interview, Gates provided the following information:

b6 -1
b7C -1

b6 -2
b7C -2

Gates began the interview by advising [redacted] were not happy with Gates's cooperation with the Special Counsel's investigation.

**Jerome Corsi**

Gates advised Jerome Corsi was trying to schedule a meeting with Donald Trump in the May/June 2016 timeframe, but Gates did not believe the meeting took place. Corsi had written a book that Trump had read. Corsi claimed he had information pertaining to Hillary Clinton's emails, Roger Stone was aware of these claims. Stone had originally asked Paul Manafort to meet with Corsi, after which Manafort told Gates about Corsi.

b6 -3
b7C -3

[redacted]

b6 -2, -3
b7C -2, -3

[redacted]

b6 -2, -3
b7C -2, -3

[redacted]

UNCLASSIFIED//~~FOUO~~

Investigation on 04/10/2018 at Washington, District Of Columbia, United States (In Person)

File # [redacted] Date drafted 04/24/2018

by [redacted]

b6 -1
b7C -1
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

b6 -3
b7C -3
b7E -2

## Campaign Response to Hacked Emails

b6 -3
b7C -3

Gates said there was also an inside job theory about how the emails were obtained fueled by the death of Seth Rich [Note: Seth Conrad Rich was an employee of the DNC who was fatally shot in Washington, D.C. on 07/10/2016]. Gates said he was never present at any talks suggesting the campaign push the inside job theory. The Trump campaign team also thought the Democrats were pushing the Russia narrative.

Gates said Donald Trump Jr. would ask where the emails were in family meetings. Michael Flynn, Kushner, Manafort, [redacted] Lewandowski, Jeff Sessions, and Sam Clovis expressed interest in obtaining the emails as well. Gates said the priority focuses of the Trump campaign opposition research team were Clinton's emails and contributions to the Clinton Foundation. Flynn, Kellogg, Sessions, Kushner, and Trump Jr. were all focused on opposition topics.

b6 -3
b7C -3

Gates said interest in the emails was ratcheting up in the April/May 2016 timeframe because it was likely the emails could help Trump's campaign. [redacted]

b6 -3
b7C -3

b6 -3
b7C -3

Trump Jr. never communicated anything about the 06/09/2016 meeting with Gates. After the news broke about the 06/09/2016 meeting, Manafort asked Gates if he (Gates) was there. [Note: The 06/09/2016 meeting is a reference to a meeting that took place at Trump Tower arranged on the

FD-302 (Rev. 5-8-10)

UNCLASSIFIED//~~FOUO~~

FEDERAL BUREAU OF INVESTIGATION

Date of entry 10/05/2018

Original FD-302 attached in 1A.

UNCLASSIFIED//~~FOUO~~

Investigation on 04/10/2018 at Washington, District Of Columbia, United States (In Person)

File # [redacted] Date drafted 10/04/2018

by [redacted]

b3 -1
b6 -1
b7C -1
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

b7E -2

FD-302 (Rev. 5-8-10)

**FEDERAL BUREAU OF INVESTIGATION**

b6 -1, -2, -3
b7C -1, -2, -3

Date of entry 10/30/2018

[redacted] date of birth [redacted] social security number [redacted] [redacted] was interviewed on October 3 and October 4, 2018 at the law offices of [redacted] in the presence of his attorney, [redacted] Participating in the interview were Special Agent (SA) [redacted] SA [redacted] Senior Assistant Special Counsel (SASC) Andrew Goldstein, and Assistant Special Counsel (ASC) Aaron Zelinsky. After being advised of the identities of the interviewing agents and the purpose of the interview, [redacted] provided the following information, which is a consolidation of both days of interviews:

[redacted]

b6 -3
b7C -3

[redacted]

b6 -3
b7C -3

[redacted]

b6 -3
b7C -3

[redacted]

b6 -2, -3
b7C -2, -3

Investigation on 10/03/2018 at New York, New York, United States (In Person)

File # [redacted] Date drafted 10/06/2018

by [redacted]

b6 -1
b7C -1
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

b6 -3
b7C -3
b7E -2

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of (U) Interview of (10.3.18 and 10.4.18), On 10/03/2018, Page 13 of 21

b6 -3
b7C -3

b6 -3
b7C -3

b6 -3
b7C -3

b7E -2

FD-1057 (Rev. 5-8-10)

UNCLASSIFIED//~~FOUO~~

# FEDERAL BUREAU OF INVESTIGATION

## Electronic Communication

**Title:** (U//~~FOUO~~) To provide details of a fraud scheme involving [redacted] [redacted]

**Date:** 04/09/2019

b6 -3
b7C -3

**From:** SCO
SCO Team
**Contact:** [redacted]

b6 -1
b7C -1
b7E -1, -2

**Approved By:** [redacted]

**Drafted By:** [redacted]

**Case ID #:** [redacted] (U) FBI DISSEM

**Synopsis:** (U//~~FOUO~~) To refer information on a potential fraud scheme collected in the course of a Special Counsel's Office (SCO) investigation to the Washington Field Office (WFO).

b6 -2, -3
b7C -2, -3
b7E -6

**Enclosure(s):** Enclosed are the following items:

[redacted]

UNCLASSIFIED//~~FOUO~~

b6 -3
b7C -3
b7E -2

Title: (U//~~FOUO~~) To provide details of a fraud scheme involving

Re: 04/09/2019

b6 -2, -3
b7C -2, -3

Fraud Scheme

b6 -3
b7C -3

(U//~~FOUO~~)

(U//~~FOUO~~)

b6 -3
b7C -3

iMessages with

b6 -3
b7C -3
b7E -6

b6 -3
b7C -3
b7E -2

Title: (U//~~FOUO~~) To provide details of a fraud scheme involving

Re: 04/09/2019

(U//~~FOUO~~) Beginning on exchanged over 2000 iMessages with phone number

b6 -3
b7C -3
b7E -6

b6 -3
b7C -3

b6 -3
b7C -3

b6 -2, -3
b7C -2, -3

b7E -2

FD-302 (Rev. 5-8-10)

UNCLASSIFIED//~~FOUO~~

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 11/09/2018

[redacted] telephone number [redacted] email address [redacted] was interviewed telephonically. Present for the interview were Senior Assistant Special Counsels (SASC) Jeannie Rhee and Andrew Goldstein, Assistant Special Counsel (ASC) Aaron Zelinsky, and Special Agent [redacted] After being advised of the identity of the interviewing parties and the nature of the interview, [redacted] provided the following information:

b6 -1, -3
b7C -1, -3

[redacted] advised he had recordings to provide the Special Counsel's Office (SCO) on dropbox and would send them via email.

b6 -3
b7C -3

[redacted] however [redacted] did acknowledge he had spoken with Jay Sekulow (Sekulow). The contact occurred after [redacted] but said it could have occurred soon thereafter. [redacted] said Sekulow was the one who initiated contact [redacted] did not know how Sekulow knew to get in touch with [redacted]

b3 -2
b6 -3
b7C -3

[redacted] told Sekulow that [redacted] had reached out to [redacted] had declined to speak with them.

b6 -3
b7C -3

Sekulow wanted to know [redacted] Sekulow did not indicate he had asked anyone else about the same set of topics. Sekulow did not indicate he had spoken with [redacted] Sekulow had brought up the [redacted]

b6 -3
b7C -3

UNCLASSIFIED//~~FOUO~~

Investigation on 10/24/2018 at Washington, District Of Columbia, United States (Phone)

File # [redacted] Date drafted 10/24/2018

by [redacted]

b6 -1
b7C -1
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

b6 -3
b7C -3
b7E -2

FD-302a (Rev. 05-08-10)

UNCLASSIFIED//~~FOUO~~

(U//~~FOUO~~) Interview of [redacted] 10/24/2018

Continuation of FD-302 of (U//~~FOUO~~) Interview of [redacted] 10/24/2018, On 10/24/2018, Page 3 of 3

[redacted]

b6 -3
b7C -3

[redacted]

b6 -3
b7C -3

b7A -1

FD-1057 (Rev. 5-8-10)

UNCLASSIFIED

# FEDERAL BUREAU OF INVESTIGATION

## Electronic Communication

**Title:** (U) CASE OPENING & SUMMARY **Date:** 11/07/2017

**From:** BOSTON
BS-C6
**Contact:**

b6 -1, -3
b7A -1
b7C -1, -3
b7E -1

**Approved By:** SSA

**Drafted By:**

**Case ID #:** (U)
DARK WEB THREAT

b6 -3
b7C -3
b7E -5, -6

**Synopsis:** (U) Case opening and summary.

**Enclosure(s):** Enclosed are the following items:
1. (U)
2. (U) main site
3. (U) w
4. (U) contact information
5. (U) Lexis Nexus

**Details:**

A company called was conducting research for an unrelated, non-law enforcement client and came upon a site called This site listed as a target. On November 5, 2017, felt an obligation to take action so they notified NYPD who in turn, contacted the Boston Regional Intelligence Center (BRIC). Boston FBI attempted to contact the same day and made successful contact on November 6, 2017.

b6 -3
b7C -3
b7D -3
b7E -6

UNCLASSIFIED

b7A -1

Title: (U) CASE OPENING & SUMMARY
Re: 11/07/2017

b7E -6

b6 -3
b7C -3
b7E -6

(screen shot attached as 1A).

b6 -3
b7C -3
b7E -6

Given it is conceivable that an individual or group would want to pay for his death.

♦♦

b7E -2

FD-302 (Rev. 5-8-10)

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 03/26/2018

**- SENSITIVE MATTER - Please do not disseminate without discussing with the writer -**

b6 -1, -4, -5
b7C -1, -4, -5
b7D -3

On March 15, 2018, Special Agent [redacted] and Attorney for the Special Counsel's Office Heather Alpino met with Assistant US Attorney [redacted] telephone number [redacted] cellular telephone [redacted] and [redacted] telephone number [redacted] email address [redacted] The meeting took place in [redacted] office at 555 4th Street, NW, Washington DC 20530.

b6 -2, -4
b7C -2, -4
b7D -3

[redacted] the homicide of Seth Conrad RICH (RICH), date of birth January 3, 1989, social security account number [redacted]

RICH was shot on July 10, 2016 at approximately 04:19 am EST in front of 2134 Flagler Place, NW, Washington DC. RICH was pronounced dead on July 10, 2016, at approximately 05:57am EST.

b6 -4, -5
b7C -4, -5
b7D -3

[redacted] AUSA [redacted] reviewed RICH's financial records and did not identify any unusual deposits or withdrawals.

b6 -4, -5
b7C -4, -5
b7D -3

[redacted] AUSA [redacted] interviewed [redacted] and none of the witnesses reported anything unusual about his life prior to the homicide. [redacted] believed, RICH had a job interview with a recruiter for a position as a data analyst with another company in Washington DC.

Prior to the homicide, RICH worked for the Democratic National Committee (DNC) in Washington DC in the outreach to college students. RICH used Information Technology in his work at DNC.

[redacted] a witness who was [redacted] at the time of the homicide and recalled hearing gunshots. At the time, the witness thought the sound was the fireworks. The witness also observed

b6 -4
b7C -4
b7D -3

Investigation on 03/15/2018 at Washington, District Of Columbia, United States (In Person)

File # [redacted] Date drafted 03/20/2018

by [redacted]

b6 -1
b7C -1
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

b6 -4, -5
b7C -4, -5
b7D -3
b7E -2

FD-302a (Rev. 05-08-10)

(U) SENSITIVE MATTER - Meeting with AUSA

Continuation of FD-302 of re. Seth Rich , On 03/15/2018 , Page 2 of 3

walking away from the location where the witness observed another male laying on the ground. The witness thought the male on the ground was drunk and did not think anything was wrong. The following day, the witness observed a blood stain on the ground and police tape and realized that something bad happened.

b6 -3
b7C -3

opined that the homicide of RICH was a robbery gone bad. RICH was shot twice in the back and was alive when police found him. The police attempted to interview RICH on the way to the hospital but were not able to obtain a statement, because RICH was very drunk.

b6 -4
b7C -4
b7D -3

After the homicide, took RICH's personal laptop to his house in was not aware if deleted or changed anything on RICH's laptop.

b6 -2, -4
b7C -2, -4
b7D -3

AUSA currently do not have anyone in custody nor any good suspects for the homicide of RICH.

b6 -4, -5
b7C -4, -5
b7D -3

AUSA are aware how sensitive this matter is and how much attention the homicide of RICH received in the media. AUSA prepared a number of memorandums to document various misinformation and conspiracies surrounding RICH's homicide.

b6 -4, -5
b7C -4, -5
b7D -3

b7D -3

b6 -1
b7C -1
b7D -3

b6 -4
b7C -4
b7D -3

AUSA are aware that the FBI is in possession of RICH's work laptop. AUSA requested a forensic image of the laptop for the homicide investigation.

b6 -4, -5
b7C -4, -5
b7D -3

FBI(20-cv-447)-406

b6 -4, -5
b7C -4, -5
b7D -3
b7E -2

FD-302a (Rev. 05-08-10)

(U) SENSITIVE MATTER - Meeting with AUSA

Continuation of FD-302 of re. Seth Rich , On 03/15/2018 , Page 3 of 3

DECLASSIFIED BY NSICG ON 02-04-2021

FD-302 (Rev. 5-8-10)

(U) ~~SECRET//NOFORN~~

b6 -1
b7C -1
b7E -2

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 09/29/2016

date of birth was interviewed at her residential address, telephone numbers (newest) and After being advised of the identity of the interviewing Agent and the nature of the interview, provided the following information:

b6 -4
b7C -4

b6 -2, -4
b7C -2, -4

b6 -4
b7C -4

MANAFORT was DONALD TRUMP's presidential campaign manager who has suspected ties to Russia

b6 -4
b7C -4

~~Reason: 1.4(c)~~
~~Derived From: FBI NSIC, dated 20120629~~
**Declassify On: 20411231**

(U) ~~SECRET//NOFORN~~

Investigation on 09/14/2016 at Washington, District Of Columbia, United States (In Person)

File # Date drafted 09/16/2016

by

b3 -1
b6 -1
b7C -1
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 05-08-10)

b6 -4
b7C -4
b7E -2

(U) ~~SECRET//NOFORN~~

Continuation of FD-302 of (U//~~FOUO)~~ Interview of , On 09/14/2016 , Page 2 of 6

b6 -2, -4
b7C -2, -4

b6 -2, -4
b7C -2, -4

She also stated that she had read an article about 20,000 e-Mails taken, at which time she told that she had concerns, and suspected that the hackers would release the e-Mails around the time of the Democratic National Convention.

b6 -2, -4
b7C -2, -4

b6 -4
b7C -4

b6 -4
b7C -4

SETH RICH was murdered on the morning of 07/10/2016 in Washington, DC.

b6 -4
b7C -4

(U) ~~SECRET//NOFORN~~

FBI(20-cv-447)-424

FD-302a (Rev. 05-08-10)

b6 -4
b7C -4
b7E -2

SECRET//NOFORN (U)

Continuation of FD-302 of (U//FOUO) Interview of , On 09/14/2016 , Page 5 of 6

b6 -2, -4
b7C -2, -4

b6 -2, -4
b7C -2, -4

b6 -4
b7C -4

b6 -2, -4
b7C -2, -4

b6 -3, -4
b7C -3, -4

b6 -4
b7C -4

b6 -3, -4
b7C -3, -4

DNC Staffer Seth Conrad Rich was murdered

b6 -4
b7C -4

b6 -4
b7C -4

b6 -2, -4
b7C -2, -4

b6 -2, -4
b7C -2, -4

b6 -4
b7C -4

(U) SECRET//NOFORN

FBI(20-cv-447)-425

FD-302a (Rev. 05-08-10)

b6 -4
b7C -4
b7E -2

(U)

~~SECRET~~//~~NOFORN~~

Continuation of FD-302 of (U//~~FOUO~~) Interview of , On 09/14/2016 , Page 6 of 6

b6 -4
b7C -4

b6 -4, -5
b7C -4, -5

b6 -4
b7C -4

b6 -2, -4
b7C -2, -4

(U)

~~SECRET~~//~~NOFORN~~

b6 -1, -2, -4
b7C -1, -2, -4
b7E -6

NOTE: My colleague, DNC Staffer Seth Conrad Rich was murdered that same Sunday at 4:20 AM in Washington, D.C. I didn't know him well - just exchanged greetings in the hallway a couple of times.

b6 -1
b7C -1
b7E -2

FD-302 (Rev. 5-8-10)

(U) ~~SECRET~~//~~NOFORN~~

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 09/29/2016

date of birth was interviewed at her residential address, telephone numbers (newest) and After being advised of the identity of the interviewing Agent and the nature of the interview, provided the following information:

b6 -4
b7C -4

b6 -2, -4
b7C -2, -4

b6 -4
b7C -4

MANAFORT was DONALD TRUMP's presidential campaign manager who has suspected ties to Russia

b6 -4
b7C -4

~~Reason: 1.4(c)~~
~~Derived From: FBI NSIC, dated 20120629~~
~~Declassify On: 20411231~~

(U) ~~SECRET~~//~~NOFORN~~

Investigation on 09/14/2016 at Washington, District Of Columbia, United States (In Person)

File # Date drafted 09/16/2016

by

b3 -1
b6 -1
b7C -1
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 05-08-10)

b6 -4
b7C -4
b7E -2

(U) ~~SECRET~~//~~NOFORN~~

Continuation of FD-302 of (U//~~FOUO~~) Interview of , On 09/14/2016 , Page 2 of 6

b6 -2, -4
b7C -2, -4

b6 -2, -4
b7C -2, -4

She also stated that she had read an article about 20,000 e-Mails taken, at which time she told that she had concerns, and suspected that the hackers would release the e-Mails around the time of the Democratic National Convention.

b6 -2, -4
b7C -2, -4

b6 -2, -4
b7C -2, -4

b6 -4
b7C -4

SETH RICH was murdered on the morning of 07/10/2016 in Washington, DC.

b6 -4
b7C -4

FD-302a (Rev. 05-08-10)

b6 -4
b7C -4
b7E -2

(U) ~~SECRET~~//~~NOFORN~~

Continuation of FD-302 of (U//~~FOUO~~) Interview of , On 09/14/2016 , Page 5 of 6

b6 -2, -4
b7C -2, -4

b6 -2, -4
b7C -2, -4

b6 -4
b7C -4

b6 -2, -4
b7C -2, -4

b6 -3, -4
b7C -3, -4

b6 -4
b7C -4

b6 -3, -4
b7C -3, -4

DNC Staffer Seth Conrad Rich was murdered

b6 -4
b7C -4

b6 -4
b7C -4

b6 -2, -4
b7C -2, -4

b6 -2, -4
b7C -2, -4

b6 -4
b7C -4

(U) ~~SECRET~~//~~NOFORN~~

FBI(20-cv-447)-432

FD-302a (Rev. 05-08-10)

b6 -4
b7C -4
b7E -2

(U) ~~SECRET~~//~~NOFORN~~

Continuation of FD-302 of (U//~~FOUO~~) Interview of , On 09/14/2016 , Page 6 of 6

b6 -4
b7C -4

b6 -4, -5
b7C -4, -5

b6 -4
b7C -4

b6 -2, -4
b7C -2, -4

b7E -2

FD-302 (Rev. 5-8-10)

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 11/02/2018

b6 -1, -3
b7C -1, -3

Paul J. Manafort, date of birth [redacted] was interviewed at the Special Counsel's Office, located at 395 E Street SE, Washington, D. C. Participating in the interview were Special Agent (SA) [redacted] [redacted] SA [redacted] Senior Assistant Special Counsel (SASC) Jeannie S. Rhee, SASC Andrew Weissman, SASC Andrew Goldstein, and Assistant Special Counsel Aaron Zelinsky. Manafort was accompanied by his attorneys, Richard Westling and Thomas Zehnle. After being advised of the identities of the interviewing agents and the nature of the interview, Manafort provided the following information:

**Roger Stone:**

Roger Stone took a "victory lap" after WikiLeaks published Podesta's emails. Manafort remembered it because he had teased Stone the week prior about it, because Stone said every day that something was coming. Manafort told Stone that if it had not come out, Stone would still be saying something was coming.

Toward the end of September or beginning of October 2016, [redacted]

[redacted]

b6 -3
b7C -3

Manafort was familiar with the statement Assange made on October 3, 2016, but he did not independently remember it. He may have discussed it with [redacted] but he was not sure.

b6 -3
b7C -3

Manafort had a clear impression that Stone said things would come out related to Podesta. He did not recall that Stone specifically mentioned Podesta's emails, just that Stone said it related to Podesta. Manafort related it to the hacking, so he related it to emails, since he knew the

Investigation on 10/01/2018 at Washington, District Of Columbia, United States (In Person)

File # [redacted] Date drafted 10/05/2018

by [redacted]

b6 -1
b7C -1
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 05-08-10)

b7E -2

Continuation of FD-302 of (U) Interview of Paul J. Manafort (10.01.18), On 10/01/2018, Page 4 of 12

b6 -3
b7C -3

b6 -3
b7C -3

b6 -3
b7C -3

b6 -3
b7C -3

b6 -3
b7C -3

b6 -3
b7C -3

b6 -3
b7C -3

b6 -3
b7C -3

FBI(20-cv-447)-438

b7E -2

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of (U) Interview of Paul J. Manafort (10.01.18), On 10/01/2018, Page 5 of 12

b6 -3
b7C -3

b6 -3
b7C -3

b6 -3
b7C -3

b6 -3
b7C -3

b6 -3
b7C -3

b6 -3
b7C -3

b6 -3
b7C -3

b7E -2

FD-302 (Rev. 5-8-10)

UNCLASSIFIED//~~FOUO~~

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 11/02/2018

On October 04, 2018, Assistant Special Counsel (ASC) Aaron Zelinsky sent two Consent to Search Computer(s) forms [FD-941] to attorney, [redacted] [redacted] who represents Jerome Corsi in this matter. The consent forms authorize the FBI to conduct searches of the following electronic accounts:

b6 -2, -3
b7C -2, -3
b7E -6

[redacted]

Corsi signed the consent forms, with [redacted] as his witness. The completed forms were then scanned by [redacted] and returned to ASC Zelinsky via email. A copy of the completed forms has been enclosed for the file as a digital 1A attachment to this FD-302.

b6 -2
b7C -2

On October 05, 2018 at 3:12 PM, Special Agent [redacted] [redacted] After SA [redacted] was presented with a two-factor authentication prompt, [redacted] initiated a three-way conference call between himself, SA [redacted] and Corsi. SA [redacted] [redacted] [redacted] SA [redacted] (attached in 1A) before being locked out of the account.

b6 -1, -2, -3
b7C -1, -2, -3
b7E -6

On October 11, 2018 at 9:27 AM, after receiving consent from [redacted] [redacted] SA [redacted] phoned Corsi to provide instructions on [redacted] [redacted] During the call, Corsi [redacted] SA [redacted] Corsi was advised to change his password after the data was downloaded.

b6 -1, -2
b7C -1, -2
b7E -6

On October 05, 2018 at 4:39 PM, SA [redacted] [redacted] (attached in 1A). Corsi was advised to change his password after the data was downloaded.

b6 -1
b7C -1
b7E -6

UNCLASSIFIED//~~FOUO~~

Investigation on 10/11/2018 at Washington, District Of Columbia, United States (Email)

File # [redacted] Date drafted 10/31/2018

by [redacted]

b6 -1
b7C -1
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-941 (2-26-01)

# CONSENT TO SEARCH COMPUTER(S)

I, Dr. Jerome Corsi, have been asked by Special Agents of the Federal Bureau of Investigation (FBI) to permit a complete search by the FBI or its designees of any and all computers, any electronic and/or optical data storage and/or retrieval system or medium, and any related computer peripherals, described below:

CPU Make, Model & Serial Number (if available)

b6 -3
b7C -3
b7E -6

Storage or Retrieval Media, Computer Peripherals

and located at , which I own, possess, control, and/or have access to, for any evidence of a crime or other violation of the law. The required passwords, logins, and/or specific directions for computer entry are as follows

I have been advised of my right to refuse to consent to this search, and I give permission for this search, freely and voluntarily, and not as the result of threats or promises of any kind.

I authorize those Agents to take any evidence discovered during this search, together with the medium in/on which it is stored, and any associated data, hardware, software and computer peripherals.

Oct. 4, 2018
Date

10-4-18
Date

Signature

Signature of Witness

Printed Full Name of Witness

Morris County, NJ
Location

b6 -2
b7C -2

FD-941 (2-26-01)

# CONSENT TO SEARCH COMPUTER(S)

I, Dr. Jerome Corsi, have been asked by Special Agents of the Federal Bureau of Investigation (FBI) to permit a complete search by the FBI or its designees of any and all computers, any electronic and/or optical data storage and/or retrieval system or medium, and any related computer peripherals, described below:

[redacted]

CPU Make, Model & Serial Number (if available)

b6 -3
b7C -3
b7E -6

Storage or Retrieval Media, Computer Peripherals

and located at [redacted], which I own, possess, control, and/or have access to, for any evidence of a crime or other violation of the law. The required passwords, logins, and/or specific directions for computer entry are as follows [redacted]

I have been advised of my right to refuse to consent to this search, and I give permission for this search, freely and voluntarily, and not as the result of threats or promises of any kind.

I authorize those Agents to take any evidence discovered during this search, together with the medium in/on which it is stored, and any associated data, hardware, software and computer peripherals.

Oct. 4, 2018
Date

Jerome R. Corsi
Signature

b6 -2
b7C -2

10-4-18
Date

Signature of Witness

Printed Full Name of Witness

Morris County, NJ
Location



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

May 24, 2021

Mr. Brian Huddleston
c/o Mr. Ty O. Clevenger
Post Office Box 20753
Brooklyn, NY 11202-0753

FOIPA Request Nos.: 1465531-000
Subject: Seth Rich (January 1, 2016 to present)

*Brian Huddleston v. Federal Bureau of Investigation, et al*
Civil Action No.: 20-cv-00447

Dear Mr. Huddleston:

The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a. Below you will find check boxes under the appropriate statute headings which indicate the types of exemptions asserted to protect information which is exempt from disclosure. The appropriate exemptions are noted on the enclosed pages next to redacted information. In addition, a deleted page information sheet was inserted to indicate where pages were withheld entirely and identify which exemptions were applied. The checked exemption boxes used to withhold information are further explained in the enclosed Explanation of Exemptions.

| Section 552 | | Section 552a |
|---|---|---|
| ☑ (b)(1) | ☑ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☑ (b)(3) | ☑ (b)(7)(C) | ☐ (k)(1) |
| 50 USC § 3024(i)(1) | ☑ (b)(7)(D) | ☐ (k)(2) |
| Federal Rules of Criminal Procedure 6 (e) | ☑ (b)(7)(E) | ☐ (k)(3) |
| 18 USC § 3123(d) | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☑ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☑ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) | | ☐ (k)(7) |

500 pages were reviewed and 52 pages are being released.

Please see the paragraphs below for relevant information specific to your request as well as the enclosed FBI FOIPA Addendum for standard responses applicable to all requests.

☐ Document(s) were located which originated with, or contained information concerning, other Government Agency (ies) [OGA].

- ☐ This information has been referred to the OGA(s) for review and direct response to you.
- ☐ We are consulting with another agency. The FBI will correspond with you regarding this information when the consultation is completed.

Please refer to the enclosed FBI FOIPA Addendum for additional standard responses applicable to your request.   **"Part 1"** of the Addendum includes standard responses that apply to all requests.   **"Part 2"** includes additional standard responses that apply to all requests for records about yourself or any third party individuals. **"Part 3"** includes general information about FBI records that you may find useful.   Also enclosed is our Explanation of Exemptions.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request Number listed above has been assigned to your request. Please use this number in all correspondence concerning your request.

Although your request is in litigation, we are required by law to provide you the following information:

If you are not satisfied with the Federal Bureau of Investigation's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS). The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769. Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov. If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

Please direct any further inquiries about this case to the Attorney representing the Government in this matter. Please use the FOIPA Request Number and/or Civil Action Number in all correspondence or inquiries concerning your request.

☑   See additional information which follows.

Sincerely,

Michael G. Seidel
Section Chief
Record/Information
  Dissemination Section
Information Management Division

Enclosure(s)

In response to your Freedom of Information Act (FOIA) request and subsequent civil action case pending in the U.S. District Court for the Eastern District of Texas, enclosed is one (1) compact disc representing the FBI's 2nd Interim release of information concerning records Bates Stamped FBI (20-cv-00447)-577 through FBI (20-cv- 00447)-1,076.

These pages were located in cross-reference files as described below. No "main" investigative files pertaining to the subject of your request were located.

Cross-references are defined as mentions of the subject of your request in files to other individuals, organizations, events, or activities. In processing the cross-references, the pages considered for possible release included only those pages which mention the subject of your request and any additional pages showing the context in which the subject of your request was mentioned. The cross-references were processed pursuant to the provisions of the FOIA and are being released to you in redacted form.

For your information, sealed court records are not eligible for release under the Freedom of Information Act. Material responsive to your request has been withheld and marked "OTHER-Sealed" pursuant to appropriate orders issued by federal district courts.

Duplicate copies of the same document were not processed.

**FBI FOIPA Addendum**

**As referenced in our letter responding to your Freedom of Information/Privacy Acts (FOIPA) request, the FBI FOIPA Addendum provides information applicable to your request. Part 1 of the Addendum includes standard responses that apply to all requests. Part 2 includes standard responses that apply to requests for records about individuals to the extent your request seeks the listed information. Part 3 includes general information about FBI records, searches, and programs.**

**Part 1: The standard responses below apply to all requests:**

(i) **5 U.S.C. § 552(c).** Congress excluded three categories of law enforcement and national security records from the requirements of the FOIPA [5 U.S.C. § 552(c)]. FBI responses are limited to those records subject to the requirements of the FOIPA. Additional information about the FBI and the FOIPA can be found on the www.fbi.gov/foia website.

(ii) **Intelligence Records**. To the extent your request seeks records of intelligence sources, methods, or activities, the FBI can neither confirm nor deny the existence of records pursuant to FOIA exemptions (b)(1), (b)(3), and as applicable to requests for records about individuals, PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(1), (b)(3), and (j)(2)]. The mere acknowledgment of the existence or nonexistence of such records is itself a classified fact protected by FOIA exemption (b)(1) and/or would reveal intelligence sources, methods, or activities protected by exemption (b)(3) [50 USC § 3024(i)(1)]. This is a standard response and should not be read to indicate that any such records do or do not exist.

**Part 2: The standard responses below apply to all requests for records on individuals:**

(i) **Requests for Records about any Individual—Watch Lists.** The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)]. This is a standard response and should not be read to indicate that watch list records do or do not exist.

(ii) **Requests for Records about any Individual—Witness Security Program Records.** The FBI can neither confirm nor deny the existence of records which could identify any participant in the Witness Security Program pursuant to FOIA exemption (b)(3) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(3), 18 U.S.C. 3521, and (j)(2)]. This is a standard response and should not be read to indicate that such records do or do not exist.

(iii) **Requests for Records for Incarcerated Individuals.** The FBI can neither confirm nor deny the existence of records which could reasonably be expected to endanger the life or physical safety of any incarcerated individual pursuant to FOIA exemptions (b)(7)(E), (b)(7)(F), and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (b)(7)(F), and (j)(2)]. This is a standard response and should not be read to indicate that such records do or do not exist.

**Part 3: General Information:**

(i) **Record Searches.** The Record/Information Dissemination Section (RIDS) searches for reasonably described records by searching systems or locations where responsive records would reasonably be found. A standard search normally consists of a search for main files in the Central Records System (CRS), an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled by the FBI per its law enforcement, intelligence, and administrative functions. The CRS spans the entire FBI organization, comprising records of FBI Headquarters, FBI Field Offices, and FBI Legal Attaché Offices (Legats) worldwide; Electronic Surveillance (ELSUR) records are included in the CRS. Unless specifically requested, a standard search does not include references, administrative records of previous FOIPA requests, or civil litigation files. For additional information about our record searches, visit www.fbi.gov/services/information-management/foipa/requesting-fbi-records.

(ii) **FBI Records.** Founded in 1908, the FBI carries out a dual law enforcement and national security mission. As part of this dual mission, the FBI creates and maintains records on various subjects; however, the FBI does not maintain records on every person, subject, or entity.

(iii) **Requests for Criminal History Records or Rap Sheets.** The Criminal Justice Information Services (CJIS) Division provides Identity History Summary Checks – often referred to as a criminal history record or rap sheet. These criminal history records are not the same as material in an investigative "FBI file." An Identity History Summary Check is a listing of information taken from fingerprint cards and documents submitted to the FBI in connection with arrests, federal employment, naturalization, or military service. For a fee, individuals can request a copy of their Identity History Summary Check. Forms and directions can be accessed at www.fbi.gov/about-us/cjis/identity-history-summary-checks. Additionally, requests can be submitted electronically at www.edo.cjis.gov. For additional information, please contact CJIS directly at (304) 625-5590.

(iv) **National Name Check Program (NNCP).** The mission of NNCP is to analyze and report information in response to name check requests received from federal agencies, for the purpose of protecting the United States from foreign and domestic threats to national security. Please be advised that this is a service provided to other federal agencies. Private Citizens cannot request a name check.

**EXPLANATION OF EXEMPTIONS**

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1)    (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)    related solely to the internal personnel rules and practices of an agency;

(b)(3)    specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)    trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)    inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)    personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal  privacy;

(b)(7)    records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal   privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)    contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)    geological and geophysical information and data, including maps, concerning wells.

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5)    information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)    material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,   or reduce crime or apprehend criminals;

(k)(1)    information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)    investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)    material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)    required by statute to be maintained and used solely as statistical records;

(k)(5)    investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)    testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)    material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

**FEDERAL BUREAU OF INVESTIGATION**

**FOI/PA**
**DELETED PAGE INFORMATION SHEET**
**Civil Action# 4:20-cv-00447**
**Total Withheld Page(s) = 448**

| Bates Page Reference<br>FBI (20-cv-00447)- | Reason for Withholding<br>(i.e., exemptions with coded rationale, duplicate, sealed by order of court, etc.) |
|---|---|
| 577 | b6-1,-2; b7C-1,-2; b7E-2,-6; Other-Sealed; (1 page) |
| 578-579 | b6-1,-3; b7C-1,-3; b7E-1,-6; Other-Sealed; (2 pages) |
| 580 | b6-1; b7C-1; b7E-2,-6; Other-Sealed; (1 page) |
| 581-582 | b6-1,-2,-3; b7C-1,-2,-3; b7E-1,-6; Other-Sealed; (2 pages) |
| 583 | b6-1; b7C-1; b7E-2,-6; Other-Sealed; (1 page) |
| 584-592 | b6-1,-2,-3; b7C-1,-2,-3; b7E-1,-6; Other-Sealed; (9 pages) |
| 593-598 | b6-1,-2,-3; b7C-1,-2,-3; b7E-1,-6; Other-Sealed; (6 pages) |
| 599-605 | Duplicate to 584-590 (7 pages) |
| 606 | b6-1,-2,-3; b7C-1,-2,-3; b7E-1,-6; Other-Sealed; (1 page) |
| 607-608 | Duplicate to 591-592 (2 pages) |
| 609-614 | Duplicate to 593-598 (6 pages) |
| 615 | b6-1; b7C-1; b7E-2,-6; Other-Sealed; (1 page) |
| 616-618 | b6-1,-2,-3; b7C-1,-2,-3; b7E-1,-6; Other-Sealed; (3 pages) |
| 620-622 | b6-2,-3; b7C-2,-3; b7E-6; (3 pages) |
| 627 | b5-1; b6-4; b7C-4; b7E-8; (1 page) |
| 635 | b4-1; b6-4; b7C-4; b7E-2,-6; (1 page) |

| | |
|---|---|
| 636 | b6-1,-4; b7C-1,-4; b7E-6; (1 page) |
| 637-646 | b4-1; b7E-6; (10 pages) |
| 651-652 | b5-1; b6-2; b7C-2; (2 pages) |
| 653 | b6-1,-3; b7C-1,-3; b7E-2,-6; (1 page) |
| 654 | b6-3; b7C-3; b7E-2,-6; (1 page) |
| 655-656 | b7E-6; (2 pages) |
| 657 | b7E-6; (1 page) |
| 658-659 | b7E-6; (2 pages) |
| 660-661 | b7E-6; (2 pages) |
| 662-663 | b7E-6; (2 pages) |
| 664-665 | Duplicate to 655-656 (2 pages) |
| 666-667 | b7E-6; (2 pages) |
| 668-669 | b7E-6; (2 pages) |
| 670-671 | b7E-6; (2 pages) |
| 672-673 | Duplicate to 159-160 (2 pages) |
| 674-676 | Duplicate to 161-163 (3 pages) |
| 684 | b1-1; b3-1; b6-1; b7C-1; b7E-2,-4,-6,-7,-8; (1 page) |
| 685-689 | b1-1; b3-1; b7E-6,-7,-8; (5 pages) |
| 696-698 | b7E-6; (3 pages) |
| 700 | b6-2,-3; b7E-2,-3; b7D-4; b7E-2; (1 page) |

| | |
|---|---|
| 702-703 | b7E-2,-6; (2 pages) |
| 704-706 | b7E-6; (3 pages) |
| 707 | b6-2; b7C-2; b7E-6; (1 page) |
| 708-711 | b7E-6; (4 pages) |
| 712-713 | b6-2; b7C-2; b7E-6; (2 pages) |
| 719-721 | Duplicate to 427-429 (3 pages) |
| 724 | b6-2,-4; b7C-2,-4; b7E-6; (1 page) |
| 725 | b6-1,-2,-4; b7C-1,-2,-4; b7E-6; (1 page) |
| 726 | b6-2,-4; b7C-2,-4; b7E-6; (1 page) |
| 731 | b5-1; b6-2-3; b7C-2-3; (1 page) |
| 732 | b5-1; b6-3; b7C-3 (1 page) |
| 733-734 | b6-3; b7C-3; b7E-6; (2 pages) |
| 735-738 | b6-2,-3; b7C-2,-3; b7E-6; (4 pages) |
| 739 | b6-2; b7C-2; b7E-6; (1 page) |
| 740-741 | b6-2,-3,-4; b7A-1; b7C-2,-3,-4; b7E-6; (2 pages) |
| 742-744 | b6-2,-3; b7C-2,-3; b7E-6; (3 pages) |
| 745 | b6-3; b7C-3; b7E-6; (1 page) |
| 746-747 | Duplicate to 309-310 (2 pages) |
| 748-749 | Duplicate to 309-310 (2 pages) |
| 750-751 | Duplicate to 309-310 (2 pages) |

| | |
|---|---|
| 752-753 | Duplicate to 309-310 (2 pages) |
| 756 | b3-2; b6-1,-3; b7A-1; b7C-1,-3; b7E-6; (1 page) |
| 757 | b3-2; b6-1,-3; b7A-1; b7C-1,-3; b7E-1,-3,-6; (1 page) |
| 758-760 | b3-2; b6-3; b7A-1; b7C-3; b7E-6; (3 pages) |
| 761-762 | b6-3; b7C-3; b7E-6; (2 pages) |
| 763-766 | b6-2,-3; b7C-2,-3; b7E-6; (4 pages) |
| 767 | b5-1; b6-1,2,-3; b7C-1,2,-3; b7E-2; (1 page) |
| 768 | b5-1; b7E-2; (1 page) |
| 769 | b5-1; b6-1,-3; b7C-1,-3; b7E-2; (1 page) |
| 770-771 | b5-1; b6-3; b7C-3; b7E-2; (2 pages) |
| 772-773 | b5-1; b6-2,-3; b7C-2,-3; (2 pages) |
| 774-776 | b3-3; b6-2,-3; b7C-2,-3; b7E-6; (3 pages) |
| 777-780 | b6-2,-3; b7C-2,-3; b7E-6; (4 pages) |
| 781-782 | Duplicate to 190-191 (2 pages) |
| 783 | b3-2; b6-2,-3; b7A-1; b7C-2,-3; (1 page) |
| 784-785 | Duplicate to 192-193 (2 pages) |
| 786 | b6-2,-3; b7C-2,-3; b7E-6; (1 page) |
| 787-790 | b6-3; b7C-3; b7E-6; (4 pages) |
| 791 | b6-2,-3; b7C-2,-3; b7E-6; (1 page) |
| 792 | b6-3; b7C-3; b7E-6; (1 page) |

| | |
|---|---|
| 793 | b6-2,-3; b7C-2,-3; b7E-6; (1 page) |
| 794 | b6-3; b7C-3; b7E-6; (1 page) |
| 795 | b6-2,-3; b7C-2,-3; b7E-6; (1 page) |
| 796 | b6-3; b7C-3; b7E-6; (1 page) |
| 797 | b6-3; b7C-3; b7E-6; (1 page) |
| 798 | b6-2,-3; b7C-2,-3; b7E-6; (1 page) |
| 799 | b6-3; b7C-3; b7E-6; (1 page) |
| 800 | b6-2,-3; b7C-2,-3; b7E-6; (1 page) |
| 801-808 | b6-3; b7C-3; b7E-6; (8 pages) |
| 809-810 | b6-2,-3; b7C-2,-3; b7E-6; (2 pages) |
| 811 | b6-3; b7C-3; b7E-6; (1 page) |
| 812-821 | b6-2,-3; b7C-2,-3; b7E-6; (10 pages) |
| 822-835 | b6-2,-3; b7C-2,-3; b7E-6; (14 pages) |
| 836-838 | b6-3; b7C-3; b7E-6; (3 pages) |
| 839 | b6-2,-3; b7C-2,-3; b7E-6; (1 page) |
| 840 | b6-3; b7C-3; b7E-6; (1 page) |
| 841-847 | b6-2,-3; b7C-2,-3; b7E-6; (7 pages) |
| 848-850 | b6-3; b7C-3; b7E-6; (3 pages) |
| 851-853 | b6-2,-3; b7C-2,-3; b7E-6; (3 pages) |
| 854 | b6-3; b7C-3; b7E-6; (1 page) |

| | |
|---|---|
| 855-859 | b6-2,-3; b7C-2,-3; b7E-6; (5 pages) |
| 860 | b6-3; b7C-3; b7E-6; (1 page) |
| 861-862 | b6-2,-3; b7C-2,-3; b7E-6; (2 pages) |
| 863 | b6-3; b7C-3; b7E-6; (1 page) |
| 864 | b6-2,-3; b7C-2,-3; b7E-6; (1 page) |
| 865 | b6-3; b7C-3; b7E-6; (1 page) |
| 866-868 | b6-2,-3; b7C-2,-3; b7E-6; (3 pages) |
| 869 | b6-3; b7C-3; b7E-6; (1 page) |
| 870-874 | b6-2,-3; b7C-2,-3; b7E-6; (5 pages) |
| 875-788 | b6-3; b7C-3; b7E-6; (4 pages) |
| 878-889 | b6-2,-3; b7C-2,-3; b7E-6; (12 pages) |
| 890-895 | b6-3; b7C-3; b7E-6; (6 pages) |
| 896 | b6-2,-3; b7C-2,-3; b7E-6; (1 page) |
| 897-903 | b6-3; b7C-3; b7E-6; (7 pages) |
| 904 | b6-2,-3; b7C-2,-3; b7E-6; (1 page) |
| 905-907 | b6-3; b7C-3; b7E-6; (3 pages) |
| 908-910 | b6-2,-3; b7C-2,-3; b7E-6; (3 pages) |
| 911-912 | b6-3; b7C-3; b7E-6; (2 pages) |
| 913-918 | b6-2,-3; b7C-2,-3; b7E-6; (6 pages) |
| 919 | b6-3; b7C-3; b7E-6; (1 page) |

| | |
|---|---|
| 920 | b6-2,-3; b7C-2,-3; b7E-6; (1 page) |
| 921-928 | b6-3; b7C-3; b7E-6; (8 pages) |
| 929-933 | b6-2,-3; b7C-2,-3; b7E-6; (4 pages) |
| 934-935 | b6-3; b7C-3; b7E-6; (2 pages) |
| 936-943 | b6-2,-3; b7C-2,-3; b7E-6; (8 pages) |
| 944-945 | b6-3; b7C-3; b7E-6; (2 pages) |
| 946 | b6-2,-3; b7C-2,-3; b7E-6; (1 page) |
| 947 | b6-3; b7C-3; b7E-6; (1 page) |
| 948-949 | Duplicate 186-188 (3 pages) |
| 951 | b6-2,-3; b7C-2,-3; b7E-6; (1 page) |
| 952 | b3-2; b6-2,-3; b7C-2,-3; (1 page) |
| 953 | b6-2,-3; b7C-2,-3; b7E-6; (1 page) |
| 954 | b6-2,-3; b7C-2,-3; b7E-6; (1 page) |
| 957 | b6-3; b7C-3; b7E-6; (1 page) |
| 958 | b7E-6; (1 page) |
| 959 | b6-3; b7C-3; b7E-6; (1 page) |
| 960 | b7E-6; (1 page) |
| 961-967 | b7E-6; (7 pages) |
| 968 | b7E-6; (1 page) |
| 969-970 | b7E-6; (2 pages) |

| | |
|---|---|
| 971 | b6-2,-3; b7C-2,-3; b7E-6; (1 page) |
| 972 | b6-3; b7C-3; b7E-6; (1 page) |
| 973 | b6-2,-3; b7C-2,-3; b7E-6; (1 page) |
| 974 | b6-3; b7C-3; b7E-6; (1 page) |
| 975-976 | b6-2,-3; b7C-2,-3; b7E-6; (2 pages) |
| 982-983 | b5-2; b6-2,-3; b7C-2,-3; b7E-6; (2 pages) |
| 984 | b6-2,-3; b7C-2,-3; b7E-6; (1 page) |
| 986-996 | b7E-6; (11 pages) |
| 997-998 | Duplicate to 408-409 (2 pages) |
| 999 | Duplicate to 410 (1 page) |
| 1000 | Duplicate to 411 (1 page) |
| 1001 | Duplicate 412 (1 page) |
| 1002-1004 | Duplicate to 413-415 (3 pages) |
| 1005-1006 | Duplicate to 279-280 (2 pages) |
| 1007-1008 | b6-3; b7C-3; b7E-6; (2 pages) |
| 1009 | b6-3; b7C-3; b7E-6; (1 page) |
| 1010 | b7E-6; (1 page) |
| 1011-1076 | b6-2,-3; b7C-2,-3; b7E-6; (66 pages) |

XXXXXXXXXXXXXXXXXXXXXX
X Deleted Page(s) X
X No Duplication Fee X
X For this Page X
XXXXXXXXXXXXXXXXXXXXXX

b7E -2

FD-302 (Rev. 5-8-10)

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 03/08/2017

On or about [redacted] participated in separate interviews with [redacted]

b6 -2, -3
b7C -2, -3

Audio downloads of the interviews are attached in the 1A section of the file.

For reference, agent transcribed the interviews. Summary transcriptions are also attached in the 1A section of the file.

Investigation on 03/02/2017 at San Francisco, California, United States (In Person)

File # [redacted] Date drafted 03/07/2017

by [redacted]

b6 -1
b7C -1
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

b7E -2

FD-302 (Rev. 5-8-10)

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 04/13/2017

On March 21, 2017, agent made the attached email request for information to Perkins Coie, counsel for the victim.

On March 31, 2017, Perkins Coie attorney [redacted] contacted agent and provided a verbal summary in response to the request. He advised a more detailed, written response would be provided soon. Notes from the call are attached.

b6 -4
b7C -4

On April 10, 2017, agent made the attached email follow up request for information.

Investigation on 03/31/2017 at San Francisco, California, United States (Phone)

File # [redacted] Date drafted 04/12/2017

by [redacted]

b6 -1
b7C -1
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

**From:** [redacted] (SF) (FBI)
**To:** [redacted] (Perkins Coie)"
**Cc:** [redacted] (SF) (FBI)
**Subject:** RE: DNC / DCCC data
**Date:** Tuesday, March 21, 2017 2:01:00 PM
**Attachments:** [redacted]

b6 -1, -4
b7C -1, -4
b7E -6, -8

Hello [redacted]

It has been a while [redacted]

[redacted] Please let me know if these are appropriately addressed to you and [redacted] or if they are better suited for [redacted]

Their first concern [redacted]

b7E -6, -8

Second, [redacted]

b7E -6, -8

Lastly, [redacted]

b7E -6, -8

Thanks again for all your assistance to date. We really appreciate it.

[redacted]

b6 -1
b7C -1
b7E -1

[redacted]
*Special Agent*
*FBI - San Francisco*
[redacted] *cell*
[redacted] *desk*

**From:** [redacted] (Perkins Coie) [mailto: [redacted]
**Sent:** Thursday, October 27, 2016 7:53 AM
**To:** [redacted] (SF) (FBI) [redacted]
**Cc:** [redacted] (SF) (FBI) [redacted]
**Subject:** RE: DNC / DCCC data

b6 -1, -4
b7C -1, -4
b7E -1

Hi [redacted]

**From:** (SF) (FBI)
**To:** (Perkins Coie)"
**Cc:** SF) (FBI)
**Subject:** RE: FBI follow up:
**Date:** Monday, April 10, 2017 6:43:00 PM

b6 -1, -4
b7C -1, -4
b7E -8

Hello

In our last call you indicated a written response to our questions would be coming soon. I just wanted to follow up on that aspect as it would be helpful to our team.

b6 -1, -4
b7C -1, -4
b7E -8

Thank you,

**From:** (Perkins Coie) [mailto
**Sent:** Friday, March 31, 2017 4:28 PM
**To:** (SF) (FBI)
**Cc:** (SF) (FBI)
**Subject:** Re: FBI follow up:

b6 -1,- 4
b7C -1,- 4
b7E -1, -8

I don't have an answer for you right now but I understand your request and will get back to you as soon as I am able.

Regards,

On Mar 31, 2017, at 7:22 PM, (SF) (FBI) wrote:

b6 -1 ,-4
b7C -1, -4
b7E -1, -6, -8

Hello

Thank you for your call today.

Thank you,

b6 -4
b7C -4

Perkins Coie LLP
P

From: (SF) (FBI) [mailto:
Sent: Tuesday, March 21, 2017 2:01 PM
To: (WDC)
Cc: (SF) (FBI)
Subject: RE: DNC / DCCC data

b6 -1, -4
b7C -1, -4
b7E -6, -8

Hello

It has been a while

Please let me know if these are appropriately addressed to you and or if they are better suited for

Their first concern

b7E -6, -8

Second,

b7E -6, -8

Lastly,

b7E -6, -8

Thanks again for all your assistance to date. We really appreciate it.

b6 -1
b7C -1
b7E -1

*Special Agent*
*FBI - San Francisco*
*cell*
*desk*

b7E -2

FD-302 (Rev. 5-8-10)

UNCLASSIFIED//~~FOUO~~

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 04/17/2017

[redacted] date of birth [redacted] was interviewed by Special Agents [redacted] at her attorney, [redacted] office at [redacted] Nevada. After being advised of the identity of the interviewing Agents and the nature of the interview, [redacted] provided the following information in the presences of [redacted]

b6 -1, -2, -4
b7C -1,- 2 ,-4

[redacted] was aware that the Democratic National Convention (DNC) believes it was "hacked" and that there was an on-going investigation into matter. As an avid user of twitter, [redacted] attempted to reach out to Guccifer2.0 via twitter direct message (DM). [redacted] [redacted] planned to develop an online relationship with him [redacted]

b6 -4
b7C -4

[redacted]

b6 -4
b7C -4

In or around August 2016, Guccifer2.0 became unresponsive and [redacted] believes he is no longer using twitter. [redacted] contacted [redacted] [redacted] that she believed also communicated with Guccifer2.0 via twitter. [redacted] confirmed that she had not received any new communication from Guccifer2.0 since the August /September 2016 time-frame.

b6 -2, -4
b7C -2, -4

[redacted] In or around early April 2017, [redacted] noticed that the author Rodger Stone had taken an interest in Guccifer2.0 and had written an article about him. [redacted]

b6 -2,- 4
b7C -2, -4

UNCLASSIFIED//~~FOUO~~

Investigation on 04/12/2017 at [redacted] Nevada, United States (In Person)

File # [redacted] Date drafted 04/13/2017

by [redacted]

b6 -1
b7C -1
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 05-08-10)

b6 -4
b7C -4
b7E -2

UNCLASSIFIED//~~FOUO~~

b6 -2, -4
b7C -2, -4

Continuation of FD-302 of (U//~~FOUO~~) Interview of , On 04/12/2017 , Page 2 of 2

b6 -2, -4
b7C -2, -4

does not know who Guccifer2.0 is, or where he is located. She only communicated with him through twitter.

b6 -2, -4
b7C -2, -4

had not met anyone or spoken to anyone by the name of When asked about these names, she believed the interviewing agent was referring to mentioned above.

UNCLASSIFIED//~~FOUO~~

FBI(20-cv-447)-629

b7E -2

FD-302 (Rev. 5-8-10)

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 04/28/2017

On April 25, 2017, agent received the attached email from SA [redacted] who previously interviewed [redacted] forwarding an email from [redacted] [redacted] referenced, as well as the [redacted] [redacted] have been attached.

b6 -1, -2, -4
b7C -1, -2, -4
b7E -6

b6 -1
b7C -1
b7E -2

Investigation on 04/25/2017 at San Francisco, California, United States (Email)

File # [redacted] Date drafted 04/25/2017

by [redacted]

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

**From:** (LV) (FBI)
**To:** (SF) (FBI)
**Subject:** FW: Hi from Info Regarding Guccifer 2.0, and Seth Rich.
**Date:** Tuesday, April 25, 2017 2:46:04 PM

b6 -1, -4
b7C -1, -4

I don't know if any of the below is meaningful to you, but I thought I would pass it along. If it's not I'll filter out what she sends.

**From:**
**Sent:** Tuesday, April 25, 2017 2:02 AM
**To** (LV) (FBI) (LV) (FBI)
**Subject:** Hi from - Info Regarding Guccifer 2.0, and Seth Rich.

b6 -1, -4
b7C -1,- 4
b7E -1

Hi

b6 -1, -4
b7C -1, -4

I hope you are doing well!

b6 -4
b7C -4

b6 -2, -4
b7C -2, -4

b6 -2, -4
b7C -2, -4

b6 -2, -4
b7C -2, -4

b6 -2, -4
b7C -2, -4

b6 -2, -4
b7C -2, -4

b7E -2

FD-302 (Rev. 5-8-10)

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 04/28/2017

On April 23, 2017, agent received the attached email from [redacted] of Perkins Coie containing written responses to questions previously posed and discussed as described in above referenced serial.

b6 -4
b7C -4

Investigation on 04/25/2017 at San Francisco, California, United States (Email)

File # [redacted] Date drafted 04/25/2017

by [redacted]

b6 -1
b7C -1
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

**From:** [redacted] (Perkins Coie)
**To:** [redacted] SE) (FBI)
**Cc:** [redacted] FBI); [redacted]
**Subject:** Response to DNC/DCCC-related questions
**Date:** Sunday, April 23, 2017 9:23:46 PM

b6 -1, -4
b7C -1, -4

[redacted]

b6 -1, -2, -4
b7C -1, -2, -4
b7E -8

Here are the written responses to the questions that we discussed by phone earlier this month. [redacted]

[redacted] is copied; you can follow-up with him directly if you have further questions regarding the information below.

Regards,

[redacted]

[redacted]

b6 -2
b7C -2
b7E -6, -8

A. You should follow-up with [redacted] on this.

[redacted]



b6 -4
b7C -4
b7E -6, -8

| Perkins Coie LLP

P

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

b6 -1, -4
b7C -1, -4
b7E -6

**[redacted] (SF) (FBI)**

**From:** [redacted] (SF) (FBI)
**Sent:** Friday, April 28, 2017 9:42 AM
**To:** [redacted] (Perkins Coie)'
**Cc:** [redacted] (Perkins Coie); [redacted] (Perkins Coie)
**Subject:** RE: [redacted] Mailing Address

**Follow Up Flag:** Follow up
**Flag Status:** Completed

b6 -1, -4
b7C -1, -4
b7E -1

Hi [redacted]
That would be great. It can be sent to me at:

Federal Bureau of Investigation
Attn: SA [redacted]
450 Golden Gate Avenue, 13th Floor
San Francisco, CA 94102

Thank you,
[redacted]

[redacted]
*Special Agent*
*FBI - San Francisco*
[redacted] *- cell*
*-desk*

**From:** [redacted] (Perkins Coie) [redacted]
**Sent:** Friday, April 28, 2017 9:22 AM
**To:** [redacted] (SF) (FBI) [redacted]
**Cc:** [redacted] (Perkins Coie) [redacted] Perkins Coie)
[redacted]
**Subject** [redacted] Mailing Address

b6 -1, -4
b7C -1, -4
b7E -1, -6

Hi [redacted]

[redacted] Please send a mailing address and [redacted] will send it out to you today, for Monday delivery.

Regards,

[redacted]

[redacted] **Perkins Coie LLP**
P: [redacted]
[redacted]

---

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

b7E -2

FD-302 (Rev. 5-8-10)

UNCLASSIFIED//~~FOUO~~

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 08/25/2017

~~LAW ENFORCEMENT SENSITIVE~~

This information is the property of the FBI and may be distributed to state, tribal, or local government law enforcement officials with a need-to-know. Further distribution without FBI authorization is prohibited. Precautions should be taken to ensure this information is stored and/or destroyed in a manner that precludes unauthorized access.

On August 24, 2017, [redacted] [redacted] was interviewed by phone at [redacted] After being advised of the identity of the interviewing agent and nature of the interview, [redacted] voluntarily provided the following information: b6 -2 b7C -2

[redacted] had known Seth Rich for approximately [redacted] [redacted] b6 -2 b7C -2

The last contact [redacted] had with Rich was about 1 or 2:00 a.m. the day of his death. He recalled it was definitely after midnight. They had been texting during the night. Originally, [redacted] and Rich were supposed to meet that night, July 9, 2016, [redacted] However, [redacted] [redacted] did not make it to [redacted] b6 -2 b7C -2

[redacted] b6 -2 b7C -2

[redacted] last saw Rich earlier in the week. They discussed plans to [redacted] [redacted] b6 -2 b7C -2

[redacted] and Rich would occasionally discuss work. [redacted] sense was Rich loved what he did; he described Rich as a big Hillary fan, referring to Hillary Clinton. Rich seemed happy and loved the people he worked with. Rich never said anything negative about work. b6 -2 b7C -2

Rich never mentioned anything to [redacted] about Bernie Sanders being treated unfairly by the DNC. b6 -2 b7C -2

UNCLASSIFIED//~~FOUO~~

Investigation on 08/24/2017 at San Francisco, California, United States (Phone)

File # [redacted] Date drafted 08/24/2017 b6 -1 b7C -1 b7E -2

by [redacted]

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

b6 -2
b7C -2
b7E -2

FD-302a (Rev. 05-08-10)

**UNCLASSIFIED//~~FOUO~~**

[redacted] tried not to discuss politics with Rich because they had opposing views.

b6 -2
b7C -2

[redacted] had met some of Rich's friends. He also met [redacted] one or two times. He thought her name was [redacted] [Agent note: open source research indicated her name was [redacted] advised Rich [redacted] at the time of his death. [redacted]

b6 -2
b7C -2

When [redacted] first heard of Rich's death that night, he did not believe it. He Googled Rich's death. The next day, when Rich's name was released, [redacted] was shocked. Rich was a nice guy.

b6 -2
b7C -2

[redacted]

b6 -2
b7C -2

Rich was aware [redacted] He did not think Rich knew any [redacted] tried to recall if Rich had met any of [redacted] friends, but did not think he met any.

b6 -2
b7C -2

[redacted] generally did not think there was any truth to various open source reporting claiming Rich had a meeting with the FBI or was set to testify the Monday following his death. Had this been the case, Rich would not have been out so late the night before.

b6 -2
b7C -2

If Rich had any meeting scheduled with an FBI agent, Rich would have told [redacted]

b6 -2
b7C -2

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

CLASSIFIED BY: NSICG
REASON: 1.4 (C)
DECLASSIFY ON: 12-31-2042
DATE: 04-15-2021

FD-1036 (Rev. 10-16-2009)

(U) ~~SECRET//NOFORN~~

b6 -1
b7C -1
b7E -2

# FEDERAL BUREAU OF INVESTIGATION

**Import Form**

**Form Type:** OTHER **Date:** 08/25/2017

**Title:** (U) FireEye - A New Report Raises Big Questions About Last Year's DNC Hack

**Approved By:** SSA [redacted]

**Drafted By:** [redacted]

b1 -1
b3 -1
b6 -1
b7C -1
b7E -2, -4

(U) **Case ID #:** [redacted] ~~(S//NF)~~ UNSUBS;
aka Guccifer2;
(S) [redacted]
Democratic National Committee - Victim;
State Sponsored Computer Intrusion -
(S) [redacted]
Newspaper Clippings Subfile

**Synopsis:** (U) To provide the August 16, 2017 FireEye Threat Media Highlights article titled "A New Report Raises Big Questions About Last Year's DNC Hack."

~~**Reason: 1.4(c)**~~
~~**Derived From: FBI NSIC**~~
~~**dated 20120629**~~
~~**Declassify On: 20270307**~~

♦♦

(U) ~~SECRET//NOFORN~~

# Threat Media Highlights

FireEye

Wednesday, August 16, 2017

## A New Report Raises Big Questions About Last Year's DNC Hack

**MEDIA OFF-TARGET**

FROM THE MEDIA: A new report claims that a growing body of evidence points to a different interpretation of the 2016 hack against the U.S. Democratic National Committee (DNC). After the initial data breaches in the spring and summer of 2016, a substantial number of intelligence experts and security researchers agreed that the DNC network attack was the work of Russian state-sponsored cyber espionage actors. This narrative has only grown louder and stronger in the months since the November 2016 U.S. presidential election. A new report, however, challenges the basic assertions of this attribution, instead alleging that new evidence points to an internal "leak" of data, rather than an external hack. The report claims that the exfiltrated data was downloaded locally to a data storage device by someone with access to the DNC's systems. The report further states that the U.S. National Security Agency (NSA) has network monitoring capabilities sufficient to identify and capture the transfer of data that would have occurred had the hack been the work of Russian actors. Though such evidence has been requested, none has been produced. The report further claims, among other theories, that time and date stamps from the dates of the hack strongly suggest that the exfiltration originated somewhere in the U.S. Eastern time zone and not from Russia.

READ THE STORY: The Nation

ANALYST COMMENT: FireEye has been tracking several flawed theories that seek to undermine Russian attribution of the 2016 DNC compromise. This particular narrative overlooks the possibility that the files were copied over several times, or the existence of indicators of compromise that predate July 5, the focus of this analysis. We have previously reported on The Forensicator's blog post, which appears to have been

strategically released to coincide with the one-year anniversary of the death of DNC staffer Seth Rich. That post was subsequently reported by dubious outlets and the "Adam Carter" persona, which we have observed engaging in disinformation activity intended to discredit U.S. Government and cyber security companies' attribution of Guccifer 2.0 to Russian state-sponsored actors. We anticipate that as further details of the Russian interference investigation are made public, actors motivated to undermine the investigation will continue to push disinformation regarding its nature and attribution.

## Related Report(s):

On Anniversary of DNC Staffer's Murder, Alleged Hillary Clinton Email Leak Leveraged to Discredit Russian Attribution for DNC Compromise

24 Jul. 2017

APT28: At the Center of the Storm: Russia Strategically Evolves Its Cyber Operations

10 Jan. 2017

Anatomy of 2016 Suspected Russian Influence Operations Activity

15 Nov. 2016

# FEDERAL BUREAU OF INVESTIGATION

**Import Form**

**Form Type:** OTHER - Other **Date:** 10/05/2018

**Title:** (U) Buzzfeed - This Ohio Woman's Run-In with The FBI

CLASSIFIED BY: NSICG [redacted]
REASON: 1.4 (C)
DECLASSIFY ON: 12-31-2043
DATE: 04-16-2021

**Approved By:** [redacted]

**Drafted By:** [redacted]

b1 -1
b3 -1
b6 -1
b7C -1
b7E -2, -4

**Case ID #:** [redacted] (U) ~~(S//NF)~~ UNSUBS;
aka Guccifer2;
(S) [redacted]
Democratic National Committee - Victim;
State Sponsored Computer Intrusion -
(S) [redacted]
Newspaper Clippings Subfile

**Synopsis:** (U) To provide the October 4, 2018 Buzzfeed article titled "This Ohio Woman's Run-In With The FBI Give Us A Window Into Robert Mueller's Trump-Russia Probe"

~~**Reason: 1.4(c)**~~
~~**Derived From: Multiple Sources**~~
~~**Declassify On: 20431231**~~

# This Ohio Woman's Run-In With The FBI Gives Us A Window Into Robert Mueller's Trump–Russia Probe

In 2016, Cassandra Ford renamed a Twitter account for the persona leaking hacked Democratic emails. That earned the FBI's interest and a subpoena from special counsel Robert Mueller.

By Kevin Collier



Reporting From

Buzzfeednews.com

Washington, DC

Posted on October 3, 2018, at 9:01 a.m. ET

- Tweet
- Share
- Copy

Nick Hagen for BuzzFeed News

Cassandra Ford

officers, located in a different building — but they were tasked with disseminating Democrats' files and emails. They finally did register a Twitter account — @Guccifer_2, because Ford had already taken the cleaner one — a few days later.

Ford doesn't like to think of what she was doing with her account as trolling, and often when someone would ask her if she hacked the DNC, she'd tell them no, that wasn't her. But she didn't always go out of her way to inform people, either, and readily shared the files that the GRU released concerning Hillary Clinton.

Twitter

@Guccifer2's pinned tweet in late June 2016

"It was like this typical active-measures account, sowing doubt and confusion," recalled Adam Parkhomenko, who was the DNC's national field director in 2016. He spent months after the election obsessing over the account and sparring with Ford without ever knowing who she was.

And it was widely seen. While @Guccifer2 never reached 2,000 followers, it was retweeted and cited enough that it received hundreds of thousands of impressions in the months after its creation, according to Twitter's analytics for the account, which Ford screengrabbed and shared with BuzzFeed News.

Technically, Twitter recognizes Ford's account as being created June 9, and a review of her account's archive — she shared her downloaded account history with the computer forensics firm Garrett Discovery, which gave it to BuzzFeed News with Ford's permission — says she registered an account that day, and changed the username to @Guccifer2 on June 16, though she only recalls actually creating the account on the latter date.

For Parkhomenko, the discrepancy in dates was a smoking gun. Since it appeared the account was created before the WordPress account, he figured whoever was behind it was somehow tied to a secret Russian operation. He obsessed over how the account was registered with a Volgograd time zone and tweeted at weird hours — a result of Ford's tendency to stay up all night online — and figured there must be some strange connection to the Russian government.

@Guccifer2's inbox — which Ford also shared, as part of her account history — soon became a honeypot for internet weirdos. One guy messaged her the email addresses and phone numbers of White House staffers, just because. One confused journalist messaged her from his verified account: "hi I am a producer at CNN. I am trying to reach Gufficer 2.0 [*sic*]."

Conspiracy theorists came in droves, eager to talk about George Soros, or about the Seth Rich conspiracy, which holds that murdered DNC staffer Rich was the actual

source of the stolen emails — even though if Guccifer 2.0 were the real hacker who broke into the DNC, that makes the Seth Rich theory nonsensical.

Others asked her outright for hacking services, a violation of US law. “I am seeking services for file retrieval,” a Canadian man said. “I'm looking for someone to hak [*sic*] into a computer.” Another one asked, “Hi, can you tell me please is it possible to hack someone's twitter acct dms?”

Nick Hagen for BuzzFeed News

Ford met FBI agents at Cabin Fever Coffee in Defiance, Ohio.

The FBI noticed, too. Two months after she made the account, on Aug. 19, Ford received a phone call from someone in the FBI’s San Francisco field office. She was friendly, and asked about the account. Ford took control of the conversation: She had been harassed a lot online, she said, and would love to talk about it in person, and to ask the FBI if she’d been hacked.

Four days later, she met Halper and one other agent. They came from the Cleveland field office to see her at Cabin Fever, a coffee shop in downtown Defiance, a northwestern Ohio town just across the Michigan border and 160 miles from Cleveland.

Exhaustively investigating all possible angles of a hacking case is par for the course, former FBI officials say. Wannabe hackers and the real ones alike often brag, and the internet is rife with people falsely claiming credit for, or accusing someone else of, such activity. If the FBI ends up bringing charges against a suspect, their entire case file is subject to discovery from the defense. If there’s any hint that someone else might be behind a given hack, that’s a good tool for the defense, so the FBI often tries to rule out all those other possibilities to increase the chance of a guilty plea or conviction.

“I came across a lot of those types of people in my career,” said Austin Berglas, head of cyberforensics at the firm BlueVoyant and the former assistant special agent in charge of the FBI’s cyber branch in New York.

Berglas was among the FBI agents who investigated and eventually took down the Silk Road, the notorious online black marketplace, largely used to sell drugs, which at the time was the largest in history. It was the brainchild of Ross Ulbricht, who went by the pseudonym Dread Pirate Roberts. In November 2013, a month after the FBI arrested Ulbricht and shuttered the site, a replacement called Silk Road 2.0, run by a second Dread Pirate Roberts, appeared online to take its place.

“When DPR was taken down, all these fake sites and DPR2 popped up. People said this is not legitimate, that DPR is done,” Berglas said. The following year, as part of a massive law enforcement crackdown on popular drug sites, Berglas’s team arrested Blake Benthall for running the second Silk Road.

CLASSIFIED BY: NSICG
REASON: 1.4 (C)
DECLASSIFY ON: 12-31-2042
DATE: 04-16-2021

FD-1087 (Rev. 5-8-10)

b6 -1
b7C -1
b7E -6

# FEDERAL BUREAU OF INVESTIGATION

**Collected Item Log**

**Event Title:** (U) Evidence acquired on 5/19/2017 by SA [redacted] **Date:** 05/19/2017

**Approved By:** [redacted]

**Drafted By:** [redacted]

b1 -1
b3 -1
b6 -1, -4
b7C -1, -4
b7E -2, -4, -5

**Case ID #:** [redacted] (U) ~~(S//NF)~~ UNSUBS; aka Guccifer2; (S) [redacted] Democratic National Committee - Victim; State Sponsored Computer Intrusion - (S) [redacted] Sensitive Investigative Matter

[redacted]

**Collected From:** [redacted]
Perkins Coie
700 13th St. NW
Suite 600
Washington D.C., District Of Columbia 20005-3960
United States

**Receipt Given?:** No

**Holding Office:** SAN FRANCISCO

**Details:** *No Details Provided*

**Item Type** **Description**

~~UNCLASSIFIED~~

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

b6 -1
b7C -1
b7E -2

(U) ~~SECRET~~ ~~UNCLASSIFIED~~

Title: (U) Evidence acquired on 5/19/2017 by SA [redacted]
Re: [redacted] 05/19/2017

| | |
|---|---|
| 1B Digital | (U) (1) One Black Lenovo ThinkPad T440 Laptop, s/n: PF-01W627 14/05 with paper taped to top identifying it as S. Rich laptop. (1) One Lenovo adapter with cord LI42T5093 and (1) One page letter from [redacted] [redacted] of Perkins Coie<br>Collected On: 05/19/2017 04:30 PM EDT<br>Seizing Individual: [redacted]<br>Collected By: [redacted]<br>Location Area: n/a<br>Specific Location: n/a<br>Device Type: Laptop/Tablet Computer<br>Make: Lenovo<br>Model: ThinkPad T440<br>Serial Number: PF-01W627 14/05<br>Number of Devices Collected: 1 |

b6 -1,- 4
b7C -1, -4

♦♦

~~UNCLASSIFIED~~

b7E -2

FD-1057 (Rev. 5-8-10)

(U) ~~SECRET//NOFORN~~

# FEDERAL BUREAU OF INVESTIGATION

**Electronic Communication**

**Title:** (U//~~FOUO~~) Cyber Division Request to conduct a follow-up interview with [redacted]

**Date:** 10/12/2016

CLASSIFIED BY: NSICG [redacted]
REASON: 1.4 (C)
DECLASSIFY ON: 12-31-2041
DATE: 04-16-2021

**CC:** [redacted]

b6 -1, -4
b7C -1, -4
b7E -1, -9

**From:** CYBER
[redacted]
**Contact:** [redacted]

**Approved By:** [redacted]

**Drafted By:** [redacted]

**Case ID #:** [redacted] (U) ~~(S//NF)~~ UNSUBS;
aka Guccifer2;
(S) [redacted]
Democratic National Committee - Victim;
State Sponsored Computer Intrusion -
(S) [redacted]

b1 -1
b3 -1
b6 -1
b7C -1
b7E -2, -4

**CHILD VICTIM/WITNESS IDENTITY INFORMATION**
Protect identity in compliance with 18 USC 3509.

**Synopsis:** (U//~~FOUO~~) To request Washington Field Office conduct a follow-up interview of [redacted]

b6 -4
b7C -4

~~**Reason:** 1.4(b)~~
~~**Derived From:** FBI NSISC-20090615~~
~~**Declassify On:** 20411231~~

(U) ~~SECRET//NOFORN~~

b6 -4
b7C -4
b7E -2, -5

(U) ~~SECRET//NOFORN~~

Title: (U//~~FOUO~~) Cyber Division Request to conduct a follow-up interview with [redacted]
Re: [redacted] 10/12/2016

[redacted]

**Reference:** [redacted]

**Details:**

**(U) CASE BACKGROUND**

(U) ~~(S//NF)~~ On 15 June 2016, an article written by "Guccifer2" was posted to his personal WordPress blog. In the article, Guccifer2 implies he hacked the Democratic National Committee (DNC) servers and refutes an earlier announcement by CrowdStrike, a U.S. based cyber security company, that the DNC hack was perpetrated by two sophisticated hacker groups. In July 2016, Guccifer2 posted documents attributed to the DNC hack on his personal blog. On 22 July 222016, Wikileaks published more than 19,000 DNC emails with more than 8,000 attachments. Guccifer2 claimed responsibility for sharing the information with Wikileaks through his two Twitter accounts. On 31 August 2016, Guccifer2 released documents on his personal blog purported to be from the computer of Representative Nancy Pelosi.

**(U) CURRENT SITUATION**

[redacted]

b6 -4
b7C -4
b7D -3
b7E -6

(U) ~~SECRET//NOFORN~~

b6 -4
b7C -4
b7E -2

(U) ~~SECRET//NOFORN~~

Title: (U//~~FOUO~~) Cyber Division Request to conduct a follow-up interview with [redacted]
Re: [redacted] 10/12/2016

[redacted]
[redacted] Seth Rich was murdered on the morning of 10 July 2016 in Washington, DC [redacted]
[redacted] On 14 September 2016, WFO agents interviewed [redacted]
[redacted]

b6 -2, -4
b7C -2, -4

**(U) REQUEST FOR ACTION**

(U//~~FOUO~~) Cyber Division respectfully requests Washington Field Office (WFO) recontact and interview [redacted] Lexis Nexus provided the following contact information for [redacted]

b6 -4
b7C -4

Name: [redacted]

DOB: [redacted]

SSN: [redacted]

Address: [redacted]

Phone Number: [redacted]

(U//~~FOUO~~) Cyber Division provides [redacted]
[redacted]

b5 -1
b6 -2
b7C -2

(U) ~~SECRET//NOFORN~~

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

b7E -2

FD-1057 (Rev. 5-8-10)

(U) ~~SECRET//NOFORN~~

# FEDERAL BUREAU OF INVESTIGATION

## Electronic Communication

**Title:** (U) Open Source and Internal Research on [redacted]

**Date:** 09/27/2017

CLASSIFIED BY: NSICC [redacted]
REASON: 1.4 (C)
DECLASSIFY ON: 12-31-2042
DATE: 04-16-2021

**From:** SAN FRANCISCO
SF-CY1
**Contact:** [redacted]

b1 -1
b3 -1
b6 -1, -2,- 3
b7C -1, -2, -3
b7E -1, -2, -4

**Approved By:** [redacted]

**Drafted By:** [redacted]

**Case ID #:** [redacted] (U) ~~(S//NF)~~ UNSUBS;
aka Guccifer2;
(S) [redacted]
Democratic National Committee - Victim;
State Sponsored Computer Intrusion -
(S) [redacted]
Sensitive Investigative Matter

**Synopsis:** (U) To document open source research conducted and review of internal cases on [redacted]

~~**Reason:** 1.4(c)~~
~~**Derived From:** Multiple Sources~~
~~**Declassify On:** 20421231~~

[redacted]

b3 -1
b6 -3
b7A -1
b7C -3
b7E -2, -5, -6

**Reference:** [redacted]

**Enclosure(s):** Enclosed are the following items:

[redacted]

~~SECRET//NOFORN~~ (U)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

*United States Department of Justice*

Federal Bureau of Investigation

**Tracking #:** 181769980

**Case File #:**

**Precedence:** Routine

**Date:** 02-Jan-2018

Office of Legal Attaché

United States Embassy

b7E -1, -2, -9

(S)

b1 -1
b3 -1
b7D -4
b7E -7

**(U) Provide information; Guccifer 2.0**

**Enclosure(s):** Enclosed are the following items:
1. (U) DVD with FDR Supporting Information for

b7D -4

(U) Overall Case and Subject Background - Guccifer 2.0

(U//~~FOUO~~) The FBI has an ongoing investigation into the online persona known as Guccifer 2.0 who claimed to have hacked the United States Democratic National Committee (DNC), Democratic Congressional Campaign Committee (DCCC), and Clinton Foundation, and subsequently posted portions the claimed exfiltrated information from those entities online.

(U) On June 14, 2016, Dmitri Alperovitch of CrowdStrike authored an article titled "Bears in the Midst: Intrusion into the Democratic

CLASSIFIED BY: NSICG
REASON: 1.4 (B)
DECLASSIFY ON: 12-31-2041
DATE: 04-18-2021

INFORMATION CONTAINED HEREIN IS UNCLASSIFIED EXCEPT WHERE SHOWN OTHERWISE

b6 -1
b7C -1
b7E -2

(U) ~~SECRET//NOFORN~~

# FEDERAL BUREAU OF INVESTIGATION

## Electronic Communication

**Title:** (U//~~FOUO~~) Research on Guccifer2 and DCLeaks

**Date:** 08/15/2016

**CC:** [redacted]

b1 -1
b3 -1
b6 -1
b7C -1
b7E -1, -2, -4

**From:** SAN FRANCISCO
SF-CY1
**Contact:** [redacted]

**Approved By:** SSA [redacted]

**Drafted By:** [redacted]

**Case ID #:** [redacted] (U) ~~(S//NF)~~ UNSUBS;
aka Guccifer2;
[redacted] (S)
Democratic National Committee - Victim;
State Sponsored Computer Intrusion -
[redacted] (S)

**Synopsis:** (U//~~FOUO~~) To upload research.

~~Reason: 1.4(b)~~
~~Derived From: FBI NSISC-20090615~~
~~Declassify On: 20411231~~

[redacted]

b7E -5, -6

**Enclosure(s):** Enclosed are the following items:

[redacted]

~~SECRET//NOFORN~~ (U)

FBI(20-cv-447)-701

b7E -2

FD-1057 (Rev. 5-8-10)

(U) ~~SECRET//NOFORN~~

# FEDERAL BUREAU OF INVESTIGATION

## Electronic Communication

**Title:** (U//~~FOUO~~) San Francisco Request to Interview [redacted]

**Date:** 09/07/2016

CLASSIFIED BY: NSICG [redacted]
REASON: 1.4 (C)
DECLASSIFY ON: 12-31-2041
DATE: 04-18-2021

ALL INFORMATION CONTAINED HEREIN IS UNCLASSIFIED EXCEPT WHERE SHOWN OTHERWISE

**CC:** [redacted]

**From:** SAN FRANCISCO
SF-CY1
**Contact:** [redacted]

b1 -1
b3 -1
b6 -1, -4
b7C -1, -4
b7E -1, -2, -4

**Approved By:** [redacted]

**Drafted By:** [redacted]

**Case ID #:** [redacted] (U) ~~(S//NF)~~ UNSUBS;
aka Guccifer2;
(S) [redacted]
Democratic National Committee - Victim;
State Sponsored Computer Intrusion -
(S) [redacted]

**CHILD VICTIM/WITNESS IDENTITY INFORMATION**
Protect identity in compliance with 18 USC 3509.

**Synopsis:** (U//~~FOUO~~) To request Washington Field Office conduct an interview of [redacted] and obtain consent to [redacted] [redacted]

b6 -4
b7C -4
b7E -6

~~**Reason: 1.4(b)**~~
~~**Derived From: FBI NSISC-20090615**~~
~~**Declassify On: 20411231**~~

[redacted]

b7E -2, -5

**Reference:** [redacted]

(U) ~~SECRET//NOFORN~~

b6 -4
b7C -4
b7E -2

Title: (U//~~FOUO~~) San Francisco Request to Interview [redacted]
Re: [redacted] 09/07/2016

**Details:**

**(U) CASE BACKGROUND**

(U) ~~(S//NF)~~ On June 15, 2016, an article written by "Guccifer2" was posted to his personal WordPress blog. In the article, Guccifer2 implies he hacked the Democratic National Committee (DNC) servers and refutes an earlier announcement by CrowdStrike, a U.S. based cyber security company, that the DNC hack was perpetrated by two sophisticated hacker groups. In July 2016, Guccifer2 posted documents attributed to the DNC hack on his personal blog. On July 22, 2016, Wikileaks published more than 19,000 DNC emails with more than 8,000 attachments. Guccifer2 claimed responsibility for sharing the information with Wikileaks through his two Twitter accounts. On August 31, 2016, Guccifer2 released documents on his personal blog purported to be from the computer of Representative Nancy Pelosi.

**(U) CURRENT SITUATION**

[redacted]

b6 -4
b7C -4
b7D -3
b7E -2

**(U) REQUEST FOR ACTION**

(U//~~FOUO~~) San Francisco respectfully requests Washington Field Office

b6 -1
b7C -1
b7E -2

FD-302 (Rev. 5-8-10)

(U) ~~SECRET~~//~~NOFORN~~

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 09/30/2016

[redacted] date of birth [redacted] was interviewed at her residential address, [redacted] telephone numbers [redacted] (newest) and [redacted] After being advised of the identity of the interviewing Agent and the nature of the interview, [redacted] provided the following information:

b6 -4
b7C -4

[redacted]

b6 -2,- 4
b7C -2, -4

[redacted]

b6 -4
b7C -4

MANAFORT was DONALD TRUMP's presidential campaign manager who has suspected ties to Russia [redacted]

b6 -3, -4
b7C -3, -4

~~Reason: 1.4(c)~~
~~Derived From: FBI NSIC, dated 20120629~~
~~Declassify On: 20411231~~

(U) ~~SECRET~~//~~NOFORN~~

Investigation on 09/14/2016 at Washington, District Of Columbia, United States (In Person)

File # [redacted] Date drafted 09/30/2016

by [redacted]

b6 -1
b7C -1
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 05-08-10)

b6 -4
b7C -4
b7E -2

(U) ~~SECRET//NOFORN~~

(U)

Continuation of FD-302 of (~~S//NF~~) , On 09/14/2016 , Page 2 of 6

b6 -2, -3, -4
b7C -2, -3, -4

She also stated that she had read an article about 20,000 e-Mails taken, at which time she told that she had concerns, and suspected that the hackers would release the e-Mails around the time of the Democratic National Convention.

b6 -2, -4
b7C -2, -4

b6 -4
b7C -4

SETH RICH was murdered on the morning of 07/10/2016 in Washington, DC.

(U) ~~SECRET//NOFORN~~

FBI(20-cv-447)-717

b6 -4
b7C -4
b7E -2

(U) ~~SECRET~~//~~NOFORN~~

(U)

b6 -2, -4
b7C -2, -4
b7E -6

b6 -3, -4
b7C -3, -4
b7E -6

DNC Staffer Seth Conrad Rich was murdered the same day

b6 -2, -4, -5
b7C -2, -4, -5
b7E -6

b6 -2, -4
b7C -2, -4

(U) ~~SECRET~~//~~NOFORN~~

FD-1057 (Rev. 5-8-10)

SECRET//NOFORN
(U)

# FEDERAL BUREAU OF INVESTIGATION

## Electronic Communication

**Title:** (U//FOUO) Lead Covered reference [redacted] [redacted]

**Date:** 01/20/2017

ALL INFORMATION CONTAINED HEREIN IS UNCLASSIFIED EXCEPT WHERE SHOWN OTHERWISE

**CC:** [redacted]

CLASSIFIED BY: NSICG [redacted]
REASON: 1.4 (C)
DECLASSIFY ON: 12-31-2042
DATE: 04-18-2021

**From:** WASHINGTON FIELD
WF-CY3
**Contact:** [redacted]

b1 -1
b3 -1
b6 -1, -2
b7C -1, -2
b7E -1, -2, -4

**Approved By:** SSA [redacted]

**Drafted By:** [redacted]

**Case ID #:** [redacted] (U) (S//NF) UNSUBS;
aka Guccifer2; (S)
[redacted]
Democratic National Committee - Victim;
State Sponsored Computer Intrusion -
[redacted] (S)

**Synopsis:** (U//FOUO) Lead Covered reference [redacted]

**Reason: 1.4(c)**
**Derived From: FBI NSIC,**
**dated 20120629**
**Declassify On: 20421231**

[redacted]

b7E -5, -6

**Enclosure(s):** Enclosed are the following items:
[redacted]

**Details:**

On 9/14/2016, [redacted] date of birth [redacted] was interviewed by WFO Agents at her residential address, [redacted]

b6 -4
b7C -4

SECRET//NOFORN (U)

Title: (U/~~/FOUO)~~ Lead Covered reference [redacted]
Re: [redacted] 01/20/2017

b6 -2,-3, - 4
b7C -2, -3, -4
b7E -2

[redacted] telephone number [redacted] See [redacted]

Subsequent to the interview Cyber Division provided [redacted]

b6 -2, -4
b7C -2, -4
b7E -6

On December 14, 2016, SA [redacted] made telephonic contact with [redacted] at which time she stated that she had no further information [redacted]

b6 -1,- 2, -4
b7C -1, -2,- 4
b7E -6

[redacted]

b6 -2,- 4
b7C -2,- 4
b7E -6

b7E -2

FD-1057 (Rev. 5-8-10)

(U) ~~SECRET//NOFORN~~

# FEDERAL BUREAU OF INVESTIGATION

## Electronic Communication

(S)

**Title:** ~~(U)~~ [redacted] Prosecutorial Strategy Meeting 08/29/2017

**Date:** 09/08/2017

CLASSIFIED BY: NSICG [redacted]
REASON: 1.4 (C)
DECLASSIFY ON: 12-31-2042
DATE: 04-18-2021

b1 -1
b3 -1
b6 -1
b7C -1
b7E -1

**CC:** SF-CY1

ALL INFORMATION CONTAINED HEREIN IS UNCLASSIFIED EXCEPT WHERE SHOWN OTHERWISE

**From:** SAN FRANCISCO
SF-CY1
**Contact:** [redacted]

**Approved By:** ASAC [redacted]

**Drafted By:** [redacted]

b1 -1
b3 -1
b7E -2,- 4, -8

**Case ID #:** [redacted] (U) ~~(S//NF)~~ UNSUBS;
aka Guccifer2; (S)
[redacted]
Democratic National Committee - Victim;
State Sponsored Computer Intrusion -
[redacted] (S)
Sensitive Investigative Matter
[redacted] (S)
COMPUTER INTRUSION;
[redacted]
[redacted] (U) ~~(S//NF)~~ CyberCaliphate;
[redacted] (S)
State Sponsored Computer Intrusion -
[redacted]
[redacted] (U) ~~(S//NF)~~ [redacted] (S)
CYBER THREAT TEAM;
TACTICAL THREAT OFFICE CONTROL FILE;
COMPUTER INTRUSION - [redacted]

~~LAW ENFORCEMENT SENSITIVE~~

This information is the property of the FBI and may be distributed to state, tribal, or local government law enforcement officials with a need-to-know. Further distribution without FBI authorization is prohibited. Precautions should be taken to ensure this information is stored and/or destroyed in a manner that precludes unauthorized access.

~~SECRET//NOFORN~~
(U)

b1 -1
b3 -1
b7E -2, -4





(S) Title: (U) Prosecutorial Strategy Meeting 08/29/2017
Re: 09/08/2017



**PRIVILEGED ATTORNEY/CLIENT COMMUNICATIONS OR ATTORNEY WORK PRODUCT**
Do not disseminate outside the FBI without the permission of the Office of the General Counsel.

(U) **Synopsis:** (S//NF) To document San Francisco CY-1 participation in the (S) prosecutorial strategy meeting, which was held at FBI Philadelphia on 08/29/2017.

b1 -1
b3 -1
b7E -4

**Reason: 1.4(b)**
**Derived From: FBI NSISC-20090615**
**Declassify On: 20401231**

b7E -5

**Details:**



(S) **(U//FOUO) BACKGROUND**

(S)
b1 -1
b3 -1
b7E -4, -8

(U) **(S//NF) CYBERCALIPHATE BACKGROUND**

(U) (S//REL TO USA, FVEY) On 12 January 2015, a group calling itself the "CyberCaliphate" compromised the Twitter and Gmail accounts belonging to the Department of Defense Central Command (CENTCOM) Office of Public Affairs. The group defaced CENTCOM's social media pages by displaying pro-ISIL sentiment, and posted what they claimed to be

b1 -1
b3 -1
b7E -2, -4

SECRET//NOFORN (U)

(S)

Title: (U) Prosecutorial Strategy Meeting 08/29/2017
Re: 09/08/2017

OST (PG), SSA (ECOU), SSA (ECOU), AUSA (EDPA), AUSA (WDPA), TA (DOJ/NSD), and TA DOJ/NSD). Two representatives from CD were also in attendance.

b6 -1,- 5
b7C -1, -5

(U) The following items were discussed during the meeting:

b5 -1
b7E -8

(U) Actions Items

b5 -1
b7E -8

b5 -1
b6 -2
b7C -2
b7E -8, -9

(U)

(S)
b1 -1
b3 -1
b5 -1
b7E -7, -8

SECRET//NOFORN (U)

b3 -1
b7E -2

FD-302 (Rev. 5-8-10)

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 11/30/2018

was interviewed at her residence, Virginia After being advised of the identity of the interviewing agents and the nature of the interview, provided the following information:

b6 -3
b7C -3

was a neighbor of lived down from

b6 -3
b7C -3

met before when moved into the neighborhood. initially hit on but later believed was just being a charming guy. Soon after meeting was hired to help with

b6 -2, -3
b7C -2, -3

became friends. Every once in a while, asked for assistance with odd jobs since was more technically skilled than did not pay for this assistance.

b6 -3
b7C -3

One of the jobs asked to assist with was only able to describe the employee as an African American woman.

b6 -3
b7C -3

also asked to In order to complete these odd jobs, gave access to his gmail account. had email address and password written on an envelope. was protective of

b6 -3
b7C -3

In the fall of 2017, asked to ghost write a book for him regarding the murder of Seth Rich. was unsure if the request to write the book came before or after the requests to assist with odd jobs. agreed to write the book under the conditions it only talked nicely about Rich and was against Donald Trump. set up the email account, to communicate with about the book.

b6 -3
b7C -3

Investigation on 11/26/2018 at Virginia, United States (In Person)

File # Date drafted 11/27/2018

by

b3 -1
b6 -1, -3
b7C -1, -3
b7E -2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.


NEW KNOWLEDGE

# The Tactics & Tropes of the Internet Research Agency

ANALYSIS BY

Renee DiResta, Dr. Kris Shaffer, Becky Ruppel, David Sullivan, Robert Matney, Ryan Fox (New Knowledge)

Dr. Jonathan Albright (Tow Center for Digital Journalism, Columbia University)

Ben Johnson (Canfield Research, LLC)

## Tactic: Amplify Conspiratorial Narratives

The Internet Research Agency amplified a myriad of conspiracy theories on all platforms they prioritized. The greatest breadth and repetition of these narratives was on Twitter. Thousands of conspiratorial tweets were predominantly advanced or amplified by the right-wing personas, and included topics such as pseudoscience conspiracies (vaccines, chemtrails), paranormal activity and aliens, the "globalist" agenda (explicitly anti-Semitic angles were present), and domestic political conspiracies such as QAnon, Pizzagate, and the murder of Seth Rich.

With the exception of one anti-vaccine Instagram post, Facebook and Instagram had no pseudoscience conspiracy content, no QAnon, and no Pizzagate. There are, however, dozens of posts blaming George Soros for a myriad of complaints across dozens of the Right-targeted Instagram accounts and Facebook Pages; these do not display the degree of explicitly anti-Semitic vitriol or harassment that appeared in the tweets. Domestic political conspiracies were present on Facebook and Instagram – the Seth Rich murder conspiracy was presented to both Right and Left-leaning audiences. On the Left, it was accompanied by an appeal to trust Julian Assange.

**RSMSC**

**From:** RSMSC
**Sent:** Thursday, August 30, 2018 12:03 PM
**To:** [redacted]
**Subject:** FW: Pedophile Bob Mueller sent Seth Rich hitman after manafort lawyer

b6 -1
b7C -1

---

**From:** [redacted]
**Sent:** Thursday, August 30, 2018 12:02:01 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** RSMSC; Special Counsel; AAW; itsc@usdoj.gov
**Subject:** Pedophile Bob Mueller sent Seth Rich hitman after manafort lawyer

b6 -2
b7C -2

Pedophile Mueller sent the same hitman he used on Seth Rich to help his friend Hillary....after [redacted]

b6 -2
b7C -2

From:
Date: Sat Aug 18 2018 15:03:29 EDT
To: RSMSC </o=exchangelabs/ou=exchange administrative group (fydibohf23spdlt)/cn=recipients/cn=e0d23d43c1d3444cbd37b629ade440ea-mueller, ro>; Special Counsel </o=exchangelabs/ou=exchange administrative group (fydibohf23spdlt)/cn=recipients/cn=5514e5f7e4f34ce79785077db1f8f0ed-special cou>; AAW </o=exchangelabs/ou=exchange administrative group (fydibohf23spdlt)/cn=recipients/cn=af92804ba22a4323b85fc4447df33826-aaw>
Cc: Blank
Bcc: Blank
Subject: Muellers crooked lawyers investigating judge and jury
Attachments:

and their extended families.....mueller who arranged the assassination of seth rich thru his mafia friends.... is a psychopath capable of any crime

**RSMSC**

**From:** RSMSC
**Sent:** Wednesday, July 25, 2018 10:41 AM
**To:** [redacted]
**Subject:** FW: Muller had Seth Rich murdered

b6 -1
b7C -1

---

**From:** [redacted]
**Sent:** Wednesday, July 25, 2018 10:40:26 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** RSMSC
**Subject:** Muller had Seth Rich murdered

b6 -2
b7C -2

.... he had the means and the motive and intel

               

b6 -2, -5
b7C -2, -5

**From:**
**Sent:** Monday, July 23, 2018 11:10 AM
**To:** RKD; AAW; Special Counsel; ZNA; EBP; SpecialCounselPress; RSMSC
**Subject:** We think mueller planned the execution of

Seth Rich ..... mueller has access to plenty of hit men who owe him....and ready cash

And that old bean counter muller is a rabid trump hater.... and one of the most despicable human beings

**RSMSC**

**From:** RSMSC
**Sent:** Monday, July 23, 2018 10:23 AM
**To:** [redacted]
**Subject:** FW: We think mueller arranged the hit on Seth Rich

b6 -1
b7C -1

---

**From:** [redacted]
**Sent:** Monday, July 23, 2018 10:22:29 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** RKD; AAW; Special Counsel; ZNA; EBP; SpecialCounselPress; [redacted] RSMSC
**Subject:** We think mueller arranged the hit on Seth Rich

b6 -2, -5
b7C -2, -5

....who knows hitmen better than Robert Mueller

**EBP**

---

**From:** EBP
**Sent:** Monday, July 23, 2018 9:14 AM
**To:** [redacted]
**Subject:** FW: Ha ha Mueller arranged the murder of Seth Rich?

b6 -1
b7C -1

---

**From:** [redacted]
**Sent:** Monday, July 23, 2018 9:13:26 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** RKD; AAW; Special Counsel; ZNA; EBP; SpecialCounselPress; [redacted] RSMSC
**Subject:** Ha ha Mueller arranged the murder of Seth Rich?

b6 -2, -5
b7C -2 ,-5

[redacted]

b6 -2, -5
b7C -2, -5

**From:**
**Sent:**          Sunday, July 22, 2018 10:11 AM
**To:**            RKD; AAW; Special Counsel; ZNA; EBP; SpecialCounselPress;
                   RSMSC
**Subject:**       Crooked Mueller has name of hit man

Clintons hired to murder Seth Rich

Crooked mueller says he would have done same thing.....hired a hit man

b6 -1
b7C -1

**From:**
**Sent:** Tuesday, June 26, 2018 10:24 AM
**To:** LRA
**Cc:** JSR
**Subject:** Seth Rich work laptop

b6 -1, -4
b7C -1, -4
b7D -3
b7E -6

Rush,
In May 2017 with Perkins Coie provided San Francisco FBI with a copy of Seth Rich's DNC laptop. The FBI submission document says the laptop was given to the FBI voluntarily so I am assuming that there is no Search Warrant for the laptop.

San Francisco provided for us at SCO.

Thank you,



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

June 24, 2021

MR. BRIAN HUDDLESTON
C/O MR. TY O. CLEVENGER
212 S. OXFORD STREET #7D
BROOKLYN, NY 11217

FOIPA Request No.: 1465531-000
Subject: Seth Rich (January 1, 2016 to present)

FOIPA Request No. 1465971-000
Subject: Crossfire Hurricane Code Names

*Brian Huddleston v. Federal Bureau of Investigation, et al*
Civil Action No.: 4:20-cv-00447

Dear Mr. Huddleston:

The enclosed documents were reviewed under the Freedom of Information Act (FOIA), Title 5, United States Code, Section 552. Below you will find check boxes under the appropriate statute headings which indicate the types of exemptions asserted to protect information which is exempt from disclosure. The appropriate exemptions are noted on the enclosed pages next to redacted information. In addition, a deleted page information sheet was inserted to indicate where pages were withheld entirely and identify which exemptions were applied. The checked exemption boxes used to withhold information are further explained in the enclosed Explanation of Exemptions.

| **Section 552** | | **Section 552a** |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☑ (b)(3) | ☑ (b)(7)(C) | ☐ (k)(1) |
| 50 USC § 3024(i)(1) | ☐ (b)(7)(D) | ☐ (k)(2) |
| | ☑ (b)(7)(E) | ☐ (k)(3) |
| | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) | | ☐ (k)(7) |

489 pages were reviewed and 5 pages are being released.

Please see the paragraphs below for relevant information specific to your request as well as the enclosed FBI FOIPA Addendum for standard responses applicable to all requests.

☐ Document(s) were located which originated with, or contained information concerning, other Government Agency (ies) [OGA].

☐ This information has been referred to the OGA(s) for review and direct response to you.
☐ We are consulting with another agency. The FBI will correspond with you regarding this information when the consultation is completed.

Please refer to the enclosed FBI FOIPA Addendum for additional standard responses applicable to your request.   **"Part 1"** of the Addendum includes standard responses that apply to all requests.   **"Part 2"** includes additional standard responses that apply to all requests for records about yourself or any third party individuals. **"Part 3"** includes general information about FBI records that you may find useful.   Also enclosed is our Explanation of Exemptions.

Although your request is in litigation, we are required by law to provide you the following information:

If you are not satisfied with the Federal Bureau of Investigation's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal.   Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of my response to your request.   If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS).   The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.   Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov.   If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

Please direct any further inquiries about this case to the Attorney representing the Government in this matter. Please use the FOIPA Request Number and/or Civil Action Number in all correspondence or inquiries concerning your request.

☑   See additional information which follows.

Sincerely,

Michael G. Seidel
Section Chief
Record/Information
   Dissemination Section
Information Management Division

Enclosure(s)

In response to your Freedom of Information Act (FOIA) request and subsequent civil action case pending in the U.S. District Court for the Eastern District of Texas, enclosed is one (1) compact disc representing the FBI's third interim release of information concerning records Bates Stamped FBI (20-cv-00447)-1077 through FBI (20-cv-00447)-1565.

FBI (20-cv-00447)-1565 represents one (1) digital video disc (DVD) wherein all of the contents thereof is being withheld in its entirety pursuant to FOIA Exemptions (b)(6), (b)(7)(C) and (b)(7)(E).

These pages were located in cross-reference files as described below. No "main" investigative files pertaining to the subject of your request were located.

Cross-references are defined as mentions of the subject of your request in files to other individuals, organizations, events, or activities.   In processing the cross-references, the pages considered for possible release included only those pages which mention the subject of your request and any additional pages showing the context in which the subject of your request was mentioned.   The cross-references were processed pursuant to the provisions of the FOIA and are being released to you in redacted form.

Of the aforementioned Bates-numbered pages, FBI (20-cv-00447)-1562 thru FBI (20-cv-00447)-1564 are responsive to litigated FOIPA Request No. 1465971-000, while the remaining material is responsive to litigated FOIPA Request No. 1465531-000.

Duplicate copies of the same document were not processed.

**FBI FOIPA Addendum**

**As referenced in our letter responding to your Freedom of Information/Privacy Acts (FOIPA) request, the FBI FOIPA Addendum provides information applicable to your request. Part 1 of the Addendum includes standard responses that apply to all requests. Part 2 includes standard responses that apply to requests for records about individuals to the extent your request seeks the listed information. Part 3 includes general information about FBI records, searches, and programs.**

**Part 1: The standard responses below apply to all requests:**

(i) **5 U.S.C. § 552(c).** Congress excluded three categories of law enforcement and national security records from the requirements of the FOIPA [5 U.S.C. § 552(c)]. FBI responses are limited to those records subject to the requirements of the FOIPA. Additional information about the FBI and the FOIPA can be found on the www.fbi.gov/foia website.

(ii) **Intelligence Records**. To the extent your request seeks records of intelligence sources, methods, or activities, the FBI can neither confirm nor deny the existence of records pursuant to FOIA exemptions (b)(1), (b)(3), and as applicable to requests for records about individuals, PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(1), (b)(3), and (j)(2)]. The mere acknowledgment of the existence or nonexistence of such records is itself a classified fact protected by FOIA exemption (b)(1) and/or would reveal intelligence sources, methods, or activities protected by exemption (b)(3) [50 USC § 3024(i)(1)]. This is a standard response and should not be read to indicate that any such records do or do not exist.

**Part 2: The standard responses below apply to all requests for records on individuals:**

(i) **Requests for Records about any Individual—Watch Lists.** The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)]. This is a standard response and should not be read to indicate that watch list records do or do not exist.

(ii) **Requests for Records about any Individual—Witness Security Program Records.** The FBI can neither confirm nor deny the existence of records which could identify any participant in the Witness Security Program pursuant to FOIA exemption (b)(3) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(3), 18 U.S.C. 3521, and (j)(2)]. This is a standard response and should not be read to indicate that such records do or do not exist.

(iii) **Requests for Records for Incarcerated Individuals.** The FBI can neither confirm nor deny the existence of records which could reasonably be expected to endanger the life or physical safety of any incarcerated individual pursuant to FOIA exemptions (b)(7)(E), (b)(7)(F), and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (b)(7)(F), and (j)(2)]. This is a standard response and should not be read to indicate that such records do or do not exist.

**Part 3: General Information:**

(i) **Record Searches.** The Record/Information Dissemination Section (RIDS) searches for reasonably described records by searching systems or locations where responsive records would reasonably be found. A standard search normally consists of a search for main files in the Central Records System (CRS), an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled by the FBI per its law enforcement, intelligence, and administrative functions. The CRS spans the entire FBI organization, comprising records of FBI Headquarters, FBI Field Offices, and FBI Legal Attaché Offices (Legats) worldwide; Electronic Surveillance (ELSUR) records are included in the CRS. Unless specifically requested, a standard search does not include references, administrative records of previous FOIPA requests, or civil litigation files. For additional information about our record searches, visit www.fbi.gov/services/information-management/foipa/requesting-fbi-records.

(ii) **FBI Records.** Founded in 1908, the FBI carries out a dual law enforcement and national security mission. As part of this dual mission, the FBI creates and maintains records on various subjects; however, the FBI does not maintain records on every person, subject, or entity.

(iii) **Requests for Criminal History Records or Rap Sheets.** The Criminal Justice Information Services (CJIS) Division provides Identity History Summary Checks – often referred to as a criminal history record or rap sheet. These criminal history records are not the same as material in an investigative "FBI file." An Identity History Summary Check is a listing of information taken from fingerprint cards and documents submitted to the FBI in connection with arrests, federal employment, naturalization, or military service. For a fee, individuals can request a copy of their Identity History Summary Check. Forms and directions can be accessed at www.fbi.gov/about-us/cjis/identity-history-summary-checks. Additionally, requests can be submitted electronically at www.edo.cjis.gov. For additional information, please contact CJIS directly at (304) 625-5590.

(iv) **National Name Check Program (NNCP).** The mission of NNCP is to analyze and report information in response to name check requests received from federal agencies, for the purpose of protecting the United States from foreign and domestic threats to national security. Please be advised that this is a service provided to other federal agencies. Private Citizens cannot request a name check.

## EXPLANATION OF EXEMPTIONS

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1) (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2) related solely to the internal personnel rules and practices of an agency;

(b)(3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9) geological and geophysical information and data, including maps, concerning wells.

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5) information compiled in reasonable anticipation of a civil action proceeding;

(j)(2) material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1) information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2) investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3) material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4) required by statute to be maintained and used solely as statistical records;

(k)(5) investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6) testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7) material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

**FEDERAL BUREAU OF INVESTIGATION**

**FOI/PA**
**DELETED PAGE INFORMATION SHEET**
**Civil Action# 4:20-cv-00447**
**Total Withheld Page(s) = 483**
**Total Withheld CD(s) = 1**

| **Bates Page Reference** **FBI (20-cv-00447)-** | **Reason for Withholding** (i.e., exemptions with coded rationale, duplicate, sealed by order of court, etc.) |
|---|---|
| 1077-1106 | b6-2,-3; b7C-2,-3; b7E-6; (30 pages) |
| 1107 | b6-2,-3; b7C-2,-3; b7E-6; (1 page) |
| 1108 | b6-2; b7C-2; b7E-6; (1 page) |
| 1111 | b6-2; b7C-2; (1 page) |
| 1112-1114 | b6-2,-3; b7C-2,-3; b7E-6; (3 pages) |
| 1115-1202 | b6-2,-3; b7C-2,-3; b7E-6; (88 pages) |
| 1203-1303 | b6-2,-3; b7C-2,-3; b7E-6; (101 pages) |
| 1304-1305 | b6-2,-3; b7C-2,-3; b7E-6; (2 pages) |
| 1306-1336 | b6-2,-3; b7C-2,-3; b7E-6; (31 pages) |
| 1337-1439 | b6-2,-3; b7C-2,-3; b7E-6; (103 pages) |
| 1440-1484 | b6-2,-3; b7C-2,-3; b7E-6; (45 pages) |
| 1485-1559 | Duplicate to 206-273 (75 pages) |
| 1560 | Duplicate to 783 (1 page) |
| 1563 | b3-1; b6-3; b7C-3; b7E-2,-4,-8,-9; (1 page) |
| 1565 | b6-2,-3; b7C-2,-3; b7E-6; (1 cd) |

```
XXXXXXXXXXXXXXXXXXXXXXX
X  Deleted Page(s)    X
X No Duplication Fee  X
X  For this Page      X
XXXXXXXXXXXXXXXXXXXXXXX
```

(OIG) 201700919 2 b6 -5 b7C -5

From: (OIG)
Sent: Wednesday, May 31, 2017 9:20 AM
To: OIG.ISB.Complaint Intake.b, OIG.ISB.Complaint (OIG)
Subject: FW: FBI FW: [Hotline Submission] - Violation of Civil Rights or Civil Liberties

-----Original Message-----
From: General, Inspector (OIG)
Sent: Friday, May 26, 2017 11:19 AM
To: OPS2, INV (OIG)
Subject: FBI FW: [Hotline Submission] - Violation of Civil Rights or Civil Liberties

-----Original Message-----
From:
Sent: Wednesday, May 17, 2017 10:03 PM
To: General, Inspector (OIG) <igeneral@OIG.USDOJ.GOV>
Subject: [Hotline Submission] - Violation of Civil Rights or Civil Liberties

b6 -2
b7C -2

YOUR INFORMATION:

b6 -2
b7C -2

INFORMATION ABOUT THE PERSON YOU ARE COMPLAINING ABOUT:

Name: James Comey - Robert Mueller
Job Title: Former Director - Special Counsel Address Type: Business Street Address: 950 Pennsylvania Avenue
City: Washington D.C
State: District of Columbia
Zip Code: 20530
Country: USA
Phone: 202 514 3435
Fax:
Email:

FBI(20-cv-447)-1109

INFORMATION ABOUT THE COMPLAINT:

City Incident Occurred: Washington, DC
State: District of Columbia
Zip Code: 20530
Country: USA
Date and Time Incident Occurred: Started in 2015 Department of Justice Component:
Occurred at a Prison or Holding Facility?:

OTHER GOVERNMENT ENTITIES NOTIFIED:

NONE - Please share this document with Assistant Secretary Rosenstein and with Special Counsel Robert Mueller.

DESCRIPTION:

b6 -2
b7C -2

b6 -2, -4
b7C -2, -4

b6 -4
b7C -4

3h3 hours ago

3h3 hours ago

b6 -2, -4
b7C -2, -4

43m43 minutes ago

Replying to

b6 -1
b7C -1
b7E -2, -9

FD-1057 (Rev. 5-8-10)

(U) ~~SECRET//ORCON/NOFORN~~

# FEDERAL BUREAU OF INVESTIGATION

**Electronic Communication**

(U) **Title:** ~~(S//NF)~~ Request for Assistance - Chicago Squad [redacted] **Date:** 10/14/2016

**From:** CHICAGO
CG-CY-1
**Contact:** [redacted]

b3 -1
b6 -1
b7C -1
b7E -1, -2, -4

**Approved By:** [redacted]

**Drafted By:** [redacted]

**Case ID #:** [redacted] (U) ~~(S//OC/NF)~~ [redacted]
FOREIGN AGENTS REGISTRATION ACT - RUSSIA;
SENSITIVE INVESTIGATIVE MATTER

b7E -4, -8

(U) **Synopsis:** ~~(S//NF)~~ Sets lead to Chicago squad [redacted] [redacted] to identify travel for [redacted]

~~**Reason: 1.4(b)**~~
~~**Derived From: FBI NSISC-20090615**~~
~~**Declassify On: 20411231**~~

**Details:**

b7E -4,-8

(U) ~~(S//NF)~~ FBI Chicago and FBI New York have identified that the above captioned subject, [redacted] may be traveling into the Chicago AOR during the dates of [redacted]

b7E -4, -8, -9

(U) ~~(S//NF)~~ Chicago squad [redacted] is respectfully requested to query all available sources in attempt to find arrival information for [redacted] [redacted]

b7E -4, -8

(U) ~~(S//NF)~~ Given the departure information from Chicago (listed below) on [redacted] it is likely that [redacted] will arrive in Chicago prior to that date.

(U) ~~SECRET//ORCON/NOFORN~~

b6 -1
b7C -1
b7E -2

FD-1057 (Rev. 5-8-10)

(U) ~~SECRET~~//~~ORCON/NOFORN~~

# FEDERAL BUREAU OF INVESTIGATION

**Electronic Communication**

**Title:** (U//~~FOUO~~) Change in case status to Pending Inactive

**Date:** 02/15/2019

**From:** SCO
SCO Team
**Contact:** [redacted]

b6 -1
b7C -1
b7E -1, -2, -4

**Approved By:** [redacted]

**Drafted By:** [redacted]

(U) **Case ID #:** [redacted] (~~S~~//~~OC/NF~~) [redacted]
FOREIGN AGENTS REGISTRATION ACT - RUSSIA;
SENSITIVE INVESTIGATIVE MATTER

**Synopsis:** (U//~~FOUO~~) To document the change of status of an FBI case occurring at the direction of the Special Counsel from Pending to Pending Inactive.

~~**Reason: 1.4(b)**~~
~~**Derived From: FBI NSIC CG**~~
~~**Declassify On: 20441231**~~

**Details:**

(U//~~FOUO~~) The purpose of this communication is to place captioned matter into "pending inactive" status. As described more fully below, investigative action is complete in the matter and the case will only remain open pending sentencing of the subject.

**Brief Background**

(U) (~~S~~//~~OC~~//~~NF~~) [redacted] Michael Flynn [redacted] was wittingly or unwittingly involved in activity on behalf of the Russian Federation which may have constituted a federal crime or threat to the national security. The

b7E -4, -5

(U) ~~SECRET~~//~~ORCON/NOFORN~~



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

July 23, 2021

MR. BRIAN HUDDLESTON
C/O MR. TY O. CLEVENGER
212 S. OXFORD STREET #7D
BROOKLYN, NY 11217

FOIPA Request No.: 1465531-000
Subject: Seth Rich (January 1, 2016 to present)

FOIPA Request No. 1465971-000
Subject: Crossfire Hurricane Code Names

*Brian Huddleston v. Federal Bureau of Investigation, et al*
Civil Action No.: 4:20-cv-00447

Dear Mr. Huddleston:

The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a. Below you will find check boxes under the appropriate statute headings which indicate the types of exemptions asserted to protect information which is exempt from disclosure. The appropriate exemptions are noted on the enclosed pages next to redacted information. In addition, a deleted page information sheet was inserted to indicate where pages were withheld entirely and identify which exemptions were applied. The checked exemption boxes used to withhold information are further explained in the enclosed Explanation of Exemptions.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) | ☐ (k)(1) |
| | ☐ (b)(7)(D) | ☐ (k)(2) |
| | ☑ (b)(7)(E) | ☐ (k)(3) |
| | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☑ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) | | ☐ (k)(7) |

31 pages were reviewed and 2 pages are being released.

Please see the paragraphs below for relevant information specific to your request as well as the enclosed FBI FOIPA Addendum for standard responses applicable to all requests.

☐ Document(s) were located which originated with, or contained information concerning, other Government Agency (ies) [OGA].

☐ This information has been referred to the OGA(s) for review and direct response to you.
☐ We are consulting with another agency. The FBI will correspond with you regarding this information when the consultation is completed.

Please refer to the enclosed FBI FOIPA Addendum for additional standard responses applicable to your request. **"Part 1"** of the Addendum includes standard responses that apply to all requests. **"Part 2"** includes additional standard responses that apply to all requests for records about yourself or any third party individuals. **"Part 3"** includes general information about FBI records that you may find useful. Also enclosed is our Explanation of Exemptions.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request Number listed above has been assigned to your request. Please use this number in all correspondence concerning your request.

If you are not satisfied with the Federal Bureau of Investigation's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS). The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769. Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov. If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

☑ See additional information which follows.

Sincerely,

Michael G. Seidel
Section Chief
Record/Information
Dissemination Section
Information Management Division

Enclosure(s)

In response to your Freedom of Information Act (FOIA) request and subsequent civil action case pending in the U.S. District Court for the Eastern District of Texas, enclosed is one (1) compact disc representing the FBI's 4th and final release of information concerning records Bates Stamped FBI (20-cv-00447)-1566 through FBI (20-cv-00447)-1596.

These pages were located in cross-reference files as described below. No "main" investigative files pertaining to the subject of your request were located.

Cross-references are defined as mentions of the subject of your request in files to other individuals, organizations, events, or activities. In processing the cross-references, the pages considered for possible release included only those pages which mention the subject of your request and any additional pages showing the context in which the subject of your request was mentioned. The cross-references were processed pursuant to the provisions of the FOIA and are being released to you in redacted form.

For your information, sealed court records are not eligible for release under the Freedom of Information Act. Material responsive to your request has been withheld and marked "OTHER-Sealed" pursuant to appropriate orders issued by federal district courts.

## FBI FOIPA Addendum

**As referenced in our letter responding to your Freedom of Information/Privacy Acts (FOIPA) request, the FBI FOIPA Addendum provides information applicable to your request. Part 1 of the Addendum includes standard responses that apply to all requests. Part 2 includes standard responses that apply to requests for records about individuals to the extent your request seeks the listed information. Part 3 includes general information about FBI records, searches, and programs.**

**Part 1: The standard responses below apply to all requests:**

(i) **5 U.S.C. § 552(c).** Congress excluded three categories of law enforcement and national security records from the requirements of the FOIPA [5 U.S.C. § 552(c)]. FBI responses are limited to those records subject to the requirements of the FOIPA. Additional information about the FBI and the FOIPA can be found on the www.fbi.gov/foia website.

(ii) **Intelligence Records**. To the extent your request seeks records of intelligence sources, methods, or activities, the FBI can neither confirm nor deny the existence of records pursuant to FOIA exemptions (b)(1), (b)(3), and as applicable to requests for records about individuals, PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(1), (b)(3), and (j)(2)]. The mere acknowledgment of the existence or nonexistence of such records is itself a classified fact protected by FOIA exemption (b)(1) and/or would reveal intelligence sources, methods, or activities protected by exemption (b)(3) [50 USC § 3024(i)(1)]. This is a standard response and should not be read to indicate that any such records do or do not exist.

**Part 2: The standard responses below apply to all requests for records on individuals:**

(i) **Requests for Records about any Individual—Watch Lists.** The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)]. This is a standard response and should not be read to indicate that watch list records do or do not exist.

(ii) **Requests for Records about any Individual—Witness Security Program Records.** The FBI can neither confirm nor deny the existence of records which could identify any participant in the Witness Security Program pursuant to FOIA exemption (b)(3) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(3), 18 U.S.C. 3521, and (j)(2)]. This is a standard response and should not be read to indicate that such records do or do not exist.

(iii) **Requests for Records for Incarcerated Individuals.** The FBI can neither confirm nor deny the existence of records which could reasonably be expected to endanger the life or physical safety of any incarcerated individual pursuant to FOIA exemptions (b)(7)(E), (b)(7)(F), and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (b)(7)(F), and (j)(2)]. This is a standard response and should not be read to indicate that such records do or do not exist.

**Part 3: General Information:**

(i) **Record Searches.** The Record/Information Dissemination Section (RIDS) searches for reasonably described records by searching systems or locations where responsive records would reasonably be found. A standard search normally consists of a search for main files in the Central Records System (CRS), an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled by the FBI per its law enforcement, intelligence, and administrative functions. The CRS spans the entire FBI organization, comprising records of FBI Headquarters, FBI Field Offices, and FBI Legal Attaché Offices (Legats) worldwide; Electronic Surveillance (ELSUR) records are included in the CRS. Unless specifically requested, a standard search does not include references, administrative records of previous FOIPA requests, or civil litigation files. For additional information about our record searches, visit www.fbi.gov/services/information-management/foipa/requesting-fbi-records.

(ii) **FBI Records.** Founded in 1908, the FBI carries out a dual law enforcement and national security mission. As part of this dual mission, the FBI creates and maintains records on various subjects; however, the FBI does not maintain records on every person, subject, or entity.

(iii) **Requests for Criminal History Records or Rap Sheets.** The Criminal Justice Information Services (CJIS) Division provides Identity History Summary Checks – often referred to as a criminal history record or rap sheet. These criminal history records are not the same as material in an investigative "FBI file." An Identity History Summary Check is a listing of information taken from fingerprint cards and documents submitted to the FBI in connection with arrests, federal employment, naturalization, or military service. For a fee, individuals can request a copy of their Identity History Summary Check. Forms and directions can be accessed at www.fbi.gov/about-us/cjis/identity-history-summary-checks. Additionally, requests can be submitted electronically at www.edo.cjis.gov. For additional information, please contact CJIS directly at (304) 625-5590.

(iv) **National Name Check Program (NNCP).** The mission of NNCP is to analyze and report information in response to name check requests received from federal agencies, for the purpose of protecting the United States from foreign and domestic threats to national security. Please be advised that this is a service provided to other federal agencies. Private Citizens cannot request a name check.

**EXPLANATION OF EXEMPTIONS**

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1) (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2) related solely to the internal personnel rules and practices of an agency;

(b)(3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9) geological and geophysical information and data, including maps, concerning wells.

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5) information compiled in reasonable anticipation of a civil action proceeding;

(j)(2) material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1) information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2) investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3) material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4) required by statute to be maintained and used solely as statistical records;

(k)(5) investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6) testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7) material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

**FEDERAL BUREAU OF INVESTIGATION**

**FOI/PA**
**DELETED PAGE INFORMATION SHEET**
**Civil Action# 4:20-cv-00447**
**Total Withheld Page(s) = 29**

| Bates Page Reference FBI (20-cv-00447)- | Reason for Withholding (i.e., exemptions with coded rationale, duplicate, sealed by order of court, etc.) |
|---|---|
| 1567 | b6-1; b7C-1; b7E-6; Other-Sealed; (1 page) |
| 1568-1569 | b7E-6; Other-Sealed; (2 pages) |
| 1570 | b6-1; b7C-1; b7E-6; Other-Sealed; (1 page) |
| 1571 | b6-5; b7C-5; Other-Sealed; (1 page) |
| 1572-1575 | Other-Sealed; (4 pages) |
| 1576 | b6-1; b7C-1; Other-Sealed; (1 page) |
| 1577 | Other-Sealed; (1 page) |
| 1578-1593 | b6-2,-3; b7C-2,-3; b7E-1,-6; Other-Sealed; (16 pages) |
| 1595-1596 | b5-1; b6-2,-4; b7C-2,-4; (2 pages) |

XXXXXXXXXXXXXXXXXXXXXXX
X Deleted Page(s) X
X No Duplication Fee X
X For this Page X
XXXXXXXXXXXXXXXXXXXXXXX

b6 -1
b7C -1
b7E -2,-6
OTHER SEALED

FD-340 (Rev. 4-11-03)

**File Number** ______

**Field Office Acquiring Evidence** SF

**Serial # of Originating Document** ______

**Date Received** 9/21/16

**From** ______
(Name of Contributor/Interviewee)

(Address)

(City and State)

**By** SA ______

To Be Returned ☐ Yes ☒ No

Receipt Given ☐ Yes ☒ No

Grand Jury Material - Disseminate Only Pursuant to Rule 6 (e) Federal Rules of Criminal Procedure
☐ Yes ☒ No

Federal Taxpayer Information (FTI)
☐ Yes ☒ No

Title: ______

Reference: 302 re SW response
(Communication Enclosing Material)

**Description:** ☐ Original notes re interview of

b6 -1, -4
b7C -1, -4
b7E -2

FD-340 (Rev. 4-11-03)

**File Number**

**Field Office Acquiring Evidence** Las Vegas

**Serial # of Originating Document**

**Date Received** 4/12/2017

**From**
(Name of Contributor/Interviewee)

(Address)

(City and State)

**By**

To Be Returned ☐ Yes ☑ No

Receipt Given ☐ Yes ☑ No

Grand Jury Material - Disseminate Only Pursuant to Rule 6 (e) Federal Rules of Criminal Procedure
☐ Yes ☑ No

Federal Taxpayer Information (FTI)
☐ Yes ☑ No

**Title:**

**Reference:**
(Communication Enclosing Material)

**Description:** ☑ Original notes re interview of