# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| BRIAN HUDDLESTON, | |
| Plaintiff, | CIVIL ACTION No. 4:20CV447 |
| | JUDGE AMOS MAZZANT |
| v. | |
| FEDERAL BUREAU OF INVESTIGATION and UNITED STATES DEPARTMENT OF JUSTICE, | |
| Defendants. | |

## DEFENDANTS' COMBINED REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

Defendants Federal Bureau of Investigation ("FBI") and United States Department of Justice ("DOJ")[1] submit this combined Reply to Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment and Opposition to Plaintiff's Cross-Motion for Summary Judgment. [ECF 46]. Summary Judgment should be granted for Defendants because they have properly responded to Plaintiff's request for records under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552. Plaintiff argues in his Opposition and Cross-Motion for Summary Judgment that Defendant FBI has failed to conduct an

---

[1] The FBI and the Office of Information Policy ("OIP") are both components of the DOJ. They each received and processed FOIA requests at issue in this case.

adequate search, improperly withheld records, and acted in bad faith. As to OIP, Plaintiff only questions a couple narrow aspects of OIP's search. Plaintiff requests *in camera* review of withheld documents and also requests discovery. As discussed below, however, Defendants have conducted a reasonable and adequate search for records, properly supported each of their claimed exemptions with detailed declarations, and Plaintiff has not met his burden of showing that the information was improperly withheld from disclosure or that Defendants have acted in bad faith.

## **INTRODUCTION**

In typical fashion, Plaintiff weaves a tale of conspiracy and conjecture in an attempt to establish that the FBI acted in bad faith in conducting searches and asserting FOIA exemptions, thereby entitling Plaintiff to obtain otherwise exempt records, engage in unwarranted discovery, and require the Court to conduct an *in camera* inspection of documents that are adequately detailed in the declarations and *Vaughn* indices already before the Court. Although Plaintiff makes repeated reference to the "overwhelming evidence" of the FBI's bad faith, his only real allegation of bad faith is that the FBI found no records about Seth Rich in a prior FOIA case but has since found and processed hundreds of pages of responsive records about Seth Rich. Even so, this allegation and the remaining allegations of bad faith consist of conspiracy theories and conjecture, none of which constitute evidence of bad faith, and this Court should reject Plaintiff's attempts to mischaracterize it as such.

## PRELIMINARY MATTER

At the outset, the FBI would like to clarify that there will be one additional release of records to Plaintiff based on the results of recent additional searches, which will require additional briefing. The release is scheduled for May 23, 2022. The FBI's Proposed Briefing Schedule [ECF 50] addresses this additional release, and the reason for the proposed schedule was to incorporate all of the briefing together in the interest of judicial economy, rather than engage in piecemeal briefing. In light of the Court's April 21st Order [ECF 51][2], however, the Defendants are filing this reply brief in response to the issues currently pending before the Court but want to ensure that the Court is aware that there will be additional issues to brief based on the additional searches, as additional exemptions are implicated for the new records.

## ARGUMENT

## I. DEFENDANTS CONDUCTED REASONABLE SEARCHES

Plaintiff complains that Defendants' searches were inadequate because FBI failed to search email accounts and text messages; FBI & OIP failed to indicate if searches included employees' private communication accounts; FBI failed to search offices and entities that were specifically identified in Plaintiff's FOIA request; to the extent that

---

[2] Defendant FBI would also like to clarify its interpretation of the Court's Order [Dkt #51]. Although the order states, "the production and briefing schedule applicable to Defendants' Motion for Summary Judgment (Dkt #39) be reinstated," Docket #39 does not include a production schedule, and the actual schedule entered by the Court only addresses a reply brief and sur-reply brief. As a result, the FBI is moving forward with its production of the records located in the new searches on May 23, 2022 and will propose a supplemental briefing schedule for the remaining issues related to the new release after Plaintiff's counsel has had a chance to review the release. Further, Defendants would note that Plaintiff has not objected to the proposed production on May 23rd and has only argued that briefing on the pending issues should resume. [Dkt #50].

there are databases that the FBI excludes from its search indices, the FBI's  failure to search them is inadequate; the FBI ignored some of Plaintiff's requests; the FBI refused to provide the codenames assigned to Seth Rich and Aaron Rich; the FBI and OIP failed to indicate if codenames were searched; and the FBI failed to identify "some" search terms.

Defendants' searches are adequately detailed in the agency declarations pending before the Court. Agency affidavits are afforded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents. *Safecard Servs., Inc. v.* SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991). As set forth in the Fifth Declaration of Michael G. Seidel [Exhibit A] and the Second Declaration of Vanessa R. Brinkmann [Exhibit B], as well Defendants' previously filed Motion for Summary Judgment and accompanying declarations [ECF 39], Plaintiff's arguments are without merit, as detailed below.

### A.    Emails & Texts

Plaintiff contends that the FBI's search was inadequate because it did not include searches of email accounts and/or text messages. The FBI addresses Plaintiff's arguments regarding emails and texts in paragraphs 5-11 of the 5th Seidel Declaration. [Exh. A, ¶¶ 5-11]. All of the factors detailed in the 5th Seidel Declaration point to the conclusion that FBI text messages residing outside the CRS are not agency records, and there was no reasonable basis in this case to believe that additional records existed in FBI text

messages at the time of the search cutoff date.

### B.      Private Communications

Plaintiff contends that FBI and OIP's searches are inadequate because neither agency indicates whether employees' private communications or storage accounts were searched for responsive records.

### FBI

The FBI addresses private communications in paragraph 12 of the 5th Seidel Declaration. The FBI's search was formulated to locate responsive agency records subject to the FOIA. Private email accounts, private text messages and/or private storage drives would not typically be expected to contain agency records, and Plaintiff has not articulated any facts suggesting that any FBI or OIP employees used private email accounts, private text messages or private storage drives to communicate or store agency communications or records that would be responsive to his requests.  In the absence of such facts, it is not reasonable to conclude that a search of private email accounts, private text messages or private storage drives would be warranted. [Exh. A, ¶ 12].

### OIP

Plaintiff praises the exhaustive nature of OIP's searches, *see* ECF No. 46, at 8. Plaintiff neither alleges nor demonstrates bad faith on the part of OIP, nor does Plaintiff provide any evidence to call into question OIP's good faith.  Plaintiff does, however, specifically ask whether OIP's search took text messages into account.  *Id.* FN 3. Plaintiff also makes unreasonable allegations and demands pertaining to the issue of

private communications or storage, even though Plaintiff acknowledges that it is atypical to make such a demand and predicates his demand on allegations of bad faith. *Id.* at 9-10. Again, however, Plaintiff's allegations of bad faith are not directed at OIP, nor does Plaintiff provide any basis whatsoever to support the atypical demands Plaintiff is making as to OIP. Accordingly, on their face, such demands are utterly without merit.

OIP specifically addresses Plaintiff's question as to text messages in paragraphs 6-9 of the 2nd Brinkmann Declaration. The policies discussed within these paragraphs, and the requirement to capture records that relate to official agency business in an official DOJ recordkeeping system, would pertain to electronic messaging or data, whether on a private or government-issued device. Specifically, paragraph 7 of the 2nd Brinkmann Declaration indicates that DOJ policy "requires that *any* electronic messages that relate to official business must be fully captured in an official DOJ recordkeeping system." [Exh B, ¶ 7 (emphasis added)].

Plaintiff's response and cross motion also alleges that Defendants failed to "indicate[] in their respective declarations whether private communications or storage accounts were searched for responsive records." ECF No. 46, at 9-10. However, Plaintiff's unsupported allegation again misses the mark because the issue is not whether Defendants should have addressed private communications or storage in their declarations, but rather, given the presumption of regularity that agency employees adhere to agency policy, whether Plaintiff has provided any evidence that that presumption should be overcome. *Jud. Watch, Inc. v. DOJ*, 319 F. Supp. 3d 431, 437

(D.D.C. 2018) ("[a]bsent evidence to the contrary, a government employee is presumed to have properly discharged" this recordkeeping obligation).[3]  Plaintiff's response and cross motion does not provide a shred of evidence to substantiate his allegation.

Finally, now and during the time period when SCO existed, Department employees, including SCO employees, are required to adhere to the Federal Records Act, as amended in 2014, and DOJ Policy Statement 0801.04, which established DOJ policy with regard to email and other types of electronic messaging (including text messages). DOJ Policy Statement 0801.04 (September 21, 2016)[4] stated that "[i]t is the policy of the Department to manage the use, maintenance, retention, preservation, and disposition of records created, captured, or shared using email or other electronic messaging while conducting departmental business, in accordance with federal recordkeeping statutory and regulatory requirements."  This DOJ policy provided that text messages may be used by employees for conversational communications that are typically logistical or administrative in purpose, and further requires that any electronic messages that relate to official business must be fully captured in an official DOJ recordkeeping system.  OIP's search encompassed formal recordkeeping systems containing SCO's files, which would have included any text messages of these officials which were retained consistent with DOJ policy. [Exh. B, ¶ 7].

---

[3] The court also noted that "in a typical case, a search of a Department of Justice employee's personal email account would be unnecessarily duplicative of a search of the employee's official email account."  *See Jud. Watch, Inc. v. DOJ*, 319 F. Supp. at 438.

[4] Current Department employees remain subject to the Federal Records Act and DOJ Policy Statement 0801.04 (December 11, 2019).

On March 22, 2019, Congress was notified that Special Counsel Mueller had concluded his investigation and had submitted his report.  With the conclusion of that process, the SCO was closed.  As part of the process for closing SCO, recordkeeping staff collected the phones of SCO officials and took steps to ensure that records were captured in accordance with the policies described in the preceding paragraph. [Exh. B, ¶ 8].

In light of the facts that Department policy directs that text messages (or other electronic messaging or data) used for official business are incorporated into official recordkeeping systems; that there is no indication that SCO officials did not follow this policy; and that additional steps were taken to ensure that SCO officials were aware of this policy, OIP's searches of SCO officials' files would be reasonably expected to have captured any text messages documenting official SCO business. [Exh. B, ¶ 9].

## C.   FBI's Handling of Plaintiff's FOIA Requests and Related Searches Conducted

Plaintiff alleges that the FBI ignored portions of his requests, failed to identify search terms from "some" of Plaintiff's requests, and failed to search offices and entities that were specifically identified in his request.

The FBI clarifies and reiterates the scope of its searches in response to Plaintiff's arguments in paragraphs 13 – 21 of the 5th Seidel Declaration. The FBI assigned four (4) FOIA Request Numbers to address the various portions of Plaintiff's two (2) FOIA requests dated April 9, 2020 and June 1, 2020. Each subpart of Plaintiff's requests is not assigned a separate request number; multiple subparts are grouped together as appropriate, based on subject matter. Contrary to Plaintiff's allegations that certain

subparts of the April 9, 2020 request were simply ignored, the FBI clearly identifies which requests correspond with each subpart, and there are no subparts that were not included in searches. FOIPA Request 1465531-000 addresses items 1-8 of the April 9th request, as they relate to Seth Rich. [Exh. A, ¶14]. FOIPA Request 1468034-000 addresses items 1 and 4-8 of the April 9th request, as they relate to Aaron Rich. [Exh. A, ¶15]. FOIPA Request 1468039-000 addresses item 7 of the April 9th request, as it relates to Deborah Sines. [Exh. A, ¶16]. Finally, FOIPA Request 1468042-000 addresses item 9 of the April 9th request. Plaintiff's allegations that the FBI simply ignored Items 2, 4, 5, 6 and 8 of the April 9th request is without merit.

Plaintiff contends that Seidel's failure to identify search terms used for "some" of Plaintiff's requests is fatal to the MSJ but fails to identify any particular example. Although previously identified, the 5th Seidel Declaration provides a summary of the search terms used in paragraphs 14, 17, and 21.

### D.    FBI "Other Databases"

Plaintiff suggests that there may be other databases that the FBI excludes from search indices, so to the extent that they exist, the FBI's failure to search them is inadequate. Relying on other cases of FBI misconduct, Plaintiff seeks an order requiring the FBI to identify all databases excluded from CRS.

The FBI addresses Plaintiff's arguments regarding "other databases" in paragraph 22 of the 5th Seidel Declaration, noting that their search policy is grounded on the principle of reasonableness, not mere possibility. Because Plaintiff provided no

information for RIDS to conclude records would reside in other databases, and because there is no indication from the searches conducted that responsive material would reside in any other FBI database, system, or location, there is no basis that the search was inadequate or that a search of other databases is warranted. [Exh. A, ¶ 22].

An agency need only search those systems in which it believes responsive records are likely to be located. *Amnesty Int'l USA v. Cent. Intelligence Agency*, 728 F.Supp.2d 479, 497 (S.D.N.Y.2010); *Maynard v. C.I.A.*, 986 F.2d 547, 563 (1st Cir.1993)(there is no requirement that an agency search every record system.).

### E.    Codenames

Plaintiff complains that the FBI refused to provide the codenames assigned to Seth Rich and Aaron Rich and failed to include in its declaration whether the FBI conducted searches using the assigned codenames.

### FBI

The FBI addresses codenames in paragraphs 20 – 21 of the 5th Seidel Declaration. In response to Plaintiff's request concerning codenames, the FBI provided an Exemption 6, 7(C) and 7(E) *Glomar* response.  The Fourth Seidel Declaration addresses this request and the FBI's Exemption 6, 7(C) and 7(E) *Glomar* in ¶¶ 25-29, 30-46, and 70-71.  In addition to addressing the substantial privacy interests of third parties, the FBI informed Plaintiff that merely acknowledging the existence or non-existence of records responsive to Plaintiff's requests would trigger one or more harms under FOIA Exemption (b)(7)(E) with respect to code names assigned to individuals.  Within paragraph 70 of the Fourth

Seidel declaration, the FBI advised that where a *Glomar* response is warranted and appropriate in response to Plaintiff's requests, the FBI does not conduct a search for the requested records.  Conducting a search for records is unnecessary because the response to the requester is not dependent on the result of a search and regardless of the result, the existence or non-existence of records will neither be confirmed nor denied.

The Fourth Seidel declaration further addresses in ¶¶ 42-46 that the *Glomar* had been partially pierced by the public acknowledgment that Carter Page and Michael Flynn were assigned codenames.  As a result, the FBI conducted searches, more fully described in ¶ 71 of the Fourth Seidel, as term searches within the Crossfire Hurricane and related investigations using among other terms, the terms "Page" and "Flynn," and the assigned codenames.[5] These searches were reasonably calculated to locate the responsive records subject to the FOIA.

**OIP**

OIP addresses codenames in paragraph 10 of the 2nd Brinkmann Declaration. For the reasons set forth in the FBI's Fourth Declaration of Michael G. Seidel, *see* ECF No. 39-1, beginning in paragraph 39, OIP cannot confirm nor deny whether the FBI or SCO ever assigned Seth Rich a codename.  Without confirming or denying whether a code name was assigned to Seth Rich, as a general practice, to the extent OIP becomes aware of identifying information pertaining to a request subject, OIP will incorporate that information into its searches, as appropriate.  Indeed, as described within the First

---

[5] For clarification, other terms searched included the code names for Page and Flynn.

Brinkmann Declaration, Section IV.D, *see* ECF 39-2, OIP identified a lead in the form of personally identifiable information pertaining to Seth Rich, and OIP conducted supplemental searches using that information. [Exh. B, ¶ 10].

## II.     DEFENDANTS PROPERLY WITHHELD INFORMATION PURSUANT TO FOIA EXEMPTIONS

Plaintiff's allegations of improper withholdings and redactions delve even deeper into conspiracy theories and speculation. Plaintiff alleges that the FBI improperly redacted or withheld information based on privacy interests and Exemptions 1, 3, 4, 5, and 7, and failed to properly detail the basis of withholding a compact disc and digital video disc in their entirety.

### A.  Redactions of Deborah Sines, Seth Rich, Aaron Rich from 302s

In his Motion for *In camera* Review [ECF 11], incorporated into his response here, Plaintiff contends that the FBI's redaction of Deborah Hines, Seth Rich, and Aaron Rich based on privacy interests is improper b/c Sines "outed" herself in a podcast, Seth Rich does not have a privacy interest b/c he's deceased, and Aaron Rich made himself a public figure by giving media interviews.

#### 1.  Aaron Rich

The FBI addresses Aaron Rich's privacy status in paragraphs 15 and 34-36 of the 5th Seidel Declaration. [Exh. A]. Regarding Aaron Rich, the FBI informed Plaintiff that he requested information on a third-party individual and the FBI would neither confirm nor deny the existence of such records pursuant to FOIA Exemptions 6 and 7(C).  The FBI does not search for responsive records on third party individuals without a signed

privacy waiver, proof of death, or an overriding public interest.  Accordingly, the FBI did

not conduct a search for records responsive to this request. Plaintiff provides no

competent evidence or legal authority that interviews given by Aaron Rich override his

privacy status.

### 2. Deborah Sines

The FBI addresses Deborah Sine's privacy status in paragraphs 16 and 34-36 of

the 5th Seidel Declaration. [Exh. A]. Regarding Deborah Sines, the FBI informed Plaintiff

that he requested information on a third-party individual and the FBI would neither

confirm nor deny the existence of such records pursuant to FOIA Exemptions 6 and 7(C).

The FBI does not search for responsive records on third party individuals without a

signed privacy waiver, proof of death, or an overriding public interest.  Accordingly, the

FBI did not conduct a search for records responsive to this request. Plaintiff provides no

competent evidence or legal authority that Deborah Sines' deposition after her DOJ

employment or participation in a podcast overrides her privacy status.

### 3. Seth Rich

The FBI addresses Seth Rich's privacy status in paragraph 37 of the 5th Seidel

Declaration. [Exh. A]. As previously explained in the 4th Seidel Declaration, the FBI

withheld information derived from Seth Rich's personal laptop in its entirety as such

information would violate the privacy rights of the survivors of Seth Rich.  Specifically,

in ¶ 139 the FBI states that "Seth Rich has no privacy interests due to being deceased,

however, the same cannot be said for those that survive him and are left to cherish his

memory."  In balancing the survivors' privacy interest in non-disclosure against the public interest in disclosure, the FBI determined that the survivors' privacy interest outweighs the public's interest in disclosure, as disclosure of the information on Seth Rich's personal laptop would not shed light on the operations and activities of the FBI. Further, the information on Seth Rich's personal laptop, in and of itself, would not demonstrate how the FBI performed its statutory mission and thus, would not significantly increase the public's understanding of the FBI's operations and activities. Accordingly, the FBI properly protected the privacy interests of the survivors of Seth Rich pursuant to FOIA Exemptions 6 and 7(C).

**B. Compact Disc & Digital Video Disc**

Plaintiff contends that the FBI withheld a compact disc and a digital video disc in their entirety but provided no details about "where the disc[s] came from, what sort of data [they] contain[], how much data [they] contain, much less the general subject matter of the data." [ECF 33, p. 21]. Plaintiff contends this non-explanation is fatal to the MSJ.

The FBI addresses Plaintiff's arguments regarding the discs in paragraphs 24-27 of the 5th Seidel Declaration, noting that both discs were fully described in the *Vaughn* Index attached as Exhibit N to the 4th Seidel Declaration. In both instances, the records contained on the CD and DVD are cross-reference records concerning investigations of third-party subjects of investigative interest to the FBI, in which Seth Rich's name or identifying information are referenced. No additional information may be disclosed concerning these records without disclosing information which is exempt. [Exh. A, ¶¶ 24-

27].

### C.  Exemption 1: National Security

Plaintiff challenges the FBI's assertion of Exemption 1.  He questions the applicability of national security exemptions to a robbery investigation and speculates that *if* the FBI possesses records indicating CIA fabricated Guccifer 2.0 or reveal Seth Rich deliberately leaked DNC emails to Wikileaks, that such matters are criminal, and national security exemptions would not apply.  Plaintiff also speculates that *perhaps* the FBI and CIA "stiffed a call" and utilized foreign actors to fabricate a pretext for a national security investigation.  Plaintiff asks the Court not to overrule Exemption 1 at this point, but to permit further discovery and conduct an *in camera* review.

The FBI addresses Plaintiff' arguments regarding Exemption 1 in paragraphs 28-32 in the 5th Seidel Declaration, reiterating the procedural and substantive standards that were followed in the classification of the national security information and flatly denying that the information was classified for any of the purely speculative scenarios proposed by the Plaintiff. [Exh. A, ¶¶ 28 - 32].

### D.  Exemption 3: Information Exempted by Statute

Plaintiff challenges the FBI's assertion of FOIA Exemption 3, specifically as it relates to national security.[6]  Plaintiff does not state a specific concern with regard to Exemption 3 except to incorporate his previous discussion of Exemption 1. As referenced

---

[6] The FBI used FOIA Exemption Coded Category (b)(3)-1 to identify those withholdings relating to national security.  As stated in Footnote 1, Plaintiff is not challenging the FBI's assertion of FOIA Exemption Coded Categories (b)(3)-2 concerning Federal Rules of Civil Procedure 6(e) and (b)(3)-3 concerning 18 U.S.C. § 323(d).

in ¶¶ 95-98 of the Fourth Seidel Declaration, the FBI asserted Exemption 3 in coded

category (b)(3)-1, at times in conjunction with Exemptions 1 and/or Exemption 7(E), to

withhold both classified and unclassified information that would reveal intelligence

sources and methods pursuant to Section 102A(i)(1) of the National Security Act of 1947

("NSA"), as amended by the Intelligence Reform and Terrorism Prevention Act of 2004

("IRTPA").  As a member of the Intelligence Community, the FBI is required to protect

"national intelligence and intelligence sources and methods and activities from

unauthorized disclosure".  The FBI withheld information, in coded category (b)(3)-1, that

it determined to be intelligence source and method and activity information.  The FBI has

no discretion to disclose intelligence sources and methods.  Thus, the FBI properly

withheld this information pursuant to FOIA Exemption (b)(3), in conjunction with

Exemptions 1 and/or 7(E).

### E.  Exemption 4: Trade Secrets

Plaintiff claims the FBI's withholding of a 10-page report from a private

commercial institution pursuant to Exemption 4 is potentially improper because the 4th

Seidel Declaration does not provide enough detail about the report. Plaintiff also suggests

that this document *might* contain Seth Rich's financial transactions because Sy Hersh

testified that Seth Rich had requested payment from Wikileaks. Plaintiff further requests

that the Court direct the FBI to produce the report for *in camera* inspection.

The FBI addresses Plaintiff's arguments regarding Exemption 4 in paragraphs 38-

39 of the 5th Seidel Declaration. The FBI's justification for withholding information

pursuant to FOIA Exemption coded category (b)(4)-1 is discussed in ¶¶ 102-103 of the Fourth Seidel Declaration. As set forth therein, the FBI located a ten (10) page report, clearly marked as "COPYRIGHT PROPRIERTARY AND CONFIDENTIAL – NOT TO BE SHARED WITH THIRD PARTIES." In order to determine whether or not this information qualified for protection pursuant to Exemption 4, on May 19, 2021, the FBI contacted the private commercial institution to establish if the information located by the FBI was customarily treated as private by the commercial institution; and whether or not they provided this information to the FBI with an assurance of privacy. A response was received from the private commercial institution, and the FBI determined this confidential information was provided under an assurance of confidentiality and is exempt pursuant to Exemption 4. Additional information concerning Exemption 4, will be provided to the Court *in camera, ex parte* as it cannot be further discussed on the public record without revealing exempt information.

## F. Exemption 5: Privileged Information

Plaintiff claims that the crime fraud exception *might* waive Exemption 5 as to the draft 302 forms detailed in the 4th Seidel Declaration ¶¶109-11. Plaintiff does not argue the records are not deliberative, rather that the crime-fraud exception applies. In support, Plaintiff offers only mere speculation fueled by his own opinions about the investigation.

The FBI addresses Plaintiff's arguments regarding Exemption 5 in paragraph 41 of the 5th Seidel Declaration. As referenced in the Fourth Seidel Declaration at ¶¶ 104-118 the FBI asserted FOIA Exemption (b)(5), to withhold both privileged deliberative and

attorney work product materials.  One category of privileged deliberative material the FBI withheld is draft handwritten notes and draft typed FD-302s.  This category of material is discussed more fully in the Fourth Seidel Declaration at ¶¶ 109-111 which states among other things, that the interview notes and draft typed FD-302s at issue herein are inherently deliberative in nature as the information documented during the interview does not always appear verbatim in the final interview record. The thoughts, ideas, and impressions contained in the handwritten interview notes at issue here were edited and distilled during the editorial process for the creation of the final agency decision subsequently reflected in multiple FD-302's; hence its predecisional nature.  The FBI processed and released to Plaintiff the responsive portions of the final FD-302s corresponding to the handwritten notes and draft typed FD-302s herein.  The FBI properly withheld this information pursuant to Exemption 5 and confirmed that the records at issue were created less than 25 years before the date of Plaintiff's request. Plaintiff has provided no evidence to indicate that the crime-fraud exception might waive Exemption (b)(5) as to the draft FBI FD-302s responsive to Plaintiff's FOIA request herein.

### G. Exemption 7: Confidential Source Information

Plaintiff contends that Exemption 7(D)-4 should be denied because of the FBI's bad faith in *potentially* conspiring with foreign agents or foreign governments for the purpose of influencing domestic politics. Plaintiff does not articulate in his Opposition any further challenges to the FBI's withholdings pursuant to FOIA Exemption 7(D), specifically in

relation to FOIA Exemption Coded Categories (b)(7)(D)-1 through (b)(7)(D)-3.

The FBI addresses Plaintiff's arguments regarding Exemption 7 in paragraphs 42 – 43 of the 5th Seidel Declaration. The FBI asserted FOIA Exemption coded category (b)(7)(D)-4 to withhold information provided by foreign government agency authorities under an implied assurance of confidentiality.  The FBI has many agreements with foreign governments under which national security and criminal law enforcement information is exchanged.  The FBI's conclusion that the foreign government agency at issue here expected confidentiality in its dealings with the FBI and with regard to the information it provided to the FBI is based on the Foreign Government Information Classification Guide #1 ("G-1 Guide").  As previously stated, the G-1 Guide governs classification of foreign government information that foreign governments have asked the FBI to protect over the course of time.  The FBI uses the G-1 Guide to determine the level and duration of derivative classification of foreign government information, including unmarked internal FBI documents which are being reviewed for possible classification.  The FBI has conducted the necessary reviews of this material and determined that the FBI properly protected the foreign government agency's identity and information.  Therefore, the FBI properly asserted FOIA Exemption (b)(7)(D)-4 on the records at issue herein.  (*Id.  See also* ¶ 155, Fourth Seidel Declaration.)

### III.   NO EVIDENCE OF BAD FAITH[7]

Plaintiff makes reference throughout his response to the "overwhelming,"

"consistent," and "long history" of evidence of the FBI's bad faith. In fact, the only

evidence of bad faith offered by the Plaintiff is the fact that the FBI failed to locate

responsive records pertaining to Seth Rich in a 2017 FOIA search but then later located

hundreds of pages of records regarding Seth Rich in this case. The FBI already addressed

this allegation of bad faith in the Second Seidel Declaration, explaining the different

search results, *see* ECF 12-1, at ¶¶2-4, and addressed it again in the 5th Seidel Declaration

at paragraph 44.

In summary, the two requests are not identical and involve different time frames.

Additionally, at the time of this litigation, the FBI had become aware of additional

relevant information that aided the search in this litigation.  [ECF 39-1, ¶¶ 60-68].  If

anything, this is evidence of good faith that the FBI did not limit this search to the

previously searched locations; instead, the FBI used the relevant information and

conducted a search in this case that was reasonable based on new information.

Courts have rejected the argument that the discovery of additional documents

constitutes bad faith. *See, e.g. Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d

Cir.1999) (plaintiff cannot establish the agency's bad faith merely by showing documents

were subsequently discovered that were not found in the agency's initial search for

responsive documents); *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 370

---

[7] Plaintiff never makes an allegation of bad faith on the part of OIP. Accordingly, to the extent that any demands made by Plaintiff as to OIP are predicated on allegations of bad faith, such demands are, on their face, without merit.

(D.C.Cir.1978) (discovery of additional documents not inconsistent with district court's finding that search was thorough).

The rest of the so-called evidence of bad faith is actually either (1) allegations of inadequate searches and improper withholdings, addressed above; (2) references to unrelated cases; or (3) pure speculation and conspiracy.

The majority of Plaintiff's "evidence" of bad faith is no more than speculation and conspiracy. Plaintiff's repeated use of qualifiers should not be overlooked here, as he repeatedly makes statements of pure conjecture but then characterizes those statements as "evidence" of bad faith.  For example, Plaintiff theorizes (1) *whether* the FBI possesses records that show that the CIA fabricated Guccifer 2; (2) *whether* the FBI solicited foreign governments to conceal Seth's role in the DNC leaks; (3) *whether* the FBI intercepted communications between Seth and Wikileaks; (4) the facts [of the preceding two items], *if proven true*, would be deeply embarrassing to the agency; (5) *to the extent* FBI personnel were attempting to undermine or overthrow a Presidential election; (6) *if* government personnel secured search warrants for individuals like Carter Page when they knew the "Russian collusion" premise was false; (7) *it almost seems a near certainty* and *it appears very likely* that Exemption 1 was invoked to prevent embarrassment to the agency; (8) *if* DNC emails were leaked by Seth Rich rather than hacked by the Russians; (9) the FBI *may have* "stiffed a call" and utilized foreign actors to fabricate a pretext for a national security investigation; and (10) *the Plaintiff must wonder whether* the FBI has altered draft 302 forms. Even though Plaintiff introduces each of these theories as purely

hypothetical, he then relies on them as his "overwhelming evidence" of bad faith. Such tactics should be rejected by the Court.

### IV. PLAINTIFF'S IMPROPER SUMMARY JUDGMENT EVIDENCE

Throughout his response, Plaintiff cites to numerous online articles, many from questionable sources, and claims that a FOIA plaintiff may rely on newspaper articles to establish facts relevant to a motion for summary judgment. However, none of the cases cited by Plaintiff actually state this, and Plaintiff has failed to cite to any legal authority in which a Court in a FOIA case has relied on newspaper articles to establish facts for summary judgment or as grounds for discovery.

On the contrary, Federal Rule of Civil Procedure 56(c)(4) means that the rules of evidence apply to summary judgment materials. See Fed.R.Civ.P. 56(c)(4), 56(c)(2) and 2010 Advisory Comm. Notes thereto. In the Fifth Circuit, evidence relied on at the summary judgment stage need not be presented in admissible form, but it must be capable of being presented in a form that would be admissible in evidence. *D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 208 (5th Cir.2018).  In other words, the substance of the evidence submitted on summary judgment must be admissible. *See, generally, Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).

When a party fails to offer evidence in admissible form at the summary judgment stage, the opposing party may object by stating the evidence "cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2). The commentary to the 2010 Amendment of Rule 56 explains the procedure:

> Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact *cannot be presented in a form that would be admissible in evidence*. The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or *to explain the admissible form that is anticipated*.

Fed.R.Civ.P. 56, advisory committee note 2010 amend. (emphasis added).

The online articles and websites referenced by Plaintiff are not proper summary judgment evidence, and Defendants object to them on the grounds that they cannot be presented in a form that could be admissible in evidence pursuant to Rule 56(c)(2) because they are (1) inadmissible hearsay; (2) not capable of being properly authenticated by a person with personal knowledge; (3) contain conclusions and speculations that are not proper summary judgment evidence; and (4) are otherwise irrelevant, unreliable and untrustworthy.

Specifically, Defendants object to the following online articles via website links in Plaintiff's response and cross-motion for summary judgment [ECF 46]:

(1) https://www.rollingstone.com/politics-news/will-julian-assange-and-wikileaks-finally-tell-the-truth-about-seth-rich-918946/ (p. 4)

(2) https://www.youtube.com/watch?tv=Kp7FkLBRpKg&t=3s (p.4)

(3) https://www.nbcnews.com/politics/white-house/dnc-staffer-s-murder-fresh-conspiracy-theories-n760186 (p. 4)

(4) https://www.vox.com/2018/7/13/17568840/russia-trump-seth-rich-conspiracy-mueller-indictments (p.4)

(5) https://www.judicialwatch.org/wp-content/uploads/2020/01/JW-v-DOJ-Strzok-Page-Prod-16-00154.pdf (p. 5)

(6) https://consortiumnews.com/2017/07/24/intel-vets-challenge-russia-hack-evidence/ (p. 5)

(7) https://www.realclearinvestigations.com/articles/2020/05/13/hidden_over_2_years_dem_cyberfirms_sworn_testimony_it_had_no_proof_of_russian_hack_of_dnc_123596.html (p. 6)

(8) https://lawflog/com/?p=2433 (p. 12)

(9) https://www.forbes.com/sites/thomasbrewster/2018/02/21/fbi-hidden-hacking-groups-revealed/?sh=4e1a8c51330f (p. 12)

(10) https://foreignpolicy.com/2013/11/21/meet-the-spies-doing-the-nsas-dirty-work (p. 12)

(11) https://www.yahoo.com/now/it-is-indescribable-how-a-harassment-campaign-overwhelmed-seth-richs-friends-and-family-100000936.html (p. 13)

(12) https://lawflog.com/wp-content/uploads/2020/04/2020.03.20-Deborah-Sines-deposition-transcript.pdf (p. 13)

(13) https://www.realclearinvestigations.com/articles/2022/01/20/the_tension_over_the_truth_and_consequences_gripping_the_fbis_trump-russia_reckoning_812321/html (p. 25)

(14) https://dailycaller.com/2018/29/oddities-in-comey-informants-russian-collusion-evidence/ (p. 25)

(15)   https://www.beyondweird.com/conspiracy/cn12-05.html (p. 25)

(16)   https://www.wsj.com/articles/rewrite-in-flynns-case-shows-fbi-needs-reform-11588541993 (p. 28)

(17)   www.theepochtimes.com/spygate-the-true-story-of-collusion_2684629.html (p. 29)

## A.  Hearsay

Although Plaintiff characterizes his summary judgment evidence as "newspaper articles," the so-called evidence is actually just links to websites for online articles, many are not online newspapers or even claim to be news sources at all. Regardless, using Plaintiff's own characterization of the online sites as newspaper articles, they are clearly hearsay and not competent summary judgment evidence. Newspaper articles are generally "classic, inadmissible hearsay." *Roberts v. City of* Shreveport, 397 F.3d 287, 295(5th Cir. 2005). The websites cited by Plaintiff do not meet any of the hearsay exceptions of Fed.R.Evid. 803.

## B.  Not Capable of Proper Authentication

In order to authenticate a document pursuant to Rule 901 of the Federal Rules of Evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is. *United States v. Barnes*, 803 F.3d 209, 217 (5th Cir.2015). The websites cited by Plaintiff cannot be properly authenticated, nor are they self-authenticating under Rule 902.

### C.  Conclusions and Speculations

Further, to the extent that statements within Plaintiff's response are based on the referenced online materials, those statements are not proper summary judgment evidence. The list of hypothetical statements detailed in Section III above are based largely on the online articles cited in the response. Conclusions, speculations, and similar statements are insufficient to defeat a summary judgment motion. *In re Magnolia Fleet, LLC*, 722 Fed.Appx. 353, 354-55 (5th Cir. 2018). Conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992); *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir.2002) ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.").

### D.  Irrelevant, Unreliable, and Untrustworthy

Overall, the online articles referenced by Plaintiff are not proper summary judgment evidence because they are simply irrelevant to the issues of this case. The issues before the Court are whether the Defendants conducted reasonable searches and made proper withholdings based on appropriate exemptions. The reasons that Plaintiff submitted the FOIA requests and the vast amount of conspiracies circulating online about the subject matter of the FOIA requests have no bearing on the adequacy of Defendants' searches or the appropriateness of the asserted exemptions. Finally, many of the websites

listed do not even claim to be news sources at all, calling into question their reliability

and trustworthiness.

## V. PLAINTIFF IS NOT ENTITLED TO DISCOVERY

Plaintiff's Cross-Motion for Summary Judgment seeks discovery on a number of

issues. Specifically, Plaintiff seeks a Court order requiring Defendants to:

1.  Provide a copy of the Plaintiff's FOIA requests to every SCO and FBI
    employee named in the records produced thus far. The Plaintiff further
    moves the Court to order every such employee to produce a sworn
    declaration attesting that he or she either (a) has or has not privately
    sent, received, or stored communications or records responsive to the
    Plaintiff's requests; (b) has or has not made such communications or
    records available for production to the Plaintiff; and (c) is or is not
    aware of other individuals who used private means to send, receive, or
    store responsive communications or records. If the answer to Question
    #3 is in the affirmative, then the names of such individuals should be
    identified in the declaration."

2.  Name all databases and records systems that are (a) under the
    ownership, operation, or control of the FBI, but (b) not automatically
    included in the FBI's search indices;

3.  Present Mr. Seidel for testimony at an evidentiary hearing.

[ECF 46, pp. 31-32].

"While ordinary discovery processes grant each party access to evidence, in FOIA

cases discovery is limited because the underlying case revolves around the propriety of

revealing certain documents." *Lane v. Dept. of Interior*, 523 F.3d 1128, 1134 (9th Cir.

2008). For this reason, discovery is the rare exception, not the rule, in FOIA cases. *See*

*e.g. Singh v. United States,* No. 17-0233-JCC, 2017 U.S. Dist. LEXIS 72368 at *2 (W.D.

WA May 11, 2017)("[B]ecause FOIA cases pertain to the propriety of revealing

requested documents, discovery in those cases is rare and limited."); *Wheeler v. CIA*, 271 F.Supp.2d 132, 139 (D.D.C. 2003)("Discovery is generally unavailable in FOIA actions."); *Judicial Watch, Inc. v. Export-Import Bank*, 108 F.Supp.2d 19, 25 (D.D.C.2000)("[D]iscovery in a FOIA action is generally inappropriate."). This is because the *Vaughn* filing submitted by the agency to support the withholding of records is the factual predicate upon which the Court makes its ruling as to whether a given document is within a statutory exemption, or not, and "if the affidavits contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption, the district court need look no further." *Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir.1987).

Courts generally do not permit discovery in FOIA cases when an agency's declaration is reasonably detailed and submitted in good faith. *Schreckler v. DOJ,* 217 F.Supp.2d 29, 35 (D.D.C. 2002). In the rare case when the courts do permit discovery, it is limited to determine the thoroughness of an agency search for potentially responsive documents, and, even then, discovery is typically only allowed when there is some reason to believe that the agency search has been less than thorough. *See, e.g., Heily v. United States Dep't of Commerce*, 69 Fed. App. 171, 174 (4th Cir. 2003) (explaining that when discovery is permitted, generally it is "limited to the scope of the agency's search and its indexing and classification procedures."). To qualify for an exception to the limited scope of discovery, the plaintiff in a FOIA case "must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations [] or provide

some tangible evidence that an exemption claimed by an agency should not apply or summary judgment is somehow inapposite." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). Unsubstantiated claims that an agency has acted in bad faith are insufficient to warrant discovery. *See e.g. Wolf v. C.I.A.*, 569 F.Supp.2d 1, 10 (D.D.C. 2008) (concluding that a mere assertion of bad faith does not establish a sufficient basis for discovery). Moreover, affidavits submitted by an agency are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Safecard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C.Cir. 1990).

Here, Plaintiff has failed to establish that Defendant FBI has acted in bad faith (as set forth in Section III above) and has failed to even allege that OIP has acted in bad faith. Plaintiff has clearly not met the standard to overcome the presumption of good faith accorded the declarations and *Vaughn* indices filed by the Defendants, and Plaintiff's requests for discovery should be denied.

## VI. *IN CAMERA* INSPECTION IS NOT WARRANTED

*In camera* review in the FOIA context is discretionary and should only be considered as a last resort. *See* 5 U.S.C. §552(a)(4)(B); *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 224 (1978) ("The *in camera* review provision is discretionary by its terms, and is designed to be invoked when the issue before the District Court could not be otherwise resolved.") When a district court finds that a law enforcement agency's declarations sufficiently describe the document and have set forth proper reasons for

invoking FOIA exemptions, *in camera* inspection of that document is not necessary. *See Lam Lek Chong v. U.S. Drug Enforcement Admin.*, 929 F.2d 729, 735 (D.C.Cir. 1991). The Court may seek *in camera* inspection where the agency affidavits are insufficiently clear to permit meaningful review of the exemption claims or where there is evidence of bad faith. *Id.*

Here, the agency declarations and *Vaughn* indices are sufficiently detailed and clear, and as set forth in Section III, Plaintiff has failed to establish that Defendants have acted in bad faith.[8] As a result, *in camera* inspection is not warranted, and the Plaintiff's request should be denied. However, should the Court determine that an *in camera* review of the records is warranted, the FBI will not oppose such an Order.

## CONCLUSION

The FBI and OIP performed adequate and reasonable searches for responsive records, processed all such records, and released all reasonably segregable non-exempt information from documents responsive to Plaintiff's FOIA requests that are subject to the FOIA.

Plaintiff has failed to establish that the searches were inadequate, the exemptions were inappropriate, or that Defendants have acted in bad faith. Plaintiff's cross-motion for summary judgment and requests for discovery and *in camera* review should be denied.

---

[8] Indeed, Plaintiff has not even alleged bad faith on the part of OIP.

Because Defendants conducted reasonable searches in response to Plaintiff's FOIA requests, properly issued *Glomar* responses as appropriate, and properly withheld information pursuant to appropriate FOIA exemptions, Defendants are entitled to summary judgment.

Respectfully submitted,

BRIT FEATHERSTON
UNITED STATES ATTORNEY

*/s Andrea L. Parker*
ANDREA L. PARKER
Assistant United States Attorney
Texas Bar No. 00790851
550 Fannin, Suite 1250
Beaumont, Texas 77701
Tel:    (409) 839-2538
Fax:    (409) 839-2550
Email: andrea.parker@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2022, a true and correct copy of the foregoing document was filed electronically with the court and has been sent to counsel of record via the court's electronic filing system.

*/s/ Andrea L. Parker*
ANDREA L. PARKER
Assistant United States Attorney

Defendants' Combined Reply to Plaintiff's Response and
Opposition to Cross Motion for Summary Judgment