IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

BRIAN HUDDLESTON,

            Plaintiff,

    v.

FEDERAL BUREAU OF
INVESTIGATION and UNITED
STATES DEPARTMENT OF JUSTICE,

           Defendants.

CIVIL ACTION No. 4:20CV00447

## FIFTH DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

(1)    I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD"), Federal Bureau of Investigation ("FBI"), Winchester, Virginia. My previous declarations in this matter describe my employment history, responsibilities at the FBI, as well as the FBI's processing of the Freedom of Information Act ("FOIA") requests at issue in this case. This is my fifth declaration overall in this instant action and it supplements and incorporates by reference the information previously provided by me in my prior declarations dated December 8, 2020 ("First Seidel"), dated January 6, 2021 ("Second Seidel"), dated April 20, 2021 ("Third Seidel"), and dated December 15, 2021 ("Fourth Seidel"). (ECF Nos. 10-1, 12-1, 23-1 and 39-1.)

(2)    The FBI submits this declaration in further support of Defendants' Motion for Summary Judgment and to address specific issues raised in Plaintiff's Response to Opposition to Defendants' Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary

Judgment (hereafter "Opposition").

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

(3)   In Plaintiff's February 7, 2022 Opposition, Plaintiff contends that:

   A.   The FBI's searches were inadequate because it did not include searches of email accounts and text messages.

   B.   The FBI failed to indicate in its prior declarations whether private email accounts, private text messages and/or private storage drives were searched for responsive records.

   C.   The FBI failed to search offices and entities that were specifically identified in Plaintiff's FOIA request.

   D.   The FBI failed to explain whether redacted records could be produced that would hide the identity of the database or the nature of the "intelligence activities". To the extent that there are databases that the FBI excludes from it search indices, the FBI's failure to search them is inadequate.

   E.   The FBI ignored some of the Plaintiff's requests. Specifically, Items 2, 4, 5, 6, and 8 of its April 9, 2020 request.

   F.   The FBI refused to provide the codenames assigned to Seth Rich and Aaron Rich and failed to include in its declaration whether the FBI conducted searches using the assigned codenames.

   G.   The FBI failed to identify search terms used from "some" of Plaintiff's requests.

   H.   The FBI improperly redacted and withheld responsive records. Specifically, the FBI provided no details about where certain discs addressed in the Seidel Declaration came from, who appears in it, or why it was obtained.

   I.   The FBI improperly applied FOIA Exemptions (b)(1)-1, (b)(3)-1,[1] (b)(4)-1,

---

[1] The Plaintiff is not challenging the FBI's assertion of FOIA Exemption Coded Categories (b)(3)-2 concerning Federal Rules of Civil Procedure 6(e) and (b)(3)-3 concerning 18 U.S.C. § 323(d).

(b)(5)-1,[2] (b)(6)/(b)(7)(C)-1 through -6, and (b)(7)(D)-4[3] to withhold in full or in part information contained in the responsive records.

(4)    Within this supplemental declaration, the FBI will (1) demonstrate its searches were adequate and reasonably calculated to locate records responsive to Plaintiff's request; (2) provide additional information concerning the handling of the Plaintiff's requests; and (3) demonstrate Exemptions (b)(1)-1, (b)(3)-1, (b)(4)-1, (b)(5)-1, (b)(6)/(b)(7)(C)-1 through -6, and (b)(7)(D)-4 were appropriately asserted and justified to withhold all or portions of information contained within the responsive records.

## EMAIL AND TEXT SEARCHES

(5)    Consistent with its FOIA obligations to conduct reasonable searches, the FBI searched the places reasonably likely to contain responsive records. The FBI did not search emails and text messages requested by Plaintiff concerning subject, Seth Rich for the following reasons: 1) a search of the CRS would include electronic communications (i.e., emails and text messages) serialized in investigative files[4] consistent with the FBI's Record Management Policy Guide, 0769PG[5]; and 2) there is no reasonable basis to conclude that additional responsive records existed in emails or text messages at the time of the search cutoff date applicable to the

---

[2] FOIA Exemption Coded Category (b)(5)-1 relates to Draft Handwritten Interview Notes and Draft Typed FD-302s.

[3] FOIA Exemption Coded Category (b)(7)(D)-4 relates to Information Provided by a Foreign Government Agency Under Implied Confidentiality.

[4] The FBI located no main investigative records concerning subject, Seth Conrad Rich.

[5] The guide is publicly available in The Vault on www.fbi.gov. *See* https://vault.fbi.gov/records-management-policy-guide-0769pg-part-01-of-01/Records%20Management%20Policy%20Guide%200769PG%20Part%2001%20of%2001/view (last accessed Jun. 13, 2018).

request.

(6)     The FBI conducted an additional review of the content of the August 10, 2016 email chain it produced to Plaintiff herein Bates-numbered FBI(20-cv-447)-1 and -2. The email chain begins with an FBI employee in the FBI's Washington Field Office's Office of Public Affairs ("WFO OPA") contacting other FBI personnel to advise that various news outlets were "[r]eporting today that Julian Assange suggested during a recent overseas interview that DNC Staffer, Seth Rich was a Wikileaks source and may have been killed because he leaked the DNC e-mails to his organization, and that WikiLeaks was offering $20,000 for information regarding Rich's death last month." The WFO OPA employee further advised that additional press coverage was anticipated and wanted to discuss what involvement the Bureau had in the investigation. After a series of adding personnel to the email chain and forwarding of the email, an FBI employee advised "Just FYSA. I squashed this with [redacted]."

(7)     The content of the email and the fact that it was not indexed to subject Seth Rich indicates it was not deemed of sufficient significance for future retrieval. The FBI is required to create and maintain adequate, complete, accurate, and proper documentation of FBI programs, investigations, activities, decisions, and transactions. As discussed in the Fourth Seidel Declaration ¶ 50, indexing information in the CRS is done at the discretion of FBI investigators when information is deemed of sufficient significance to warrant indexing for future retrieval. Accordingly, the FBI has conducted adequate searches of those places reasonably likely to contain records responsive to Plaintiff's request for records concerning subject, Seth Rich.

(8)     Under the FOIA, a federal agency, "upon any request for records which [] reasonably describes such records…, shall make the records promptly available…" 5 U.S.C. § 552(a)(3)(A). If an item requested is not an agency record, it is not subject to the FOIA. Factors

4

relevant to a determination of record status under the FOIA include, among others, (1) the purpose for which the document was created; (2) the degree of integration of the record into the agency's filing system; and (3) the extent to which the record's author or other employees used the record to conduct agency business. See, e.g., *Consumer Fed'n of Am. v. USDA*, 455 F.3d 283, 288-293 (D.C. Cir. 2006). The factors are interrelated, and all the overall emphasis of this analysis is whether the documents are used to conduct the official business of the agency.[6]

(9)    Federal law requires agencies "to make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency, and designed to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities." 44 U.S.C. § 3101. In accordance with this mandate, the FBI has established policies and procedures governing records management, and requires that its personnel:

- Create and maintain adequate, complete, accurate, and proper documentation of FBI programs, investigations, activities, decisions, and transactions.
- Ensure the records they create and/or maintain are filed appropriately in an approved central recordkeeping system, such as Sentinel, and are properly indexed when appropriate.
- Ensure all records made or received while in the FBI's service have been properly recorded or properly and legally disposed of prior to separation from FBI service, in accordance with approved retention schedules.
- Cooperate with FBI Headquarters, Field Office, and Legal Attaché liaisons in the creation, maintenance, and disposition of FBI records.
- Ensure all deletion, destruction, or removal of FBI records complies with policies and procedures established by [IMD].
- Comply with legal hold obligations and rescissions.

---

[6] While not identical, both the definition of "record" for FOIA purposes and the conclusion that the focus is on documents used to conduct official agency business are consistent with the definition of "record" under the Federal Records Act, which governs records management across the Executive Branch. See, 44 U.S.C. § 3301.

FBI's Records Management Policy Guide, 0769PG (Jun. 4, 2015) at 7-8 (Section 2.8).

(10)   The FBI's records management policy mandates that FBI personnel enter all federal records into an authorized FBI recordkeeping system. *Id.* at 26 (Section 4.8.21). FBI personnel are responsible for managing electronic communications they send and receive, including text messages. FBI personnel must determine the record status for each electronic communication and import the ones that are "nontransitory" records into an electronic recordkeeping system such as Sentinel.[7] *Id.* at 22 (Sections 4.8.14 and 4.8.15) and 24 (Section 4.8.17). FBI policy advises that when doubt exists about whether an electronic communication is a nontransitory record, it should be treated as a nontransitory record and imported into Sentinel or a successor central recordkeeping system. *Id.* at 22 (Section 4.8.15).[8]

(11)   While some FBI communications are completed directly in or automatically integrated into FBI record-keeping systems, text messages are not. In the situation where a text message does rise to the level of being a record, it is to be exported and memorialized in an FBI record-keeping system. Unless an agency record is created via text messages, such messages are not incorporated into an FBI record-keeping system because neither law nor policy generally require the preservation of non-records. All of these factors point to the conclusion that FBI text messages residing outside the CRS are not agency records and there was no reasonable basis in this case to believe that additional records existed in FBI text messages at the time of the search cutoff date.

---

[7] A "nontransitory" electronic communication is "a record needed for more than 180 days that provides substantive documentation of the FBI's policies and/or actions, contains important and/or valuable evidentiary information, or is required to be maintained by law or regulation. Records Management Policy Guide, 0769PG (Jun. 4, 2015), at p. 23 (Section 4.8.16).
[8] In order to ensure compliance, the FBI conducts audits of various types of records within its holdings. In 2017, the FBI audited text messages and found no instances of non-compliance.

**PRIVATE EMAIL ACCOUNTS, PRIVATE TEXT MESSAGES AND/OR PRIVATE STORAGE DRIVES**

(12)     As explained supra, the FBI's search was formulated to locate responsive agency records subject to the FOIA.  Private email accounts, private text messages and/or private storage drives would not typically be expected to contain agency records, and Plaintiff has not articulated any facts suggesting that any FBI employee's used private email accounts, private text messages and/or private storage drives to communicate or store agency communications or records that would be responsive to his requests.  In the absence of such facts, it is not reasonable to conclude that a search of private email accounts, private text messages and/or private storage drives would be warranted.

**FBI'S HANDLING OF PLAINTIFF'S FOIA REQUESTS AND RELATED SEARCHES CONDUCTED**

(13)     The FBI assigned four (4) FOIA Request Numbers to address the various portions of Plaintiff's two (2) FOIA requests dated April 9, 2020 and June 1, 2020.  The FBI has also conducted adequate searches to locate records responsive to those requests wherein the request has been properly perfected by either providing a third-party privacy waiver, proof of death, or showing of an overriding public interest which would outweigh the privacy interests of the individual.

FOIPA REQUEST NUMBER: 1465531-000

SUBJECT:  SETH RICH (JANUARY 1, 2016 TO PRESENT)

(14)     FOIPA Request No. 1465531-000 addresses Plaintiff's request dated April 9, 2020, item numbers 1-8 as it relates to subject, Seth Rich.  Descriptions of the searches conducted to locate records concerning Seth Rich are more fully described in the Fourth Seidel Declaration at ¶¶ 63-68.  Specifically, the FBI conducted (1) a CRS index search, on July 6,

2020, using the search terms "Seth Rich" and "Seth Conrad Rich"; (2) a term search of the files

of the Special Counsel's Office ("SCO") maintained by the FBI using the search terms "Seth

Rich" and "Seth Conrad Rich"; (3) a targeted search within its FBI Headquarters, Office of

Public Affairs and its Washington Field Office; (4) a term search of an FBI San Francisco non-

SCO related file using the search terms "Seth Rich" and "Seth Conrad Rich" and (5) the FBI will

conduct future briefing on the additional search efforts and responsive records at a later time

subsequent to releasing it to the Plaintiff.

FOIPA REQUEST NUMBER: 1468034-000

SUBJECT: AARON RICH

(15)    FOIPA Request No. 1468034-000 addresses Plaintiff's request dated April 9,

2020, item numbers 1, and 4-8 as it relates to subject, Aaron Rich.  As described in the Fourth

Seidel Declaration at ¶¶ 22, and 30-38, the FBI informed Plaintiff that he requested information

on a third-party individual and the FBI would neither confirm nor deny the existence of such

records pursuant to FOIA Exemptions 6 and 7(C).  The FBI does not search for responsive

records on third party individuals without a signed privacy waiver, proof of death, or an

overriding public interest.  Accordingly, the FBI did not conduct a search for records responsive

to this request.

FOIPA REQUEST NUMBER: 1468039-000

SUBJECT: DEBORAH SINES

(16)    FOIPA Request No. 1468039-000 addresses Plaintiff's request dated April 9,

2020, item number 7 as it relates to subject, Deborah Sines.  As described in the Fourth Seidel

Declaration at ¶¶ 23 and 30-38, the FBI informed Plaintiff that he requested information on a

8

third-party individual and the FBI would neither confirm nor deny the existence of such records

pursuant to FOIA Exemptions 6 and 7(C). The FBI does not search for responsive records on

third party individuals without a signed privacy waiver, proof of death, or an overriding public

interest. Accordingly, the FBI did not conduct a search for records responsive to this request.

FOIPA REQUEST NUMBER: 1468042-000

SUBJECT: MEETINGS AND COMMUNICATIONS BETWEEN FORMER FBI DIRECTOR ANDREW

MCCABE AND SEYMOUR MYRON "SY" HERSH, WASHINGTON, DC MAYOR MURIEL BOWSER

AND/OR DNC INTERIM CHAIRWOMAN DONNA BRAZILE (JULY 10, 2016 – JULY 10, 2017)

(17)    FOIPA Request No. 1468042-000 addresses Plaintiff's request dated April 9,

2020, item number 9, concerning subject, Meetings and Communications between former FBI

Director Andrew McCabe and Seymour Myron "Sy" Hersh, Washington, DC Mayor Muriel

Bowser and/or DNC Interim Chairwoman Donna Brazile (July 10, 2016 – July 10, 2017).

Descriptions of the searches conducted to locate records concerning this request are more fully

described in the Fourth Seidel Declaration at ¶ 69. Specifically, the FBI conducted a targeted

search for emails through the FBI's Discovery Management Section ("DMS") of former Deputy

Director Andrew McCabe's UNET email account for the date range of July 10, 2016 through

July 10, 2017, using the search terms: "Meeting," "Hersh," "Bowser," "Brazile,"

"Communication," and "Appointment."[9]

APRIL 9, 2020 REQUEST #4 "ANY OTHER PERSON OR PERSONS"

(18)    Item number 4 of Plaintiff's request dated April 9, 2020, seeks records relating to

"[a]ny other person or persons" involved in transferring data from the Democratic National

---

[9] The search included variations and combinations of each of the identified terms.

Committee to Wikileaks in 2016, either directly or through intermediaries.  Per DOJ regulations

implementing the FOIA codified at 28 CFR § 16.3(b), for a FOIA request to be valid, it must

"describe the records sought in sufficient detail to enable Department personnel to locate them

with a reasonable amount of effort.  As written, Plaintiff's does not comport with the

requirements of 28 C.F.R. § 16.3(b).  Given the vague nature of the request for "any other person

or persons" without providing any specific names, the FBI is unable to conduct a search.

(19)    In addition, while re-reviewing the Plaintiff's FOIA request the FBI determined

that Plaintiff's request item number 4 in addition to seeking records concerning subjects Seth

Rich, Aaron Rich, and any other persons or persons, the Plaintiff's request, requested "[a]ny

reports from CrowdStrike, Inc. that were obtained by the FBI while assisting Special Counsel

Robert Mueller's investigation."  The FBI conducted additional searches responsive to this

portion of Plaintiff's request and will be producing a supplemental release of any records

responsive to this request to Plaintiff on May 23, 2022.  The FBI will conduct future briefing on

the additional search efforts and responsive records at a later time, subsequent to releasing it to

the Plaintiff.

FOIPA REQUEST NUMBER 1465971-000

SUBJECT: CROSSFIRE HURRICANE CODE NAMES

(20)    FOIPA Request No. 1465971-000 addresses Plaintiff's request dated June 1,

2020, item numbers 1-3 concerning subject, Crossfire Hurricane Code Names.  In response to

this request the FBI provided an Exemption 6, 7(C) and 7(E) *Glomar* response.  The Fourth

Seidel Declaration addresses this request and the FBI's Exemption 6, 7(C) and 7(E) *Glomar* in

¶¶ 25-29, 30-46, and 70-71.  In addition to addressing the substantial privacy interests of third

parties the FBI informed Plaintiff that merely acknowledging the existence or non-existence of

records responsive to Plaintiff's requests would trigger one or more harms under FOIA Exemption (b)(7)(E) with respect to code names assigned to individuals.  Within paragraph 70 of the Fourth Seidel declaration, the FBI advised that where a *Glomar* response is warranted and appropriate in response to Plaintiff's requests, the FBI does not conduct a search for the requested records.  Conducting a search for records is unnecessary because the response to the requester is not dependent on the result of a search and regardless of the result, the existence or non-existence of records will neither be confirmed nor denied.

(21)    The Fourth Seidel declaration further addresses in ¶¶ 42-46 that the *Glomar* had been partially pierced by the public acknowledgment that Carter Page and Michael Flynn were assigned codenames.  As a result, the FBI conducted searches, more fully described in ¶ 71 of the Fourth Seidel, as term searches within the Crossfire Hurricane and related investigations using among other terms, the terms "Page" and "Flynn," and the assigned codenames.[10] These searches were reasonably calculated to locate the responsive records subject to the FOIA.

## PROPOSED SEARCHES OF OTHER DATABASES

(22)    Plaintiff contends that there may be other databases that were excluded from the FBI's search.  Given the nature of Plaintiff's requests (subjects reasonably expected to be indexed within the automated indices available in Sentinel or located via a targeted search), and the comprehensive nature of the information contained in the Central Records System ("CRS") and the subject matter expertise of FBI personnel who conducted targeted searches here, the targeted search efforts and index searches of the CRS capture the FBI system of records and targeted locations where responsive records could reasonably be expected to be found.  RIDS search policy is grounded on the principle of reasonableness, not mere possibility.  As applicable

---

[10] For clarification, other terms searched included the code names for Page and Flynn.

here, Plaintiff provided no information for RIDS to reasonably conclude records would reside in

other databases.  Moreover, there is no indication from the information located as a result of the

CRS and targeted search efforts that responsive material would reside in any other FBI system,

database, or location; therefore, there is no basis for RIDS to conclude that a search of other

databases could reasonably be expected to locate responsive material subject to the FOIA and

would thus be unduly burdensome in nature.

(23)    The FBI will conduct future briefing on the additional search efforts recently

conducted and responsive records at a later time, subsequent to releasing it to the Plaintiff.

## PLAINTIFF'S ALLEGATIONS OF IMPROPER WITHHOLDINGS/REDACTIONS

### COMPACT DISK & DIGITAL VIDEO DISC

(24)    Plaintiff contends on pages 20-21 of his Opposition that the FBI withheld a

compact disc ("CD") (Bates-422) and digital video disc ("DVD") (Bates-1565) it their entirety

and did not provide any information to indicate where the discs came from, what sort of data

they contain, how much data they contain, or much less the general subject matter of the data.

(25)    Bates 422 and 1565 were fully described in the *Vaughn* Index attached as Exhibit

N to the Fourth Seidel Declaration.  The FBI withheld Bates 422 in its entirety pursuant to FOIA

Exemptions 6, 7(C), 7(D) and 7(E).  The information contained on the CD is described as

"Responsive portions of material provided by a source during the meeting documented in the

FD-302 bates-numbered FBI(20-cv-447) 405-407."  The FD-302 (Bates 405-407) was released

in part to Plaintiff.  The FD-302 was drafted March 15, 2018 and entered on March 26, 2018

documenting a meeting held on March 15, 2018 between a Special Agent, Attorney for Special

Counsel's Office Heather Alpino, an AUSA and another individual.  No additional information

may be disclosed concerning material located on the CD without disclosing information which is

exempt.

(26)    The FBI withheld Bates 1565 in its entirety pursuant to FOIA Exemptions 6, 7(C) and 7(E). The information on the DVD is described as "Responsive audio download of an interview that was mentioned in the FD-302 drafted March 7, 2017 and entered on July 13, 2017 bates-numbered FBI(20-cv-447) 619." The FD-302 (Bates-619) was released in part to Plaintiff. The FD-302 documents the interview of a third-party subject of investigative interest and states among other things, that "Audio downloads of the interview are attached in the 1A Section of the file. For reference, agent transcribed the interviews. Summary transcriptions are also attached in the 1A section of the file." The interview summary transcript was withheld in its entirety pursuant to FOIA Exemptions 6, 7(C) and 7(E) and is identified on the *Vaughn* Index at Bates 620-622.

(27)    In both instances the records contained on the CD and DVD are cross-reference records concerning investigations of third-party subjects of investigative interest to the FBI, in which Seth Rich's name or identifying information are referenced. No additional information may be disclosed concerning these records without disclosing information which is exempt.

EXEMPTION (B)(1)- CLASSIFIED INFORMATION

(28)    Plaintiff challenges the FBI's assertion of Exemption 1. He questions the applicability of national security exemptions to a robbery investigation and speculates that if the FBI possesses records indicating CIA fabricated Guccifer 2.0 or reveal Seth Rich deliberately leaked DNC emails to Wikileaks, that such matters are criminal and national security exemptions would not apply. Plaintiff also speculates that perhaps the FBI and CIA "stiffed a call" and utilized foreign actors to fabricate a pretext for a national security investigation. Plaintiff asks the Court not to overrule Exemption 1 at this point, but to permit further discovery and conduct

an *in camera* review.

(29)    As referenced in ¶¶ 76-93 of the Fourth Seidel declaration, I reviewed the classified records in accordance with the procedural and substantive standards articulated in Executive Order ("E.O.") 13526, which governs the classification and protection of information that affects the national security, and the FOIA statute, 5 U.S.C. § 552(b)(1), which protects from disclosure records that are: a) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy; and b) are in fact properly classified pursuant to such Executive Order. I determined that the release of the withheld information could reasonably be expected to cause serious damage to the national security and is therefore properly classified at the "Secret" level pursuant to E.O. 13526, §§ 1.4(c) and 1.4(d), and is exempt from disclosure.

(30)    More specifically, if the withheld classified information were disclosed, it would reveal non-public intelligence methods currently utilized by the FBI for gathering intelligence data and which is targeted against specific targets of intelligence and foreign counterintelligence investigations and disclose United States' intelligence gathering capabilities against specific targets. This disclosure would cause serious damage to the national security because such disclosure would allow hostile entities to assess the methods used against specific targets, and analysis of this information by adversaries would allow adversaries to glean the criteria used and priority level assigned in this and other current intelligence and counterintelligence investigations. Knowledge of this information would allow adversaries to severely disrupt further intelligence collection by the FBI and disclose to them what information is currently known about a specific target. Disclosure of the withheld classified information would allow criminals to alter their behaviors to elude further detection, avoiding apprehension for their

14

violation of United States' national security and criminal laws.

(31)     I also determined that information within the records concerning the foreign

relations or foreign activities of the United States should be withheld as classified information.

Disclosure of this information, identifying the target, scope, or time frame of intelligence

activities of the United States in or about a foreign country, would result in the curtailment or

cessation of these activities, enable adversaries to assess United States intelligence gathering

capabilities and vulnerabilities, and devise countermeasures.  Further, it would compromise the

safety and use of cooperative foreign sources, curtailing the flow of information from sources.  I

determined that the information is classified at the secret level and should be withheld.

(32)     As to Plaintiff's claim that I classified information to prevent embarrassment, my

determination to classify information was pursuant to the procedural and substantive

requirements of EO 13526, § 1.7 and was not made to conceal violations of law, inefficiency, or

administrative error.  The information was not classified to prevent embarrassment to any

person, organization, or agency.  Further, my decision to classify and withhold information was

not for the purpose of preventing or delaying release of information that otherwise would not

require protection in the interests of national security.

EXEMPTION (B)(3) – INFORMATION PROTECTED BY STATUTE

(33)     Plaintiff challenges the FBI's assertion of FOIA Exemption 3, specifically as it

relates to national security.[11]  Plaintiff does not state a specific concern with regard to Exemption

3 except to incorporate his previous discussion of Exemption 1.  As referenced in ¶¶ 95-98 of the

---

[11] The FBI used FOIA Exemption Coded Category (b)(3)-1 to identify those withholdings
relating to national security.  As stated in Footnote 1, Plaintiff is not challenging the FBI's
assertion of FOIA Exemption Coded Categories (b)(3)-2 concerning Federal Rules of Civil
Procedure 6(e) and (b)(3)-3 concerning 18 U.S.C. § 323(d).

Fourth Seidel Declaration, the FBI asserted Exemption 3 in coded category (b)(3)-1, at times in

conjunction with Exemptions 1 and/or Exemption 7(E), to withhold both classified and

unclassified information that would reveal intelligence sources and methods pursuant to Section

102A(i)(1) of the National Security Act of 1947 ("NSA"), as amended by the Intelligence

Reform and Terrorism Prevention Act of 2004 ("IRTPA").  As a member of the Intelligence

Community, the FBI is required to protect "national intelligence and intelligence sources and

methods and activities from unauthorized disclosure".  The FBI withheld information, in coded

category (b)(3)-1, that it determined to be intelligence source and method and activity

information.  The FBI has no discretion to disclose intelligence sources and methods.  Thus, the

FBI properly withheld this information pursuant to FOIA Exemption (b)(3), in conjunction with

Exemptions 1 and/or 7(E).

EXEMPTIONS (B)(6) AND (B)(7)(C) – UNWARRANTED INVASION OF PERSONAL PRIVACY

(34)    Plaintiff challenges the FBI's assertions of FOIA Exemptions (b)(6) and (b)(7)(C)

as it relates to the names and/or information of Aaron Rich and Deborah Sines.  Specifically, he

contends that Aaron Rich and Deborah Sines waived all privacy claims because they publicly

commented about their roles in the Seth Rich investigation.  He further contends the FBI

protected the identities of government personnel, informants, and witnesses, but openly

published the name of witness Jason Fishbein on Bates-numbered pages 10-11 and 22-23.

(35)    As addressed in the Fourth Seidel Declaration ¶¶ 123-125 the FBI is required to

balance the privacy interests of the individuals mentioned in the responsive records against any

public interest in disclosure.  After satisfying the threshold requirements and before asserting

Exemptions (b)(6) and (b)(7)(C), the FBI must balance the privacy interests of the individuals

mentioned in these records against any public interest in disclosure.  First, the FBI determines

the nature and strength of the privacy interest of the individuals.  Second, the FBI considers what public interest would be served by disclosure of the individuals' identities and whether that public interest outweighs their privacy interests.  For purposes of these exemptions, a public interest exists only when information about an individual would significantly increase the public's understanding of FBI operations and activities – i.e., the FBI's performance of its mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners. Here, in each instance where information was withheld pursuant to Exemptions (b)(6) and (b)(7)(C), the FBI determined that the individuals' privacy interests outweighed any public interest in disclosure and would not significantly increase the public's understanding of FBI operations and activities.

(36)    Plaintiff expressed concern that the FBI openly published the name of alleged witness Jason Fishbein on Bates-numbered pages 10-11 and 22-23; however, the FBI's release of the name Jason Fishbein was a result of the official acknowledgment of Mr. Fishbein within the "Report On the Investigation Into Russian Interference In the 2016 Presidential Election" ("SCO Report").  With regard to Plaintiff's challenge to the FBI's alleged redaction of information of Aaron Rich and Deborah Sines, the Plaintiff has not provided a signed privacy waiver executed by either individual that would authorize the FBI to release information from FBI files to the Plaintiff, if such information exists.  Accordingly, as to Plaintiff's April 9, 2020 FOIA request for records concerning Aaron Rich and Deborah Sines, the FBI is relying on a privacy Glomar and will neither confirm nor deny the existence or non-existence of records pursuant to FOIA

Exemptions (b)(6) and (b)(7)(C), 5 U.S.C. § 552b(C) and (b)(7)(C).

(37)   Plaintiff also claims that the FBI's privacy claim with respect to Seth Rich is misguided because death greatly diminishes privacy rights and that as to the Seth Rich laptops, claims the FBI had a duty to segregate exempt materials (e.g., Facebook posts) from non-exempt materials. In ¶¶ 136-140 of the Fourth Seidel Declaration, the FBI withheld information derived from Seth Rich's personal laptop in its entirety as such information would violate the privacy rights of the survivors of Seth Rich. Specifically, in ¶ 130 the FBI states that "Seth Rich has no privacy interests due to being deceased, however, the same cannot be said for those that survive him and are left to cherish his memory." In balancing the survivors' privacy interest in non-disclosure against the public interest in disclosure the FBI determined that the survivors' privacy interest outweighs the public's interest in disclosure, as disclosure of the information on Seth Rich's personal laptop would not shed light on the operations and activities of the FBI. Further, the information on Seth Rich's personal laptop, in and of itself, would not demonstrate how the FBI performed its statutory mission and thus, would not significantly increase the public's understanding of the FBI's operations and activities. Accordingly, the FBI properly protected the privacy interests of the survivors of Seth Rich pursuant to FOIA Exemptions 6 and 7(C).

EXEMPTION (B)(4)-1: CONFIDENTIAL COMMERCIAL INFORMATION

(38)   The Plaintiff contends on pages 27-28 of his Opposition that a ten (10) page document has been improperly withheld pursuant to Exemption 4 and the Fourth Seidel declaration offers little detail about the nature of the document. Plaintiff also suggest that this document might contain Seth Rich's financial transactions, because Sy Hersh testified that Seth Rich had requested payment form Wikileaks. Plaintiff further requests that the Court direct the

18

FBI to produce the report for *in camera* review.

(39)     The FBI's justification for withholding information pursuant to FOIA Exemption

coded category (b)(4)-1 is discussed in ¶¶ 102-103 of the Fourth Seidel Declaration.  As set forth

therein, the FBI located a ten (10) page report, clearly marked as "COPYRIGHT

PROPRIERTARY AND CONFIDENTIAL – NOT TO BE SHARED WITH THIRD

PARTIES."  In order to determine whether or not this information qualified for protection

pursuant to Exemption 4, on May 19, 2021, the FBI contacted the private commercial institution

to establish if the information located by the FBI was customarily treated as private by the

commercial institution; and whether or not they provided this information to the FBI with an

assurance of privacy.  A response was received from the private commercial institution, and the

FBI determined this confidential information was provided under an assurance of confidentiality

and is exempt pursuant to Exemption 4.  Additional information concerning Exemption 4, will be

provided to the Court *in camera, ex parte* as it cannot be further discussed on the public record

without revealing exempt information.

### EXEMPTION (B)(5): PRIVILEGED INFORMATION

(40)     Plaintiff contends on page 28 of his Opposition that there is good reason to

believe that the crime-fraud exception might apply to documents otherwise subject to Exemption

(b)(5).  He specifically encourages the Court to pay particularly close attention to Paragraphs

109-111 of the Fourth Seidel declaration, which addresses draft FBI 302 Forms.  Plaintiff does

not argue the records are not deliberative, rather that the crime-fraud exception applies.  In

support, Plaintiff offers only mere speculation fueled by his own opinions about the

investigation.  The below paragraph provide further details about the FBI's justification for

asserting Exemption (b)(5) in the challenged records.

(41)     As referenced in the Fourth Seidel Declaration at ¶¶ 104-118 the FBI asserted
FOIA Exemption (b)(5), to withhold both privileged deliberative and attorney work product
materials.  One category of privileged deliberative material the FBI withheld are draft
handwritten notes and draft typed FD-302s.  This category of material is discussed more fully in
the Fourth Seidel Declaration at ¶¶ 109-111 which states among other things, that the interview
notes and draft typed FD-302s at issue herein are inherently deliberative in nature as the
information documented during the interview does not always appear verbatim in the final
interview record. The thoughts, ideas, and impressions contained in the handwritten interview
notes at issue here were edited and distilled during the editorial process for the creation of the
final agency decision subsequently reflected in multiple FD-302's; hence its predecisional
nature.  The FBI processed and released to Plaintiff the responsive portions of the final FD-302s
corresponding to the handwritten notes and draft typed FD-302s herein.  The FBI properly
withheld this information pursuant to Exemption 5 and confirmed that the records at issue were
created less than 25 years before the date of Plaintiff's request. Plaintiff has provided no
evidence to indicate that the crime-fraud exception might waive  Exemption (b)(5) as to the draft
FBI FD-302s responsive to Plaintiff's FOIA request herein.

EXEMPTION (B)(7)(D): CONFIDENTIAL SOURCE INFORMATION

(42)     Plaintiff contends on page 29 of his Opposition that there is more than enough bad
faith to waive Exemption (b)(7)(D)-4 as the FBI and CIA are conspiring with foreign agents or
foreign governments for the purpose of influencing domestic politics and specific to this case,
the American public has a right to know whether the FBI and the CIA conspired with foreign
agents or governments to hide the source of the DNC email leak. Plaintiff does not articulate in

his Opposition any further challenges to the FBI's withholdings pursuant to FOIA Exemption

7(D), specifically in relation to FOIA Exemption Coded Categories (b)(7)(D)-1 through

(b)(7)(D)-3.

(B)(7)(D)-4:  INFORMATION PROVIDED BY A FOREIGN GOVERNMENT AGENCY

UNDER IMPLIED CONFIDENTIALITY

(43)     As referenced in the Fourth Seidel declaration at ¶¶ 152-155, the FBI asserted

FOIA Exemption coded category (b)(7)(D)-4 to withhold information provided by foreign

government agency authorities under an implied assurance of confidentiality.  The FBI has many

agreements with foreign governments under which national security and criminal law

enforcement information is exchanged.  The FBI concluded that the foreign government agency

at issue here expected confidentiality in its dealings with the FBI and with regard to the

information it provided to the FBI is based on the Foreign Government Information

Classification Guide #1 ("G-1 Guide").  As previously stated, the G-1 Guide governs

classification of foreign government information that foreign governments have asked the FBI to

protect over the course of time.  The FBI uses the G-1 Guide to determine the level and duration

of derivative classification of foreign government information, including unmarked internal FBI

documents which are being reviewed for possible classification.  The FBI has conducted the

necessary reviews of this material and determined that the FBI properly concluded that the

foreign government agency whose identity and information were protected within FOIA

Therefore, the FBI properly asserted FOIA Exemption (b)(7)(D)-4 on the records at issue herein.

**PLAINTIFF'S REQUEST FOR IN CAMERA INSPECTION, DISCOVERY**

**& ADDITIONAL SEARCHES**

(44)     Plaintiff incorporated his previously filed Motion for *In Camera* Inspection,

requesting, among other things, production of unredacted copies of all records produced. The FBI's declarations in this case have been submitted in good faith and based on information that was true and correct to the best of my knowledge at the time the declarations were signed. Plaintiff's claim that the FBI acted in bad faith simply because another requester who litigated a similar request received a different result or that the FBI acted in bad faith because facts discussed as relevant to actions taken in response to a different FOIA request is baseless. In fact, information provided in FBI declarations in *Clevenger v. U.S. Department of Justice, et al.*, Civil Action No. 1:18-cv-1568 (E.D.N.Y.), and subsequently filed in other cases meeting the same circumstances, is based on search parameters that differ from the request at issue here. In the Second Seidel Declaration, I addressed why the search results and subject matter of that FOIA request differed from Plaintiff's request. *See* Second Seidel Decl., ¶ 2.

(45)    My declarations submitted in the instant case demonstrate with reasonably specific detail, that the search results in the instant case and the information withheld by the FBI logically falls within the claimed exemptions, are not controverted by contrary evidence in the records, would result in reasonably foreseeable harm if disclosed, and that the FBI's actions were not in bad faith. However, should the Court determine and Order that an *in camera* review of the records is warranted, the FBI will not oppose such an Order.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and

correct.

Executed this _29th_ day of April 2022.

MICHAEL G. SEIDEL
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia

23