**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

**BRIAN HUDDLESTON**,

      Plaintiff,

vs.

**FEDERAL BUREAU OF
INVESTIGATION and UNITED STATES
DEPARTMENT OF JUSTICE**

      Defendant

**Case No. 4:20-cv-447-ALM**

## PLAINTIFF'S SURREPLY IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT and REPLY IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

NOW COMES Brian Huddleston, the Plaintiff, surreplying in opposition to the Defendants' Motion for Summary Judgment (Dkt. #37) and replying in support of his Cross-Motion for Summary Judgment (hereinafter "Cross-Motion") (Dkt. #46):

### Introduction

The Defendants' Combined Reply to Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment and Opposition to Plaintiff's Cross Motion for Summary Judgment (hereinafter "Reply")(Dkt. #54) is remarkable. It begins on a presumptuous note, with the Defendants declaring – without asking the Court – that they will separately brief 205 additional pages that they expect to produce on May 23, 2022. The Plaintiff objects to yet another round of briefing, and he urges the Court to bypass further delays by ordering the Defendants to produce all new records immediately for *in camera* review. The Plaintiff will address the remaining issues in the order that they appear in the Reply.

- 1 -

<u>**Argument**</u>

**1. The Defendants searches were inadequate and unreasonable.**

The Reply is remarkable both for its unresponsiveness and its hubris. With no sense of irony, the FBI again confirms what we already knew, namely that the process for including records in its search indices is completely subjective. And never mind the undisputed evidence that the FBI's search indices already failed to identify nearly 2,000 responsive pages, the FBI presumes to tell the Court that it *still* should trust those search indices. Separately, the FBI suggests that it can ignore longstanding case law and administratively rewrite the definition "agency record," specifically to exclude emails and text messages from that definition. Finally, the Reply ignore the authorities cited in the Cross-Motion. The Defendants' arguments fail completely.

**A. Emails and texts**

In the Cross-Motion, Mr. Huddleston noted that the FBI's justification for refusing to search its email systems was that such a search would not be "reasonable." Cross-Motion 7-9 (citing the record). That was the FBI's *entire* explanation, thus the FBI never explained *why* it would not be reasonable, *e.g.*, whether it would be technologically unfeasible or an undue burden to search email accounts. *Id*. Now, in his fifth declaration, Mr. Seidel again fails to answer that question. Instead, he offers the same worn-out narrative that he has offered before: (1) federal law requires us to preserve and archive records; (2) we are presumed to have followed the law; therefore (3) we must have preserved and archived all responsive records and (4) any such records already would have been discovered in our index searches. Separately, and preposterously, he argues that emails and text messages aren't really "agency records" for

purposes of FOIA. *See* Reply 4 (citing declaration). That claim cannot be reconciled with the law.

"Materials are agency records under FOIA if: (1) the agency created or obtained the relevant records, and (2) the agency is in control of the documents at the time of the FOIA request." *Fox News Network, LLC v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d 158, 160 (2d Cir. 2010), citing *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144–45, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989). Congress explicitly defined agency records to include information "in any format, including an electronic format." 5 U.S.C. §552(f)(A)(2). Even if the definition was unclear (and it's not), Mr. Huddleston *explicitly* requested "electronic" communications about Seth Rich. *See* First Amended Complaint (hereinafter "FAC") (Dkt. #3) 2, ¶6.

In the Cross-Motion, Mr. Huddleston cited two cases for the premise that "the government cannot prevail [on a FOIA motion for summary judgment] when it arbitrarily refuses to search its email systems." Cross-Motion 8, citing *Council on Am.-Islamic Relations-Washington v. United States Customs & Border Prot.*, 492 F. Supp. 3d 1158, 1165 (W.D. Wash. 2020) *and Neighborhood Assistance Corp. of Am., v. United States Dep't of Hous. & Urban Dev.*, 19 F. Supp. 3d 1, 9 (D.D.C. 2013). The Defendants completely ignored those cases, and for good reason: they knew they didn't have a leg to stand on.

In both of the foregoing cases, the Government refused to search for emails even after the requestors identified individuals who were likely to have responsive emails. The same is true here. The FBI refuses, for example, to search the email accounts of the personnel involved in the Seth Rich investigation, *e.g.*, the agents who interviewed witnesses and then submitted reports

based on those interviews.[1] *See* Fifth Declaration of Michael G. Seidel (hereinafter "Fifth Declaration") (Dkt. #54-1) ¶¶5-11. It should be obvious that agents who interviewed witnesses about Seth Rich would very likely email other agents about those interviews, and that alone is sufficient to compel a search. *See, e.g., Akel v. United States Dep't of Justice*, No. CV 20-3240 (RDM), 2021 WL 6196984, at *4 (D.D.C. Dec. 30, 2021)(ordering the Department of Justice to search emails of an employee *likely* to contain relevant information) and citing *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999)("[I]f an agency has reason to know that certain places might well contain responsive documents, it is obligated under FOIA to search [those places] barring an undue burden."). And the FBI has already acknowledged that it is *capable* of searching email accounts; it just doesn't *want* to search email accounts for information about Seth Rich. Paragraph 17 of the Fifth Declaration is particularly telling in this regard. The FBI searched the emails of former FBI Deputy Director Andrew McCabe for the terms "Meeting," "Hersh," "Bowser," "Brazile," "Communication," and "Appointment," but it never searched for the term "Seth Rich." Why not? Would it really have been so difficult to search for one more name? Of course not. The FBI just wants to hide the ball whenever Seth Rich's name is mentioned.

---

[1] Notably, Mr. Huddleston's FOIA request was not limited to searches of the email and text messaging accounts of only designated personnel, thus Mr. Huddleston implicitly requested a search of the FBI's *entire* email and text messaging systems. That is particularly important in light of one of the requests in the April 9, 2020 letter, namely a request for the following:

> All documents, communications, records or other evidence reflecting orders or directions (whether formal or informal) for the handling of any evidence pertaining to Seth Rich's or Aaron Rich's involvement in transferring data from the Democratic National Committee to Wikileaks.

FAC 3, ¶6. Given the fact that nearly 2,000 pages of evidence were excluded from the FBI's indexing systems, one must ask whether FBI personnel were directed to exclude Seth Rich from the indexing systems. Any such "orders or directions" obviously would not be found in the indexing systems themselves, so the most likely way to find those orders would be to search <u>all</u> emails within the relevant time frame.

It is worth noting again that the FBI released emails about Seth Rich purely by coincidence in an unrelated case. *See* Plaintiff's Response in Opposition to Motion to Stay (Dkt. #11) 4-5. Those emails were <u>not</u> discovered during the FBI's initial search for records about Seth Rich in 2018. *Id*. Having been presented with those emails in this case, the FBI still refuses to search for any additional communications *from among the same agents*. In fact, Mr. Seidel's declaration seems to suggest that the FBI refused to search for anything *in the same email chain* beyond what has already been produced. Seidel Declaration ¶6. [2] Once again, Mr. Seidel's declaration does nothing to overcome the plain evidence of a cover-up. Consider the following excerpt: "As discussed in the Fourth Seidel Declaration 1 50, indexing information in the CRS is done at the discretion of FBI investigators when information is <u>deemed of sufficient significance</u> to warrant indexing for future retrieval." Fifth Declaration of Michael G. Seidel (hereinafter "Seidel Declaration") ¶7 (emphasis in original). What exactly does that mean? "Significance" to whom or what? And what exactly are the criteria for determining whether something is "of sufficient significance"? The FBI demonstrates yet again that its vaunted indexing system is subjective, unreliable, and easily manipulated. Ironically, the preceding paragraph in Mr. Seidel's declaration proves that point. Mr. Seidel offers a bogus excuse for the FBI's failure to in 2018 to identify and produce emails about Seth Rich:

> The FBI conducted an additional review of the content of the August 10, 2016 email chain it produced to Plaintiff herein Bates-numbered FBI(20-cv-447)-l and -2. [Actually, it's a text chain, not an email chain. *Id*.]. The email chain begins with an FBI employee in the FBI's Washington Field Office's Office of Public Affairs ("WFO OPA") contacting other FBI personnel to advise that various news outlets were "[r]eporting today that Julian Assange suggested during a recent overseas interview that DNC Staffer, Seth Rich was a Wikileaks source and may have been killed because he leaked the DNC e-mails to his organization, and that WikiLeaks was offering $20,000 for information regarding Rich's death last month." The WFO OPA employee further advised that additional press

---

[2]  These relentless ambiguities are the reason that Mr. Huddleston asked the Court to order Mr. Seidel to testify at an evidentiary hearing.

coverage was anticipated and wanted to discuss what involvement the Bureau had in the investigation. After a series of adding personnel to the email chain and forwarding of the email, an FBI employee advised "Just FYSA. I squashed this with [redacted]."

Seidel Declaration ¶6. The FBI may not consider that information "of sufficient significance," but Mr. Huddleston does, and he is not alone. Multiple bloggers thought the information was "of sufficient significance" to warrant a story. *See, e.g.,* John B. Nevin, "Documents Released Pertaining to FBI Investigation into Seth Rich Murder," April 29, 2021 *UncoverDC*, https://uncoverdc.com/2021/04/29/documents-released-pertaining-to-fbi-investigation-into-seth-rich-murder/; Larry Johnson, "Turns Out the FBI Has Been Hiding More Seth Rich Documents," November 2, 2020 *Gateway Pundit*, https://www.thegatewaypundit.com/2020/11/turns-fbi-hiding-seth-rich-documents/; and "Seth Rich And The FBI Investigation – A Ball Of Confusion," April 26, 2021 Liberty Nation News, https://www.libertynation.com/seth-rich-and-the-fbi-investigation-a-ball-of-confusion/.

Mr. Seidel argues that an email or text is not "of sufficient significance," and therefore not an agency record, unless FBI personnel arbitrarily decide that is.[3] In fact, Mr. Seidel argues that no document is an "agency record" unless FBI personnel enter it into the indexing system. He cites *Consumer Federation of America v. U.S. Department of Agriculture*, 455 F.3d 283, 287

---

[3] Mr. Seidel's disclosure of the "sufficient significance" standard prompted Plaintiff's Counsel to retrieve and review a December 9, 2020 email from Defendants' Counsel to Plaintiff's Counsel. Of particular interest was the following paragraph:

FBI has completed the initial search identifying approximately 50 cross-reference serials, with attachments totaling over 20,000 pages, in which Seth Rich is mentioned. FBI has also located leads that indicate additional potential records that require further searching. At this time, FBI anticipates processing only the pages where Seth Rich is mentioned, along with perhaps another page or two in each situation to provide context.

December 9, 2020 Email from Andrea Parker to Ty Clevenger (attached as Exhibit 1). Mr. Huddleston must now ask whether the FBI improperly pared down the number of responsive documents from 20,000 to roughly 2,000 by utilizing something akin to the "sufficient significance" standard. Such questions can only be answered if discovery is permitted.

(D.C. Cir. 2006) for guidance on what is an "agency record," but that case does not help his

argument:

> We must… be careful to ensure that "[t]he term 'agency records' ... not be manipulated to avoid the basic structure of the FOIA: records are presumptively disclosable unless the government can show that one of the enumerated exemptions applies." *Bureau of Nat'l Affairs, Inc. v. United States Dep't of Justice,* 742 F.2d 1484, 1494 (D.C.Cir.1984). As the Supreme Court has repeatedly reminded us, in enacting FOIA, "Congress sought to open agency action to the light of public scrutiny." *Tax Analysts,* 492 U.S. at 142, 109 S.Ct. 2841 (internal quotation marks omitted); *see Department of Justice v. Reporters Comm. for Freedom of Press,* 489 U.S. 749, 772, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989); *Department of Air Force v. Rose,* 425 U.S. 352, 372, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976).

*Consumer Federation*, 455 F.3d at 287 (emphasis added).[4] And Mr. Seidel misrepresents

*Consumer Federation's* holding about whether a document must enter into "agency files" in

order to be considered an "agency record." That court held that "agency records" were not

defined by whether a document was placed in "agency files." *Id*. at 290. In any event, that point

is irrelevant because emails and/or text messages are retrievable records, ergo inherently part of

"agency files." *See, e.g., Akel v. United States Dep't of Justice*, No. CV 20-3240 (RDM), 2021

WL 6196984, at *4 (D.D.C. Dec. 30, 2021)(ordering the Department of Justice to search for

emails in archives). For all of the foregoing reasons, the FBI should be ordered to search <u>all</u>

email, text messaging, and other communication systems.

## B.  Private communications

With respect to searches of private communications, the Defendants' argument is the

same old same old: (1) federal law requires us to preserve and archive records; (2) we are

---

[4] *Consumer Federation* raises another unanticipated problem for Mr. Seidel and the FBI. As noted above, the FBI searched the emails of former FBI Deputy Director Andrew McCabe to determine whether he met with individuals specified by Mr. Huddleston. In *Consumer Federation*, the D.C. Circuit ordered the Department of Agriculture to produce electronic calendars to a requestor who was trying to determine with whom agency officials were meeting. The FBI apparently did not search the calendars, official notebooks, etc. of Mr. McCabe, and it should be ordered to do that.

presumed to have followed the law; therefore (3) we must have preserved and archived all responsive records and (4) any such records already would have been discovered in our searches. Given all of the chicanery in this case thus far, those are no longer reasonable presumptions. Nonetheless, Mr. Huddleston would not object if the Court chose to order *in camera* review of existing records before deciding whether to order searches of private communications.

### C. FBI's Handling of Plaintiff's FOIA Requests and Related Searches Conducted

In the Cross-Motion, Mr. Huddleston objected to the FBI's tricky attempt to hide the fact that it had never searched for records in locations that were *specifically* named by Mr. Huddleston. In particular, Mr. Huddleston objected because the FBI had never searched for records in its information technology division, despite the fact that Mr. Huddleston specifically sought records from that location. *See* Cross-Motion 10-13, citing the record. Likewise, the Cross-Motion chided the FBI for trying to hide the fact that it never conducted a broader search for individuals involved in the transfer of DNC to Wikileaks. *Id*. at 10. Finally, the Cross-Motion noted that the FBI quietly ignored Mr. Huddleston's request for reports produced by CrowdStrike, Inc. regarding the DNC emails. *Id*. Only after being confronted in the Cross-Motion about these hide-the-ball did the FBI attempt to address them: (1) the FBI belatedly agreed to search for records in its Operational Technology Division, *see* Defendants' Unopposed to Stay Briefing Schedule (Dkt. #48); (2) the FBI belatedly came clean and declared that it is not going to search for records about other individuals who might have been involved in the DNC email leaks, *see* Fifth Declaration ¶¶5-11; and (3) the FBI belatedly agreed to produce reports from CrowdStrike. *Id*. at ¶19. Mr. Huddleston and the Court obviously should have been informed plainly and from the outset that the FBI intended to disregard the three foregoing requests. Instead, the FBI waited until it got caught. Notably, Mr. Seidel makes no attempt in his

Fifth Declaration to explain how the FBI might have accidentally overlooked the three requests, thus the Court can only conclude that it was not an accident at all.

With that in mind, Mr. Huddleston would direct the Court's attention back to the Fifth Declaration. Mr. Seidel purports to clean up the shortcomings flagged in the Cross-Motion, but in reality he does nothing of the sort. Compare Paragraphs 14-16 of the Fifth Declaration with the April 9, 2020 FOIA requests found in Paragraph 6 of the First Amended Complaint. All we know from the Fifth Declaration is what we already knew from the Fourth Declaration: the FBI conducted generic searches for information about "Seth Rich," "Aaron Rich," and "Deborah Sines" in limited locations. And the FBI is still hiding the ball. Consider the request wherein Mr. Huddleston sought the following:

> All documents, records, or communications exchanged with any other government agencies (or representatives of such agencies) since January 1, 2016 regarding (1) Seth Rich's murder or (2) Seth Rich's or Aaron Rich's involvement in transferring data from the Democratic National Committee to Wikileaks.

First Amended Complaint 3, ¶6.  The foregoing request still has not been addressed by the FBI. To some extent, the request circles back to the necessity of email searches. If FBI personnel exchanged communications with the Metropolitan Police Department or the Central Intelligence Agency regarding Seth Rich, then those communications should have been identified and produced. Likewise, if the FBI exchanged reports or analyses with either of those agencies (or any other agencies), then those reports or analyses should have been identified and produced. One cannot determine from Mr. Seidel's latest declaration how the foregoing request was processed or even whether it was processed at all. For this reason alone, the Cross-Motion should be granted and Mr. Seidel should be cross-examined or deposed.

### D.  FBI "Other Databases"

According to the Defendants, "Plaintiff suggests that there may be other databases that the FBI excludes from search indices, so to the extent that they exist, the FBI's failure to search them is inadequate." That statement is disingenuous at best. The Plaintiff has not merely "suggested" that other databases are excluded from its search indices, he has provided strong evidence that other databases are excluded. The FBI belatedly conceded that it needed to search databases in its Operational Technology Division and its Counterintelligence Division, *see* February 23, 2022 Email from Andrea Parker to Ty Clevenger (Exhibit 2), [5] and it has now located another 205 pages of records that did not show up in its index searches. *See* Joint Status Report Regarding New Searches and Proposed Production and Briefing Schedule (Dkt. #50). It is thus reasonable to conclude that the foregoing databases were excluded from the search indices. Mr. Huddleston did not and has not suggested that the FBI should be ordered to search other yet-unknown databases. Instead, he asked the Court to order the FBI to disclose what databases are omitted from its search indices. Once that information is provided, Mr. Huddleston can then decide whether to ask this Court to order searches of those heretofore-unknown databases.

### E.  Codenames

The FBI claims that revealing code names assigned to Seth Rich, Aaron Rich, or Deborah Sines would compromise law enforcement methods, create national security risks, and invade the privacy of Seth, Aaron, and Ms. Sines. The FBI does not, however, offer any explanation about *how* revealing code names would create such dangers. This alone is fatal to the Defendants'

---

[5]  As attested by his electronic signature on this document, Ty Clevenger declares under penalty of perjury under the laws of the United States that all exhibits to this surreply are true and correct copies of the documents that he represents them to be.

arguments. Mr. Huddleston has explained time and again that the FBI must provide detailed explanations in order to support its motion for summary judgment. *See, generally, Shapiro v. United States Dep't of Justice*, 507 F. Supp. 3d 283, 339 (D.D.C. 2020) (recounting long history of conclusory declarations from the FBI and denying summary judgment). Mr. Seidel's latest declaration falls far short of that standard because it offers only generic statements about law enforcement methods, national security risks, and invasions of privacy.

Mr. Huddleston addressed the Defendants' privacy arguments in detail on pages 29-31 of the Cross-Motion. Predictably, the Defendants' ignored those arguments as well as the authorities cited by Mr. Huddleston. And the Defendants' arguments with respect to the law enforcement privilege are baseless.  The Crossfire Hurricane / "Russian collusion" investigation was closed three years ago. *See* Reply 8. Closed investigations generally are not grounds for asserting the law enforcement exemption:

> [T]he cases plaintiff cites, *N.L.R.B. v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978); *Coastal States Gas Corp. v. Department of Justice,* 617 F.2d 854 (D.C.Cir.1980); and *Ehringhaus v. F.T.C.,* 525 F.Supp. 21, 23 (D.D.C.1980) do support the proposition that investigatory files compiled for closed cases may be disclosable. The Supreme Court has written that the exemption under § 552(b)(7) "does not endlessly protect material simply because it was in an investigatory file," *N.L.R.B. v. Robbins Tire & Rubber,* 437 U.S. 214, 230, 98 S.Ct. 2311, 2321, 57 L.Ed.2d 159 (1978), and the D.C. Circuit has stated, "There is no reason to protect yellowing documents contained in long-closed files." *Coastal States Gas Corp.,* 617 F.2d at 870. In addition, the court cannot adequately evaluate claims that documents are exempt as attorney work product without knowing whether they have been prepared in anticipation of specific litigation or for trial. *See Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *Coastal States Gas Corp.,* 617 F.2d at 865 ("[I]t is firmly established that there is no privilege at all unless the document was initially prepared in contemplation of litigation, or in the course of preparing for trial.").
>
> These cases impose an obligation on the defendant to specify whether the investigations listed in the index refer to particular cases or to generalized classes of prospective cases; to disclose whether particular cases are open or closed; and if closed, to explain why documents about them nonetheless remain exempt from disclosure. The defendant is directed to provide this information in its revised index.

*Am. Civil Liberties Union Found. v. U.S. Dep't of Justice*, 833 F. Supp. 399, 406–07 (S.D.N.Y. 1993). If the Defendants are relying on Crossfire Hurricane or any other closed cases, then they should be ordered to disclose that information. And that should apply to *every instance* in which the FBI asserts the law enforcement exemption, not just with respect to the code names. Finally, Mr. Seidel's own declaration acknowledges that the FBI assigns code names during investigations, *see* Fifth Declaration ¶21, so revealing the code names – much less the mere fact that code names were assigned – cannot possibly compromise law enforcement methods.

Finally, the national security argument is baseless. In the Cross-Motion, Mr. Huddleston cited a critical executive order that governs national security classifications:

> In no case shall information be classified, continue to be maintained as classified, or fail to be declassified in order to: (1) conceal violations of law, inefficiency, or administrative error; (2) prevent embarrassment to a person, organization, or agency; (3) restrain competition; or (4) prevent or delay the release of information that does not require protection in the interest of the national security.

Cross-Motion 22, quoting Exec. Order 13,526 § 1.7(a). On pages 22-26 of the Cross-Motion, Mr. Huddleston explained in detail how subsections 1, 2, and 4 prevent the Defendants from asserting national security exemptions. The Defendants' ignored those arguments and authorities in their Reply, thus they have conceded that the national security exemptions do not apply. *Boggs v. Krum Indep. Sch. Dist.*, 376 F. Supp. 3d 714, 722 (E.D. Tex. 2019)(issues are waived if not adequately briefed).[6]

The Defendants also ignored Mr. Huddleston's argument that the FBI should be required to search for records under any code names assigned to Seth Rich or Aaron Rich:

> [T]he Court should note that Mr. Seidel's [Fourth Declaration] does not indicate whether the FBI searched for emails (or any other records) using the code names assigned to Seth or Aaron Rich. Likewise, the declaration of Vanessa R. Brinkman (Doc. No. 37-2) does

---

[6] Furthermore, the Defendants have waived any and all claims to national security exemptions insofar as they failed to address Executive Order 13,526 § 1.7(a).

not indicate whether records were searched via code names. Given the FBI's long history of hiding documents from FOIA requestors, it is entirely reasonable to believe that the FBI may be hiding responsive documents by assigning code names and then omitting those code names from its search parameters. Accordingly, the FBI and SCO should be ordered to search email accounts, text accounts, databases, any search indices, CART, ODT, DITU, etc. using any and all code names assigned to Seth and Aaron Rich. Although the FBI contends that the code names themselves should not be revealed, it could nonetheless produce the responsive documents with the code names redacted. We know this is achievable because that is exactly what the FBI has already done with respect to the records discussed in Paragraphs 28-29 of Mr. Seidel's [Fourth Declaration]. It should be easy enough for the FBI to redact any code names and then insert the name of the person to whom the code name was assigned.

Cross-Motion 17. Insofar as the Defendants failed to address this issue, summary judgment

should be granted to Mr. Huddleston.

### E.  Other persons involved in transferring DNC emails to Wikileaks

In his April 9, 2020 FOIA request, Mr. Huddleston sought records "indicating whether

Seth Rich, Aaron Rich, or any other person or persons were involved in transferring data from

the Democratic National Committee to Wikileaks in 2016, either directly or through

intermediaries." FAC 3, ¶6 (emphasis added). In the Cross-Motion, Mr. Huddleston noted that

the Defendants had ignored his request for records concerning "any other person or persons."

Cross-Motion 18. The Reply ignores that issue once more. Buried away in the Fifth Declaration,

however, is this golden nugget:

Per DOJ regulations implementing the FOIA codified at 28 CFR § 16.3(b), for a FOIA request to be valid, it must "describe the records sought in sufficient detail to enable Department personnel to locate them with a reasonable amount of effort. As written, Plaintiffs does not comport with the requirements of 28 C.F.R. § 16.3(b). Given the vague nature of the request for "any other person or persons" without providing any specific names, the FBI is unable to conduct a search.

Fifth Declaration ¶18. That is truly ridiculous. The joint FBI / SCO investigation of "Russian

collusion" lasted over two years and cost taxpayers $32 million. *See* Katelyn Plantz, "Mueller

investigation cost $32 million, Justice Department says," August 2, 2019 *CNN*,

https://www.cnn.com/2019/08/02/politics/mueller-report-cost/index.html. Mr. Seidel, however,

contends that it is unreasonable to ask Robert Mueller's army of FBI agents and federal

prosecutors what "other person or persons" may have been involved in leaking the emails. No,

Mr. Seidel wants Mr. Huddleston and the undersigned solo practitioner to tell the FBI and the

SCO who really did it. Then and only then will the FBI whose names should be searched in the

FBI's magical indexing systems. Mr. Seidel's explanation is utter nonsense, and it is but one

more example of the Defendants' bad faith.

## 2.  The Defendants misconstrued FOIA exemptions in order to withhold non-exempt records.

As with nearly everything else in the Cross-Motion, the Defendants ignored the

arguments and authorities presented by Mr. Huddleston regarding FOIA exemptions.  He will

sequentially address each of the FOIA exemptions that are improperly relied upon by the

Defendants.

### A. Redactions of Deborah Sines, Seth Rich, Aaron Rich from 302s

The Defendants failed to address any of the arguments found on pages 29-31 of the

Cross-Motion, and the Fifth Declaration merely recycles the same generic statements found in

the Fourth Declaration.  The Defendants have waived the issue by failing to respond to the

Cross-Motion, *Boggs*, 376 F. Supp. 3d at 722, therefore the Cross-Motion should be granted.

### B. Compact Disc & Digital Video Disc

The Defendants claim that a compact disc and a video disc are subject to law

enforcement exemptions. Reply 14. As indicated above, the Defendants are obligated to disclose

whether the investigations in question are open or closed, and the Court should order them to

make those disclosures. Mr. Seidel has admitted, at least implicitly, that the compact disc in

question contains the purported contents of Seth Rich's personal laptop, which were copied *post*

- 14 -

*mortem* by his brother, Aaron Rich. *Compare* Fifth Declaration ¶25 and Fourth Declaration ¶137 *with* Cross-Motion 30-31 (citing the record) and Motion for In Camera Review (Dkt. #28) 10-12 (citing the record). Mr. Huddleston predicted this was the case on pp. 30-31 of the Cross-Motion. Mr. Huddleston further observed that footnote 42 of the Fourth Declaration seems to suggest that the FBI took custody of the laptop itself (the FBI already has acknowledged taking custody of the work laptop). Cross-Motion 30.  In his Fifth Declaration, Mr. Seidel failed to clarify whether the FBI took custody of the personal laptop, and that is not an insignificant matter. Fortunately, Plaintiff's Counsel happened to review a December 9, 2020 email wherein Defendants' Counsel wrote the following:

> FBI is also currently working on getting the files from Seth Rich's <u>personal laptop</u> into a format to be reviewed. As you can imagine, there are thousands of files of many types. The goal right now is to describe, generally, the types of files/personal information contained in this computer. Furthermore, the FBI will continue to evaluate the responsiveness of these files under the FOIA.

December 9, 2020 Email from Andrea Parker to Ty Clevenger (attached as Exhibit 1)(emphasis added). Neither Mr. Seidel nor the *Vaughn* index have ever made any reference to what was found on the personal laptop.[7] The FBI had the ability to search the files and apparently did so, but the *Vaughn* index, the Fifth Declaration, and the Reply say absolutely nothing about the file types or the file contents. Instead, the Reply just offers a shotgun argument about Seth Rich's privacy.  The Court obviously cannot evaluate the Defendants' arguments about privacy without some description of each document, therefore the Court should order the FBI to provide that information.

---

[7]  Mr. Huddleston also requested records reflecting "[a]ll data downloaded from all electronic devices that belonged to Seth Rich as well as all data, documents, records or communications indicating how the devices were obtained and who was responsible for downloading the information." FAC 3, ¶6. Where are the records indicating who downloaded the data? And what about data downloaded from other devices such as cell phones? The FBI left these questions unanswered, therefore it should be subject to discovery.

In the Cross-Motion, Mr. Huddleston explained that metadata from Seth's laptop (or the disc) would be subject to FOIA, *see* Cross-Motion 30, citing *Long v. Immigration & Customs Enf't*, 279 F. Supp. 3d 226, 234 (D.D.C. 2017), but the Reply ignored that issue as well. Mr. Huddleston wants to compare the metadata on the disc to the metadata on the laptop so he can determine whether Aaron Rich tampered with evidence before providing it to the FBI. Insofar as the Defendants failed to address the issue, summary judgment should be granted in favor of Mr. Huddleston.

### C. Exemption 1: National Security

Mr. Huddleston already has set forth extensive evidence that the FBI has acted in bad faith, and that is directly relevant to the Defendants' attempt to invoke national security exemptions. With respect to the issues flagged by Mr. Huddleston, Mr. Seidel response is essentially "Trust us." Thanks, but no thanks. Consider the following excerpt from the Reply:

> The FBI addresses Plaintiff' arguments regarding Exemption 1 in paragraphs 28-32 in the 5th Seidel Declaration, reiterating the procedural and substantive standards that were followed in the classification of the national security information and flatly denying that the information was classified for any of the purely speculative scenarios proposed by the Plaintiff.

Reply 15, citing Fifth Declaration ¶¶28-32. Now consider what Mr. Seidel actually wrote:

> As to Plaintiffs claim that I classified information to prevent embarrassment, my determination to classify information was pursuant to the procedural and substantive requirements of EO 13526, § 1.7 and was not made to conceal violations of law, inefficiency, or administrative error. The information was not classified to prevent embarrassment to any person, organization, or agency. Further, my decision to classify and withhold information was not for the purpose of preventing or delaying release of information that otherwise would not require protection in the interests of national security.

Fifth Declaration ¶32. Mr. Seidel did not address any of the "purely speculative scenarios" found in the Cross-Motion. Instead, he just regurgitated the same old conclusory boilerplate. In other

words, "Trust us." Unfortunately, we are way past that point. Summary judgment should be granted in favor of Mr. Huddleston.

### D. Exemption 3: Information Exempted by Statute

The Defendants' argument with respect to statutory exemptions is just more tedious, conclusory boilerplate. The Cross-Motion speaks for itself.

### E. Exemption 4: Trade Secrets

The Defendants' arguments about trade secrets are addressed in the Plaintiff's Amended Partial Objection to Defendant FBI's Motion for Leave to Submit Exhibit *In Camera* (Dkt. #58). Mr. Huddleston incorporates that document herein by reference.

### F. Exemption 5: Privileged Information

The Defendants argue that handwritten notes and draft 302 forms are exempt from disclosure because they are "privileged deliberative and attorney work product materials." Reply 17-18. The Defendants are wrong as a matter of law. First, let us begin with Mr. Seidel's own definition of a 302 form:

> FD-302s are internal FBI forms in which evidence is often documented, usually the results of FBI interviews. Such evidence and/or interview information may later be used as testimony or evidence in court proceedings/trials.  Additionally, these evidence/interview forms are often incorporated in other FBI documents which disseminate intelligence/investigative information, and can be utilized to set leads in furtherance of the FBI's investigative efforts.

Fourth Declaration, Exh. N (ECF p. #159).  An investigator's interview notes are <u>not</u> exempt from disclosure. *See Cox v. Dep't of Justice*, 504 F. Supp. 3d 119, 155 (E.D.N.Y. 2020) (FBI ordered to produce handwritten notes); and *Williams & Connolly LLP v. U.S. S.E.C.*, 729 F. Supp. 2d 202, 213 (D.D.C. 2010), aff'd sub nom. *Williams & Connolly v. S.E.C.*, 662 F.3d 1240 (D.C. Cir. 2011)(factual material in investigator's handwritten notes had to be produced). The FBI's argument fails for that reason alone, but there's more.

Mr. Seidel's Fifth Declaration actually undermines the Defendants' arguments with respect to privilege. Consider the following excerpt:

> [T]he interview notes and draft typed FD-302s at issue herein are inherently deliberative in nature as the information documented during the interview does not always appear verbatim in the final interview record. The thoughts, ideas, and impressions contained in the handwritten interview notes at issue here were edited and distilled during the editorial process for the creation of the final agency decision subsequently reflected in multiple FD-302's; hence its predecisional nature.

Fifth Declaration ¶41. Now try to reconcile that with Mr. Seidel's own definition of a 302 form in the excerpt above. A 302 form is intended to document evidence, particularly interviews of witnesses, yet "the interview does not always appear verbatim in the final interview record." Instead, the verbatim notes can be "edited and distilled during the editorial process for the creation of [a] final agency decision…" Mr. Seidel has now conceded the very concern that Mr. Huddleston raised in the Cross-Motion, namely that the FBI reserves the right to "edit and distill" <u>evidence</u> "during the editorial process."

Mr. Huddleston is by no means the first person to express alarm about the FBI's reliance on 302 forms. *See, e.g.,* Arseneault & Fassett, LLC, May 22, 2022, "The FBI 302: An Archaic, and Sometimes a Truth-Altering, Law Enforcement Device," <u>https://www.af-lawfirm.com/blog/2020/may/the-fbi-302-an-archaic-and-sometimes-a-truth-alt/</u>. Nearly every small-town police department in the United States utilizes body cameras and records video of every witness interview. *See, e.g.,* National Institute for Justice, U.S. Department of Justice, Research on Body-Worn Cameras and Law Enforcement, January 7, 2022, "Research on Body-Worn Cameras and Law Enforcement," <u>https://nij.ojp.gov/topics/articles/research-body-worn-cameras-and-law-enforcement</u>. The FBI, by contrast, relies solely on written notes. That is troubling enough by itself, but the FBI goes a step further by "editing and distilling" handwritten

notes "during the editorial process" such that "the interview does not always appear verbatim." In other words, the FBI reserves the right to tamper with evidence.

In the Cross-Motion, Mr. Huddleston cited evidence that FBI agents altered 302 forms that were used the criminal prosecution of former National Security Advisor Michael Flynn. Cross-Motion 28. The Department of Justice has publicly admitted that FBI agents altered the 302 forms. *See* Notice of Compliance with Minute Order (Dkt. #259), *U.S. v. Michael T. Flynn*, Case No. 1:17-cr-00232-EGS (D.D.C.)(attached as Exhibit 3). U.S. District Judge Emmett G. Sullivan presided over the *Flynn* case, and he expressed his dismay with the FBI in a minute order. *See* October 23, 2020 Minute Order as to Michael T. Flynn (attached as Exhibit 4). That is troubling enough by itself, but one should remember that the investigation of Mr. Flynn and the investigation of Seth Rich were both part of Crossfire Hurricane. *See, e.g.,* Robert S. Mueller III, "Report On The Investigation Into Russian Interference In The 2016 Presidential Election," ("Mueller Report") Vol. I, p. 48, https://www.justice.gov/archives/sco/file/ 1373816/download, (concerning Seth Rich) and Fifth Declaration ¶21 (concerning Mr. Flynn). Since agents altered 302 forms in one aspect of Crossfire Hurricane, it is not unreasonable to ask whether they altered 302 forms in other aspects of Crossfire Hurricane, *i.e.*, the portions related to Seth Rich. Mr. Huddleston's arguments about the crime-fraud exception are, therefore, entirely legitimate.

In any event, the Court need not reach the crime-fraud issue because *Cox* and *Williams & Connolly* squarely resolve the issue in favor of Mr. Huddleston. The Defendants provide no authority whatsoever in support of their arguments, therefore summary judgment should be granted in favor of Mr. Huddleston.

### G. Exemption 7: Confidential Source Information

Mr. Huddleston has not asked the Court to order the FBI to release information provided confidentially by foreign governments. Instead, he asks the Court to review any such documents *in camera*. Given the FBI's pervasive bad faith in all matters pertaining to Seth Rich, that is not an unreasonable request.

### 3.  Bad Faith

Ironically, the Defendants' argument about bad faith begins with a false statement to the Court. The Defendants claim that Mr. Huddleston's only evidence of bad faith is the fact that the FBI found and produced hundreds of pages about Seth Rich after previously denying in 2018 that it had any such documents. Reply 20-22. The Court need only read this surreply to know that there are numerous demonstrations of bad faith, none of which have anything to do with the fact that the FBI made false statements in 2018.

### 4.  Summary Judgment Evidence

It is a matter of hornbook law that specific rules govern general rules. *See, e.g., In re Andry*, 921 F.3d 211, 214 (5th Cir. 2019), citing *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645, 132 S.Ct. 2065, 182 L.Ed.2d 967 (2012). In their arguments about summary judgment evidence, the Defendants try to turn this premise on its head. Mr. Huddleston cited two cases holding that media reports could be used as summary judgment evidence in a FOIA case. Cross-Motion 2-3, citing *Elec. Frontier Found. v. Dep't of Justice*, 532 F. Supp. 2d 22, 23 (D.D.C. 2008) and *Ctr. for Nat. Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 930 and 946–47 (D.C. Cir. 2003). Likewise, he cited a district court case that relied on media reports to determine whether discovery was warranted. Cross-Motion 3, *Rainsy v. Facebook, Inc.*, 311

F.Supp.3d 1101, 1109 (N.D. Cal. 2019). These cases govern the *specific* issue before the Court, namely whether the Court should permit discovery.

Summary judgment standards in FOIA cases are unique. The court does not decide whether certain facts have been established, but whether discovery should be permitted or whether additional searches should be conducted. *See, e.g., Reprod. Rights & Justice Project v. Dep't of HHS*, 490 F. Supp. 3d 516, 523 (D. Conn. 2020)(citing cases). Mr. Huddleston is not, for example, presenting evidence to the Court so it can decide whether Seth Rich was the source of the infamous DNC leaks. Instead, Mr. Huddleston is trying to provide the Court with reasonable grounds for subjecting the Defendants to discovery. The question, then, is whether Mr. Huddleston can rely on media reports to establish his need for discovery. *Rainsy* resolves that question in Mr. Huddleston's favor, as do *Elec. Frontier Found.* and *Ctr. for Nat. Sec. Studies*.  The Defendants' failure to address these cases is fatal to their argument.[8]

## 5. The Court Should Permit Discovery

The Defendants have had multiple opportunities to come clean. Unfortunately, and as detailed above, they are still playing cute and still hiding records. They acknowledge that bad faith is sufficient reason to permit discovery, Reply 29, citing *Carney v. U.S. Dep't of Justice*, 19

---

[8]  The Defendants objected to two media reports that are not media reports at all, specifically the transcript of the deposition of Deborah Sines and the transcript of the deposition of Sy Hersh. Reply 24, ¶¶8 and 12. The undersigned inadvertently failed to authenticate the Sines transcript, and although he authenticated the Hersh transcript, he inadvertently directed the Court to the wrong page. That issue will be corrected here. As attested by his electronic signature on this document, Ty Clevenger declares under penalty of perjury under the laws of the United States that he personally uploaded (1) a true and correct copy of the transcript of the March 20, 2020 deposition of Deborah Sines at https://lawflog.com/wp-content/uploads/2020/04/2020.03.20-Deborah-Sines-deposition-transcript.pdf; and (2) a true and correct copy of the transcript of the July 15, 2020 deposition of Seymour "Sy" Hersh at https://lawflog.com/wp-content/uploads/2020/12/2020.12.30-Exhibit-8-Hersh-depositionstamped.pdf. Mr. Huddleston cited the Sines transcript on p. 13 of the Cross-Motion and the Hersh transcript on pp. 12 and 27 of the Cross-Motion.

F.3d 807, 812 (2d Cir. 1994), thus they acknowledge the need for discovery. Summary judgment should be granted in favor of Mr. Huddleston.

**6. The Court Should Conduct an In Camera Review**

The U.S. District Court for the District of Columbia recently ordered an *in camera* review of records related to "Russian collusion," specifically to determine whether the government was improperly redacting information in response to FOIA requests. *See Elec. Privacy Info. Ctr. v. United States Dep't of Justice*, 442 F. Supp. 3d 37, 47–48 (D.D.C. 2020). Since that time, the Government's chicanery has only gotten worse. The Court should therefore conduct an *in camera* review of all documents redacted or withheld by the Defendants.

**Conclusion**

The Defendants have waived most issues by failing to respond to those issues. *Boggs*, 376 F. Supp. 3d at 722. The FBI, in particular, has consistently acted in bad faith, and the testimony of Mr. Seidel is not credible. The Defendants' motion for summary judgment should therefore be denied, and Mr. Huddleston's Cross-Motion should be granted in full.

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
212 S. Oxford Street #7D
Brooklyn, New York 11217
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Counsel for Plaintiff Brian Huddleston**

## **Certificate of Service**

On May 31, 2022, I filed a copy of this response with the Court's ECF system, which should result in automatic notification via email to Asst. U.S. Attorney Andrea Parker, Counsel for the Defendants, at andrea.parker@usdoj.gov.

**/s/ Ty Clevenger**
Ty Clevenger