# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| BRIAN HUDDLESTON,<br>*Plaintiff*,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION and UNITED STATES DEPARTMENT OF JUSTICE,<br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 4:20-CV-00447<br>Judge Mazzant |

## MEMORANDUM OPINION & ORDER

Pending before the Court are Defendants' Motion for Leave to Submit Exhibit *In Camera* (Dkt. #55), and Plaintiff's renewed Motion for *In Camera* Review (Dkt. #46; Dkt. #58). After reviewing the motions and the applicable law, the Court finds that Defendants' motion should be **GRANTED**, and Plaintiff's motion should be **DENIED.**

## BACKGROUND

This case arises out of Brian Huddleston's ("Huddleston") Freedom of Information Act ("FOIA") requests against Defendants the Federal Bureau of Investigation (the "FBI") and the Department of Justice (the "DOJ") (collectively, the "Government") (Dkt. #1). On June 15, 2021, Huddleston filed a Motion for *In Camera* Review of "all responsive documents" in unredacted form that the Government allegedly improperly withheld or redacted (Dkt. #28). At the time, the Government's production of documents was still ongoing. Accordingly, the Court found Huddleston's request premature and denied *in camera* review (Dkt. #32). However, the Court denied the motion without prejudice, indicating that it could be refiled upon completion of the Government's production.

Approximately six months later, on December 26, 2021, the Government filed a Motion

for Summary Judgment (Dkt. #39). The Government attached multiple documents relevant to the motions presently before the Court:

(1) The FBI's *Vaughn* index (Dkt. #39, Exhibit 1 at pp. 156–243);

(2) The DOJ's *Vaughn* index (Dkt. #39, Exhibit 2 at pp. 49–64);

(3) The Declaration of Michael G. Seidel, Section Chief of the Record/Information Dissemination Section, Information Management Division of the FBI, in support of the FBI's *Vaughn* index (Dkt. #39, Exhibit 1 at pp. 1–89);

(4) The Declaration of Vanessa R. Brinkman, Senior Counsel in the Office of Information Policy ("OIP") of the DOJ, in support of the DOJ's *Vaughn* index (Dkt. #39, Exhibit 2 at pp. 1–35); and,

(5) The Declaration of Theodore B. Smith, Attorney-Advisor with the Executive Office for United States Attorneys of the DOJ, in support of the DOJ's *Vaughn* index (Dkt. #39, Exhibit 3).

The *Vaughn* indices reference approximately 1,596 pages of documents. Of those documents, the Government withheld 1,469 pages under FOIA exemptions "or as duplicates to material reviewed and processed elsewhere in the productions" previously provided to Huddleston (Dkt. #39 at p. 21).

On February 7, 2022, Huddleston filed a response to the Government's motion for summary judgment, in which Huddleston renewed his original request for *in camera* review (Dkt. #46). On May 2, 2022, the Government filed the present motion for *in camera* review of a ten-page report withheld under FOIA Exemption 5 (Dkt. #44). Huddleston filed his response on May 7, 2022, again requesting *in camera* review "of all documents withheld or redacted" (Dkt. #58).

**LEGAL STANDARD**

The FOIA, 5. U.S.C. § 552, mandates that government agencies make available to the public their records, and embodies a general philosophy of full disclosure by the agency. *Halloran*

*v. Veterans Admin.*, 874 F.2d 315, 318 (5th Cir. 1986). Upon receipt of a request for records, the agency must make the records promptly available to the requesting party, unless the records fall under one of nine exemptions listed in the FOIA. 5 U.S.C. §§ 552(a), (b). When an agency asserts that documents or portions of documents are exempt from disclosure under one of the exemptions, a district court conducts a *de novo* review to ascertain whether the claimed exemption applies. 5 U.S.C. § 552(a)(4)(B). An agency has the burden of proving that particular documents are exempt from disclosure. *Id.*; *Sharyland Water Supply Corp. v. Block*, 755 F.2d 397, 398 (5th Cir. 1985).

In the course of its *de novo* review, the district court may exercise its discretion and conduct an *in camera* review of the challenged documents. 5 U.S.C. § 552(a)(4)(B); *see also N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978); *Stephenson v. I.R.S.*, 629 F.2d 1140, 1145 (5th Cir. 1980). While the FOIA "leaves to the [district] court's discretion whether to order an examination of the contents of the agency records at issue, in camera," in determining whether the claimed exemptions apply, "the legislative intent for exercise of this discretion is relatively clear." *Stephenson*, 629 F.2d at 1144. "This is because 'in instances where it is determined that records do exist, the [d]istrict [c]ourt must do something more to assure itself of the factual basis and bona fides of the agency's claim of exemption than rely solely upon an affidavit.'" *Batton v. Evers*, 598 F.3d 169, 175–76 (5th Cir. 2010) (citing *Stephenson*, 629 F.2d at 1145).

Further, in analyzing the affidavits and declarations submitted by the government, the agency is entitled to a "presumption of legitimacy" unless there is evidence of bad faith in handling the FOIA request. *Id.* (citing *U.S. Dep't of State v. Ray*, 502 U.S. 164, 179 (1991)). "The presumption of legitimacy, however, does not relieve the withholding agency of its burden of

proving that the factual information sought falls within the statutory exemption asserted." *Id.* (citing *Stephenson*, 629 F.2d at 1145).

**DISCUSSION**

Presently before the Court are two competing motions for *in camera* review. On one hand, the Government seeks *in camera* review of a single ten-page document (Dkt. #39, Exhibit 1 ¶ 103). On the other hand, Huddleston "seeks *in camera* review of all documents withheld or redacted" by the Government (Dkt. #58 at p. 1). The Court will take both motions under consideration.

**I. *In Camera* Review of the Report**

As stated, the Government requests the Court conduct an *in camera* and *ex parte* review of a ten-page document "marked as 'COPYRIGHT PROPRIETARY AND CONFIDENTIAL – NOT TO BE SHARED WITH THIRD PARTIES,'" and identified as Bates pages FBI (20-CV-447)-637 through -646 (Dkt. #55 at p. 1) (the "Report"). The Government withheld the Report pursuant to Exemption 4 of the FOIA because it contains information of a proprietary nature that "originated with a private commercial institution" (Dkt. #44 at p. 2). The Government has not disclosed a description of the document in either of its *Vaughn* indices. Instead, the Government now petitions the Court to review the propriety of the exemption *in camera* and *ex parte* because it "cannot explain the Exemption 4 information on the public record without harming the Exemption 7(E) protection," which protects methods the Government uses to obtain and collect information (Dkt. #55 at p. 4). Huddleston does not object to *in camera* review of the Report. However, Huddleston does object "to *in camera* review of the [Report] without permit[ing] [Huddleston's counsel] to view [the] document subject to an 'attorney eyes only' protective order" (Dkt. #58 at p. 1).

The purpose of FOIA is to "pierce the veil of administrative secrecy and to open agency

action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976). A detailed description of any exempted information must be submitted by the agency to the FOIA requestor "unless including that indication would harm an interest protected by the exemption . . . under which the deletion is made." 5 U.S.C. § 522(b). Under such circumstances, *in camera* review is appropriate to determine the eligibility of the exemptions of undisclosed records where the disclosure risks revealing the very information being withheld. 5 U.S.C. § 552(a)(4)(B), (b); *see also McNamera v. U.S. Dep't of Just.*, 974 F. Supp. 946, 953 (W.D. Tex. 1997) (citations omitted).

Here, the Government withheld the Report and a description of its contents under FOIA Exemptions 4 and 7(E)-6. Accordingly, and particularly considering that *in camera* review of the Report is unopposed, *in camera* review is appropriate to determine the eligibility of these exemptions. *McNamera*, 974 F. Supp. at 953. Further, because the Court cannot determine whether the Report should be produced until after it has conducted *in camera* review, the Court will reserve ruling on whether the Report should be produced to Huddleston under an "Attorney's Eyes Only" protective order until after *in camera* review is completed.

## II. *In Camera* Review of "All Documents"

Huddleston "seeks *in camera* review of all documents withheld or redacted by the FBI, not just a single document" for two reasons (Dkt. #58 at p. 1). First, Huddleston claims that the Government's bad faith actions demand the review of all withheld documents (Dkt. #46). Second, Huddleston requests that the Court review documents withheld under Exemption 5 pursuant to the crime-fraud exception, arguing that it may be applicable "[g]iven the chicanery described thus far" (Dkt. #46 at p. 28). The Court will address each of Huddleston's arguments in turn.

**A. Bad Faith**

"To the extent an agency withholds information pursuant to a FOIA exemption, the agency [ ] shoulders the burden of identifying the documents at issue and explaining why they fall under the stated exemption." *Morgan v. F.B.I.*, No. A-15-CA-1255, 2016 WL 7443397, at *2 (W.D. Tex. May 24, 2016) (citing *Cooper Cameron Corp. v. Dep't of Labor, OSHA*, 280 F.3d 539, 543 (5th Cir. 2002)). The agency may satisfy its burden by submitting "reasonably detailed, nonconclusory affidavits." *Weisberg v. U.S. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980). The agency's affidavits are generally entitled to a presumption of legitimacy unless there is evidence suggesting the agency handled the FOIA request in bad faith. *Batton*, 598 F.3d at 175. Where there is evidence of bad faith, *in camera* review is appropriate. 5 U.S.C. § 552(a)(4)(B); *see also Payne v. Dep't of Just.*, 121 F.3d 704, 1997 WL 450139 (5th Cir. 1997) (per curiam) (utilizing a "tangible evidence" standard for bad faith analysis under FOIA).

Here, Huddleston alleges that the Government's purposeful delay in the production of materials as well as false statements made in pleadings constitute bad faith. To provide more context, the history of this dispute goes back to 2017. On September 1, 2017, Ty Clevenger ("Clevenger"), Huddleston's current counsel-of record, submitted a FOIA request first to the DOJ, then to the FBI. *Clevenger v. U.S. Dep't of Just.*, No. 1:18-CV-1568, 2020 WL 1846565, at *3 (E.D.N.Y. Apr. 3, 2020). Clevenger requested "all records and correspondence pertaining to Seth Conrad Rich [("Seth Rich")], who was murdered in the District of Columbia on or about July 10, 2016." *Id.* On September 19, 2017, the Government responded to Clevenger's request, stating: "[W]e conducted a search of the Central Records System. We were unable to identify main file records responsive to FOIA." *Id.* at *7. In other words, when Clevenger requested records on Seth Rich, the Government responded that it could not find *any* responsive documents. On April 13,

2019, Clevenger filed suit against the Government in the Eastern District of New York, claiming that the Government's search was inadequate. *Id.* at *8. However, the court disagreed. The court found that Clevenger's FOIA request was overbroad, and that the Government's search was "reasonably calculated to locate responsive documents." *Id.* at *8, *13. Accordingly, on April 3, 2020, the court granted summary judgment in favor of the Government. *Id.* at *20.

On April 9, 2020, Huddleston submitted a FOIA request to the FBI that, among other information, requested all records pertaining to Seth Rich (Dkt. #1, Exhibit 1). On June 1, 2020, because the Government had not yet responded to Huddleston's request, Huddleston filed suit in the Eastern District of Texas (Dkt. #1). On June 1 and June 5, 2020, Huddleston submitted two more FOIA requests (Dkt. #2 ¶¶ 7, 8). Finally, by letter dated June 19, 2020, the Government acknowledged receipt of Huddleston's original FOIA request (Dkt. #39, Exhibit 1 ¶ 11).[1] Claiming delays due to COVID-19, the Government estimated that it "would need 8–10 months" to provide Huddleston with a final response (Dkt. #2 ¶ 8).

On December 16, 2020, the Government asked the Court to stay this matter pending the completion of processing Huddleston's FOIA requests (Dkt. #10). Curiously—and in stark contrast to the Government's response to Clevenger's FOIA request—the Government now alleged that it "ha[d] completed the initial search" and had "identif[ied] approximately . . . 20,000 pages" of potentially relevant material (Dkt. #10 at p. 2). While the Government requested a stay of three months to process and sort through the documents, the Government made no guarantee that it intended to complete document production or review during that time. In fact, by the Court's

---

[1] Under FOIA, once the responding agency receives a records request, it must, among other things,

> [D]etermine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor.

5 U.S.C. § 552(a)(6)(A)(i)(I). Suffice to say, the Government did not satisfy this obligation.

calculation, the Government's proposed schedule "would mean that at best, producing just the FBI materials would take three years and four months, and at worst, nearly seven years." *Huddleston v. F.B.I.*, No. 4:20-CV-447, 2021 WL 327510, at *3 (E.D. Tex. Feb. 1, 2021). Accordingly, the Court denied the stay. The Court recognized the disruption the COVID-19 pandemic had on the normal functioning of government agencies, but found that the Government's "murky" proposed processing rate was unreasonable and "would thwart FOIA's basic purpose of opening agency action to the light of public scrutiny." *Id.* On subsequent motions, the Court did extend the parties' briefing schedule (Dkt. #25; Dkt. #36; Dkt. #51).

By April 8, 2021, the Government asserted that of the potentially 20,000 relevant pages, it had "identified approximately 1,563 pages of potentially responsive records for further processing by the FBI" (Dkt. #21 at p. 2). On April 23, 2021, the Government had processed 500 of those pages, and released 68 pages of material to Huddleston while withholding 508 pages pursuant to various FOIA exemptions (Dkt. #39, Exhibit 1 ¶ 16). On May 24, 2021, the Government processed another 500 pages, and from that batch released 52 pages to Huddleston (Dkt. #39, Exhibit 1 ¶ 17). On June 24, 2021, the Government processed another 489 pages, this time releasing only 5 pages to Huddleston (Dkt. #39, Exhibit 1 ¶ 18). Finally, on July 23, 2021, the Government processed another 31 pages, releasing 2 pages to Huddleston (Dkt. #39, Exhibit 1 ¶ 19). As of May 5, 2022, the Government asserts that production is still ongoing (Dkt. #54).

Considering this history, Huddleston alleges that the Government's three-year failure to locate information when responding to Clevenger's FOIA request, combined with the Government's delayed response and limited production in response to his own request, suggest that the Government acted in bad faith by purposefully concealing the existence of relevant documents. Huddleston also claims that the Government's search was inadequate, and indicates a

covered-up FBI investigation (Dkt. #11; Dkt. #28; Dkt. #46).[2] In response, the Government points to its *Vaughn* indices and supporting declarations, claiming that it "properly supported each of [its] claimed exemptions with detailed declarations," which are afforded a presumption of good faith (Dkt. #54 at p. 2). The Government further contends that Huddleston's "allegations of bad faith consist of conspiracy theories and conjecture," and are thus insufficient to overcome the presumption of good faith (Dkt. #54 at p. 2).

It is alarming that in two cases involving substantially similar FOIA requests, the Government can locate zero relevant documents in one, but over 20,000 potentially relevant pages in the other. Moreover, when Congress created FOIA, "it did not intend for production to take years." *Huddleston*, 2021 WL 327510, at *3 (citing *Hayden v. DOJ*, 413 F. Supp 1285, 1289 (D.D.C. 1976)). Yet, here, the Government has spent over two years processing and reviewing records in an attempt to respond to Huddleston's requests. And despite that amount of time, the Government maintains that the process is "still ongoing." Even so, while the Court certainly finds the Government's handling of Clevenger's and Huddleston's FOIA requests concerning, Huddleston's arguments are insufficient to suggest bad faith for the purpose of determining whether *in camera* review of all relevant documents is necessary.

While no brightline rule exists on what is and what is not suggestive of bad faith, courts have found bad faith where the movant presents tangible evidence of a government cover-up. *See, e.g., Ingle v. U.S. Dep't of Just.*, 698 F.2d 259, 265 (6th Cir. 1986), *abrogated on other grounds by U.S. Dep't of Just. v. Landano*, 508 U.S. 165 (1993); *Elec. Priv. Info. Ctr. v. U.S. Dep't of Just.*, 442 F. Supp. 3d 37, 51–52 (D.D.C. 2020). Courts have also held that bad faith may be indicated

[2] Huddleston contends that the Government's search pursuant to his FOIA requests was inadequate, and presents various arguments in support (Dkt. #28 at p. 6). At this juncture, the Court is only ruling on whether *in camera* review is appropriate. Accordingly, the Court reserves ruling on the actual adequacy of the Government's search until the Court takes up the parties' motions for summary judgment.

where an agency fails to identify the legal basis for withholding documents, *Lake Travis Transitional Med. Ctr. v. U.S. Dep't of Hous. & Urb. Dev.*, Case No. A-10-CA-950, 2011 WL 13152494, at *4 (W.D. Tex. June 8, 2011), or where the evidence suggests that the agency purposefully withheld documents. *Smith v. United States*, No. 95-1950, 1996 WL 696452, at *5 (E.D. La. Dec. 4, 1996) (stating that bad faith may arise where there is evidence that the agency's refusal to disclose records was "merely to avoid embarrassment or to frustrate the requester."). Finally, bad faith may be indicated if there is evidence that the agency's affiant made the affidavit in bad faith. *Schiller v. I.N.S.*, 205 F. Supp. 2d 648, 657 (W.D. Tex. 2002); *Payne*, 121 F.3d at *5.

On the other hand, courts have held that a previous failure or delay to locate relevant documents "does not necessarily imply bad faith." *Rugiero v. U.S. Dep't of Just.*, 257 F.3d 534, 546 (6th Cir. 2001); *see also Payne*, 121 F.3d at *5 (explaining that a previous failure or delay to locate relevant documents pursuant to FOIA may only be considered evidence of bad faith if the delay itself resulted from bad faith); *Atchafalaya Basinkeeper, Inc. v. U.S. Army Corps of Eng'rs*, No. 21-317, 2022 WL 219050, at *11 (E.D. La. Jan. 25, 2022) (finding agency's delays in responding to FOIA request insufficient to demonstrate that agency acted in bad faith or had a "practice or policy of ignoring the FOIA's requirements."); *Hill Tower, Inc. v. Dep't of Navy*, 718 F. Supp. 568, 573 (N.D. Tex. 1989) (finding agency's inadvertent failure to timely resolve FOIA request insufficient to demonstrate bad faith). Further, neither evidence that an agency refused or failed to search a specific database, nor evidence that an agency supplemented its initial response to a request, conclusively show that the agency acted in bad faith. *See, e.g., Morgan*, 2016 WL 7443397, at *3 (refusing to find FBI's failure to search more than one record system indicative of bad faith); *Sherlock v. United States*, No. 93-0650, 1994 WL 10186, at *3 (E.D. La. Jan. 13, 1994) (holding that agency's supplementation of its response to FOIA request some eight

months after the request was made indicated that the agency's initial search was imperfect, but did not suggest bad faith); *Smith*, 1996 WL 696452, at *5 (holding that evidence suggesting agency's search was unreasonable did not establish bad faith) (citing *Simon v. United States*, 587 F. Supp. 1029, 1032 (D.D.C. 1984)). Finally, a requestor's "purely speculative claims about the existence and discoverability of other documents" is likewise insufficient to suggest bad faith. *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

Here, Huddleston's arguments are insufficient to suggest that the Government acted in bad faith. For example, Huddleston alleges that the Government's delayed production of documents is evidence of bad faith. However, while it is true that an agency must make records promptly available to the requesting party upon receiving a FOIA request, 5 U.S.C. § 552(a), a delay in production does not necessarily show the Government acted in bad faith. *Rugiero*, 257 F.3d at 546. This is particularly true where, as here, Huddleston has not presented evidence that the delay itself resulted from bad faith. *Payne*, 121 F.3d at *5. Huddleston's arguments instead indicate that he suspects potential illegality by the Government. Yet, mere suspicions of wrongdoing are insufficient to merit *in camera* review. *See Hall & Assocs. v. E.P.A.*, 846 F. Supp. 2d 231, 246 (D.D.C. 2012). Rather, "[t]here must be tangible evidence of bad faith; without it the court should not question the veracity of agency submissions." *Silets v. U.S. Dep't of Just.*, 945 F.2d 227, 231 (7th Cir. 1991). Huddleston's evidence falls short of satisfying this burden.

Further, the Government has provided the Court with multiple declarations, as well as two *Vaughn* indices explaining the exemptions applied to withheld documents. Huddleston has not shown that the Government's affidavits and *Vaugh* indices were created or submitted in bad faith. *See Bittner v. I.R.S.*, No. A-15-CV-1209, 2017 WL 4325489, at *10 (W.D. Tex. July 31, 2017) (finding plaintiff's argument that conduct of agency officials demonstrated a "pattern of

misconduct and questionable circumstances," without more, inadequate to constitute bad faith). Where the plaintiff's evidence is merely speculative of bad faith, the Court cannot discredit the good faith presumption afforded to the Government. *Morgan*, 2016 WL 7443397, at *3. Thus, Huddleston's allegations simply do not rise to the level of bad faith sufficient to overcome the presumption of legitimacy afforded to the Government.

In sum, the Government's affidavits are adequate for *in camera* review, and Huddleston has not provided the Court with sufficient, tangible evidence to suggest bad faith, nor overcome the presumption of good faith afforded to the Government's affidavits. Accordingly, the Court finds that *in camera* review of all relevant documents is not warranted in this case.

**B. The Crime-Fraud Exception**

*In camera* review may be used to probe crime-fraud challenges to attorney-client privilege. *See United States v. Zolin*, 491 U.S. 554, 556 (1989). Under the crime-fraud exception, the attorney-client and work product privileges "can be overcome 'where communication or work product is intended to further continuing or future criminal or fraudulent activity.'" *United States v. Edwards*, 303 F.3d 606, 618 (5th Cir. 2002) (quoting *In re Grand Jury Subpoena*, 220 F.3d 406, 410 (5th Cir. 2000)); *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1242 (5th Cir. 1982) ("The crime-fraud exception therefore comes into play if 'the client consults an attorney for advice that will assist the client in carrying out a contemplated illegal or fraudulent scheme.'") (quoting *In re Murphy*, 560 F.2d 326, 337 (8th Cir. 1977))). These privileges are overcome "when an attorney-client communication or work product is intended to further continuing or future criminal or fraudulent activity." *In re EEOC*, 207 Fed. App'x 426, 434 (5th Cir. 2006) (citing *In re Grand Jury Subpoena*, 419 F.3d 329, 335 (5th Cir. 2005)). The party asserting the crime-fraud

exception bears the burden to show the "attorney-client relationship was intended to further criminal or fraudulent activity." *Id.*

When a party requests for the district court to conduct in camera review of documents allegedly falling under the crime-fraud exception, that party must make out a prima facie case of the exception as applied to the immediate facts. *Archer v. Sterquell*, No. 2:05-CV-078, 2006 WL 8436750, at *1 (N.D. Tex. Mar. 28, 2006). To do so, the party asserting the crime-fraud exception "must produce evidence 'such as will suffice until contradicted and overcome by other evidence a case which has proceeded upon sufficient proof to that stage where it will support a finding if evidence to the contrary is disregarded.'" *In re Grand Jury Subpoena*, 419 F.3d at 336 (cleaned up) (quoting *Int'l Sys*., 693 F.2d at 1242). Demonstrating the prima facie case breaks down into two steps: (1) the client must be shown to engage in the ongoing fraudulent conduct when the communication or material was sought or produced, and (2) the communication or material must reasonably relate to the fraudulent conduct. *Id.* at 336 n.7. "This showing must be 'of a factual basis adequate to support a good faith belief by a reasonable person' that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *Medlock Sw. Mgmt. Corp. v. Fed. Nat'l Mortg. Ass'n*, No. 5:04-CV-129, 2006 WL 8434271, at *1 (E.D. Tex. Sept. 29, 2006) (quoting *Zolin*, 491 U.S. at 572).

Here, Huddleston argues that the crime-fraud exception demands *in camera* review of the documents withheld pursuant to Exemption 5, arguing that "there is good reason to believe that some of the legal documents might be subject to the crime-fraud exception" (Dkt #46 at p. 28).[3] The Court is not persuaded by Huddleston's argument. First, Huddleston has not established that the crime-fraud exception is even applicable to documents withheld under Exemption 5. The

[3] Exemption 5 protects from disclosure inter-agency or intra-agency memorandums or letters that would not be available by law to a party in litigation with the agency. 5 U.S.C. § 552(b)(5).

crime-fraud exception applies to attorney-client materials or communication intended to advance criminal or fraudulent activity. *In re EEOC*, 207 Fed. App'x at 434. However, this exception generally does not apply to materials withheld under Exemption 5. *See F.T.C. v Grolier Inc.*, 462 U.S. 19, 26 (1983). Huddleston claims that "some authority" suggests this exception may be applied to Exemption 5 materials, citing *Cox v. Dep't of Just.*, 504 F. Supp. 3d 119 (E.D.N.Y. 2020). (Dkt. #46 at p. 28). While the Second Circuit in *Cox* speculated in *dicta* if the crime-fraud exception extends to Exemption 5 materials, it expressly declined to rule on the matter and decided the case on other grounds. *Cox*, 504 F. Supp. 3d at 158. At most, as Huddleston admits, jurisprudence on the issue "is far from settled" (Dkt. #46 at p. 28).

Even if the Court were to find the crime-fraud exception applies to documents withheld under Exemption 5, Huddleston has not met his burden to show "a factual basis adequate to support a good faith belief by a reasonable person' that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *Medlock Sw. Mgmt. Corp.*, 2006 WL 8434271, at *1. To prevail, Huddleston must (1) prove an ongoing case of crime or fraud, and (2) show that the disputed documents reasonably relate to that case of crime or fraud. *In re Grand Jury Subpoena*, 419 F.3d at 336 (cleaned up) (quoting *Int'l Sys.* 693 F.2d at 1242). Huddleston fails to cite a single instance of crime or fraud, or a document which might be in furtherance of such activity (Dkt. 46 at p.28). His only basis is the "chicanery described thus far," with no explanation or elaboration as to how the privileged information may be in furtherance of prohibited activities (Dkt. 46 at p. 28). Thus, Huddleston's claims are not adequate to satisfy his burden on this matter. Accordingly, the Court finds *in camera* review is not warranted pursuant to the crime-fraud exception.

### C. Conclusion

While FOIA provides the Court the option to conduct *in camera* review, 5 U.S.C. § 552(a)(4)(B), it by no means compels the exercise of that option. *See Robbins Tire*, 437 U.S. at 224. Rather, it is within the Court's discretion to decline to conduct *in camera* review. 5 U.S.C. § 552(a)(4)(B). The Court has reviewed the arguments and evidence Huddleston put forth, and shares some of his skepticisms that the Government's handling of his FOIA requests has not been reasonably diligent or in line with FOIA's purpose. And while the Government is entitled to a presumption of good faith, this does not mean that the Government's conduct completely escapes judicial scrutiny. Nevertheless, Huddleston has not presented sufficient evidence of bad faith to justify review of all withheld documents, nor is the Court convinced that the crime-fraud exception applies to review documents withheld under Exemption 5. Therefore, as an exercise of discretion, the Court denies Huddleston's motion for *in camera* review of all documents.

## CONCLUSION

It is, therefore, **ORDERED** Defendants' Motion for Leave to Submit Exhibit *In Camera* (Dkt. #55) is **GRANTED.** Defendants shall produce the Report identified as Bates pages FBI (20-CV-447)-637 through -646 no later than Friday, August 5, 2022, at 5:00 P.M. CST.

It is further **ORDERED** that Plaintiff's Motion for *In Camera* Review (Dkt. #46; Dkt. #58) is **DENIED.**

**IT IS SO ORDERED.**

**SIGNED this 28th day of July, 2022.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE