**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **BRIAN HUDDLESTON**, | |
| Plaintiff, | |
| vs. | **Case No. 4:20-cv-447-ALM** |
| **FEDERAL BUREAU OF INVESTIGATION and UNITED STATES DEPARTMENT OF JUSTICE** | |
| Defendant | |

<u>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT FBI'S MOTION FOR CLARIFICATION OR, IN THE ALTERNATIVE, RECONSIDERATION OF THE MEMORANDUM OPINION AND ORDER ENTERED SEPTEMBER 29, 2022**</u>

NOW COMES Brian Huddleston, the Plaintiff, responding in opposition to Defendant FBI's Motion for Clarification or, in the Alternative, Reconsideration of the Memorandum Opinion and Order entered September 29, 2022 ("Motion") (Dkt. #73):

<u>**Introduction**</u>

The FBI has misled the Court about Seth Rich's laptop. On October 27, 2022, the FBI informed the Court that it never examined data extracted from Seth Rich's personal laptop:

> The FBI did not open an investigation into the murder of Seth Rich, nor did it provide investigative or technical assistance to any investigation into the murder of Seth Rich. As a result, the FBI has never extracted the data from the compact disc and never processed the information contained on the disc.

Motion 1. Nearly two years earlier, however, the FBI told the Court something very different:

- 1 -

FBI is also currently working on getting the files from Seth Rich's personal laptop into a format to be reviewed. There are thousands of files of many types. The goal right now is to describe, generally, the types of files/personal information contained in this computer. Furthermore, the FBI will continue to evaluate the responsiveness of these files under the FOIA.

Defendants' Motion to Stay Scheduling Order Deadlines (Dkt. #10) 2-3 (emphasis added). It is impossible to "review," "describe" and "evaluate" information without "extracting" and "processing" it. The FBI's two statements cannot be reconciled and underscore the agency's penchant for deception, a tendency that runs directly counter to the core purpose of the Freedom of Information Act. [1] And if that was not insulting enough, the FBI now seeks more than 66 years to produce the contents of the laptop.  *See* Zachary Steiber, "FBI Asks Court for 66 Years to Release Information From Seth Rich's Computer," October 28, 2022 The Epoch Times, https://www.theepochtimes.com/mkt_app/fbi-asks-court-for-66-years-to-release-information-from-seth-richs-computer_4826785.html (attached as Exhibit 1).[2]  The

---

[1]    "FOIA 'was enacted to facilitate public access to Government documents.' " *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991)). Its " 'core purpose' is to inform citizens about 'what their government is up to.' " *Yonemoto v. U.S. Dep't of Veterans Affairs*, 686 F.3d 681, 687 (9th Cir. 2012) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773, 775, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989)).

*Am. Small Bus. League v. United States Office of Mgmt. & Budget*, No. 20-CV-07126-DMR, 2022 WL 4544726, at *7 (N.D. Cal. Sept. 28, 2022)

[2]  The undersigned attests under penalty of perjury under the laws of the United States that Exhibit 1 is a true and correct copy of an article that appeared on October 28, 2022 in *The Epoch Times*. The undersigned further attests under penalty of perjury that each exhibit to this document is a true and correct copy of the document that he represents it to be.

Court should not reward such a transparent effort to frustrate the Court's order and undermine FOIA.[3]

Similarly, the FBI cannot get its story straight about whether it possessed Seth Rich's personal laptop or whether it merely possessed a disk reflecting the purported contents of that laptop. In the Motion, the FBI implies that it merely has a disk. Motion 1. Almost two years ago, however, the FBI wrote as follows:

> [I]n response to Plaintiff's emphasis on any report(s) regarding Seth Rich's personal computer, the FBI acknowledges that they have located a 302 (interview form) stating that the laptop was given to the FBI, but thus far have located no report of it being analyzed by the FBI. The FBI proposes to process the 302 form as a priority item in the first release, along with other processing.

Defendants' Response to Plaintiff's Sur-reply in Opposition to Motion to Stay (Dkt. #15) 2 (emphasis added). In an email dated October 29, 2022, the Plaintiff asked the FBI to explain both of the foregoing discrepancies. *See* October 29, 2022 Email String between Asst. U.S. Attorney Andrea Parker and Ty Clevenger (Exhibit 2). The FBI refused, telling the Plaintiff to raise the issues in his response to the Motion, *id.*, so here we are.

As a result of the FBI's persistent flip-flopping, the Plaintiff is concerned that the FBI may have taken custody of the laptop from the local police and then played "hot potato," *i.e.*, by giving the laptop back to the local police in order to avoid disclosing it in response to the

---

[3]  The FBI filed the Motion on the last day of the agreed-upon stay, and it has not sought an additional stay, thus the FBI is violating the Court's order even now. *See* Order Granting Defendant FBI's Unopposed Motion to Stay Court's Production Order (Dkt. #72)("The Court's Production Order (Dkt. #70) is hereby stayed up to and including October 27, 2022.").

Plaintiff's FOIA request.[4] The Plaintiff has repeatedly sought clarity from the FBI about

whether it possessed the actual laptop:

> The Defendants claim that a compact disc and a video disc are subject to law
> enforcement exemptions. Reply 14. As indicated above, the Defendants are obligated
> to disclose whether the investigations in question are open or closed, and the Court
> should order them to make those disclosures. Mr. Seidel has admitted, at least
> implicitly, that the compact disc in question contains the purported contents of Seth
> Rich's personal laptop, which were copied *post mortem* by his brother, Aaron Rich.
> *Compare* Fifth Declaration ¶25 and Fourth Declaration ¶137 *with* Cross-Motion 30-
> 31 (citing the record) and Motion for In Camera Review (Dkt. #28) 10-12 (citing the
> record). Mr. Huddleston predicted this was the case on pp. 30-31 of the Cross-
> Motion. Mr. Huddleston further observed that footnote 42 of the Fourth Declaration
> seems to suggest that the FBI took custody of the laptop itself (the FBI already has
> acknowledged taking custody of the work laptop). Cross-Motion 30.  In his Fifth
> Declaration, Mr. Seidel failed to clarify whether the FBI took custody of the personal
> laptop, and that is not an insignificant matter. Fortunately, Plaintiff's Counsel
> happened to review a December 9, 2020 email wherein Defendants' Counsel wrote
> the following:
>
> > FBI is also currently working on getting the files from Seth Rich's <u>personal
> > laptop</u> into a format to be reviewed. As you can imagine, there are thousands
> > of files of many types. The goal right now is to describe, generally, the types
> > of files/personal information contained in this computer. Furthermore, the FBI
> > will continue to evaluate the responsiveness of these files under the FOIA.
>
> December 9, 2020 Email from Andrea Parker to Ty Clevenger (attached as Exhibit 1)
> (emphasis added). Neither Mr. Seidel nor the *Vaughn* index have ever made any
> reference to what was found on the personal laptop.[5] The FBI had the ability to search

---

[4]  Such a scenario might have seemed far-fetched a few years ago, but not today. According to
FBI whistleblowers quoted in a thousand-page minority report from the Judiciary Committee
of the U.S. House of Representatives, a high-ranking FBI agent actively covered up evidence
of misconduct by the President's son, and apparently for partisan, political reasons. *See*
November 4, 2022 Republican Staff Report, "FBI WHISTLEBLOWERS: WHAT THEIR
DISCLOSURES INDICATE ABOUT THE POLITICIZATION OF THE FBI AND JUSTICE
DEPARTMENT," 18 ([https://republicansjudiciary.house.gov/wpcontent/uploads/2022/](https://republicansjudiciary.house.gov/wpcontent/uploads/2022/11/HJC_STAFF_FBI_REPORT.pdf)
[11/HJC_STAFF_FBI_REPORT.pdf](https://republicansjudiciary.house.gov/wpcontent/uploads/2022/11/HJC_STAFF_FBI_REPORT.pdf)). As the Court already knows, the Plaintiff contends that
the FBI is hiding information about the Seth Rich laptop for partisan, political reasons.

[5]  [Footnote appearing in original excerpt]: Mr. Huddleston also requested records reflecting
"[a]ll data downloaded from all electronic devices that belonged to Seth Rich as well as all
data, documents, records or communications indicating how the devices were obtained and
who was responsible for downloading the information." FAC 3, ¶6. Where are the records

the files and apparently did so, but the *Vaughn* index, the Fifth Declaration, and the Reply say absolutely nothing about the file types or the file contents.

Plaintiff's Surreply in Opposition to Defendants' Motion for Summary Judgment and Reply in Support of Plaintiff's Cross-Motion for Summary Judgment (Dkt. #65) 14-15. Public reporting and sworn testimony strongly support the view that the FBI did in fact obtain and analyze Seth Rich's computer (and that in turn rebuts the claim that only "conspiracy theorists" would have any interest in Seth's laptops or electronic devices). The Plaintiff directs the Court's attention to the transcript of Michael Isikoff's *Yahoo!News* interview of former Asst. U.S. Attorney Deborah Sines, the prosecutor assigned to investigate the murder of Seth Rich. *See* Plaintiff's Exhibit 2, March 20, 2020 Deposition of Deborah Sines (Exhibit 3 to this document). In that interview, Mr. Isikoff claims that the FBI (not just local police) examined Mr. Rich's actual laptop, and Ms. Sines seems to confirm that. *Id.* In subsequent deposition testimony, Ms. Sines confirmed that her statements to Mr. Isikoff were accurate. *See* Transcript of March 20, 2020 Deposition of Deborah Sines (Exhibit 4) at 97. And she specifically confirmed under oath that the FBI had indeed examined Seth's laptop. *Id.* at 38.

At long last, it is time for the FBI to come clean and admit that it obtained Seth Rich's laptop, examined its contents, and processed the data that it contains. The FBI's absurd request for 66 years to divulge the information on the laptop heightens the need for this Court to put an end to the FBI's games. Public confidence in the integrity of federal law enforcement demands no less.

---

indicating who downloaded the data? And what about data downloaded from other devices such as cell phones? The FBI left these questions unanswered, therefore it should be subject to discovery.

## Argument

The Plaintiff does not disagree with the FBI's description of the standard of review for a motion for reconsideration, therefore he will proceed to the merits.

**1. The FBI failed to brief the issues for which it now seeks reconsideration.**

It is well established that a party waives an issue by failing to brief it. *See Boggs v. Krum Indep. Sch. Dist.*, 376 F. Supp. 3d 714, 722 (E.D. Tex. 2019), quoting *Audler v. CBC Innovis Inc.,* 519 F.3d 239, 255 (5th Cir. 2008), in turn quoting *Castro v. McCord*, 259 F. App'x 664, 665 (5th Cir. 2007)("A party 'waives an issue if he fails to adequately brief it.'). In particular, a summary judgment movant waives an issue by failing to brief it. *Boggs*, 376 F.Supp.3d at 722. Having failed to raise an issue or brief it in a motion for summary judgment, the movant may not then salvage the issue by raising it in a motion for reconsideration. *See, generally, Henderson v. Franklin*, 782 Fed. Appx. 866, 872 (11th Cir. 2019); *Newburgh/Six Mile Ltd. P'ship II v. Adlabs Films USA, Inc.*, 483 Fed. Appx. 85, 90-91 (6th Cir. 2012); and *Gipson v. Mattox*, 511 F. Supp. 2d 1182, 1190 (S.D. Ala. 2007). In other words, the movant does not get a Mulligan on reconsideration, which is exactly what the FBI seeks here.

In its Motion, the FBI now contends that the Court erred by failing to consider whether FOIA exemptions 7(D)-3 and 7(E)-6 prevent disclosure of the contents of Seth Rich's personal laptop, Motion 2, but those arguments were never raised in the Defendants' Motion for Summary Judgment ("MSJ")(Dkt. #37).  Instead, the FBI's <u>entire</u> argument for withholding Seth Rich's personal laptop was contained in the following sentence: "[T]he FBI withheld information derived from Seth Rich's personal laptop as such information would

violate the privacy rights of the survivors of Seth Rich." MSJ 44, citing Fourth Declaration

of Michael G. Seidel (Dkt. #37-1) ¶¶123-40, Exh. N. Even if one takes into consideration the

FBI's reply in support of the MSJ, the FBI offers nothing more of substance:

> As previously explained in the 4th Seidel Declaration, the FBI withheld information
> derived from Seth Rich's personal laptop in its entirety as such information would
> violate the privacy rights of the survivors of Seth Rich. Specifically, in ¶ 139 the FBI
> states that "Seth Rich has no privacy interests due to being deceased, however, the
> same cannot be said for those that survive him and are left to cherish his memory." In
> balancing the survivors' privacy interest in non-disclosure against the public interest
> in disclosure, the FBI determined that the survivors' privacy interest outweighs the
> public's interest in disclosure, as disclosure of the information on Seth Rich's
> personal laptop would not shed light on the operations and activities of the FBI.
> Further, the information on Seth Rich's personal laptop, in and of itself, would not
> demonstrate how the FBI performed its statutory mission and thus, would not
> significantly increase the public's understanding of the FBI's operations and
> activities. Accordingly, the FBI properly protected the privacy interests of the
> survivors of Seth Rich pursuant to FOIA Exemptions 6 and 7(C).

Defendants' Combined Reply to Plaintiff's Response and Opposition to Cross Motion for

Summary Judgment (Dkt. #54) 13-14 (emphasis added).

Nowhere in the foregoing excerpts from the MSJ and the reply can one find anything

about Exemptions 7(D)-3 or 7(E)-6. In other words, neither the Court nor the Plaintiff could

have had any idea from the briefing that the FBI was asserting Exemptions 7(D)-3 or 7(E)-6

with respect to the laptop. Nonetheless, the FBI now tries to create the false impression that it

did brief those issues. The Motion cites pp. 40-41 of MSJ in support of its argument that

Exemption 7(D)-3 already had been briefed, but apparently the FBI was hoping that neither

the Court nor the Plaintiff would check that cite. Pages 40-41 of the MSJ state nothing

whatsoever about the laptop. Instead, those pages contain an entirely generic description of

Exemption 7(D)-3, making no attempt to apply that exemption to the laptop or any other

specific record. The same is true for Exemption 7(E)-6.  The Motion cites pp. 41-42 of the

MSJ, but those pages contain nothing more than a generic description of Exemption 7(E)-6, once again making no attempt to apply that exemption to the laptop or any other specific record.

The Motion also quotes the Fourth Declaration of Michael G. Seidel (Dkt. #37-1) at some length, Motion 5-7, but that is equally unavailing. Mr. Seidel's declaration is a declaration, not a brief. He cites no legal authority whatsoever other than the exemptions themselves, and he makes no attempt to apply those exemptions to the laptop or any other specific record. Again, there is no way the Court nor the Plaintiff could have read the MSJ and concluded that the FBI was relying on Exemptions 7(D)-3 or 7(E)-6. Having failed to raise these issues previously, the FBI cannot raise them now. *Boggs*, 376 F.Supp.3d at 722.

**2. Exemption 7(D)-3 does not apply to the laptop.**

According to the Motion, the FBI relied on Exemption (7)(D)-3 to withhold "the name, identifying information of, and information provided by local law enforcement personnel under an implied assurance of confidentiality." Motion, quoting Fourth Declaration of Michael G. Seidel ¶150 (Dkt. #37-1). As noted above, neither the MSJ nor the declaration connected Exemption (7)(D)-3 to the laptop, but for sake of argument the Plaintiff will pretend that the FBI raised the issue previously and properly.

> "Exemption 7(D) protects two distinct types of information: (1) information [that] 'could reasonably be expected to disclose the identity of a confidential source[;]'[ ] and (2) 'information furnished by a confidential source' " in the context of a criminal or national security investigation. *Cobar v. Dep't of Justice*, 81 F. Supp. 3d 64, 72 (D.D.C. 2015); *see also Parker v. Dep't of Justice*, 934 F.2d 375, 380 (D.C. Cir. 1991). "A source counts as confidential 'if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could reasonably be inferred.' " *Labow v. U.S. Dep't of Justice*, 831 F.3d 523, 530 (D.C. Cir. 2016) (quoting *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995))… When an agency asserts that a source provided information under an

implied assurance of confidentiality, the Court must consider that contention in light of four factors: "the character of the crime at issue, the source's relation to the crime, whether the source received payment, and whether the source has an ongoing relationship with the law enforcement agency and typically communicates with the agency only at locations and under conditions which assure the contact will not be noticed." *Shem-Tov I*, 2020 WL 2735613, at \*10 (quoting *Labow*, 831 F.3d at 531); *see also U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 179, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993).

*Shem-Tov v. Dep't of Justice*, 531 F. Supp. 3d 102, 108–09 (D.D.C. 2021).

An agency must do more than simply state that a source provided information on a confidential basis. *See Citizens for Responsibility & Ethics in Washington v. DOJ*, 746 F.3d 1082, 1101 (D.C. Cir. 2014). If an agency does not "present probative evidence that the source did in fact receive an express grant of confidentiality," then it must "point to more narrowly defined circumstances that support the inference of confidentiality." *Id*.

*Cornucopia Inst. v. United States Dep't of Agric.*, 282 F. Supp. 3d 150, 166 (D.D.C. 2017).

"A source's confidentiality is determined on a case-by-case basis, and a court must determine 'whether the particular *source* spoke with an understanding that the communication would remain confidential.'" *Light v. Dep't of Justice*, 968 F. Supp. 2d 11, 28 (D.D.C. 2013), quoting *Dep't of Justice v. Landano,* 508 U.S. 165, 172, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993) (emphasis in original). Taken together, *Lodano, Light, Shem-Tov,* and *Cornucopia Inst.* plainly indicate that the government must do a lot more than what the FBI has done here. In order to meet the standards of Exemption 7(D), the FBI would at least need to explain (1) how it reasonably inferred that the agency / source provided the laptop only under an assurance of confidentiality; and (2) how disclosure of the laptop's contents would cause harm to the local law enforcement agency (or officer) that provided the laptop to the FBI. *Id*; *see also Petrucelli v. Dep't Of Justice*, 51 F. Supp. 3d 142, 170 (D.D.C. 2014). The FBI has made no attempt to meet those burdens.

The present case is somewhat similar to *Bagwell v. U.S. Dep't of Justice*, 588 F. Supp. 3d 58 (D.D.C. 2022), wherein a FOIA requestor sought records from the Department of Justice about a sexual abuse investigation at Pennsylvania State University. DOJ claimed that it obtained documents from Penn State under an implied assurance of confidentiality, but the D.C. court rejected that argument wholesale.

> The Court is not convinced by any of the more case-specific reasons DOJ offers for inferring a guarantee of confidentiality here. It looks first to Penn State's locus "at the center of" an investigation into child sexual abuse, a "serious" criminal charge. Suppl. Hudgins Decl. ¶¶ 37–38. To be sure, the Supreme Court has indicated that "the nature of the crime that was investigated and the source's relation to it" are relevant to whether an inference of confidentiality exists. *Landano*, 508 U.S. at 180, 113 S.Ct. 2014; *see also Roth v. Dep't of Just.*, 642 F.3d 1161, 1184 (D.C. Cir. 2011) (listing other factors). But Penn State is a large and well-represented public institution—a far cry from the "witness[ ] to a gang-related murder" the Supreme Court offered as an example of someone who might be "unwilling to speak ... except on the condition of confidentiality." <u>Landano</u>, 508 U.S. at 179, 113 S.Ct. 2014. The circumstances here thus do not support a finding of some implicit confidentiality agreement. The only other suggestion of confidentiality advanced by the Department is a statement from the EOUSA FOIA officer that, after the filing of this case, she spoke with an Associate General Counsel at Penn State, who "expressed his belief that records turned over via grand jury subpoena would remain confidential, absent a federal criminal prosecution." Hudgins Decl. ¶ 21. This general, post-hoc, hearsay rationale is unavailing. Even taken at face value, Penn State's *belief* that a confidentiality agreement existed—without knowing the foundation for that belief—is not enough. DOJ must show that circumstances at the time gave rise to an "implied *assurance* of confidentiality." *Landano*, 508 U.S. at 179, 113 S.Ct. 2014 (emphasis added). As the Court has already explained, the circumstances here did not. For this reason, the Department has again not justified its broad withholding effort, this time under Exemption 7(D).

*Bagwell*, 588 F. Supp. 3d at 71–72. The local police department in D.C. is "a large and well-represented public institution—a far cry from the 'witness[ ] to a gang-related murder,'" and it is difficult to imagine why it needs the protections of Exemption 7(D)-3.

Detective Joseph Della-Camera of the Metropolitan Police Department is, as a matter of public record, the investigator assigned to investigate the murder of Seth Rich. *See* Andy

Kroll, "A Murder, a Conspiracy Theory, and the Lies of Fox News," August 16, 2020

*Rolling Stone*, https://www.rollingstone.com/politics/politics-features/seth-rich-fox-news-

sean-hannity-wikileaks-donald-trump-1040830/ (Exhibit 5). As indicated above, former Asst.

U.S Attorney Deborah Sines was assigned to prosecute the murder case, and she testified and

spoke publicly about Seth's laptop. *See* Sines Deposition (Exhibit 4) at 38 and 97. It is a near

certainty (despite extensive redactions) that Det. Della-Camera and Ms. Sines are the

individuals who provided the laptop contents to the FBI as reflected in a FD-302 report of a

March 15, 2018 meeting with the Special Counsel's Office. *Compare* March 15, 2018 FD-

302 Form (Exhibit 6) *with* Fourth Declaration of Michael G. Seidel (Dkt. #37-1) ¶137. The

Plaintiff is unable to surmise how the release of the contents of the laptop would endanger

Det. Della-Camera, Ms. Hines, or anyone else in local law enforcement, but that is irrelevant.

The FBI had the burden of explaining how the laptop was covered by Exemption (7)(D)-3,

and it made no effort to meet that burden.

**3. Exemption 7(E)-6 does not apply to the laptop.**

According to the Motion, the FBI *generically* relied on Exemption 7(E)-6 because

releasing records "would disclose the identity of methods used in the collection and analysis

of information, including how and from where the FBI collects information and the methods

to employed to analyze it once collected." Motion 7, quoting Fourth Declaration of Michael

G. Seidel ¶171 (Dkt. #37-1). Note once again that neither the Motion nor the MSJ made any

attempt to apply Exemption 7(E)-6 to the laptop. That is fatal:

> FOIA Exemption 7(E) permits withholding of law enforcement records "to the extent
> the production of such law enforcement records or information ... would disclose
> techniques and procedures for law enforcement investigations or prosecutions, or
> would disclose guidelines for law enforcement investigations or prosecutions if such

disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. §
552(b)(7)(E). "Exemption 7(E) sets a relatively low bar for the agency to justify
withholding: 'Rather than requiring a highly specific burden of showing how the law
will be circumvented, exemption 7(E) only requires that the [agency] demonstrate
logically how the release ... might create a risk of circumvention of the
law." *Blackwell*, 646 F.3d at 42 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190,
1194 (D.C. Cir. 2009)). Notwithstanding the low bar set by Exemption 7(E), "the
agency must at least provide *some* explanation of what procedures are involved and
how they would be disclosed." *CREW*, 746 F.3d at 1102 (emphasis in original); *see
also Petrucelli v. Dep't of Justice*, 51 F. Supp. 3d 142, 171 (D.D.C. 2014) (finding
a "near-verbatim recitation of the statutory standard" insufficient); *Dent v. Exec. Off.
for U.S. Att'ys*, 926 F. Supp. 2d 257, 272 (D.D.C. 2013) ("Notwithstanding the
categorical protection to law enforcement techniques and procedures afforded under
the first clause of Exemption 7(E) ... no agency can rely on declarations written in
vague terms or in a conclusory manner.").

*Woodward v. United States Marshals Serv.*, 534 F. Supp. 3d 121, 130–31 (D.D.C. 2021)

(emphasis added). Paragraph 171 of Mr. Seidel's declaration is a textbook example of a

"near-verbatim recitation of the statutory standard," thus the FBI's argument falls flat.

*Petrucelli*, 51 Supp.3d at 171.

But it's worse than that. In the Motion, the FBI claims that it never examined the

contents of Mr. Rich's laptop. Motion 1. The FBI also disavowed any investigative interest

in the laptop or its contents:

> Through its search efforts… the FBI located an FD-302 documenting a meeting
> which took place on March 15, 2018. At the meeting, a source provided to an FBI
> Agent assigned to assist with the Special Counsel's Office investigation, information
> and material extracted from Seth Rich's personal laptop. The FBI did not utilize the
> information received to aid in its DNC investigation or any other investigations.
> Further, since the FBI had no involvement in the extraction of the data from Seth
> Rich's personal laptop, there is no way to know with certainty if the information
> provided by the source and maintained by the FBI in the Special Counsel's Office
> record collection, accurately depicts the contents of the information contained on Seth
> Rich's personal laptop at the time of his death.

Fourth Declaration of Michael G. Seidel (Dkt. #37-1) ¶137 (emphasis added).  If this is true,

then how could the FBI's investigative or analytical techniques be compromised by revealing

the contents of a laptop that it never investigated or analyzed? And how can Exemption 7(E)-6 apply to a laptop that is purportedly of no investigative interest to the FBI? According to Mr. Seidel, "[r]elease of this type of information would enable criminals to educate themselves about the methods employed to collect and analyze information and therefore allow them to take countermeasures to circumvent the effectiveness of these methods and continue to engage in activities that violate the law," Fourth Declaration of Michael G. Seidel ¶171, but that's not even plausible. We already know that the FBI obtained the laptop contents from the local police, Motion 1, so is the FBI suggesting that merely obtaining evidence from local law enforcement is a technique that needs to be protected?

The FBI's untimely, self-serving arguments raise more questions than answers, but it is not the job of the Court or the Plaintiff to figure out what the FBI is trying to say. The FBI bore the burden of explaining how Exemption 7(E)-6 applied, and it never attempted to meet that burden in the MSJ or even now on reconsideration.

**4.  The FBI does not need 66 years or more to turn over the laptop contents.**

In this very case, the Court already has warned that timeliness is critical when requestors seek records about matters of public importance. "The vague and dragged-out timeline Defendants suggest cannot be sustained without a greater showing of exceptional circumstances because 'stale information' produced pursuant to FOIA requests 'is of little value.'" *Huddleston v. Fed. Bureau of Investigation*, 4:20-CV-447, 2021 WL 327510, at *3 (E.D. Tex. Feb. 1, 2021), quoting *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988). The FBI itself has acknowledged that there is significant public interest in matters pertaining to Seth Rich. *See* Fourth Declaration of Michael G. Seidel (Dkt. #37-1)

¶138, yet it now seeks more than 66 years to produce the contents of Seth's laptop. The FBI claims it needs another seven decades because it "will have to convert the information on the disc into pages for review for responsiveness and the applicability of specific FOIA exemptions." No, it will not. The Court has rejected the FBI's third-party privacy arguments, thus there is nothing further for the FBI to review. Enough is enough. "Telling the requester 'You'll get the documents 15, or eight, years from now' amounts as a practical matter in most cases to saying 'regardless of whether you are entitled to the documents, we will not give them to you.'" *Fiduccia v. DOJ*, 185 F.3d 1035, 1041 (9th Cir. 1999); *see also Hayden v. DOJ*, 413 F. Supp. 1285, 1289 (D.D.C. 1976) (explaining that when Congress created FOIA's due-diligence requirement, it did not intend for production to take years). The Court should give the FBI no more than 14 days to produce what it should have produced five years ago.

**Conclusion**

The Defendants waived all of their arguments by failing to raise them in the MSJ.

*Boggs*, 376 F. Supp. 3d at 722. Even now, the FBI fails to explain how Exemptions 7(D)-3

and 7(E)-6 apply to Seth's laptop. The FBI therefore should be directed to produce all

records pertaining to the laptop within 14 days.


Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
212 S. Oxford Street #7D
Brooklyn, New York 11217
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Counsel for Plaintiff Brian Huddleston**


**Certificate of Service**

On November 10, 2022, I filed a copy of this response with the Court's ECF system, which should result in automatic notification via email to Asst. U.S. Attorney Andrea Parker, Counsel for the Defendants, at andrea.parker@usdoj.gov.

**/s/ Ty Clevenger**
Ty Clevenger