Exhibit 2

**The New York Times** | https://www.nytimes.com/2021/09/15/us/politics/durham-michael-sussmann-trump-russia.html

# Durham Is Said to Seek Indictment of Lawyer at Firm With Democratic Ties

The lawyer, Michael Sussmann, is accused of lying to the F.B.I. in a 2016 meeting about Trump and Russia. He denies wrongdoing.



By Charlie Savage, Adam Goldman, Michael S. Schmidt and William K. Rashbaum

Published Sept. 15, 2021    Updated Nov. 4, 2021

WASHINGTON — John H. Durham, the special counsel appointed by the Trump administration to scrutinize the Russia investigation, has told the Justice Department that he will ask a grand jury to indict a prominent cybersecurity lawyer on a charge of making a false statement to the F.B.I., people familiar with the matter said.

Any indictment of the lawyer — Michael Sussmann, a former federal prosecutor and now a partner at the Perkins Coie law firm, and who represented the Democratic National Committee on issues related to Russia's 2016 hacking of its servers — is likely to attract significant political attention.

Donald J. Trump and his supporters have long accused Democrats and Perkins Coie — whose political law group, a division separate from Mr. Sussmann's, represented the party and the Hillary Clinton campaign — of seeking to stoke unfair suspicions about Mr. Trump's purported ties to Russia.

The case against Mr. Sussmann centers on the question of who his client was when he conveyed certain suspicions about Mr. Trump and Russia to the F.B.I. in September 2016. Among other things, investigators have examined whether Mr. Sussmann was secretly working for the Clinton campaign — which he denies.

An indictment is not a certainty: On rare occasions, grand juries decline prosecutors' requests. But Mr. Sussmann's lawyers, Sean M. Berkowitz and Michael S. Bosworth of Latham & Watkins, acknowledged on Wednesday that they expected him to be indicted, while denying he made any false statement.

"Mr. Sussmann has committed no crime," they said. "Any prosecution here would be baseless, unprecedented and an unwarranted deviation from the apolitical and principled way in which the Department of Justice is supposed to do its work. We are confident that if Mr. Sussmann is charged, he will prevail at trial and vindicate his good name."

A spokesman for Attorney General Merrick B. Garland, who has the authority to overrule Mr. Durham but is said to have declined to, did not comment. Nor did a spokesman for Mr. Durham.

The accusation against Mr. Sussmann focuses on a meeting he had on Sept. 19, 2016, with James A. Baker, who was the F.B.I.'s top lawyer at the time, according to the people familiar with the matter. They spoke on condition of anonymity.

Because of a five-year statute of limitations for such cases, Mr. Durham has a deadline of this weekend to bring a charge over activity from that date.

At the meeting, Mr. Sussmann relayed data and analysis from cybersecurity researchers who thought that odd internet data might be evidence of a covert communications channel between computer servers associated with the Trump Organization and with Alfa Bank, a Kremlin-linked Russian financial institution.

The F.B.I. eventually decided those concerns had no merit. The special counsel who later took over the Russia investigation, Robert S. Mueller III, ignored the matter in his final report.

Mr. Sussmann's lawyers have told the Justice Department that he sought the meeting because he and the cybersecurity researchers believed that The New York Times was on the verge of publishing an article about the Alfa Bank data and he wanted to give the F.B.I. a heads-up. (In fact, The Times was not ready to run that article, but published one mentioning Alfa Bank six weeks later.)

Mr. Durham has been using a grand jury to examine the Alfa Bank episode and appeared to be hunting for any evidence that the data had been cherry-picked or the analysis of it knowingly skewed, The New Yorker and other outlets have reported. To date, there has been no public sign that he has found any such evidence.

But Mr. Durham did apparently find an inconsistency: Mr. Baker, the former F.B.I. lawyer, is said to have told investigators that he recalled Mr. Sussmann saying that he was not meeting him on behalf of any client. But in a deposition before Congress in 2017, Mr. Sussmann testified that he sought the meeting on behalf of an unnamed client who was a cybersecurity expert and had helped analyze the data.

Moreover, internal billing records Mr. Durham is said to have obtained from Perkins Coie are said to show that when Mr. Sussmann logged certain hours as working on the Alfa Bank matter — though not the meeting with Mr. Baker — he billed the time to Mrs. Clinton's 2016 campaign.

Another partner at Perkins Coie, Marc Elias, was then serving as the general counsel for the Clinton campaign. Mr. Elias, who did not respond to inquiries, left Perkins Coie last month.

In their attempt to head off any indictment, Mr. Sussmann's lawyers are said to have insisted that their client was representing the cybersecurity expert he mentioned to Congress and was not there on behalf of or at the direction of the Clinton campaign.

They are also said to have argued that the billing records are misleading because Mr. Sussmann was not charging his client for work on the Alfa Bank matter, but needed to show internally that he was working on something. He was discussing the matter with Mr. Elias and the campaign paid a flat monthly retainer to the firm, so Mr. Sussmann's hours did not result in any additional charges, they said.

Last October, as Mr. Durham zeroed in the Alfa Bank matter, the researcher who brought those concerns to Mr. Sussmann hired a new lawyer, Steven A. Tyrrell.

Speaking on the condition that The New York Times not name his client in this article, citing a fear of harassment, Mr. Tyrrell said his client thought Mr. Sussmann was representing him at the meeting with Mr. Baker.

"My client is an apolitical cybersecurity expert with a history of public service who felt duty bound to share with law enforcement sensitive information provided to him by D.N.S. experts," Mr. Tyrrell said, referring to "Domain Name System," a part of how the internet works and which generated the data that was the basis of the Alfa Bank concerns.

Mr. Tyrrell added: "He sought legal advice from Michael Sussmann who had advised him on unrelated matters in the past and Mr. Sussmann shared that information with the F.B.I. on his behalf. He did not know Mr. Sussmann's law firm had a relationship with the Clinton campaign and was simply doing the right thing."

Supporters of Mr. Trump have long been suspicious of Perkins Coie. On behalf of Democrats, Mr. Elias commissioned a research firm, Fusion GPS, to look into Mr. Trump's ties to Russia. That resulted in the so-called Steele dossier, a notorious compendium of rumors about Trump-Russia ties. The F.B.I. cited some information from the dossier in botched wiretap applications.

Some of the questions that Mr. Durham's team has been asking in recent months — including of witnesses it subpoenaed before a grand jury, according to people familiar with some of the sessions — suggest he has been pursuing a theory that the Clinton campaign used Perkins Coie to submit dubious information to the F.B.I. about Russia and Mr. Trump in an effort to gin up investigative activity to hurt his 2016 campaign.

Mr. Durham has also apparently weighed bringing some sort of action against Perkins Coie as an organization. Outside lawyers for the firm recently met with the special counsel's team and went over the evidence, according to other people familiar with their discussions, arguing that it was insufficient for any legal sanction.

The lawyers for Perkins Coie and the firm's managing partner did not respond to phone calls and emails seeking comment.

Mr. Sussmann, 57, grew up in New Jersey, attending Rutgers University and then Brooklyn Law School. He spent 12 years as a prosecutor at the Justice Department, where he came to specialize in computer crimes. He has since worked for Perkins Coie for about 16 years and is a partner in its privacy and cybersecurity practice.

Mr. Sussmann and his firm have been particular targets for Mr. Trump and his supporters.

In October 2018, a Wall Street Journal columnist attacked Mr. Sussmann, calling him the "point man for the firm's D.N.C. and Clinton campaign accounts," apparently conflating him with Mr. Elias. Perkins Coie responded with a letter to the editor saying that was not Mr. Sussmann's role and that the unnamed client on whose behalf he spoke to the F.B.I. had "no connections to either the Clinton campaign, the D.N.C. or any other political law group client."

Four months later, Mr. Trump attacked Mr. Sussmann by name in a slightly garbled pair of Twitter posts, trying to tie him to the Clinton campaign and to the Steele dossier.

Raising the specter of politicization in the Durham inquiry, lawyers for Mr. Sussmann are said to have argued to the Justice Department that Mr. Baker's recollection was wrong, immaterial and too weak a basis for a false-statements charge. There were no other witnesses to the conversation, the people familiar with the matter said.

In a deposition to Congress in 2018, Mr. Baker said he did not remember Mr. Sussmann "specifically saying that he was acting on behalf of a particular client," but also said Mr. Sussmann had told him "he had cyberexperts that had obtained some information that they thought should get into the hands of the F.B.I."

However, Mr. Durham's team is said to have found handwritten notes made by another senior F.B.I. official at the time, whom Mr. Baker briefed about the conversation with Mr. Sussmann, that support the notion that Mr. Sussmann said he was not there on behalf of a client. It is not clear whether such notes would be admissible at trial under the so-called hearsay rule.

A lawyer for Mr. Baker declined to comment.

Mr. Durham has been under pressure to deliver some results from his long-running investigation, which began when then-Attorney General William P. Barr assigned him in 2019 to investigate the Russia inquiry. Out of office and exiled from Twitter, Mr. Trump has issued statements fuming, "Where's Durham?"