# Exhibit 3



POLITICS ›

# Attorney with ties to 2016 Clinton campaign acquitted in first Durham special counsel trial

BY ROBERT LEGARE
UPDATED ON: MAY 31, 2022 / 1:24 PM / CBS NEWS

*Washington* – A District of Columbia jury has acquitted Michael Sussmann, a prominent Democratic lawyer, on one count of lying to investigators during a Sept. 19, 2016, meeting during which he conveyed now-debunked data that purportedly linked Trump Tower to Russia's Alfa Bank.

Michael Sussmann was accused by special counsel John Durham — a holdover from the Trump administration — of hiding his ties with a technology executive and Hillary Clinton's 2016 presidential campaign when he brought the allegations to then-FBI general counsel Jim Baker.

Durham was tasked with probing allegations of misconduct by those investigating former President Donald Trump's alleged ties with Russia. Sussmann was the first of Durham's handful of defendants to stand trial.

After the trial ended, Sussman read a statement with his reaction to the verdict: "I told the truth to the FBI and the jury record clearly recognize that with their unanimous verdict today, I'm grateful to the members of the jury for their careful and thoughtful service. Despite being falsely accused. I'm relieved that Justice ultimately prevailed in my case." He also said it had been a "difficult year" for him and his family, and he thanked his friends and legal team.

Durham said nothing when he left the court, but said in a statement, "While we are disappointed in the outcome, we respect the jury's decision and thank them for their service."

Prosecutors tried to argue that Sussmann began lying the night before the meeting on Sept. 18, 2016, when he texted Baker to request they talk. He allegedly wrote, "I'm coming on my own – not on behalf of a client or company," text messages revealed during the trial read, "[W]ant to help the Bureau." Durham's team alleged

Sussmann came forward not because he wanted to "help the Bureau," but rather, to help two clients who had hired his law firm, Perkins Coie.

Even so, the government did not charge Sussmann with lying in that text message, and jurors were instructed not to consider it when acquitting the defendant.

The trial on the single count spanned almost two weeks, as prosecutors called over a dozen witnesses ranging from Baker himself to Hillary Clinton's presidential campaign manager, Robby Mook.

Baker told jurors the memos and thumb drives containing the data Sussmann brought him were concerning, and he viewed the information as a "potential national security threat." The FBI ultimately decided the allegations of a link between Trump and the Russian bank were unsubstantiated.

"[Sussmann] said, 'I'm not here on behalf of any particular client," Baker recalled in testifying about Sussmann's statement to him at that 2016 meeting at FBI headquarters, "I'm 100% confident that he said that in the meeting."

Under direct examination, Baker told the jury Sussmann was a "friend," and he had no reason to doubt representations about his motives at the time. Sussmann didn't ask Baker to do anything with the data, Baker testified, but he took the allegations to the FBI's head of counterintelligence, Bill Priestap, who was also called as a witness. Priestap's notes were a key part of the trial's evidentiary record.

Defense attorneys probed Baker'a memory, highlighting discrepancies in his recounting of the 2016 meeting and past congressional testimony during which Baker said he thought Sussmann had, in fact, initiated the meeting on behalf of a client.

These apparent discrepancies in Baker's memory may have contributed to Tuesday's not guilty verdict.

The special counsel's prosecutors focused testimony not just on the September 2016 meeting, but also on a broader, uncharged "joint venture" between Sussmann, his tech executive client Rodney Joffe who had brought him the Alfa Bank data, and the Clinton campaign, including its opposition research firm Fusion GPS. These political connections contributed to Sussmann's motivation to allegedly lie

to the FBI, prosecutors said, and would have affected how the FBI investigated the allegations.

However, these allegations were not legal components of the charges against Sussmann, and jurors were not tasked with deciding their validity.

Witnesses like the Clinton campaign's general counsel and former Sussmann colleague Marc Elias and an ex-Fusion GPS employee testified that they were researching Donald Trump ahead of the 2016 presidential election and the Alfa Bank data was discussed. Sussmann allegedly acted as an intermediary of sorts between Joffe, the data analysts, and members of the media, Elias and others said. Sussmann did not testify in his own defense, but his legal team did not contest his communication with members of the media about the data.

Prosecutors accused Sussmann of hiding his connection to his alleged clients in order to make the data appear more legitimate. But Elias, Mook, and others countered this argument and testified under oath that the campaign never authorized or instructed Sussmann to bring the data to the FBI's attention, stating that doing so actually would have put the campaign at a disadvantage because they did not trust federal investigators at the time.

Durham's team also sought to link Sussmann's billing entries, receipts, and communications directly to the Clinton campaign, telling the jury that he had billed work and material tied to the Alfa Bank allegations to the Clinton campaign.

"It wasn't about national security. It was about promoting opposition research about the opposition candidate, Donald Trump," prosecutors said in closing arguments on Friday, "Your common sense tells you that."

"A person acting in good faith, a person who knows the law would not say and do the things that Mr. Sussmann did on Sept. 19."

Notably, Sussmann did not bill his taxi ride to FBI headquarters on Sept. 19 to the Clinton Campaign, the evidence showed, and jurors asked to view that record during their deliberations.

Sussmann's defense, however, effectively raised doubts about the government's case, as Tuesday's verdict indicates.

"This was a case about misdirection," they said, a "magic trick."

"The time for political conspiracy theories is over," Sean Berkowitz argued, "opposition research is not illegal," later instructing the jury to ignore the uncharged conduct Durham's team laid out and instead focus on the alleged lie, the veracity of the witness testimony, and the potential effect Sussmann's alleged conduct had on FBI investigators.

Sussmann's connection to the Democratic National Committee and the Clinton Campaign was "tattooed on his forehead," Berkowitz claimed, ties Baker and other FBI investigators likely knew about when they tracked down the allegations.

The trial's high-profile and polarizing nature came not just from its connection to the two former 2016 political foes, but from contentious court filings filled with accusations of politics and overbreadth before trial and arguments throughout trial about what evidence could be entered into the record.

Judge Christopher Cooper, who oversaw the jury trial, tailored testimony in an apparent attempt to limit such polarization, barred prosecutors from discussing the accuracy of the Alfa Bank data and said the jury could only consider Sussmann's Sept. 19 statement to Baker and not the text message the night before, when deciding his guilt.