IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **BRIAN HUDDLESTON**, <br><br> Plaintiff, <br><br> vs. <br><br> **FEDERAL BUREAU OF INVESTIGATION and UNITED STATES DEPARTMENT OF JUSTICE** <br><br> Defendant | Case No. 4:20-cv-447-ALM |

**PLAINTIFF'S REPLY IN SUPPORT OF
CORRECTED MOTION FOR SUMMARY JUDGMENT**

NOW COMES Brian Huddleston, the Plaintiff, replying in support of his Corrected Motion for Summary Judgment ("MSJ")(Dkt. #112):

**Recent Party Admissions**

On May 11, 2023, a little more than a month after Mr. Huddleston filed his MSJ, Special Counsel John H Durham released a report about politicization and corruption in the FBI's investigation of purported "collusion" between President Donald J. Trump and Russia. *See* May 12, 2023 Report on Matters Related to Intelligence Activities and Investigations Arising Out of the 2016 Presidential Campaigns ("Durham Report")(Exhibit 1).[1] The report was damning for the FBI, and it is acutely relevant here. As this Court has noted previously, Mr. Huddleston's request for records about Seth Rich is inextricably linked with the FBI's investigation into Russian "collusion." *See, e.g.,* September 29, 2022 Memorandum Opinion and Order

---

[1] As attested by his electronic signature below, Ty Clevenger declares under penalty of perjury under the laws of the United States that the exhibits to this reply are true and correct copies of the documents that he represents them to be.

- 1 -

("Memorandum") (Dkt. #70) 1-2. In the September 29, 2022, Memorandum, the Court also noted the FBI's long history of belated revelations about records concerning Seth Rich. *Id*. And since the Memorandum issued, the FBI and the Department of Justice have <u>admitted</u> that there is a direct link between Seth Rich's work laptop and Russian "collusion." *See* Reply in Support of Plaintiff's Motion for Clarification ("Clarification Reply")(Dkt. #92) and sources cited therein. Specifically, they have admitted that there is a <u>direct link</u> between Seth Rich's work laptop and the purported "hacking" of Democratic National Committee emails that were later published by Wikileaks in 2016. *Id*. When that history is combined with the new admissions in the Durham Report, the FBI is left without any shred of credibility, and the haughty, dismissive, above-the-law tone of Defendant FBI's Response to Plaintiff's Corrected Motion for Summary Judgment ("Response") (Dkt. #118) is even more galling than it would be otherwise.

## <u>Argument</u>

Before proceeding to each of the nine specific issues below, Mr. Huddleston must again deal with an issue that he has already addressed repeatedly. Throughout the Response, the FBI objects to Mr. Huddleston's reliance on news sources as evidence. That objection is not well-founded. FOIA cases are unique (*e.g.*, because plaintiffs normally are not entitled to discovery, *see* Response 11-12 (citing cases)), and a FOIA plaintiff may rely on newspaper articles to establish facts relevant to a motion for summary judgment. *See, e.g., Elec. Frontier Found. v. Dep't of Justice*, 532 F. Supp. 2d 22, 23 (D.D.C. 2008)(considering *Washington Post* article but holding that it was insufficient grounds for reconsideration). As a prominent D.C. Circuit judge stated:

> To be sure, none of [the newspaper articles and human rights reports] ha[ve] been tested and proved in a court of law. But *SafeCard* requires only "compelling" evidence—not tested evidence, and not even evidence that would be admissible at trial. If hundreds of pages of first-hand reports of governmental abuses do not qualify as "compelling"

> evidence sufficient to justify an investigation into the government's conduct, then I cannot imagine what would. After all, FOIA's purpose, as *SafeCard* recognizes, is to allow the public access to records necessary to ascertain whether the government has acted illegally. If requesters already had tried and tested proof of such illegal activity, then resort to FOIA would be unnecessary. History, moreover, is full of examples of situations in which just these sorts of allegations led to the discovery of serious government wrongdoing—from Teapot Dome in the 1920s to the FBI's COINTELPRO counterintelligence program in the 1960s to Watergate in the 1970s.

*Ctr. for Nat. Sec. Studies v. U.S. Dep't of Justice,* 331 F.3d 918, 946–47 (D.C. Cir. 2003)(J. Tatel, dissenting); The majority in *Nat. Sec. Studies* also endorsed the relevance of newspaper articles to establish undisputed facts. *Id.* at 930. In the MSJ, the Plaintiff sought discovery from the Defendants. If nothing else, the news articles are relevant to show that the Plaintiff is neither acting on a blind hunch nor pursuing a wild goose chase. *See, e.g., Rainsy v. Facebook, Inc.*, 311 F.Supp.3d 1101, 1109 (N.D. Cal. 2019) (court relied in part on newspaper articles when deciding whether to permit discovery).[2]

    Similarly, the FBI repeatedly accuses Mr. Huddleston of seeking to amend his FOIA requests via emails from his counsel. That is untrue. The undersigned encouraged the FBI to search *previously-undisclosed* locations where responsive records likely would be found.

> A FOIA plaintiff can undermine the adequacy of an agency's search if it shows that the agency failed to follow a "clear and certain" lead. *See Mobley v. C.I.A.*, 806 F.3d 568, 582 (D.C.Cir.2015). "Such leads may indicate, for example, other offices that should have been searched, additional search terms that should have been used, or records custodians who should have been consulted." *Coleman v. DEA*, 134 F.Supp.3d 294, 301 (D.D.C.2015) (quoting *Rollins v. U.S. Dep't of State*, 70 F.Supp.3d 546, 550 (D.D.C.2014)). <u>An initially reasonable search can also become " 'untenable' once [the agency] discover[s] information suggesting the existence of other responsive material."</u>

---

[2]  The Durham Report clearly is admissible as evidence against the FBI, because government reports are admissible as evidence in any proceeding against the Government. *Harper v. United States Dep't of the Interior*, No. 1:21-CV-00197-CRK, 2021 WL 5281589, at *6 (D. Idaho Nov. 12, 2021)(public document admissible under Fed. R. Evid 201(b); 801(d); 801(c)(2)(A)–(D); and 901(b)(1) and (7)); *see also Mezerhane de Schnapp v. United States Citizenship & Immigration Services*, 67 F. Supp. 3d 95, 107–08 (D.D.C. 2014)(out-of-court statements by government employees acting within the scope of their employment were not hearsay and were admissible at summary judgment stage of FOIA case).

*Coleman*, 134 F.Supp.3d at 302 (quoting *Campbell v. DOJ*, 164 F.3d 20, 28 (D.C.Cir.1998)).

*Elec. Privacy Info. Ctr. v. United States Drug Enf't Admin.*, 208 F. Supp. 3d 108, 115 (D.D.C. 2016)(emphasis added). The Durham Report further undermines the FBI's claim of good faith, and the newly-identified records sources demonstrate the inadequacy of the FBI's search. Rather than submit new FOIA requests on behalf of Mr. Huddleton, the undersigned asked the FBI to act in good faith in order to minimize the number of issues that this Court would have to resolve. In retrospect, that was badly misplaced optimism on the part of the undersigned.

**(1) The FBI should be compelled to search its "DE" files.**

Mr. Huddleston agrees with the FBI that the digital evidence ("DE") issue has been fully briefed and is ripe for the Court's determination.[3]

**(2) The FBI should be compelled to search its Lync messaging systems.**

In an attempt to avoid searching its Lync messaging systems, the FBI directs the Court to the Fifth Declaration of Michael G. Seidel, who solemnly assures us that any records of "sufficient significance" about Seth Rich – whatever "sufficient significance" means – would have been indexed by FBI personnel and therefore would have been discovered during the FBI's search of its vaunted indexing systems. *See* Fifth Declaration of Michael G. Seidel ("Fifth Declaration")(Dkt. #54-1) ¶¶7 and 10. "Trust us," in other words. "We would never try to hide anything of 'sufficient significance.'" But as the Court already knows, the FBI previously concealed its possession of Seth Rich's personal laptop, his work laptop, and multiple witness interview forms, apparently because nobody at the FBI thought they were of "sufficient significance" to be indexed. In light of that, Mr. Seidel's testimony lacks credibility.

---

[3] Footnote 1 to the Response is disingenuous at best. FOIA requesters should not be expected to peruse tens of thousands of records on the FBI's "Vault" database in order to determine whether the FBI has adopted some obscure policy that purports to overrule the statutory definition of a public record.

Now review page 87 the Durham Report, and recall that FBI Agent Peter Strzok was one of the agents listed in the email string about a colleague having "squashed" a media inquiry about Seth Rich. *See* Fifth Declaration ¶6. Agent Strzok was part of the "triumvirate of control" of the thoroughly politicized and corrupt Russian "collusion" investigation. *See* Durham Report 104. On page 87, the Court will note that Agent Strzok used Lync to communicate with other personnel about that corrupt investigation. Given the fact that one of the ringleaders of the fraud was relying on Lync for communications, and given the now-established link between Seth Rich (or at least his laptop) and that Russian "collusion" fraud, it is preposterous for the FBI to suggest that responsive records are unlikely to be found in Lync. The Durham Report does not indicate whether any of Agent Strzok's Lync messages were uploaded to the FBI's search indexes, but it is impossible to believe that Agent Strzok would voluntarily "serialize" and index such Lync communications to the FBI's Central Records System so future FOIA requesters like Mr. Huddleston could later expose his improper (and perhaps illegal) activities.

Consider also Exhibit 5 to Mr. Huddleston's MSJ (Dkt. #112-5). Mr. Huddleston encourages the Court to read the inspector general's report in its entirety, because the FBI's own personnel do not believe its self-serving sales pitch about Lync messages being uploaded and indexed to the Central Records System. Consider, for example, the following excerpt:

> In a December 6, 2016 exchange, Agent 5 complained to Agent 1 about being required to be on call on the day of the presidential inauguration. In the middle of expressing displeasure about this, Agent 5 sent a message to Agent 1 that stated, "fuck trump." On February 9, 2017, in the context of an FBI employee receiving a presidential award for public service, Agent 5 messaged, "…I think now that trump is the president, i d refuse it. it would be an insult to even be considered for it."

> We asked Agent 1 and Agent 5 about their use of instant messaging generally and about these messages in particular. As mentioned in Chapter Five, Agent 1 told us that he believed that instant messages were not retained by the FBI and <span style="color:red">therefore used less caution with those communications than he would have with other types of communications</span>, such as email or text messages.

*See* A Review of Various Actions by the Federal Bureau of Investigation and the Department of Justice in Advance of the 2016 Election 413-414 (Dkt. #112-5) (emphasis added). The report goes on to explain that neither Agent 1 nor Agent 5 believed that Lync messages were preserved by the FBI. *Id*. In fact, Agent 5 stated "that she considered these exchanges as a private 'outlet' with Agent 1." *Id*. at 414. Given such assumptions about Lync, agents obviously thought they could be very candid about their opinions, and they obviously had no incentive to "serialize" their improper comments in the FBI's search index.

      Mr. Huddleston reasonably believes that Mr. Strzok and other FBI personnel assigned to the Seth Rich investigation operated under the same false assumption as "Agent 1" and "Agent 5," namely that (1) Lync messages were temporary; therefore (2) the FBI personnel assigned to the Seth Rich investigation could communicate freely and *honestly* on Lync (rather than trying to preserve the FBI's original false narrative, *i.e.*, that the FBI had no records about Seth Rich and never conducted any sort of investigation). Significantly, the Durham Report reveals that the FBI's "collusion" investigation was conducted by biased political partisans. *See, e.g.*, Durham Report 104. If those biased agents discussed Seth Rich (or his personal laptop, his work laptop, or the witness interview forms that the FBI hid from Mr. Huddleston until fairly recently), then those same biased political actors would obviously have assumed that their Lync messages would be destroyed. There is no chance that they would have indexed and preserved their own improprieties for the benefit of future FOIA requestors like Mr. Huddleston. Thus the <u>only</u> way to find those records is via a search of Lync itself.[4]

---

[4] Another point is worth remembering. Following the belated appearance of responsive documents, Mr. Huddleston argued that the FBI should disclose whether it searched for records via any code names that were assigned to Mr. Rich, *e.g.,* "Crossfire Panda." *See* Clarification Reply (Dkt. #92) 11-12. The FBI need not disclose any such code names nor even disclose whether code names were assigned at all. It

**(3) The FBI should be compelled to search for records in "Teleporter."**

In his MSJ, Mr. Huddleston noted that the FBI had been using "Teleporter" to communicate with Twitter for the purpose of censoring information about the Hunter Biden laptop story. *See* MSJ 5, citing Michael Shellenberger, "Elon Musk chose us to report on the Twitter Files. Here are the disturbing things I learned about the FBI," January 18, 2023 *Fox News* 4 (Dkt. #112-8). Notably, the FBI knew what the Hunter Biden laptop was real (*i.e.*, not part of a Russian disinformation campaign), yet it still tried to censor the story anyway. *Id*. That is very relevant here. The Court will recall the August 10, 2016 email chain wherein an FBI official states that he "squashed" what appears to have been a media inquiry concerning Seth Rich's involvement in the DNC email leaks. *See* Fifth Declaration ¶6.[5] In light of that, Mr. Huddleston requests that the Court take notice of the recent developments in *Missouri v. Biden*, No. 3:22-CV-01213, 2023 WL 4335270, at *50 (W.D. La. July 4, 2023). The U.S. Government – including the FBI – has engaged in a widespread effort to censor information that opposes the viewpoints of the political establishment, and particularly the interests of the Democratic Party. *Id*. It apparently has become common practice for the FBI and other federal agencies to communicate via email or Teleporter in order to censor stories for political purposes. *Id*. and

---

could simply verify that <u>if</u> such code names were assigned, they were searched. In fact, another agency within the Justice Department came fairly close to doing just that. *See, e.g.,* Defendants' Combined Reply to Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment and Opposition to Plaintiff's Cross-Motion for Summary Judgment 11 ("Without confirming or denying whether a code name was assigned to Seth Rich, as a general practice, to the extent OIP becomes aware of identifying information pertaining to a request subject, OIP will incorporate that information into its searches, as appropriate."). The FBI should be compelled to clarify this issue.
[5] Mr. Seidel further explained that the FBI failed to locate the email in its search for records about Seth Rich because its personnel did not consider it to be of "sufficient significance" (a criterion that it has yet to define) to be uploaded into its search index system.. Fifth Declaration ¶7. Mr. Huddleston encourages the Court to re-read pages 4-7 of Plaintiff's Surreply in Opposition to Defendants' Motion for Summary Judgment and Reply in Support of Plaintiff's Cross-Motion for Summary Judgment. Clearly, the public considered that email to be a matter of "sufficient significance" as of last year, and its "significance" has only grown in light of evidence that the FBI tried to censor information about the Hunter Biden laptop. *See* Dkt. #112-8, p. 4.

Margot Cleveland, "Latest 'Twitter Files' Bombshell Shows FBI Neck-DeepIn Russian Disinformation Lie To Kill Hunter Biden Laptop Story," December 20, 2022 *The Federalist*, https://thefederalist.com/2022/12/20/latest-twitter-files-bombshell-shows-fbi-neck-deep-in-russian-disinformation-lie-to-kill-hunter-biden-laptop-story/ 3 (Exhibit 2) (FBI agent used email to send Teleporter links for purposes of suppressing Biden laptop story). Given these newly-revealed facts, it is entirely reasonable to ask whether the FBI used Teleporter (or email) to "squash" the Seth Rich story, just like it used Teleporter to "squash" the Hunter Biden laptop story.

In opposing Mr. Huddleston's request that the Court order the FBI to search "Teleporter," the FBI does not deny that the system exists.[6] Nor does it deny that Teleporter's contents are omitted from the FBI's FOIA searches. Instead, the FBI offers only a single sentence of any substance: "…Teleporter is a system used to facilitate the transfer of data, not a system of records." Response 6. Tellingly, the FBI does not offer any supporting evidence for this claim, *e.g.*, another one of Mr. Seidel's infamous sworn declarations. If the FBI is arguing that the "system" cannot be searched, then it needs to make that statement unequivocally, and it needs to support that statement with evidence.[7] Better yet, Mr. Seidel and his colleagues should be deposed under oath, where they will be subject to targeted questioning and have less opportunity for dodging and weaving. *See* fn. 3, *supra*.

---

[6] Indeed, the FBI cannot plausibly deny the existence of Teleporter. Mr. Huddleston located a training presentation from New Hampshire that describes Teleporter as a "service that allows operational-related files to be shared and moved between law enforcement and partner communities." *See* "Search and Arrest Warrant Protocols," Karen Gorham, Superior Court Administrator [of New Hampshire], https://www.courts.nh.gov/sites/g/files/ehbemt471/files/inline-documents/sonh/law-enforcement-training.pptx (attached as Exhibit 3)(emphasis added).

[7] Notably, the FBI sent emails that contained Teleporter links, *see* Exhibit 2, therefore the FBI should be compelled to search its email system to determine whether files about Seth Rich, CrowdStrike, etc. were transmitted via Teleporter.

**(4) The FBI should be compelled to search electronic surveillance and geolocation data.**

In Item 4 of his MSJ, Mr. Huddleston asked the Court to compel the FBI to search two records sources: (1) its electronic surveillance index ("ELSUR"); and (2) geolocation data. With respect to the latter, Mr. Huddleston specifically sought a search of "all sources of geolocation data." MSJ 5-6. After reviewing the MSJ, the undersigned realized that it references emails to the FBI about geolocation data, MSJ 5-6, but he failed to attach the emails. Those emails are now attached to this reply as Exhibit 4, and they explain exactly why geolocation data should be searched. The FBI acknowledged the request for geolocation data, Response 6, but it did not oppose that request. So far as Mr. Huddleston is aware, ELSUR and geolocation data are two different things. In March of this year, for example, FBI Director Christopher Wray admitted that his agency *purchased* geolocation data on U.S. citizens without obtaining a warrant. *See* Dell Cameron, "The FBI Just Admitted It Bought US Location Data," March 8, 2023 *Wired*, https://www.wired.com/story/fbi-purchase-location-data-wray-senate/ (Exhibit 5). Insofar as the FBI did not oppose the portion of the MSJ that sought a search of geolocation data, that portion of the MSJ should be granted. *See, generally, Boggs v. Krum Indep. Sch. Dist.*, 376 F. Supp. 3d 714, 722 (E.D. Tex. 2019), quoting *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 255 (5th Cir. 2008), in turn quoting *Castro v. McCord*, 259 F. App'x 664, 665 (5th Cir. 2007)("A party 'waives an issue if he fails to adequately brief it.'").

With respect to ELSUR, the Response is misleading and unpesuasive. The Government first directs the Court's attention to Paragraphs 57, 58, 59, and 63 of the Fourth Declaration of Michael G. Seidel (Dkt. #37-1), but nothing in those paragraphs indicate that the FBI searched ELSUR for records about Seth Rich, CrowdStrike, etc. The FBI then argues that it is too late for Mr. Huddleston to seek a search of ELSUR, but obviously a lot has happened since the FBI filed

its motion for summary judgment (Dkt. #37) on December 15, 2021. We now know, for example, that the FBI withheld records about CrowdStrike and records about Seth Rich's work laptop. *See* Sur-Reply in Opposition to Defendant FBI's Notice of Supplemental Search Declaration and Vaughn Indices (Dkt. #110) 3-5 and Clarification Reply (Dkt. #92) 2-5 and 11-13. The FBI has demonstrated time and again that it cannot be trusted to search all locations where responsive records are likely to be found, therefore it should be ordered to search ELSUR as well as any geolocation data.

**(5) The FBI should be compelled to search for missing forms related to items or evidence already identified.**

On October 31, 2022, Plaintiff's Counsel sent Defendants' Counsel a list of standard FBI forms that pertain to the handling of property or evidence. In its Response, the FBI tried to avoid disclosure by caviling about the source of Plaintiff's list of forms. It should be self-evident that in a case like this one, where the requestor has had to fight tooth and nail for every single document, his counsel has been forced to do detective work, such as asking former FBI agents what kind of forms would normally be completed when the FBI receives a laptop as evidence. The FBI does not and cannot deny that it utilizes the following forms:

FD-886 - Evidence Recovery Log

FD-192 - FBI Evidence - Data Loading Form

FD-441a - Return Receipt for Evidence Control Custodian

FD-455 - Access. Log - Evidence Storage Facility

FD-504a - Chain of Custody - ELSUR Evidence Envelope (9-1/2 x 12 inches)

FD-631 - Letter to Accompany Return of Documentary Evidence

FD-632 - Evidence Transmittal Envelope

FD-597 - Receipt for Property Received, Returned, Released, Seized

        FD-756 - Special Case Items Property Receipt

In fact, they are listed in a document that was produced by the FBI in response to a different FOIA request. *See* "Forms used by the Federal Bureau of Investigation (FBI) 2003-2004," https://www.governmentattic.org/44docs/FBIforms_2003-4.pdf (Exhibit 6). Contrary to the Response, Mr. Huddleston is not engaged in "mere speculation" about what responsive documents might exist. If the FBI took custody of Seth Rich's work laptop and a copy of his personal laptop hard drive, as it now admits it has done, then it is entirely reasonable to ask why the FBI has not produced all of the supporting paperwork. If nothing else, the FBI's obfuscation further illustrate the need for depositions and discovery.

**(6) The FBI should be compelled to search for records related to activities of the CIA and other agencies or third parties.**

        The Response's arguments about why the FBI should not have to produce records that it obtained from the CIA or other agencies is more than a little ironic. The FBI does not dispute Mr. Huddleston's legal argument, nor does it offer any evidence concerning whether or not it searched for such records. Instead, after complaining repeatedly and bitterly about Mr. Huddleston's purported "speculation," it offers the following *speculation*:

> First, any investigation involving the CIA would have been a national security investigation, and Exemption (b)(1) would exempt the disclosure of any information related to the matter. Further, the FBI would have issued a *Glomar* response to neither confirm nor deny the existence of such records.

Obviously, and at a bare minimum, the FBI should have complied with FOIA by (1) searching for the records and (2) either asserting Exemption (b)(1) or a *Glomar* response as appropriate. But we can skip that step, because we know that the FBI is not telling the truth about Exemption (b)(1) and *Glomar*. It has been a matter of public record since at least October 6, 2020 that the CIA director made a referral to the FBI in 2016 regarding the whole Russian "collusion" fiasco.

*See* Brooke Singman, "DNI declassifies Brennan notes, CIA memo on Hillary Clinton 'stirring up' scandal between Trump, Russia," October 6, 2020 Fox News, https://www.foxnews.com/politics/dni-brennan-notes-cia-memo-clinton (Exhibit 7); *see also* Durham Report.[8] We know that because the Director of National Intelligence declassified some of the notes taken by the CIA director. *Id*. We have also known since October 6, 2020 that one of the recipients of that referral was none other than FBI Agent Peter Strzok. *Id.; see also* Durham Report 81-82 and 86. The Court will recall that Agent Strzok's name appears in the FBI email chain about "squashing" a media inquiry about Seth Rich. Furthermore, *after* the MSJ was filed, we learned even more about the dubious connections among the CIA, the FBI, the Hillary Clinton campaign, "Russian collusion," and Agent Strzok. *See* Brooke Singman, "FBI ignored 'clear warning sign' of Clinton-led effort to 'manipulate' bureau for 'political purposes'," May 16, 2023 Fox News, https://www.foxnews.com/politics/fbi-ignored-clear-warning-sign-clinton-led-effort-manipulate-department (Exhibit 8) and Durham Report 81-82 and 86.[9]

**(7) The FBI should be compelled to search for records related to confidential informants and online personas.**

In light of the federal government's intertwined relationship with social media giants like Twitter, it is not unreasonable to ask whether the FBI was using @Whispertech or other online personas for the purposes of controlling the Seth Rich narrative. After all, the FBI worked closely with Twitter and other social media to control the narrative surrounding the Hunter Biden laptop. *Supra* 7-8, citing sources.

---

[8] And as noted above, this Court has already recognized the direct connection between Seth Rich and the "collusion" fiasco, as have the Defendants themselves.

[9] Mr. Huddleston originally intended to include a declaration from a witness, hence the August 18, 2023 motion for extension of time (Dkt. #126), but the witness concluded that any disclosures might violate a protective order.

The FBI objects to Mr. Huddleston's reliance on an undisclosed tipster, but it never indicates (1) whether records related to online personas and confidential informants is entered into its search indexes; or (2) whether it actually searched for such information. Once again, and without any sense of irony, the FBI accuses Mr. Huddleston of speculation and then responds with speculation:

> [A[ny investigation concerning the use of an FBI informant would be exempt from disclosure under Exemption (b)(7)(D). Furthermore, the FBI would have issued a *Glomar* response to neither confirm nor deny the existence of such records.

Response 9. Notably, Exemption (b)(7)(d) applies only to "records or information compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). If the FBI was engaged in political damage control, as it was in the Hunter Biden case, then Exemption (b)(7)(d) would not apply, and the FBI would have no basis for a *Glomar* response. If the FBI nonetheless believes that (b)(7)(D) applies, then it should include that response in a *Vaughn* index. And if the FBI believes a *Glomar* response is warranted, then the FBI should plainly say as much. Instead, the FBI seems to be arguing that it need not search for such records because it would not have to produce them anyway. But this argument proves too much. It is impossible to know what would have to be produced without conducting the search in the first place.

**(8) The FBI should be compelled to search for <u>all</u> reports concerning the 2016 "hack" of Democratic National Committee emails.**

Mr. Huddleston previously demanded copies of all reports about the 2016 "hack" of the Democratic National Committee. MSJ 8, adopting Sur-Reply in Opposition to Defendant FBI's Notice of Supplemental Search Declaration and Vaughn Indices ("Sur-Reply")(Dkt. #110). [10]

---

[10] The word "hack" is placed in quotation marks because it is used tendentiously to discredit the growing body of evidence that the DNC emails were leaked to Wikileaks after their download by a DNC insider. Even Robert Mueller, although he dismisses the Seth Rich allegations without, it appears, having interviewed any of the people with relevant evidence, including Julian Assange (who denied the emails

Most of the FBI's arguments in response (*e.g.*, objections about reliance on media reports) have been addressed previously herein. However, the FBI alleges that "Plaintiff's allegation of an inadequate search is once again based on speculation tied to an anonymous tip from either a third removed or fourth removed, unidentified source." That allegation is demonstrably false. The Sur-Reply not only alleged but <u>proved</u> the existence of additional, undisclosed reports. *See* Sur-Reply 3-6.

**(9) The FBI should be compelled to answer questions about the adequacy of its searches.**

The FBI concedes that discovery is proper if there is evidence that it acted in bad faith. While the Court found insufficient evidence of bad faith as of September 29, 2022, *see* Memorandum (Dkt. #70), substantial new evidence of bad faith has emerged since that time. The Durham Report has now shown that the FBI acted in what can only be described as egregious bad faith by its overzealous investigation of President Trump and his associates when it was aware, no later than August 22, 2016 of the "Clinton Plan," or the "proposal . . .to vilify Donald Trump by stirring up a scandal claiming interference by the Russian security services." Durham Report 85. The Clinton Plan, which was garden-variety opposition research deployed with reckless disregard of US relations with a nuclear-armed adversary, should never have been taken seriously by an agency operating in good faith, as Durham makes clear over and over again through his report. *See* Durham Report at 95 (stressing the "rather startling and inexplicable failure to adequately consider and incorporate the Clinton Plan intelligence into the FBI's investigative decision making in the Crossfire Hurricane investigation" and concluding "the FBI thus failed to act on what should have been -when combined with other, incontrovertible facts -a

---

came from a Russian source, Seymour Hersh (who reported that the emails had been transmitted by Seth Rich), and Ellen Ratner (who stated publicly that the emails had been leaked by a DNC insider), notes that he cannot exclude that the DNC emails were downloaded locally and then transferred via an intermediary in physical form to Wikileaks. *See* Mueller Report (Dkt. #105-8) at 47 and Note 175.

clear warning sign that the FBI might then be the target of an effort to manipulate or influence the law enforcement process for political purposes during the 2016 presidential election"); 97 ("troubling disregard for the Clinton Plan intelligence and potential confirmation bias in favor of continued investigative scrutiny of Trump and his associates"); 304-05 ("FBI leadership essentially disregarded the Clinton Plan intelligence. . . despite the fact that at precisely the same time as the Clinton Plan intelligence was received (i) the Clinton campaign made public statements tying the DNC computer hack to Russian attempts to help Trump get elected, (ii) the FBI was receiving the Clinton campaign-funded Steele Reports, and (iii) the Clinton campaign-funded Alfa Bank allegations were being prepared for delivery to the media and the FBI").  That Durham concludes he did not have sufficient evidence to prove beyond a reasonable doubt that the FBI had engaged in criminal conduct, Durham Report at 98, should not detract from the very serious FBI misconduct detailed in the Durham report. In this context, where the FBI has also been caught dissembling about the Seth Rich laptops, and there is overwhelming evidence of partisan bad faith by the FBI in its handling of the Russian "hacking" and "collusion" allegations, discovery is unquestionably warranted.

## Conclusion

The FBI still refuses to search locations where records are likely to be found. The Court should compel the FBI to search <u>all</u> locations where records are likely to be found, and it should permit Mr. Huddleston to conduct discovery.

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
212 S. Oxford Street #7D
Brooklyn, New York 11217
(979) 985-5289
(979) 530-9523 (fax)
tyclevenger@yahoo.com

**Counsel for Plaintiff Brian Huddleston**