**United States District Court**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| BRIAN HUDDLESTON, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:20-cv-00447 |
| FEDERAL BUREAU OF | § | Judge Mazzant |
| INVESTIGATION and UNITED STATES | § | |
| DEPARTMENT OF JUSTICE, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant FBI's Motion for Clarification, or in the Alternative, Reconsideration of the Memorandum Opinion and Order Entered September 29, 2022 (Dkt. #73) and Plaintiff's Motion for Clarification of the Memorandum Opinion and Order Entered September 29, 2022 (Dkt. #77). Having considered the motions and the relevant pleadings, the Court finds that Defendant FBI's Motion for Clarification, or in the Alternative, Reconsideration of the Memorandum Opinion and Order Entered September 29, 2022 (Dkt. #73) should be **DENIED**. Further, having considered the motion and the relevant pleadings, the Court finds that Plaintiff's Motion for Clarification of the Memorandum Opinion and Order Entered September 29, 2022 (Dkt. #77) should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

This Memorandum Opinion and Order arises in the context of Freedom of Information Act litigation between Plaintiff Brian Huddleston and Defendants Federal Bureau of Investigation

(the "FBI") and the United States Department of Justice (the "DOJ"). The Court will not belabor on the case's background here because it has already been discussed in detail in the Court's Memorandum Opinion and Order from September 29, 2022 (the "Prior Order") (Dkt. #70).

On September 29, 2022, the Court entered the Prior Order requiring the FBI and the DOJ to "produce the information it possesses related to Seth Rich's laptop and responsive to Plaintiff's FOIA requests" (Dkt. #70). The Prior Order did not specify whether the FBI and DOJ must produce the information it possesses related to Seth Rich's work laptop or personal laptop (Dkt. #70). However, all analysis in the Prior Order discussed Seth Rich's personal laptop, as opposed to Seth Rich's work laptop (Dkt. #70). Additionally, the Prior Order did not address whether the FOIA exemptions 7(D) and 7(E) apply to Seth Rich's personal laptop (Dkt. #70).

On October 27, 2022, the FBI filed a motion for clarification, or in the alternative, reconsideration regarding the Prior Order (Dkt. #73). This motion requests for the Court to reconsider whether FOIA exemptions 7(D) and 7(E) apply to information related to Seth Rich's personal laptop (Dkt. #73).[1] The FBI does not actually have Seth Rich's personal laptop, but rather it has a compact disk containing images of Seth Rich's personal laptop (Dkt. #84, Ex. 1 ¶ 5). Further the FBI has not extracted the information contained on the compact disk (Dkt. #84, Ex. 1 ¶ 6).[2] On November 10, 2022, Huddleston filed his response (Dkt. #76). On December 12, 2022, the FBI filed its reply (Dkt. #84). On January 13, 2023, Huddleston filed his sur-reply (Dkt. #93).

---

[1] Huddleston has expressed concern that the FBI may have had physical custody over Seth Rich's personal laptop at one point and then played "hot potato" by giving the laptop back to local police (Dkt. #76 at pp. 3–4). However, the unredacted version of FD-302, which the FBI submitted for *ex parte in camera* review, demonstrates that the Huddleston's concern is unfounded (Dkt. #85).

[2] Huddleston claims the FBI has made inconsistent statements as to whether it has reviewed or extracted the information contained on the compact disk (Dkt. #76 at pp. 1–2). The FBI has clarified this issue by revealing that the FBI can "typically identify the types and approximate volume of files on a compact disk without extracting the data" (Dkt. #84, Ex. 1 ¶ 6). The FBI had tried to evaluate an approximate page count for the Court, but it has not extracted or processed the information on the compact disk (Dkt. #84, Ex. 1 ¶ 6).

On November 14, 2022, Huddleston filed a motion for clarification regarding the Prior Order (Dkt. #77). Huddleston requested clarification regarding Rich's work laptop because the Prior Order did not expressly address the work laptop (Dkt. #77). On December 12, 2022, the FBI filed its response (Dkt. #84). On January 13, Huddleston filed his reply (Dkt. #92).

In its response to Huddleston's motion, the FBI noted that it had located additional items (Dkt. #84 at p. 4) The first two items were a DVD and a tape drive (Dkt. #84 at p. 4–5). The FBI found these items stored in the same evidence control room as the work laptop (Dkt. #84 at p. 4). The FBI also found a letter from a third party that accompanied the work laptop, two chain of custody forms, and a three-page report detailing actions by a third party outside entity to image the work laptop (Dkt. #84 at p. 5). These three items were attached to the work laptop, DVD, and tape drive and not uploaded to the relevant electronic case file (Dkt. #84 at p. 6).

## LEGAL STANDARD

A motion seeking reconsideration may be construed under Federal Rule of Civil Procedure 54(b), 59(e), or 60(b) depending on the circumstances. "The Fifth Circuit recently explained that 'Rule 59(e) governs motions to alter or amend a final judgment,' while 'Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to revise at any time any order or other decision that does not end the action.'" *Dolores Lozano v. Baylor Univ.*, No. 6:16-CV-403-RP, 2018 WL 3552351, at *1 (W.D. Tex. July 24, 2018) (quoting *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017)). Further, "'[i]nterlocutory orders,' such as grants of partial summary judgment, 'are not within the provisions of 60(b), but are left within the plenary power of the court that rendered them to afford such relief from them as justice requires [pursuant to Rule 54(b)]." *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 701 (5th Cir. 2014) (quoting

*Zimzores v. Veterans Admin.*, 778 F.2d 264, 266 (5th Cir. 1985)) (citing *Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 585, 862 (5th Cir. 1970)).

Because this is a motion seeking reconsideration of an interlocutory order, the Court uses Federal Rule of Civil Procedure 54(b). "Federal Rule of Civil Procedure 54(b) provides that, in a case involving multiple claims or parties, 'any order or other decision, however found, that adjudicates fewer than all the claims or the rights and liabilities or fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.'" *Blundell v. Home Quality Care Home Health Care, Inc.*, No. 3:17-cv-1990-L-BN, 2018 WL 276154, at *4 (N.D. Tex. Jan. 3, 2018) (quoting FED. R. CIV. P. 54(b)). "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Austin*, 864 F.3d at 336 (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds*, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994)). Courts generally will not consider an issue raised for the first time in a motion for reconsideration. *See Wise v. Wilkie*, 955 F.3d 430, 437 n.25 (5th Cir. 2020); *LeClerc v. Webb*, 419 F.3d 405, 412 n.13 (5th Cir.2005).

## ANALYSIS

The FBI and Huddleston's motions raise three distinct issues, (1) the production of information relating to Seth Rich's personal laptop, (2) the production of information on Seth Rich's work laptop and associated documents, and (3) the production of the letter from a third party that accompanied the work laptop, two chain of custody forms, and the three-page report detailing actions by a third party outside entity to image the work laptop.

## I.   Clarification regarding Seth Rich's personal laptop

The issue of whether the FBI and DOJ must produce information from the images of Seth Rich's personal laptop revolves around three issues, (1) whether the FBI waived its arguments regarding the personal laptop, (2) whether FOIA Exemption 7(D) applies, and (3) whether FOIA Exemption 7(E) applies.[3] The Court will require the FBI and DOJ to produce a *Vaughn* index addressing the information they possess related to Seth Rich's personal laptop.

### A.   Waiver of arguments regarding Seth Rich's personal laptop

Huddleston argues the FBI waived its arguments that FOIA Exemptions 7(D) and 7(E) apply to Seth Rich's personal laptop because the FBI failed to raise these issues in its motion for summary judgment (Dkt. #76 at pp. 6–8). In response, the FBI claims that it "clearly asserted and explained" the exemptions in its summary judgment briefing, the *Vaughn* index, and the declarations of Michael Seidel (supporting its summary judgment briefing) (Dkt. #84 at p. 3).[4]

A motion for reconsideration may not be used to introduce new arguments. *LeClerc v. Webb*, 419 F.3d 405, 412 n.13 (5th Cir. 2005). In *LeClerc v. Webb*, the plaintiffs filed a motion for reconsideration that included new arguments. *Id.* The Fifth Circuit found that the district court

---

[3] Before an agency can invoke any subpart of Exemption 7, including Exemptions 7(D) and 7(E), the agency must demonstrate that the records or information at issue were compiled for law enforcement purposes. *See John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 153, 156 (1989). Here, the records withheld by the FBI were created and compiled in furtherance of the FBI's role in the United States Office of Special Counsel investigation and related investigations. The FBI explains that "these records were created and compiled to document the FBI's investigation of potential crimes and threat to the national security, thus, the FBI determined they were created and compiled for law enforcement purposes" (Dkt. #39, Ex. 1 ¶ 120). Huddleston does not dispute that the records were compiled for law enforcement purposes, and the Court sees no reason on the record to conclude otherwise. Thus, the Court finds that the FBI has satisfied Exemption 7's threshold inquiry.

[4] The FBI also argues that "FOIA case[s] can be decided on the *Vaughn* index alone, or in conjunction with agency declarations and summary judgment briefing" (Dkt. #84 at p. 3). However, the Court does not reach this issue because the FBI raised arguments regarding FOIA Exemptions 7(D) and 7(E) via the combination of its summary judgment briefing, the 4th Seidel Declaration, and its *Vaughn* index and no waiver occurred.

had properly rejected the plaintiffs' new arguments, describing the new arguments as "improperly raised below." *Id.*

The FBI raised arguments regarding both exemptions in its summary judgment briefing, its *Vaughn* Index, and the 4th Seidel Declaration. In its *Vaughn* Index, the FBI indicated that Exemptions 7(D) and 7(E) apply to the personal laptop (Dkt. #39, Ex. 1 at p. 188). In its summary judgment briefing, the FBI stated regarding Exemption 7(D):

> The FBI asserted Exemption 7(D) to withhold confidential source symbol numbers, identifying information and information provided by sources under both express and implied assurances of confidentiality, and information provided by a foreign government agency under an implied assurance of confidentiality.

(Dkt. #39 at p. 46). In its summary judgment briefing, the FBI stated regarding Exemption 7(E):

> Specifically, the FBI asserted Exemption 7(E) to protect FBI internal email addresses and non-public web addresses; sensitive investigative file numbers and sub-file names; database information; code names for investigations; types and dates of investigations; collection and analysis of information; specific law enforcement techniques utilized to conduct national security investigations; investigative focus of specific investigations; and identities of an FBI Unit, Squad and Division.

(Dkt. #39 at p. 47). The FBI further provided relatively more specific information for the general reasons why the FBI sought the exemptions (Dkt. #39, Ex. 1 ¶¶ 150–151, 171).

Although greater explanation would have been helpful, specifically more detailed explanations of why Exemptions 7(D) and 7(E) apply to the personal laptop, the FBI has not waived its arguments regarding whether the exemptions apply to the personal laptop. In its summary judgment briefing, the FBI indicated that it sought to apply Exemptions 7(D) and 7(E) to a wide array of records, which could include the personal laptop (Dkt. #39 at pp. 46–47). The FBI provided more detailed explanations regarding why it applied the exemptions to the wide array of records (Dkt. #39, Ex. 1 ¶¶ 150–151, 171). However, the *Vaughn* index indicated that the FBI

sought to apply the exemptions to the personal laptop (Dkt. #39, Ex. 1 at p. 188). The combination of these facts clearly indicates to the court that the FBI raised arguments at the summary judgment stage that it sought to apply Exemptions 7(D) and 7(E) to the personal laptop. *See LeClerc*, 419 F.3d at 412 n.13.

### B.  Application of Exemption 7(D)

The FBI claims that Exemption 7(D) applies to the compact disk containing images of the personal laptop because local law enforcement provided the compact disk to the FBI under an implied assurance of confidentiality (Dkt. #73 at pp. 4–6).[5] Specifically, the FBI argues that an implied assurance of confidentiality exists because "1) the information and assistance provided would disclose their agency's law enforcement techniques, or details about law enforcement techniques, that are not publicly known; and 2) the information provided in some instances concerns the law enforcement agency's own confidential sources" (Dkt. #76 at p. 5). Further, the FBI claims that disclosure of the information could:

> 1) jeopardize these agencies' investigative techniques and procedures as disclosure would allow criminals to predict and circumvent use of these techniques and procedures; 2) discredit these state and local law enforcement authorities with current and future confidential sources, and greatly hinder their ability to recruit their own valuable sources; and 3) subject the agencies' personnel to violent reprisal.

(Dkt. #76 at pp. 5–6). In response, Huddleston replies that the FBI has failed to carry its burden to meet the standards of Exemptions 7(D) and 7(E) (Dkt. #76 at pp. 8–13). He states that the FBI has not reasonably inferred that the source provided the laptop under an assurance of confidentiality (Dkt. #76 at p. 9). He also asserts that the FBI did not show how "disclosure of the laptop's

---

[5] The FBI further lists a portion of its motion for summary judgment as a basis for Exemption 7(D) (Dkt. #73 at p. 6). However, this portion of its summary judgment does not specifically address how Exemption 7(D) applies to the personal laptop (Dkt. #39 at pp. 45–46).

contents would cause harm to the local law enforcement agency (or officer) that provided the laptop to the FBI" (Dkt. #76 at p. 9).

Huddleston further claims that this case is comparable to *Bagwell v. United States Department of Justice* (Dkt. #76 at p. 10). In *Bagwell*, the court refused to treat Pennsylvania State University as a confidential source under Exemption 7(D). 588 F. Supp. 3d 58, 71–72 (D.D.C. 2022). The court viewed Penn State as a "large and well-represented public institution," a "far cry from the 'witness[ ] to a gang-related murder'" the Supreme Court offered as an example in *United States Department of Justice v. Landano. Id.* at 71 (quoting 508 U.S. 165, 179 (1993)). Huddleston argues that the same principle should apply to prevent a law enforcement agency from being treated as a confidential source as it is a "large and well-represented public institution" (Dkt. #76 at p. 10). He speculates that the source of the compact disk is a detective of the Metropolitan Police Department and a former Assistant United States Attorney (Dkt. #76 at pp. 10–11).

Exemption 7(D) protects information from disclosure that could:

> reasonably be expected to disclose the identity of a confidential source . . . which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). "Under Exemption 7(D), the question is not whether the requested document is of the type that the agency usually treats as confidential, but whether the particular source spoke with an understanding that the communication would remain confidential." *Landano*, 508 U.S. at 172. A source may be confidential under an express assurance of

confidentiality or in circumstances from which such an assurance could be reasonably inferred.[6] *Id.* An agency may show than an implied assurance of confidentiality exists through factors such as "the nature of the crime that was investigated and the source's relation to it." *Id.* at 180–81. The burden of proof lies on the agency to prove that an implied assurance of confidentiality exists. *Id.* at 172.

### 1.    The Investigative Techniques and Procedures of the FBI's Source

Two of the FBI's bases for finding that an implied assurance of confidentiality exists relate to the source agency's investigative techniques and procedures (Dkt. #73 at pp. 5–6).[7] These bases mirror Exemption 7(E), which protects information that "would disclose techniques and procedures for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 522(b)(7)(E). Exemption 7(E) requires that "the agency must at least provide some explanation of what procedures are involved and how they would be disclosed." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 746 F.3d 1082, 1102 (D.C. Cir. 2014); *see infra* Part I.C.

If an agency attempts to demonstrate an implied assurance of confidentiality under Exemption 7(D) based on a need to protect another agency's investigative techniques and procedures, then the agency's explanation must meet the requirements of Exemption 7(E). *See* 5 U.S.C. § 522(b)(7)(E).

The FBI's bases based on the source agency's investigative techniques and procedures fail to meet the requirements of Exemption 7(E). The FBI's explanations only reveal that the source

---

[6] The FBI only asserts that an implied of assurance of confidentiality exists between the FBI and its source (Dkt. #74 at pp. 4–6).

[7] In this context, a "source agency" is an agency that provides information to the FBI.

agency's investigative techniques and procedures are not publicly known, and their disclosure would "allow criminals to predict and circumvent [the] use of these techniques and procedures" (Dkt. #73 at pp. 5–6). These bases are conclusory and do not provide at least some explanation of what procedures are involved or how they would be disclosed (Dkt. #73 at pp. 5–6). *See Citizens for Resp. & Ethics*, 746 F.3d at 1102; *see also infra* Part I.C.

### 2.    The Confidential Sources of the FBI's Source

Two of the FBI's bases for finding that an implied assurance of confidentiality exists deal with the source agency's confidential sources and the source agency's ability to recruit confidential sources in the future (Dkt. #73 at pp. 5–6). These bases suggest that the FBI should be able to treat its source as confidential because its source's source was confidential (*See* Dkt. #73 at pp. 5–6). However, the FBI provides no explanation for why the ultimate source is confidential (*See generally* Dkt. #73; Dkt. #84).

"[N]arrowly defined circumstances . . . can provide a basis for inferring confidentiality." *Landano*, 508 U.S. at 181. Circumstances that can give rise to such an inference include "the nature of the crime investigated and the witness's relation to it." *Id.* Ultimately, confidentiality must arise as an inference based on the underlying circumstances. *Id.* While affidavits and declarations that the government submits generally receive a presumption of legitimacy, the agency must still meet its burden of proof regarding any asserted exemption to FOIA. *Batton v. Evers*, 598 F.3d 169, 176 (5th Cir. 2010).

An agency may not justify its assertion of Exemption 7(D) by claiming that its source's source was confidential without further explanation. To show an implied assurance of confidentiality, the FBI must demonstrate an inference of confidentiality based on narrowly

defined circumstances. *Landano*, 508 U.S. at 181. However, narrowly defined circumstances cannot consist solely of describing an agency's source as having a confidential source. Otherwise, an agency could effectively bypass the requirements of *Landano* by simply labeling its ultimate source as "confidential." *See id.* Therefore, the FBI's two bases for asserting Exemption 7(D) based on the source agency's confidential sources are insufficient.

### 3. The Threat of Retaliation to the Agents of the FBI's Source

The FBI's final basis for asserting Exemption 7(D) is that its source agency's personnel may face "violent reprisal" (Dkt. #76 at p. 6). However, the FBI provides no explanation as to how the disclosure of the compact disk containing images of the personal laptop could subject its source agency's personnel to "violent reprisal" (*See* Dkt. #76 at p. 6).

For a threat of retaliation against a source (or a source's employees) to constitute a valid basis for Exemption 7(D), the circumstances must suggest a threat of retaliation. *Cooper Cameron Corp. v. U.S. Dep't of Lab.*, 280 F.3d 539, 553–54 (5th Cir. 2002); *McNamera v. U.S. Dep't of Just.*, 974 F. Supp. 946, 963 (W.D. Tex. 1997); *McQueen v. United States*, 179 F.R.D. 522, 531 (S.D. Tex. 1998). In *Cooper Cameron Corporation v. United States Department of Labor*, OSHA sought to protect certain records under Exemption 7(D) (among other exemptions) on the grounds of potential retaliation by an employee against multiple employees. *Cooper Cameron Corp.*, 280 F.3d at 547. The Fifth Circuit found that there had been no threat of retaliation and the circumstances did not suggest potential retaliation. *Id.* at 553. Therefore, the Fifth Circuit held that no implied assurance of confidentiality existed. *Id.* at 554.

The FBI does not describe any circumstances connected to the potential disclosure of records related to the personal laptop that suggest a threat of retaliation for its source agency's

employees (*See* Dkt. #76 at p. 6). The mere listing of potential "violent reprisal" is insufficient to suggest potential retaliation. *See Cooper Cameron Corp.*, 280 F.3d at 553–54. Therefore, the FBI's final basis does not suggest that an implied assurance of confidentiality exists. *See id.* at 554.

### 4.   Huddleston's Analogy to *Bagwell*

Contrary to Huddleston's argument, a local law enforcement agency may constitute a source under Exemption 7(D), even if the agency is "a large and well-represented public institution." In *Bagwell*, the court reasoned that Penn State did not have an implied assurance of confidentiality with the DOJ because it was a "large and well-represented public institution," in contrast with the Supreme Court's example of a "witness[ ] to a gang-related murder." *Bagwell*, 588 F. Supp. 3d at 71; *Landano*, 508 U.S. at 179. However, the Supreme Court's example was just one instance of where an implied assurance of confidentiality exists. *Landano*, 508 U.S. at 179. A court should apply a "particularized approach," evaluating "factors such as the nature of the crime that was investigated and the source's relation to it." *Id.* Further, Exemption 7(D) expressly notes that a confidential source may include "a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis." 5 U.S.C. § 522(b)(7)(D). Therefore, an implied assurance of confidentiality can exist between an agency and a local law enforcement agency that is a large and well-represented public institution.

The Court is not persuaded that an implied assurance of confidentiality exists regarding the compact disk containing images of the personal laptop.[8] Accordingly, the Court finds that the FBI

---

[8] The FBI also argues that the unredacted version FD-302 would further justify its assertion of Exemption 7(D) (Dkt. #84 at p. 2). However, the unredacted version of FD-302 does not suggest to the Court that an implied assurance of confidentiality regarding the compact disk containing images of the personal laptop exists between the FBI and the local law enforcement agency (*See* Dkt. #85).

did not properly withhold the files on the images of the personal laptop under Exemption 7(D). Thus, Huddleston is entitled to summary judgment on this issue.

### C.  Application of Exemption 7(E)

The FBI justifies its withholding of records from the personal laptop under Exemption 7(E) to protect the methods it uses to collect and analyze information it obtains for investigative purposes (Dkt. #73 at p. 6).[9] The FBI claims "[t]he release of this information would disclose the identity of methods used in the collection and analysis of information, including how and from where the FBI collects information and the methods employed to analyze it once collected" (Dkt. #73 at pp. 6–7).[10] In response, Huddleston argues that the FBI's justification for using Exemption 7(E) is insufficient because it does not give any explanation of the procedures involved or how they would be disclosed (Dkt. #76 at p. 12 (quoting *Woodward v. U.S. Marshals Serv.*, 534 F. Supp. 3d 121, 130–31 (D.D.C. 2021)).

FOIA Exemption 7(E) exempts from disclosure information that "would disclose techniques and procedures for law enforcement investigations or prosecutions . . . if such

---

[9] The FBI further lists a portion of its motion for summary judgment as a basis for Exemption 7(E) (Dkt. #73 at p. 7). However, this portion of its summary judgment does not specifically address how Exemption 7(E) applies to the personal laptop (Dkt. #39 at pp. 46–47), so the Court does not consider it.

[10] In its entirety, the FBI's explanation for using Exemption 7(E) as stated in its motion for reconsideration is:

> Within FOIA Exemption Category (b)(7)(E)-6, the FBI withheld methods it uses to collect and analyze information it obtains for investigative purposes. The release of this information would disclose the identity of methods used in the collection and analysis of information, including how and from where the FBI collects information and the methods employed to analyze it once collected. Such disclosures would enable subjects of FBI investigations to circumvent these and similar techniques, thus diminishing their usefulness. This, in turn, would facilitate the ability of investigative subjects to accumulate information regarding the circumstances under which specific methods were used and the utility of the information obtained. Release of this type of information would enable criminals to educate themselves about the methods employed to collect and analyze information and therefore allow them to take countermeasures to circumvent the effectiveness of these methods and continue to engage in activities that violates the law. Accordingly, the FBI properly withheld this information pursuant to FOIA Exemption 7(E).

(Dkt. #73 at pp. 6–7).

disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 522(b)(7)(E). "In order to show that it is justified in withholding the information under FOIA Exemption 7(E), an agency must 'demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" *Bradley v. I.R.S.*, No. 5:17-CV-737, 2019 WL 4980459, at *7 (W.D. Tex. Aug. 5, 2019) (quoting *Blackwell v. F.B.I.*, 646 F.3d 37, 42 (D.C. Cir. 2011)). Further, "[b]ecause the text of FOIA [E]xemption 7(E) exempts from disclosure records that 'could reasonably be expected to risk circumvention of the law,' the [FBI] 'does not have to prove that circumvention is a necessary result.'" *Highland Capital Mgmt., LP v. I.R.S.*, 408 F. Supp. 3d 789, 818 (N.D. Tex. 2019) (quoting *Mayer Brown, LLP v. I.R.S.*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)). "Instead, the [FBI] need only show that there is a chance of a reasonably expected risk that the law would be circumvented if the information withheld is disclosed." *Id.*

To satisfy the requirements of Exemption 7(E), "the agency must at least provide some explanation of what procedures are involved and how they would be disclosed." *Citizens for Resp. & Ethics in Wash.*, 746 F.3d at 1102. In *Citizens for Responsibility and Ethics in Washington v. United States Department of Justice*, the Department of Justice sought to withhold certain records from disclosure under Exemption 7(E). *Id.* at 1101–02. The Department of Justice claimed that the withholding was necessary to "to protect procedures and techniques used by FBI [agents] during the investigation." *Id.* at 1102. The D.C. Circuit rejected this explanation for Exemption 7(E) because it neither indicated "what procedures [were] at stake" nor described "how disclosure . . . could reveal such procedures." *Id.* Therefore, the D.C. Circuit rejected the Department of Justice's attempt to withhold the records under Exemption 7(E). *Id.*

The FBI's justification for withholding the files on the images of the personal laptop neither provides some explanation of what procedures are involved nor how they would be disclosed (Dkt. #73 at pp. 6–7). The FBI's explanation, although longer than that in *Citizens for Responsibility and Ethics in Washington v. United States Department of Justice*, is vague and conveys minimal concrete information. *See* 746 F.3d at 1102. The Court is unaware of what procedures would be at stake. *See id.* The Court also is unaware of how the procedures would be disclosed. *See id.*

The Court is not persuaded that disclosure of this material could reasonably be expected to risk circumvention of the law.[11] Accordingly, the Court finds that the FBI did not properly withhold the files on the images of the personal laptop under Exemption 7(E). Thus, the Huddleston is entitled to summary judgment on this issue. The Government shall produce a *Vaughn* index addressing the information it possesses on the compact disk containing images of Seth Rich's personal laptop that is responsive to Plaintiff's FOIA requests.[12]

## II.    Clarification regarding Seth Rich's work laptop

The Court will require the FBI and DOJ to produce a *Vaughn* index relating to Seth Rich's work laptop, the DVD, and the tape drive because these items are agency records. The FBI asserts that the items are not an agency record and thus not subject to FOIA (Dkt. #84 at p. 3). Huddleston argues that the items are agency records and thus subject to FOIA (Dkt. #92 at p. 11).

FOIA confers jurisdiction on district courts to "enjoin an executive agency from withholding agency records and to order the production of agency records improperly withheld."

---

[11] The FBI also argues that the unredacted version FD-302 would further justify its assertion of Exemption 7(E) (Dkt. #84 at p. 2). However, the unredacted version of FD-302 provides to the Court neither some explanation of what procedures are involved nor how they would be disclosed (*See* Dkt. #85).

[12] In his motion for summary judgment, Huddleston specifically requested that the FBI "search the computers and discs identified in Michael G. Seidel's declaration for responsive records (including metadata), then process any responsive records for production and/or in camera review" (Dkt. #46 at p. 32).

*U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 142 (1989); 5 U.S.C. § 552(a)(4)(B). "[F]ederal jurisdiction is dependent on a showing that an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.'" *Id.* (quoting *Kissinger v. Reps. Comm. for Freedom of Press*, 445 U.S. 136, 150 (1980)). The agency bears the burden to prove that an item is not an agency record. *Id.* at 142 n.3. Two elements exist for determining whether an item is an agency record. *Id.* at p. 144–45. First, "an agency must either create or obtain the requested materials." *Id.* at p. 144. Second, the agency "must be in control of the requested materials at the time the FOIA request is made." *Id.* at 145. In this context, "control . . . mean[s] that the materials have come into the agency's possession in the legitimate conduct of its official duties." *Id.* The FBI concedes the first prong of this test, leaving only the second prong at issue (Dkt. #84, Ex. 1 ¶ 13).

The Fifth Circuit has not yet adopted a test to evaluate whether an agency has control of materials for the purposes of the second element. The FBI urges the Court to analyze whether the agency had control over the items under the 4-factor *Burka* test (Dkt. #84, Ex. 1 ¶12). The four factors under the *Burka* test are "(1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files." *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996). However, Huddleston correctly notes that the D.C. Circuit has called the utility of the *Burka* test into doubt (Dkt. #92 at p. 9). *See Cause of Action v. Nat'l Archives & Recs. Admin.*, 753 F.3d 210, 214–15 (D.C. Cir. 2014) ("If the agency did not control the material, the Supreme Court held, the material was not an 'agency record.' We have questioned whether the *Burka* test is helpful in delineating that distinction.").

Among the most insightful analyses into the flaws of the *Burka* test is the 9th Circuit's opinion of *Rojas v. Federal Aviation Administration*. 941 F.3d 392 (9th Cir 2019). *Rojas* notes two problems with the *Burka* test. *Id.* at p. 408–09. First, the first factor in the *Burka* test is in direct tension with the Supreme Court's decision in *Tax Analyst*. *Id.* at p. 409. The D.C. Circuit issued *Burka* before the Supreme Court issued *Tax Analyst*. *See Burka*, 87 F.3d 508 (issued in 1996); *Tax Analyst*, 492 U.S. 136 (issued in 1998). This conflict exists because the "first factor [of *Burka*] is in tension with the Court's conclusion that 'the intent of the creator of a document' is not relevant to a determination of whether the document is an agency record." *Rojas*, 941 F.3d at 409 (quoting *Tax Analyst*, 492 U.S. at 147). Second, some of the *Burka* factors are less helpful when applied electronic records today compared to over 25 years ago. *Id.* In the words of the 9th Circuit, "[f]or instance, whether an email is 'integrated' into the agency's record system or files is less meaningful today because email and other electronic records may be automatically stored on an agency's server, and not 'filed' in a record system in any formal way." *Id.*

An important consideration discussed in *Tax Analyst* is the distinction between an agency's possession of records in connection with agency-related business and personal matters not related to the agency's transaction of public business. 492 U.S. at 145. The Supreme Court emphasized that agency records should not "include personal materials in an employee's possession, even though the materials may be physically located at the agency." *Id.* Further, the Supreme Court noted that agency records include items and documents related to the agency's "transaction of public business." *Id.*

The 9th Circuit's test in *Roja* is that "a court may consider a range of evidence to determine whether specified records are in the agency's possession in connection with agency-related

business, or instead involve personal matters not related to the agency's transaction of public business." 941 F.3d at 409. "[E]vidence relating to the agency's use of documents (including its system for preserving, retrieving, or disposing of the documents, and any reliance on the documents by agency employees) may be relevant to this inquiry. Agency records are not limited to documents that are preserved according to agency directions." *Id.* Electronic records and "other documents that are unrelated to agency business are not agency records, even if they are stored on the agency's server and used by an agency employee." *Id.* Because "no mens rea requirement [exists] for whether materials constitute agency records . . . agency records may include documents used by agency employees in connection with agency business, even if the employees were engaging in misconduct." *Id.*

The Court will apply the *Roja* test to determine whether the work laptop, the DVD, and the tape drive are agency records within the context of FOIA. Given the numerous issues with the *Burka* test and its tension with *Tax Analyst*, the Court will not apply the *Burka* test. *See id.* The *Rojas* test accounts for these issues and considers the distinction between an agency's possession of records in connection with agency-related business and personal matters not related to the agency's transaction of public business. *Id.*

Applying the *Roja* test, the work laptop, the DVD, and the tape drive are agency records and subject to the FBI's control as required under second prong of the test for whether an item is an agency record.[13] Undoubtedly, the FBI is in possession of the items as it stores them in an evidence control room (Dkt. #84, Ex. 1 ¶ 13(a)). The FBI emphasizes that the items are all evidentiary items, belonging to non-governmental, third parties (Dkt. #84, Ex. 1 ¶ 13(a)). Although

---

[13] The Court would reach the same result under the *Burka* test.

these items are all considered evidentiary property "managed under a different set of rules and regulations than actual agency records," this circumstance does not demonstrate that the items are kept for reasons unrelated to the FBI's transaction of public business (Dkt. #84, Ex. 1 ¶ 13(a)). *See Tax Analyst*, 492 U.S. at 145. Next, the FBI notes that it does not have the right to use and dispose of the items as it sees fit because they are governed by the Digital Evidence Policy Guide (Dkt. #84, Ex. 1 ¶ 13(b)). Therefore, the FBI must ultimately return these items to their "rightful owners when all criminal proceedings have terminated" (Dkt. #84, Ex. 1 ¶ 13(b)). These claims suggest that although the FBI may not have absolute control of items, it possesses the ability to use the items within the bounds of the Digital Evidence Policy Guide for purposes related to the FBI's transaction of public business (Dkt. #84, Ex. 1 ¶ 13(b)). *See Tax Analyst*, 492 U.S. at 145.

The FBI provides two additional facts under its analysis of whether the items are agency records for the purposes of FOIA. First, the FBI claims that it found "no indication that the FBI relied on content of the work laptop, DVD, or tape drive" (Dkt. #84, Ex. 1 ¶ 13(c)). This fact supports a finding that the items are not agency records. *See Rojas*, 941 F.3d at 409. Finally, the FBI found that the items were not "incorporated into its records systems or files" (Dkt. #84, Ex. 1 ¶ 13(d)). As *Rojas* diminished the *Burka* test's focus on integration of the records, this fact has a neutral impact on whether the items are agency records. *See Rojas*, 941 F.3d at 409.

Overall, the FBI has not met its burden to demonstrate that the work laptop, the DVD, and the tape drive are not agency records under the *Rojas* test. Therefore, the Huddleston is entitled to summary judgment on this issue. Huddleston specifically requested that the Court order the FBI to produce a *Vaughn* index for the metadata and records contained on the items (Dkt. #92 at p. 15). The Court orders the FBI to produce a *Vaughn* index addressing the information it possesses on

Seth Rich's work laptop, the DVD, and the tape drive that is responsive to Plaintiff's FOIA requests. The *Vaughn* index must address the metadata contained within Seth Rich's work laptop. *See Long v. Immigr. & Customs Enf't*, 279 F. Supp. 3d 226, 233–34 (D.C. Cir. 2017) (implicitly finding that metadata is an agency record and thus subject to FOIA).

## III.   Production of Newly Found Documents

The Court will not require the FBI and DOJ to produce the letter from a third party that accompanied the work laptop, two chain of custody forms, and the three-page report detailing actions by a third party outside entity to image the work laptop. The FBI claims that the newly found documents are entirely exempt from disclosure pursuant to FOIA Exemptions 3, 6, 7(A), 7(C), and 7(E) (Dkt. #84 at p. 6).

Under FOIA Exemption 7(A), the FBI may withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . [that] could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).[14] The agency bears the burden to prove that agency records fall within an enumerated exception. *Tax Analysts*, 492 U.S. at 142 n.3. The FBI argues that Exemption 7(A) should bar the disclosure of the newly found documents to protect "information about pending law enforcement investigation" (Dkt. #84, Ex. 1 ¶ 26). The FBI specifically states that:

---

[14] As previously stated, before an agency can invoke any subpart of Exemption 7, including Exemption 7(C), the agency must demonstrate that the records or information at issue were compiled for law enforcement purposes. *See John Doe Agency*, 493 U.S. at 153, 156. Here, the records withheld by the FBI were created and compiled in furtherance of the FBI's role in the United States Office of Special Counsel investigation and related investigations. The FBI explains that "these records were created and compiled to document the FBI's investigation of potential crimes and threat to the national security, thus, the FBI determined they were created and compiled for law enforcement purposes" (Dkt. #84, Ex. 1 ¶ 22). Huddleston does not dispute that the records were compiled for law enforcement purposes, and the Court sees no reason on the record to conclude otherwise. Thus, the Court finds that the FBI has satisfied Exemption 7's threshold inquiry.

> The FBI determined release of [these materials] would provide criminals and agents of foreign powers with information about the United States government's investigation and enforcement strategies in these ongoing matters, which would allow criminals and our national adversaries to predict and potentially thwart these strategies, and/or allowing them to discover and tamper with witnesses and destroy evidence.

(Dkt. #84, Ex. 1 ¶ 26). The enforcement proceeding at issue is the criminal prosecution and governmental action against various Russian nationals who have been indicted by a Grand Jury in the District of Columbia (Dkt. #84, Ex. 1 ¶ 28). This enforcement proceeding deals with Units 26165 and 74455 of the foreign military intelligence agency of the General Staff of the Russian Armed Forced (Dkt. #84, Ex. 1 ¶ 27. These units engaged in largescale cyber operations to interfere with the 2016 U.S. presidential election (Dkt. #84, Ex. 1 ¶ 27).

The FBI argues that the release of any information concerning this investigation, including within the newly found documents, would be premature because the defendants (the indicted Russian nationals) are fugitives and various harms would result (Dkt. #84, Ex. 1 ¶ 29). The FBI claims that "these individuals would acquire the unique advantage of knowing certain details . . . which could be used to . . . escape prosecution and thwart current investigative efforts by altering or counteracting evidence, changing behavior, intimidating or physically harming witnesses or law enforcement officials, and/or flight" (Dkt. #84, Ex. 1 ¶ 29(a)). The FBI further claims that this information would "allow third parties who are not directly related to this matter to interfere with investigative efforts . . . through harassment, intimidation, and creation of false evidence by dispensing extraneous facts discussed in the investigation" (Dkt. #84, Ex. 1 ¶ 29(b)).

Huddleston responds by arguing that the FBI's claims are boilerplate and conclusory (Dkt. #92 at p. 18). Additionally, Huddleston claims that the FBI cannot on one hand say that they did not rely on the newly found documents while at the same time say that the documents are

essential to the prosecution of Russian intelligence agents (Dkt. #92 at p. 18). Finally, Huddleston argues that the FBI's supporting affidavit "does not make any attempt to apply [the writer's] legal arguments to the facts of this case, instead leaving it up to the Court to guess what [the writer] is talking about" (Dkt. #92, Ex. 1 at p. 19).

There is a general recognition among courts that prematurely releasing certain information under FOIA may interfere with enforcement proceedings against fugitives. *See, e.g.*, *Martorano v. Fed. Bureau of Investigation*, No. 89–377, Civ. A. 89–1345(RCL), 1991 WL 212521, at p. *9 (D.C. Cir. Sept. 30, 1991); *Shapiro v. Cent. Intel. Agency*, 247 F.Supp.3d 53, 65 (D.D.C. 2017); *Hildago v. Fed. Bureau of Investigation*, 541 F.Supp.2d 250, 256–57 (D.D.C. 2008); *Ayyad v. U.S. Dep't of Just.*, No. 00 CIV. 960(KTD), 2002 WL 654133, at p. 2–4 (S.D.N.Y. Apr. 18, 2002). In *Shapiro v. Central Intelligence Agency*, the FBI declined to disclose certain information to avoid incidentally aiding a fugitive in an ongoing domestic terrorism case. 247 F.Supp.3d at 65. The FBI stated that it withheld information related to a fugitive. *Id.* Further, the FBI argued that disclosure "could 'expose potential leads and/or suspects the FBI identified' in relation to an on-going domestic terrorism investigation and releasing the concealed information in Mandela 520–521 could harm the 'on-going investigation by impeding the FBI's efforts to locate the fugitive.'" *Id.* Based on these reasons, the court found that the FBI had satisfied the requirements of FOIA Exemption 7(A). *Id.*

The FBI has provided a sufficient explanation to withhold the documents under FOIA Exemption 7(A). As in *Shapiro v. Central Intelligence Agency*, the FBI has indicated that disclosure of the newly found documents would reveal information related to the fugitives that would aid said fugitives (Dkt. #84, Ex. 1 at p. 15). *Id.* Further, the FBI has sufficiently described the enforcement

proceeding at issue and how disclosure of the newly found documents could reasonably be expected to interfere with enforcement proceedings." *See* 5 U.S.C. § (b)(7)(A).

The Court does not find the FBI's arguments to be boilerplate and conclusory. The two points that Huddleston notes from Seidel's Sixth Affidavit in isolation would be boilerplate and conclusory because these statements would go little further than reiterating the basic requirements of FOIA Exemption 7(A) (Dkt. #92 at p. 18). *See* 5 U.S.C. § (b)(7)(A). However, Seidel's Sixth Affidavit contains an additional two pages describing the enforcement proceeding at issue and how disclosure could reasonably be expected to interfere with said enforcement proceedings in sufficient detail to meet the requirements of Exemption 7(A) (Dkt. #84, Ex. 1 at pp. 14–15).

Contrary to Huddleston's arguments, a law enforcement agency does not necessarily have to rely on information for its disclosure to reasonably interfere with an enforcement proceeding. No element of FOIA Exemption 7(A) requires a law enforcement agency to rely on the information at issue. *See* 5 U.S.C. § (b)(7)(A). However, the FBI has described in sufficient detail how the public disclosure of the newly found documents could reasonably be expected to interfere with said enforcement proceedings regardless of its reliance on the newly found documents (*See* Dkt. #84, Ex. 1 at pp. 13–15).

Thus, the Court finds that the FBI properly withheld the newly found documents under Exemption 7(A).[15] Accordingly, the FBI is entitled to summary judgment on this issue.

## IV.    Timeline for Disclosure of Documents

The FBI must process hundreds of thousands of documents to comply with this Memorandum Opinion and Order (Dkt. #73 at p. 9). The FBI requests about 67 years to produce

---

[15] Because the Court finds the newly found documents were properly withheld under Exemption 7(A), the Court does not reach whether the newly found documents were also properly withheld under Exemptions 3, 6, 7(C), and 7(E).

the documents relating to the personal laptop alone (Dkt. #73 at p. 9).[16] Huddleston requests that the FBI produce the documents in just 14 days (Dkt. #76 at p. 14). Neither of these requests is appropriate. Therefore, the Court orders the FBI and Huddleston to provide a suggested timeline for the disclosure of documents.

## CONCLUSION

With the exceptions of Seth Rich's work laptop, the DVD, the tape drive, and the compact disk containing images of Seth Rich's personal laptop, which are responsive to Huddleston's FOIA requests, the Court finds the Government properly withheld or redacted information responsive to Huddleston's requests in accordance with the FOIA's exemptions.

It is therefore **ORDERED** that Defendant FBI's Motion for Clarification, or in the Alternative, Reconsideration of the Memorandum Opinion and Order Entered September 29, 2022 (Dkt. #73) is **DENIED.**

It is further **ORDERED** that Plaintiff's Motion for Clarification of the Memorandum Opinion and Order Entered September 29, 2022 (Dkt. #77) is be **GRANTED in part** and **DENIED in part.**

It is further **ORDERED** the Government shall produce a *Vaughn* index addressing the information it possesses on the compact disk containing images of Seth Rich's personal laptop that is responsive to Plaintiff's FOIA requests.

It is further **ORDERED** that the Government shall produce a *Vaughn* index addressing the information it possesses on Seth Rich's work laptop, the DVD, and the tape drive that is responsive

---

[16] The FBI requests to produce the documents relating to the personal laptop at a rate of 500 documents per month and estimates that about 400,000 documents exist (Dkt. #73 at p. 9). This would result in a production schedule of about 66.7 years.

to Plaintiff's FOIA requests. The *Vaughn* index must address the metadata contained within Seth Rich's work laptop.

It is further **ORDERED** that the Government and Huddleston shall recommend to the court a timeline for the disclosure of information on Seth Rich's personal laptop, Seth Rich's work laptop, the DVD, and the tape drive within 14 days following the issuance of this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

**SIGNED this 28th day of November, 2023.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE