IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| BRIAN HUDDLESTON,<br><br>    Plaintiff,<br><br>vs.<br><br>FEDERAL BUREAU OF INVESTIGATION and UNITED STATES DEPARTMENT OF JUSTICE<br><br>    Defendant | Case No. 4:20-cv-447-ALM |

### RESPONSE TO NOVEMBER 28, 2023 MEMORANDUM AND OPINION

NOW COME the parties, responding to the Court's November 28, 2023 Memorandum Opinion (Dkt. #136) directing them to submit a proposed timeline for the disclosure of information on the CD containing images of Seth Rich's personal laptop, Seth Rich's work laptop, the DVD, and the tape drive:

### THE FEDERAL BUREAU OF INVESTIGATION'S (FBI) POSITION

The FBI intends to seek reconsideration and clarification of aspects of the November 28, 2023 Memorandum and Opinion (Dkt. #136) Specifically, the FBI intends to seek reconsideration of the Court's determination that Seth Rich's work laptop, the DVD, and tape drive (collectively referred to as the "Work Laptop") are agency records subject to FOIA. The FBI will also seek reconsideration regarding the portions of the order requiring the FBI to prepare and provide indexes or produce metadata. In the same pleading, the FBI will argue, in the alternative, that if the Court does not reconsider its prior determination and reaffirms its finding that the Work Laptop is an agency record, the FBI will argue the Work Laptop and its

- 1 -

contents are exempt from disclosure under FOIA's Exemption 7(A); in addition, the FBI will also request Clarification to determine if the 7(D) granted to withhold information in the FBI's FD-302 extends to the CD containing images of Seth Rich's laptop. The FBI also intends to assert Exemption 7(A) to exempt from disclosure the CD containing images of Seth Rich's personal laptop.[1]

Based on the foregoing, the FBI proposes the Court enter a briefing schedule for the FBI's anticipated motions. The FBI proposes to file its combined motion for reconsideration, or in the alternative, motion for summary judgment on or before February 8, 2024. Much of Plaintiff's position below is irrelevant to this FOIA case, and the FBI does not concede any of it by not responding herein.

## THE PLAINTIFF'S POSITION

**(a) The FBI's *de facto* motion for yet another extension should be denied.**

On November 28, 2023, the Court "order[ed] the FBI and Huddleston to provide a suggested timeline for the disclosure of documents." November 28, 2023 Memorandum Opinion ("Memorandum")(Dkt. #136) 24. Perhaps unsurprisingly, the FBI has thumbed its nose at that order. Rather than provide a suggested timeline, the FBI has moved the Court to give it yet another extension of time so it can file yet another motion for reconsideration and clarification.[2] The timing of these events is noteworthy. In an effort to expedite matters and resolve any

---

[1] Although the FBI intends to assert that the Work Laptop is not an agency record, assert in the alternative that 7(A) categorically exempts the Work Laptop and assert that 7(A) and 7(D) categorically exempt the disc containing an image of the personal laptop, it reserves its right to assert additional exemptions should the Court reject the applicability of these exemptions as applied at a categorical level.

[2] The FBI does not style its request as a motion, but it is clearly seeking relief from the Court. Notably, the FBI did not confer with Mr. Huddleston about this motion as required by Local Rule 7(h). Instead, the FBI sandbagged Mr. Huddleston with this motion on the eve of filing.

- 2 -

potential disputes, Mr. Huddleston's counsel first contacted the FBI on November 29, 2023 to discuss production. *See* Emails exchanged among Plaintiff's and Defendants' Counsel (Exhibit 1).[3] On December 11, the FBI claimed it needed a 30-day extension of time because of a change in counsel. *See* Defendant FBI's Unopposed Motion for Extension (Dkt. #139). Mr. Huddleston did not oppose that request, and it was granted. *See* Order Granting Defendant FBI's Unopposed Motion for Extension (Dkt. #140). The FBI did not respond to Mr. Huddleston's original attempt to confer about the production schedule, so his counsel followed up by email on December 7, 2023 and again January 5, 2024. *Id.* The FBI did not respond. Plaintiff's Counsel sent multiple emails thereafter, including a detailed draft production schedule sent at 8:55 p.m. CST on January 9, 2024, but the FBI did not respond. Instead, the FBI waited until 8:21 p.m. CST this evening to let Mr. Huddleston know that it would not submit a proposed production schedule at all; no, it would just ask for more delays.

The FBI could have moved for reconsideration and clarification weeks ago. Or it could have moved for reconsideration and clarification today, concurrent with the filing of this document. The FBI has not explained why it has been sitting on its hands for six weeks with respect to reconsideration and clarification; instead, it just presumptuously demands further delays, and it does so in violation of the Court's rules. *See* fn. 2, *supra*. As explained below, the FBI is desperate – very, very desperate – to delay production until after the November 5, 2024 Presidential election. Its bad faith should not be rewarded. If the FBI wants to contest the Memorandum and continue fighting to withhold public documents, then it has a remedy: it can

---

[3] As witnessed by his electronic signature below, Ty Clevenger declares under penalty of perjury under the laws of the United States that (1) exhibits to this response are true and correct copies of the documents that he represents them to be; and (2) the factual representations regarding the times and dates of communications with FBI counsel are true and correct.

petition the Court of Appeals for a writ of mandamus. *See, e.g., Islamic Shura Council of S. California v. F.B.I.*, 635 F.3d 1160, 1166 (9th Cir. 2011). And if the FBI wants more time to produce documents, then it can ask the Court of Appeals for a stay. Notably, the FBI's Office of General Counsel was willing to stay open until after 9 p.m. EST this evening just to produce the non-responsive excerpt above, so surely it can burn a little midnight oil to petition the Court of Appeals. Perhaps a hard production deadline from this Court will inspire the FBI to fish or cut bait.

**(b) The FBI should produce all responsive documents before the 2024 Presidential election.**

In 2022, the Court observed that Mr. Huddleston and/or his counsel have been trying to get responsive records from the FBI since 2017. *Huddleston v. Fed. Bureau of Investigation*, No. 4:20-CV-00447, 2022 WL 4593084 (E.D. Tex. Sept. 29, 2022) (Dkt. #70), clarified on denial of reconsideration, No. 4:20-CV-00447, 2023 WL 8235243 (E.D. Tex. Nov. 28, 2023). The FBI originally claimed it had no records whatsoever about Seth Rich, but little by little the FBI was forced to admit that it had thousands of pages of responsive documents, *id.*, not to mention his work laptop, a copy of his personal laptop contents, a DVD, and a tape drive. *See* Memorandum 24. After more than six years of delays and denials, it is time for the FBI to come clean. A Presidential election is fast approaching, and voters have the right to know (1) whether the FBI *knowingly* framed one of the frontrunners, *i.e.*, former President Trump; and (2) whether the FBI is *still* trying to cover up its partisan political activities.

The Court previously has faulted the Defendants for trying to delay the production of records in this case:

> The vague and dragged-out timeline Defendants suggest cannot be sustained without a greater showing of exceptional circumstances because "stale information" produced pursuant to FOIA requests "is of little value." *Payne Enters., Inc.*, 837 F.2d at 486. Granting the relief Defendants seek would thwart FOIA's "basic purpose" of "open[ing]

agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976) (internal quotation marks omitted).

*Huddleston v. Federal Bureau of Investigation,* 2021 WL 327510, at *3 (E.D. Tex., Feb. 1, 2021, No. 4:20-CV-447). In Plaintiff's Reply in Support of Corrected Motion for Summary Judgment (Dkt. #133), Mr. Huddleston made the Court aware of the May 12, 2023 Report on Matters Related to Intelligence Activities and Investigations Arising Out of the 2016 Presidential Campaigns ("Durham Report") (Dkt. #133-1), wherein Special Counsel John Durham documented the FBI's attempts to frame President Donald J. Trump with false allegations that President Trump colluded with Russian agents. The FBI and the Department of Justice have admitted that there is a direct link between Seth Rich's work laptop and Russian "collusion." *See* Reply in Support of Plaintiff's Motion for Clarification ("Clarification Reply")(Dkt. #92) and sources cited therein. Specifically, they have admitted that there is a direct link between Seth Rich's work laptop and the purported "hacking" of Democratic National Committee emails that were later published by Wikileaks in 2016. *Id*. The Court is certainly aware of the fact that Mr. Trump is running for President again, *see* campaign website of President Donald J. Trump, https://www.donaldjtrump.com, and that the election date is less than eleven months away. *See* "Find out when to vote," USA.gov, https://www.usa.gov/when-to-vote. The Seth Rich records are matters of extraordinary public interest, *see* Aliss Higham, Seth Rich's Laptop to Be Turned Over by FBI, Judge Rules," November 29, 2023 *Newsweek*, https://www.newsweek.com/seth-rich-laptop-turned-over-fbi-judge-rules-1847947 (Exhibit 2), and for good reason. It is bad enough that FBI personnel took opposition research from the Hillary Clinton campaign and used it to open a bad-faith investigation of Mr. Trump, thereby sabotaging him for more than two years. *See, generally*, Durham Report 85, 95, 97, 98, and 304-305. It would be considerably worse and considerably more scandalous, however, if FBI personnel knew all along that Seth

Rich – not Russian hackers – was responsible for leaking DNC emails to Wikileaks. If the FBI and Justice Department have kept that fraud under wraps for more than seven years, then the electorate may rightly ask what else the FBI and Justice Department have been doing to frame and/or sabotage President Trump. In particular, voters might ask whether the Justice Department's ongoing prosecutions of Mr. Trump are politically motivated.

All of the cards should be on the table in advance of the 2024 Presidential election. Mr. Huddleston therefore submits that the FBI should be compelled to produce the lion's share of responsive documents not less than 120 days before the November 5, 2024 Presidential election. The FBI will almost certainly make excessive redactions and withholdings, *see* Plaintiff's Cross-Motion for Partial Summary Judgment (Dkt. #105) (FBI hid and then improperly redacted CrowdStrike reports), and that will ignite additional rounds of briefing. The 120-day lead time would give the Court time to rule on any redactions or withholdings by the FBI.

In an effort to narrow the scope of the search for responsive records and make that deadline achievable, Mr. Huddleston proposes the following search and production sequence:

1. The FBI should produce all metadata (including file names) from the work laptop, the DVD, the tape drive, and the compact disk within 21 days of the Court's order. The metadata could be extracted within a few hours and perhaps a few minutes. *See* Declaration of Yaacov Apelbaum ("Apelbaum Declaration")(Exhibit 3), ¶4. As explained below, there should be little or no need for human review of the metadata.

   Metadata is "data about data." *See* Ellie Farrier, "What is Metadata: Definition and Meaning," October 12, 2023 *Digital Life*, https://www.avast.com/c-what-is-metadata and ApelBaum Declaration ¶5. It summarizes a set of other data and can include information such as: (1) How the data was created — the means; (2) When the data was created — the time and date; (3) Why the data was created — the purpose; (4) Who created the data — the author; (5) Where the data was created — the location; (6) How big the data is — the file size. *Id*. A file name is a sequential list of the names of folders, subfolders, and files such as the following: https://d.docs.live.net/c9cc5810f70727/Documents/ My%20Documents/2023%20Backup/Legal/N%20Server/Brian%20Huddleston. Apelbaum Declaration ¶5. Mr. Huddleston's primary interest remains the same: he wants to know if Mr. Rich was the source of the Democratic National Committee emails that were published by Wikileaks in 2016. If Mr. Rich downloaded DNC emails onto his

work laptop or personal laptop, then metadata and file names should reveal (1) the names of the email files; (2) the time and date that the emails were sent or received; (3) and the person who sent or received the emails. *Id*. at ¶6. In other words, the metadata and file names would allow Mr. Huddleston to determine rather quickly whether Mr. Rich played a role in the email leak. *Id*. On the other hand, the metadata would <u>not</u> reveal the contents of the emails, *id*. at ¶7, ergo standard FOIA exemptions such as privacy would not be implicated and the FBI would not need to devote personnel time to reviewing each line of metadata. Accordingly, 21 days should be more than enough time to produce the metadata and file names.

2. Mr. Huddleston next wishes to see documents that may be relevant to Mr. Rich's murder. The FBI should be directed to produce all emails or communications from March 14, 2016 until July 10, 2016 that meet the following criteria, and in the following order of priority:

   a. Emails or communications exchanged with any representative of Wikileaks, including Julian Assange;

   b. Emails or communications exchanged with eBay or any representative of eBay;

   c. Emails or communications regarding any eBay transaction;

   d. Emails or communications exchanged with Pratt Wiley or discussing Pratt Wiley;

   e. Emails or communications exchanged with John Podesta or discussing John Podesta;

   f. Emails or communications reflecting conflict among or between Seth Rich and any of his co-workers or supervisors;

   g. Emails or communications reflecting conflict among or between Seth Rich and any other person;

   h. Emails or communications containing threats of any kind (*e.g.*, termination of employment or bodily harm) to Seth Rich; and/or

   i. Emails or communications that contain the term "pizza."

3. Next, the FBI should search for, review, and produce files of any kind that reference or relate to eBay, Wikileaks, Julian Assange, Pratt Wiley, John Podesta, "pizza," or electronic payments (*e.g.*, Zelle, PayPal, or Bitcoin).

4. After the metadata and file names have been produced to Mr. Huddleston pursuant to Paragraph 1, he should be allowed to designate and prioritize specific files for review and production.

After the metadata and file names have been produced, the Defendants should produce any remaining files at an expedited monthly rate.

> "The value of information is partly a function of time." *Fiduccia v. D.O.J.*, 185 F.3d 1035, 1041 (9th Cir. 1999). Nineteen months have passed since Plaintiff's submitted its Request to Defendants, and under Defendant ICE's current rate of searching, the total number of pages to be produced is still unclear. Consequently, "Plaintiff would need to wait anywhere between an additional 30 months and over 12 years for ICE to complete its current production." ECF No. 61, Reply at 17. "Telling the requester 'You'll get the documents 15, or eight, years from now' amounts as a practical matter in most cases to saying 'regardless of whether you are entitled to the documents, we will not give them to you.' " *Fiduccia*, 185 F.3d at 1041.

*American Civil Liberties Union Foundation of Southern California v. United States Immigration and Customs Enforcement* ("*ACLU*"), 2023 WL 8539484, at *10 (C.D. Cal., Dec. 8, 2023, No. 2:22-CV-04760-SB-AFM). In *ACLU*, the court noted that the plaintiff filed its FOIA request some 19 months before, and it ordered the Government to produce records at the rate of 3,000 pages per month. *Id*. (citing other cases). In this case, the Plaintiff filed his request 44 months ago. If one counts the original FOIA request filed by Plaintiff's Counsel, then the delay has been 76 months. *Huddleston*, WL 4593084, at *1. Accordingly, a production rate greater than 3,000 pages per month is warranted. In *Public Health & Med. Professionals for Transparency v. Food & Drug Admin*., no delays were alleged against the Government, yet the court ordered the FDA to produce documents at a rate of 55,000 pages per month given the records' importance to the public. No. 4:21-CV-1058-P, 2022 WL 90237, at *2 (N.D. Tex. Jan. 6, 2022).[4] In a related case, the Northern District of Texas ordered the FDA to compress its proposed production period from 23.5 years to 26 months. *Pub. Health & Med. Professionals for Transparency v. Food & Drug Admin.*, No. 4:22-CV-0915-P, 2023 WL 3335071, at *2 (N.D. Tex. May 9, 2023). The delay in

---

[4] That rate was later modified by agreement of the parties, but the FDA still had to produce documents at a rate of 55,000 per month during the production period. *See* February 22, 2022 Order, *Public Health*, Case No. No. 4:21-CV-1058-P (N.D. Tex.)(attached as Exhibit 4).

this case has been considerable, and the level of public interest is high, therefore Mr. Huddleston proposes a production rate of 20,000 pages per month.[5]

                                                         Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
212 S. Oxford Street #7D
Brooklyn, New York 11217
(979) 985-5289
(979) 530-9523 (fax)
tyclevenger@yahoo.com

**Counsel for Plaintiff Brian Huddleston**

DAMIEN M. DIGGS
UNITED STATES ATTORNEY

*/s/ James Gillingham*
JAMES GARLAND GILLINGHAM
Texas State Bar No. 24065295
james.gillingham@usdoj.gov
110 N. College, Suite 700
Tyler, TX  75702
(903) 590-1400
Fax: (903) 590-1436

**COUNSEL FOR DEFENDANTS**

---

[5] Depending on what is found in response to Mr. Huddleston's proposed search parameters, the total amount of documents to be produced may be fewer than 20,000 total, but that cannot be determined without a search. Notably, the Court has not yet ruled on Plaintiff's Cross-Motion for Partial Summary Judgment (Dkt. #105) or Plaintiff's Corrected Motion for Summary Judgment (Dkt. #112), either of which may result in a much larger pool of responsive documents.