# Exhibit 5

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

**TY CLEVENGER**,

      Plaintiff,

vs.

**U.S. DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIATION, and NATIONAL SECURITY AGENCY,**

      Defendants

Case No. 1:18-cv-1568-LB

## **MOTION FOR EVIDENTIARY HEARING and MOTION FOR *IN CAMERA* REVIEW**

      NOW COMES the Plaintiff, Ty Clevenger, moving the Court to grant an evidentiary hearing and to review certain documents *in camera*:

### **Introduction**

      On January 27, 2020 the Plaintiff filed a copy of a letter with a URL link to emails that were provided by the FBI to a non-profit, Judicial Watch. *See* January 27, 2020 Letter (Doc. No. 188-1). The Plaintiff's letter was addressed to federal prosecutors and the inspector general of the U.S. Department of Justice, and it alleged that an affidavit submitted to this court by FBI Section Chief David Mr. Hardy was inaccurate and misleading. *Id*. The Plaintiff argued that the emails produced to Judicial Watch proved that the FBI had withheld records that were responsive to the Plaintiff's September 1, 2017 Freedom of Information Act ("FOIA") request. *Id*. On January 29, 2020, Asst. U.S. Attorney Kathleen Mahoney, counsel for the Defendants, filed a letter with the Court wherein she argued that, notwithstanding those clearly responsive emails, and notwithstanding the fact that the FBI had failed to produce them, the FBI had conducted a

- 1 -

reasonable search and had done nothing wrong. *See* January 29, 2020 Letter from Kathleen Mahoney to Judge Lois Bloom ("Mahoney Letter")(Doc. No. 52).

## Argument

Ms. Mahoney's letter proves one thing very clearly: the FBI has been playing word games in an attempt to conceal responsive records. Consider the following excerpt:

> [T]he FBI met its burden of showing that its search was adequate and, therefore, is entitled to summary judgment. *See* Defs. Mem. at 17-22; Defs. Reply at 3-9. Specifically, the FBI searched its Central Records System ("CRS") recordkeeping system but did not locate any main file (file about Rich) or reference file (file with a cross-reference to Rich).4 Defs. 56.1 ¶¶ 23-32; *see also* Declaration of David M. Hardy dated October 3, 2018 (Dkt. #16-1) ("Hardy Decl.") ¶¶ 19-21. The searches of the CRS would have located any emails of investigative significance. Hardy Decl. ¶ 24. The CRS searches also would have identified any Computer Analysis and Response Team ("CART") records. Defs. 56.1 ¶ 32; *see* Hardy Decl. n.6. In addition to the CRS searches, the FBI Washington, D.C. field office was contacted to ascertain whether it had any records; it did not. Defs. 56.1 ¶¶ 33, 36; *see also* Hardy Decl. ¶¶ 22-23; Second Declaration of David M. Hardy dated July 29, 2019 (Dkt. #37) ("Second Hardy Decl.") ¶ 32 n.9.

Mahoney Letter, p. 2 (emphasis added). The Plaintiff, however, did not limit his FOIA request to "main files," "reference files," or "emails of investigative significance." Instead, his FOIA request reads as follows:

> I request the opportunity to view all records and correspondence pertaining to Seth Conrad Rich (DOB: January 3, 1989), who was murdered in the District of Columbia on or about July 10, 2016. This request includes, but is not limited to, any records or correspondence resulting from any investigation of his murder.

*See* September 1, 2017 FOIA Request Letter (Doc. No. 16-1, internal exhibit "A"). The emails attached to Ms. Mahoney's letter clearly are "correspondence pertaining to Seth Conrad Rich." *See* August 10, 2016 Email String (Doc. No. 52-1, internal exhibit "B"). The name "Seth Rich" even appears in the email header. *Id*.

Under the circumstances, it is amazing that the FBI can argue with a straight face that it conducted a reasonable search for records:

> [A]n agency must search all locations likely to contain responsive records; not simply where the records are "most likely" to be found. *See Schwartz*, 2017 WL 78482, at \*7, 2017 U.S. Dist. LEXIS 2316, at \*19-20; *Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 877 F. Supp. 2d 87, 98 (S.D.N.Y. 2012) ("[T]he government is not required to search only the files ... 'most likely' to have responsive records; it must also search other locations that are reasonably likely to contain records.")(citations omitted) *DiBacco v. United States Army*, 795 F.3d 178, 190 (D.C. Cir. 2015) (" '[M]ost likely' is not the relevant metric")(citations omitted); *Mobley v. C.I.A.*, 806 F.3d 568, 582, 420 U.S. App. D.C. 108 (D.C. Cir. 2015) ("Had the [agency] only searched the record systems 'most likely' to contain responsive records, its search would be inadequate.").

*Knight First Amendment Inst. at Columbia Univ. v. U.S. Dep't of Homeland Sec.*, 407 F. Supp. 3d 311, 324 (S.D.N.Y. 2019). The Plaintiff previously informed the Defendants that responsive emails would likely be found in the Washington Field Office ("WFO"). *See* October 23, 2018 Declaration of David M. Hardy 9-10, ¶¶22-24. Mr. Hardy's office acknowledged this, reached out to the WFO, and was informed that the WFO had responded to queries about Seth Rich, yet Mr. Hardy and his staff arbitrarily refused to search for emails in that office. *Id*. As we now know from the face of the emails attached to Ms. Mahoney's letter, they originated *exactly* where the Plaintiff said they would be found, *i.e.*, in the WFO. *See* August 10, 2016 Email String (Doc. No. 52-1, internal exhibit "B"). Having been caught with its pants down, one might expect the FBI to acknowledge that it made a mistake and offer to search the email system in the WFO. Instead, the FBI stubbornly insists that it conducted a reasonable search, evidence notwithstanding.

  Ms. Mahoney's letter places great emphasis on the fact that the unredacted portions of the FBI emails do not undermine the FBI's official narrative, *i.e.*, that the FBI did not investigate the Rich murder and therefore does not have any "substantive investigative emails," but it bears repeating that the Plaintiff did not limit his request to "investigative" emails, "substantive" or otherwise. Furthermore, the redactions themselves greatly undermine the arguments in Ms.

Mahoney's letter. Consider Exhibit A (Doc. No. 52-1) to her letter, which explains the purported basis for each redaction, and note how often the code "b7E" appears in Exhibit B to that letter. According to Exhibit A, the code "b7E" means the redacted information "would disclose techniques and procedures for law enforcement investigations and prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably expected to risk circumvention of the law." If there is and never has been an investigation pertaining to Seth Rich, then why would the FBI be citing an exemption pertaining to investigations and prosecutions? Equally troubling are exemptions "b6" and "b7C," which pertain to "an unwarranted invasion of personal privacy." If, as the emails themselves indicate, they were written by government employees on government time using government computers, it's hard to imagine how disclosure could constitute "an unwarranted invasion of personal privacy."

Even if the FBI is asserting privacy rights on behalf of the deceased, *i.e.*, Mr. Rich, that argument is very weak.

> The U.S. Court of Appeals for the D.C. Circuit, which writes frequently on FOIA issues, has long held that with respect to FOIA, "the death of the subject of personal information does diminish to some extent the privacy interest in that information, though it by no means extinguishes that interest." *Schrecker v. U.S. Dep't of Justice*, 254 F.3d 162, 166 (D.C. Cir. 2001). The Department of Justice has specifically recognized that "[a]n individual who is deceased has greatly diminished personal privacy interests in the context of the FOIA." U.S. Dep't of Justice, Guide to the Freedom of Information Act: Exemption 6, at 37 (2014). "Death clearly matters," and "[a] court balancing public interests in disclosure against privacy interests must therefore make a reasonable effort to account for the death of a person on whose behalf the government invokes exemption 7(C)." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 33 (D.C. Cir. 1998), as amended (Mar. 3, 1999).

*Wessler v. United States Dep't of Justice*, 381 F. Supp. 3d 253, 259 (S.D.N.Y. 2019). And this is not the first time that Mr. Hardy has made a bogus assertion of a privacy exemption. As

- 4 -

referenced in the PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT and PLAINTIFF'S MOTION TO ENJOIN COMPLIANCE AND PERMIT DISCOVERY (Doc. No. 32), it was Mr. Hardy who refused to produce documents about Hillary Clinton's secret email servers on the grounds that it was not a matter of public interest and might violate her privacy. *See* August 28, 2017 Letter from David M. Hardy to Ty Clevenger (Exhibit 1).[1] That laughable assertion made national news, *see, e.g.*, Stephan Dinan, "FBI says lack of public interest in Hillary emails justifies withholding documents," August 29, 2017 *The Washington Times* (https://www.washingtontimes.com/news/2017/aug/29/fbi-lack-public-interest-emails-justifies-withhold/), and it was later overturned. *See* October 2, 2017 Letter from Sean R. O'Neill to Ty Clevenger (Exhibit 2).

The Court will note some famous (or, more accurately, *infamous*) names in the emails attached to Ms. Mahoney's letter, specifically Peter Strzok and Lisa Page. Their names are practically synonymous with corruption at the top levels of the FBI, and particularly concerning the "Russian collusion" investigation of the Trump Administration. The Plaintiff requests that the Court take judicial notice of three reports from the Office of the Inspector General for the Department of Justice: "A Review of Various Actions by the Federal Bureau of Investigation and Department of Justice in Advance of the 2016 Election," June 2018 (https://www.justice.gov/file/1071991/download); "Report of Investigation: Recovery of Text Messages From Certain FBI Mobile Devices," December 2018 (https://oig.justice.gov/reports/2018/i-2018-003523.pdf); and Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation, December 2019

---

[1] As witnessed by his electronic signature on this document, Ty Clevenger declares under penalty of perjury under the laws of the United States (1) that his factual representations in this motion are true and correct and (2) that the exhibits filed with this motion are true and correct copies of the documents that he represents them to be.

(https://oig.justice.gov/reports/2019/o20012.pdf).[2] The foregoing reports outline rampant misconduct by Mr. Strzok and Ms. Page, and their involvement alone should raise questions about why the FBI is trying so hard to hide responsive documents in this case. As outlined in the December 2019 report, Mr. Strzok and Ms. Page were involved in perpetrating an enormous and systematic fraud on a federal court related to the "Russian collusion" investigation. Meanwhile, litigation in multiple courts contests whether Seth Rich, rather than Russian hackers, was the source of Democratic National Committee emails published by Wikileaks in 2016. *See Aaron Rich v. Edward Butowsky, et al.*, Case No. 1:18-cv-00681 (D.D.C.); *Joel and Mary Rich v. Fox News Network, LLC*, Case No. 1:18-cv-02223 (S.D.N.Y.); *Edward Butowsky v. David Folkenflik, et al.*, Case No. 4:18-cv-00442 (E.D. Tex.); and *Edward Butowsky v. Michael Gottlieb, et al.*, Case No. 4:19-cv-00180 (E.D. Tex.). In other words, the Seth Rich emails are directly related to the fraudulent "Russian collusion" investigation, and Mr. Strzok, Ms. Page, and the FBI itself have already shown great willingness to lie and cheat in order to conceal their misconduct during that investigation, even to the point of perpetrating frauds on the court. Insofar as they have perpetrated frauds on the court in other matters related to "Russian collusion," it's no stretch to think they would do the same in this case, thus any presumption of good faith has been obliterated by Mr. Strzok, Ms. Page, and the corrupt FBI leadership.

And there's more. Before filing this motion, the Plaintiff inquired about whether the Defendants would oppose it. The January 27, 2020 email string between the Plaintiff and Ms. Mahoney is revealing:

> [Clevenger]: I plan to file a supplemental motion to enjoin compliance, and I intend to request an evidentiary hearing or deposition of David Hardy. I also intend to ask the court

---

[2] The Plaintiff submits that these reports are party admissions pursuant to F.R.E. 801(d)(2) insofar as the Department of Justice is a party to this case, and the FBI is a subsidiary of that department.

to review the FBI's email redactions in camera. Please let me know whether your clients intend to oppose. Thank you.

[Mahoney]: Yes, we will oppose such a motion.

[Clevenger]: For purposes of clarity, I understand your letter as acknowledging that the emails in your exhibits are indeed FBI emails (albeit redacted). Is that correct? I ask because I'm wondering if I still need to get a declaration from Judicial Watch.

[Mahoney]: The only reasonable interpretation of my letter is that it was enclosing a print-out of the document at the link that you cited.

[Clevenger]: I respectfully disagree. Here is an excerpt from Page 2 of your letter:
*The "new evidence" to which Plaintiff alludes (Dkt. #51-1 at 1) fails to show that the FBI did not conduct an adequate search or to justify discovery. The email -- conspicuously absent from Plaintiff's filing -- was released by the FBI in response to another requester's FOIA request.*
Was that an accurate representation to the court or was it not?

[Mahoney]: Are you saying that the FBI did not send those documents to Judicial Watch?

[Clevenger]: No, exactly the opposite. I believe the FBI did produce those documents to Judicial Watch, just as your letter states. I'm simply asking whether it is safe to tell the court that your client is stipulating that it did produce the emails to Judicial Watch. I ask because thus far Judicial Watch has been unwilling to produce a declaration.

[Mahoney]: The FBI is not "stipulating" to anything.

January 30, 2020 Email exchange between Ty Clevenger and Kathleen Mahoney (Exhibit 3). If the FBI has been acting in good faith, as it claims, then why such obstinance? Either the emails that Ms. Mahoney filed with the Court were produced by the FBI in response to another FOIA request, as her letter claims, or her letter to the Court was not truthful. There are no other alternatives. The Plaintiff contends that the FBI, whether it intended to or not, has stipulated that the emails attached to Ms. Mahoney's letter are exactly what she represented them to be.

## Conclusion

The FBI should be ordered to produce unredacted copies of the emails attached to Ms. Mahoney's letter for *in camera* review. The FBI should be further ordered to produce David M.

Hardy for an evidentiary hearing to be scheduled by the Court. In the alternative, the FBI should be directed to produce Mr. Hardy for a deposition to be conducted at the FBI's expense.

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
P.O. Box 20753
Brooklyn, New York 11202-0753
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

PLAINTIFF PRO SE

## CERTIFICATE OF SERVICE

     I certify that on February 3, 2020, I filed this document with the Court's ECF system, which should result in automatic notification to Kathleen A. Mahoney, counsel for the Defendants, at kathleen.mahoney@usdoj.gov.

**/s/ Ty Clevenger**
Ty Clevenger