# Exhibit 8

SLR:SDE:KMA; 2018V00809

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

TY CLEVENGER,

                              Plaintiff,                      Civil Action No. 18-CV-1568

   -against –

                                                                        (Bloom, M.J.)

U.S. DEPARTMENT OF JUSTICE,
FEDERAL BUREAU OF INVESTIGATION,
and NATIONAL SECURITY AGENCY,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR RECONSIDERATION

                                                                          RICHARD P. DONOGHUE
                                                                          UNITED STATES ATTORNEY
                                                                          Eastern District of New York
                                                                          271-A Cadman Plaza East, 7th Floor
                                                                          Brooklyn, New York 11201
                                                                          May 21, 2020

KATHLEEN A. MAHONEY
Assistant U.S. Attorney
    (Of Counsel)

# PRELIMINARY STATEMENT

Defendants Department of Justice ("DOJ"), Federal Bureau of Investigation ("FBI"), and National Security Agency ("NSA") respectfully submit this opposition to Plaintiff's motion for reconsideration pursuant to Rule 59 of the Federal Rules of Civil Procedure (Dkt. #60).[1] In his motion, Plaintiff Ty Clevenger ("Plaintiff"), an attorney appearing pro se, asks the Court to reconsider its Memorandum & Order dated April 3, 2020 (Dkt. #58) ("Order"),[2] which granted Defendants' motion for summary judgment and denied Plaintiff's motion for partial summary judgment in this action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. The Order found that Defendants had properly responded to Plaintiff's FOIA requests to multiple DOJ components (including the FBI) and the NSA. Therefore, Plaintiff was not entitled to any relief under the FOIA.

Plaintiff now "moves the Court to reconsider the Order, particularly pages 15-19, in light of Ms. Sines's testimony." Dkt. #60. Despite this broad language, Plaintiff's arguments concern only the dismissal of his claim relating to the FBI's September 17, 2017 response to his request for records relating to Seth Conrad Rich. *See id.* As discussed below, Plaintiff fails to demonstrate that reconsideration is necessary to correct a clear error of law or to prevent manifest injustice. Therefore, Plaintiff's motion must be denied.

---

[1] Defendants note that Plaintiff's motion, which comprises a document entitled "Motion for Reconsideration" (Dkt. #60) and two exhibits (Dkt. #60-1 and 60-2) does not comply with the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. Local Civil Rule 7.1(a) provides that "all motions shall include the following motion papers: (1) A notice of motion, . . . ; (2) A memorandum of law, setting forth the cases and other authorities relied upon in support of the motion, . . . ; and (3) Supporting affidavits and exhibits thereto containing any factual information and portions of the record necessary for the decision of the motion."

[2] reported at 2020 WL 1846565.

1

## RELEVANT PROCEDURAL HISTORY

In a letter dated September 1, 2017, addressed to the FBI and other DOJ components, Plaintiff requested, pursuant to the FOIA, all records and correspondence pertaining to Seth Conrad Rich, who was murdered in the District of Columbia on or about July 10, 2016, including but not limited to any records or correspondence resulting from any investigation of his murder ("the Rich request"). Defendants' Statement Pursuant to Local Civil Rule 56.1 (Dkt. #33-1) ("Defs. 56.1") ¶ 22; Declaration of David M. Hardy dated October 3, 2018 ("Hardy Declaration") (Dkt. #16-1) ¶ 5 and Ex. A; *see* First Amended Complaint (Dkt. #9) ("FAC") ¶ 9.[3]

Prior to providing the FBI's September 19, 2017 response, the FBI Record/Information Dissemination Section ("RIDS") searched to locate responsive records. The RIDS queried the FBI Central Records System ("CRS"), the extensive recordkeeping system in which the FBI indexes for future retrieval information about individuals, organizations, events, and other subjects of investigative interest.[4] Defs. 56.1 ¶ 23; Hardy Decl. ¶¶ 19-21, 25. The CRS is the principal records system utilized by the FBI to locate information responsive to most FOIA/Privacy Act requests, and where records responsive to Plaintiff's request were most likely to be found. Defs. 56.1 ¶ 25; Hardy Decl. ¶¶ 21, 25. The RIDS queried the CRS using a three-way search for

---

[3] Information about Plaintiff's other FOIA requests that were the subject of Defendants' motion for summary judgment, but are not discussed in Plaintiff's motion for reconsideration, is set forth in Defendants' undisputed Local Rule 56.1 Statement.

[4] The CRS contains investigative, intelligence, personnel, applicant, administrative, and general files compiled and maintained by the entire FBI organization in the course of fulfilling its integrated missions and functions as a law enforcement, counterterrorism, and intelligence agency. Defs. 56.1 ¶ 24; Hardy Decl. ¶ 11. The CRS encompasses the records of FBI Headquarters, FBI Field Offices, and FBI Legal Attaché Offices worldwide. *Id.*

"Seth Conrad Rich" (Seth Rich; Rich, Seth; and Seth Conrad Rich). Defs. 56.1 ¶ 30-31; Hardy Decl. ¶¶ 19-20 and n.5. These CRS searches did not identify any main or reference file records responsive to Plaintiff's request. *Id.* These CRS searches also did not locate any responsive Computer Analysis and Response Team ("CART") records. Defs. 56.1 ¶ 32; Hardy Decl. n.6.

The FBI's September 19, 2017 response informed Plaintiff that the FBI had searched the CRS and no responsive records were located. Defs. 56.1 ¶ 34; Hardy Decl. ¶ 6 and Ex. B; *see* FAC ¶ 11. The FBI invited Plaintiff to submit additional information pertaining to the subject. Hardy Decl. ¶ 6 and Ex. B. Instead, on September 30, 2017, Plaintiff filed an administrative appeal with the DOJ Office of Information Policy ("OIP"). Defs. 56.1 ¶ 35; Hardy Decl. ¶ 7 and Ex. C; *see* FAC ¶ 12. The OIP affirmed the FBI's determination by letter dated November 9, 2017. Defs. 56.1 ¶ 35; Hardy Decl. ¶ 9 and Ex. E; *see* FAC ¶ 12.

On March 14, 2018, Plaintiff filed this action to challenge the FBI's response to the Rich request and Defendants' responses or lack of response to other FOIA requests. *See* Dkt. #1. On April 4, prior to Defendants answering the Complaint, the RIDS confirmed that the FBI Washington, D.C. Field Office ("WFO") had not assisted the District of Columbia Metropolitan Police Department ("MPD"), provided investigative or technical assistance (including CART assistance), or otherwise opened an FBI investigation into Rich's murder. Defs. 56.1 ¶ 36; Hardy Decl. ¶ 23; *see* Second Declaration of David M. Hardy (Dkt. #37) ("Second Hardy Decl.") n.9. The RIDS had previously contacted the WFO in June 2017 (several months before Plaintiff submitted the Rich request), in conjunction with another requester's FOIA request for records concerning Rich's murder in 2016, and the WFO advised that it had not opened an investigation into Rich's murder and that the MPD had declined its

3

offer to assist in their investigation.. Defs. 56.1 ¶ 33; Hardy Decl. ¶ 22; *see* Second Hardy Decl. n.9.

Defendants filed their answer on May 16, 2018. Dkt. #7. Twenty-one days later (June 16), Plaintiff filed his FAC. Defendants filed their answer to the FAC on July 11. Dkt. #13. As of July 17, when the Court conducted an initial conference, Defendants were still processing some of the FOIA requests. *See* Dkt. #15.

During a telephonic status conference with the Court on August 23, 2018, Plaintiff disputed the FBI's "no records" response to the Rich request, insisting that the FBI was involved in the investigation of Rich's death. *See* Dkt. #16 at 6. The Court directed the FBI to provide a declaration setting forth information about its search efforts. *See id.* On October 9, Defendants filed a status report (Dkt. #16), which enclosed the Hardy Declaration describing the FBI's search efforts with respect to the Rich request (Dkt. #16-1).

As of December 12, 2018, Defendants had provided full responses to all of Plaintiff's FOIA requests. *See* Dkt. #18 at 2; Dkt. #33-1 ¶ 47. On December 21, Plaintiff and Defendants' counsel met and conferred to identify the responses that Plaintiff was still challenging and to narrow the issues for motion practice. *See* Dkt. #14 at 1.

On January 18, 2019, the parties consented to jurisdiction by the Magistrate Judge. Dkt. #20; *see* Dkt. #23. By letter dated January 22, 2019, Defendants requested a pre-motion conference for their contemplated motion for summary judgment with respect to the remaining claims. The Court determined that a conference was not necessary and established a briefing schedule, which subsequently was extended several times. During this period, the parties further narrowed the disputes to be briefed. However, Plaintiff continued to contest the FBI's response to the Rich request.

4

Defendants served their motion for summary judgment on July 29, 2019. *See* Dkt. #26. On September 17, Plaintiff filed his combined opposition and motion for partial summary judgment styled as "Motion to Enjoin Compliance or Permit Discovery." Dkt. #32. Plaintiff's response addressed only two of the FOIA responses (both by the FBI), including the Rich request, and did not mention any of the other responses that he had been continuing to dispute. *See* Dkt. #32 at 2-5; *see also* Dkt. #41 n.1. On October 1, Defendants served their reply and filed their fully briefed motion and opposition to Plaintiff's motion to enjoin compliance or permit discovery. Dkt. #33-#42; *see also* Dkt. #16-1.

On October 8, 2019, Plaintiff filed two documents, both concerning only the FBI's response to the Rich request: Plaintiff's Motion to Accept Supplemental Evidence and Plaintiff's Motion to Permit Discovery (Dkt. #44); and Plaintiff's Reply in Support of Motion to Enjoin Compliance or Permit Discovery (Dkt. #45), which asked the Court to take judicial notice of information being proffered in Dkt. #44. Defendants opposed the motions. Dkt. #46. During a telephonic conference on October 18, the Court denied Plaintiff's motion (Dkt. #44), concluding that Plaintiff's proffers did not rise to the level of bad faith required to justify the discovery that he was seeking. *See* Order (docket entry dated 10/18/19).

On October 30, 2019, Plaintiff filed a motion to stay this action. Dkt. #48. Defendants did not oppose the stay, but did oppose Plaintiff's request that the Court take judicial notice of several internet postings and a filing in an unrelated criminal proceeding. Dkt. #49.

On January 27, 2020, Plaintiff filed a "Notice" in which he stated that he was "giving notice" to the Court that he sent a letter to several DOJ officials "regarding a possible fraud on this Court" by the FBI employee who provided declarations in support of Defendants' motion for summary judgment (*i.e.*, David Hardy). Dkt. #51. Exhibit 1 to the "Notice" was the letter,

5

which is dated January 27, 2020. Dkt. #51-1. Defendants filed a response on January 29. Dkt. #52. On February 3, Plaintiff filed a combined motion requesting an evidentiary hearing and asking the Court to order the FBI to produce unredacted copies of certain emails released by the FBI to another FOIA requester (Judicial Watch) in response to a FOIA request unrelated to Rich ("the Judicial Watch email chain") for *in camera* review. Dkt. #53. Defendants filed their opposition on February 10. Dkt. #55. On February 12, the Court held a telephonic conference and denied Plaintiff's motion to stay (Dkt. #48) and his motions for an evidentiary hearing and *in camera* review of the Judicial Watch email chain (Dkt. #53). *See* Order (docket entry dated 2/12/20).

On March 29, 2020, Plaintiff filed a document captioned "Notice" in which he stated that he had deposed former Assistant U.S. Attorney Deborah Sines on March 20, 2020, and made representations about Ms. Sines' testimony. Dkt. #57. Plaintiff represented that "[A]s soon as the Plaintiff obtains a transcript of Sines deposition, he intends to move the Court to accept that transcript as evidence." Dkt. # 57 at 2.

On April 3, 2020, the Court granted Defendants' motion for summary judgment and denied Plaintiff's motion for partial summary judgment (motion to enjoin compliance and permit discovery). Dkt. #58. In relevant part, the Court found that the FBI had conducted an adequate search for records responsive to Plaintiff's Rich request. Order at 15-19; *see also id*. at 6-7. The Court concluded that the FBI's three-way CRS index searches, which did not indicate the existence of any responsive records in the FBI files, was reasonably calculated to locate responsive documents. Order at 17-18. The Court rejected Plaintiff's arguments that the FBI should also have conducted searches of the WFO's "emails, texts, etc.," the CART, and

6

the Electronic Surveillance Indices ("ELSUR") database. Order at 17-19. Judgment was entered on April 6, 2020. Dkt. #59.

Plaintiff filed the instant motion for reconsideration on May 1, 2020. Dkt. #60.

## ARGUMENT

### PLAINTIFF IS NOT ENTITLED TO RECONSIDERATION OF THE ORDER AND HIS MOTION MUST BE DENIED

Plaintiff has failed to show that he is entitled to reconsideration of the portion of the Order relating to the Rich request.[5]

**A. Standards for Reconsideration**

Notably absent from Plaintiff's motion is any mention of the legal standards governing a motion pursuant to Rule 59 of the Federal Rules of Civil Procedure. Rule 59 governs motions for a new trial or to alter or amend a judgment. Although Plaintiff's motion does not identify the specific subsection of Rule 59 that he is invoking, as there was no trial, the only potentially applicable subsection is Rule 59(e). Rule 59(e) simply provides that a motion to alter or amend a judgment must be filed no later than 28 days after entry of the judgment.

The Second Circuit has explained that under Rule 59(e), a district court may alter or amend a judgment to correct a clear error of law or prevent manifest injustice. *4 Pillar Dynasty LLC v. New York & Company, Inc.*, 933 F.3d 202, 216 (2d Cir. 2019) (citation omitted). "A Rule 59(e) motion 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of judgment.'" *Id.* (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008)). Motions for reconsideration are narrowly

---

[5] Although Plaintiff asks the Court to reconsider the entire Order, his motion does not allude to, let alone discuss, anything other than Rich request to the FBI. *See* Dkt. #60 at 1-4. Accordingly, this opposition is limited to those arguments.

7

construed to ensure the finality of decision and "to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Riverkeeper, Inc. v. Wheeler*, 17-CV-4916 (VSB), 2020 WL 1188455, at *2 (S.D.N.Y. Mar. 12, 2020) (citation omitted). It is well established that the decision whether to grant a Rule 59(e) motion is "committed to the sound discretion of the district judge and will not be overturned on appeal absent an abuse of discretion. *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983).

**B. <u>Plaintiff is Not Entitled to Reconsideration of the Order</u>**

Plaintiff has not met the strict standard for the grant of a motion for reconsideration. Plaintiff did not argue, let alone demonstrate, that the Court made a clear error of law in granting summary judgment to Defendants. Nor did Plaintiff show that reconsideration is required to prevent manifest injustice.

Plaintiff continues to maintain that the FBI investigated Rich and/or his murder and that the FBI's search for records responsive to his Rich request was inadequate. Dkt. #60. Plaintiff's motion for reconsideration merely repeats the same arguments concerning statements by Ms. Sines and the Judicial Watch email chain in his prior submissions to the Court.[6] *Compare* Dkt. #60 *with* Dkt. #44 at 1-4, Dkt. #45 at 1-3, and Dkt. #53 at 1-3; *see also* Dkt. #32 at 2-4 (asserting that the FBI should have searched the WFO for "emails, texts, etc.," contacted the CART, and searched the ELSUR database). The only discernable difference between Plaintiff's motion for reconsideration and his prior unsuccessful submissions is that

---

[6] Plaintiff did not seek reconsideration or reargument of the Orders denying his motion to accept supplemental evidence and motion to permit discovery (Dkt. #44) and his motion for an evidentiary hearing and *in camera* review of the Judicial Watch email chain (Dkt. #53).

8

he has included the transcript of Ms. Sines' deposition rather than paraphrasing her testimony and purported unsworn statements.[7]

In granting summary judgment to Defendants, the Court correctly found that the FBI's search using the CRS was reasonably calculated to locate records responsive to Plaintiff's Rich request. Order at 18. An agency must show that it conducted an adequate search for responsive records. *See Grand Central Partnership, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999); *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). It is well established that "an agency's search need not be perfect, but rather need only be reasonable." *Grand Central Partnership*, 166 F.3d at 489 (citation omitted). Adequacy turns on the search method employed and not whether the search uncovered every document extant. *Id.* The Second Circuit has made clear that "a search is not inadequate because it does not identify all responsive records." *New York Times Co. v. U.S. Dep't of Justice*, 756 F.3d 100, 124 (2d Cir. 2014); *see also Adamowicz v. Internal Revenue Service*, 402 F. Appx. 648, 651 (2d Cir. 2010) ("an agency need not show that its search uncovered every extant responsive document"); *Garcia v. U.S. Dep't of Justice, Office of Information and Privacy*, 181 F. Supp. 2d 356, 368 (S.D.N.Y. 2002) (A search is reasonable and adequate even if it fails to produce all relevant material). "An agency is not expected to take extraordinary measures to find the requested records, nor is it obligated to search every record system or use all possible variants of a particular name or search term." *Zhao v. U.S. Dep't of State*, 320 F. Supp. 3d 505, 509

---

[7] Plaintiff appended as Exhibit 1 (Dkt. #60-1) what appears to be a transcript of the videotaped deposition of Deborah Sines on March 20, 2020, taken in an unrelated action, *Edward Butowsky v. David Fofenflik, et al.*, Civil Action No. 4:18-CV-00442-ALM (E.D. Tex.). Prior to her retirement in April 2018, Ms. Sines was an Assistant U.S. Attorney in the Office of the United States Attorney for the District of Columbia and was a prosecutor assigned to the Seth Rich murder case. Dkt. #61-1 at 5; *see id*. at 10, 77, 80.

9

(E.D.N.Y. 2018) (internal quotation marks and citation omitted), *aff'd* 776 F. Appx. 733 (2d Cir. 2019).

In finding that the FBI's search was reasonable, the Court considered and correctly rejected Plaintiff's arguments that the FBI should have required the WFO to search "emails, texts, etc.," contact the CART, and search the ELSUR database. Order at 17-19. As the Court recognized, the CRS searches would have identified any responsive CART records. Order at 18; *see* Defs. 56.1 ¶ 32; Hardy Decl. n.6. Further, any emails about an investigation involving Rich would have been indexed and located through the CRS searches. Order at 18; *see* Hardy Decl. ¶ 24. Regarding the ELSUR database, the Court correctly held that the FBI was not required to search every database. Order at 19. The Court recognized that the agency was required only to show that its search efforts were reasonable and did not need to "knock down every search design advanced by every requester." *Id.* (quoting *DiBacco v. U.S. Army*, 795 F.3d 178, 192 (D.D.C. 2015)). Indeed, other courts have rejected other FOIA requesters' arguments that the FBI's searches were inadequate when the agency searched the comprehensive CRS but did not search the ELSUR. *See, e.g.*, *Passmore v. Dep't of Justice*, 245 F. Supp. 3d 191, 200 (D.D.C. 2017); *Light v. Dep't of Justice*, 968 F. Supp. 2d 11, 24 (D.D.C. 2013).

Nothing in Plaintiff's motion for reconsideration demonstrates a clear error of law. Indeed, Plaintiff's arguments appear to be "factual" in nature. Plaintiff argues, based on isolated excerpts from Ms. Sines' deposition testimony, that the FBI should not have relied on "flawed index systems" and "Mr. Hardy's testimony – *i.e.*, that Mr. Rich's name would appear in the vaunted index systems if an investigation pertained to him – is clearly false." Dkt. #60

at 2.[8] Plaintiff also asserts that the Judicial Watch email chain shows that the FBI was investigating something pertaining to Rich and, therefore, the FBI should have searched the WFO for records responsive to his FOIA request. Dkt. #60 at 3-4. As discussed below, Plaintiff's arguments are unavailing.

### 1. <u>Ms. Sines's Statements Fail to Show that the FBI's Search Was Inadequate</u>

Plaintiff asserts that based on Ms. Sines's deposition testimony, the Court should require the FBI to search for "records from the agent who interviewed her on behalf of the special counsel" and for "emails she exchanged with the FBI." Dkt. #60 n.2. In three bullet points Plaintiff identifies the portions of Ms. Sines's testimony that he maintains show that the FBI had responsive records of an investigation relating to Rich. Dkt. #60 at 2. However, none of them support Plaintiff's argument that the FBI did not conduct an adequate search for responsive records in September 2017.

First, the possible existence of a form recording Ms. Sines' interview with Special Counsel Robert Mueller's office is immaterial -- as opposed to "particularly significant" -- to the issue of whether the FBI conducted a reasonable search in response to Plaintiff's FOIA request. *See* Dkt. #60 at 2. Perhaps intentionally, Plaintiff ignores the operative dates. The FBI conducted its search and responded to Plaintiff's FOIA request in September 2017. Hardy Decl. ¶¶ 6, 19-21 and Ex. B; *see* Defs. 56.1 ¶¶ 23-34; FAC ¶ 11. Ms. Sines testified that she spoke with someone in Special Counsel Mueller's office in March or April 2018. Dkt. #60-1 at 30. Thus, any FBI record relating to that meeting would not have existed and, consequently,

---

[8] Plaintiff's use of the term "Mr. Hardy's testimony" appears to refer to Mr. Hardy's declarations that were submitted in support of Defendant's motion for summary judgment. Mr. Hardy has not testified in this action. In addition, it appears that Plaintiff's reference to "the vaunted index systems" is intended to mean the CRS.

11

could not have been located when the FBI conducted its search six or seven months earlier in September 2017. Records created after the cut-off date for an agency's search are not deemed to be responsive to the FOIA request. *See Hardway v. Central Intelligence Agency*, Civil Action No. 17-1433 (TJK), 2020 WL 1905065, at *7 (D.D.C. Apr. 18, 2020). The "cut-off date" for records responsive to a FOIA request ordinarily is the date that the agency commences its search. *See New York Times Co.,* 756 F.3d at 124 ("the November 3, 2011 cutoff date was reasonable as the date on which the search was commenced"); *Fox News Network, LLC v. U.S. Dep't of the Treasury*, 739 F. Supp. 2d 515, 536 (S.D.N.Y. 2010) (stating that "courts have consistently held that an agency may limit its FOIA search to records created on or before the date of the commencement of the search" and collecting cases); *McClanahan v. U.S. Dep't of Justice*, 204 Fed. Supp. 3d 30, 47 (D.D.C. 2016) ("a date-of-search cut-off has routinely been found to be reasonable, even if the agency performed subsequent searches"). Thus, the FBI was under no obligation to continue searching for records created after its search and response to Plaintiff in September 2017.

Second, Plaintiff cites to purported testimony by Ms. Sines that after Rich's death, the FBI investigated attempts to hack into his electronic accounts and examined his computer. Dkt. #60 at 2 (citing Dkt. #61-1 at 37-39). However, that was not Ms. Sines' testimony. When asked if the FBI conducted an analysis or investigation of Rich's computer, Ms. Sines responded that she was "not allowed to answer" and that she was "not allowed to say that the FBI or anybody else looked at Seth's computers." Dkt. #61-1 at 33, 34, 57; *see also id*. at 36-37 ("not supposed

12

to answer" whether or not Rich's computer was examined by the FBI), 52 and 57 (not authorized to say what the MPD did or whether it had assistance from other agencies).[9]

Finally, Plaintiff points to Ms. Sines's statement that she communicated with FBI personnel via email about the Rich case. Dkt. #60 at 2 (citing Dkt. #61-1 at 35). However, Sines clarified that, except for one FBI agent who was not in the WFO, her only written communication was with FBI personnel assigned to Special Counsel Mueller. Dkt. #61-1 at 35-36. Ms. Sines also stated that she did not exchange written communications with the CART. Dkt. #61-1 at 35.

Thus, there is nothing in Ms. Sines's testimony to support Plaintiff's argument that the FBI should have had conducted a search of the WFO's "emails, texts, etc." (or the CART) before responding to Plaintiff's FOIA request in September 2017.

## 2. **The Judicial Watch Email Chain Did Not Show That the FBI's Search Was Inadequate**

Plaintiff also maintains that the Judicial Watch email chain shows that the FBI has unreasonably refused to search for emails in the WFO because another email requester, who was seeking all communications between FBI official Peter Strzok and FBI attorney Lisa Page, received an email chain forwarded to them, Subject: Seth Rich dated August 10, 2016, that originated in the WFO Office of Public Affairs. Dkt. #60 at 3-4. This argument is simply a repetition of Plaintiff's unsuccessful motion for evidentiary hearing and *in camera* review

---

[9] Ms. Sines made clear that the DOJ had instructed her that she was not authorized to make any statements in violation of the law enforcement privilege about case investigatory steps she took while an Assistant U.S. Attorney. Dkt. #61-1 at 20-21; *see also id.* at 75. She was not authorized to say to whom she had talked in the intelligence or law enforcement communities. *Id.* at 23. Ms. Sines also stated that it was wrong for her to have talked to a reporter. *Id.* at 21-22.

13

(Dkt. #53); Plaintiff expressly "adopts that motion herein by reference." Dkt. #60 at 3. Plaintiff incorrectly asserts that the Court made no reference to the Judicial Watch email chain in the Order and asks the Court to address its relevance. *Id.* This argument utterly ignores that in granting Defendants' summary judgment motion (and denying Plaintiff's motion to enjoin compliance and permit discovery), the Court unmistakably held

> Even if there were responsive CART records or WFO records that were not identified in the FBI's search, the fact that the initial searches did not locate these documents does not support a finding of bad faith, as the FBI is not required to locate every responsive document in existence in order for a search to be considered reasonable. Conti v. U.S. Dep't of Homeland Sec., No. 12 CV 5827, 2014 WL 1274517, at *15 (S.D.N.Y. Marc. 24, 2014) ("[M]any courts have rejected the argument that the discovery of additional documents or later discovery of missing files renders a search unreasonable or conducted in bad faith."); Taggart v. Office of the Inspector Gen., No. 10 Civ. 5447, 2011 WL 13128214 (S.D.NY. Sept. 22, 2011), aff'd sub nom. Taggart v. Office of Inspector Gen. (OIG), 530 F. App'x 17 (2d Cir. 2013), at *8 ("[A] reviewing court must consider 'whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant.'") (quoting Grand Cent. P'Ship, 166 F.3d at 489). In any event, other than plaintiff's conclusory statements, there is no record evidence that the FBI has acted in bad faith in this matter.

Dkt. #58 at 18-19 n.16.[10] Thus, the Court did consider that there may have been potentially responsive WFO records that the FBI did not locate and, nonetheless, concluded that the FBI conducted an adequate search.

Moreover, the Judicial Watch email chain does not even support Plaintiff's claim that the FBI "was investigating something pertaining to Seth Rich." Dkt. #60 at 4. The initiating email from the WFO Public Affairs staff simply stated that

---

[10] Plaintiff also disregarded the fact that when the Court considered and denied his motion for an evidentiary hearing and *in camera* review by Order dated February 12, 2020, it acknowledged that Plaintiff believed he should have been given the Judicial Watch email chain. Dkt. #56 at 7.

14

> . . . Various news outlets are reporting today that Julian Assange <u>suggested</u> during a recent overseas interview that DNC Staffer, Seth Rich was a Wikileaks source, and may have been killed because he leaked DNC e-mails to his organization, and that Wikileak's was offering $20,000 for information regarding Rich's death last month. Based on this news, we anticipate additional press coverage on this matter. I hear that you are in a class today; however, when you have a moment, can you please give me a call to discuss what involvement the Bureau has in the investigation.

Dkt. #61-2 at 125. Nothing in the text of this email says that the FBI was conducting an investigation relating to Rich. Significantly, the recipient of the email responded, "I'm aware of this reporting from earlier this week but **not any specific involvement in any related case**." *Id.* (emphasis added). Nevertheless, from this email chain, Plaintiff extrapolates that the RIDS, which was unaware of this stray email and which had been informed by the WFO that it was not investigating or assisting with the investigation of Rich's murder, should have required the WFO to conduct a search of its emails in September 2017. There simply was no reasonable basis for the RIDS to conclude that any responsive records would be found in the WFO. *See* Hardy Decl. ¶ 24.

In conclusion, the Court correctly found that the FBI demonstrated that it conducted an adequate search using methods calculated to locate responsive records. Plaintiff has not shown that he is entitled to reconsideration of the Order to correct a clear error of law or prevent manifest injustice.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for reconsideration should be denied.

Dated: Brooklyn, New York
      May 21, 2020

Respectfully submitted,

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
Attorney for Defendants
271-A Cadman Plaza East, 7th Floor
Brooklyn, New York 112101
(718) 254-6026
kathleen.mahoney@usdoj.gov

s/*Kathleen A. Mahoney*
KATHLEEN A. MAHONEY
Assistant U.S. Attorney
    (Of Counsel)