IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| BRIAN HUDDLESTON,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION and UNITED STATES DEPARTMENT OF JUSTICE,<br><br>Defendants. | CIVIL ACTION No. 4:20CV447<br><br>JUDGE AMOS MAZZANT |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
REGARDING FOIA EXEMPTION 7(A)**

Defendants Federal Bureau of Investigation ("FBI") and United States Department of Justice ("DOJ" and along with the FBI, hereinafter "Defendants") respectfully move for summary judgment pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.

**INTRODUCTION**

The background facts of this FOIA case and its procedural history are as well known to the Court as they are to the parties and there is little need to recite them again. In the present Motion, the Defendants ask this Court to hold that Seth Rich's work laptop, the DVD, and tape drive (collectively referred to as the "Work Laptop") and the CD containing an image of Seth Rich's personal laptop (the "Personal Laptop") are exempt from disclosure under FOIA Exemption 7(A). 5 U.S.C. § 522(b)(7)(A). Exemption 7(A) is applicable because both laptops are related to ongoing criminal investigations of the most serious nature. With respect to the Personal Laptop, the Defendants assert that it may be related to the ongoing investigation into the homicide of Seth

Rich. In the case of the Work Laptop, the Defendants assert that it may be related to the investigation into the homicide of Seth Rich and also may be related to a criminal case in which the United States alleges that Russian intelligence officers hacked into an American political party's computer systems, stole thousands of pages of emails and documents, and publicly disclosed them in an effort to interfere with the 2016 presidential election.

The Defendants recognize that this is not the first motion for summary judgment this Court has entertained. Nonetheless, in light of the dire consequences that might arise in a national security case and a homicide investigation from premature disclosure of information contained on these laptops, the Defendants ask this Court to consider and grant this Motion.

## ISSUE PRESENTED

Whether, in light of ongoing criminal investigations, the Defendants are entitled to withhold disclosure of the Work Laptop and Personal Laptop pursuant to FOIA Exemption 7(A).

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). FOIA actions are generally resolved on motions for summary judgment, *see Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 200 (D.D.C. 2007), and the Court conducts a *de novo* review of the agency's response to any challenged FOIA requests, *see* 5 U.S.C. § 552(a)(4)(B).

The agency is required to justify any records withheld (in whole or in part) subject to FOIA's statutory exemptions. The exemptions reflect Congress' recognition "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982). "Summary judgment is warranted on the basis of agency affidavits when

the affidavits describe the basis for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically galls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of bad faith." *Larson v. U.S. Dep't of State*, 565 F.3d 857, 3865 (D.C. Cir. 2009) (quotation omitted). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 374-75 (D.C. Cir. 2007) (citing *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982); *Hayden v. NSA*, 608 F.2d 1381, 1388 (D.C. Cir. 1979)).

## ARGUMENT

**I.     The Defendants categorical invocation of FOIA Exemption 7(A) at this stage of the proceedings is appropriate.**

The Defendants anticipate the Plaintiff will object to a second motion for summary judgment in which the Defendants are invoking Exemption 7A with respect to four sets of materials when they did not do so in the Defendants' original motion for summary judgment.

As an initial matter, this Court's Local Rules permit parties to bring more than one motion for summary judgment. *See* E.D. Tex. Local Rule-CV7(a)(3) (setting page limits where "a party files more than one summary judgment motion"). Moreover, while it is true that the government is generally expected to raise all the exemptions it intends to raise in its initial motion for summary judgment or forfeit the exemptions not invoked, the D.C. District Court has recognized that the government can avoid forfeiture and raise exemption at a later stage in the district court proceedings by demonstrating "good cause." *Shapiro v. U.S. Dep't of Just.*, No. CV 13-555 (RDM), 2016 WL 3023980, at *4 (D.D.C. May 25, 2016) (holding that "the government [needs] to make some threshold showing of good cause to avoid a finding of forfeiture").

The D.C. District Court has stated that "this showing need not be an onerous requirement," *id.*, and has identified at least four bases for belated assertions of an exemption in an original district court proceeding:

> The government might in some cases argue that its failure to raise a FOIA exemption earlier was an *inadvertent error*, or that *some intervening change in law or fact excuses it*, or that *the consequences of not permitting an untimely assertion would be 'dire[.]'* The government might also argue that the assertion of *additional exemptions would not unreasonably delay proceedings, either because the assertion is de minimis or because the legal issues are identical to issues already present in the case*.

*Id.* (emphasis added and internal citations omitted). In the present case, the invocation of 7(A) now is justified because of the dire consequences that will flow from not permitting the government to assert (and, indeed, withhold pursuant to) Exemption 7(A).

As explained more fully below and in the attached Eighth Declaration of Michael Seidel, the Work Laptop and the Personal Laptop may contain information relevant to ongoing criminal investigations. The Work Laptop may contain information relevant to a case pending in the United States District Court for the District of Columbia, *United States v. Netyksho*, 18-cr-00215 (D.D.C.). That case involves criminal charges against twelve individuals. As set forth in the Indictment in that case, the defendants are officers within Russia's Main Intelligence Directorate of the General Staff of the Armed Forces (commonly referred to as "GRU"). 18-cr-00215, Dkt. 1. The Indictment charges the defendants with hacking into the computer networks of the Democratic Congressional Campaign Committee and the Democratic National Committee and releasing "tens of thousands of the stolen emails and documents" for the purpose of interfering with the 2016 presidential election. *Id.* at 2. All the defendants remain at large. There are also several "spin-off" investigations ongoing stemming from, or related to, the *Neyksho* case.

The Work Laptop and Personal Laptop may also contain information related to the ongoing investigation of the homicide of Seth Rich being conducted by the District of Columbia

Metropolitan Police Department and the United States Attorney's Office for the District of Columbia (USAO-DC). No suspect(s) in this murder has been publicly identified and Rich's killer remains at large.

Both cases—one involving foreign interference in a federal election and another involving murder—as well as the spin-off investigations are particularly and obviously serious and sensitive law enforcement matters. These cases cannot be described as routine or run of the mill cases where investigators might reflexively and inappropriately balk at release of information with no real bearing on the case. It is appropriate in these cases for investigators and prosecutors to stake wide boundaries around what might be considered important and worth withholding and likewise for a court to defer to such determinations particularly where the suspects remain at large.

The premature release of information if the laptops are not exempt pursuant to Exemption 7(A) would be dire. With respect to the *Netysksho* case, the premature release of information "would reveal details concerning the pending enforcement proceedings, to include the existence and location of the spin-off investigations," Seidel Decl. ¶ 13, and "would provide criminals and agents of foreign powers with information about the United States government's investigations and enforcement strategies in these ongoing matters, which could allow criminals and our national adversaries to predict and potentially thwart these strategies, and/or allow them to discover and tamper with witnesses and tamper with or destroy evidence." *Id*. . Similarly, regarding the homicide investigation "disclosure of the contents of the Personal Laptop and Work Laptop would cause interference and harm to the pending investigation because it would provide criminals with information about . . . investigation/enforcement strategies in an ongoing matter, allow them to predict and potentially thwart these strategies, and/or allow them to discover/tamper with or intimidate witnesses and/or tamper with or destroy evidence." *Id*. at ¶ 11.

**II.      The Defendants properly withheld the Work Laptop and Personal Laptop pursuant to Exemption 7(A).**

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," the disclosure of which could reasonably be expected to cause particular harms. 5 U.S.C. § 522(b)(7). The exemption is broken down into six parts that serve as the particular basis for withholding—Exemptions 7(A) through 7(F). *Id.* In this case, Defendants are withholding the Work Laptop and Personal Laptop under Exemption 7(A). To establish the applicability of FOIA Exemption 7(A), an agency must make a two-part showing. First, as with all FOIA Exemption 7's subparts, the agency must demonstrate the records were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). Second, an agency must "demonstrate that 'disclosure (1) could be reasonably expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice* ("CREW"), 746 F.3d 1082, 1096 (D.C. Cir. 2014) (quotation omitted). The Work Laptop and Personal Laptop satisfy both elements.

**A.      The Work Laptop and Personal Laptop were compiled for law enforcement purposes.**

As a threshold matter, for Exemption 7(A) to apply, a record must have been compiled for law enforcement purposes. 5 U.S.C. § 522(b)(7)(A); *see also Pub. Emps. For Envtl. Resp. v. Int'l Boundary & Water Comm'n U.S-Mex.*, 740 F.3d 195, 202-03 (D.C. Cir. 2014). "To determine if records are compiled for law enforcement purposes . . . the focus is on how and under what circumstances the requested files were compiled and whether the files sought relate to anything that can be fairly characterized as an enforcement proceeding." *Clemente v. FBI*, 868 F.3d 111, 119 (D.C. Cir. 2017) (quotation omitted). Thus, "[t]o show that the disputed documents were 'compiled for law enforcement purposes,' the [agency] need only 'establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection

between an individual or incident and a possible security risk or violation of federal law.'" *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (quoting *Campbell v. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998)). Because FBI is an agency specializing in law enforcement, its claim of a law enforcement purpose is entitled to deference. *Poitras v. Dep't of Homeland Sec.*, 303 F.Supp.3d 136, 155 (D.D.C. 2018) (quoting *Kidder v. FBI*, 517 F.Supp.2d 17, 27 (D.D.C. 2007).

Turning first to the Work Laptop, the Court's ruling on the Parties' motions for clarification, Dkt. 136, is instructive. There, the Court considered whether a "letter from a third party that accompanied the work laptop, two chain of custody forms, and the three-page report detailing actions by a third party outside entity to image the work laptop" (the "Newly Found Documents") were compiled for law enforcement purposes. *See* Dkt. 136 at 20-23. The Court found the Newly Found Documents "were created and compiled in furtherance of the FBI's role in the United States Office of Special Counsel investigation and related investigations." *Id.* at 20 n.14. The Court's determination that the documents accompanying the Work Laptop were compiled for law enforcement purposes naturally extends to the Work Laptop and the Court should find the Work Laptop was compiled for law enforcement purposes.

In addition to the Court's prior order, the Eighth Seidel Declaration establishes that the Work Laptop was "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). The Work Laptop was "collected in furtherance of the FBI's role in the SCO and other related investigations." Seidel Decl. ¶ 4. The SCO's function was to investigate Russian interference with the 2016 presidential election and to prosecute federal crimes arising from the investigation and those committed in the course of, and with intent to interfere with, that investigation. *See* 28 C.F.R. § 600.4(a). The Work Laptop was "collected to document FBI's investigation of potential crimes and threats to the national security[.]" Seidel Decl. ¶ 4. Because the Work Laptop was compiled

for law enforcement purposes, Defendants have satisfied FOIA Exemption 7's threshold inquiry as to the Work Laptop.

The Personal Laptop was similarly compiled for law enforcement purposes. As set forth in the Eighth Seidel Declaration, the Personal Laptop was collected by FBI in furtherance of its role in the SCO and related investigations. Seidel Decl. ¶ 4. The Court has already held that collection of the Work Laptop in connection with the SCO and related investigations satisfies the FOIA Exemption 7 threshold. Dkt. 166 at 20 n.14 (also noting Huddleston did not contest that the Newly Found Documents were compiled for law enforcement purposes). The same reasoning applies to the Personal Laptop and the Defendants have satisfied the threshold FOIA Exemption 7's threshold inquiry as to the Personal Laptop

Accordingly, the Court should conclude that both the Work Laptop and Personal Laptop was compiled for law enforcement purposes.

### B.  Defendants are entitled to withhold information concerning pending enforcement proceedings under FOIA Exemption 7(A).

FOIA Exemption 7(A) protects information compiled for law enforcement purposes when disclosure "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 522(b)(7)(A). "Exemption 7(A) reflects Congress's recognition that 'law enforcement agencies ha[ve] legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it [comes] time to present their case.'" *CREW*, 746 F.3d at 796 (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 212, 224 (1978)). "To justify withholding [an agency] must therefore demonstrate that 'disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated.'" *Id*. (quoting *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993)). Examples of records that are protected under 7(A) include "records [that] could disclose

to individuals under investigation the identities of potential witnesses, the content of the government's evidence and trial strategy and the focus of the investigation. *Id.* at 1098. An agency may satisfy the second and third prong by pointing to a pending investigation or proceeding. *Id.*

> **i.  Premature release of the Work Laptop could be reasonably anticipated to interfere with pending criminal prosecutions and ongoing investigations.**

The Work Laptop relates to pending criminal national security prosecutions and multiple pending "spin off" investigations. There is a pending criminal prosecution in the United States District Court for the District of Columbia: *United States of America v. Victor Borisovic Netyksho, et al.*, Criminal No. 1:18-cr-00215. Seidel Decl. ¶ 15. On July 13, 2018, a Grand Jury returned an indictment against twelve (12) individuals: 1) Viktor Borisovich Netyksho, 2) Boris Alekseyevich Antonov, 3) Dmitriy Sergeyevich Badin, 4) Ivan Sergeyevich Yermakov, 5) Aleksey Viktorovich Lukashev, 6) Sergey Aleksandrovich Morgachev, 7) Nikolay Yuryevich Kozachek, 8) Pavel Vyacheslavovich Yershov, 9) Artem Andreyevich Malyshev, 10) Aleksandr Vladimirovich Osadhuk, 11) Aleksey Aleksandrovich Potemkin, and 12) Anatoliy Sergeyevich Kovalev, charging them with one or more of the following:

    a. 18 U.S.C. §§ 371 and 3559(g)(1) Conspiracy to Commit an Offense or defraud the United States;

    b. 18 U.S.C. §§ 1028A(a)(1) and (2) Aggravated Identity Theft; and

    c. 18 U.S.C. § 1956(h) Conspiracy to Launder Money.

*Id.*

The defendants in the *Netysksho* matter remain fugitives and a premature release of information could trigger multiple harms. Seidel Decl. ¶ 17. The premature release of information could provide these fugitives information regarding the investigation that they could use to continue to "escape prosecution and thwart current investigative efforts by altering or

counteracting evidence, changing behavior, intimidating or physically harming witnesses or law enforcement officials and/or flight." *Id.* ¶ 17(a). Releasing the information could also allow third parties who are not directly related to the *Netysksho* matter to interfere with investigative efforts or future prosecutions. *Id.* ¶ 17(b). Finally, release of the information could lead to identification of sources of information, witnesses, potential witnesses, law enforcement, and others who are otherwise associated with the investigations and then would be exposed to intimidation or harm. *Id.* ¶ 17(c).

As the Court has previously found, "[t]here is a general recognition among courts that prematurely releasing certain information under FOIA may interfere with enforcement proceedings against fugitives. Dkt. 136 at 22 (citing *Martorano v. Fed. Bureau of Investigation*, No. 89-377, Civ. A. 89-1345(RCL), 1991 WL 212521, at *9 (D.C. Cir. Sept. 30, 1991); *Shapiro v. Cent. Intel. Agency*, 247 F.Supp.3d 53, 65 (D.D.C. 2017); *Hildago v. Fed. Bureau of Investigation*, 541 F.Supp.2d 250, 256-57 (D.D.C. 2008); *Ayyad v. U.S. Dep't of Just.,* No. 00 CIV. 960(KTD), 2002 WL 654133, at *2-4 (S.D.N.Y. Apr. 18, 2002)). Here, the Eighth Seidel Declaration establishes how the release of the Work Laptop could negatively impact the pending criminal prosecution. This alone is a sufficient basis to affirm the withholding of the Work Laptop pursuant to FOIA Exemption 7(A).

Although the *Netyksho* matter—where twelve individuals remain fugitives—provides sufficient support to withhold the Work Laptop pursuant to FOIA Exemption 7(A), the exemption is further supported by the pending "spin off" criminal investigations. These investigations remain ongoing. Seidel Decl. ¶ 16. Until the investigations conclude, the release of information in the investigative files for the pending investigations, which includes the Work Laptop, could interfere with the investigations. *Id.* ¶ 18. That interference could manifest in a variety of ways, including those discussed *supra*. *Id.* ¶ 17. The existence of the pending "spin off" investigations provides a

separate and independently sufficient basis to withhold the Work Laptop pursuant to FOIA Exemption 7(A).

Premature release of the Work Laptop could also be reasonably expected to interfere with the ongoing investigation into the homicide of Seth Rich. As set forth in the Eighth Seidel Declaration, premature release of the Work Laptop "would provide criminals with information about the USAO-DC's investigation/enforcement strategies in an ongoing matter, allow them to predict and potentially thwart these strategies, and/or allow them to discover/tamper with or intimidate witnesses and/or tamper with or destroy evidence." Seidel Decl. ¶ 11. Due to the high-profile nature of the investigation into the homicide of Seth Rich, premature release of the Work Laptop could also "allow potential witnesses or subjects to locate specific details related to the ongoing investigation and use the information to influence the investigation by altering witness testimony or tampering with or destroying relevant evidence." *Id.* It could also disclose the scope and focus of the investigation, which would allow "potential targets of the investigation to elude detection or to suppress, alter, or fabricate evidence, or would prematurely reveal evidence or strategies in the USAO-DC's investigation." *Id.* These the reasonable expectation that premature release of the Work Laptop could cause these types of interference with the USAO-DC's investigation into the homicide of Seth Rich, it is appropriate to withhold the Work Laptop pursuant to FOIA Exemption 7(A).

      **ii.**    **Releasing the Personal Laptop would similarly threaten ongoing criminal investigations.**

As discussed above, the Personal Laptop is evidence in an investigation that is being handled by the USAO-DC in connection with the District of Columbia Metropolitan Police Department (the "Metro Police"). The Metro Police is the local law enforcement agency for the District of Columbia, its creation and regulations are compiled in Title 5 of the Code of the District

of Columbia, and it has law enforcement jurisdiction over homicides in the District of Columbia. The USAO-DC is responsible for the prosecution of all federal crimes as well as all serious local crime committed by adults in the District of Columbia (U.S. Const., art. I, § 8, cl. 17). Both the Metro Police and the U.S. Attorney's Office for the District of Columbia have been investigating and continue to investigate the homicide of Seth Rich as the law enforcement agencies with jurisdiction over the alleged crime. Seidel Decl. ¶¶ 8-10.

Premature release of the Personal Laptop could be reasonably expected to interfere with the investigation into the homicide of Seth Rich. The same types of interference could reasonably be expected to arise out of premature release of the Personal Laptop as were discussed with respect to premature release of the Work Laptop. Premature disclosure could interfere with the investigation by disclosing information about the investigation and enforcement strategies in a manner that would allow tampering with or intimidation of witnesses and tampering with or destruction of evidence. Seidel Decl. ¶ 11. It could also allow potential targets of the investigation to "elude detection or to suppress, alter, or fabricate evidence, or would prematurely reveal evidence or strategies in the USAO-DC's investigation." *Id.*

Accordingly, because the release of this information could be reasonably expected to interfere with the ongoing murder investigation, Defendants have properly invoked FOIA Exemption 7(A) to categorically withhold the Personal Laptop.

### III. The Defendants reserve their right to assert additional 7(A) exemptions at the appropriate time.

Defendants are entitled to categorically withhold the Work Laptop and Personal Laptop pursuant to FOIA Exemption 7(A). However, other FOIA exemptions may provide additional and independent grounds for withholding records and information. Potentially applicable exemptions include FOIA Exemptions 3, 4, 6, and 7(C)-(F). *See generally* 5 U.S.C. §§ 552(b)(3), (b)(4), (b)(6),

and (b)(7)(C)-(F). By way of example, the Personal Laptop and Work Laptop could contain information reflecting personal information, the disclosure of which would constitute a clear unwarranted invasion of personal privacy. In that case, Defendants would be entitled to withhold the information under FOIA Exemptions 6 and 7(C) following the expiration of the applicability of FOIA Exemption 7(A). Accordingly, the Defendants reserve the right to invoke additional exemptions to protect from disclosure responsive material contained in the Work Laptop and Personal Laptop in connection with processing the laptops if the Court rejects the applicability of FOIA Exemption 7(A).

At this time, preparation of a *Vaughn* index for the laptops is premature. *See Solar Sources, Inc. v. U.S.,* 142 F.3d 1033, 1040 (7th Cir. 1998) (Given the fact that Exemption 7(A) does not require the Government to establish that each particular document would interfere with enforcement proceedings, but rather permits generic exemptions of categories of documents, see *Robbins Tire*, *supra*, courts have recognized that a *Vaughn* index requirement in a 7(A) case would make little sense: "When . . . a claimed FOIA exemption consists of a generic exclusion, dependent upon the category of records rather than the subject matter which each individual record contains, resort to a *Vaughn* index is futile." (quoting *Church of Scientology v. IRS*, 792 F.2d 146, 152 (D.C. Cir. 1986) (Scalia, J) (internal citations omitted). Accordingly, Defendants respectfully assert that it is unnecessary to propose a timeline for the preparation of a *Vaughn* index with respect to the laptops at this time. If and when the Court denies this Motion, Defendants can confer with Plaintiff to propose a timeline for the processing of the laptops and preparation of a *Vaughn* index, wherein Defendants would assert any other applicable FOIA exemptions.

## **CONCLUSION**

For the foregoing reasons, the Court should grant the Motion and find Defendants appropriately withheld the Work Laptop and Personal Laptop pursuant to FOIA Exemption 7(A).

Respectfully submitted,

DAMIEN M. DIGGS
UNITED STATES ATTORNEY

*/s/ James Gillingham*
JAMES GARLAND GILLINGHAM
Texas State Bar No. 24065295
james.gillingham@usdoj.gov
110 N. College, Suite 700
Tyler, TX  75702
(903) 590-1400
Fax: (903) 590-1436

**COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

      I hereby certify that on February 8, 2024, a true and correct copy of the foregoing document was filed electronically with the court and has been sent to counsel of record via the court's electronic filing system.

                                              */s/ James Gillingham*
                                              JAMES GILLINGHAM
                                              Assistant United States Attorney