IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| BRIAN HUDDLESTON, <br><br> Plaintiff, <br><br> vs. <br><br> FEDERAL BUREAU OF INVESTIGATION and UNITED STATES DEPARTMENT OF JUSTICE <br><br> Defendant | Case No. 4:20-cv-447-ALM |

### REPLY IN SUPPORT OF MOTION REGARDING *EX PARTE, IN CAMERA* FILING

NOW COMES Brian Huddleston, the Plaintiff, replying in support of his Motion Regarding *Ex Parte, In Camera* Filing (Dkt. #149):

The Defendant's Response to Motion Regarding *Ex Parte, In Camera* Filing (Dkt. #151) is disingenuous at best. It suggests that the *ex parte, in camera* filing referenced in Mr. Seidel's February 8, 2024 declaration (Dkt. #148-1) was the sort of run-of-the-mill filing expressly authorized by the Freedom of Information Act, namely 5 U.S.C.A. § 552(a)(4)(B). That subsection permits a court to review "agency records" to determine whether they are exempt from disclosure, thus the subsection applies only to records that are covered by the requestor's original FOIA request. *See* 5 U.S.C.A. § 552(a)(4)(B) (a court "may examine the contents of *such agency records* in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section") (emphasis added). But Mr. Seidel himself proves that the filing was not an "agency record" as that term is used in Subsection 552(a)(4)(B):

> When the FBI became aware that the USAO-DC and MPD had an open investigation into the death of Seth Rich, the FBI notified the Court via an *in camera, ex parte* filing of this new information. Since receiving notification of the pending investigation, the FBI has been in communication with the AUSA and confirmed that the investigation remains active and continues to be handled by the USAO-DC, who serves as the local law enforcement prosecutor in the District of Columbia.

Eighth Declaration of Michael G. Seidel (Dkt. #148-1)(emphasis added) ¶9. This indicates that the FBI was relaying <u>new</u> information to the Court about the current status of the homicide investigation and the "hacking" prosecution, as opposed to submitting, for example, a record that was found on one of Mr. Rich's laptops. Mr. Seidel's declaration thus indicates that the FBI was communicating with the Court *ex parte* about ongoing matters related to the litigation.

It is troubling that the FBI has taken such a cavalier attitude toward due process. Even where *ex parte* review is permitted by statute, there are limits:

> FOIA litigation is not immune from our open, adversary process. *In camera, ex parte* review, though permitted under FOIA and sometimes necessary, is generally disfavored—it "is not a substitute" for the government's obligation to justify its withholding in publicly available and debatable documents, *Lykins v. United States Dep't of Justice,* 725 F.2d 1455, 1463 (D.C.Cir.1984), and it should be invoked only when the issue at hand " 'could not be otherwise resolved,' " *Center for Auto Safety v. EPA,* 731 F.2d 16, 21 (D.C.Cir.1984) (quoting *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 224, 98 S.Ct. 2311, 2318, 57 L.Ed.2d 159 (1978)).

*Schiller v. N.L.R.B.*, 964 F.2d 1205, 1209 (D.C. Cir. 1992)(emphasis added), *abrogated on other grounds by Milner v. Dep't of Navy*, 562 U.S. 562, 131 S. Ct. 1259, 179 L. Ed. 2d 268 (2011). The FBI notes prior instances in this case where it submitted documents *ex parte*, but the circumstances were far different. In each of those occasions, the FBI requested permission in advance to file the documents *ex parte*, it set forth the reasons why it wanted to file *ex parte*, and the Plaintiff had an opportunity to respond. In other words, the FBI complied with 5 U.S.C.A. § 552(a)(4)(B). This time, however, the FBI hid the entire *ex parte* transaction until weeks after the fact.

The Plaintiff can think of only two reasons for the *ex parte* filing. First, the FBI wanted to be relieved from this Court's orders directing the FBI to confer with the Plaintiff for purposes of submitting a production schedule not later than January 11, 2024. *See* November 28, 2023 Memorandum Opinion & Order (Dkt. #136) 25 and December 12, 2023 Order Granting Defendant FBI's Unopposed Motion for Extension (Dkt. #140). Second, and the FBI seems to acknowledge this, it wanted (and wants) the Court to rely on the *ex parte* filing as evidence in support of its motion for summary judgment. Neither is sufficient to justify the *ex parte* communication. A court may "permit *ex parte* communication for scheduling, administrative, or emergency purposes, but only if the *ex parte* communication does not address substantive matters and the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the *ex parte* communication." *Gerber v. Veltri*, 702 F. App'x 423, 433 n.7 (6th Cir. 2017), quoting Judicial Canon 3(A)(4)(b).

It appears that the FBI's improper *ex parte* communication achieved its purpose of buying yet another delay, but it should achieve nothing further. As indicated in the Plaintiff's original motion (Dkt. #149), the FBI apparently tried to create the false impression of an emergency, *i.e.*, that it had *just* discovered that the murder case was still "open," and it had *just* discovered that the laptops were pertinent to the "hacking" prosecutions. It is absurd, however, to suggest that the FBI thought the murder investigation had been closed. Like every other jurisdiction in the United States, murder investigations in the District of Columbia may be transferred to a cold case unit, but they remain open until they are solved. *See* Metropolitan Police Department, "Investigating Unsolved Murders in DC," https://mpdc.dc.gov/page/investigating-unsolved-murders-dc (Exhibit 1).[1] Furthermore, the FBI already was claiming as of

---

[1] As witnessed by his electronic signature below, Ty Clevenger declares under penalty of perjury under

December 9, 2022 that Seth Rich's work laptop was relevant to the prosecution of purported Russian hackers and its contents should be exempt for that reason. *See* Sixth Declaration of Michael G. Seidel ¶¶25-29 (Dkt. #83-1). In short, nothing about the murder investigation or the "hacking" prosecution was new, thus there was nothing urgent that would warrant the double-secret *ex parte* filing.  If the FBI deceived or attempted to deceive the Court in order to buy itself additional delays, then its misconduct should not be rewarded. It should be ordered to turn over the *ex parte* filing unless it can clearly demonstrate the harm that would arise from disclosure. At the very least, the *ex parte* submission should be filed as a sealed docket entry for purposes of appellate review.

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
212 S. Oxford Street #7D
Brooklyn, New York 11217
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Counsel for Plaintiff Brian Huddleston**

**Certificate of Service**

On March 4, 2024, I filed a copy of this request with the Court's ECF system, which should result in automatic notification via email to Asst. U.S. Attorney James Gillingham, Counsel for the Defendants, at james.gillingham@usdoj.gov.

**/s/ Ty Clevenger**
Ty Clevenger

---

the laws of the United States that he downloaded https://mpdc.dc.gov/page/investigating-unsolved-murders-dc on February 28, 2024 and Exhibit 1 is a true and correct copy of that download.