IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| BRIAN HUDDLESTON,<br><br>          Plaintiff,<br><br>vs.<br><br>FEDERAL BUREAU OF INVESTIGATION and UNITED STATES DEPARTMENT OF JUSTICE<br><br>          Defendant | Case No. 4:20-cv-447-ALM |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING FOIA EXEMPTION 7(a)**

NOW COMES Brian Huddleston, the Plaintiff, responding in opposition to Defendants' Motion for Summary Judgment Regarding FOIA Exemption 7(a) (hereinafter "MSJ") (Dkt. #148):

## Introduction

The MSJ is just more of the same. Each time the Defendants lose an argument on summary judgment, they file a motion for reconsideration or a new motion for summary judgment. Consider Seth Rich's personal laptop. The MSJ represents the Defendants' third bite at the apple. *See* Defendant's Motion for Summary Judgment (Dkt. #37) 39 and Defendant FBI's Motion for Clarification, or in the Alternative, Reconsideration of the Memorandum Opinion and Order Entered September 29, 2022 (Dkt. #73). The Defendants' tactics are purely dilatory, and they have implicitly admitted as much. At the end of the MSJ, the Defendants "reserve the right" to assert other exemptions if they lose in their latest motion for summary judgment. MSJ 12-13. Obviously, they intend to keep filing new motions for as long as they think they can get away

with it. They've pulled the same stunt with respect to the Plaintiff's request for attorney fees, *see* Dkt. #59 at n.1, Dkt. #103 at 4, and Dkt. #145 at 3, even though the Plaintiff has repeatedly cited binding authority holding that piecemeal briefing is improper and results in waiver. *See* Dkt. #62 at 5 and Dkt. #146 at 3, both citing *Domain Protection, LLC v Sea Wasp, LLC*, 426 F. Supp. 3d 355, 377 (E.D. Tex 2019), *aff'd sub nom. Domain Protection, L.L.C. v Sea Wasp, L.L.C.*, 23 F4th 529 (5th Cir. 2022).

In a FOIA case against the U.S. Department of the Army, the U.S. District Court for the District of Columbia noted that a court's discretion is limited by the law of the case doctrine and "subject to the caveat that, where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Judicial Watch v. Dep't of Army*, 466 F. Supp. 2d 112, 123 (D.D.C. 2006). The Plaintiff quoted this over a year ago, *see* Plaintiff's Surreply to Defendants' Motion for Reconsideration (Dkt. #93) 2-3, and yet here we are again, "battling for the court's decision" regarding the exact same sets of documents.

The Defendants pretend that new facts prompted them to file the MSJ, but the Plaintiff's Motion Regarding Ex Parte, In Camera Filing (Dkt. #149) and reply in support (Dkt. #153)[1] show that there is nothing new that would justify the latest redundant motion. It is absurd for the Defendants to suggest, for example, that they *just* learned that Mr. Rich's murder investigation is still "open," and on that basis they should be able to assert Exemption 7(a). *See* Declaration of Frank Whalen (Exhibit 1)(retired homicide detective explaining that the declaration of Michael G. Seidel is not credible). Murder investigations remain open until they are solved, *id*., thus the Defendants' argument is a ruse intended to generate more delay.

---

[1] The Plaintiff incorporates both of these documents and their exhibits by reference.

**Argument**

**1. The Motion for Summary Judgment is legally frivolous.**

The Plaintiff need not address the Defendants' factual arguments in order to prevail, because the relief that they seek is foreclosed as a matter of law. When large numbers of documents (or even a *single* large document) are under consideration, the Government may not assert wholesale, blanket exemptions. *King v. U.S. Dep't of Just.*, 830 F.2d 210, 223–24 (D.C. Cir. 1987)("A withholding agency must describe *each* document or portion thereof withheld, and for *each* withholding it must discuss the consequences of disclosing the sought-after information")(emphasis in original). Instead, the Government must produce a *Vaughn* index identifying *each* document and the reasons for withholding *each* document. *Batton v. Evers*, 598 F.3d 169, 178 (5th Cir. 2010), citing *Stephenson v. IRS*, 629 F.2d 1140, 1144 (5th Cir. 1980). "The purpose of a *Vaughn* index is to justify an agency's withholding of documents by correlating *each* document with a particular FOIA exemption." *Voinche v. U.S. Dep't of Air Force*, 983 F.2d 667, 670 (5th Cir. 1993)(emphasis added), citing *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974) and *Knight v. United States CIA*, 872 F.2d 660, 661–62 (5th Cir.1989), cert. denied, 494 U.S. 1004, 110 S.Ct. 1296, 108 L.Ed.2d 474 (1990).

> *Vaughn's* call for specificity imposes on the agency the burden of demonstrating applicability of the exemptions invoked *as to each document or segment withheld.* Elsewhere we have defined the *Vaughn* index as "consist[ing] of one document that adequately describes each withheld record or deletion and sets forth the exemption claimed and why that exemption is relevant." Categorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate.

*King*, 830 F.2d at 224 (emphasis in original); *see also PHE, Inc. v. Dep't of Just.*, 983 F.2d 248, 250 (D.C. Cir. 1993); *Kiraly v. FBI*, 728 F.2d 273, 277 (6th Cir.1984); and *Church of*

*Scientology v. United States Dep't of the Army*, 611 F.2d 738, 743 (9th Cir.1979). In this case, the work laptop alone contains an estimated 400,000 documents, Dkt. #73 at 9, thus the Defendants' request to withhold <u>all</u> of those documents on the basis of a single, conclusory declaration about "anticipated consequences of disclosure" is beyond the pale. Even within a single document, "it is vital that the agency specify in detail which portions of the document are disclosable and which are allegedly exempt." *Oglesby v. U.S. Dep't of Army*, 79 F.3d 1172, 1178 (D.C. Cir. 1996), quoting *Vaughn*, 484 F.2d at 827.

> The agency has the burden to show that portions withheld are not segregable from the disclosed material. *Davin,* 60 F.3d at 1052. Under this principle of segregability, an agency cannot justify withholding an entire document simply because it contains some material exempt from disclosure. *Krikorian v. Department of State,* 984 F.2d 461, 467 (D.C.Cir.1993) (quotations omitted). Rather, an agency must supply a relatively detailed justification and explain why materials withheld are not segregable. *Id.* (quotations omitted). A district court errs by approving the withholding of an entire document without entering a finding on segregability. *Church of Scientology of Cal. v. United States Dep't of the Army,* 611 F.2d 738, 744 (9th Cir.1979).

*Rugiero v. U.S. Dep't of Just.*, 257 F.3d 534, 553 (6th Cir. 2001). The FBI would need to show that every line of every page of every document is exempt, *id.*, and it has made no effort to meet that burden. "Categorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate." *King*, 830 F.2d at 224.

      The Defendants cite *Solar Sources, Inc. v. U.S.*, 142 F.3d 1033, 1040 (7th Cir. 1998) and *Church of Scientology v. IRS*, 792 F.2d 146, 152 (D.C. Cir. 1986) for the premise that they can assert categorical exemptions, and both of those cases cite *N.L.R.B. v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 98 S. Ct. 2311, 57 L. Ed. 2d 159 (1978). None of those cases are as helpful as the Defendants think. In *Solar Sources*, the court did not require a *Vaughn* index because the government had already produced 3,000 pages for *in camera* review. 142 F.3d at 1036. In this case, the government has produced <u>nothing</u> from any of the electronic devices. The Defendants'

reliance on *Church of Scientology* is puzzling, because in that case the court rejected the government's overbroad assertion of exemptions. 792 F.2d at 153. Finally, *Robbins Tire* is readily distinguishable, because in that case the requestor was an employer that was under investigation by the N.L.R.B., and that employer sought copies of witness statements that its employees had provided to N.L.R.B. investigators. That obviously raised the prospect of witness intimidation or retaliation. In any event, categorically exempting witness statements is a far cry from this case, where the government wants to categorically exempt hundreds of thousands of documents merely because they are found on a politically-sensitive hard drive. A more applicable case is *OKC Corp. v. Williams*, where the court flatly rejected the government's argument that "*Robbins Tire*… creates a blanket exemption for investigatory files during the pendency of an investigation and any law enforcement proceeding that results therefrom, upon a showing that the investigation and any related proceedings have not been concluded." 489 F. Supp. 576, 584 (N.D. Tex.), *aff'd,* 614 F.2d 58 (5th Cir. 1980). Instead, a court "must determine from the type of material sought and the type of enforcement proceeding commenced or contemplated" whether disclosure would interfere with an investigation or enforcement proceeding. *Id*.

The Defendants seem to believe that by merely referencing ongoing investigations and prosecutions, they can exempt everything. But the law enforcement exemption found in Exemption 7(a) is not the magic bullet that they seem to think:

> "'[A]lthough [courts] give deference to an agency's predictive judgment of the harm that will result from disclosure of information, it is not sufficient for the agency to simply assert that disclosure will interfere with enforcement proceedings; it must rather demonstrate how disclosure will do so.'" *Stein*, 266 F.Supp.3d at 344 (quoting *Citizens for Responsibility & Ethics in Wash. v. U.S. Dept. of Justice* ("*CREW I*"), 746 F.3d 1082, 1096 (D.C. Cir. 2014)) (emphasis in *CREW I*). "Ultimately, the government must 'allow[ ] the court to trace a rational link between the nature of the document and the alleged likely interference.'" *N.Y. Times Co.*, 2016 WL 5946711, at *7 (quoting *Ctr. for Nat'l*

*Sec. Studies v. U.S. Dept. of Justice*, 331 F.3d 918, 940 (D.C. Cir. 2003)). *Radar Online LLC v. Federal Bureau of Investigation* 2023 WL 6122691, at *5 (S.D.N.Y., Sept. 19, 2023, No. 17 CIV. 3956 (PGG)). The Defendants make no effort to "trace a rational link" between, for example, the metadata on the laptops and the murder or "hacking" cases. That is fatal. *Id*. And consider the personal laptop again. The Defendants tell the Court that Seth Rich died in a "botched robbery," Dkt. #148-1 at ¶7, and that begs the question of how the laptop could be pertinent to the murder investigation. As explained by Frank Whalen, a retired NYPD homicide investigator, the laptop would be relevant only if Mr. Rich's murder was premeditated. *See* Declaration of Frank Whalen (Exhibit 1). Furthermore, the Defendants previously have stated that the chain of custody for the personal laptop contents was broken, they were not relying on its contents, and *they never even looked at the contents*. *See* Fourth Declaration of Michael G. Seidel (Dkt. #37-1) ¶137; *see also* Dkt. #92 at 5 (citing the record). Now, however, they want the Court to believe that the personal laptop contents are relevant to both the murder investigation and the prosecution of Russian "hackers" (even though we *still* don't know whether they have looked at the contents of those laptops). If the Defendants want to exempt the metadata (or any other information), then they must do so on an item-by-item basis, and they must "trace the links" to explain how the information would compromise the investigation or prosecution.

**2. The Russian collusion investigation was a hoax.**

Courts need not accept an Exemption 7(a) argument where the underlying investigation was pretextual or a sham. *Rosenfeld v. U.S. Dep't of Just.*, 57 F.3d 803, 808–09 (9th Cir. 1995) and *Demetracopoulos v. Fed. Bureau of Investigation*, 510 F. Supp. 529, 530 (D.D.C. 1981). Here, the U.S. Department of Justice already has admitted that the Russian collusion investigation was a sham. On August 25, 2023, the Plaintiff made the Court aware of the May

12, 2023 Report on Matters Related to Intelligence Activities and Investigations Arising Out of the 2016 Presidential Campaigns (hereinafter "Durham Report")(Dkt. 133-1) filed by Special Counsel John Durham. As explained in Plaintiff's Reply in Support of Corrected Motion for Summary Judgment (Dkt. #133) 2, 14-15, the Justice Department has admitted that the Seth Rich case is a part of the Russian collusion hoax, and the Durham Report is a binding admission that the whole thing was indeed a hoax. The Plaintiff would further direct the Court's attention to Plaintiff's Response to Defendant FBI's Notice of Supplemental Search Declaration and Vaughn Indices and Plaintiff's Cross-Motion for Summary Judgment (Dkt. #104) and sur-reply in support (Dkt. #110) (both of which he incorporates herein by reference), and specifically to the discussion of the sham indictment of Concord Management (Dkt. #104). The entire "hacking" prosecution is saturated with fraud and misconduct, and the Defendants are entitled to no deference.

**3. Release of metadata would not jeopardize any investigations or prosecutions.**

In his January 11, 2024 declaration on behalf of the Plaintiff, expert witness Yaacov Appelbaum wrote as follows:

> Once the Metadata and file names [from the laptops] are produced, I should be able to determine quickly whether Mr. Rich played a role in leaking Democratic National Committee emails to Wikileaks. If, for example, DNC emails or other DNC content was downloaded to or uploaded from one of Mr. Rich's devices, then that could be determined from the metadata and/or file names.

Declaration of Yaacov Appelbaum (Dkt. #141-3). That's why the Defendants are in a panic, and that's what the MSJ is really about. After the Defendants filed the MSJ, Plaintiff's Counsel contacted Defendants' Counsel about a proposed solution:

> I'm wondering if the FBI would be open to a negotiated resolution of the laptops issue. We would need to hammer out the details, but I would propose that the FBI stipulate in a declaration (1) that the laptops contain evidence that Seth Rich was a source of the DNC emails published by Wikileaks and (2) the personal laptop records indicate post-mortem

> deletions / tampering. In return, my client would withdraw his demand for the laptop records. Please let me know if your clients have an interest.

February 20, 2024 Email from Ty Clevenger to James Gillingham (Exhibit 2).[2] Two days later, Plaintiff's Counsel followed up with another email to Defendants' Counsel:

> I should clarify something. We're obviously not asking the FBI to stipulate to something that isn't true. If the FBI has looked at the laptops and there is no evidence of #1 or #2, then a sworn declaration to that effect also would be helpful.

February 22, 2024 Email from Ty Clevenger to James Gillingham (Exhibit 2). Defendants' Counsel acknowledged the email, but the Defendants never responded to the proffered resolution. The Plaintiff realizes that the Defendants were under no obligation to negotiate, but their recalcitrance gives a pretty clear indication of what they are trying to hide.

In the Reply in Support of Plaintiff's Motion for Clarification (Dkt. #92), the Plaintiff observed that Special Counsel Robert S. Mueller III declared in a conclusory paragraph that Seth Rich played no role in the DNC "hack," yet the FBI had never bothered to examine Seth Rich's laptops before Mr. Mueller made that declaration. *See* Dkt. #92 at 5 and 18, citing the record.[3] It is unclear whether the FBI has examined the laptops since that time, but the Defendants want to declare the laptops off limits on the mere possibility that they "may" contain evidence relevant to the "hack" or the murder.

> With respect to the Personal Laptop, the Defendants assert that it may be related to the ongoing investigation into the homicide of Seth Rich. In the case of the Work Laptop, the Defendants assert that it may be related to the investigation into the homicide of Seth Rich and also may be related to a criminal case in which the United States alleges that Russian intelligence officers hacked into an American political party's computer systems, stole thousands of pages of emails and documents, and publicly disclosed them in an

---

[2] As witnessed by his electronic signature below, Ty Clevenger declares under penalty of perjury under the laws of the United States that his factual statements herein are true and correct and the exhibits to this document are true and correct copies of the documents that he represents them to be.
[3] Notably, Dkt. #92 explained at length why Exemption 7(a) would not apply to the work laptop, but the Defendants *still* have not addressed those arguments. The Plaintiff incorporates them herein by reference. Undoubtedly, the Defendants will keep ignoring them.

effort to interfere with the 2016 presidential election.

MSJ 1-2 (emphasis added). The Defendants might have a little more credibility on this issue if they actually examined the contents of the laptops and determined whether they are related to the foregoing investigations. That would allow the Court to "trace a rational link between the nature of the document and the alleged likely interference." *Radar Online LLC,* 2023 WL 6122691, at *5. But they made no such effort, and their argument fails.

As explained above, metadata is of no use in solving a murder that resulted from a random street crime. *See* Declaration of Frank Whalen (Exhibit 1). On the other hand, if that metadata showed that Mr. Rich was the source of the DNC emails published by Wikileaks, then that would certainly reveal a potential motive for murder. But that potential motive has been discussed openly for more than seven years, *see, e.g.*, Faith Karimi, "Seth Rich and the myth behind the unsolved murder case," August 2, 2017 CNN, https://www.cnn.com/2017/05/24/us/seth-rich-dnc-wikileaks-theories/index.html (Exhibit 3), and the Defendants are still obligated to explain how the revelation of something so obvious would somehow interfere with the murder investigation or prosecution. *Radar Online LLC,* 2023 WL 6122691, at *5. They have not even attempted to meet that burden.

The Defendants likewise fail to meet their burden to explain how releasing metadata would harm the hacking investigation / prosecution. One might theorize that metadata would contain a record of the hacking attempt, but how *exactly* would that harm the investigation / prosecution?  On at least two occasions, the Plaintiff noted that any such evidence on Mr. Rich's laptops would have to be shared with the Defendants pursuant to *Brady v. Maryland*, *see* Reply in Support of Plaintiff's Motion for Clarification (Dkt. #92) 15-16 and Plaintiff's Response to Defendant FBI's Notice of Supplemental Search Declaration and Vaugh Indices and Plaintiff's

Cross Motion for Partial Summary Judgment (Dkt. #105) 16-17, but the Defendants never addressed that argument. Let's suppose that (1) Russian hackers inserted malicious code into Mr. Rich's work laptop that allowed them to remotely operate it, and that (2) the metadata will somehow reveal the presence of that code. How is that going to harm the investigation or prosecution? It cannot, because the *U.S.A. v. Netyksho*, et al. indictment <u>publicly</u> alleges the following:

> By in or around April 2016, the Conspirators also hacked into the computer networks of the Democratic Congressional Campaign Committee ("DCCC") and the Democratic National Committee ("DNC"). The Conspirators covertly monitored the computers of dozens of DCCC and DNC employees, implanted hundreds of files containing malicious computer code ("malware"), and stole emails and other documents from the DCCC and DNC.

Indictment, *U.S.A. v. Netyshko*, Case 1:18-cr-00215-ABJ, [https://www.justice.gov/file/1080281/download](https://www.justice.gov/file/1080281/download) ¶4 (Exhibit 4). The Defendants fret that the existence of spin-off investigations might somehow be revealed, but that argument is disingenuous because Mr. Rich died before any such investigations began, therefore nothing about a spin-off investigation will be found in the metadata. True to form, the Defendants are throwing things at the wall and hoping that something will stick.

**4. The Defendants are acting in bad faith.**

In its September 29, 2022 Memorandum Opinion, the Court found it "alarming" that the FBI went from claiming that it had no responsive documents about Seth Rich to acknowledging that it had thousands of documents about Seth Rich. *Huddleston v. Fed. Bureau of Investigation*, No. 4:20-CV-00447, 2022 WL 4593084, at *11 (E.D. Tex. Sept. 29, 2022), clarified on denial of reconsideration, No. 4:20-CV-00447, 2023 WL 8235243 (E.D. Tex. Nov. 28, 2023). As of that date the Court was not yet convinced that the FBI was acting in bad faith, but a lot has happened since then, and the evidence of bad faith is now overwhelming. *See, e.g.,* Dkt. #92.

As noted above, the Department of Justice has admitted that the Russian collusion investigation was permeated with bad faith and misconduct. *See* Durham Report. And the MSJ itself is evidence of bad faith. Consider the following quote that the Plaintiff presented more than a year ago:

> In *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), this court outlined the requirements an agency must meet in indexing the documents it has found responsive to a FOIA request. The court explained that it would "simply no longer accept conclusory and generalized allegations of [FOIA] exemptions," but rather would require agencies to offer "a relatively detailed analysis in manageable segments." *Id.* at 826. Because FOIA challenges necessarily involve situations in which one party (the government) has sole access to the relevant information, and that same party bears the burden of justifying its disclosure decisions, the courts must require the government to provide as detailed a description as possible—without, of course, disclosing the privileged material itself—of the material it refuses to disclose. Additionally, the agency must determine if any portion of an exempt document contains nonexempt information, and, if so, must disclose that nonexempt portion. <span style="color:red">"In a large document it is vital that the agency specify in detail which portions of the document are disclosable and which are allegedly exempt."</span> *Id*. at 827.

Plaintiff's Surreply to Defendant's Motion for Reconsideration, quoting *Oglesby*, 79 F.3d 1172, 1178 (emphasis added). Undeterred by the law, the Defendants *again* asked the Court to let them withhold hundreds of thousands of documents without a *Vaughn* index. Thus the MSJ was filed in bad faith for the sole purpose of delay.

If the Court orders the Defendants to produce a *Vaughn* index, the Defendant's pattern of bad faith suggests that they will file additional "Mulligan" motions.  The Plaintiff urges the Court to tell the Defendants unequivocally that the contents of the electronic devices must be produced, and any further relief must come from the Court of Appeals.  Likewise, the Defendants' history suggests that they will make excessive withholdings and redactions, *see* Dkt. #92, therefore the Plaintiff urges the Court to appoint a special master at the Defendants' expense to review any withholdings or redactions *in camera* (especially any redactions from the metadata). Finally, the Plaintiff's proposed production schedule (*see* Response to November 28,

2023 Memorandum an Opinion (Dkt. #141)) should be adopted and the rate of production increased to compensate for the Defendants' delays.

## Conclusion

The MSJ should be rejected summarily, the Plaintiff's proposed production schedule should be adopted with an increased rate of production, and a special master should be appointed at the Defendants' expense.

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
212 S. Oxford Street #7D
Brooklyn, New York 11217
(979) 985-5289
(979) 530-9523 (fax)
tyclevenger@yahoo.com

**Counsel for Plaintiff Brian Huddleston**

## Certificate of Service

On March 7, 2024, I filed a copy of this request with the Court's ECF system, which should result in automatic notification via email to Asst. U.S. Attorney James Gillingham, Counsel for the Defendants, at james.gillingham@usdoj.gov.

**/s/ Ty Clevenger**
Ty Clevenger