IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| BRIAN HUDDLESTON,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION and UNITED STATES DEPARTMENT OF JUSTICE,<br><br>Defendants. | CIVIL ACTION No. 4:20CV447<br><br>JUDGE AMOS MAZZANT |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT REGARDING FOIA EXEMPTION 7(A)**

Come now the Defendants Federal Bureau of Investigation ("FBI") and the United States Department of Justice ("DOJ" and, along with the FBI, hereinafter "Defendants") and file this reply in support of the Motion for Summary Judgment Regarding FOIA Exemption 7(A) (the "Motion"), Dkt. 148.

**INTRODUCTION**

Defendants move the Court to hold that Seth Rich's work laptop, the DVD, and tape drive (collectively referred to as the "Work Laptop") and the CD containing an image of Seth Rich's personal laptop (the "Personal Laptop") are exempt from disclosure under Freedom of Information Act (FOIA) Exemption 7(A). *See* Dkt 148 at 1 (citing 5 U.S.C. § 522(b)(7)(A)). In the Response, Plaintiff does not challenge the factual basis for Defendants' motion. Dkt. 154 at 3 ("The Plaintiff need not address the Defendants' factual arguments."). Instead, Plaintiff argues the Motion is frivolous because Defendants are not entitled to categorically withhold information

pursuant to Exemption 7(A). *See* Dkt. 154 at 3–6. Plaintiff also argues the Defendants cannot invoke Exemption 7(A) because the underlying investigation is pretextual or a sham because Plaintiff believes Special Counsel Robert Muller's investigation into Russian interference was a "hoax." *Id.* at 6–7. Plaintiff further argues that producing metadata from the Work Laptop and Personal Laptop cannot threaten any ongoing investigations and therefore Exemption 7(A) should not apply to metadata. *Id.* at 7–10. Finally, Plaintiff accuses Defendants of acting in bad faith and asks the Court to appoint a special master to oversee production of the Work Laptop and Personal Laptop.

Plaintiff is wrong. FOIA permits withholding of documents pursuant to Exemption 7(A) on a categorical basis, which is appropriate in this case where disclosure could threaten an ongoing homicide investigation and an ongoing investigation related to a foreign government's hack of an American political party's computer systems in an effort to influence the 2016 presidential election. Defendants have satisfied their burden to withhold this evidentiary/investigatory material pursuant to Exemption 7(A). The pending law enforcement actions and investigations supporting Defendants' invocation of Exemption 7(A) are not a hoax or pretext. The Court has already found that Defendants properly withheld certain documents based on likely interference with the same proceedings that form the basis of this Motion. Regarding metadata, Plaintiff's speculation about the production of metadata fails to overcome the deference afforded the Defendant's prediction of harm to pending enforcement actions and investigations upon the release of information. Finally, the Defendants have not acted in bad faith and Plaintiff's request to appoint a special master is not appropriate in this motion, let alone in this case.

Defendant's Motion for Summary Judgement should be granted.

# ARGUMENT

I. **Defendants' categorical assertion of FOIA exemption 7(A) with respect to the Work Laptop and Personal Laptop is proper.**

Defendants are withholding the Work Laptop and Personal Laptop because disclosure could be reasonably expected to interfere with investigations into pending criminal national security investigations, including multiple spin-off investigations, Dkt. 148-1 ("Seidel (8th) Decl.") ¶¶ 15–17, and the investigation into the homicide of Seth Rich, Seidel (8th) Decl. ¶¶ 8-11. Plaintiff argues that Defendants cannot categorically withhold information pursuant to Exemption 7(A) and must instead tie every document or theoretical redaction to a particular enforcement proceeding and to a specific harm that could result from that information. *See* Dkt. 154 at 3–6.

Courts, however, do not require the level of specificity Plaintiff demands. As the Supreme Court recognized, the language of Exemption 7(A) "appears to contemplate that certain generic determinations might be made." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978). Therefore, categorical withholding is often appropriate under Exemption 7(A). *Citizens for Resp. and Ethics in Wash. v. U.S, Dep't of Justice* ("CREW"), 746 F.3d 1082, 1098 (D.C. Cir. 2014) (citing *Robbins Tire*, 437 U.S. at 236). If an agency withholds documents on a categorical basis, it must define the categories of documents functionally, conduct a document-by-document review to assign documents to the proper categories, and explain how the release of documents in each category would interfere with enforcement proceedings. *Id.*

Plaintiff's challenge to the first two elements of categorical withholding fails. First, the Defendants have assigned functional categories to the Personal Laptop and Work Laptop. The Eighth Seidel Declaration explains that the Personal Laptop and Work Laptop were collected in

furtherance of the Special Counsel's Office (SCO) investigation and related investigations. Seidel (8th) Decl. ¶ 4. They were collected to document potential crimes and threats to national security. *Id.* Based on this description, it is apparent the Work Laptop and Personal Laptop are properly categorized as "evidentiary/investigatory materials." To remove any doubt, the Ninth Seidel Declaration makes this point explicit. Seidel (9th) Decl., *attached hereto as* Exhibit "1", ¶ 3.

Plaintiff's argument that the Defendants should be required to assign functional categories to each file contained on the Work Laptop and Personal Laptop seeks to impose a burden not required by courts.[1] In the context of Exemption 7(A), document-by-document analysis is not always required and an agency may satisfy its burden with a more generalized showing when publicly revealing more details about the documents could itself jeopardize the investigation or enforcement proceedings. *See Agrama v. IRS*, No. 17-5270, 2019 WL 2067719, at *2 (D.C. Cir. Apr. 19, 2019) (finding IRS's "cursory public disclosures" were sufficient to justify withholding over 15,000 records pursuant to Exemption 7(A) because "'there are occasions when extensive public justification would threaten to reveal the very information for which a FOIA exemption is claimed.'") (quoting *Lykins v. DOJ*, 725 F.2d 1455, 1463 (D.C. Cir. 1984)); *Leopold v. DOJ*, 301 F. Supp.3d 13, 26 (D.D.C. 2018) (finding the FBI's categorical approach permissible because providing a precise description of the records being withheld could reveal non-public information about the investigation, which could reasonably be expected to interfere with it); *Cuban v. S.E.C.*, 744 F. Supp.2d 60, 86 (D.D.C. 2010) (explaining extensive

---

[1] It does not appear that assigning each file a functional category would placate the Plaintiff. Plaintiff appears to require that the Defendants assign functional categories to each portion of every document. *See* Dkt. 154 at 4 (claiming that "[e]ven within a single document it is vital the agency specify in detail which portions of the document are disclosable and which are allegedly exempt.") (internal citations omitted).

specificity is not required under Exemption 7(A) because providing additional detail would undermine the basis for non-disclosure).

Here, Plaintiff's demand that the Defendants assign a functional category to each file on the Personal Laptop and Work Laptop would itself disclose information that could interfere with ongoing enforcement actions and investigations. As set forth in the Eighth Seidel Declaration, prematurely disclosing *any* of the information concerning the investigations, to include the contents of either the Personal Laptop or Work Laptop, reasonably could be expected to interfere with the pending law enforcement matters. Seidel (8th) Decl. ¶¶ 11, 17. A requirement to separately assign a functional category to each file on the Personal Laptop and Work Laptop would require the type of precise description of records that would disclose non-public information and raise the same concerns regarding interference. Seidel (9th) Decl. ¶ 3. Therefore, in this case, treating the Personal Laptop and Work Laptop collectively as evidentiary/investigatory materials satisfies the Defendants burden under Exemption 7(A).

Cases where courts have rejected categorical 7(A) withholding and cited by Plaintiff are readily distinguishable. In *Batton v. Evers*, 598 F.3d 169 (5th Cir. 2010), the Fifth Circuit held that the IRS improperly employed a categorical approach when it withheld documents pursuant to 7(A).[2] In that case, however, the IRS did not prepare a *Vaughn* index and instead the district court relied solely on an affidavit on behalf of the IRS that simply stated that "certain documents" were being withheld pursuant to 7(A). *See id*. at 181–82. Defendants here have, of

---

[2] Notably, in rejecting the categorical withholding in that case, the Fifth Circuit reiterated that "this court has recognized that a categorical approach may be taken to determine whether records are exempt from disclosure in cases that implicate law enforcement records or concerns over an unwarranted invasion of privacy." *Batton*, 598 F.3d at 181 (citing *Cooper Cameron Corp. v. U.S. Dep't of Labor, OSHA*, 280 F.3d 539, 544 & n.11 (5th Cir.2002)); *see also id*. at 182 ("The Supreme Court has held that generic categorical determinations of exemption may be made under Exception 7(A) for witness statements.") (citing *Robbins Tire*).

course, produced a *Vaughn* index running to hundreds of pages and identifying thousands of records. Moreover, the materials Defendants are withholding pursuant to Exemption 7(A) are known to both Plaintiff and the Court. This Court (and Plaintiff) are not left to rely on a conclusory and ambiguous reference to "certain documents."

Similarly, Plaintiff cites *OKC Corp. v. Williams*, 489 F. Supp. 576 (N.D. Tex. 1980) for the proposition that "*Robbins Tire* [does not] create[] a blanket exemption for investigatory files during the pendency of an investigation and any law enforcement proceeding that results therefrom, upon a showing that the investigation and any related proceedings have not been concluded." *Id*. at 585. Defendants do not disagree and do not argue for such an exemption. As discussed, Defendants have prepared a lengthy *Vaughn* index and justified withholding under 7(A) (and other exemptions) in declarations setting forth the nature of the record, the basis for withholding, and the potential interference in pending enforcement proceedings posed by disclosure.

Indeed, *OKC Corp*. actually supports Defendants' position. There, similar to this case, the majority of records the SEC sought to withhold qualified as investigatory records. *OKC Corp.*, 489 F. Supp. at 585. The Court found premature disclosure of those records could risk revealing SEC strategy and provide confidential details of the investigation, thereby enabling a company to contact and harass adverse witnesses and/or otherwise impede the investigation. *Id.* at 586. Given these potential harms, which are similar to harms predicted in the Eighth Seidel Declaration, the court affirmed the SEC's withholding pursuant to Exception 7(A). *Id.* at 586.

The Defendants also satisfy the third element necessary for categorical withholding pursuant to FOIA Exemption 7(A). As the D.C. Circuit explained in *CREW*, courts should defer to an agency's predictive judgment of harm that will result from disclosure of information. *CREW*, 746 F.3d at 1086. In this case, the Seidel Declaration not only predicts interference may

Defendants' Reply in Support of Their Motion for Summary Judgment Regarding FOIA Exemption 7(A)    6

result from disclosure of the Personal Laptop and Work Laptop, it details *how* the disclosure of information could affect the pending interference case, the spin-off investigations, and the investigation into the homicide of Seth Rich. *See* Seidel (8th) Decl. ¶¶ 11, 17–18; *see also* Seidel (9th) Decl. ¶ 3.

## II. The SCO investigation and spin-off investigations are not pretext.

The Russian collusion investigation was not a hoax, sham, or pretextual. Contrary to Plaintiff's argument, the Durham Report is not a "binding admission" that the "whole thing was indeed a hoax." Dkt. 154 at 7. The Executive Summary of the Durham Report speaks to this:

> The public record contains a substantial body of information relating to former President Trump's and the Trump Organization's relationships with Russian businesses, Russian business people, and Russian officials, as well as separate evidence of Russia's attempts to interfere in the 2016 presidential election. These and related subjects are well-documented in the careful examinations undertaken by (i) the Department's Office of the Inspector General of issues related to the FBI's Crossfire Hurricane investigation and its use of Foreign Intelligence Surveillance Act ("FISA") authorities, (ii) former FBI Director Robert Mueller as detailed in his report entitled "Report on the Investigation into Russian Interference in the 2016 Presidential Election," issued in March 2019, and (iii) the Senate Select Committee on Intelligence entitled, "Russian Active Measures Campaigns and Interference in the 2016 US. Election." *The scope of these earlier inquiries, the amount of important information gathered, and the contributions they have made to our understanding of Russian election interference efforts are a tribute to the diligent work and dedication of those charged with the responsibility of conducting them.*[3]

The Durham Report acknowledges its underlying investigation focused on separate, but related questions, primarily focusing on the inception of the FBI's investigation. *Id.* Thus, Plaintiff's argument that the Defendants cannot rely on the enforcement actions and investigations derived from the SCO's investigations because they are "pretextual or a sham" should be rejected. In

---

[3] Report on Matters Related to Intelligence to Intelligence Activities and Investigations Arising Out of the 2016 Presidential Election (May 12, 2023), *available at* https://www.justice.gov/storage/durhamreport.pdf  (emphasis added) (last visited March 13, 2024).

fact, the Court has already found the ongoing proceeding in *United States v. Netysho*, No. 1:18-cr-00215 (D.D.C.) supported application of Exemption 7(A) to documents that accompanied the Work Laptop.[4] *See* Dkt. 136 at 22. The Court should reach the same conclusion regarding the Work Laptop and Personal Laptop and grant Defendants' Motion.

### III. The metadata on the Personal Laptop and Work Laptop should also be protected by Exemption 7(A).

Plaintiff's request for the metadata would defeat the protections provided by Exemption 7(A). Plaintiff's argument that production of metadata would not jeopardize any investigations or prosecutions is purely speculative and should be disregarded. In cases such as this, which involve national security investigations, the Court should defer to the agency's predictive judgment as to the harm that could result from disclosure of information. *See Ctr. For Nat'l Sec. Stud. v. DOJ*, 331 F.3d 918, 928, 32 (D.C. Cir. 2003). The Eighth Seidel Declaration explains that disclosure of information from the Work Laptop and Personal Laptop could harm ongoing enforcement actions and investigations. Plaintiff's disagreement is not sufficient to overcome the deference owed to the agency.

Additionally, disclosure of metadata is inappropriate because disclosure of the metadata could reveal information that Exemption 7(A) protects from disclosure. In this respect, Plaintiff's Response cuts against him. In the Response, Plaintiff contends that the metadata on the laptops should be sufficient to allow a determination as to whether Mr. Rich was involved in leaking the Democratic National Committee emails to Wikileaks. Dkt. 154 at 7. Thus, even Plaintiff recognizes that metadata can provide significant information regarding the underlying files. In essence, Plaintiff is attempting an end run around Exemption 7(A) by claiming not to be seeking documents, while at the same time asking for disclosure of everything about the documents. But

---

[4] This matter remains pending. Seidel (8th) Decl. ¶ 16.

as discussed above, Exemption 7(A) does not require an agency to produce so many details about the underlying documents that the disclosure could itself jeopardize the enforcement action or investigation. That is exactly the threat posed by Plaintiff's request for metadata, which the Court should deny.

Finally, Plaintiff's argument that *Brady v. Maryland* may ultimately require production of evidence including metadata and therefore Defendants should have to produce it now is not supported by the case law. Quite the opposite—courts have explained Exemption 7(A) applies even where the discovery process may allow access to certain records. *See Robbins Tire*, 437 U.S. at 271 & n.21; *Radcliffe v. IRS*, 436 F.Supp.2d 423, 438 (S.D.N.Y. 2008); *Warren v. United States*, No. 1:99CV137, 2000 WL 1868950, *6 (N.D. Ohio Oct. 31, 2000) (explaining that although plaintiffs may have been entitled to release of all documents at issue in the FOIA proceeding through the criminal process if they were indicted, that does not prohibit reliance on Exemption 7).

**IV.     The Defendants have not acted in bad faith.**

Plaintiff's final argument alleges the Defendants filed the Motion solely for purposes of delay and are thus acting in bad faith, claiming the evidence of "bad faith is now overwhelming." Dkt. 154 at 10. Again, Plaintiff is incorrect. As Defendants have explained in other filings, the Court's September 29, 2022, Memorandum Opinion & Order resolved the majority of issues in this case in Defendants' favor, finding the searches were adequate, and that the withholdings and redactions were overwhelmingly appropriate in accordance with FOIA's exemptions. *See generally* Dkt. 70. The only remaining issues relate to the Personal Laptop and Work Laptop. As explained in Defendants' Motion and the Reply, Exemption 7(A) applies to both the Work Laptop and the Personal Laptop because they relate to ongoing criminal investigations of the most serious nature. The fact that Plaintiff may disagree with the Defendants' argument and

considers one of the underlying criminal investigations—which the Court has already found sufficient to justify Exemption 7(A)— a "hoax," does not mean the Defendants are acting in bad faith. To the contrary, the Defendants' invocation of Exemption 7(A) is supported by the law and facts and the Court should grant Defendants' Motion.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment should be granted.

Respectfully submitted,

DAMIEN M. DIGGS
UNITED STATES ATTORNEY

*/s/ James Gillingham*
JAMES GARLAND GILLINGHAM
Texas State Bar No. 24065295
james.gillingham@usdoj.gov
110 N. College, Suite 700
Tyler, TX  75702
(903) 590-1400
Fax: (903) 590-1436

**COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

      I hereby certify that on March 14, 2024, a true and correct copy of the foregoing document was filed electronically with the court and has been sent to counsel of record via the court's electronic filing system.

                                          */s/ James Gillingham*
                                          JAMES GILLINGHAM
                                          Assistant United States Attorney