IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| BRIAN HUDDLESTON,<br><br>  Plaintiff,<br><br>vs.<br><br>FEDERAL BUREAU OF INVESTIGATION and UNITED STATES DEPARTMENT OF JUSTICE<br><br>  Defendant | Case No. 4:20-cv-447-ALM |

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING FOIA EXEMPTION 7(a)**

NOW COMES Brian Huddleston, the Plaintiff, sur-replying in opposition to Defendants' Motion for Summary Judgment Regarding FOIA Exemption 7(a) (hereinafter "MSJ") (Dkt. #148):

## Introduction

It's hard to know where to begin, so the Plaintiff will begin with the most absurd. Time and again, the Plaintiff has flagged a fatal flaw in the Defendants' argument: the Defendants seek to withhold the contents of Seth Rich's personal laptop and work laptop on the grounds that the contents "may" interfere with law enforcement proceedings, MSJ 1-2, but they will not say whether or not they have actually examined the contents of the laptops. In other words, they want to assert exemptions with respect to documents that they have never examined. The Defendants previously indicated that they had never examined the contents of Mr. Rich's laptops, *see* Fourth

- 1 -

Declaration of Michael G. Seidel (Dkt. #37-1) ¶137 (personal laptop),[1] and Sixth Declaration of Michael G. Seidel (Dkt. #83-1) ¶13(c) (work laptop), and the Plaintiff made this point *again* in his March 7, 2024 response to the MSJ. *See* Dkt. #154 at 8-9. One might have hoped that FBI section chief Michael G. Seidel would finally clear this up in his *tenth* sworn declaration filed on March 14, 2024, but no such luck.[2] Mr. Seidel obviously could have addressed whether the FBI examined the laptops, just like he could have explained why it did or did not examine them.[3] But he did not address the issue, and that leads to an unavoidable inference: the Defendants want to assert exemptions for vast numbers of documents that they have never examined, all based on the hypothetical that they "may" interfere with enforcement proceedings. *See F.D.I.C. v. Fidelity & Deposit Co. of Maryland*, 45 F.3d 969, 977 (5th Cir.1995) (Notwithstanding Fifth Amendment, court may draw "adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them"); *see also Mason v. Geithner*, 811 F. Supp. 2d 128, 192 (D.D.C. 2011), *aff'd*, 492 Fed. Appx. 122 (D.C. Cir. 2012) (outside of Fifth Amendment setting, adverse inference drawn where party failed to respond to evidence). The Defendants do not cite a single case – not one – that would support their request to withhold hundreds of thousands of documents that they have never examined.

---

[1] *See also* Defendant FBI's Motion for Clarification or, in the Alternative, Reconsideration of the Memorandum Opinion and Order entered September 29, 2022 (Dkt. #73) 1:
> The FBI did not open an investigation into the murder of Seth Rich, nor did it provide investigative or technical assistance to any investigation into the murder of Seth Rich. *As a result, the FBI has never extracted the data from the compact disc and never processed the information contained on the disc* [emphasis added].

[2] Two of Mr. Seidel's declarations are labeled as "eighth" declarations, see Dkt. #s 95-5 and 148-1, thus the "ninth" one is actually then tenth one.

[3] The Plaintiff is unsure why Mr. Seidel bothered submitting his latest declaration, because it reveals nothing new and it is completely conclusory.

**Argument**

1. **The Defendants may not assert wholesale exemptions solely because documents were found on a particular device or at a particular location.**

   The Defendants' Reply relies in significant part on *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice* ("*CREW*"), 746 F.3d 1082 (D.C. Cir. 2014). The Defendants must have hoped that nobody would read the case, because the *CREW* court rejected the type of shotgun withholding that the Defendants seek here:

   > Categorical withholding is often appropriate under Exemption 7(A). *Robbins Tire,* 437 U.S. at 236, 98 S.Ct. 2311 ("Congress did not intend to prevent the federal courts from determining that, with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally 'interfere with enforcement proceedings.'"). In such a case, an agency may satisfy its burden of proof "by grouping documents in categories and offering generic reasons for withholding the documents in each category." *Maydak,* 218 F.3d at 765. We have held, however, that
   >
   > > if it wishes to adopt the generic approach, [an agency] has a three-fold task. First, it must define its categories functionally. Second, it must conduct a document-by-document review in order to assign documents to the proper category. Finally, it must explain to the court how the release of each category would interfere with enforcement proceedings.
   >
   > *Bevis,* 801 F.2d at 1389–90. As to the third task, although we give deference to an agency's predictive judgment of the harm that will result from disclosure of information, *see Ctr. for Nat'l Sec. Studies v. Dep't of Justice,* 331 F.3d 918, 927–28 (D.C.Cir.2003), it is not sufficient for the agency to simply assert that disclosure will interfere with enforcement proceedings; "it must rather demonstrate *how* disclosure" will do so. *Sussman,* 494 F.3d at 1114; *see Campbell v. Dep't of Health & Human Servs.,* 682 F.2d 256, 265 (D.C.Cir.1982). The DOJ has made no such demonstration here.

   *CREW*, 746 at 1098 (emphasis added). Absurdly, the Defendants suggest that they have met their burden under the first prong, *i.e.*, defining categories functionally, because they have assigned the category "evidentiary / investigatory" materials to unknown quantities of documents *that they have never examined*. That's akin to the FBI seizing a warehouse full of file cabinets and never examining the files, then insisting that everything is off limits because everything in the

warehouse is "evidentiary / investigatory" material. The Defendants have not identified a single case that would support such shotgun categorization, and indeed there are no such cases. In *N.L.R.B. v. Robbins Tire & Rubber Co.*, for example, the category under consideration was witness statements. 437 U.S. 214, 98 S. Ct. 2311, 57 L. Ed. 2d 159 (1978). Similarly, in *Frank LLP v. Consumer Fin. Prot. Bureau*, the category was transcripts of witness interviews. 480 F. Supp. 3d 87, 99 (D.D.C. 2020). In neither case was the government allowed to assign a "functional category" solely on the basis that documents were found on a particular device or at a particular location.

    The second prong from *CREW*, *i.e.*, that the government must "conduct a document-by-document review in order to assign documents to the proper category" is obviously the most problematic for the Defendants, because the Defendants have not examined the documents at all, much less assigned them to a *functional* category. The Defendants even admit that they have not assigned the documents to a functional category because, they claim, "[a] requirement to separately assign a functional category to each file on the Personal Laptop and Work Laptop would require the type of precise description of records that would disclose non-public information and raise the same concerns regarding interference." Reply 5. For this premise, the Defendants cite Paragraph 3 of Mr. Seidel's tenth declaration, but that paragraph is completely conclusory. In fact, the whole declaration is conclusory, and it consists of precisely the sort of generic statements that have been rejected consistently by other courts. "Categorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate." *King v. U.S. Dep't of Just.*, 830 F.2d 210, 224 (D.C. Cir. 1987). And consider the money quote Paragraph 3 of Mr. Seidel's declaration: "To describe this physical evidence more fully, including the contents of the Personal Laptop and the Work

Laptop, could reveal information that Exemption 7(A) protects from disclosure." Dkt. #156-1. (emphasis added). That's not just equivocal, it's more evidence that the Defendants *still* have not examined the laptop contents.

The Defendants also fail to satisfy the third prong in *CREW*, namely because they have not demonstrated *how* disclosure "will interfere with enforcement proceedings." All the Defendants can offer are conclusory declarations from Mr. Seidel that *something* on the yet-unexamined laptops "may," "might," or "could" interfere with enforcement proceedings. That is grossly inadequate.

> "'[A]lthough [courts] give deference to an agency's predictive judgment of the harm that will result from disclosure of information, it is not sufficient for the agency to simply assert that disclosure will interfere with enforcement proceedings; it must rather demonstrate how disclosure will do so.' " *Stein*, 266 F.Supp.3d at 344 (quoting *Citizens for Responsibility & Ethics in Wash. v. U.S. Dept. of Justice* ("*CREW I*"), 746 F.3d 1082, 1096 (D.C. Cir. 2014)) (emphasis in *CREW I*). "Ultimately, the government must 'allow[ ] the court to trace a rational link between the nature of the document and the alleged likely interference.' " *N.Y. Times Co.*, 2016 WL 5946711, at *7 (quoting *Ctr. for Nat'l Sec. Studies v. U.S. Dept. of Justice*, 331 F.3d 918, 940 (D.C. Cir. 2003)).

*Radar Online LLC v. Federal Bureau of Investigation* 2023 WL 6122691, at *5 (S.D.N.Y., Sept. 19, 2023, No. 17 CIV. 3956 (PGG)). "Without more 'specific information about the impact of the disclosures,' we 'cannot determine that, as a matter of law, disclosure could reasonably be expected to interfere with enforcement proceedings.'" *CREW*, 746 at 1099, quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1114 (D.C.Cir.2007). To this day, the Defendants have not "trace[d] a rational link between the nature of the document and the alleged likely inference." *Radar Online,* 2023 WL 6122691, at *5.

The Defendants' attempts to distinguish *Batton v. Evers*, 598 F.3d 169 (5th Cir. 2010) and *OKC Corp. v. Williams*, 489 F. Supp. 576 (N.D. Tex.), aff'd, 614 F.2d 58 (5th Cir. 1980) are not just misguided, but desperate. The argue that they "produced a *Vaughn* index running to

hundreds of pages and identifying thousands of records." That is truly disingenuous, because only a small portion of responsive records in this case are covered by the *Vaughn* index. The Defendants did not index any documents from the electronic devices, and recall that they did not even acknowledge the contents of the work laptop because, they claimed, "derivative evidence" is not covered by the Freedom of Information Act. *See* Reply in Support of Plaintiff's Motion for Clarification (Dkt. #92) 5-11 (citing the record) and Sixth Declaration of Michael G. Seidel (Dkt. #83-1) ¶¶12-14. Returning to the example of the warehouse full of file cabinets, it is as if the Defendants produced a *Vaughn* index for a relative smattering of documents found outside the warehouse, then refused to index any of the hundreds of thousands of documents that were found inside the warehouse.[4] The Defendants have cited no case that would support their argument, and that is because there is no such case.

**2. The "Russian collusion" investigation was tainted by fraud and bad faith.**

In response to the overwhelming evidence in the Durham Report (Dkt. 133-1) that the "Russian collusion" investigation was riddled with bad faith and improprieties, the Defendants rely on a *single sentence* from that report. *See* Defendants' Reply 7. The Plaintiff encourages the Court to read the report in its entirety, and he would particularly direct the Court's attention to pages 85, 87, 95, 97, 104 and 304-305. The Defendants resist the idea that the Durham Report is a binding admission, but a report from the Department of Justice is most certainly binding on the department and its subsidiary, the FBI. "The courts have… stated on more than one occasion that reports or writings published by a governmental agency constitute admissions of the government

---

[4] An average of 100,199 emails and 64,782 pages of Microsoft Word documents can be stored on a single gigabyte. *See* LexisNexis, "How Many Pages in a Gigabyte?" https://www.lexisnexis.com/applieddiscovery/lawlibrary/whitepapers/adi_fs_pagesinagigabyte.pdf (Exhibit 1). If so, then fifteen gigabytes among the various devices that belonged to Mr. Rich equates to more than a million pages of unreviewed documents.

under Fed.R.Evid. 801(d)(2)(D)." *Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, 262 F. Supp. 2d 251, 261 (S.D.N.Y. 2003), citing *U.S. v. Van Griffin*, 874 F.2d 634, 638 (9th Cir. 1989); *see also Harper v. United States Dep't of the Interior*, No. 1:21-CV-00197-CRK, 2021 WL 5281589, at *6 (D. Idaho Nov. 12, 2021)(public document admissible under Fed. R. Evid 201(b); 801(d); 801(c)(2)(A)–(D); and 901(b)(1) and (7)); *see also Mezerhane de Schnapp v. United States Citizenship & Immigration Services*, 67 F. Supp. 3d 95, 107–08 (D.D.C. 2014)(out-of-court statements by government employees acting within the scope of their employment were not hearsay and were admissible at summary judgment stage of FOIA case).

Notably, the Plaintiff did not rely solely on the Durham Report as evidence that the "Russian collusion" investigation was conducted in bad faith. The *Netkytsho* indictments (*see* Dkt. #154-4) rest on the premise that Russians were responsible for "hacking" the Democratic National Committee in 2016, but recall that the FBI has never examined the email servers that purportedly were hacked. *See* Dkt. #105 at 406 (citing the record). And the private firm that actually examined the DNC servers conceded that it had no "concrete evidence" that the servers were hacked. *See* Dkt. #s 92-4 and 92-5 at p. 32; *see also* Dkt. #92-5 at pp. 63-64 and 74-75. Furthermore, the Plaintiff has previously pointed to the sham prosecution of Concord Management, a co-defendant of the *Netkytsho* defendants. *See, e.g.,* Dkt. #105 at 7-8 (citing the record) and Dkt. #154 at 7. After Concord Management showed up in Court and called the government's bluff, the government quickly dismissed the case because it had no case. *Id*. The Defendants have yet to respond to that issue, and it is damning for them. If the prosecution of one co-defendant was a sham, then it raises the strong inference that the remaining prosecutions are a sham. Finally, the Department of Justice's own inspector general found evidence of bad

faith in the "Russian collusion" investigation. *See* December 2019 "Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation" (https://s3.documentcloud.org/documents/6571581/IG-Report-Exec-Summary.pdf) (executive summary found at Dkt. #105-19). Like the Durham Report, the inspector general report is a binding admission of the Defendants' bad faith. *Penguin Books*, 262 F. Supp. 2d at 261.

### III. Metadata from Seth Rich's laptops should be disclosed.

Like everything else on the laptops, the Defendants want to withhold metadata (that they have never examined) on the basis of speculation about what it *might* contain.[5] Having failed to "trace a rational link between the nature of the document and the alleged likely inference," *Radar Online,* 2023 WL 6122691, at *5, the Defendants suggest the Plaintiff has made the argument for them:

> In the Response, Plaintiff contends that the metadata on the laptops should be sufficient to allow a determination as to whether Mr. Rich was involved in leaking the Democratic National Committee emails to Wikileaks. Dkt. 154 at 7. Thus, even Plaintiff recognizes that metadata can provide significant information regarding the underlying files.

That's too clever by half, largely because of Mr. Seidel's recent testimony that Mr. Rich died in a "botched robbery." *See* Eighth [Ninth] Declaration of Michael G. Seidel (Dkt. #148-1) ¶7.[6] The Plaintiff offered testimony from retired homicide detective Frank Whalen indicating that the metadata would be relevant to the murder investigation only if the murder was *premeditated*. *See* Declaration of Frank Whalen (Dkt. #154-1) ¶3. The Defendants completely ignored that issue, and the evidence is now uncontroverted. This raises a difficult question for Mr. Seidel: If the

---

[5] The Defendants make a passing reference to national security considerations, but Exemption 7(a) does not deal with national security exemptions. In any event, that issue was briefed previously and the Defendants lost the argument.

[6] The government has peddled the "botched robbery" narrative for years, but so far as the Plaintiff is aware, Mr. Seidel's ninth declaration is the first time that a government official has attested to it under oath.

metadata might reveal evidence of a premeditated murder, and the Defendants want to withhold it on that basis, then why did Mr. Seidel tell this Court that Mr. Rich died in a "botched robbery"? Was he trying to mislead the Court? He cannot have it both ways. The Plaintiff further explained that evidence of Mr. Rich's involvement in the DNC email leaks would, at most, reveal a potential *motive* for murder, but that potential motive has been publicly discussed for more than seven years. *See* Dkt. #154 at 6 and 9. The Defendants' Reply ignored that point, and that is fatal. The Defendants are obligated to provide the Court with a *specific* explanation of *how* the release of such information would harm the investigation / prosecution. *Radar Online*, 2023 WL 6122691, at *5. The Defendants offer only one argument, namely that their Exemption 7(A) proclamations are entitle to deference, but that only gets them so far:

> In cases pertaining to Exemption (7)(A), detailed affidavits from responsible investigators usually suffice. *Dickerson* [*v. Department of Justice*, 992 F.2d 1426, 1431 (6th Cir.1993)]. Such affidavits enjoy a presumption of good faith. *Jones v. F.B.I.,* 41 F.3d 238, 242 (6th Cir.1994). Notwithstanding, the presumption of good faith articulated in *Jones* may be overcome when there is evidence of bad faith or illegality with respect to either the handling of the FOIA request or the underlying activities of the agency at issue. *Id.* When there is a showing of bad faith, affidavits are not enough. *Id.* at 242–243. Thus, although the affidavits in *Jones* were the type that court's generally rely upon, *in camera* review was necessary because the plaintiff's request involved activities that, if disclosed, would embarrass the FBI and the effect of the disclosure or exemption was of strong public interest. *Id.* at 243. "In certain circumstances the court *must* play a more active role because no other party or institution is available to ensure that the agency's assertions are reliable." *Id.,* (emphasis in original).

*Detroit Free Press v. U.S. Dep't of Just.*, 174 F. Supp. 2d 597, 600 (E.D. Mich. 2001)(emphasis added). Mr. Seidel's declarations are not "detailed" at all. The Plaintiff already has discussed some of the uncontroverted evidence of the Defendants' bad faith and illegal behavior, both in "the handling of the FOIA request [and] the underlying activities of the agency at issue," and he will discuss more evidence below. Furthermore, it obviously would "embarrass the FBI" if it were forced to reveal that it has been hiding evidence that debunks the whole "botched robbery"

narrative. Similarly, it would "embarrass the FBI" if it were forced to reveal that it has been hiding evidence that debunks not only the *Netkytsho* prosecutions, but the entire "Russian collusion" narrative. Finally, these are matters of "strong public interest." *See, e.g.,* Aliss Higham, Seth Rich's Laptop to Be Turned Over by FBI, Judge Rules," November 29, 2023 *Newsweek*, https://www.newsweek.com/sethrich-laptop-turned-over-fbi-judge-rules-1847947 (Dkt. #141-2). This case presents one of those "certain circumstances [where] the court *must* play a more active role because no other party or institution is available to ensure that the agency's assertions are reliable," *Detroit Free Press*, 174 F. Supp. 2d at 600 (emphasis in original), hence the Court should appoint a special master or review the documents for itself.

      The Plaintiff previously argued that any exculpatory evidence on the laptops would have to be produced pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), therefore the investigation / prosecution would not be harmed by the release of the exculpatory evidence. The Defendants responded with three cases, none of which are on point. *Robbins Tire*, *Radcliffe v. IRS*, 436 F.Supp.2d 423, 438 (S.D.N.Y. 2008) and *Warren v. United States*, No. 1:99CV137, 2000 WL 1868950, *6 (N.D. Ohio Oct. 31, 2000) dealt with FOIA requests from criminal defendants who wanted to see witness statements compiled by government investigators. The Plaintiff is not seeking witness statements or anything similar. He is seeking metadata to determine whether a deceased person played a role in leaking DNC emails to Wikileaks. If the metadata reveals that Mr. Rich played such a role, then that may or may not exonerate the *Netkytsho* defendants. If it does exonerate them, then it would only show that the *Netkytsho* prosecutions were a sham, just like the Concord Management prosecution was a sham. That may be embarrassing for the Defendants, but it's not a legitimate reason to withhold the documents. *Detroit Free Press*, 174 F. Supp. 2d at 600.

### III. The Defendants acted in bad faith.

The Defendants overlook what is perhaps the strongest evidence of their bad faith: their relentless, over-the-top claims about the potential ramifications of releasing documents that they have never bothered to examine. How can they say with a straight face that a murder case or "hacking" case will be compromised if they don't know what is in the documents or the metadata?  Furthermore, the premise for the MSJ is evidence of bad faith. The MSJ is, in reality, a second motion for reconsideration. The Defendants claimed the untimely motion was warranted because they had *just* learned that the Seth Rich murder investigation was still open, but the Plaintiff presented clear evidence of the obvious: murder investigations remain open until the case is solved. *See* Dkt. #153-1 and 154-1. The Defendants did not respond and the evidence is now uncontroverted, thus the entire premise for the Defendants' untimely motion has collapsed.

In response to the evidence that the Defendants have acted in bad faith, they offer only this defense:

> …the Court's September 29, 2022, Memorandum Opinion & Order resolved the majority of issues in this case in Defendants' favor, finding the searches were adequate, and that the withholdings and redactions were overwhelmingly appropriate in accordance with FOIA's exemptions. *See generally* Dkt. 70. The only remaining issues relate to the Personal Laptop and Work Laptop.

The last sentence is obviously false. Less than three months ago, the court clarified that numerous issues remain outstanding. *Compare* January 19, 2024 Order (Dkt. #244) with Dkt. #s 105, 112, and 142.  Furthermore, a lot more evidence of bad faith has surfaced since September 29, 2022. Among other things, the Durham Report was released, the FBI was caught red-handed trying to conceal records related to CrowdStrike, Inc., *see* Dkt. #105, the FBI concocted a legally-frivolous argument to hide the contents of the work laptop, *see* Dkt. #92, and the FBI

arbitrarily refused to search multiple locations likely to contain responsive records. *See* Dkt. #112.

## Conclusion

The Defendants failed to address most of the issues raised in the Plaintiff's Response. The premise for the MSJ was false, thus it was filed in bad faith. The MSJ should be rejected, production should begin immediately, and any withholdings or redactions should be reviewed by a special master or by the Court itself.

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
212 S. Oxford Street #7D
Brooklyn, New York 11217
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Counsel for Plaintiff Brian Huddleston**

## Certificate of Service

On April 4, 2024, I filed a copy of this request with the Court's ECF system, which should result in automatic notification via email to Asst. U.S. Attorney James Gillingham, Counsel for the Defendants, at james.gillingham@usdoj.gov.

**/s/ Ty Clevenger**
Ty Clevenger