# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| BRIAN HUDDLESTON, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:20-cv-447 |
| FEDERAL BUREAU OF INVESTIGATION | § | Judge Mazzant |
| and UNITED STATES DEPARTMENT OF | § | |
| JUSTICE, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Corrected Motion for Summary Judgment (Dkt. #112). Having considered the motion and the relevant pleadings, the Court finds that Plaintiff's Corrected Motion for Summary Judgment should be **DENIED**.

## BACKGROUND

This Memorandum Opinion and Order arises in the context of Freedom of Information Act litigation between Plaintiff Brian Huddleston and Defendants Federal Bureau of Investigation (the "FBI") and the United States Department of Justice (the "DOJ"). The Court will not belabor the case's background here because it has already been discussed in detail in the Court's Memorandum Opinion and Order from September 29, 2022 (the "2022 Order") (Dkt. #70) and the Court's Memorandum Opinion and Order from November 28, 2023 (the "2023 Order") (Dkt. #107).

On September 29, 2022, the Court entered the 2022 Order finding that "the FBI conducted a legally adequate search using 'methods which can be reasonably expected to produce the information requested' in Huddleston's FOIA requests" (Dkt. #70 at p. 26).

On April 8, 2023, Huddleston filed the present motion for (partial) summary judgment (Dkt. #112). This motion requests for the Court to allow Huddleston to conduct discovery and order the FBI to conduct additional searches for records from additional sources and additional categories of records (Dkt. #112). On May 1, 2023, the FBI filed its response (Dkt. #118). On August 25, 2023, Huddleston filed his reply (Dkt. #133). On September 1, 2023, the FBI filed its sur-reply (Dkt. #135).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence."

## ANALYSIS

The Court addresses Huddleston's motion in four sections. First, the Court considers whether Huddleston's frequent usage of news articles as summary judgment evidence is appropriate. Second, the Court considers whether Huddleston may challenge the adequacy of the

FBI's search by engaging in mere speculation that not yet uncovered documents may exist. Third, the Court considers whether Huddleston may challenge the adequacy of the FBI's search on the grounds that other documents possibly responsive to his request may exist. Fourth, the Court considers whether discovery is appropriate in this case.

As an initial matter, the Court will not address Huddleston's argument that the Court should compel the FBI to search its digital evidence files, specifically Seth Rich's laptop(s). Both the FBI and Huddleston agree that this issue has already been fully briefed in different motions (Dkt. #118 at pp. 2–3; Dkt. #133 at p. 4). The Court already ruled on this issue in the 2023 Order (Dkt. #107).

Additionally, the Court does not address the FBI's argument that Huddleston has attempted to amend his FOIA request via emails to the FBI's counsel during FOIA litigation (Dkt. #118 at pp. 3, 5, 7, 11).[1] In each instance where the FBI makes such an argument regarding Huddleston's summary judgment arguments, the Court resolves Huddleston's arguments on different grounds.

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999). The agency bears the burden of demonstrating that its search was reasonably calculated to uncover all relevant documents. *Highland Cap. Mgmt., LP v. I.R.S.*, 408 F. Supp. 3d 789, 801 (N.D. Tex. 2019); *Gahagan v. U.S. Citizenship & Immigr. Servs.*, 147 F. Supp. 3d 613, 620 (E.D. La. 2015). If the record "leaves

---

[1] "A requester may not expand the scope of his FOIA request(s) during litigation." *Amiri v. Nat'l Sci. Found.*, 664 F. Supp. 3d 1, 24 (D.D.C. 2021).

substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Valencia-Lucena*, 180 F.3d at 32.

The fact that an agency failed to locate a large volume of records does not, by itself, compel a finding that the agency's search was inadequate. *See Batton v. Evers*, 598 F.3d 169, 176 (5th Cir. 2010) (explaining that while a claimant may assert that other documents exist that were not located in the agency's search, a court "must decide only whether the search was adequate"); *Negley v. F.B.I.*, 589 F. App'x 726, 731 (5th Cir. 2014) (finding claimant's allegation that agency's search failed to locate potentially 500,000 documents did not alone demonstrate inadequacy). That is, unless the claimant can demonstrate that the agency failed to follow up on a clear lead identifying a particular type of record or location where responsive documents may be located. *Negley*, 589 F. App'x at 731 (citing *Campbell v. D.O.J.*, 164 F.3d 20, 27, 28 (D.C. Cir. 1998)).

Further, "[m]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.D.C. 1991).

## I.     Whether News Articles Constitute Admissible Summary Judgment Evidence

Huddleston supports several of his arguments with news articles as summary judgement evidence (Dkt. #112 at pp. 3, 5; Dkt. #133 at pp. 8–9, 11–12). Huddleston's usage of news articles as summary judgment evidence is not appropriate because the articles constitute inadmissible hearsay.

The FBI repeatedly objects to Huddleston's usage of news articles as improper summary judgment evidence (Dkt. #118 at pp. 3–6, 10; Dkt. #135 at p. 1). Specifically, the FBI claims that these articles are "(1) inadmissible hearsay; (2) not capable of being properly authenticated by a

person with personal knowledge; (3) contain conclusions and speculations that are not proper summary judgment evidence; and/or (4) are otherwise irrelevant, unreliable and untrustworthy" (Dkt. #118 at pp. 3–6, 10).

In response, Huddleston claims that "FOIA cases are unique . . . and a FOIA plaintiff may rely on newspaper articles to establish facts relevant to a motion for summary judgment" (Dkt. #133 at p. 2). Huddleston cites to various cases to support this proposition (Dkt. #133 at pp. 2–3).

Huddleston's news articles are inadmissible hearsay as statements "the declarant[s] do[] not make while testifying at the current trial or hearing" and that are "offer[ed] in[to] evidence to prove the truth of the matter asserted in the statement." FED. R. EVID. 801(c); *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005) ("The plaintiffs provide only newspaper articles— classic, inadmissible hearsay."). A FOIA plaintiff cannot rely on inadmissible evidence to establish facts relevant to a motion for summary judgment. The only authority Huddleston cites that supports his argument is a dissent in an opinion that is not binding on the Court. *Ctr. for Nat'l Sec. Stud. v. U.S. Dep't of Just.*, 331 F.3d 918, 947 (D.C. Cir. 2003) (Tatel, J., dissenting). However, the Court is bound by the Federal Rules of Evidence.

## II.   Whether Huddleston May Challenge the Adequacy of the FBI's Search by Engaging in Mere Speculation that not yet Uncovered Documents May Exist

Huddleston makes six arguments challenging the FBI's search as inadequate by engaging in mere speculation that as of yet uncovered records may exist. First, Huddleston asserts that the Court should compel the FBI to search its Lync messaging system for responsive records. Second, Huddleston asserts that the Court should compel the FBI to search a system called Teleporter for responsive records. Third, Huddleston asserts that the Court should compel the FBI to search its

electronic surveillance and geolocation data. Fourth, Huddleston asserts that the Court should compel the FBI to search for records related to activities of the Central Intelligence Agency (the "CIA") and other agencies or third parties. Fifth, Huddleston asserts that the Court should compel the FBI to search for records related to confidential informants or online personas. Sixth, Huddleston asserts that the Court should compel the FBI to search for all reports concerning the 2016 hack of Democratic National Committee emails. Such speculation is insufficient to challenge the FBI's search as inadequate. *SafeCard Servs., Inc.*, 926 F.2d at 1201.

### A. Whether the Court Should Compel the FBI to Search its Lync Messaging System for Responsive Records

Huddleston argues that the Court should compel the FBI to search its Lync messaging system for responsive records.[2] According to Huddleston, Lync is an internal messaging system that the FBI uses (Dkt. #112 at p. 2). Huddleston notes that the FBI may possess additional records within its Lync messaging system responsive to his FOIA request (Dkt. #112 at pp. 2–3). He claims that FBI agents may have used Lync to communicate freely and honestly, under the belief that messages sent on Lync would be private (Dkt. #133 at pp. 4–6). However, Huddleston is unsure whether Lync messages would have been included in the FBI's search for records (Dkt. #112 at p. 4).

The FBI claims that if a Lync message meets the definition of a record, it must be entered into Sentinel, a database the FBI already searched for potentially responsive records (Dkt. #118 at pp. 4–5). Further, the FBI claims that Huddleston has only presented general speculation, not

---

[2] Huddleston's counsel sent two emails to the FBI requesting clarification on whether Lync was searched for responsive records (Dkt. #112-1). The FBI did not respond to either email.

specific facts, suggesting that the FBI's Lync messaging system may contain additional responsive records (Dkt. #118 at p. 5).

The Court has already found that the FBI conducted a legally adequate search (Dkt. #70 at p. 26). Huddleston has presented only mere speculation, not specific facts, to support his argument. "Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard Servs., Inc.*, 926 F.2d at 1201. For these reasons, Huddleston is not entitled to judgment as a matter of law.

### B.  Whether the Court Should Compel the FBI to Search a Teleporter for Responsive Records

Huddleston argues that the Court should compel the FBI to search Teleporter for responsive records.[3] According to Huddleston, Teleporter is a direct communication link between the FBI and Twitter (Dkt. #112 at p. 5). Huddleston claims that "[i]f FBI agents were using Teleporter to send censorship requests to social media companies like Twitter, then those agents were perpetrating felonies" (Dkt. #112 at p. 5). Further, Huddleston claims that "[i]t is a near certainty that those agents would not index their own crimes into the FBI's Central Records System, where those crimes could then be discovered by FOIA requesters" (Dkt. #112 at p. 5). Huddleston directs the Court to *Missouri v. Biden* to support his argument that the FBI likely used Teleporter for improper means in this case (Dkt. #133 at p. 7) (citing 680 F. Supp. 3d. 630, 701–02 (W.D. La. 2023), *rev'd on other grounds*, 83 F.4th 350 (5th Cir. 2023), *rev'd on other grounds sub nom. Murthy v. Mo.*, 144 S. Ct. 1972 (2024)).

---

[3] Huddleston sent the FBI an email requesting clarification on whether Teleporter was searched for responsive records (Dkt. #112-7). The FBI did not respond to this email.

The FBI claims that Teleporter is a system used to facilitate the transfer of data, not a system of records (Dkt. #118 at p. 6). Further, the FBI argues that Huddleston has only offered general speculation in support of his argument (Dkt. #118 at p. 6).

Ignoring the subsequent history of *Missouri v. Biden*, the case does not support Huddleston's argument. In *Missouri v. Biden*, the court found that the plaintiffs were "likely to succeed on their claim that the FBI exercised 'significant encouragement' over social-media platforms such that the choices of the companies must be deemed to be that of the Government." 680 F. Supp. 3d at 702. However, *Missouri v. Biden* does not indicate or otherwise suggest that the FBI's search was not reasonably calculated to uncover all relevant documents. *See generally id.*

The Court has already found that the FBI conducted a legally adequate search (Dkt. #70 at p. 26). Huddleston has presented only mere speculation, not specific facts, to support his argument. "Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard Servs., Inc.*, 926 F.2d at 120. Therefore, summary judgment is inappropriate because Huddleston is not entitled to judgment as a matter of law.

### C. Whether the Court Should Compel the FBI to Search Its Electronic Surveillance Indices and Geolocation Data

Huddleston argues that the Court should compel the FBI to search for responsive records in its electronic surveillance indices and geolocation data.[4] Huddleston claims that "[he] know[s] for certain that [electronic surveillance indices are] not included in the FBI's search indexes" (Dkt. #112 at p. 6) (citing Dkt. #84-3 at p. 49). Further, Huddleston claims that electronic

---

[4] Huddleston sent the FBI an email requesting clarification on whether geolocation data was searched for responsive records (Dkt. #133-4). The FBI did not respond to this email.

surveillance and geolocation data are two different things (Dkt. #133 at p. 9). Additionally, Huddleston asserts that the FBI has withheld records about CrowdStrike and Seth Rich's work laptop, rendering the FBI's search of electronic surveillance indices insufficient (Dkt. #133 at pp. 9–10).

In response, the FBI argues that it has searched its electronic surveillance indices and provided an explanation relating to that search in a prior declaration (Dkt. #118 at pp. 5–6) (citing Dkt. #39-1 ¶¶ 57–59, 63). Further, the FBI claims that Huddleston should not receive another opportunity to challenge the adequacy of the FBI's search after he did not specifically address electronic surveillance his initial challenge (Dkt. #118 at p. 7).

Huddleston has provided no specific facts to support his claim regarding geolocation data. Such speculation is insufficient to challenge the adequacy of the FBI's search. "Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard Servs., Inc.*, 926 F.2d at 120.

The Court disagrees with Huddleston's argument that the FBI's search of electronic surveillance data was inadequate because it did not uncover certain documents. "There is no requirement that an agency search every record system." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Rather, "[w]hen a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA request, the key question is whether the search was *reasonably calculated* to discover the requested documents, and not whether every document in existence was found by the search." *Cui v. FBI*, 551 F. Supp. 3d 4, 18 (E.D.N.Y. 2021) (internal quotations and citations omitted) (emphasis added). Huddleston has not suggested how the FBI's search was not reasonably calculated to discover the requested records.

To the extent Huddleston otherwise challenges the FBI's search of electronic surveillance indices as inadequate, the Court rejects this challenge. Outside of missing documents that the Court has already discussed, Huddleston has presented only mere speculation, not specific facts, to support his argument. "Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard Servs., Inc.*, 926 F.2d at 120. Thus, summary judgment is inappropriate because Huddleston is not entitled to judgment as a matter of law.

### D. Whether the Court Should Compel the FBI to Search for Records Related to Activities of the CIA and Other Agencies or Third Parties

Huddleston argues that the Court should compel the FBI to search for records related to activities of the CIA and or agencies or third parties.[5] Huddleston asserts that "if the FBI is in possession of responsive records from another agency like the CIA, then the FBI is obligated to produce those records" (Dkt. #112 at p. 7).

The FBI claims that it previously provided information addressing Huddleston's request seeking information concerning third parties (Dkt. #118 at p. 8) (citing Dkt. #54-1 ¶ 18). A prior declaration by Michael G. Seidel states in part that Huddleston's request for records "relating to '[a]ny other person or persons' involved in transferring data from the Democratic National Committee to Wikileaks in 2016, either directly or through intermediaries" violates 28 C.F.R. § 16.3(b), which requires a FOIA request to "describe the records sought in sufficient detail to enable Department personnel to locate them with a reasonable amount of effort" (Dkt. #54-1 ¶ 18). The declaration further states that "[g]iven the vague nature of the request for 'any other person

---

[5] Huddleston sent the FBI an email requesting records about the CIA or any other government agency "inserting Russian 'fingerprints' into DNC emails" (Dkt. #112-10). No party indicates whether the FBI responded to this email.

or persons' without providing any specific names, the FBI is unable to conduct a search" (Dkt. #54-1 ¶ 18). Finally, the FBI asserts that Huddleston's argument is "based on nothing more than speculation" and is insufficient to challenge the adequacy of the FBI's search (Dkt. #118 at pp. 8–9).

The premise underlying Huddleston's argument is speculation that the FBI may have additional responsive records from the CIA or another government agency that the FBI has not yet produced (*See* Dkt. #112 at pp. 6–8). Huddleston has not presented any specific facts to support his argument. "Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard Servs., Inc.*, 926 F.2d at 120. Therefore, Huddleston is not entitled to judgment as a matter of law.

### E. Whether the Court Should Compel the FBI to Search for Records Related to Confidential Informants and Online Personas

Huddleston argues that the Court should compel the FBI to search for records related to confidential informants and online personas.[6] Specifically, Huddleston requests that the Court compel the FBI to search for responsive records created or received by confidential informants and communications between confidential informants or FBI personnel and third parties (Dkt. #112 at p. 8). In support of this argument, Huddleston notes that the FBI has worked closely with social media to control the narrative around the Hunter Biden laptop (Dkt. #133 at p. 12). Further, Huddleston claims that "the FBI seems to be arguing that it need not search for such records because it would not have to produce them anyway" (Dkt. #133 at p. 13).

---

[6] Huddleston sent the FBI an email requesting information regarding records created by confidential informants or FBI personnel in routine contact with social media companies (Dkt. #112-12). The FBI did not respond to this email.

The FBI responds that Huddleston's argument is "clearly based on speculation and cannot serve as the basis to challenge (again) the adequacy of a search" (Dkt. #118 at p. 9). The FBI claims that "[t]he underlying request contains no information that would lead a reasonable person to believe that such records exist" (Dkt. #118 at p. 9). Further, the FBI notes that "[i]t is the requester's responsibility to frame requests with sufficient particularity to ensure that searches are not unreasonably burdensome, and to enable the searching agency to determine precisely what records are being requested" (Dkt. #118 at p. 9) (citing *Assassination Archives & Rsch. Ctr., Inc. v. C.I.A.*, 720 F. Supp. 217, 219, (D.D.C. 1989)).

The Court has already found that the FBI conducted a legally adequate search (Dkt. #70 at p. 26). Huddleston has presented only mere speculation, not specific facts, to support his argument. "Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard Servs., Inc.*, 926 F.2d at 120. Thus, summary judgment is inappropriate because Huddleston is not entitled to judgment as a matter of law.

## F.  Whether the Court Should Compel the FBI to Search for All Reports Concerning the 2016 Hack of Democratic National Committee Emails

Huddleston argues that the Court should compel the FBI to "search for and produce reports from all sources regarding the alleged hack of the Democratic National Committee in 2016 . . . not just reports produced by CrowdStrike" (Dkt. #112 at pp. 8–9). Huddleston incorporates his sur-reply to another motion into the present motion (Dkt. #110). In his prior sur-reply, Huddleston claims that "[it] does not appear that the FBI searched for anything beyond the three CrowdStrike reports, notwithstanding the fact that Mr. Huddleston' request is considerably broader than that" (Dkt. #110 at p. 7). To support this claim, Huddleston claims that "someone"

sent his counsel information about companies other than CrowdStrike that investigated the Democratic National Committee Hack in 2016 (Dkt. #110 at p. 5; Dkt. #110-4 at p. 2). Further, Huddleston claims that the prosecution in *United States v. Stone* revealed the existence of two additional CrowdStrike reports to defense counsel (for a total of at least five, compared to the three that the FBI has acknowledged) (Dkt. #110 at pp. 3–4) (citing Dkt. #105-15 at p. 3).

The FBI responds that Huddleston's "allegation of an inadequate search is once again based on speculation tied to an anonymous tip from either a third removed or fourth removed, unidentified source" (Dkt. #118 at p. 11). The FBI claims that Huddleston cannot challenge the adequacy of the search based upon such speculation (Dkt. #118 at p. 11). Further, the FBI argues that "at the time that the FBI conducted the search, [Huddleston] had not provided the FBI with the name of any company or individual to search, other than CrowdStrike" (Dkt. #118 at p. 11). The FBI notes that "[i]t is the requester's responsibility to frame requests with sufficient particularity to ensure that searches are not unreasonably burdensome, and to enable the searching agency to determine precisely what records are being requested" (Dkt. #118 at p. 11) (citing *Assassination Archives & Rsch. Ctr., Inc.*, 720 F. Supp. at 219.

In response to Huddleston's request for "[a]ny reports from CrowdStrike, Inc. that were obtained by the FBI while assisting Special Counsel Robert Mueller's Investigation," the FBI provided a *Glomar* response, such that "merely acknowledging the existence or nonexistence of records responsive to [Huddleston's] request . . . would trigger harm under FOIA Exemption (b)(7)(E)" (Dkt. #95-1 ¶ 8). The FBI claimed that it "partially pierced the FBI's 7(E) *Glomar* veil" and produced three responsive reports from CrowdStrike (Dkt. #95-1 ¶ 9).

The Court does not address Huddleston's argument as to additional CrowdStrike reports because a challenge to the adequacy of the FBI's search is not the appropriate means to challenge a *Glomar* response. A *Glomar* response is "an exception to the general rule that agencies must acknowledge the existence of information responsive to a FOIA request and provide specific, non-conclusory justifications for withholding that information." *Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1178 (D.C. Cir. 2011). A *Glomar* response is permissible "only when confirming or denying the existence of records would itself 'cause harm cognizable under an FOIA exception.'" *Id.* (quoting *Wolf v. C.I.A.*, 473 F.3d 370, 374 (D.C. Cir. 2007)).

Huddleston has not properly attempted to challenge the FBI's *Glomar* response. "A *Glomar* response may be challenged in two distinct but related ways." *Agility Pub. Warehousing Co. K.S.C. v. Nat'l Sec. Agency*, 113 F. Supp. 3d 313, 326 (D.D.C. 2015). "A plaintiff may challenge the agency's assertion that confirming or denying the existence of any records would result in a cognizable harm under a FOIA exemption." *Id.* "Alternatively, or in addition, a plaintiff may demonstrate that the agency has 'officially acknowledged' the existence of a requested record previously." *Id.* Huddleston has attempted neither of these challenges.

Regarding any potential reports by an entity or person other than CrowdStrike, Huddleston has presented only mere speculation, not specific facts, to support his argument. "Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard Servs., Inc.*, 926 F.2d at 120. Huddleston is not entitled to judgment as a matter of law.

**III.     Whether Huddleston May Challenge the Adequacy of the FBI's Search on the Grounds that Other Records Possibly Responsive to His Request May Exist**

The Court denies Huddleston's request for the Court to compel the FBI to search for missing forms related to items or evidence already identified because the request does not challenge whether the FBI's search was reasonably calculated to uncover all relevant documents. Rather, Huddleston's request questions whether other documents possibly responsive to the FOIA request might exist without creating substantial doubt as to the sufficiency of the FBI's search.

Huddleston argues that the Court should compel the FBI to search for missing forms related to items or evidence already identified because Huddleston claims that additional records should have been produced related to standard FBI procedures (Dkt. #112 at pp. 8–9).[7] Huddleston provided a document from https://www.governmentattic.com to support his argument (Dkt. #133-6).

The FBI responds that Huddleston's request amounts to no more than mere speculation that not yet uncovered documents may exist, and that the request is insufficient to call into question the adequacy of the search (Dkt. #118 at p. 7). Further, the FBI argues that Huddleston's claim that missing records exist "fails to challenge" the adequacy of the FBI's search (Dkt. #118 at p. 7). Finally, the FBI claims that it "searched its systems in which a reasonable person would have reason to believe that records sought by [Huddleston] might be found" (Dkt. #118 at p. 7).

Huddleston's argument does not challenge the adequacy of the FBI's search. Rather, Huddleston claims that additional records responsive to his request might exist. *Gahagan*, 147 F.

---

[7] Huddleston sent the FBI an email requesting information regarding various FBI forms relating to the "Seth Rich laptop/disk" (Dkt.#112-9). The FBI did not respond to this email.

Supp. 3d at 622. "When a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA request, the key question is whether the search was *reasonably calculated* to discover the requested documents, and not whether every document in existence was found by the search." *Cui*, 551 F. Supp. 3d at 18 (emphasis added). Huddleston has not suggested how the FBI's search was not reasonably calculated to discover the requested records. Further, Huddleston has not provided or identified specific facts such that the record "leaves substantial doubt as to the sufficiency of the search." *Valencia-Lucena*, 180 F.3d at 32.

The FBI objected that Huddleston's reply relied upon improper summary judgment evidence (Dkt. #135 at p. 1). The document (describing forms the FBI used between 2003 and 2004) that Huddleston has provided to support his argument is inadmissible as summary judgment evidence because it is inadmissible hearsay (Dkt. #133-6). *See* FED. R. EVID. 801(c). For these reasons, Huddleston is not entitled to judgment as a matter of law.

## IV.   Whether the Court Should Permit Discovery About the Adequacy of the FBI's Searches

The Court finds that discovery is not warranted in this case because Huddleston has not shown that the FBI acted in bad faith.

Huddleston claims that the Court should compel the FBI to answer questions about the adequacy of its searches because "a review of the docket reveals that this case has indeed become 'most exceptional.'" (Dkt. #112 at p. 10). Huddleston asserts that on multiple occasions, he "has caught the FBI hiding responsive documents or just ignoring one of his requests in the apparent hope that he would not notice" (Dkt. #112 at p. 9). Further, the Huddelston claims the FBI has acted in bad faith, as shown by a United States Department of Justice report by Special Counsel

John H. Durham regarding "matters related to intelligence activities and investigations arising out of the 2016 presidential campaigns" (the "Durham Report") (Dkt. #133 at pp. 14–15).

The FBI responds that the Court should deny Huddleston's request for discovery because "the Court has already found that the FBI's declarations are reasonably detailed and submitted in good faith, the searches were adequate, and there is no evidence of bad faith" (Dkt. #118 at p. 12) (citing Dkt. #70). The FBI notes that to qualify for an exception to the limited scope of discovery, the plaintiff in a FOIA case "must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations [] or provide some tangible evidence that an exemption claimed by an agency should not apply or summary judgment is somehow inapposite" (Dkt. #118 at p. 12) (quoting *Heily v. U.S. Dep't of Com.*, 69 F. App'x 171, 174 (4th Cir. 2003)).

"'[D]iscovery in FOIA cases is rare' and courts should generally order it only 'where there is evidence—either at the affidavit stage or (in rarer cases) before—that the agency acted in bad faith in conducting the search.'" *Shapiro v. U.S. Dep't of Just.*, 40 F.4th 609, 615 (D.C. Cir. 2022) (quoting *In re Clinton*, 973 F.3d 106, 113 (D.C. Cir. 2020)).

Huddleston has not produced any tangible evidence that the FBI acted in bad faith. Assuming that the findings in the Durham Report have a direct bearing on this case, the Durham Report never found that the FBI acted in bad faith (Dkt. #133-1). Rather, the Durham Report found that confirmation bias played a significant role in the FBI's less that ideally executed investigation into matters related to intelligence activities and investigations arising out of the 2016 presidential campaigns (specifically the Trump campaigns connections with Russia):

> viewing the facts in a light most favorable to the [FBI] investigators, it seems highly likely that, at a minimum, confirmation bias played a significant role in the FBI's acceptance of extraordinarily serious allegations derived from uncorroborated

information that had not been subjected to the typical exacting analysis employed
by the FBI and other members of the Intelligence Community.

(Dkt. #133-1 at p. 316). The Court previously rejected Huddleston's claims that the FBI acted in

bad faith, finding that "Huddleston has not sufficiently persuaded the Court that there is tangible

evidence of bad faith sufficient to overcome the presumption of legitimacy afforded to the

Government's declarations" (Dkt. #70 at p. 12). Here, Huddleston has not sufficiently persuaded

the Court that there is tangible evidence of bad faith sufficient to justify discovery.

**CONCLUSION**

It is therefore **ORDERED** that Plaintiff's Corrected Motion for Summary Judgment

(Dkt. #112) is **DENIED.**

**IT IS SO ORDERED.**

 **SIGNED this 15th day of August, 2024.**


AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE