IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **BRIAN HUDDLESTON**, <br><br> Plaintiff, <br><br> vs. <br><br> **FEDERAL BUREAU OF INVESTIGATION and UNITED STATES DEPARTMENT OF JUSTICE** <br><br> Defendant | Case No. 4:20-cv-447-ALM |

### PLAINTIFF'S MOTION FOR AN ORDER TO SHOW CAUSE WHY THE FBI SHOULD NOT BE HELD IN CONTEMPT

NOW COMES Brian Huddleston, the Plaintiff, moving the Court to (1) order Defendant FBI and certain non-party employees to show why they should not be held in contempt for willfully violating the Court's August 16, 2024 Amended Memorandum Opinion and Order ("Amended Order") (Dkt. #178) and related orders; (2) sanction the FBI; and (3) grant related relief to secure compliance with the Court's orders:

### Introduction

On August 16, 2024, the Court ordered the FBI to conduct "a document-by-document review of the information it possesses on the compact disk containing images of Seth Rich's personal laptop, Seth Rich's work laptop, the DVD, and the tape drive that is responsive to Plaintiff's FOIA requests," further directing the FBI to produce either a *Vaughn* index of the foregoing information or a motion for summary judgment not later than February 7, 2025. Amended Order, 6-7. The deadline for compliance was extended to March 10, 2025. *See* Dkt. #187. As set forth below in the attached emails (some of which are excerpted below), the FBI did

not comply with the Amended Order. Worse, the FBI tried to conceal its noncompliance from the Plaintiff and, by extension, from the Court. Among other things, the FBI withheld documents from the Plaintiff and yet failed to account for those withheld documents in the *Vaughn* indexes. When presented with legal authority showing that the FBI was obligated to either (1) produce the records or (2) account for them in its *Vaughn* indexes, the FBI refused to do either. The FBI also failed to produce or account for metadata, despite clear direction from the Court, and it systematically asserted privacy exemptions on behalf of the decedent, Seth Rich, even though the Court long ago rejected such privacy exemptions.

When faced with adverse rulings from the Court, the FBI has repeatedly filed motions for reconsideration or renewed motions for summary judgment, or it has just pretended that the Court has not already ruled adversely. Those mulligans have delayed this case for years. The Court itself has noted that the FBI wanted more than 66 years to produce records to the Plaintiff. *Huddleston v. Fed. Bureau of Investigation*, No. 4:20-CV-00447, 2023 WL 8235243, at *13 n. 16 (E.D. Tex. Nov. 28, 2023)("November 28, 2023 Memorandum Opinion") (Dkt. #136) 24. The FBI's defiance, obfuscations and delays will continue unabated so long as its senior FBI personnel think they can get away with it, thus the Plaintiff seeks an order sanctioning the FBI and directing the FBI and certain senior personnel to show cause why they should not be held in contempt.

**<u>Background facts</u>[1]**

On March 10, 2025, the FBI produced two PDFs file that it claimed were *Vaughn* indexes of (1) Seth Rich's work laptop and (2) the imaged version of his personal laptop. True and

---

[1] The factual discussion in this motion is more detailed than usual because the Plaintiff wishes to demonstrate to the Court that he tried to resolve the FBI's non-compliance repeatedly and in good faith before seeking contempt.

correct copies of those indexes are attached as Exhibits 1 (hereinafter "Work Index") and 2 (hereinafter "Personal Index"), respectively.[2] On March 11, 2025, the day after production, the undersigned sent an email to Defendants' Counsel asking about records that had not been produced and not been accounted for in the *Vaughn* indexes. *See* March 11, 2025 Email from Ty Clevenger to James Gillingham (Exhibit 3). The next day, the undersigned sent another email to Defendants' Counsel:

> I did a little Westlaw research on *Vaughn* indexes this morning, and learned that "[a] withholding agency must describe each document or portion thereof withheld." *Emery v. United States Dep't of Just.*, 639 F. Supp. 3d 104, 112 (D.D.C. 2022) (emphasis added). All I saw were fully-withheld documents in the index, and it seems improbable that there were no partially-withheld documents.

March 12, 2025 Email from Ty Clevenger to James Gillingham (Exhibit 4). On March 17, 2025, in two separate emails, the undersigned (1) asked for an update on the amount and type of data that was not accounted for in the *Vaughn* indexes (*see* Exhibit 5) and (2) notified Defendants' Counsel that he intended to file a motion to set a production schedule.[3] *See* Exhibit 6. Later that day, Defendants' Counsel responded as follows:

> …After consulting with the client, you can represent to the Court that we are opposed to a motion to clarify his order and set a date certain for the production of all remaining files / data. Our position is that the order is not ambiguous so clarification is unnecessary. It is also not necessary to establish a date certain for production since there are no documents to produce as they are being withheld pursuant to exemptions as set forth in the *Vaughn* indexes. I will also reach out to the FBI to determine our position on your motion to set a date certain for the production of all remaining files/data. Once I have conferred with them, I will get back to you.

---

[2] As witnessed by his electronic signature on this motion, Ty Clevenger declares under penalty of perjury under the laws of the United States that the exhibits to this motion are true and correct copies of the documents that he represents them to be.
[3] At the time, the undersigned mistakenly assumed that the FBI intended to produce any documents that were not accounted for in the *Vaughn* indexes.

March 17, 2025 Email from James Gillingham (Exhibit 7). That was the first clear indication that the FBI had omitted entire records from the indexes and yet had no intention of producing the records. On March 19, 2025, the undersigned sent the following email to Defendants' Counsel:

> It appears that the FBI is not complying with Judge Mazzant's orders. I don't want to make such an accusation to the Court lightly (much less mistakenly), therefore I seek once again to clarify some of the irregularities in the *Vaughn* indexes. Back on March 12 I asked for clarification about whether the FBI had accounted for <u>all</u> files on Seth Rich's electronic devices. Thus far the FBI has refused to answer that question, but the evidence indicates that the FBI is withholding documents that it failed to include in the indexes.
>
> In my March 12 email, I wrote as follows:
>
>> "[A] withholding agency must describe each document or portion thereof withheld." *Emery v. United States Dep't of Just.*, 639 F. Supp. 3d 104, 112 (D.D.C. 2022) (emphasis added). All I saw were fully-withheld documents in the index, and it seems improbable that there were no partially-withheld documents.
>
> Aside from the probabilities, the *Vaughn* indexes themselves plainly indicate that other documents remain unaccounted for. Records from the personal laptop are numbered (albeit not sequentially), yet certain record numbers are skipped, *e.g.*, records 1106-1110. According to *Emery*, the FBI must either include those records in the *Vaughn* index or produce them. Thus far the FBI has done neither.
>
> On page 20 of Judge Mazzant's November 28, 2023 Order (Dkt. #136), he directed the FBI to include metadata in the *Vaughn* index of the work laptop, but the FBI did not include that information. Worse, when I specifically asked last week how much data was on the laptops (one of the most basic metadata measurements), the FBI refused to answer the question.
>
> The paltry number of files accounted for is further evidence of improper withholding. An average laptop contains hundreds of thousands to millions of files,[4] yet the *Vaughn* indexes only account for a few thousand. The image of the personal laptop was produced by Mr. Rich's brother, so I suppose it is possible that his brother only produced a *partial* image of that laptop. But the FBI is in possession of Mr. Rich's *actual* work laptop, so it is impossible to believe that only 2,094 records (and no metadata) were found on the work laptop. Did the FBI conduct a "document-by-

---

[4] *See* April 3, 2025 Declaration of Yaacov Appelbaum ("2025 Appelbaum Declaration") (Exhibit 8) (explaining that even a brand-new laptop can contain more than 100,000 files).

> document review" of everything on the work laptop, as ordered by Judge Mazzant? And why has the FBI refused to answer such questions thus far?
>
> It appears that the FBI systematically and improperly asserted the same shotgun exemptions to every document on the personal laptop, namely exemptions 6, 7(A), and 7(C) (the index sometimes cites another exemption here and there, but it always cites 6, 7(A), and 7(C). With respect to exemption 6 and 7(C), it appears that the FBI systematically asserted the purported privacy rights of Seth Rich even though Judge Mazzant *expressly* rejected that exemption on pages 43-48 of his September 29, 2022 Order (Dkt. #70). With respect to exemption 7(A)(*i.e.*, interference in law enforcement investigations), some of the documents could not possibly pertain to the murder investigation or the Russian collusion hoax. Consider, for example, Record #153 from the personal laptop, and recall that your own witnesses (including the AUSA assigned to the murder case) are still saying Seth Rich died in a "botched robbery." How could Mr. Rich's medical record from 2014 be relevant to a "botched robbery" in 2016, much less a computer hacking incident in 2016 that, according to the FBI, Mr. Rich had nothing to do with? It appears that the FBI haphazardly cut-and-pasted the exact same exemptions for every record.
>
> Finally, the formats for the two indexes are very different, and I must ask why. The personal laptop index numbers the records, for example, but the work laptop index does not. And the personal laptop index gives the physical sector location for each file, but [the] work laptop index does not. It's as if the FBI used two differing formats in order to obfuscate and confuse.
>
> I propose that the FBI identify and make available one or more witnesses who can be deposed to answer the foregoing questions (and other questions like them). If not, I will bring these matters to the attention of Judge Mazzant, and I may request sanctions or a show-cause order.

March 19, 2025 Email from Ty Clevenger to James Gillingham (Exhibit 9). Following a phone conversation with Defendants' Counsel on March 27, 2025, the undersigned emailed Defendants' Counsel again:

> Thank you for the phone call. I'll try to discuss with my client this evening. I want to confirm my understanding of a few points in our conversation:
>
> - The FBI withheld some records and excluded them from the *Vaughn* index, in part because some of those files were corrupt.
>
> - For the personal laptop, the FBI is asserting post-mortem privacy exemptions for Seth Rich.

> - The FBI did not produce metadata because it was not sure how the court defined that term.
>
> - The formats of the two *Vaughn* indexes are different because they were prepared by two different people.
>
> For purposes of conferring with Mr. Huddleston, please let me know whether the FBI has conducted a document-by-document review of everything on the work laptop (as opposed to a document-by-document review of a DVD or something else). And please let me know the total amount of data on each device or disk (*i.e.*, volume of data and number of files). Many thanks.

March 27, 2025 Email from Ty Clevenger to James Gillingham (Exhibit 10). On March 28,

2025, Defendants' Counsel responded via email:

> Regarding files that are not included in the *Vaughn* indexes, I expressed that our preferred course of action is to address the documents in the motion for summary judgement briefing so that there can be a fulsome explanation of the issues rather than doing it piecemeal prior to that time. I did mention by way of example that I am aware there were some documents that were not produced and not included in the *Vaughn* index because the files were corrupted and therefore not reviewable.
>
> To your second point, you are correct. As set forth in the *Vaughn* index, there are certain documents being withheld pursuant to the privacy exemption. As I mentioned on the call, the application of the exemption to any particular document on the laptop has not previously been put before the Court. At a minimum, we need to preserve any issues regarding the privacy exemption for appellate purposes.
>
> Third, I disagree with your statement on the metadata. Because I had to go to another call, I was not able to address the metadata issue. We can discuss that in the future. But I disagree with your characterization of the FBI's position on metadata.
>
> As for your final point, you are correct. The *Vaughn* indexes are formatted differently because different individuals prepared them.
>
> You also asked about how the work laptop review took place. It is my understanding that RIDS reviewed an image of the work laptop that it received from the relevant field office.

March 28, 2025 Email from James Gillingham to Ty Clevenger (Exhibit 11). On Sunday, March

30, 2025, the undersigned sought clarification about whether the work laptop had been searched:

> It's still not clear to me whether the FBI searched the actual work laptop as directed by Judge Mazzant. The FBI told you that "RIDS reviewed an image of the work laptop that it received from the relevant field office," but that does not answer the question. Michael

> Seidel previously testified that in addition to the work laptop, the FBI received a disk containing a purported image of the laptop drive. *See* Sixth Declaration of Michael G. Seidel (Dkt. #83-1) 8, ¶15. The imaging was performed by an "outside entity," *id*., presumably at the direction of the Democratic National Committee or its law firm, Perkins Coie. I'm concerned that the FBI may have *only* reviewed the documents on the disk prepared by the "outside entity," while never reviewing the work laptop itself. That might explain why we have no accounting for metadata.
>
> Judge Mazzant plainly directed the FBI to conduct a "document-by-document" review of the work laptop, ***in addition to*** the disk prepared by the "outside entity" (plus the tape drive and the personal laptop image disk). Given all of the chicanery surrounding the Russia collusion hoax, I do not have a great deal of confidence in the accuracy of a disk prepared by an unidentified "outside entity." Regardless, Judge Mazzant ordered the FBI to search the work laptop itself. Please ask the FBI to clarify once and for all whether (1) it conducted a "document-by-document" review of ***both*** the work laptop and image disk, plus the personal laptop image disk and the tape drive, and (2) whether all four of these items are accounted for in the Vaughn indexes. The fact that there are only two *Vaughn* indexes -- rather than four -- seems to suggest that at least two items have not been accounted for.

March 30, 2025 Email from Ty Clevenger to James Gillingham (Exhibit 12). As of this filing, the FBI has not answered the simple question of whether it searched <u>all</u> of the disks and devices as directed by the Court. Regardless, we already know for certain that the FBI withheld documents and refused to account for them in the indexes.

## Argument

The Plaintiff incorporates herein by reference all of the arguments set forth in the email correspondence above.

**1. The FBI did not account for all withheld documents in its indexes.**

It is self-evident that a *Vaughn* index must account for <u>all</u> withheld documents in order to fulfill its purpose, and courts have previously recognized that: "A *Vaughn* Index is an itemized account of <u>all</u> documents withheld by a government agency cross-referenced with the FOIA Exemption explaining the agency's justification for nondisclosure." *Manna v. U.S. Dep't of Just.*, No. CIV. A. 93-81, 1994 WL 808070, at *11 (D.N.J. Apr. 13, 1994) (emphasis added), citing

*Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). When confronted with this requirement, the FBI shrugged it off, eventually concocting the story that it would file a separate and subsequent motion for summary judgment. *See* March 28, 2025 Email (Exhibit 11). That is too clever by half. The Court gave the FBI the option of producing <u>either</u> a *Vaughn* index <u>or</u> a motion for summary judgment not later than March 10, 2025. *See* Amended Order 7. The Plaintiff would not be complaining if the FBI had done both by March 10, 2025, assuming that the index and motion together had fully accounted for all withheld documents. Instead, the FBI produced woefully inadequate *Vaughn* indexes that failed to account for thousands of files, apparently hoping that nobody would notice. But somebody did notice, namely the Plaintiff's technical consultant and expert witness:

> According to the Microsoft website and common knowledge within my industry, a new Windows laptop purchased from the manufacturer will have more than 100,000 files pre-installed. It is impossible to believe that Seth Rich's work laptop and personal laptop contained only a few thousand files each. Notably, none of the system files (*e.g.*, Microsoft Windows 10) were accounted for in the *Vaughn* indexes, thus there can be no doubt that files are missing and unaccounted for.

2025 Appelbaum Declaration ¶5.  The FBI itself had estimated that 400,000 documents would be found on the personal laptop alone, *see* November 28, 2023 Memorandum Opinion 24 n.16, citing Dtk. #72 at p.9, yet the Personal Index records are only numbered through 1,297. And whereas *Vaughn* indexes are normally accompanied by affidavits or declarations, *see Bigwood v. United States Dep't of Def.*, 132 F. Supp. 3d 124, 147 (D.D.C. 2015)("[F]ederal agencies typically submit an affidavit and a *Vaughn* index"), the FBI's indexes did not include any affidavits or declarations, thus the indexes are not even admissible as evidence. *See Balboa Cap. Corp. v. Okoji Home Visits MHT, L.L.C.*, 111 F.4th 536, 548 (5th Cir. 2024) (unauthenticated exhibits not admissible as summary judgment evidence), citing Fed. R. Evid. 901(b). It appears that the FBI was waiting to see if it got caught hiding records, and then only if it got caught

would it start dribbling out excuses and rationalizations.[5] This is not entirely surprising, as no one would at the FBI would want to face perjury charges for attesting to the accuracy or completeness of either the Personal Index or Work Index.

In order to determine who decided to defy the Court and conceal the records, the Plaintiff moves the Court to order the FBI to produce all of its internal discussions about the Amended Order, *i.e.*, internal discussions about whether and to what extent the FBI intended to comply with that order. If nothing else, the correspondence from the undersigned almost certainly generated some e-mail, text, and chat discussions within the FBI. Even if the FBI's Office of General Counsel ("OGC") was involved in those discussions, the records would be exempt from attorney-client privilege to the extent that they reveal efforts to deceive the Plaintiff or thwart the Amended Order. *See, generally, In re Sealed Petitioner*, 106 F.4th 397, 404 (5th Cir. 2024) (discussing crime-fraud exception to attorney-client privilege); *see also* 18 U.S.C. § 401(3) (criminalizing contempt of court).[6]

---

[5] Foremost among the missing records is the metadata that the Court ordered produced back on November 28, 2023. *See* November 28, 2023 Memorandum 25. In the joint Response to November 28, 2023 Memorandum and Opinion (Dkt. #141) 4-6, the Plaintiff detailed exactly why metadata was so important, namely because it likely would answer the core question that the Plaintiff seeks to resolve in this litigation: whether Seth Rich was the source of Democratic National Committee emails published by Wikileaks in 2016. Notably, the Plaintiff emailed the FBI about metadata multiple times, explaining that a full search of the laptops might not be necessary if the FBI simply agreed to produce the metadata prior to the November 5, 2024 Presidential election. *See* Email exchanges between Plaintiff's Counsel and Defendants' Counsel (Exhibit 13). Had the FBI acted in good faith, this case might have ended already. Instead, the FBI withheld all of the metadata and then refused to account for most of it in the *Vaughn* indexes. It is difficult to imagine how *any* of the metadata would be exempt from disclosure, much less all of it. As Mr. Appelbaum testified in an earlier declaration, the metadata would not reveal the content of any of the files, *see* January 11, 2024 Declaration of Yaacov Appelbaum (Dkt. #141-3) ¶7 ("The Metadata and file names would *not* reveal the actual contents of the electronic file") (emphasis in original).

[6] Defendants' Counsel has been professional and a pleasure to deal with at all times. The Plaintiff does not intend to suggest that Defendants' Counsel had anything to do with the FBI's

## 2. The FBI did not comply with basic legal requirements for a *Vaughn* index.

"Specificity is the defining requirement of the *Vaughn* index." *Wiener v. FBI*, 943 F.2d 972, 979 (9th Cir. 1991).

> An adequate *Vaughn* Index must: (1) identify each document withheld; (2) state the applicable statutory exemption; and (3) explain how disclosure would harm the interests protected by the statutory exemption. *Hamdan*, 797 F.3d at 769 n.4. An agency must provide more than "boilerplate or conclusory statements," *Transgender L. Ctr.*, 46 F.4th at 781 (quoting *Shannahan v. IRS*, 672 F.3d 1142, 1148 (9th Cir. 2012)), and allow "a meaningful opportunity to contest, and ... an adequate foundation to review," the agency's withholdings, *Citizens Comm'n on Hum. Rts. v. Food & Drug Admin.*, 45 F.3d 1325, 1328 (9th Cir. 1995) (quoting *Wiener*, 943 F.2d at 977).

*Pomares v. Dep't of Veterans Affs.*, 113 F.4th 870, 881 (9th Cir. 2024). The third element above, *i.e.*, "explain[ing] how disclosure would harm the interests protected by the statutory exemption," is omitted from *every single entry in both of the indexes*. Furthermore, the FBI failed to identify each document, instead providing only "boilerplate [and] conclusory statements." In the examples below from the Personal Index, note that each contains the same boilerplate FOIA exemptions, namely exemptions 6 (personal privacy), 7(c) (reasonably expected to interfere with law enforcement proceedings or investigations), and 7(e)(personal privacy), and then ask how these records are related to the exemptions:

- Records 18 and 64 are both described as "PowerPoint Depicting Editorial Cartoon." The records were last modified in 2008, thus they were created nearly 8 years before Mr. Rich died in a "botched robbery" and 8 years before the 2016 "hack" of the Democratic National Committee. It is impossible to imagine how these cartoons relate to any of the claimed exemptions.

- Record 83 is a "Written School Assignment, Essay, or Term Paper" last modified on November 17, 2008, when Mr. Rich would have been a freshman in college. It is inconceivable that the paper would relate to a "botched robbery" that occurred nearly 8 years later, much less the "hack" of the Democratic National Committee in 2016.

---

noncompliance with the Amended Order. Instead, the Plaintiff believes the FBI's Office of General Counsel has been "calling the shots," as general counsel's offices usually do when the federal government is involved in civil litigation.

- Record 85 contains "Video Game Notes" compiled in 2010, nearly six years before the "botched robbery" or the "hack."

- Record 16, 31, 66, 67, 92 are each described as "PowerPoint Concerning Time Spent Campaigning for Scott Kleeb." The records were last modified in 2008 and FEC records indicate that Mr. Kleeb was the Democratic candidate for U.S. Senate in 2008, *see* Kleeb, Scott Michael, FEC website, https://www.fec.gov/data/candidate/S8NE00133/, thus the records were created nearly 8 years before any events of relevance to the law enforcement exemptions.

- Record 71 and 131 are each described as a "[l]ist of quotations" compiled in 2008. That's the entire description.

- Record 1297 is an undated "Poem." That's the entire description.

- Record 258 is an undated "Groupon Certificate," Record 259 is an undated "School Matrix Document," Rule 260 is an undated "Certificate of Participation," Record 261 is an undated "IRS Form 1098-T," Record 262 is an undated "Insurance Letter," Record 263 is an undated "Student Loan Statement," Record 268 is a "Birthday Party Menu," Record 287 is an "Experian Credit Report" from 2013 (*i.e.*, three years before Mr. Rich's death), Record 288 is an undated "Rental Application," Record 324 is an undated "Parking Request Form," Record 330 is an undated "Dental Bill," Record 331 is an undated "Medical Bill," and Record 332 is an undated "Quiz Feedback." No additional information was provided, and no attempt was made to connect these boilerplate descriptions with the boilerplate exemptions, *i.e.*, exemptions 6, 7(c), and 7(e).

Exemptions 6, 7(c), and 7(E) were rubber-stamped on *every single entry* in the Personal Index without any attempt to apply those exemptions to the contents. The Work Index does not fare any better. Sixteen records get the same conclusory description: "This file contains 1 item." *See, e.g.,* Work Index, pp. 3, 4, 5, 9, and 12. That's the *entire* description, yet the Plaintiff and the Court are somehow supposed to figure out how that description relates to the claimed exemptions. Elsewhere, the Work Index describes records as an "Image of a small black circle with a white arrow pointing down to 6 o'clock" and an "Image of a small black circle with a white arrow pointing down between 4 and 5 o'clock." *Id.*, bottom of page 5. It is impossible to determine – or even imagine – how that would compromise the investigation of a "botched

robbery" or a "hack" of the DNC.

Michael G. Seidel is the chief of the FBI's records section and he is in charge of the FBI's compliance with FOIA, *See* December 8, 2020 Declaration of Michael G. Seidel ("First Declaration") (Dkt. #10-1) ¶¶1-3. He has provided most of the FBI's testimony about its purported compliance with the Court's orders. *See, e.g., id.* and Ninth Declaration of Michael G. Seidel (Dkt. #156-1).) Mr. Seidel is also an attorney, First Declaration ¶1, and he undoubtedly handles far more FOIA requests and *Vaughn* indexes than either the Plaintiff or the Court, thus he undoubtedly knows better than to play such games in a FOIA case. The inadequacy of such a half-baked *Vaughn* index was established long ago. "'[B]road categorical descriptions' such as these are inadequate to allow 'a reviewing court to engage in a meaningful review of the agency's decision'" and therefore must be rejected. *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 88-89 (D.D.C. 2009), quoting *Hall v. Dep't of Justice*, 552 F.Supp.2d 23, 27 (2008), in turn citing *Oglesby v. Dep't of the Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996); *see also Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998) (the government must furnish "detailed and specific information demonstrating that material withheld is logically within the domain of the exemption claimed") (internal quotation marks omitted) and *Watkins L. & Advoc., PLLC v. United States Dep't of Just.*, 78 F.4th 436, 451–52 (D.C. Cir. 2023) (rejecting conclusory *Vaughn* index). Furthermore, and as noted above in the March 25, 2025 email from Plaintiff's Counsel (Exhibit 9), entire records are missing from the indexes. One can use the search function on Adobe Acrobat to determine that numerous files, *e.g.*, Records 205-206, 212, 223, and 1106-1110, are unaccounted for in the Personal Index, yet we have no accompanying declaration or affidavit to explain what records were omitted from the index, much less *why* they were omitted

from the index.[7]

According to the FBI, it held back some of the personal laptop files because they were "corrupted," March 28, 2020 Email from Plaintiff's Counsel (Exhibit 11), but that does not explain why they were omitted from the Personal Index. Consider the testimony of Mr. Appelbaum:

> According to Defendants' Counsel in the case identified above, "some documents that were not produced and not included in the *Vaughn* index [for the personal laptop] because the files were corrupted and therefore not reviewable." *See* March 28, 2025 Email from James Gillingham to Ty Clevenger. That statement is not plausible. The FBI did not describe any efforts that it undertook to clean the files or otherwise render them readable, and it is impossible to believe that the country's premier law enforcement agency lacks the tools to clean the files or at least render and produce them in an electronic format. Furthermore, the *Vaughn* index for Seth Rich's work laptop accounts for corrupted files that the FBI claims it could not open, but the *Vaughn* index for the personal laptop does not account for corrupted files at all.
>
> In the *Vaughn* index of the work laptop (*see, e.g.,* page 10), the author repeatedly states that documents could not be opened in Notepad or that the text was distorted. Notepad is a very simple text-reading program, and it is not used for cleaning corrupted files. It thus appears that the FBI made no effort to clean the files or otherwise render them readable so that they could be reviewed for production. If the FBI did not want to clean the files, then it could have produced them in their original, uncorrected format.

2025 Appelbaum Declaration ¶¶3-4. The shortcomings in the *Vaughn* indexes are pervasive, and that is not an inconsequential thing.

> FOIA litigants are entitled to assume that the agency's *Vaughn* Index is accurate in every detail. And so is the court. There is no excuse for submitting a *Vaughn* Index that contains errors, even minor ones. We expect agencies to ensure that their submissions in FOIA cases are absolutely accurate.

*Church of Scientology of Texas v. I.R.S.*, 816 F. Supp. 1138, 1148 (W.D. Tex. 1993), citing

---

[7] Records in the Personal Index are numbered, but they are not listed sequentially. The Plaintiff must wonder if the FBI did this intentionally to obscure the fact that numerous records had been omitted from the index. Meanwhile, the inconsistent formatting between the Personal Index and Work Index supposedly is the result of two different FBI employees preparing the indexes, *see* March 28, 2025 Email (Exhibit 11), but that adds another layer of confusion. It is hard to believe that the FBI has no standard procedures for preparing *Vaughn* indexes.

*Schiller v. N.L.R.B.*, 964 F.2d 1205, 1209 (D.C. Cir. 1992), abrogated on other grounds by *Milner v. Dep't of Navy*, 562 U.S. 562, 131 S. Ct. 1259, 179 L. Ed. 2d 268 (2011). In this case, the FBI's indexes are not just inexcusable; they are *willfully* non-compliant and thus contemptuous.

### 3. The FBI asserted exemptions that were already rejected by the Court.

In the September 29, 2022 Order (Dkt. #70) 43-48, the Court rejected the FBI's attempts to assert global privacy exemptions on behalf of Seth Rich. The Court explained that decedents have greatly diminished privacy interests, and privacy exemptions may be asserted on behalf of survivors only in very narrow circumstances. *Id*. "Other than death-scene images, courts have generally only expanded a family member's privacy interests to include autopsy reports and audio files of their close relative's final moments." *Id*. at 44.

> [W]ere the FBI attempting to apply the Exemptions on the basis to protect death-scene photographs or the autopsy report of Seth Rich, or potentially even audio recordings of his final moments, the law would arguably support withholding that information based on the privacy interests of Seth Rich's surviving family members. However, that is not what the FBI withheld here. Under Exemptions 6 and 7(C), the FBI states it "withheld information derived from Seth Rich's personal laptop as such information would violate the privacy rights of the survivors of Seth Rich" (Fourth Seidel Declaration ¶ 136).14 The FBI claims that "Seth Rich's personal laptop contains[,] among other things, photographs [and] various types of media and documents" (Fourth Seidel Declaration ¶ 136 n.42).

*Id*. at 46. The Personal Index does not contain *any* death-scene images, autopsy reports, or audio files of Mr. Rich's final moments, yet the FBI is asserting privacy exemptions *for every single record in the index*. *See* March 28, 2025 Email (Exhibit 11) and Personal Index. That's the functional equivalent of reasserting the same global exemption that the Court rejected, albeit on a nominally record-by-record basis. After it was confronted with its defiance of the Court's orders, the FBI claimed it needed to re-assert the same exemptions in order to "preserve any issues regarding the privacy exemption for appellate purposes," March 28, 2025 Email (Exhibit 11), but

that explanation fails. When resisting an order to produce records in a FOIA case, the government cannot wait around for a final appeal (and the Plaintiff pointed that out more than 14 months ago; *see* Response to November 28, 2023 Memorandum and Opinion (Dkt. #141) 3-4). Instead, the government has two appellate options: (1) file a petition for mandamus, *see, e.g., Islamic Shura Council of S. California v. F.B.I.*, 635 F.3d 1160, 1166 (9th Cir. 2011); or (2) file an interlocutory appeal. *See, e.g., White v. Fed. Bureau of Investigation*, 851 F. App'x 624, 626–27 (7th Cir. 2021). The deadline for filing an interlocutory appeal expired 30 days after the September 29, 2022 Order, *see* Fed. R. App. P. 4(a)(1)(A), so that is no longer an option. Meanwhile, petitions for mandamus are governed by laches, *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 379, 124 S. Ct. 2576, 2586, 159 L. Ed. 2d 459 (2004), and it is a near certainty that the Fifth Circuit would reject a petition for mandamus filed more than 30 months after the September 22, 2022 Order. *See In re Red Barn Motors, Inc.*, 794 F.3d 481, 485 (5th Cir. 2015)(delay of more than three months rendered petition untimely). In short, the privacy-exemption train left the station a long time ago, and the FBI had no good-faith basis for asserting global privacy exemptions on behalf of a decedent such as Mr. Rich, particularly for innocuous documents that bear no resemblance to "death-scene images… autopsy reports and audio files of [a] close relative's final moments." September 29, 2022 Order (Dkt. #70) 44.

      Likewise, the FBI had no good-faith basis for withholding metadata and then failing to account for it in the indexes. The Court ordered the metadata produced more than a year ago, *see* November 28, 2023 Memorandum Opinion 25, and the Defendants failed to seek mandamus or interlocutory relief from the Court of Appeals, thus that train has also left the station. It's time for the FBI to comply with the Court's orders or face the consequences.

**Relief Requested and Conclusion**

"A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013), quoting *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir.1995).

> While the criminal contempt power is limited by 18 U.S.C. § 401, civil contempt remains a creature of inherent power. *See Spallone v. United States,* 493 U.S. 265, 276, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990) (referring to "the axiom that courts have inherent power to enforce compliance with their lawful orders through civil contempt.' " (internal quotation marks omitted)); *NASCO, Inc. v. Calcasieu Television & Radio, Inc.,* 894 F.2d 696, 702 (5th Cir.1990) ("[F]ederal courts have inherent power to police themselves by civil contempt, imposition of fines, the awarding of costs and the shifting of fees.").

*In re Bradley*, 588 F.3d 254, 265 (5th Cir. 2009). This is not the first time that the FBI has defied the Court's orders, *see* Response to November 28, 2023 Memorandum and Opinion (Dkt. #141) 2-4, and it is not the first time that the FBI has tried to conceal responsive documents. *See* Plaintiff's Response to Defendant FBI's Notice of Supplemental Search Declaration and Vaugh Indices and Plaintiff's Cross-Motion for Partial Summary Judgment (Dkt. #105). The Court rejected the FBI's plan to drag this case out for more than 66 years, but the FBI and some of its senior personnel are defiantly forging ahead, determined to hide records about Seth Rich until every participant in this case is dead (or perhaps until the limitations period for criminal charges have lapsed). The Court has been exceptionally patient with the FBI, and the FBI has rewarded that patience by thumbing its nose at the Court's orders yet again. The Plaintiff therefore moves the Court to do the following:

- Order the FBI to show cause why it should not be held in civil contempt.

- Order the FBI to pay all fees and costs related to the Plaintiff's prosecution of this motion pursuant to the Court's inherent authority to sanction. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 111 S. Ct. 2123, 2134, 115 L. Ed. 2d 27 (1991),

- Order the FBI to disclose all emails, texts, chat messages, notes, or other records reflecting internal discussions of the August 16, 2024 Order, to include all discussions of whether, how, and to what extent the FBI would comply with that order.

- Order the FBI to disclose all personnel who played a role in deciding how, whether, and/or to what extent to comply with the August 16, 2024, further ordering any such personnel to show cause why they should not be held in criminal contempt. This would include personnel in the FBI's Office of General Counsel.[8]

- Order Michael G. Seidel to show cause why he should not be held in criminal contempt.

- Appoint a special master to review and oversee production of all of the items covered by the August 16, 2024 Order. (The appointment of a special master is critical because the FBI has proven time and again that it intends to slow-walk the production of records concerning Seth Rich).

- Order the FBI to produce all items covered by the August 16, 2024 Order (including the actual work laptop) to the special master.

- Empower the special master to hire assistants, consultants, and experts to extract data and review that data to determine what records should be exempted or produced.

- Order the FBI to pay all costs related to the special master and any persons that he or she retains for purposes of this case.

- Schedule an evidentiary hearing on the show-cause orders, further directing all persons subject to show-cause orders to appear and testify at that hearing. (Mr. Seidel has filed numerous declarations in this case, many of which were evasive and required follow up declarations. Even now, Mr. Seidel refuses to say whether the FBI searched the actual work laptop, *supra* 7, as directed by the Court. An evidentiary hearing would circumvent the evasions and expedite resolution of this case by allowing for real-time cross-examination).

No further delays should be tolerated from the FBI or its personnel.

---

[8] Non-parties may be held in civil contempt and criminal contempt, and they may be sanctioned under the Court's inherent powers. *See Texas v. Dep't of Lab.*, 929 F.3d 205, 211 (5th Cir. 2019) (contempt); *Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392, 398 (5th Cir. 1987) (contempt); *S. Ry. Co. v. Lanham*, 403 F.2d 119, 124 (5th Cir. 1968) (contempt); *Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 858 (E.D. Tex. 2017) (sanctions).

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
212 S. Oxford Street #7D
Brooklyn, New York 11217
(979) 985-5289
(979) 530-9523 (fax)
tyclevenger@yahoo.com

**Counsel for Plaintiff Brian Huddleston**

**Certificate of Conference**

On or about April 3, 2025, I conferred with Asst. U.S. Attorney James Gillingham via telephone, and he indicated that the Defendants will oppose this motion.

**/s/ Ty Clevenger**
Ty Clevenger

**Certificate of Service**

On April 8, 2025, I filed a copy of this request with the Court's ECF system, which should result in automatic notification via email to Asst. U.S. Attorney James Gillingham, Counsel for the Defendants, at james.gillingham@usdoj.gov.

**/s/ Ty Clevenger**
Ty Clevenger