IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **BRIAN HUDDLESTON**,<br><br>    Plaintiff,<br><br>vs.<br><br>**FEDERAL BUREAU OF INVESTIGATION and UNITED STATES DEPARTMENT OF JUSTICE**<br><br>    Defendant | Case No. 4:20-cv-447-ALM |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR AN ORDER
TO SHOW CAUSE WHY THE FBI SHOULD NOT BE HELD IN CONTEMPT**

NOW COMES Brian Huddleston, the Plaintiff, replying in support of his Motion for an Order to Show Cause Why the FBI Should not be Held in Contempt ("Motion")(Dkt. #190):

### Introduction

The Motion extensively cited the record and numerous legal authorities to establish that the *Vaughn* indexes were grossly deficient and even deceptive (*e.g.*, records were intentionally omitted from the indexes without explanation). Defendant Federal Bureau of Investigation's Response in Opposition to Plaintiff's Motion for an Order to Show Cause ("Response")(Dkt. #196) ignored <u>every</u> example and <u>every</u> legal authority in the Motion, thus the Response is truly and utterly unresponsive. Furthermore, the testimony of the FBI's witnesses is so implausible and inaccurate that one must wonder if they were trying to mislead the Court even further.

The core of the FBI's argument is that it produced *some* metadata and at least *somewhat* of a *Vaughn* index for each laptop, and that should be good enough. *See, e.g.*, Response 8 ("[T]he issue of the sufficiency of the *Vaughn* Index is distinct from whether Defendant

- 1 -

produced *Vaughn* Indexes as required by the Amended Order."). This brings to mind an analogy. Suppose the parents of a teenage boy told him to clean up his room and do his homework before dinner. When his parents realized that the teenager had cleaned up only ten percent of his room and done only ten percent of his homework, suppose our teenager offered the following defense: "You told me to clean up my room and do my homework, but you didn't tell me I had to clean up <u>all</u> of my room and do <u>all</u> of my homework." That, in essence, is the FBI's argument in the Response, *i.e.*, "The Court ordered us to produce metadata and *Vaughn* indexes, but it did not order us to produce <u>all</u> metadata and it did not order us to produce <u>complete</u> *Vaughn* indexes." Just as our hypothetical teenager would get grounded for his defiance, the FBI should pay the consequences for its defiance.

## Argument

**1. The FBI made no serious attempt to review and produce metadata from the laptops, and the testimony of its witnesses is provably untrue.**

In a very conclusory paragraph, Acting Section Chief Shannon R. Hammer and Asst. U.S. Attorney Michael P. Spence both testified that they were unable to view and process certain types of files on the laptops:

> In addition to the types of records listed in the FBI's *Vaughn* index, there are potentially thousands of files on the Work laptop that cannot be viewed or processed pursuant to the FOIA. These file types include operating system files (*e.g.*, .exe files), Resilient File System (ReFS), New Technology File System (NTFS), and File Allocation Table (FAT).

Declaration of Shannon R. Hammer (Dkt. 196-1) ¶7 and Declaration of Michael P. Spence (Dkt. #196-2) ¶5. Neither of them explained why such files purportedly "cannot be viewed or processed," but the attached declaration of expert witness Yaacov Appelbaum proves their testimony is false. *See* Declaration of Yaacov Appelbaum (Exhibit 1). In fact, one need not be an IT professional or an expert witness to refute the testimony of Mr. Hammer or Mr. Spence. The

undersigned is not a computer expert by any stretch, but he was able to disprove their testimony with a simple Google search. The undersigned entered the search phrase "Is it possible to review FAT files?" in Google on May 8, 2025 and received the following response from Google AI:[1]

> **Yes, it is possible to review FAT files.** FAT (File Allocation Table) files are essentially the structure of a file system that organizes how data is stored on a disk. While variations of FAT are considered outdated compared to modern file systems, you can still access and analyze them to recover data or understand how they work.
>
> Here's how you can review FAT files:
>
> - **Using File Recovery Tools:** Tools like SysInfoTools and Cleverfiles can recover data from FAT formatted drives, even if they are corrupted or formatted.
> - **Using Fatcat:** Fatcat is a tool specifically designed for manipulating FAT filesystems, allowing you to view, recover, and fix them.
> - **Inspecting Drive Properties:** In Windows, you can right-click on a drive and select "Properties" to view the file system type, which will be FAT12, FAT16, FAT32, or exFAT, according to Sony.
> - **Using Bitberry File Opener:** This software can open .FAT files and potentially help you review their contents.
> - **Accessing Data through RAND HRS:** RAND HRS (Human Resources Study) provides data products, including FAT Files, which are available for public use after registering with HRS https://hrsdata.isr.umich.edu/data-products/rand.
> - **Using TSK (The Sleuth Kit):** TSK, a tool for digital forensics, can be used to recover files from FAT file systems.
> - **Using MSINFO32:** In Windows, MSINFO32 can be used to query FAT filesystem details.

The undersigned entered the same search phrase for .exe files, ReFS files, and NTFS files and received similar responses from Google AI indicating that each of those files could be reviewed. The testimony of Mr. Hammer and Mr. Spence is therefore not credible, and their readily-disprovable testimony suggests a lack of candor. The missing FAT files are particularly

---

[1] As witnessed by his electronic signature below, Ty Clevenger declares under penalty of perjury under the laws of the United States that his factual representations in this reply are true and correct.

noteworthy because they are very likely to reveal whether Democratic National Committee ("DNC") emails were downloaded from Seth Rich's laptop to a thumb drive rather than being "hacked" by Russian agents in 2016. *See* Exhibit 1, ¶5, citing testimony. And the Plaintiff has been making that point for at least two years. *See* January 13, 2023 Reply in Support of Motion for Clarification (Dkt. #92) 14-15. The FAT files could have and should have been reviewed and produced by the FBI and the U.S. Attorney's Office, along with the .exe files, the ReFS files, the NTFS files and all other missing files and metadata.

In its laundry list of rationalizations and excuses, the FBI alleges that the Plaintiff never defined "metadata." *See* Response 7. That is completely false. The Plaintiff defined metadata on January 11, 2024. *See* Response to November 28, 2023 Memorandum and Opinion (Dkt. #141) 6-7 and January 11, 2024 Declaration of Yaacov Apelbaum (Dkt. #141-3) ¶5. Furthermore, the Plaintiff sent the FBI a five-page email exquisitely detailing the type of metadata that he was seeking. *See* September 11, 2024 Email from Ty Clevenger to James Gillingham (Exhibit 2). The FBI just ignored all of that. In any event, if the FBI was uncertain about what "metadata" means, then it should have asked the Court for clarification long before now. In Mr. Apelbaum's declaration, he notes that the FBI failed to account for some of the most basic metadata, *e.g.*, the total gigabytes and total number of files on each device. Exhibit 1, ¶7 That rudimentary metadata would at least give us some idea of how many records the FBI is still withholding. *Id*. And that, in turn, probably explains why the FBI has not produced such basic and obvious metadata, *i.e.*, because the FBI does not want us to know just how many records it withheld and failed to account for in the *Vaughn* indexes.

The FBI argues that it is under no obligation to produce records in a new form or create new data, and the Plaintiff agrees. The Plaintiff, however, never asked for that. The Plaintiff

thought he made it sufficiently clear that he wanted the metadata in its native electronic format. *See* Exhibit 2. Lest there be any uncertainty, the Plaintiff will state here that he seeks the metadata defined in Exhibit 2 in its native electronic format. And he is entitled to that. "In making any record available to a person under [E-FOIA], an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format." 5 U.S. Code § 552(a)(3)(B). The FBI has never suggested that it is unable to *produce* the metadata in its native format. Instead, the FBI has argued that it is too hard to *review* the metadata before producing it, therefore it should not have to produce the data or account for the metadata in its *Vaughn* indexes. But those are separate issues. Ultimately, the FBI has two choices: (1) produce the metadata in its native format pursuant to 5 U.S. Code § 552(a)(3)(B); or (2) figure out a way to review the metadata, after which it can determine whether to assert exemptions in a *Vaughn* index pursuant to the Court's order.[2]

       This is an important point, because the FBI wants the Court to believe that contempt is an unavailable remedy insofar as the "operating system files (*e.g.* .exe files), Resilient File System (ReFS), New Technology File Systems (NTFS), and File Allocation Tables (FAT)" purportedly "could not be practically viewed or processed." Response 8. Mr. Apelbaum observed back in April that "[t]he FBI did not describe any efforts that it undertook to clean the files or otherwise render them readable, and it is impossible to believe that the country's premier law enforcement agency lacks the tools to clean the files or at least render and produce them in an electronic format." Dkt. #190-8 ¶3. The Response ignored that core issue even after Mr. Apelbaum flagged it, and despite the fact that the FBI had the burden to prove the infeasibility of reviewing the

---

[2] As established above, Mr. Hammer's and Mr. Spence's testimony about the purported difficulty of reviewing the files is false. The metadata files could easily be reviewed with readily available software, some of which is already installed on the average laptop. *See* Google AI Search Response, *supra* 3 ("In Windows, MSINFO32 can be used to query FAT filesystem details.").

records. *See, generally*, *SAI v. Transportation Sec. Admin.*, 315 F. Supp. 3d 218, 238–39 (D.D.C. 2018). Neither Mr. Hammer nor Mr. Spence explained what tools they used to review the files or how much time they devoted to the effort, thus the FBI has not met its burden.

> The declarations of Mr. Hammer and Mr. Spence give no indication of the software tools utilized, the level of effort expended (*e.g.*, personnel hours), or the level of expertise of the personnel who performed the reviews of the electronic devices (*e.g.*, a skilled expert versus someone with limited experience). In light of the evidence set forth in my previous declaration (Dkt. #190) and the evidence set forth above, it is my professional opinion that neither the FBI nor the U.S. Attorney's Office for the District of Columbia made a diligent attempt to retrieve and review the files or the metadata from the electronic devices that belonged to Seth Rich.

Exhibit 1 ¶8. And the Plaintiff has now established that at least some of the missing files and metadata most certainly <u>can</u> be reviewed, *id*. at ¶¶3-4, contrary to Mr. Hammer's and Mr. Spence's conclusory testimony.

The Court may also recall that the FBI has a history of conflicting stories about the personal laptop. In 2020, the FBI claimed that it had begun to process the files from the personal laptop, *see* Dkt. #10 at 2-3, but then in 2022 the FBI claimed it had never looked at files on the personal laptop. *See* Dkt. #73 at 1. Now the FBI claims it farmed the job out to Mr. Spence, the chief homicide prosecutor for the U.S. Attorney's Office for the District of Columbia. That raises its own questions. The Executive Office for U.S. Attorneys normally processes FOIA records on behalf of each of the 94 U.S. Attorney's Offices. *See* December 15, 2023 Declaration of Kara Cain, *Edward Butowsky v. U.S. Department of Justice, et al.*, Case No. 4:21-cv-00774 (E.D. Tex.) (Exhibit 3) ¶1. So why was this task assigned to Mr. Spence?  It is doubtful that a homicide prosecutor would have any expertise in processing FOIA requests, much less any expertise using IT tools to review metadata from a laptop. Were some of the files truly "corrupted," or did Mr. Spence just direct a random secretary or intern to try to open every file with Microsoft Notepad, *see* Dkt. #190-8 ¶4, and then declare them "corrupted" if Notepad didn't work? Mr. Spence

should be ordered to explain who attempted to review the metadata from the personal laptop, what qualifications he or she had, and what programs / tools he or she used.[3] For that matter, Mr. Hammer should be ordered to explain the same thing about the work laptop. Better yet, both should be ordered to testify at an evidentiary hearing where they can be cross-examined.

This brings us to another glaring failure in the *Vaughn* indexes. Nowhere in either index does the FBI cite any statutory exemptions for withholding any of the metadata. We do not know, for example, why the FBI omitted files about the total number and gigabytes of files on the laptops. It simply omitted that metadata without explanation. *See* Exhibit 1, ¶7. Or consider the personal laptop, where *every single file name* is redacted. *See* Dkt. #190-2. File names are metadata, *see* January 11, 2024 Declaration of Yaacov Apelbaum (Dkt. 141-3) ¶5, *Frazier v. Se. Georgia Health Sys., Inc.*, No. 2:21-CV-21, 2023 WL 10366708, at *9 (S.D. Ga. Nov. 8, 2023)(file name is metadata), *report and recommendation adopted*, No. 2:21-CV-21, 2024 WL 889994 (S.D. Ga. Mar. 1, 2024), aff'd, No. 24-10976, 2024 WL 4357399 (11th Cir. Oct. 1, 2024), cert. denied *sub nom. Frazier v. Se. Georgia Health*, No. 24-989, 2025 WL 1151267 (U.S. Apr. 21, 2025), and *United States v. Sawatzky*, 994 F.3d 919, 923 (8th Cir. 2021), yet the FBI never once explained what exemption it was asserting with respect to the withheld file names. Instead, the FBI treated the file name and the underlying file as if they were one and the same. They are not. *See, generally, U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D.

---

[3] Mr. Spence may not be an IT expert, but it is common knowledge that specific programs are required to open specific types of files. The undersigned entered the following query in Google on May 12, 2025: "Are specific programs needed to open specific types of files?" Google AI responded as follows:

> Yes, specific programs are generally needed to open specific types of files. File extensions, like .docx, .jpg, or .mp3, indicate the file type and the program that can typically open and manage it. The operating system uses these extensions to determine which program to launch when you double-click a file.

One could not, therefore, reasonably expect Notepad to open every type of file on a computer.

225, 235 (S.D. Cal. 2015) (Under Federal Rules of Evidence, metadata is a distinct form of electronically stored information). On PDF page 14 of the *Vaughn* index for the personal laptop (Dkt. #196-2), for example, the FBI redacted the filename for a "Rental Application" that was created more than three years before Seth Rich's death and more than three years before the purported "hack" of the Democratic National Committee. It's absurd enough to suggest that releasing an old rental application would jeopardize a "botched robbery" investigation or a "hacking" investigation, but all the more absurd to suggest that releasing the *filename* would somehow jeopardize either of those investigations.

Regardless, the FBI had a duty to explain (1) what exemptions applied to the filenames (or any other metadata) and (2) how those exemptions applied. "Specificity is the defining requirement of the *Vaughn* index." *Wiener v. FBI*, 943 F.2d 972, 979 (9th Cir. 1991).

> An adequate *Vaughn* Index must: (1) identify each document withheld; (2) state the applicable statutory exemption; and (3) explain how disclosure would harm the interests protected by the statutory exemption. *Hamdan*, 797 F.3d at 769 n.4. An agency must provide more than "boilerplate or conclusory statements," *Transgender L. Ctr.*, 46 F.4th at 781 (quoting *Shannahan v. IRS*, 672 F.3d 1142, 1148 (9th Cir. 2012)), and allow "a meaningful opportunity to contest, and ... an adequate foundation to review," the agency's withholdings, *Citizens Comm'n on Hum. Rts. v. Food & Drug Admin.*, 45 F.3d 1325, 1328 (9th Cir. 1995) (quoting *Wiener*, 943 F.2d at 977).

*Pomares v. Dep't of Veterans Affs.*, 113 F.4th 870, 881 (9th Cir. 2024). Furthermore, "an agency must release any segregable portions of a record that is otherwise exempt, typically by proceeding 'line-by-line.'" *Ctr. for Immigr. Stud. v. U.S. Citizenship & Immigr. Servs.*, No. 1:22-CV-02107 (TNM), 2025 WL 405115, at *2 (D.D.C. Feb. 5, 2025), quoting *Porup v. CIA*, 997 F.3d 1224, 1239 (D.C. Cir. 2021). If the government must segregate what is *within* a record "line-by-line," then certainly it may not withhold an entire record (in this case a filename) merely because it is affiliated with a *separate* record that is purportedly exempt.

2. **The Plaintiff has standing to prosecute this case pursuant to Fed. R. Civ. P. 25(c).**

The FBI's argument about the Plaintiff's standing is disingenuous and it reflects the FBI's desperation to hide records about Seth Rich. Even after an interest in a case is transferred, "the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c). If the FBI was so worried about having properly-named parties, then it should not have opposed the Plaintiff's motion for substitution pursuant to Rule 25(c). *See* Dkt. #169.

3. **The Response reflects the FBI's blasé indifference to the Court's orders.**

The FBI claims that it may provide additional information whenever it gets around to filing yet another motion for summary judgment. The deadline for filing such a motion passed more than two months ago, *see* Dkt. #187, yet the FBI is still telling the Court that it can go pound sand until some yet-to-be-determined time in the future when the FBI deigns to file its untimely motion. It's as if our hypothetical teenager said, "I'll finish cleaning my room and doing my homework whenever I get around to it." The Plaintiff will separately move the Court to enjoin the FBI from filing any more motions for summary judgment or motions for reconsideration until such time as it complies with the Court's existing orders. The FBI's repeated motions for summary judgment and motions for reconsideration have been redundant, seeking the same relief multiple times after the Court has rejected the FBI's arguments. In the Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment Regarding FOIA Exemption 7(a) (Dkt. #154) 1, for example, the Plaintiff cited the record to prove that as of March 7, 2024, the FBI was arguing about release of the personal laptop for the third time. The Response represents the fourth time, and the FBI's proposed future motion would represent *the fifth time* that the FBI has pounded the same losing argument. In the second paragraph of its Response, the FBI tries to

relitigate an argument that it already lost, *i.e.*, whether it can assert global privacy exemptions on behalf of a dead person.[4] As the Plaintiff has noted before, *see* Dkt. #141 at 3-4 and Dkt. 190 at 15, the FBI should seek mandamus or interlocutory appellate relief instead of beating a dead horse over and over again. It is a waste of judicial resources, it is incredibly tedious, and it looks like an attempt to grind down the Plaintiff with endless, redundant briefing.

**4. Michael G. Seidel's retirement does not affect his answerability to this Court.**

It appears that Mr. Seidel retired from the Department of Justice in April of 2025, because that is when Mr. Hammer took over as acting section chief. Dkt.#196-1. If so, then Mr. Seidel still would have been in charge when the deceptive and incomplete *Vaughn* indexes were produced to the Plaintiff in March of 2025. Accordingly, Mr. Seidel should be ordered to explain his role in the fiasco.

## Conclusion

The Court should grant the relief requested in the Motion (Dkt. 190), further enjoining the FBI from filing additional motions for summary judgment or reconsideration until such time as it complies with the Court's existing orders.

---

[4] The FBI misrepresents the applicability of *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 109 S. Ct. 1468, 103 L. Ed. 2d 774 (1989). For starters, *Reps. Comm.* considered the privacy interests of a living person, not a dead one. Furthermore, if the "core purpose of the FOIA as 'contribut[ing] significantly to public understanding of the operations or activities of the government,'" 489 U.S. at 775, then that purpose is met here because the Plaintiff seeks records indicating (1) whether the FBI built a false narrative regarding the source of the DNC emails published by Wikileaks in 2016; and (2) whether the FBI is still trying to protect that false narrative with overbroad, categorical exemptions.

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
212 S. Oxford Street #7D
Brooklyn, New York 11217
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Counsel for Plaintiff Brian Huddleston**

### Certificate of Service

On May 12, 2025, I filed a copy of this request with the Court's ECF system, which should result in automatic notification via email to Asst. U.S. Attorney James Gillingham, Counsel for the Defendants, at james.gillingham@usdoj.gov.

**/s/ Ty Clevenger**
Ty Clevenger