# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| BRIAN HUDDLESTON, | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | |
| | § | |
| | § | Civil Action No. 4:20-cv-447 |
| FEDERAL BUREAU OF | § | Judge Mazzant |
| INVESTIGATION and UNITED | § | |
| STATES DEPARTMENT OF | § | |
| JUSTICE, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion for an Order to Show Cause why the FBI Should not be Held in Contempt (the "Motion") (Dkt. #190) and Plaintiff's Motion for Leave to File Supplemental Evidence and Supplemental Brief in Support of Plaintiff's Motion for an Order to Show Cause why the FBI Should not be Held in Contempt (the "Supplemental Motion") (Dkt. #211). Having considered the Motion, the Supplemental Motion, and the relevant pleadings, the Court finds that the Motion and the Supplemental Motion should be **DENIED**.

## BACKGROUND

This Memorandum Opinion and Order arises in the context of a dispute between Plaintiff Brian Huddleston and Defendants Federal Bureau of Investigation (the "FBI") and the United States Department of Justice (the "DOJ," and collectively, the "Government"). A full and thorough review of this Freedom of Information Act ("FOIA") case is readily gleaned from the introductory portion of the Court's Memorandum Opinion and Order on the parties' prior cross-motions for summary judgment (Dkt. #70) and the Court's Memorandum Opinion and Order on the parties' prior motions for clarification (Dkt. #136).

The issue before the Court concerns Seth Rich's ("Rich") work laptop, a DVD, and a tape drive (collectively referred to as the "Work Laptop"), along with a CD containing an image of his personal laptop (the "Personal Laptop"). On November 28, 2023, the Court ordered the Government to "produce a *Vaughn* index addressing the information it possesses on the work laptop and personal laptop," and further clarified that "[t]he *Vaughn* index must address the metadata contained within Seth Rich's work laptop" (Dkt. #136 at pp. 24–25). Rather than produce any information outright, the Government elected to move for summary judgment, which the Court ultimately denied (Dkt. #175).

On August 16, 2024, the Court ordered the Government to conduct "a document-by-document review of the information it possesses on the compact disk containing images of Seth Rich's personal laptop, Seth Rich's work laptop, the DVD, and the tape drive that is responsive to Plaintiff's FOIA requests" (Dkt. #176 at p. 6). It further ordered that the Government either produce *Vaughn* indexes addressing such information or file a motion for summary judgment regarding the same by February 7, 2025 (Dkt. #176 at p. 7). That deadline was later extended to March 10, 2025 (Dkt. #187). The Government subsequently produced multiple indexes relating to the Personal Laptop and Work Laptop, which Plaintiff reviewed and ultimately found insufficient (Dkt. #196 at p. 4).

On April 8, 2025, Plaintiff filed the present Motion, asking the Court to sanction the FBI in light of its alleged failure to comply with the Court's August 16, 2024 Order, along with other relief associated with such failure (Dkt. #190 at p. 2). On May 6, 2025, the FBI filed its Response (Dkt. #196). 6 days later, Plaintiff filed his Reply (Dkt. #198), which was ultimately followed by the FBI's Sur-reply (Dkt. #201). Later, on November 24, 2025, Plaintiff filed his Supplemental Motion

and asked the Court to consider additional evidence and briefing contained therein (Dkt. #211). The FBI filed a Response to that Supplemental Motion as well (Dkt. #212), and Plaintiff once again filed his Reply (Dkt. #213).

## LEGAL STANDARD

A district court has the inherent authority to impose sanctions "in order to control the litigation before it." *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 703 (5th Cir. 1990), *aff'd sub nom. Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). This power may be utilized to sanction conduct which abuses the judicial process. *Chambers*, 501 U.S. at 45. Such conduct has taken on many forms, including a party's "willful disobedience of a court order" and its actions taken in "bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45–46 (citation modified). Inherent power, however, "may be exercised only if essential to preserve the authority of the court." *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996).

Contempt of court is a unique form of discipline and may take on either a civil or criminal form. *M. D. by Stukenberg v. Abbott*, 119 F.4th 373, 378 (5th Cir. 2024), *cert. denied sub nom.*, *M. D. By Next Friend Stukenberg v. Abbott*, 146 S. Ct. 99 (2025). "Whether a contempt order is civil or criminal turns on the 'character and purpose' of the sanction involved." *Id.* (quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441 (1911)).

Criminal contempt is a "punitive" imposition, applied "retrospectively for a completed act of disobedience." *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994) (citation modified). Criminal contempt invokes criminal penalties, which "may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal

proceedings." *Id.* at 826. The elements of a conviction for criminal contempt, which must be proven by the movant beyond a reasonable doubt, are: (1) a contemptuous act; and (2) a willful, contumacious, or reckless state of mind. *United States v. McCargo*, 783 F.2d 507, 510 (5th Cir. 1986).

In contrast, civil contempt is intended to compel obedience with a court order. *See In re Bradley*, 588 F.3d 254, 263 (5th Cir. 2009) ("If the purpose of the sanction is to coerce the contemnor into compliance with a court order, or to compensate another party for the contemnor's violation, the order is considered purely civil."). "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *SEC v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 669 (5th Cir. 1981).

In a civil contempt proceeding, the movant bears the burden of establishing the elements of contempt by clear and convincing evidence. *SEC v. Res. Dev. Int'l LLC*, 217 F. App'x 296, 298 (5th Cir. 2007) (per curiam) (unpublished) (citing *Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392, 401 (5th Cir. 1987)). Those elements are three-fold: (1) a court order is or was in effect; (2) the order requires certain conduct; and (3) the opposing party fails to comply with the court order. *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000); *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992). Finally, "[t]he contemptuous actions need not be willful so long as the contemnor actually failed to comply with the court's order." *Am. Airlines, Inc.*, 228 F.3d at 581; *see N.L.R.B. v. Trailways, Inc.*, 729 F.2d 1013, 1017 (5th Cir. 1984).

## ANALYSIS

### I.      Standing

The FBI first argues that Plaintiff no longer has standing to pursue this legal action and challenges Plaintiff's ability "to seek to hold Defendant in contempt for violating any court order"

on that ground (Dkt. #196 at p. 4). To support its argument, the FBI points to a motion entitled "Plaintiffs Motion to Substitute Parties" (Dkt. #164). That motion informed the Court that "Mr. Huddleston has transferred his interest in this case to Mr. Miller" and further requested that the Court "substitute Mr. Miller as the named plaintiff" (Dkt. #164). This attempted substitution was opposed and ultimately rejected by this Court as insufficient under FED. R. CIV. P. 25(c) (Dkt. #204 at p. 4). Nevertheless, the FBI alleges that Plaintiff's transfer of interest has destroyed his personal stake in the outcome of the lawsuit and has thus deprived the Court of jurisdiction regardless of the name listed on the title of the case (Dkt. #212 at p. 3).

The Court finds the FBI's argument contrary to both the plain text of Rule 25(c) and Fifth Circuit precedent. Rule 25(c) provides:

> **(c) Transfer of Interest.** If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party. The motion must be served as provided in Rule 25(a)(3).

FED. R. CIV. P. 25(c).

While a district court "may direct that the person to whom the interest has been transferred be substituted," it is under no obligation to do so. *In re Covington Grain Co., Inc.*, 638 F.2d 1357, 1361 (5th Cir. 1981). This is because "Rule 25(c) is not designed to create new relationships among parties to a suit but is designed to allow the action to *continue unabated when an interest in the lawsuit changes hands*." *Id.* at 1364 (emphasis added).

Here, Plaintiff purportedly transferred his interest in this case to one "Mr. Miller" (Dkt. #164). Thus, "the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action . . . ." FED. R. CIV. P. 25(c). Even though the Court has denied Plaintiff's previous request for substitution without prejudice, the

original named party may continue the case (Dkt. #204). This ruling is consistent with the purpose of Rule 25(c). *See, e.g.*, *Christiana Tr. v. Riddle ex rel. Riddle*, 819 F. App'x 255, 256 (5th Cir. 2020) (per curiam) (unpublished) (holding that a plaintiff's assignment of interest while a lawsuit was pending did not render the case moot, as "a live controversy—albeit between different parties—persisted"). Accordingly, the Court holds that Plaintiff may continue litigating this FOIA action regardless of his prior transfer of interest.

## II.    Plaintiff's Supplemental Motion

In his Supplemental Motion (Dkt. #211), Plaintiff requests that the Court take into consideration certain pieces of evidence related to former FBI director James B. Comey, Jr.'s ("Comey") indictment in the U.S. District Court for the Eastern District of Virginia. Specifically, Plaintiff argues that the evidence is relevant for the following reasons:

(a)    Comey served as FBI director from September 4, 2014 until May 9, 2017, and was therefore serving as the director when Rich was murdered (Dkt. #211 at p. 2);

(b)    Comey misspelled the names of certain individuals for the "apparent purpose of concealing his email from keyword searches" (Dkt. #211 at p. 2);

(c)    Comey used a private email account under a fake name to hide his communications (Dkt. #211 at p. 2);

(d)    The relevant indictment accuses Comey of acting in an antagonistic manner towards "a Senate committee's oversight investigation into the FBI's handling of the 2016 Russia election interference probe and related matters" (Dkt. #211 at p. 2);

(e)    The FBI used the indictment of purported Russian hackers as a basis for withholding records about Rich (Dkt. #211 at p. 3); and

(f)    Members of the FBI were caught placing certain evidence in "burn bags" before the Trump Administration took office on January 20, 2025 (Dkt. #211 at pp. 3–4).

6

Plaintiff argues that these facts provide evidence of bad faith in this case to such a degree that "the [G]overnment cannot plausibly argue that its keyword searches of its document indexing system . . . were sufficient [to comply with the Court's August 16, 2024 Order]" (Dkt. #211 at p. 4). Plaintiff thus offers the above information as support for his position that the FBI conducted insufficient or bad faith searches for documents responsive to his original FOIA request. The FBI counters Plaintiff's requested relief by labeling the proposed evidence as "a house of cards . . . constructed from speculation stacked upon speculation based on unrelated investigations, misspelled words, and recently discovered documents" (Dkt. #212 at p. 2). Additionally, the FBI describes the issue as one that has been precluded by this Court's prior findings.

The FBI is correct in its assertion that the Court has previously addressed the adequacy of the FBI's search in its prior opinions. As far back as 2022, this Court has held that "the FBI conducted a legally adequate search using 'methods which can be reasonably expected to produce the information requested' in Huddleston's FOIA requests" (Dkt. # 70 at p. 26). The Court repeated this sentiment in 2024, when it denied Plaintiff the ability to conduct further discovery because "Huddleston has not sufficiently persuaded the Court that there is tangible evidence of bad faith sufficient to justify discovery" (Dkt. #174 at p. 19).

The Court declines to second-guess its prior rulings on the issue of bad faith given the supplemental facts presented. Whether the FBI should be held in contempt will instead be decided solely upon its actions taken in immediate relation to the Court's prior orders. In that same vein, the Court cites the D.C. Circuit for a third time in its dealings with this case: "[m]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C.

7

Cir. 1991) (citing *Weisberg v. Department of Justice*, 745 F.2d 1476, 1486–87 (D.C. Cir. 1984)). To the extent that Plaintiff is concerned about additional relevant evidence being discovered in previously undisclosed rooms, his concerns will be addressed in a forthcoming order. Considering the Government's ongoing investigation, the Court can find no pressing or relevant need to expand the record to include the information listed above.

## III.    Civil Contempt

As noted above, civil contempt is warranted when the movant can prove, by clear and convincing evidence, that: (1) a court order is or was in effect; (2) the order requires certain conduct; and (3) the opposing party fails to comply with the court order. *Allied Pilots*, 228 F.3d at 581; *Martin*, 959 F.2d at 47. If the movant has carried its burden to present a prima facie case of contempt, the respondent may avoid contempt by showing that it has substantially complied with the order or has otherwise made reasonable efforts to comply. *In re Brown*, 511 B.R. 843, 849 (S.D. Tex. 2014) (citing *U.S. Steel Corp. v. United Mine Workers of Am., Dist. 20*, 598 F.2d 363, 368 (5th Cir. 1979)).

### A.    Elements One and Two

Plaintiff has easily met his burden to prove the first two elements by clear and convincing evidence. Specifically, Plaintiff has indicated that the Court's August 16, 2024 Amended Memorandum (Dkt. #176) (the "2024 Order") and the November 28, 2023 Order (Dkt. #136) (the "2023 Order," or, together with the 2024 Order, the "Orders") were both in effect during the relevant period. Neither party disputes that those rulings required the FBI to take the following actions:

> (a)    "[P]roduce a *Vaughn* index addressing the information it possesses on the compact disk containing images of Seth Rich's personal

laptop that is responsive to Plaintiff's FOIA requests" (Dkt. #136 at p. 24);

(b)    "[P]roduce a *Vaughn* index addressing the information it possesses on Seth Rich's work laptop, the DVD, and the tape drive that is responsive to Plaintiff's FOIA requests. The *Vaughn* index must address the metadata contained within Seth Rich's work laptop" (Dkt. #136 at pp. 24–25);

(c)    "[C]onduct and complete . . . a document-by-document review of the information it possesses on the compact disk containing images of Seth Rich's personal laptop, Seth Rich's work laptop, the DVD, and the tape drive that is responsive to Plaintiff's FOIA requests" (Dkt. #176 at p. 6); and

(d)    "[E]ither (1) produce *Vaughn* indexes addressing the information it possesses on the compact disk containing images of Seth Rich's personal laptop, Seth Rich's work laptop, the DVD, and the tape drive that is responsive to Plaintiff's FOIA requests by February 7, 2025; or (2) file a motion for summary judgment regarding the information it possesses on the compact disk containing images of Seth Rich's personal laptop, Seth Rich's work laptop, the DVD, and the tape drive that is responsive to Plaintiff's FOIA requests . . . ." (Dkt. #176 at p. 7).

The parties instead clash over the third element: whether Plaintiff has successfully indicated that the FBI violated the Orders.

### B.    Element Three

The Court is tasked with determining whether Plaintiff has provided clear and convincing evidence that the FBI has failed to comply with the 2023 or 2024 Order. To make such a showing, Plaintiff must identify facts related to FBI's failure to: (a) produce a *Vaughn* index of the information it possesses on the Personal and Work Laptop; (b) produce a *Vaughn* index of the information it possesses on the Work Laptop that addresses metadata; or (c) conduct a document-by-document review to construct the *Vaughn* indexes (Dkt. #136 at pp. 24–25; Dkt. #176 at p. 6).

9

1.      **The Government's required production of a *Vaughn* index of the information it possesses on the Personal and Work Laptops**

Plaintiff has not provided clear and convincing evidence that the FBI failed to comply with the first requirement imposed by the Court. The FBI argues that "it is undisputed that [it] produced *Vaughn* Indexes addressing the [W]ork and Personal Laptops" (Dkt. #196 at p. 8). The FBI believes that such production, standing alone, conclusively proves that it "complied with the . . . Order requiring production of *Vaughn* Indexes" (Dkt. #196 at p. 8). Plaintiff disagrees, taking issue with the composition of the indexes and arguing that they are "woefully inadequate" (Dkt. #190 at p. 8).

The Court cannot clearly address this issue without first disposing of the FBI's initial contention. Taken to its logical extreme, the FBI's rhetoric would suggest that any production, even an otherwise blank slip of paper, would preclude the Court from holding the FBI in contempt as long as the produced item was entitled "*Vaughn* index." Of course, the Court's use of the phrase "*Vaughn* index" itself implies a baseline amount of production—a *Vaughn* index is defined by unique legal characteristics which set it apart from other forms of production. Thus, a brief analysis of the relevant produced document is crucial insofar as it is necessary to determine whether the Court and Plaintiff alike have, in fact, received a *Vaughn* index as opposed to an alternative or otherwise inferior type of data collection. *See, e.g.*, *Kay v. F.C.C.*, 976 F. Supp. 23, 35 (D.D.C. 1997), *aff'd*, 172 F.3d 919 (D.C. Cir. 1998) ("[I]t is well established that the critical elements of the *Vaughn* Index lie in its function, and not its form. As a result, an agency may depart from the traditional *Vaughn* Index depending on the exemption invoked." (internal citations omitted)).

Although "there is no set formula for a *Vaughn* index . . . the least that is required, is that the requestor and the trial judge be able to derive from the index a clear explanation of why each

document or portion of a document withheld is putatively exempt from disclosure." *McQueen v. United States*, 264 F. Supp. 2d 502, 515 n.7 (S.D. Tex. 2003) (citation modified) (quoting *Hinton v. Dep't of Justice*, 844 F.2d 126, 129 (3d Cir. 1988)), *aff'd*, 100 F. App'x 964 (5th Cir. 2004). Additionally, a *Vaughn* index is ultimately defined by its service to three important functions:

> [I]t forces the government to analyze carefully any material withheld, it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, and it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court.

*Maynard v. C.I.A.*, 986 F.2d 547, 557 (1st Cir. 1993) (quoting *Keys v. United States Dept. of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987)).

*Vaughn* indexes are often extensive, and their sufficiency is perhaps best analyzed (and often re-analyzed) in a summary judgment context. *See Eakin v. United States Dep't of Def.*, No. CV 5:16-972, 2019 WL 2368683, at *2 (W.D. Tex. June 5, 2019) ("[T]he Court is willing to consider Eakin's *Vaughn* index objections even though production remains ongoing . . . . But the proper vehicle to do so remains a motion for partial summary judgment teeing-up the specific legal question with a *Vaughn* index that samples withholdings or redactions."). In this context, the Court's Orders did not impose upon the FBI an obligation to produce perfect *Vaughn* indexes on its first attempt. Rather, the FBI will be found to have fulfilled its obligation under the Orders if it has presented Plaintiff with a disclosure that permits the Court to deem it identifiable as a *Vaughn* index.

As with any analysis, context matters. When the Court drafted and published its 2023 Order, it took the FBI at its word that "[w]hile the exact amount of data contained on the disc is not known, the FBI estimates that the images of Seth Rich's personal laptop comprise approximately 400,000 pages, plus images and videos" (*See* Dkt. #138 at p. 24 n.16 (citing Dkt. #73 at p. 9)). The Court repeated this rhetoric in its 2024 Order, where it clearly noted that "[t]he Work

Laptop and the Personal Laptop collectively contain hundreds of thousands of documents" (Dkt. #176 at p. 5).

However, the *Vaughn* index for the Personal Laptop contains no more than 1,297 entries (Dkt. #190 at p. 8). The *Vaughn* index for the Work Laptop is also surprisingly sparse, accounting for a grand total of 2,094 withheld records (Dkt. #190 at p. 4; Dkt. #190-1 at p. 2). Not only that, but the *Vaughn* indexes also contain many instances where the FBI appears to have opted to withhold an entire file, rather than a specific portion of it, without any apparent justification for doing so. This defies a core aspect of *Vaughn* indexes, as the Fifth Circuit has expressly recognized that "A *Vaughn* index is a common FOIA procedural device that lists the documents responsive to the request and *explains why portions have been withheld*." *Cooper Cameron Corp. v. U.S. Dept. of Labor, Occup. Saf. & Health Admin.*, 280 F.3d 539, 544 n.12 (5th Cir. 2002) (emphasis added). In defense of its *Vaughn* indexes, the FBI cites a correspondence between counsel for both parties:

> Regarding files that are not included in the *Vaughn* indexes, I expressed that our preferred course of action is to address the documents in the motion for summary judgment briefing so that there can be a fulsome explanation of the issues rather than doing it piecemeal prior to that time.

(Dkt. #196 at p. 9 (quoting Dkt. #190-11 at p. 2)).

From these facts alone, the Court is tempted to call into question the sufficiency of the *Vaughn* indexes to support any future motion for summary judgment on behalf of the FBI. *See, e.g.*, *Gahagan v. U.S. Citizenship & Immigration Services*, No. CIV.A. 15-796, 2015 WL 6738549, at *4 (E.D. La. Nov. 4, 2015) ("The inadequacy of the *Vaughn* Index prevents summary judgment in Defendant's favor. To succeed on the Motion for Summary Judgment, Defendant must resubmit its *Vaughn* Index with the above issues corrected."); *Negley v. Fed. Bureau of Investigation*, No. 5:12-CA-00362-OLG, 2013 WL 12099972, at *2 (W.D. Tex. July 31, 2013) ("Agencies invoking

exemptions must provide the requestor with a document index, known as a *Vaughn* Index, which lists *each withheld document* and provides an *explanation for why it was withheld*." (emphasis added)), *aff'd sub nom.*, 589 F. App'x 726 (5th Cir. 2014). However, the Court finds that it would be better positioned to make such a ruling at summary judgment. Accordingly, it refrains from straying from the purpose behind the present contempt motion. Because the *Vaughn* indexes produced by the FBI contain enough information and organization to warrant being identified as such, the Court finds that the FBI has provided Plaintiff with *Vaughn* indexes that are adequate to meet its obligations under the general language contained in the Orders.

The Court's hesitancy to pursue civil contempt against the FBI under the facts presented is reflected in *Gahagan v. United States Citizenship*, No. CV 15-2540, 2016 WL 3997049, at *5 (E.D. La. July 26, 2016). There, a district court found that a government agency had failed to provide a *Vaughn* index sufficient to "justify . . . non-disclosure of the requested information." *Id.* The district court "therefore ordered [the agency] to produce a revised *Vaughn* index more fully explaining why the challenged records fall within one of the privileges." *Id.* However, the government agency again failed to submit a sufficient *Vaughn* index, leaving multiple index entries completely unchanged and implicitly relying upon the attorney work product privilege doctrine to justify its inaction. *Id.* As a result, the plaintiff filed a contempt motion, which the Court found "unwarranted in this case" because, among other things, "the agency has discharged its FOIA obligations with respect to most of the issues in this case." *Id.* at 6. Here, the FBI has provided Plaintiff with *Vaughn* indexes. While the provided discovery is far from flawless, it is not so egregious as to warrant civil contempt—had the Court preferred the *Vaughn* indexes to conform to

particular standards beyond those presently observed, it would have provided the parties with such an order.

However, the FBI cannot have its cake and eat it, too. The FBI was ordered to make a choice in the Court's 2024 Order: "[i]t is further ordered the government shall either (1) produce *Vaughn* indexes . . . or (2) file a motion for summary judgment" (Dkt. #176 at p. 5). The FBI's production of vague and comparatively sparse *Vaughn* indexes, together with its stated intent to file further motions for summary judgment, collectively work to undermine the Court's insistence on the election of a specific course of action. In light of the decencies of the *Vaughn* indexes detailed above and the FBI's disregard of its prior obligation to choose a particular course of action, the Court finds Plaintiff entitled to additional information on this matter. Like the district court in *Am. C. L. Union Found. of N. H. v. United States Customs & Border Prot.*, 586 F. Supp. 3d 68 (D.N.H. 2022), the Court finds that "it should be of minimal burden [to the FBI] to file a supplemental affidavit detailing [the FBI's] process and reasoning" regarding (a) the absence of any detailed explanations as to how disclosure would harm the interests protected by the claimed statutory exemptions; and (b) its failure to include all withheld documents in its *Vaughn* indexes. *See id.* at 77. Thus, the Court declines to deploy the "potent weapon" of the contempt power and will instead order the FBI to produce such an affidavit as further outlined below. *See Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 383 (5th Cir. 1999) (quoting *Martin*, 959 F.2d at 47).

> **2.    The Government's required production of a *Vaughn* index of the information it possesses on the Work Laptop that addresses metadata**

The Court's 2023 Order required that the *Vaughn* index related to Rich's Work Laptop "address the metadata contained within [it]" (Dkt. #136 at p. 25). Even a cursory review of both *Vaughn* indexes reveals that they each include metadata "in the form of the name of each file, folder

14

and sub-folder, date and time modified, file type, size of file, and number of pages" (Dkt. #196-1 at p. 7). It is in this context that Plaintiff takes issue with the absence of the FBI's production of what he terms "rudimentary metadata," including the "total gigabytes and total number of files" on the Work Laptop (Dkt. #198 at p. 4). The Court is thus tasked with determining whether the FBI's failure to provide specific metadata to Plaintiff constitutes a violation of the 2023 Order.

In answering this question, the Court is immediately faced with a glaring absence of any explanation put forward by the FBI addressing the lack of purported "rudimentary metadata" in the disclosures. This presents a significant issue, as the Court's 2023 Order discussed metadata in the context of a reply brief filed by Plaintiff in January 2023 (Dkt. #136 at p. 19 (citing Dkt. #92 at p. 15)). In fact, the Court made specific reference to that reply brief, which includes Plaintiff's request for "metadata indicating that [certain files] existed but [were] downloaded to a thumb drive," along with "metadata to determine whether the records were truly hacked (versus being downloaded to a thumb drive)" (Dkt. #92 at p. 15). To the extent that the FBI has failed to provide Plaintiff with the metadata necessary to make such determinations, including providing Plaintiff with, at a minimum, the total gigabytes and number of files on the Work Laptop, the Court finds that the FBI has failed to comply with the spirit of the 2023 Order.

Nevertheless, for a finding of civil contempt, a party must be shown "to have failed 'in meaningful respects to achieve substantial and diligent compliance' with a clear and unambiguous court decree." *Lelsz v. Kavanagh*, 673 F. Supp. 828, 839 (N.D. Tex. 1987) (internal citation omitted) (quoting *Aspira of N. Y., Inc. v. Board of Ed. of City of N. Y.*, 423 F. Supp. 647, 649 (S.D.N.Y. 1976)); *see also Baddock v. Villard*, 606 F.2d 592, 593 (5th Cir. 1979). As previously noted, the Fifth Circuit has plainly held that "a court may not hold in contempt a party that substantially complies with an

order." *Carter v. Local 556, Transp. Workers Union of Am.*, 156 F.4th 459, 502 (5th Cir. 2025) (quoting *Whitfield v. Pennington*, 832 F.2d 909, 914 (5th Cir. 1987)). Given the vague definition of "metadata" and the FBI's provision of some metadata for both the Work and Personal Laptops, the Court finds that Plaintiff has not carried his burden to prove that civil contempt is warranted in this instance. However, while the FBI will not be held in contempt under the facts presented, it will be ordered to produce additional metadata in the manner outlined below.

### 3.    The Government's duty to conduct a document-by-document review

The Court previously recognized that "[e]ven if a document-by-document review may require arduous efforts by the Government, it remains a requirement of categorical withholding" (Dkt. #176 at p. 5). It further held that it "recognizes that such a review of hundreds of thousands of documents will take a large amount of time," and provided the FBI with ample time to conduct a thorough search (Dkt. #176 at p. 6).

Over a year later, the FBI filed two affidavits on the issue of its document-by-document review of the Work Laptop and Personal Laptop. The first affidavit, signed by Acting Section Chief Shannon R. Hammer, specifically alleges that the Work Laptop *Vaughn* index was based upon a prior "document-by-document review," and that the review and resulting index did not include "unreviewable files that could not be practically processed" (Dkt. #196-1 at ¶ 8). The second affidavit is signed by Assistant U.S. Attorney Michael Spence and alleges that the Personal Laptop *Vaughn* index was similarly compiled according to a "document-by document review" which omitted "unreviewable files that cannot be practically processed" and documents such as "user manuals associated with software installed on the Personal Laptop" (Dkt. #196-2 at ¶ 6).

As previously indicated by this Court, "[i]n analyzing affidavits and declarations submitted by an agency, the agency's affidavits are entitled to a 'presumption of legitimacy.'" *Huddleston v.*

16

*F.B.I.*, No. 4:20-CV-00447, 2022 WL 4593084, at *5 (E.D. Tex. Sept. 29, 2022) (quoting *Negley v. F.B.I.*, 589 F. App'x 726, 730 (5th Cir. 2014)), *clarified on denial of reconsideration*, No. 4:20-CV-00447, 2023 WL 8235243 (E.D. Tex. Nov. 28, 2023). Absent a showing of contradictory evidence or bad faith, Plaintiff will not be able to rebut this presumption. *See id.* To that end, Plaintiff has directed the Court to multiple snippets of "Google AI" responses and a declaration by one Yaacov Appelbaum.[1] With these two pieces of evidence, Plaintiff attempts to highlight the ease at which the FBI could have included "unreviewable files" in its alleged "document-by-document" review. Specifically, Plaintiff argues that the FBI should have utilized third party programs and attempted to restore or analyze an unknown number of documents to review them for relevant information, rather than conducting what the FBI has termed "a review of all files that could be practically processed" (Dkt. #201 at p. 3).

The Court finds that the FBI conducted an adequate document-by-document review under the circumstances presented by Plaintiff's contempt motion. On the fourth page of its 2024 Order, the Court cited *Citizens for Responsibility & Ethics in Washington v. United State Department of Justice*, 746 F.3d 1082, 1098 (D.C. Cir. 2014), to note that the Government "must conduct a document-by-document review *in order to assign documents to the proper category*." *Id.* (quoting *Bevis v. Dep't of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986)). At a minimum, the affidavits reflect that the FBI conducted a document-by-document review sufficient to determine whether each document was accessible. The consequences of the FBI's failure to fully inspect certain files, however, are better decided through a motion for summary judgment than one for contempt. For

---

[1] "The undersigned entered the same search phrase for .exe files, ReFS files, and NTFS files and received similar responses from Google AI . . . ." (Dkt. #198 at p. 3).

17

instance, at summary judgment, the Government will be required to defend any further attempt it makes at including the unreviewed files in a categorical exclusion under FOIA Exemption 7(A). *See Gavin v. U.S. S.E.C.*, No. CIV.04-4522 (PAMJSM), 2006 WL 2975310, at *3 (D. Minn. Oct. 16, 2006) (holding that an agency had "complied with the Court's directive to conduct a document-by-document review" where the "document-by-document review revealed that *each document* fell within one of the five functional categories, and that no document contained information that could be segregated" (emphasis added)).

The rationale behind this decision is reflected in Plaintiff's discussion of metadata, which takes a detour from addressing the matter of contempt by boldly stating that "the FBI has two choices: (1) produce the metadata in its native format pursuant to 5 U.S. Code § 552(a)(3)(B); or (2) figure out a way to review the metadata, after which it can determine whether to assert exemptions in a *Vaughn* index pursuant to the Court's order" (Dkt. #198 at p. 5). The Court need not entertain such hypotheticals related to the document-by-document review described by the Hammer and Spence affidavits in a contempt context—it is enough, at this juncture, to merely repeat the rhetoric expressed by this Court and others around the country, that "even under a generic category approach, 'the [agency] must itself review *each document* to determine the category in which it properly belongs.'" *United Am. Fin., Inc. v. Potter*, 531 F. Supp. 2d 29, 40 (D.D.C. 2008) (quoting *Bevis*, 801 F.2d at 1389); *see also Gavin v. U.S. S.E.C.*, No. CIV. 04-4522 PAM/JSM, 2006 WL 208783, at *2 (D. Minn. Jan. 26, 2006) ("The SEC must conduct a document-by-document review to discern whether documents or portions of the documents fall outside the functional categories."). In the limited context of a motion for contempt regarding the Court's 2024 Order, the Court finds that the FBI has complied with its obligation to conduct a document-by-document

review of the Personal and Work Laptops to determine which withheld documents belong in certain categories.

### C.      Defendant's Additional Offering

In its Response to Plaintiff's claim regarding "gaps" in the *Vaughn* Indexes, the FBI stated that "Defendant is willing to offer an amended *Vaughn* Index filling in these gaps to provide information about the files and indicate that they could not be opened" (Dkt. #196 at p. 11). In the interest of transparency, the Court elects to enforce the FBI's offer in favor of Plaintiff.

## IV.     Plaintiff's Proposed Civil Contempt Remedies

Plaintiff requests a variety of relief at the conclusion of his Motion, ranging from ordering the FBI "to pay all fees and costs related to . . . Plaintiff's prosecution of this motion pursuant to the Court's inherent authority to sanction," to appointing "a special master to review and oversee production of all the items covered by the August 16, 2024 Order" (Dkt. #190 at pp. 16–17). As the Court declines to hold the FBI in civil contempt, it must also decline to issue any portion of Plaintiff's proposed relief.

## V.      Criminal Contempt

Finally, Plaintiff also asks the Court to consider exercising its criminal contempt power against Michael G. Seidel, a former employee of the Department of Justice who has previously signed many declarations related to this case. After considering the Motion and the arguments of counsel, the Court finds that there are insufficient grounds to order Michael G. Seidel to show cause why he should not be held in criminal contempt.

### CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion for an Order to Show Cause why the FBI Should not be Held in Contempt (Dkt. #190) and Plaintiff's Motion for Leave to File

Supplemental Evidence and Supplemental Brief in Support of Plaintiff's Motion for an Order to Show Cause why the FBI Should not be Held in Contempt (Dkt. #211) are hereby **DENIED**.

It is further **ORDERED** that the FBI shall, within 60 days of this Memorandum Opinion and Order, file a supplemental affidavit detailing the FBI's process and reasoning regarding: (a) the absence of detailed explanations in the *Vaughn* indexes as to how disclosure would harm the interests protected by the claimed statutory exemptions; and (b) its failure to include all withheld documents in its *Vaughn* indexes.

It is further **ORDERED** that the FBI shall, within 60 days of this Memorandum Opinion and Order, file a supplemental affidavit which addresses the following: (a) why multiple records in the *Vaughn* indexes contain conclusory descriptions such as "This file contains 1 item"; and (b) to what extent the FBI believes the produced *Vaughn* indexes offer sufficiently narrow categorical descriptions.

It is further **ORDERED** that the FBI shall, within 60 days of this Memorandum Opinion and Order, produce a supplemental *Vaughn* index addressing metadata on the Work Laptop which identifies: (a)  the total number of files on the Work Laptop; (b) the total amount of storage taken up by files on the Work Laptop; and (c) whether and/or how many files were downloaded from the Work Laptop to one or more external storage device(s).

It is further **ORDERED** that, within 60 days of this Memorandum Opinion and Order, the FBI must follow through on its offer to produce "an amended *Vaughn* Index filling in the[] gaps to provide information about [any omitted] files and indicate that they could not be opened" (Dkt. #196 at p. 11). This production shall address what measures, if any, the FBI took to "open," view, or otherwise restore any allegedly corrupted or unreadable files.

**IT IS SO ORDERED.**

 **SIGNED this 24th day of March, 2026.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE