## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| BRIAN HUDDLESTON, | |
| Plaintiff, | |
| v. | CIVIL ACTION No. 4:20CV447 |
| FEDERAL BUREAU OF INVESTIGATION and UNITED STATES DEPARTMENT OF JUSTICE, | JUDGE AMOS MAZZANT |
| Defendants. | |

## GOVERNMENT'S NOTICE OF COMPLIANCE

The Government files this notice of compliance with the Court's March 24, 2026, Memorandum Opinion and Order.

## INTRODUCTION

On March 24, 2026, the Court entered a Memorandum Opinion and Order (the "Order") denying Plaintiff's Motion for an Order to Show Cause Why the FBI Should Not be Held in Contempt, Dkt. No. 190, and Plaintiff's Motion for Leave to File Supplemental Brief in Support of Plaintiff's Motion for an Order to Show Cause why the FBI Should not be Held in Contempt, Dkt. No. 211. *See* Dkt. No. 214. The Order required the FBI to provide certain additional information. Specifically, the Court ordered:

> [T]hat the FBI shall, within 60 days of this Memorandum Opinion and Order, file a supplemental affidavit detailing the FBI's process and reasoning regarding: (a) the absence of detailed explanations in the *Vaughn* indexes as to how disclosure would harm the interest protected by the claimed statutory exemptions; and (b) its failure to include all withheld documents in the *Vaughn* indexes.

[T]hat the FBI shall, within 60 days of this Memorandum Opinion and Order, file a supplemental affidavit which addresses the following (a) why multiple records in the *Vaughn* indexes contain conclusory descriptions such as "This file contains 1 item"; and (b) to what extent the FBI believes the produced *Vaughn* indexes offer sufficiently narrow categorical descriptions.

[T]hat the FBI shall, within 60 days of this Memorandum Opinion and Order, produce a supplemental *Vaughn* index addressing metadata on the Work Laptop which identifies: (a) the total number of files on the Work Laptop; (b) the total amount of storage taken up by files on the Work Laptop; and (c) whether and/or how many filed were downloaded from the Work Laptop to one or more external storage device(s).

[T]hat, within 60 days of this Memorandum Opinion and Order, the FBI must follow through on its offer to produce "an amended *Vaughn* Index filling in the[] gaps to provide information about [any omitted] files and indicate that they could not be opened (Dkt. # 196 at p. 11). This production shall address what measures, if any, the FBI took to "open," view, or otherwise restore any allegedly corrupted or unreadable files.

Dkt. No. 214, at 20.

This Notice, including the attached documents, provides the information required by the Order and will address each aspect of the Order in turn.

I. **Supplemental Affidavits Detailing Potential Harm Arising From Release of Files and Justification for Not Individually Listing All Withheld Documents**

Defendants are providing the Declarations of Isabel Marie Lara, attached hereto as Exhibit 1, and Michael Spence, attached hereto as Exhibit 2, to explain how the disclosure of records identified on the *Vaughn* indices would harm the interests protected by the claimed statutory exemptions. *See* Lara Decl. ¶ 32; Spence Decl. ¶¶ 5–6.

Here, Defendants are withholding records under FOIA Exemption 7(A). That exemption protects from disclosure records or information compiled for law enforcement purposes, the disclosure of which could reasonably be expected to cause particular harms. 5 U.S.C. § 552(b)(7). Invoking the exemption requires the agency to make a two-part showing. First, the agency must demonstrate the records were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7).

2

Second, an agency must "demonstrate that disclosure (1) could be reasonably expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice* ("CREW"), 746 F.3d 1082, 1096 (D.C. Cir. 2014) (quotation omitted).

The Spence Declaration makes that showing. It explains that "production of any data of any kind from any computer possessed or used by Seth Rich at the time of his death could reasonably be expected to interfere with law enforcement proceedings." Spence Decl. ¶ 7. Thus, the explanation as to how disclosure of information would harm the interest claimed by the statutory exemptions is contained in the declarations rather than in the *Vaughn* indices.

The *Vaughn* indices also identify other FOIA exemptions, including Exemptions (b)(3), (b)(4), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E).[1] The Lara Declaration explains why disclosure of records subject to those FOIA exemptions would harm the interests claimed by these exemptions. *See* Lara Decl. at 7–13.

Regarding FOIA Exemption 3, the Lara Declaration explains that the FBI asserts FOIA Exemption 3 pursuant to Cybersecurity Information Sharing Act of 2015 ("CISA") to protect the information and contents of the Work Laptop provided to the FBI by the Democratic National Committee ("DNC") to assist with the FBI's investigation into the hacking of the DNC's computer networks. Lara Decl. ¶¶ 18–19. Disclosure of this information would harm the statutory exemption because it would negatively affect the ability of federal government agencies, including the FBI, "to investigate the increase of cyber intrusions against individuals, organizations and/or entities by revealing crucial information used by law enforcement to identify, track, and prosecute criminals

---

[1] The Court need not reach these exemptions because FOIA Exemption 7(A) should independently resolve the issue.

by allowing them to identify government techniques and develop countermeasures to avoid detection." Lara Decl. ¶ 19.[2]

The Lara Declaration also explains how the disclosure of records subject to FOIA Exemption 4 would harm the interest protected by that exemption. Exemption 4 exempts "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." Lara Decl. ¶ 20. The FBI has asserted this exemption categorically and individually, based on the FBI's document-by-document level review of the contents of the Work Laptop. *Id.* ¶ 21. The DNC has informed the FBI that it objects to the release of the contents of the Work Laptop. Lara Decl. ¶ 14(B). Release of this information would be determinantal to the DNC's commercial interests. *Id.* Moreover, release of this information, which is confidential in nature and would not customarily be released,[3] would also be detrimental to the DNC, which shared the information with the FBI under an implied assurance of confidentiality. *Id*.

The Lara Declaration addresses how the interests protected by FOIA Exemption 7(D) would be harmed if information withheld pursuant to that exemption is released. Lara Decl. ¶ 14(D). In this case, the FBI has asserted FOIA Exemption 7(D) to protect from disclosure the contents of the Personal and Work Laptops at both a categorical level as well as individually based on a document-by-document review. *Id.* ¶ 29.

---

[2] Because Exemption 3 applies if the withheld material falls within the scope of the underlying statute, the agency does not, as a general rule, have to demonstrate harm. *See James Madison Project v. Off. of Dir. of Nat'l Intel.*, 725 F. Supp. 3d 81, 90 n.6 (D. D.C. 2024) ("the [foreseeable harm] requirement does not apply to [E]xemption 3."); *Hall & Assocs. v. EPA*, No. 18-cv-1749, 2021 WL 1226668, at *3 n.3 (D.D.C. Mar. 31, 2021) ("reasonably foreseeable harm need not be shown if 'disclosure is prohibited by law'" (quoting 5 U.S.C. § 552(a)(8)(A)(i)(II))); *see also Ass'n of Retired R.R. Workers, Inc. v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987) (The "purpose of Exemption 3 [is] to assure that Congress, not the agency, makes the basic nondisclosure decision."); *id.* ("[T]he policing role assigned to the courts" with respect to Exemption 3 "is reduced.").

[3] Among other things, the Work Laptop contains documents relating to campaign strategy and voter-demographic information. *See generally* Revised Work Laptop *Vaughn* Index.

FOIA Exemption 7(D) exempts from disclosure "records or information compiled for law enforcement purposes" when disclosure "could reasonably be expected to disclose the identity of a confidential source[.]" Lara Decl. ¶ 28. The FBI frequently receives reports from confidential sources under express or implied assurances of confidentiality. Lara Decl. ¶ 14(C). Based on its experience, the FBI knows that sources must feel free to furnish information to the FBI with complete candor and without fear that their cooperation will later be made public. *Id.* The release of a source's identity and/or information provided under an assurance of confidentiality would eliminate that source as a future means of obtaining information and would have a chilling effect on the activities and cooperation of other sources. *Id.* Therefore, if the information protected by FOIA Exemption 7(D) is released, it would severely hamper law enforcement efforts to detect and apprehend individuals engaged in the violation of criminal laws. *Id.*

The Lara Declaration also addresses FOIA Exemption 7(E). Lara Decl. ¶ 14(D). Exemption 7(E) exempts from disclosure "records or information compiled for law enforcement purposes" that would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guideline for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. *Id.* ¶ 30. The FBI has asserted FOIA Exemption 7(E) to protect from disclosure on both a categorical and an individual level based upon a document-by-document review of the Personal and Work Laptops. *Id.* ¶ 31. The FBI applied FOIA Exemption 7(e) to withhold the non-public methods it uses to collect and analyze information it obtains for investigative purposes. Lara Decl. ¶ 14(D). Release of the information protected from disclosure by this exemption would be harmful because it would enable criminals to take countermeasures to circumvent the effectiveness of the FBI's investigative methods and engage in activities that violate the law. *Id.*

The Lara Declaration also addresses FOIA Exemptions 6 and 7(C). Lara Decl. ¶¶ 22–27. Exemption 6 exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* ¶ 22. Similarly, FOIA Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to constitute an unwarranted invasion of privacy." *Id.* ¶ 23.

The Lara Declaration explains that these interests would be harmed by releasing the information. The Court has previously rejected the FBI's global assertion of privacy interests on behalf of Seth Rich (Dkt. No. 70). However, the FBI continues to assert that exemption to preserve the issue for appeal. Further, this is the first time the FBI has asserted the exemption following a document-by-document level review and after determining that the public's interest in disclosure would not override the privacy interest at stake. Lara Decl. ¶ 26.

Additionally, the FBI has asserted FOIA Exemptions 6 and 7(C) to withhold the names and other identifying information of third parties who were merely mentioned in the contents of the materials on the Personal and Work Laptops. *Id.* ¶ 27. Because the FBI is an investigative and intelligence agency, disclosure of these third parties' names in connection with FBI records carries a negative connotation. *Id.* Disclosure of the names could subject the individuals to possible harassment or criticism. *Id.* Accordingly, disclosure of the information sought to be withheld by FOIA Exemptions 6 and 7(C) poses a harm to the privacy interest that those exemptions protect.

In sum, the FBI included in its declaration supporting its motion for summary judgment and in the declarations submitted with this Notice – not the *Vaughn* indices – detailed explanations as to why disclosure would harm the interest protected by the statutory exemptions. The *Vaughn*

indices serve a different function. They provide a roadmap linking particular records to particular exemptions and in turn, to the harms described in the declarations.

The declarations also explain why not every withheld file appears in the *Vaughn i*ndices. As set forth in the Lara and Spence Declarations, the *Vaughn* indices contain all records that could readily be reviewed for purposes of the FOIA. Some files, primarily system files, which are installed by computer and software manufacturers to operate the computer—here, not generated by the government or by Rich—could not be readily reviewed and processed for purposes of the FOIA. *See* Lara Decl. ¶ 7 (citing Dkt. No. 196-1, Hammer Declaration, ¶ 7). These system files are for the operation of the laptop itself. They are necessary to store and access records, but they are not substantive records themselves. In practical terms, they are akin to the steel components of a filing cabinet that houses paper records. Those parts are necessary to store and access the records, but the steel, rollers, and latches are not themselves substantive records that could be reviewed for purposes of the FOIA. In essence, the documents included in the *Vaughn* indices are the documents in the cabinet, not the cabinet hardware. For these reasons, the systems files were not included in the *Vaughn* indices.

In addition, as Mr. Wickman explains in his declaration,

The Vaughn indices submitted in this case omit system files. System files are not created by the government or the computer user. System files are generated by the operating system or by software installations and are common to all computers. Unlike user-created files such as .docx, .xlsx, and .pdf, system files are not practically reviewable in the common understanding of the term. While it may be theoretically possible to open certain system files, doing so typically involves specialized software and the contents would not yield information susceptible to a meaningful FOIA exemption analysis.

Declaration of William R. Wickman, attached hereto as Exhibit 3, ¶ 13.

In any event, the omission of those files from the *Vaughn* indices is not dispositive because all the files, regardless of whether they are listed on the *Vaughn* indices, are properly withheld

pursuant to FOIA Exemption 7(A). As set forth in the Spence Declaration, "the production of any data of any kind from any computer possessed or used by Seth Rich at the time of his death reasonably could be expected to interfere with law enforcement proceedings." Spence Decl. ¶ 7. This showing is sufficient to justify withholding under FOIA Exemption 7(A).

II.    **Supplemental Affidavit Regarding Descriptions in *Vaughn* Indices**

The Lara Declaration addresses the issue of "conclusory descriptions" such as "This file contains 1 item" as well as the categorical descriptions that FBI applied to documents.

Turning first to the Court's concern about "conclusory descriptions," the descriptions were not intended to characterize the substance of the data. As explained in the Lara Declaration, the *Vaughn* index for the Work Laptop displays in a file directory list format. Lara Decl. ¶ 7. The entries in the *Vaughn* index were literal descriptions of the directory structure observed during the review process. For instance, where a parent directory did not contain a standalone file at its root level and instead contained on subordinate or child directories, the phrase "contains 1 item" was used in the ordinary file-system sense to refer to the *visible* entries in that directory, that is, "1 item." *See* Lara Decl. ¶¶ 7–8.

The description, "contains 1 item" was not based on or offering any inference, interpretation, or substantive conclusion regarding the contents of the subdirectory or the nature of the files located further down the hierarchy of folders. In the context of electronic file systems, folders and directories are themselves entries within a parent directory. Thus, describing a folder as "containing 1 item" is a factual description of the immediately visible contents of that directory level. The description therefore reflects an observation of the file structure, not a conclusory or evaluative judgment.

8

The *Vaughn* indices use the narrowest categorical exemptions practicable given the nature of the laptops. Although the Court has found the laptops are "records" for purposes of this litigation, neither laptop was created or modified by the government. The laptops and the files on the laptops are wholly the product of private parties and are merely maintained by the government as evidence in connection with ongoing criminal investigations.

The FBI generally uses three (3) categories when categorizing documents for purposes of FOIA. Those categories are:

- *Evidentiary/Investigative Materials*: This category includes copies of records or evidence, and derivative communications discussing or incorporating evidence. A derivative communication describes, verbatim or in summary, the contents of the original record, how it was obtained, and how it relates to the investigation. Other derivative communications report this information to other FBI Field Offices or other law enforcement agencies, either to advise them of the progress of the investigation, or to elicit their assistance in handling investigative leads.

- *Administrative Materials*: Materials that fall into this category include items such as case captions, serial numbers, identities of FBI field offices involved, dates of investigation, and detailed instructions designed to ensure that investigative procedures are conducted within the appropriate FBI and DOJ guidelines.

- *Public Source Materials*: The FBI typically segregates and releases this category of information from its pending files. Public source materials, include, but are not limited to, certain newspaper articles, press releases, and court documents determined to be segregable in part or full because such information would not interfere with any pending or prospective enforcement proceedings.

In this case, due to the nature of the laptops and files on the laptops—specifically the fact that none of them were created, maintained, modified, or otherwise the product of the government—the only applicable category is Evidentiary/Investigative Material, which is applied here.[4] There are no further subcategories utilized by the FBI that could be applied to the documents. Therefore, the categories are as narrow as possible given the nature of the documents.

---

[4] This category is more fully described in the Hammer Declaration filed on May 6, 2025. (Dkt. No. 196-1.)

III.   **Supplemental Declaration Regarding Metadata on the Work Laptop**

The Lara Declaration addresses information regarding metadata on the Work Laptop. As to the specific issues raised in the Order, the Work Laptop contains 217,974 items. *See* Lara Decl., at ¶ 9. These files take up 474.0120332 gigabytes space on the laptop. *Id*.

The Order also directs the FBI to identify whether and/or how many files were downloaded from the Work Laptop to one or more external storage devices. As a threshold issue, the Work Laptop does not contain a file that identifies transfers to external storage media and discloses that information. Wickman Decl. ¶ 6. Further efforts to attempt to determine whether files were transferred from the Work Laptop to an external storage device would require the FBI to create new record(s) which did not previously exist, thus exceeding the obligations that the FOIA imposes on federal agencies. Wickham Decl. ¶ 7.[5]

Even if such an undertaking was contemplated by the FOIA, it would likely prove futile here. As Mr. Wickman explains, "[o]perating system metadata is insufficient, by itself, to determine whether and/or how many files were copied to one or more external storage devices." *Id.* ¶ 9. Even if files had been transferred, the method of transfer can occur in a manner that leaves "little to no forensic fingerprint." *Id.* ¶ 11. "[O]perating systems do not natively log file transfer

---

[5] The purpose of the FOIA is not to answer interrogatory-style questions. *See e.g., Jud. Watch, Inc. v. Dep't of State*, 177 F. Supp. 3d 450, 456 (D.D.C. 2016) (finding that "[a] question is not a request for records under FOIA and an agency has no duty to answer a question posed as a FOIA request."), *aff'd on other grounds*, 681 F. App'x 2 (D.C. Cir. 2017); *Jean-Pierre v. BOP*, 880 F. Supp. 2d 95, 103 (D.D.C. 2012) (concluding that request for objective pieces of information, such as "who gave the order" and "on what day," are not "cognizable under FOIA, because they ask questions calling for specific pieces of information rather than records"). And as the Fifth Circuit held earlier this year, federal agencies are not required to create new documents from existing records for purposes of satisfying their obligations under the FOIA, even when that would involve as little as copying and pasting information into a new document. *See Hagar v. Fed. Bureau of Investigation*, 170 F.4th 946, 953 (5th Cir. 2026) ("Much like taking a screen shot, doing so would only require a few steps. Yet even those steps would require the agency to create something new, which it would not have otherwise had before. As we said in *Rutila*, FOIA 'does not obligate agencies to satisfy such requests.'") (quoting *Rutila v. United States Dep't of Transp.*, 72 F.4th 692, 698 (5th Cir. 2023)).

activity to external media. Determining if files were transferred from the Work Laptop to an external drive, and if so, what files were, is not achievable through examination of the Work Laptop alone." *Id.* ¶ 14.

For these reasons, the FBI cannot provide the number of files transferred from the Work Laptop to external devices.

### IV.    **Supplemental *Vaugn* Index Including Omitted Files**

The supplemental *Vaughn* index including omitted files is attached hereto. *See* Revised Personal Laptop *Vaughn* Index, attached hereto as Exhibit 4. The revised index includes information that was omitted from the original *Vaughn* index for the Personal Laptop. These omitted files include records that were corrupted and could not be opened as well as documents relating to software license agreements or user manuals associated with software installed on the Personal Laptop.

By way of example, in Plaintiff's Motion for An Order to Show Cause Why the FBI Should Not be Held in Contempt, Plaintiff identified Records 205–206, 212, 223, and 1106–1110 as missing from the index. Dkt. No. 190, at 12. The revised *Vaughn* index now includes these records. For instance, Records 205 and 206 are described as "File corrupted/would not open." Revised Personal Vaughn at 17. The same is true for records 212, 223, and 1106–1110. *Id.* at 18, 167-168.

The Spence Declaration addresses the steps taken to open, view, or restore the corrupt files. *See* Spence Decl. ¶ 9. Files on the Personal Laptop were reviewed in native format using a forensics tool. *Id.* By way of example, Microsoft Word files were opened in Microsoft Word. *Id.* On occasion, when attempting to open a file, an error message was received indicating the file could not be opened and could be corrupted, or that the document could not be read; others generated a document with no content, or the document failed to load. *Id.* The Revised *Vaughn* index for the Personal Laptop contains entries for these files, which indicate "File corrupted/would not open."

No further efforts were made to repair these files, which had been corrupted since the first attempt to review them.

Even if the FBI could repair the files, a repaired file is a newly generated file ("record") produced through deliberative intervention by the government. Wickman Decl. ¶ 12. In essence, a repaired file is a new file which did not previously exist. *Id.* Therefore, again, repairing files to respond to a FOIA request would require the creation of new records, which exceeds the requirements of the FOIA.

Date: May 26, 2026

Respectfully submitted,

JAY COMBS
UNITED STATES ATTORNEY

*/s/ James Gillingham*
JAMES GILLINGHAM
Assistant United States Attorney
Texas Bar No. 24065295
110 N. College Ave.; Suite 700
Tyler, Texas 75702
Tel:  (903) 590-1400
Fax: (903) 590-1436
Email:  James.Gillingham@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2026, a true and correct copy of the foregoing document was filed electronically with the court and has been sent to counsel of record via the court's electronic filing system.

*/s/ James Gillingham*
JAMES GILLINGHAM
Assistant United States Attorney

12