**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **BRIAN HUDDLESTON**, | |
| Plaintiff, | |
| vs. | **Case No. 4:20-cv-447-ALM** |
| **FEDERAL BUREAU OF INVESTIGATION and UNITED STATES DEPARTMENT OF JUSTICE** | |
| Defendant | |

## PLAINTIFF'S BRIEF ON ARTICLE III STANDING

Pursuant to the Court's June 3, 2026 Order (Dkt. #224), Plaintiff submits this supplemental brief addressing his constitutional standing to bring the two "policy-or-practice" claims set out in the First Supplemental Complaint (Dkt. #114; *see* Dkt. #166 (order granting leave)). The standing question is not close. The real party in interest—Yehuda Miller, who holds the assigned claims and is himself a requester subject to the very FBI policies the Supplemental Complaint challenges—satisfies Article III under every test any court has applied to FOIA policy-or-practice claims. The FBI's contrary arguments, raised for the first time on reply, misstate the governing standard, ignore the FBI's own lead authority, and confuse the permissible scope of relief with the constitutional question of standing.

## I.  The two policy-or-practice claims, and the party whose standing is at issue.

The Supplemental Complaint does not seek any record covered by Plaintiff's underlying FOIA requests—nothing about Seth Rich, the purported hacking of the Democratic National Committee, or any related subject. *Compare* Supplemental Complaint (Dkt. #114) *with* First Am.

1

Compl. (Dkt. #3) ¶¶ 6–8. It instead asserts two forward-looking challenges to ongoing FBI policy: (1) that the FBI's "Digital Evidence Policy Guide" violates 5 U.S.C. § 552(a)(3) by purporting to declare that a record is not a record (Supplemental Complaint ¶ 7); and (2) that the FBI violates 5 U.S.C. § 552(g) by failing to disclose all of its major information systems (*id.* ¶ 8). The relief sought is wholly prospective: an injunction against following the "record"-redefinition policy, an order compelling § 552(g) compliance, an order requiring the FBI to disclose to FOIA requesters which major information systems were and were not searched, and an injunction against any practice that expands the statutory exemptions or otherwise prevents the release of disclosable records. *Id.* ¶¶ 9–12.

The party whose standing matters is Yehuda Miller. Mr. Huddleston assigned his interest in this matter to Mr. Miller on or about June 24, 2024—before the First Supplemental Complaint was filed on July 15, 2024 (Dkt. #166). Because standing is assessed as of the filing of the operative pleading, and because the policy-or-practice claims seek only prospective relief, the relevant inquiry is whether Mr. Miller suffers the requisite injury. As shown below and in his supporting declarations, he does. *See* Declaration of Yehuda Miller (Dkt. #222-2)(hereinafter "Miller Declaration I"); Declaration of Brian Huddleston (Dkt. #222-3).[1]

## II.  The governing standard for standing in FOIA policy-or-practice cases.

Article III standing requires an injury in fact that is concrete, particularized, and actual or imminent; a causal connection between the injury and the challenged conduct; and a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 332 (5th

---

[1] Since filing his May 1, 2026 declaration (Dkt. #222-2), Mr. Miller has submitted additional Freedom of Information Act requests to the FBI in his capacity as a journalist. *See* Declaration of Yehuda Miller (Exhibit 1)(hereinafter "Miller Declaration II").

Cir. 2002). Where prospective relief is sought, the plaintiff must show a real and immediate threat of future injury, not merely past harm. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).

The FOIA policy-or-practice claim is the doctrinal vehicle by which a requester satisfies that future-injury requirement. The claim exists precisely because the production of records can moot a "specific request" claim while leaving an unlawful agency policy intact to impair the requester's access in the future. *See Citizens for Resp. & Ethics in Washington v. United States Dep't of Just.,* 846 F.3d 1235, 1242 (D.C. Cir. 2017); *Newport Aeronautical Sales v. Dep't of the Air Force*, 684 F.3d 160, 164 (D.C. Cir. 2012) ("[E]ven though a party may have obtained relief as to a specific request under the FOIA, this will not moot a claim that an agency policy or practice will impair the party's lawful access to information in the future."); *Long v. IRS*, 693 F.2d 907 (9th Cir. 1982).

The Fifth Circuit has not yet articulated a FOIA-specific standing test for such claims. The two circuits that have—the D.C. Circuit and the Ninth Circuit—require, in substance, the same showing. The Ninth Circuit's formulation is the most explicit: a plaintiff has shown injury in fact if he demonstrates "(1) the agency's FOIA violation was not merely an isolated incident, (2) the plaintiff was personally harmed by the alleged policy, and (3) the plaintiff himself has a sufficient likelihood of future harm by the policy or practice." *Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1103 (9th Cir. 2016); *accord Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 933 F.3d 1088, 1092 (9th Cir. 2019). The D.C. Circuit reaches the same place through a case-by-case assessment of whether the alleged policy "will impair the party's lawful access to information in the future." *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 777–78 (D.C. Cir. 2018). Notably, these are the very principles—ongoing injury and the threat of future harm—on which the FBI built its reply. Mr. Miller satisfies them.

3

**III.  Mr. Miller has Article III standing under any applicable test.**

 **A.  Mr. Miller suffered a concrete, particularized injury in fact.**

FOIA confers on "any person" a legal right to obtain agency records, and the denial of records to a person entitled to them is itself a cognizable, concrete injury. *See Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989). Mr. Miller's injury, however, is not the abstract deprivation of an index or a bare procedural irregularity. The FBI's redefinition of "record" and its refusal to disclose its major information systems caused the agency to conduct incomplete searches and to withhold records to which Mr. Miller is entitled. Those are concrete, downstream consequences—records he did not receive—of exactly the kind that satisfy Article III's concreteness requirement. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 440–42 (2021); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340–42 (2016); *see generally* Miller Declaration I (Dkt. #222-2).

This case is therefore nothing like the cases in which courts have found an indexing or disclosure grievance too abstract to support standing. In *Pennsylvania Department of Public Welfare v. Sebelius*, 674 F.3d 139 (3d Cir. 2012), the plaintiff offered only "vague and indefinite allegations" that the lack of an index caused unspecified "difficulty," and it could not identify any concrete information it had been unable to locate. *Id.* at 156-57. Here, by contrast, Mr. Miller identifies the concrete records and searches that the challenged policies affected. The injury is real, traceable to the policies, and his.

 **B. The FBI's violations are not isolated incidents.**

The first *Hajro* prong is satisfied on the face of the FBI's own characterization of its conduct. The challenged conduct is not a one-off mistake; it is embodied in a written, agency-wide policy document—the "Digital Evidence Policy Guide"—and in a standing agency practice of declining to disclose its major information systems. A written policy applied across all of the FBI's

FOIA work is the antithesis of an "isolated incident." The FBI has a documented history of concealing not merely individual records but entire records systems from FOIA requesters. *See, e.g., Negley v. FBI*, 658 F. Supp. 2d 50, 57-58 (D.D.C. 2009).

That distinction also answers the FBI's reliance on *Muttitt v. U.S. Central Command*, 813 F. Supp. 2d 221, 231 (D.D.C. 2011). The rule that "a single FOIA violation is insufficient as a matter of law to state a claim" for a policy or practice exists to screen out claims built on isolated errors. It has no application where, as here, the plaintiff challenges a written policy and an established practice rather than a discrete misstep.

### C. Mr. Miller faces a sufficient likelihood of future harm—as the FBI's own authority confirms.

The FBI's lead standing case proves Plaintiff's point. The FBI relies on *National Security Counselors v. CIA*, 931 F. Supp. 2d 77 (D.D.C. 2013), for the proposition that a policy-or-practice plaintiff must show ongoing or future injury. But that decision holds that the future-injury requirement is satisfied "where FOIA requesters challenge an alleged ongoing policy or practice and can demonstrate that they have pending FOIA requests that are likely to implicate that policy or practice." *Id.* at 93. That is exactly what Mr. Miller demonstrates: he has FOIA business before the FBI that will be processed under the challenged policies, he intends to continue submitting requests to the agency. *See* Miller Declaration I (Dkt. #222-2).

The bar for showing an ongoing or future injury is deliberately modest. Because "no mere mortal has the ability to see into the future," a plaintiff need only put forward a plausible, "more than … nebulous" assertion of an ongoing policy or practice that is likely to implicate his requests. *Nat'l Sec. Couns. v. C.I.A.,* 898 F. Supp. 2d 233, 260 (D.D.C. 2012*), aff'd sub nom. Nat'l Sec. Couns. v. Cent. Intel. Agency*, 969 F.3d 406 (D.C. Cir. 2020). Mr. Miller's particularized declaration far exceeds the generalized, untethered statements—"we regularly file FOIA requests

and will continue to do so"—that the court found insufficient in the 2013 *National Security Counselors* decision and in *Citizens for Responsibility & Ethics in Washington v. DHS*, 527 F. Supp. 2d 101, 106 (D.D.C. 2007). The FBI cannot invoke that line of authority while ignoring the showing those very cases say will satisfy it.

In any event, the harm here is not merely prospective—it is present and ongoing. The challenged policies govern the live requests that Mr. Miller now holds. So long as the FBI adheres to its "record"-redefinition policy and refuses to disclose which systems it searched, Mr. Miller continues to be denied a complete and lawful response. That is a current injury, redressable now.

### D. The FBI cannot manufacture a lack of standing through voluntary cessation.

The FBI suggests that because it is now searching the work laptop "as if" it were a record, there is "not even theoretical ongoing harm" from the "record"-redefinition policy. Reply 3 n.1. That is a textbook voluntary-cessation argument, and it fails. A defendant cannot defeat a live controversy "by the simple expedient of suspending its challenged conduct after it is sued." *FBI v. Fikre*, 601 U.S. 234, 241 (2024). The defendant bears the "formidable burden" of showing that the challenged conduct "cannot reasonably be expected to recur," *id.*; *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000), and a litigation-driven decision to search one laptop in one case does not retract the Digital Evidence Policy Guide. The policy remains in force, remains applicable to Mr. Miller's other dealings with the FBI, and can be reapplied at the agency's discretion. The FBI's footnote also says nothing at all about the independent § 552(g) claim concerning the non-disclosure of the agency's information systems.

6

### IV.    The assignment confirms standing—it does not defeat it.

#### A.  The assignment vests standing in Mr. Miller and creates no procedural bar.

The FBI argues that Mr. Huddleston "distanced himself" from any continuing injury by assigning his interest to another individual. Reply 3. That argument is backwards. An assignment does not extinguish a claim or its attendant injury; it transfers them to the assignee, who may then sue. The Supreme Court has squarely held that "an assignee of a legal claim … has standing to pursue that claim in federal court," even where the assignee promises to remit the proceeds to the assignor. *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 271, 285–86 (2008); *accord Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000) ("an assignee can sue based on his assignor's injuries"). Mr. Miller holds legal title to the assigned claims and may sue on the injuries that accompany them. His independent, forward-looking standing as a current and future FBI requester is additional, not necessary.

Nor does the assignment create any procedural impediment. Under Federal Rule of Civil Procedure 25(c), a transfer of interest does not require substitution; the action "may be continued by or against the original party" unless the court, on motion, directs the transferee to be substituted or joined. Plaintiff stands ready to substitute or join Mr. Miller should the Court conclude that course is appropriate, and Rule 17(a)(3) forecloses dismissal on real-party-in-interest grounds until a reasonable time has been allowed for that step.

#### B.  In all events, standing is measured as of the Supplemental Complaint, when Mr. Miller already held the assigned interest.

Even setting the assignment aside, the date on which Mr. Miller's standing is measured forecloses the FBI's challenge. Standing is assessed at the commencement of suit, *Davis v. FEC*, 554 U.S. 724, 734 (2008); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000), and the pleading that supplies that moment is the operative one. "When a plaintiff

files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007). The Supreme Court reaffirmed that principle last term, holding that an amended pleading supersedes the original—rendering the original "irrelevant"—and that "changes in parties, or changes in claims … effectively remake the suit," such that jurisdiction "follows the operative pleading." *Royal Canin U. S. A., Inc. v. Wullschleger,* 604 U.S. 22, 36, 145 S. Ct. 41, 53, 220 L. Ed. 2d 289 (2025). Because standing is a component of subject-matter jurisdiction, the operative complaint fixes the date for assessing it. *See also Carr v. Alta Verde Indus., Inc.*, 931 F.2d 1055, 1061 (5th Cir. 1991) (treating the filing of the complaint as the controlling date).

Applied here, that rule is dispositive. The two policy-or-practice claims were first asserted in the First Supplemental Complaint, filed July 15, 2024 (Dkt. #166), and Mr. Miller had acquired the assigned interest on or about June 24, 2024—weeks earlier. The constitutionally relevant party thus held standing as of the operative pleading that first brought these claims. The FBI cannot defeat that showing by reaching back to the 2020 First Amended Complaint (Dkt. #3), which pleaded only the specific-request FOIA claims and never raised the policy-or-practice claims now at issue.

Nor can the FBI invoke the principle that a plaintiff may not "manufacture" standing through a later pleading. That rule polices attempts to cure a standing defect for a claim that existed at the outset; it has no application to a claim first asserted by a later pleading, whose jurisdiction is judged as of the pleading that first alleged it. *See Rockwell*, 549 U.S. at 473–74; *cf. Mathews v. Diaz*, 426 U.S. 67, 75 (1976) (jurisdictional prerequisite satisfied by the filing of a supplemental complaint); *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 779 F.3d 1036, 1044 (9th Cir. 2015) (a Rule 15(d) supplemental complaint may establish standing as of its filing). Because the policy-or-

practice claims entered this case only through the Supplemental Complaint, measuring Mr. Miller's standing as of that pleading does not manufacture jurisdiction—it applies the ordinary rule that a newly added claim's standing is assessed when the claim is brought.

**V. The scope-of-relief argument is not a standing argument.**

Finally, the FBI invokes *Trump v. CASA, Inc.*, 145 S. Ct. 2540 (2025), to suggest that Plaintiff cannot obtain universal relief. Whatever the merits of that observation, it is irrelevant to the question the Court has posed. *CASA* concerns the permissible scope of equitable remedies; it does not speak to Article III standing. The redressability inquiry asks only whether relief running to *this* plaintiff would redress *this* plaintiff's injury—and individualized relief plainly would. An order barring the FBI from applying the challenged policies to Mr. Miller's requests, and requiring the FBI to disclose which information systems it searched in responding to him, fully redresses his injury regardless of whether anyone else benefits. Redressability is therefore satisfied. To the extent broader relief is ultimately warranted, Plaintiff intends to seek class certification—the very mechanism *CASA* identified as the proper route to relief that reaches beyond the named parties. *See Sosna v. Iowa*, 419 U.S. 393, 402 (1975).

<u>**Conclusion**</u>

Plaintiff—through the real party in interest, Yehuda Miller—has constitutional standing to bring the two policy-or-practice claims set out in the First Supplemental Complaint. Mr. Miller suffered a concrete, particularized injury caused by ongoing, written FBI policies; those policies are not isolated incidents; and he faces a sufficient likelihood of continuing and future harm under the very standard the FBI itself invokes. The Court should hold that Plaintiff has standing, deny the FBI's motion for protective order (Dkt. #217), and permit the policy-or-practice claims and

their attendant discovery to proceed. To the extent the Court deems substitution or joinder necessary, Plaintiff respectfully requests leave to substitute or join Mr. Miller.

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
212 S. Oxford Street #7D
Brooklyn, New York 11217
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Counsel for Plaintiff**

## Certificate of Service

On June 15, 2026, I filed a copy of this request with the Court's ECF system, which should result in automatic notification via email to Asst. U.S. Attorney James Gillingham, Counsel for the Defendants, at james.gillingham@usdoj.gov.

**/s/ Ty Clevenger**
Ty Clevenger

10