**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **BRIAN HUDDLESTON**, | |
| Plaintiff, | |
| vs. | **Case No. 4:20-cv-447-ALM** |
| **FEDERAL BUREAU OF INVESTIGATION and UNITED STATES DEPARTMENT OF JUSTICE** | |
| Defendant | |

## PLAINTIFF'S SURREPLY ON ARTICLE III STANDING

Plaintiff submits this sur-reply in response to the Federal Bureau of Investigation's Brief on Standing (Dkt. #227). The FBI's brief rests on a single premise: that standing for the two policy-or-practice claims must be measured as of April 10, 2023, when only Mr. Huddleston was before the Court. Every argument the FBI makes—that Mr. Huddleston had no pending requests, that the assignment to Mr. Miller transferred nothing, and that Mr. Miller's requests are "irrelevant"—depends on that premise. The premise is wrong; and even if it were right, the defect the FBI identifies is curable, not fatal. Most significantly, the FBI completely ignores one of Plaintiff's two pattern-and-practice claims. Specifically, it never challenges Plaintiff's standing to assert a pattern-and-practice claim under 5 U.S.C. §552(g), *see* First Supplemental Complaint (Dkt. #114) ¶8, and indeed his standing to assert that claim is unassailable. As a practical matter, that alone defeats the FBI's attempt to evade discovery.

1

I.    **The FBI's measuring date misstates the law.**

    A.    **Local Rule CV-7(k) is a timeliness rule; no court has used it—or any rule like it—to fix the date for measuring standing.**

The FBI's entire brief turns on Local Rule CV-7(k), which provides that a document filed with a granted motion for leave "will be deemed to have been filed as of the original date of its filing." E.D. Tex. Local Rule CV-7(k). The FBI reads that sentence as a command that the Court assess Article III standing as of April 10, 2023. The rule will not bear that weight.

CV-7(k) is a timeliness-and-docketing provision. It exists to keep a filer from being penalized by the Court's delay in ruling on a motion for leave—so that a pleading is not treated as untimely under a limitations period or scheduling order because the Court took fifteen months to act. *See Rothman v. Gregor*, 220 F.3d 81, 96 (2d Cir. 2000) (treating the date a motion to amend is filed as the date the action was commenced for statute-of-limitations purposes). The subsection's own text confirms its limited role: it separately provides that "[t]he time for filing any responsive documents will run from the date of the order on the motion for leave." *Id.* The rule thus distinguishes the relation-back date it uses for timeliness from the date on which the pleading's legal consequences attach—the date of the order. A *proposed* pleading that no party may yet answer, and that has no operative effect until leave is granted, is not a live pleading for case-or-controversy purposes before that date. *See Murray v. Archambo*, 132 F.3d 609, 611–12 (10th Cir. 1998) (an amendment filed without leave "is without legal effect," and only a properly filed amendment can supersede the original); *Hoover v. Blue Cross & Blue Shield of Ala.*, 855 F.2d 1538, 1544 (11th Cir. 1988) (same); 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1484 (2d ed. 1990) (same); *see also King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (only a properly-filed amended complaint is the effective pleading in the case).

2

No court has applied CV-7(k)—or any comparable "deemed-filed-as-of-the-original-date" leave provision—to fix the date for assessing Article III standing or subject-matter jurisdiction. Every application of the rule concerns timeliness of filings. The FBI asks the Court to convert a provision designed to protect filers from docketing delay into a device for defeating federal jurisdiction—the inverse of what relation-back doctrines do. Relation back preserves rights; it does not extinguish them. *See Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 550 (2010) (the purpose of relation back is to balance the repose protected by the statute of limitations against the Federal Rules' preference for resolving disputes on their merits); Fed. R. Civ. P. 15 advisory committee's note to 1966 amendment (to deny relation back "is to defeat unjustly the claimant's opportunity to prove his case"); *see also Foman v. Davis*, 371 U.S. 178, 181–82 (1962) (federal practice disfavors resolving cases "on the basis of such mere technicalities" rather than on the merits). And a local rule cannot in any event enlarge or contract the constitutional standing inquiry. *See* Fed. R. Civ. P. 82 ("These rules do not extend or limit the jurisdiction of the district courts . . . ."); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 370 (1978) ("[I]t is axiomatic that the Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction."); *Sibbach v. Wilson & Co.*, 312 U.S. 1, 10 (1941) (noting a court's inability, "by rule, to extend or restrict the jurisdiction conferred by a statute"); *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004) ("Only Congress may determine a lower federal court's subject-matter jurisdiction."); Fed. R. Civ. P. 83(a)(1). Accordingly, the local rule cannot be construed so as to alter any determination of standing because standing is jurisdictional. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998). The constitutionally operative date for the policy-or-practice claims is July 15, 2024—when the Court granted leave and the claims entered the case. Dkt. #166. By then, Mr. Miller had held the assigned interest for weeks. Dkt. #226-1, ¶ 2.

**B.  Standing for these claims is measured as of the supplemental pleading that created them—as the FBI's own authority holds.**

Jurisdiction follows the operative pleading. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007); *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 36 (2025). The FBI's lead timing case proves the point. In *Lutter*, the Third Circuit held that where supplemental allegations "substantively affect the entirety of [the plaintiff's] claims and relief sought," standing is evaluated as of the later, claim-defining pleading—not the original. *Lutter v. JNESO*, 86 F.4th 111, 126–27 (3d Cir. 2023). The two policy-or-practice claims appear nowhere in the 2020 First Amended Complaint; they exist only in the Supplemental Complaint. *Lutter* therefore requires measuring standing as of the Supplemental Complaint—and, for the reasons just given, as of the date that pleading became operative.[1]

Independently, a supplemental pleading may establish standing on the basis of facts that arose after the original complaint. The Ninth Circuit so holds, *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 779 F.3d 1036, 1044 (9th Cir. 2015), as does the D.C. Circuit, *Scahill v. District of Columbia*, 909 F.3d 1177, 1184 (D.C. Cir. 2018), each resting on *Rockwell*. The Fifth Circuit has not held otherwise, and the Court should follow the reasoned majority rule. The FBI's contrary authority, *TXCAT v. Phoenix Group Metals, LLC*, 2010 WL 5186824 (S.D. Tex. Dec. 14, 2010), addresses only the attempt to pretend standing existed at the original filing when it did not; it does

---

[1] The FBI may invoke the principle that jurisdiction is assessed at the commencement of suit and that a defect existing then cannot be cured by the later addition of a party with a valid claim. *See Conolly v. Taylor*, 27 U.S. (2 Pet.) 556, 565 (1829); *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570–71 (2004). That rule polices attempts to cure a jurisdictional defect in the original action by substituting a plaintiff who has a valid claim. It does not govern a claim first asserted in a supplemental pleading, whose standing is assessed when the claim is brought. *See Rockwell*, 549 U.S. at 473–74; *Northstar*, 779 F.3d at 1044. The policy-or-practice claims were never part of the original or First Amended Complaint; they entered this case only through the Supplemental Complaint.

not bar supplementation with genuine post-filing facts that establish a live injury—the device Rule 15(d) authorizes and *Northstar* and *Scahill* approve. [2]

## II.    Mr. Miller satisfies every element of standing the FBI invokes.

The FBI's lead case supplies the test: future injury "is satisfied" where a plaintiff has "pending FOIA requests that are likely to implicate the challenged policy or practice." *Nat'l Sec. Couns. v. CIA*, 931 F. Supp. 2d 77, 93 (D.D.C. 2013). Mr. Miller meets it. He holds the live requests at the heart of this litigation—including the request for the work laptop the FBI is still processing—and those requests are governed by the very "record"-redefinition policy the Supplemental Complaint challenges. A pending request to which the challenged policy is being applied, right now, is the paradigm of a request "likely to implicate" that policy; unlike the completed, past injuries in the FBI's cases, the policy here operates on an open request that has not been answered. Mr. Miller is also a working journalist who has submitted further FOIA requests to the FBI and intends to continue doing so. Miller Decl. II (Dkt. #226-1). That is concrete, ongoing FOIA business, not a "some day" intention untethered to any plan.

## III. The injury is present and ongoing, and the FBI's voluntary cessation cannot defeat it.

Even apart from future requests, the challenged policies inflict a present injury. So long as the FBI adheres to its "record"-redefinition policy and declines to disclose which information systems it searched, the response Mr. Miller is owed remains incomplete and unlawful. That is a current injury, redressable now.

---

[2] Mr. Huddleston could not have included the "Digital Evidence Policy Guide" claims in his First Amended Complaint because the policy guide was not made public prior to December 9, 2022, when it was filed in this case. *See* Plaintiff's Motion for Leave to File Supplemental Complaint (Dkt. #113) 1, citing Dkt. #83-2, Internal Exhibit B.

5

The FBI's answer—that it is now searching the work laptop "as if" it were a record, so there is no ongoing harm—is a textbook voluntary-cessation argument, and it fails. A defendant cannot defeat a live controversy "by the simple expedient of suspending its challenged conduct after it is sued." *FBI v. Fikre*, 601 U.S. 234, 241 (2024). The FBI bears the "formidable burden" of showing the conduct "cannot reasonably be expected to recur," *id.*; *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189-190 (2000), and a litigation-driven decision to search one laptop in one case does not retract the agency-wide Digital Evidence Policy Guide, which remains in force and applicable to Mr. Miller's other dealings with the FBI.

The point is dispositive in a respect the FBI ignores entirely: its brief says nothing about the independent § 552(g) claim concerning the non-disclosure of the agency's major information systems. The laptop search neither moots nor addresses that claim. The FBI has therefore offered no basis whatsoever to dismiss it.

## IV.   The assignment confirms standing; it does not defeat it.

The FBI's "stands in the shoes" argument is both legally mistaken and, for a forward-looking claim, beside the point. An assignee "has standing to pursue [an assigned] claim in federal court." *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 285–86 (2008). For a claim seeking only prospective relief, moreover, the relevant injury is the injury of the party who now holds the claim and who will be subject to the challenged policy going forward. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief … if unaccompanied by any continuing, present adverse effects."); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67–68 (1997) (the controversy "must be extant at all stages" of the case, and a claim for prospective relief became moot when the plaintiff left the

6

employment that subjected her to the challenged provision); *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78 (1990) (the requisite "personal stake in the outcome" must persist throughout the litigation); *cf. Spencer v. Kemna*, 523 U.S. 1, 7 (1998). That party is Mr. Miller. Because standing for prospective relief must be ongoing, the controlling question is whether the present holder faces present and threatened injury—and he does.

Nor does the assignment create any procedural obstacle. Under Rule 25(c), a transfer of interest does not require substitution; the action "may be continued by or against the original party." And Rule 17(a)(3) forecloses dismissal on real-party-in-interest grounds until a reasonable time has been allowed for substitution or joinder. Plaintiff remains ready to substitute or join Mr. Miller should the Court find that step appropriate.

### V. Independently, Mr. Huddleston has Article III standing on the § 552(g) claim.

Even if the Court were to accept April 10, 2023 as the measuring date, and even setting Mr. Miller aside entirely, one of the two policy-or-practice claims survives on its own footing. The § 552(g) claim does not depend on any future request, on the assignment, or on Mr. Miller, because Mr. Huddleston—the sole party when the Supplemental Complaint was filed—suffered a present, concrete injury from the § 552(g) violation. The FBI's brief never addresses this. It argues only that a policy-or-practice plaintiff needs pending or future requests to show a forward-looking injury. That argument has no purchase on § 552(g), whose injury is present, not prospective.

Section 552(g) imposes a continuing statutory duty: each agency must "make publicly available upon request" both "an index of all major information systems of the agency" and "a description of major information and record locator systems maintained by the agency." 5 U.S.C. § 552(g)(1)–(2). The FBI's refusal to disclose its major information systems is an ongoing breach of that duty, and it injured Mr. Huddleston directly. As a requester with live requests before the

agency, he could not learn which systems exist, and so could not determine whether the FBI searched the systems where responsive records reside. That was a present impairment of his pending requests—not a speculative future harm, and not the past injury the FBI's authorities address.

The injury satisfies Article III. The denial of information that a statute requires the government to disclose is itself an injury in fact. *FEC v. Akins*, 524 U.S. 11, 21 (1998); *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989). It is concrete because it carries downstream consequences—incomplete searches and the withholding of records Mr. Huddleston was entitled to receive. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 441–42 (2021)(explaining significance of "downstream consequences" as a component of standing). The causal chain is the agency's own search obligation: the FBI must search the systems likely to contain responsive records, *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999), and a requester cannot test whether it did so when the systems are concealed—something the FBI has a documented history of doing. *See Negley v. FBI,* 658 F. Supp. 2d 50, 57–58 (D.D.C. 2009); *Campbell v. U.S. Dep't of Justice,* 164 F.3d 20, 27–28 (D.C. Cir. 1998) (reversing summary judgment where the FBI limited its search to its Central Records System and failed to search its separate ELSUR index and "tickler" files despite leads in its own produced documents; "an agency 'cannot limit its search to only one record system if there are others that are likely to turn up the information requested'" (quoting *Oglesby v. U.S. Dep't of the Army,* 920 F.2d 57, 68 (D.C. Cir. 1990))); *Schrecker v. U.S. Dep't of Justice,* 254 F.3d 162, 164–65 (D.C. Cir. 2001) (reversing where the FBI again refused to search for tickler files, on the "self-same argument" rejected in *Campbell*; "[w]e are not a little dismayed by the Government's position"); *Reporters Comm. for Freedom of the Press v. FBI,* 877 F.3d 399, 402–03 (D.C. Cir. 2017) (reversing summary judgment where the FBI's declarations were "utterly

silent as to which files or record systems were examined in connection with the targeted searches");
*Colgan v. U.S. Dep't of Justice,* No. 14-740, 2020 WL 2043828, at \*6–7 (D.D.C. Apr. 28, 2020)
(in litigation over the FBI's own FOIA procedures, holding that "[t]he FBI's failure to search the
system identified in its record as the place where the requested documents might be located or
explain why it did not search the location renders its search inadequate," that the FBI's reliance on
a declarant's "institutional knowledge" in lieu of any search "was inadequate," and that the FBI's
"extraordinary error rate" in withholdings "casts 'substantial doubt'" on its exemption claims). The
relevant injury arose when Mr. Huddleston made his requests and it persists today; it was present
at the operative pleading no matter which date the Court selects, and no matter whether Mr. Miller
is in the case.

Two consequences follow. First, the FBI's "nothing-to-assign" syllogism collapses as to §
552(g): because Mr. Huddleston held a live § 552(g) injury, there was a valid claim to assign, and
*Sprint* supplies the rest. Second, the injury is fully redressable by relief running to the requester
alone. An order directing the FBI to disclose to Mr. Huddleston (or his assignee) which major
information systems exist and which it searched is precisely the individualized production FOIA
authorizes—not the publication-to-the-world remedy that *Kennecott Utah Copper Corp. v. U.S.
Dep't of the Interior*, 88 F.3d 1191, 1202–03 (D.C. Cir. 1996), places beyond a court's power.
Because that relief redresses Mr. Huddleston's injury without reaching anyone else, redressability
is satisfied and no broader remedy is required.

**VI.    Any remaining defect is curable now and does not warrant dismissal.**

Even if the Court were to agree that standing must be measured as of April 10, 2023, the
consequence is not dismissal of the Digital Evidence Policy Guide claims. The FBI itself concedes
that Mr. Miller's FOIA requests "may be relevant in a separate, independent action." Dkt. #227 at

11. If those requests would support Mr. Miller's standing in a new suit, they support it here—and judicial economy strongly favors resolving these claims in the case where the relevant discovery, record, and history already reside, rather than forcing the parties to relitigate them from scratch.

The proper course, should the Court find the current pleading insufficient, is to permit Plaintiff to file a further supplemental pleading under Rule 15(d) setting out Mr. Miller's current FOIA requests and his standing as of today, and to substitute or join Mr. Miller as the named plaintiff under Rules 25(c) and 17(a)(3). That is the curative path *Northstar* and *Scahill* endorse. At an absolute minimum, any dismissal should be without prejudice to refiling or supplementation. Plaintiff respectfully requests leave to supplement and to substitute or join Mr. Miller in the event the Court deems it necessary.

## VII.    In all events, the FBI's motion for protective order should be denied.

The FBI's motion for protective order (Dkt. #217) seeks protection from the discovery Plaintiff propounded in support of the policy-or-practice claims, and that motion rises and falls with standing on those claims. For the reasons set out above, Plaintiff has that standing—and independently has standing on the § 552(g) claim—so the discovery should proceed and the motion should be denied.

At a minimum, discovery on the § 552(g) claim should proceed, because standing on that claim is effectively unchallenged. The FBI's standing brief (Dkt. #227) advances a single theory— no pending or future requests—that nowhere engages the present, ongoing injury the § 552(g) violation inflicts. *See supra* Section V. Its voluntary-cessation footnote (Dkt. #219 at 3 n.1) addresses only the Digital Evidence Policy Guide; it says nothing about the FBI's refusal to disclose its major information systems. The FBI has thus never articulated any basis—in two rounds of protective-order briefing and now a standing brief—for challenging standing on the §

10

552(g) claim, and Plaintiff's showing on that claim stands unrebutted. With standing established on at least one pattern-or-practice claim, the rationale for restricting discovery falls away: as Plaintiff has explained, the judicially-created FOIA discovery restriction exists to prevent a requester from obtaining exempt records through discovery, and these requests seek nothing covered by the underlying FOIA requests. Dkt. #218 at 4–6.

The only question that could then remain is whether particular discovery requests are overbroad as measured against the § 552(g) claim. As Plaintiff has noted previously, however, the FBI has waived any such objections by failing to timely assert them. *See* Dkt. #218 at 7-8 (citing cases) and Dkt. #222 at 3-5 (citing cases).

Finally, even if the Court regards the standing question as unresolved, the answer is to permit the discovery, not to bar it. The FBI has made standing a factual dispute—its declaration asserts what requests were pending and what the agency searched, Driver Decl. ¶¶ 6–7—and the facts bearing on the injury and causation elements of standing lie within the FBI's exclusive control. A plaintiff whose standing is challenged on facts within the defendant's control is entitled to jurisdictional discovery to establish them, and the FBI may not invoke its own control over those facts both to contest standing and to foreclose the discovery that would resolve the question. The FBI bears the burden of showing "good cause" for a protective order, Fed. R. Civ. P. 26(c)(1), and it has shown none. At most, the Court might sequence discovery; it should not bar it outright.

## CONCLUSION

The FBI's challenge stands or falls on its insistence that the Court assess standing as of April 10, 2023. That date is wrong: CV-7(k) is a timeliness shield, not a jurisdictional sword, and standing for a Rule 15(d) supplemental claim is measured on the facts existing when the claim is brought. Measured correctly, the real party in interest—Yehuda Miller—suffered a concrete,

11

particularized injury caused by ongoing, written FBI policies that are not isolated incidents and that threaten him with continuing and future harm under the very standard the FBI invokes. The FBI's voluntary cessation cannot defeat that showing, and the FBI has offered no answer at all to the § 552(g) claim—on which Mr. Huddleston independently held a present, concrete injury when he was the sole party, whatever date the Court selects and whether or not Mr. Miller is in the case. The Court should hold that Plaintiff has standing, deny the FBI's motion for protective order (Dkt. #217), and permit the policy-or-practice claims and their attendant discovery to proceed. To the extent the Court deems any defect to exist, it should grant leave to supplement and to substitute or join Mr. Miller rather than dismiss.

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
212 S. Oxford Street #7D
Brooklyn, New York 11217
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Counsel for Plaintiff**

## Certificate of Service

On July 6, 2026, I filed a copy of this request with the Court's ECF system, which should result in automatic notification via email to Asst. U.S. Attorney James Gillingham, Counsel for the Defendants, at james.gillingham@usdoj.gov.

**/s/ Ty Clevenger**
Ty Clevenger

12