**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| BRIAN HUDDLESTON,<br><br>    Plaintiff,<br><br>    v.<br><br>FEDERAL BUREAU OF INVESTIGATION and UNITED STATES DEPARTMENT OF JUSTICE,<br><br>    Defendants. | CIVIL ACTION No. 4:20CV447<br><br>JUDGE AMOS MAZZANT |

## DEFENDANT'S COMBINED RESPONSE IN OPPOSITION TO PLAINTIFF BRIAN HUDDLESTON'S MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT

Defendant Federal Bureau of Investigation ("FBI") files this combined response in opposition to Plaintiff Brian Huddleston's motion for summary judgment, Dkt. No. 225, and cross-motion for summary judgment.

## INTRODUCTION

Almost 40 years ago, Antonin Scalia warned that the Freedom of Information Act had become the "Taj Mahal of the Doctrine of Unanticipated Consequences." Antonin Scalia, *The Freedom of Information Act Has No Clothes*, 6 Regulation 14, 15 (Mar./Apr. 1982). This case illustrates the concern. What began as a request for agency records has morphed into Plaintiff's effort to use FOIA to obtain and effectively compel the forensic investigation of two laptop computers belonging to a private murder victim—computers that did not originate within the federal government and whose contents do not document the FBI's performance nor its public duties.

This is not what Congress intended FOIA to accomplish. The Supreme Court has explained that "[t]he basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). In this regard, FOIA was "not intended to function as a private discovery tool." *Id.* It gives the public access to agency records subject to exemptions established by Congress. It does not conscript a federal law-enforcement agency to conduct new forensic work, develop evidence, or pursue a requester's preferred theory about an actual or potential crime.

Yet, this is exactly where the Parties find themselves. The sole remaining aspects of this case are the contents of Seth Rich's work laptop (the "Work Laptop") and an image of his personal laptop (the "Personal Laptop"). Rich was not a federal employee, the computers were not government property, and their private contents do not shed light on the functioning of the federal

government. And Plaintiff does not pretend they do. Instead, he wants the laptops in hopes their contents will substantiate the long-rejected theory that Rich supplied the Democratic National Committee ("DNC") emails to Wikileaks. Practically, Plaintiff asks the Court to enlist the FBI as a private investigator in pursuit of that theory.

FOIA does not require this result. It requires federal agencies to search for and process responsive records; it does not require the creation of new records. The Court has already found that the FBI conducted a reasonable search in this case. And regardless of Plaintiff's motives and the fact they fail to align with FOIA's purpose, disclosure of the contents of the laptops in this case is subject to the statutory protections Congress established for law enforcement investigations, to protect confidential information provided to the government with express or implied assurances of confidentiality, and to protect information provided to law enforcement through cybersecurity reporting and cooperation.

The Court should return this case to FOIA's proper boundaries. Plaintiff's demand for additional forensic investigation falls outside of these boundaries. In this case, the FBI has conducted a reasonable search for documents and has properly withheld documents pursuant to appropriate FOIA exemptions. For these reasons, the Court should deny Plaintiff's motion for summary judgment and grant the FBI's cross-motion for summary judgment.

## BACKGROUND

The general background facts of this FOIA case are well known to the Court and to the parties, thus, there is no need to re-visit that well-tread path. However, certain aspects of the procedural history that bear on the Motion are worth revisiting. As in most FOIA litigation, the parties initially sought to resolve this case on cross-motions for summary judgment. On September 29, 2022, the Court entered an order resolving most of the issues in this case in Defendants' favor,

finding that the searches were adequate, and that the withholdings and redactions were overwhelmingly appropriate in accordance with FOIA's exemptions. *See* Dkt. No. 70.

The Parties then sought reconsideration and clarification of the order. The Court again found that Defendant properly withheld newly found documents pursuant to the FOIA exemptions. Dkt. No. 136, at 20–23. Although the Court rejected some of Defendant's arguments, the order did not require Defendant to produce Seth Rich's Work Laptop or the Personal Laptop. Rather than order production of any records, let alone the entirety of the Work Laptop or Personal Laptop, the order required Defendant to produce a *Vaughn* index addressing the information it possesses on the Work Laptop and Personal Laptop. Dkt. No. 136, at 24.

On February 8, 2024, Defendant moved for summary judgment on FOIA Exemption 7(A). Dkt. No. 148. Defendant argued FOIA Exemption 7(A) applied to both the Work Laptop and Personal Laptop because both were, and still are, related to ongoing criminal investigations "of the most serious nature." *See generally* Dkt. No. 148. Regarding the Personal Laptop, Defendant asserted that it may be related to the ongoing investigation into the homicide of Seth Rich. *Id.* Similarly, regarding the Work Laptop, Defendant asserted that it may be related to the investigation into the homicide of Seth Rich and also may be related to a criminal case in which the United States alleges that Russian intelligence officers hacked into an American political party's computer systems, stole thousands of pages of emails and documents, and publicly disclosed them in an effort to interfere with the 2016 presidential race. *Id.*

The Court denied Defendant's motion on August 15, 2024. Dkt. No. 175. The Court did not reject the applicability of FOIA Exemption 7(A) but instead found that the government failed to provide evidence that it conducted a document-by-document review of the files on the laptops. *Id.* at 6. The Court ordered the government to conduct a "document-by-document review of the

information it possesses on the [Personal Laptop and the Work Laptop] that is responsive to Plaintiff's FOIA requests." *Id.* at 6.

Defendant conducted this review, and on March 10, 2025, produced *Vaughn indices* relating to the Personal Laptop and the Work Laptop. Dkt. No. 188. Plaintiff then moved for an order to show cause why the FBI should not be held in contempt of court as a result of what Plaintiff contended were insufficient *Vaughn* indices. Dkt. No. 190. The Court denied Plaintiff's motion and ordered the FBI to provide additional information. Dkt. No. 214. On May 26, 2026, the FBI filed a notice of compliance, which contained the additional information sought by the Court. Dkt. No. 223. Then, on June 15, 2026, Plaintiff moved for summary judgment.

## ISSUE PRESENTED

1. Whether the FBI properly withheld information pursuant to FOIA exemptions in response to Plaintiff's FOIA requests.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). FOIA actions are generally resolved on motions for summary judgment, *see Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 200 (D.D.C. 2007), and the Court conducts a *de novo* review of the agency's response to any challenged FOIA requests, *see* 5 U.S.C. § 552(a)(4)(B).

The agency is required to justify any records withheld (in whole or in part) subject to FOIA's statutory exemptions. The exemptions reflect Congress' recognition "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982). "Summary judgment is warranted on the basis of agency affidavits when

the affidavits describe the basis for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically galls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of bad faith." *Larson v. U.S. Dep't of State*, 565 F.3d 857, 3865 (D.C. Cir. 2009) (quotation omitted). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 374-75 (D.C. Cir. 2007).

## **ARGUMENT**

**I.    The FBI reviewed all records that are readily reviewable for purposes of the FOIA.**

Plaintiff argues that the FBI has failed to account for more than 215,000 files on the Work Laptop, and that this alleged failure entitles him to summary judgment on the adequacy of the FBI's search in response to his FOIA requests. Plaintiff is wrong on both points.

First, since at least March 2025, the government has consistently represented that the Work Laptop contained potentially thousands of records that cannot be reviewed or processed pursuant to the FOIA. *See* Dkt. No. 196-1, ¶ 7. In preparing the *Vaughn* index for the Work Laptop, the government excluded unreviewable files that could not be practically processed. Dkt. No. 196-1, ¶ 8. The only new information in the Lara Declaration is the quantity of data on the Work Laptop, which the Court ordered the government to disclose. Even that figure should not surprise Plaintiff, whose own expert has stated that "a new Windows laptop purchased from the manufacturer will have 100,000 files pre-installed." Dkt. No. 190-8, ¶ 5. The newly disclosed figure is, therefore, consistent with and not, as Plaintiff contends, "irreconcilable with," the FBI's prior representations to the Court.

Plaintiff is also incorrect that the presence of files that could not be reviewed for FOIA purposes requires the Court to grant him summary judgment as to the adequacy of the FBI's search for responsive records. As an initial matter, the Court has already granted summary judgment to

the FBI as to the adequacy of its search and has consistently reaffirmed that conclusion. In any event, there is no dispute that the FBI's search located the records at issue. Indeed, the adequacy of the FBI's search is precisely why the parties are now addressing the contents of the Work Laptop. Whether certain files can be viewed or processed for purposes of the FOIA is distinct from whether the FBI conducted an adequate search. Plaintiff's request to grant him summary judgment on the adequacy of search should, therefore, be denied.

## II. The *Vaughn* Index satisfies all requirements, and similar *Vaughn* indices have been accepted by courts in the Eastern District of Texas.

In *Vaughn v. Rosen*, the D.C. Circuit required agencies to identify the portions of records being withheld, correlate each withholding with a specific FOIA exemption, and explain the justification for nondisclosure. 484 F.2d 820, 827 (D.C. Cir. 1973). There is not a set formula for a *Vaughn* index. *Hinton v. DOJ*, 844 F.2d 126, 129 (3rd Cir. 1988). The index need only provide sufficient information for the Court to determine why each withheld record is exempt. *Id.*

The use of similar or standardized language does not render a *Vaughn* index infirm. Even "boilerplate language" is permissible in a *Vaughn* Index because it has never been suggested that an agency cannot use similar language to justify withholding information in multiple documents. *Broward Bulldog, Inc. v. DOJ*, 939 F.3d 1164, 1196 (11th Cir. 2019) (quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 147 (D.C. Cir. 2006) ("No rule of law precludes [an agency] from treating common documents commonly.")). Agency declarations meeting these standards are entitled to a presumption of good faith. *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994) (quoting *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

The FBI's *Vaughn* indices satisfy these requirements. They describe the records that were reasonably capable of being reviewable for purposes of FOIA and identify which exemptions apply to each record. *See* Revised Personal laptop *Vaughn* Index (Ex. 1) and Revised Work Laptop

*Vaughn* Index (Ex. 2, Att. 1). The exemptions are explained in the fully explained in the Lara Declaration (Ex. 2), the accompanying exemption index, and in prior declarations. Considered together, and with the presumption of good faith afforded agency declarations, these materials more than satisfy the FBI's burden. Courts in this district, including this Court, have accepted materially similar combinations of *Vaughn* indices and supporting declarations. *Ivanovskis v. Fed. Bureau of Investigation*, No. 4:23-cv-00531-SDJ-AGD (E.D. Tex. Mar. 10, 2025), *recommendation adopted* 2025 WL 2778978 (E.D. Tex. Sept. 29, 2025); *see also* Dkt. No. 37-1.

Nevertheless, Plaintiff argues that the FBI's *Vaughn* index fails to satisfy the requirements set forth in *Pomares v. Dept's of Veteran's Affairs*, which Plaintiff argues requires a *Vaughn* index to "(1) identify each document withheld; (2) state the applicable statutory exemption; and (3) explain how disclosure would harm the interests protected by the statutory exemption. Dkt. No. 225, at 7 (quoting 113 F.4th 870, 881 (9th Cir. 2024)). Plaintiff's argument fails.

First, the FBI identified all records that were reasonably capable of reviewing and processing under the FOIA. With respect to the Work Laptop, Plaintiff complains that certain *Vaughn* entries refer to the file structure rather than the contents of the files. But the Lara Declaration explains that an entry such as "This file contains one item" represents a folder in a directory file listing. Ex. 2, ¶ 8. The entries immediately following the folder entry identify and describe the files contained within that folder. The files are, therefore, not omitted. Entry 4 of the Work Laptop *Vaughn* index illustrates this point. That entry states "This file folder contains 1 file (Line 5)." Ex. 2, Att. A at 3. The next line contains the entry for the single file identified in Entry 4. Plaintiff is, therefore, incorrect that such folder entries show that the FBI failed to account for responsive files. The FBI accounted for all files that were reviewable for purposes of the FOIA.

Plaintiff's argument regarding the Personal Laptop fares no better. True, the FBI has redacted file names, but it explained why. As stated in the Spence Declaration, "production of any

data of any kind from any computer possessed or used by Seth Rich at the time of his death could reasonably be expected to interfere with law enforcement proceedings." Ex. 3, ¶ 7.

Second, Plaintiff elevates form over substance in arguing that the FBI failed to explain how disclosure would harm the interests protected by the asserted exemptions. The *Vaughn* indices, when considered with the Lara, Seidel, and Spence Declarations, establish the harm that would be implicated by releasing the information. The Court may consider the indices and declarations collectively, and read together, they provide sufficient detail for meaningful judicial review and satisfy the FBI's burden. *See Ivanovskis*, 2025 WL 2019381, at *11.

This is particularly true with respect to Exemption 7(A). A law-enforcement agency "need not submit declarations that reveal the exact nature and purpose of its investigations in order to satisfy FOIA-exemption 7(A)." *Blackwell v. Federal Bureau of Inv.*, 680 F.Supp.2d 79, 94 (D.D.C. 2010). Nor must the agency provide details that would themselves risk compromising the investigation that the exemption is intended to protect. *Agrama r. Internal Revenue Serv.* No. 17-5256, 2019 WL 2067719, *2 (D.C. Cir. April 19, 2020) ("While the IRS's public disclosures on this point are cursory, we have held that 'there are occasions when extensive public justification would threaten to reveal the very information for which a FOIA exemption is claimed.").

Plaintiff's final argument that the *Vaughn* indices are flawed because they rely on "boilerplate" language likewise fails. Plaintiff selects individual entries and rhetorically questions how records such as bills, certificates, party menus, credit report, poems, and similar personal materials could relate to ongoing criminal investigations. But Plaintiff is not the prosecutor, and his disagreement with the FBI's conclusions does not establish that the indices are legally insufficient. Nor does the use of similar language across entries prevent meaningful review.

A *Vaughn* index need only provide sufficient information for the Court to determine why each record is asserted to be exempt. Agencies may use similar, or "boilerplate" as Plaintiff

Defendant's Combined Response to Motion for Summary Judgment
and Cross-Motion for Summary Judgment                                                                 9

describes it, language when the same rationale applies to multiple records. *Broward Bulldog, Inc. v. DOJ*, 939 F.3d 1164, 1196 (11th Cir. 2019) (quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 147 (D.C. Cir. 2006) ("No rule of law precludes [an agency] from treating common documents commonly.")). And the FBI's declarations are entitled to a presumption of good faith. *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994) (quoting *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

Accordingly, the *Vaughn* indices, when considered with the accompanying declarations, satisfy all requirements for a proper *Vaughn* index. Moreover, as explained below, the FBI was not required to prepare a document-by-document *Vaughn* index for records withheld under Exemption 7(A) because such records may be withheld on a categorical basis.

## III.    The FBI is not required to conduct Plaintiff's investigation or create new records for Plaintiff to further his investigation.

Although briefing focuses on the adequacy of the FBI's search for records and its withholding of records pursuant to applicable FOIA exemptions, the parties' underlying dispute concerns the nature of this case. The FBI is treating it as a FOIA action. Plaintiff, however, seeks to transform it into an investigation of whether Seth Rich transferred DNC emails to an external storage device. Plaintiff asserts that the "central factual question in this litigation [is] whether DNC emails were downloaded from Seth's Rich's laptop to an external storage device." Dkt. No. 225 at 22. He further criticizes the FBI for failing to conduct "the type of forensic investigation that would actually answer the central question in this case: whether Seth Rich downloaded Democratic National Committee ("DNC") emails onto an external storage device prior to his death." *Id.* at 3.

Plaintiff is mistaken. Whether Seth Rich transferred DNC emails to an external storage device may be of considerable interest to Plaintiff, but it is not the issue before the Court in a FOIA action. FOIA litigation is intended to determine whether an agency conducted an adequate search

for responsive records and whether it properly withheld them under an appropriate exemption. The Court has resolved the adequacy-of-search issue in the FBI's favor. All that remains is the second issue, which the Court can resolve through the Parties' cross-motions for summary judgment.

FOIA is not a mechanism for compelling an agency to answer questions about government conduct, much less to investigate the conduct of a private citizen. Nor may Plaintiff use this litigation to conscript the Court and the FBI to investigate an area of personal interest to him. *See e.g., Jud. Watch, Inc.*, 177 F. Supp. 3d 450, 456 (D.D.C. 2016) (finding that "[a] question is not a request for records under FOIA and an agency has no duty to answer a question posed as a FOIA request."); *Espinoza v. Dep't. of Justice*, 20 F.Supp.3d 232, 245 (D.D.C. 2014) ("Plaintiff's dispute is based on the faulty premise that the FOIA obligates the government to answer questions apparently about any governmental action. The FOIA is not so sweeping but rather provides individuals "access to [agency] records 'written or transcribed to perpetuate knowledge or events.'") (quoting *Hudgins v. IRS*, 620 F.Supp. 19, 21 (D.D.C. 1985), *aff'd*, 808 F.2d 137 (D.C. Cir. 1987), *cert denied*, 484 U.S. 803 (1987) (citations omitted)); *Jean-Pierre v. BOP*, 880 F. Supp. 2d at 103 (concluding that request for objective pieces of information, such as "who gave the order" and "on what day," are not "cognizable under FOIA, because they ask questions calling for specific pieces of information rather than records"). The FOIA does not place an obligation on an agency to answer questions or to create documents or opinions in response to an individual's request. *Id.* (quoting *Hudgins*, 620 F. Supp. at 21); *Powell v. IRS*, 255 F.Supp.3d 33, 43 (D.D.C. 2017) ("Critically, though, FOIA only requires that an agency turn over <u>records</u>, not that it provide a requestor with specific information or answer questions.") (emphasis in original).

Plaintiff's demand for a forensic investigation is, therefore, improper because it seeks to impose obligations that FOIA does not create. In particular, Plaintiff challenges the FBI's efforts to locate a record showing whether files were transferred from the Work Laptop to an external

storage device. But the relevant question under FOIA is whether the FBI adequately searched for an existing responsive record, not whether the FBI conducted a new forensic examination capable of independently determining whether such a transfer occurred.

> In the Court's March 24, 2026 Order, it required the FBI to:

> [P]roduce a supplemental *Vaughn* index addressing metadata on the Work Laptop which identifies: (a) the total number of files on the Work Laptop; (b) the total amount of storage taken up by files on the Work Laptop; and (c) whether and/or how many files were downloaded from the Work Laptop to one or more external storage devices.

Dkt. No. 214 at 20. The FBI complied with this directive. Regarding the file transfers, the Wickman Declaration explains that the Work Laptop does not contain a file that records or logs file transfer activity from a computer to an external storage device. Ex. 2, Att. B, at 2–3. FOIA requires the FBI to disclose any responsive record, subject to applicable exemptions. It does not require the FBI to create such a record or conduct a new investigation to answer Plaintiff's underlying factual question.

Wickman concludes "the FBI cannot produce a record that shows whether there were transfers to an external media or what the contents of the transfers may have been." *Id.* at 3. Because no such record exists, none could be placed on a *Vaughn* index.

Plaintiff's expert, Yaacov Apelbaum, does not dispute that point. He expressly agrees that Wickman's statement "is true." Dkt. No. 225-1, ¶ 4. Apelbaum instead argues that the FBI might be able to infer whether a transfer occurred by conducting a forensic examination of multiple files and digital "artifacts" on the Work Laptop. *See generally id*. But his analysis largely addresses a different question: whether an external storage device was ever connected to the Work Laptop, not whether files were transferred to that device or which files were transferred.

For example, Apelbaum states that forensic artifacts may reveal "external storage activity, USB device connection history, mounted volumes, user activity involving external devices, or

Defendant's Combined Response to Motion for Summary Judgment
and Cross-Motion for Summary Judgment                                              12

relevant timeline correlations." *Id.* ¶ 4. Those artifacts may indicate that a device was connected, but they do not establish that files were transferred or identify the files allegedly transferred. The same disconnect appears in the next paragraph. After identifying various forensic artifacts, he explains that they "do not always prove every copied file with mathematical certainty," but are routinely used to determine whether external-storage devices were connected, when they were connected, which user profile interacted with a mounted volume, and what files or folders were accessed around those times. *Id.* ¶ 5. Again, this analysis concerns device connections and contemporaneous file access—not whether files were copied from the Work Laptop to an external device or what files were copied.

At most, Apelbaum's declaration suggests that forensic artifacts might show that a file located on external media was accessed. But accessing a file on an external drive does not establish that the file was transferred from the Work Laptop. It shows only that the file existed on the external drive. Nor would such access reveal how the file came to be stored on the external drive.

Apelbaum, in Paragraph 7, similarly focuses on whether external storage media was connected to the Work Laptop. Apelbaum states that a finding that no external device was connected would be significant. *Id.* ¶ 7. Perhaps so. But the converse does not follow. Evidence that an external device was connected would not establish that files were transferred to it, much less the identity of the files transferred. And whether an external device was merely connected to the Work Laptop is not the issue the Court ordered the FBI to address in its supplemental *Vaughn* index.

Wickman and Apelbaum also agree on another significant issue: operating systems do not natively log file-copy events between internal and external devices. *Id.* ¶ 10. Apelbaum, however, attempts to reframe the "relevant question" as whether artifacts exist that could show that an external device was connected. But that reframing does not address the issue the Court ordered the

Defendant's Combined Response to Motion for Summary Judgment
and Cross-Motion for Summary Judgment                                                              13

FBI to address. A device connection does not establish that a file transfer occurred, and evidence of "file access activity" on the external media does not show how the accessed files came to be there.

In the end, Wickman and Apelbaum do not present a genuine disagreement. Other than agreeing on the key issue—operating systems do not natively log file-copy events between internal and external devices—the declarations address different questions. Wickman addresses the practical inability to determine whether files were transferred from the Work Laptop to an external device, and, if so, what files. Apelbaum addresses the possibility of determining whether an external device was connected and whether files on that device were accessed. These propositions are not inconsistent.

Instead, the declarations underscore the complexity of the forensic investigation Plaintiff seeks to compel. As Wickman explains:

> [D]etermining whether files were downloaded from a laptop to an external storage device is extremely difficult from a digital forensics perspective …. The analysis itself, determining whether files were transferred to an external storage device, would require extensive time and effort and would likely be inconclusive.

Ex. 2, Att. B, ¶ 6.

The analysis Plaintiff proposes also exceeds the FBI's obligations under the FOIA. FOIA requires agencies to search for and process existing agency records; it does not require the agency to answer interrogatory-style questions. *See e.g., Jud. Watch, Inc.*, 177 F. Supp. 3d at 456 (finding that "[a] question is not a request for records under FOIA and an agency has no duty to answer a question posed as a FOIA request."), *aff'd on other grounds*, 681 F. App'x 2 (D.C. Cir. 2017); *Jean-Pierre v. BOP*, 880 F. Supp. 2d 95, 103 (D.D.C. 2012) (concluding that request for objective pieces of information, such as "who gave the order" and "on what day," are not "cognizable under FOIA, because they ask questions calling for specific pieces of information rather than records").

The Supreme Court has likewise recognized that the FOIA is not intended to function as a "private discovery tool." *N.L.R.B v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).

Yet that is precisely how Plaintiff seeks to use FOIA here. He does not seek an existing record. He seeks to compel the FBI to conduct a forensic investigation to answer whether Seth Rich transferred DNC emails from his Work Laptop to an external device. Wickman and Apelbaum agree that no files on the Work Laptop contain this answer. Ex. 2, Att. B, ¶ 5; Dkt. No. 225-1, ¶ 4. And as Wickman explains, undertaking that analysis would require the FBI to create new records—for example by taking screenshots, combining information from multiple sources, otherwise generating materials that the FBI did not previously possess. Ex. 2, Att. B, ¶ 7. Plaintiff's argument regarding the corrupted files is similarly flawed. Dkt. No. 225, at 24–25. As Wickman explains, a repaired file is not the original file but rather a new file generated through deliberate intervention. Ex. 2, Att. B, ¶ 12. None of the files at issue were government files; a private citizen created them. Thus, even if non-corrupted versions once existed, they were never in the government's possession. Plaintiff therefore seeks to compel the FBI to create new files, which the FBI never possessed, in response to his FOIA request. This is something the FOIA does not require.

Earlier this year, the Fifth Circuit rejected the proposition that FOIA requires such record creation. In *Hagar v. Fed. Bureau of Investigation*, the court held that federal agencies are not required to create new documents from existing records for purposes of satisfying their obligations under the FOIA, even when that would involve as little as copying and pasting information or taking a screenshot:

> Much like taking a screen shot, doing so would only require a few steps. Yet even those steps would require the agency to create something new, which it would not have otherwise had before. As we said in *Rutila*, FOIA 'does not obligate agencies to satisfy such requests.

170 F.4th 946, 953 (5th Cir. 2026) (quoting *Rutila v. United States Dep's of Transp.*, 72 F.4th 692, 698 (5th Cir. 2023)).

The FBI has therefore complied with the Court's order requiring a supplemental *Vaughn* index addressing metadata on the Work Laptop which identifies whether and/or how many files were downloaded from the Work Laptop to one or more external storage devices. No responsive record could be included because no such record exists. Plaintiff's alternative demand, that the FBI conduct a forensic investigation to attempt to answer that question, should be rejected. The investigation would require substantial time and effort, would likely be inconclusive, and most importantly, is not an obligation FOIA imposes. Ex. 2, Att. B, ¶ 6.

## IV.   The FBI is entitled to withhold documents on the Work Laptop and the Personal Laptop pursuant to FOIA Exemptions 7(A). This issue is dispositive, and the Court need not reach the remaining exemptions.

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," the disclosure of which could reasonably be expected to cause particular harms. 5 U.S.C. § 522(b)(7). The exemption is broken down into six parts that serve as the particular basis for withholding—Exemptions 7(A) through 7(F). *Id.* In this case, Defendant is withholding the Work Laptop and Personal Laptop under Exemption 7(A). To establish the applicability of FOIA Exemption 7(A), an agency must make a two-part showing. First, as with all FOIA Exemption 7's subparts, the agency must demonstrate the records were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). Second, an agency must "demonstrate that 'disclosure (1) could be reasonably expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice* ("CREW"), 746 F.3d 1082, 1096 (D.C. Cir. 2014) (quotation omitted). The Work Laptop and Personal Laptop satisfy both elements.

**a. The Work Laptop and Personal Laptop were compiled for law enforcement purposes.**

As a threshold matter, for Exemption 7(A) to apply, a record must have been compiled for law enforcement purposes. 5 U.S.C. § 522(b)(7)(A); *see also Pub. Emps. For Envtl. Resp. v. Int'l Boundary & Water Comm'n U.S-Mex.*, 740 F.3d 195, 202-03 (D.C. Cir. 2014). "To determine if records are compiled for law enforcement purposes . . . the focus is on how and under what circumstances the requested files were compiled and whether the files sought relate to anything that can be fairly characterized as an enforcement proceeding." *Clemente v. FBI*, 868 F.3d 111, 119 (D.C. Cir. 2017) (quotation marks omitted). Thus, "[t]o show that the disputed documents were 'compiled for law enforcement purposes,' the [agency] need only 'establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law.'" *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (quoting *Campbell v. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998)). Because FBI is an agency specializing in law enforcement, its claim of a law enforcement purpose is entitled to deference. *Poitras v. Dep't of Homeland Sec.*, 303 F.Supp.3d 136, 155 (D.D.C. 2018) (quoting *Kidder v. FBI*, 517 F.Supp.2d 17, 27 (D.D.C. 2007).

Turning first to the Work Laptop, the Court's ruling on the Parties' motions for clarification, Dkt. No. 136 is instructive. There, the Court considered whether a "letter from a third party that accompanied the work laptop, two chain of custody forms, and the three-page report detailing actions by a third party outside entity to image the work laptop" (the "Newly Found Documents") were compiled for law enforcement purposes. *See* Dkt. No. 136 at 20–23. The Court found the Newly Found Documents "were created and compiled in furtherance of the FBI's role in the United States Office of Special Counsel investigation and related investigations." *Id.* at 20 n.14. The Court's determination that the documents accompanying the Work Laptop were

compiled for law enforcement purposes naturally extends to the Work Laptop, and the Court should find the Work Laptop was compiled for law enforcement purposes.

In addition to the Court's prior order, the Lara Declaration and the Eighth Seidel Declaration, Doc No. 148-1 (the "Seidel Decl."), which is incorporated into the Lara Declaration, Ex. 2, ¶ 12 establishes that the Work Laptop was "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). The Work Laptop was "collected in furtherance of the FBI's role in the [Special Counsel's Office ("SCO")] and other related investigations." Ex. 2, ¶ 11; Seidel Decl. ¶ 4. The SCO's function was to investigate Russian interference with the 2016 presidential election and to prosecute federal crimes arising from the investigation and those committed in the course of, and with intent to interfere with, that investigation. *See* 28 C.F.R. § 600.4(a). The Work Laptop was "collected to document FBI's investigation of potential crimes and threats to the national security[.]" Seidel Decl. ¶ 4; Ex. 2, ¶ 11. Because the Work Laptop was compiled for law enforcement purposes, Defendant has satisfied FOIA Exemption 7's threshold inquiry as to the Work Laptop.

The Personal Laptop was similarly compiled for law enforcement purposes. As set forth in the Eighth Seidel Declaration, the Personal Laptop was collected by FBI in furtherance of its role in the SCO and related investigations. Ex. 2, ¶ 11; Seidel Decl. ¶ 4. The Court has already held that collection of the Work Laptop in connection with the SCO and related investigations satisfies the FOIA Exemption 7 threshold. Dkt. No. 166 at 20 n.14 (also noting Huddleston did not contest that the newly found documents were compiled for law enforcement purposes). The same reasoning applies to the Personal Laptop. Defendant has satisfied the threshold FOIA Exemption 7's threshold inquiry as to the Personal Laptop.

Accordingly, the Court should conclude that both the Work Laptop and Personal Laptop were compiled for law enforcement purposes.

**b. Defendant is entitled to withhold information concerning pending enforcement proceedings under FOIA Exemption 7(A).**

FOIA Exemption 7(A) protects information compiled for law enforcement purposes when disclosure, "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 522(b)(7)(A). "Exemption 7(A) reflects Congress's recognition that 'law enforcement agencies ha[ve] legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it [comes] time to present their case." *CREW*, 746 F.3d at 796 (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 212, 224 (1978)). "To justify withholding [an agency] must therefore demonstrate that 'disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated.') *Id*. (quoting *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993)). Examples of records that are protected under 7(A) include "records [that] could disclose to individuals under investigation the identities of potential witnesses, the content of the government's evidence and trial strategy and the focus of the investigation. *Id.* at 1098. An agency may satisfy the second and third prong by pointing to a pending investigation or proceeding. *Id.*

> **i.    Premature release of the Work Laptop could be reasonably anticipated to interfere with pending criminal prosecutions and ongoing investigations.**

The Work Laptop relates to pending criminal national security prosecutions and multiple pending "spin off" investigations. There is a pending criminal prosecution in the United States District Court for the District of Columbia: *United States of America v. Victor Borisovic Netyksho, et al.*, Criminal No. 1:18-cr-00215. Ex. 2, ¶ 12 (incorporating Seidel Decl.); Seidel Decl. ¶ 15. On July 13, 2018, a Grand Jury returned an indictment against twelve (12) individuals: 1) Viktor Borisovich Netyksho, 2) Boris Alekseyevich Antonov, 3) Dmitriy Sergeyevich Badin, 4) Ivan Sergeyevich Yermakov, 5) Aleksey Viktorovich Lukashev, 6) Sergey Aleksandrovich Morgachev,

7) Nikolay Yuryevich Kozachek, 8) Pavel Vyacheslavovich Yershov, 9) Artem Andreyevich Malyshev, 10) Aleksandr Vladimirovich Osadhuk, 11) Aleksey Aleksandrovich Potemkin, and 12) Anatoliy Sergeyevich Kovalev, charging them with one or more of the following:

    a.  18 U.S.C. §§ 371 and 3559(g)(1) Conspiracy to Commit an Offense or defraud the United States;

    b.  18 U.S.C. §§ 1028A(a)(1) and (2) Aggravated Identity Theft; and

    c.  18 U.S.C. § 1956(h) Conspiracy to Launder Money.

*Id.*

The defendants in the *Netyksho* matter remain fugitives, and a premature release of information could trigger multiple harms. Ex. 2, ¶ 12 (incorporating Seidel Decl.); Seidel Decl. ¶ 17. The premature release of information could provide these fugitives information regarding the investigation that they could use to continue to "escape prosecution and thwart current investigative efforts by altering or counteracting evidence, changing behavior, intimidating or physically harming witnesses or law enforcement officials and/or flight." *Id.* ¶ 17(a). Releasing the information could also allow third parties who are not directly related to the *Netyksho* matter to interfere with investigative efforts or future prosecutions. *Id.* ¶ 17(b). Finally, release of the information could lead to identification of sources of information, witnesses, potential witnesses, law enforcement, and others who are otherwise associated with the investigations and then would be exposed to intimidation or harm. *Id.* ¶ 17(c).

As the Court has previously found, "[t]here is a general recognition among courts that prematurely releasing certain information under FOIA may interfere with enforcement proceedings against fugitives. Dkt. No. 136 at 22 (citing *Martorano v. Fed. Bureau of Investigation*, No. 89-377, Civ. A. 89-1345(RCL), 1991 WL 212521, at *9 (D.C. Cir. Sept. 30, 1991); *Shapiro v. Cent. Intel. Agency*, 247 F.Supp.3d 53, 65 (D.D.C. 2017); *Hildago v. Fed.*

*Bureau of Investigation*, 541 F.Supp.2d 250, 256-57 (D.D.C. 2008); *Ayyad v. U.S. Dep't of Just.,* No. 00 CIV. 960(KTD), 2002 WL 654133, at *2-4 (S.D.N.Y. Apr. 18, 2002)). Here, the Eighth Seidel Declaration establishes how the release of the Work Laptop could negatively impact the pending criminal prosecution. This alone is a sufficient basis to affirm the withholding of the Work Laptop pursuant to FOIA Exemption 7(A).

Although the *Netyksho* matter—where twelve individuals remain fugitives—provides sufficient support to withhold the Work Laptop pursuant to FOIA Exemption 7(A), the exemption is further supported by the pending "spin off" criminal investigations. These investigations remain ongoing. Ex. 2, ¶ 12 (incorporating Seidel Decl.); Seidel Decl. ¶ 16. Until the investigations conclude, the release of information in the investigative files for the pending investigations, which include the Work Laptop, could interfere with the investigations. Ex. 2, ¶ 12 (incorporating Seidel Decl.); Seidel Decl. ¶ 18. That interference could manifest in a variety of ways, including those discussed *supra*. Ex. 2, ¶ 12 (incorporating Seidel Decl.); Seidel Decl. ¶ 17. The existence of the pending "spin off" investigations provides a separate and independently sufficient basis to withhold the Work Laptop pursuant to FOIA Exemption 7(A).

Premature release of the Work Laptop could also be reasonably expected to interfere with the ongoing investigation into the homicide of Seth Rich. As set forth in the Eighth Seidel Declaration, and incorporated into the Lara Declaration, premature release of the Work Laptop "would provide criminals with information about the USAO-DC's investigation/enforcement strategies in an ongoing matter, allow them to predict and potentially thwart these strategies, and/or allow them to discover/tamper with or intimidate witnesses and/or tamper with or destroy evidence." Ex. 2, ¶ 12 (incorporating Seidel Decl.); Seidel Decl. ¶ 11. Due to the high-profile nature of the investigation into the homicide of Seth Rich, premature release of the Work Laptop could also "allow potential witnesses or subjects to locate specific details related to the ongoing

investigation and use the information to influence the investigation by altering witness testimony or tampering with or destroying relevant evidence." *Id.* It could also disclose the scope and focus of the investigation, which would allow "potential targets of the investigation to elude detection or to suppress, alter, or fabricate evidence, or would prematurely reveal evidence or strategies in the USAO-DC's investigation." *Id.* These reasonable expectations that premature release of the Work Laptop could cause these types of interference with the USAO-DC's investigation into the homicide of Seth Rich, make it appropriate to withhold the Work Laptop pursuant to FOIA Exemption 7(A).

### ii. Releasing the Personal Laptop would similarly threaten ongoing criminal investigations.

As discussed above, the Personal Laptop is evidence in an investigation that is being handled by the USAO-DC in connection with the District of Columbia Metropolitan Police Department (the "MPD"). The MPD is the local law enforcement agency for the District of Columbia. Its creation and regulations are compiled in Title 5 of the Code of the District of Columbia, and it has law enforcement jurisdiction over homicides in the District of Columbia. The USAO-DC is responsible for the prosecution of all federal crimes as well as all serious, local crimes committed by adults in the District of Columbia (U.S. Const., art. I, § 8, cl. 17). Both the MPD and the U.S. Attorney's Office for the District of Columbia have been investigating, and continue to investigate, the homicide of Seth Rich as the law enforcement agencies with jurisdiction over the alleged crime. Ex. 2, ¶ 12 (incorporating Seidel Decl.); Seidel Decl. ¶¶ 8-10.

Premature release of the Personal Laptop could be reasonably expected to interfere with the investigation into the homicide of Seth Rich. The same types of interference could reasonably be expected to arise out of premature release of the Personal Laptop as were discussed with respect to premature release of the Work Laptop. Premature disclosure could interfere with the

investigation by disclosing information about the investigation and enforcement strategies in a manner that would allow tampering with or intimidation of witnesses and tampering with or destruction of evidence. Ex. 2, ¶ 12 (incorporating Seidel Decl.); Seidel Decl. 11. It could also allow potential targets of the investigation to "elude detection or to suppress, alter, or fabricate evidence, or would prematurely reveal evidence or strategies in the USAO-DC's investigation." *Id.*

Accordingly, because the release of this information could be reasonably expected to interfere with the ongoing murder investigation, Defendant has properly invoked FOIA Exemption 7(A) to categorically withhold the Personal Laptop.

Plaintiff's arguments against the application of Exemption 7(A) are not persuasive. Primarily, Plaintiff challenges the FBI's conclusion that release of the documents could negatively impact ongoing investigations. Plaintiff argues that the records "bear no conceivable relationship to either the homicide investigation or the alleged hacking investigation." Dkt. No. 225, at 12. Rhetorically, Plaintiff asks how certain records could interfere with ongoing criminal investigations. Dkt. No. 225, at 10. But an agency's affidavits are generally accorded a presumption of legitimacy, *Batton v. Evers*, 598 F.3d 169, 175 (5th Cir. 2010), and here, the FBI has offered multiple declarations explaining that the release of the laptops or information contained in the laptops could negatively impact ongoing criminal investigations, *see* Seidel Decl. ¶¶ 11, 17, 28, Lara Decl. at Ex. 2, and Spence Decl. at Ex. 3.

Courts also recognize that FOIA Exemption 7(A) necessarily involves a prediction of what may happen in the future. *Ctr. For Nat. Sec. Studies v. United States Dep't of Justice*, 331 F.3d 918, 928 (D.C. Cir. 2003) ("Exemption 7(A) explicitly requires a predictive judgment of harm that will result from disclosure of information, permitting withholding when it 'could reasonably be expected' that the harm will result.") (quoting 5 U.S.C. § 552(b)(7)(A)); *Halperin v. Cent.*

*Intelligence Agency*, 629 F.2d 144, 149 (D.C. Cir. 1980) ("A court must take into account, however, that any affidavit or other agency statement of threatened harm to national security will always be speculative to some extent, in the sense that it describes a potential future harm rather than an actual part harm."). For that reason, courts have been willing to provide some level of deference to agency's predictive judgment regarding whether release of information could interfere with investigations. *Citizens for Resp. & Ethics in Wash. v. United States Dep't of Just.*, 746 F.3d 1082, 1098 (D.C. Cir. 2014) ("[A]lthough we give deference to an agency's predictive judgment as to the harm that will result from disclosure of information, it is not sufficient to simply assert that disclosure will interfere with enforcement proceedings; it must rather demonstrate how disclosure will do so.") (internal quotations and citations omitted); *Prop. Of the People, Inv. v. Dep't of Just.*, 539 F.Supp.3d 16, 25 (D.D.C. 2021) ("This Court must also 'give deference to an agency's predictive judgment of the harm that will result from disclosure of information.'") (quoting *CREW*, 746 F.3d at 1098).

Here, the FBI has provided multiple declarations explaining that the disclosure of information could negatively impact the investigation. Collectively, the declarations explain that release could reasonably interfere with ongoing criminal investigations. Additionally, as explained in the Spence Declaration, because of the public attention regarding the government's investigation, release of investigative facts—including any information on the Work Laptop or Personal Laptop—could generate a substantial volume of spurious tips to law enforcement. Ex. 3, ¶ 6. Investigators would then be required not only to evaluate those submissions but also to determine whether each source was credible, possessed independent knowledge, or was merely offering a version of information he or she obtained through the public record. *See id.* Disclosure would generate a pool of incoming information, investigation of which would drain resources from investigators, and thereby impair the government's ability to control the direction and timing of

the investigation. Courts have recognized that an impact on the government's ability to control and shape its investigation is a proper basis to withhold records pursuant to Exemption 7(A). And here, as explained in the Spence Declaration, that potential harm extends to the "production of any data of any kind from any computer possessed or used by Seth Rich at the time of his death." Ex. 3, ¶ 7.

## V. Even if the Court does not grant the FBI summary judgment on Exemption 7(A), it prevails on other exemptions being asserted both categorically and individually.

The Court need not reach the remainder of exemptions that justify the withholding of information from the laptops. However, the FBI has also properly withheld information on the Work Laptop pursuant to FOIA Exemptions 3, 4, and 7(D) and withheld the Personal Laptop pursuant to exemptions 7(D). The FBI is also entitled to summary judgment on these exemptions.

### a. Exemption 3 applies because the Work Laptop is information protected by statute.

The FBI properly withheld information under FOIA Exemption 3, which exempts information "specifically exempted from disclosure by statute … if the statute (A)(i) requires that matters be withheld from the public in such a manner as to leave no discretion on the issue; or (A)(ii) establishes particular criteria from withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). In weighing the validity of this exemption, a court must first consider whether the statute identified by the agency is in fact a withholding statute, and then whether the withheld material satisfies the statute's criteria. *See CIA v. Sims,* 471 U.S. 159, 167 (1985).

The FBI asserted Exemption 3 to withhold information pursuant to the Cybersecurity Information Sharing Act of 2015 ("CISA"), 6 U.S.C. §§ 1500-1510. Ex. 2, at 8. CISA facilitates the sharing of cyber-threat indicators and defensive measures among private entities and the federal government. It aims to improve the timely detection, prevention, and mitigation of

Defendant's Combined Response to Motion for Summary Judgment
and Cross-Motion for Summary Judgment                                              25

cybersecurity threats while providing liability protections and safeguards for privacy and sensitive information. CISA specifically exempts from public disclosure any "cyber threat indicator or defensive measure" that is shared with the federal government pursuant to CISA requires that information falling within the scope of the statute must be withheld, "without discretion, from the public under section 552(b)(3)(B)." Ex. 2, at 7. Because CISA specifically references Exemption 3, information that falls within its scope is prohibited from disclosure in a FOIA case.

The DNC provided the Work Laptop to the FBI to assist with the FBI's investigation into the hacking of the DNC's computer networks. *Id*. at 9. The information on the Work Laptop qualifies as a cyber threat indicator pursuant to 6 U.S.C. § 1501(6). This section incorporates the definition codified at 6 U.S.C. § 650(5), which broadly encompasses information necessary to identify a method of defeating a security control or exploiting a security vulnerability itself, the actual or potential harm caused by an incident—including information exfiltrated—and "any other attribute of a cybersecurity threat." 6 U.S.C. §§ 1501(6); 650(5)(B)-(H).

A computer that is part of a network compromised by such an attack is a store of precisely that type of information. Its files, system logs, IP addresses, communications, access records, and other artifacts may reveal how the attacker entered the company's systems, what vulnerabilities were exploited, whether the attacker remotely accessed or controlled the device, what information was accessed or exfiltrated, and what harm resulted from the attack.

The fact the DNC provided the Work Laptop as opposed to extracting various files and providing them to the FBI does not alter the conclusion that CISA applies. CISA defines cyber threat indicator in terms of "information" without limiting the form or medium the information must be conveyed. Providing the FBI with the Work Laptop as the manner of sharing the collection of cyber-threat indicators with the FBI qualifies under the statute.

Defendant's Combined Response to Motion for Summary Judgment
and Cross-Motion for Summary Judgment                                                    26

Therefore, the FBI properly asserted Exemption 3 in connection with CISA to protect the information and contents of the Work Laptop provided to the FBI by the DNC in order to assist the FBI's investigation into the hacking of the DNC's computer networks.

**b. FOIA Exemption 4 applies to the Work Laptop in its entirety because the Work Laptop contains confidential commercial information.[1]**

FOIA Exemption 4 protects from disclosure trade secrets and commercial or financial information obtained from a person that is privileged or confidential. 5 U.S.C. §552(b)(4). This exemption is intended to protect the interests of both the government and submitters of information. *See, e.g., Nat'l Parks & Conservation Ass'n v. Morton,* 498 F.2d 765, 767–70 (D.C. Cir. 1974). The exemption protects information "if its disclosure is likely to impair the government's ability to obtain necessary information in the future or to cause substantial harm to the competitive position of the person from whom the information was obtained." *Huddleston v. Fed. Bureau of Investigation*, No. 4:20-cv-00447, 2022 WL 4593084, *17 (E.D. Tex. Sept. 29, 2022) (quoting *Sharyland Water Supply Corp. v. Block*, 755 F.2d 397, 398 (5th Cir. 1985)). Where commercial information is customarily and actually treated as private by its owner and provided to the government under an assurance of confidentiality, the information is confidential for purposes of Exemption 4. *Food Marketing Inst. v. Argus Leader Media*, 588 U.S. 427, 440 (2019).

In reviewing the records at issue, the FBI located the Work Laptop, which is a laptop computer that belongs to the DNC. Ex. 2, at 9. To determine whether the Work Laptop and its contents qualified for protection pursuant to Exemption 4, the FBI contacted legal counsel for the DNC to establish whether the Work Laptop and its contents are customarily treated as private; and whether it provided the information to the FBI with an assurance of privacy. *Id.* The DNC advised

---

[1] Plaintiff argues that the FBI has not previously identified Exemption 4. Dkt. No. 225, at 22–23. This is not the case. The FBI included Exemption (b)(4) in its *Vaughn* index from early 2025. *See generally* Dkt. No. 190-1.

Defendant's Combined Response to Motion for Summary Judgment
and Cross-Motion for Summary Judgment                                                      27

the FBI that the content of the Work Laptop contains information that it would not customarily, or in any manner, release to the public. *Id.* The DNC further advised the FBI that it objects to the release of the contents of the Work Laptop. Based on the proprietary nature of contents of the Work Laptop and the determinant to the DNC's commercial interest that public disclosure would entail, the confidential nature of the information that would not be customarily released, as well as the DNC's intent to share the computer with the FBI under an implied assurance of confidentiality, the Work Laptop and its contents are exempt from disclosure pursuant to Exemption 4.

### c. FOIA Exemptions 7(D) also justifies withholding the contents of the Work Laptop and the Personal Laptop.

Defendant is also justified in its application of Exemption 7(D). Exemption 7(D) exempts records or information compiled for law enforcement purposes when disclosure:

> could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). This exemption protects agency records "compiled for law enforcement purposes … by criminal law enforcement authority in the course of a criminal investigation" if release of those records "could reasonably be expected to disclose" the identity of, or information provide by, a "confidential source." *See United Staes v. Landano*, 508 U.S. 165, 171 (1993). "Under 7(D), the government has clear statutory authority to withhold both the source and the information with respect to criminal investigations . . . ." *Cooper Cameron Corp. v. U.S. Dep't of Lab.*, 280 F.3d 539, 550 (5th Cir. 2002). What constitutes a "confidential" source has been interpreted broadly. The requirement signifies only that the information was provided in confidence or in trust, with the assurance that it would not be disclosed to others. *See Dow Jones & Co. v. Dep't of Just.*, 917 F.2d 571, 575-76 (D.C. Cir. 1990).

Numerous confidential sources report to the FBI on a regular basis; they provide information under express assurances of confidentiality and are "informants" within the common meaning of the term. Ex. 2, at 10. Others are interviewed and/or provide information under implied assurances of confidentiality (*i.e.*, under circumstances from which assurances of confidentiality may be inferred). In either situation, these sources are considered confidential because they furnish information only with the understanding that their identities and the information they provided will not be divulged outside the FBI. *Id.* "[A] source is confidential within the meaning of Exemption 7(D) if the source 'provided information under an express assurance of confidentiality or in circumstances from which such assurance could reasonably be inferred.'" *Landano*, 508 U.S. at 165 (quoting S.Rep.No. 93-1200, at 13, U.S. Code Cong. & Admin. News pp. 6267, 6291).

The FBI asserted Exemption 7(D) to withhold information provided by sources—the Work Laptop and the Personal Laptop—under express or implied assurances of confidentiality. Ex. 2, at 11. The FBI has asserted Exemption 7(D) as to the Work Laptop because it was provided to the FBI under an implied assurance of confidentiality. *Id.* The disclosure of the Work Laptop could have negative consequences for the DNC, *Id.*, which has objected to the release of the contents of the computer. *Id.* at 9. Given these circumstances, it is reasonable to infer that the DNC cooperated with the FBI only because it expected the information would be held in confidence. Thus, the FBI has properly withheld the contents of the Work Laptop pursuant to Exemption 7(D).

Exemption 7(D) similarly applies to the Personal Laptop. The FBI asserted Exemption 7(D) as to the Personal Laptop to withhold the name, identifying information of, and specific information provided—contents of the CD image of Seth Rich's Personal Laptop—by a local law enforcement employee under an implied assurance of confidentiality. *Id.* at 11. Although local law enforcement may not expect that all information provided to the FBI will be kept confidential, in

this case an implied assurance of confidentiality can be inferred. *Id.* Here, the local law enforcement officer provided the FBI with information that is singular in nature, concerning a subject thought to be of investigative interest. Given the circumstances, the FBI reasonably inferred that the employee provided this information to the FBI with the expectation that his/her involvement in the investigation and the information (s)he provided would remain confidential. *Id.* at 12. And violating that implied assurance of confidentiality could have a negative impact on the relationship between the FBI and local law enforcement, on which the FBI heavily relies. *Id.* Release of the Personal Laptop would deter other local law enforcement agencies from sharing information in the future for multiple reasons. *See id.* at 12. It is, therefore, reasonable for the FBI to infer that the local law enforcement agent provided the CD containing the image of Seth Rich's Personal Laptop to the FBI pursuant to an implied assurance of confidentiality. Accordingly, the FBI's withholding of the Personal Laptop is proper under Exemption 7(D).

> **d.  The FBI has reasserted Exemption 6 and 7(C), as they relate to Seth Rich, to preserve the argument for appeal.**

Although the Court has previously rejected the FBI's global assertion of private interests on behalf of Seth Rich, Dkt. No. 70, the FBI maintains those exemptions to preserve the issue for potential appeal.[2] Exemption 6 protects from disclosure personal and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(6). Exemption 7(C) similarly protects from disclosure records or information compiled for law enforcement purposes when disclosure could reasonably be expected to

---

[2] Plaintiff argues that the law of the case doctrine precludes the FBI from preserving Exemptions 6 and 7(C) as to Seth Rich for appeal. Dkt. No. 225, at 14–15. This is incorrect. The law of the case doctrine only applies to an issue of law or fact decided on appeal. *United States v. Lee*, 358 F.3d 315, 320 (5th Cir. 2004) (citing *United States v. Matthews*, F.3d 652, 657 (5th Cir. 2002)). Further, because the Court has not entered a final judgment, the Court retains the discretion to revise any order or decision that adjudicates fewer than all claims. Fed. R. Civ. P. 54(b). Thus, the law-of-the-case doctrine does not apply in this case.

constitute an unwarranted invasion of personal privacy. 5 U.S.C. §552(b)(7)(C). Exemptions 6 and 7(C) balance individuals' privacy interests in protecting information from disclosure against the public interest in such disclosure. *See generally U.S. Dep't of Justice Reporters Comm. For Freedom of Press*, 489 U.S. 749, 771-76 (1989). The purpose of Exemption 6 is to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982).

The FBI asserted Exemptions 6 and 7(C) to protect the contents of the Work Laptop and Personal Laptop. As explained in the Lara Declaration, the FBI determined that "disclosing information about Seth Rich within the contents of the Personal and Work Laptops maintained in the FBI's investigative file would not significantly increase the public's understanding of the operations and activities of the FBI. Accordingly, the FBI properly protected the individuals' privacy interests pursuant to FOIA Exemptions 6 and 7(C)." Ex. 2, ¶¶ 22–26.

The FBI also has asserted Exemptions 6 and 7(C) with respect to the names and other identifying information of third parties who are merely mentioned in the contents of the materials located on the Personal Laptop and Work Laptop responsive to Plaintiff's requests. The FBI has concluded that disclosing information about the individuals who are merely mentioned within the contents of the Personal Laptop and Work Laptop do not significantly increase the public's understanding of the operations and activities of the FBI. Accordingly, should the Court deny the FBI's motion for summary judgment and order production of information on the Work Laptop and Personal Laptop, the FBI reserves its right to appropriately withhold the names and other identifying information of individuals merely mentioned therein.

## VI.    Segregability

Finally, the FBI has satisfied its segregability obligations under FOIA. For purposes of segregability, "[a]gencies are entitled to a presumption that they complied with the obligation to

disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). Here, the "FBI determined that all material was covered by one or more of the cited FOIA exemptions; therefore, there was no information that could reasonably [be] segregated for release without triggering foreseeable harm to one or more of the cited FOIA exemptions." Ex. 2, ¶ 33. The FBI did not withhold any reasonably segregable, nonexempt portions from Plaintiff.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for summary judgment and grant the FBI's motion for summary judgment because it appropriately withheld the Work Laptop and Personal Laptop pursuant to applicable FOIA Exemptions.

Respectfully submitted,

JAY R. COMBS
UNITED STATES ATTORNEY

*/s/ James Gillingham*
JAMES GARLAND GILLINGHAM
Texas State Bar No. 24065295
james.gillingham@usdoj.gov
110 N. College, Suite 700
Tyler, TX  75702
(903) 590-1400
Fax: (903) 590-1436

**COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2026, a true and correct copy of the foregoing document was filed electronically with the court and has been sent to counsel of record via the court's electronic filing system.

*/s/ James Gillingham*
JAMES GILLINGHAM
Assistant United States Attorney