**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| BRIAN HUDDLESTON,<br>    Plaintiff,<br><br>    v.<br><br>FEDERAL BUREAU OF INVESTIGATION and UNITED STATES DEPARTMENT OF JUSTICE,<br>    Defendants. | CIVIL ACTION No. 4:20CV447<br><br>JUDGE AMOS MAZZANT |

### FBI'S SUR-REPLY REGARDING LACK OF STANDING

Plaintiff's additional brief[1] does not cure the threshold jurisdictional defect. Huddleston lacked standing when the policy-or-practice claims were asserted. The subsequent assignment and later requests cannot retroactively supply an injury that Huddleston lacked at the time he filed the Supplemental Complaint. Nor can Plaintiff avoid that problem by recasting his claim under 5 U.S.C. § 552(g). Plaintiff previously characterized the relief sought in the Supplemental Complaint as "wholly prospective." Unable to establish the future injury necessary to pursue that relief, Plaintiff abruptly pivots and recasts the Section 552(g) claim as resting on a present informational injury. That newly-asserted theory fails because Huddleston never requested, and therefore was never denied, the information at issue.

---

[1] On July 6, 2026. Plaintiff filed his unopposed motion for leave to file a "surreply" brief regarding standing. Doc. No. 230. The Clerk ordered Plaintiff to refile because he had included the proposed brief as an attachment as opposed to a separate entry. The next day, Plaintiff attempted to correct the error by refiling his unopposed motion for leave to file the surreply. Doc. No. 231. The second motion for leave, however, suffered from the same flaw as the first. Ultimately, the Court granted the second motion but because Plaintiff had attached the proposed brief as an exhibit, the Court ordered him to "file the Surreply without delay." Doc. No. 233. Plaintiff filed his surreply the same day. Doc. No. 234. However, the surreply Plaintiff filed is not identical to the surreply attached to the motion for leave that the Court granted. Compare Doc. No. 231-1 at 8 *with* Doc. No. 235 at 5, 8 *with* Doc. No. 235 at 5, 7–8. Due to the unexplained discrepancy, the FBI will respond to the version filed as Doc. No. 235.

FBI's Sur-Reply Regarding Lack of Standing                                                              1

Accordingly, for these reasons and those set forth in Defendant's Supplemental Brief regarding Article III standing, Doc No. 227, the Court should hold that Brian Huddleston lacks standing to pursue the policy-or-practice claims, dismiss those claims, and grant the Defendant's motion for protection from discovery, Doc. No. 217, because Plaintiff relies on those claims to justify his requested discovery.

I.    **Huddleston must establish standing based on the facts that existed when he filed the Supplemental Complaint on April 10, 2023.**

Plaintiff is incorrect that the "FBI's entire brief turns on Local Rule CV-7(k)." *See* Doc. No. 231-1, at 2. The Parties agree on the governing legal principle: standing should be measured as of the date he filed the Supplemental Complaint. Dkt. 226, at 7–8; *see also Lutter v. JNESO*, 86 F.4th 111, 126 (3rd Cir. 2023) ("[A] plaintiff's Article III standing is evaluated as of the date of the supplemental pleading."). The relevant issue is therefore whether the facts existing when the Supplemental Complaint was filed established Huddleston's standing to pursue the policy or practice claims. It is also undisputed that Huddleston filed and docketed the Supplemental Complaint on April 10, 2023.

Local Rule CV-7(k) establishes the date. Local Rule CV-7(k)—which tellingly Plaintiff failed to address in his original brief on standing—deems the Supplemental Complaint filed on the original date of its filing, in this case, April 10, 2023:

| 04/10/2023 | 114 | AMENDED COMPLAINT *(Supplemental Complaint)* against All Defendants, filed by Brian Huddleston. |

Plaintiff does not dispute the Supplemental Complaint was docketed on this date.

At the time Huddleston filed the Supplemental Complaint, he could not establish standing for the policy-or-practice claims. Huddleston did not have any other FOIA requests pending before the FBI. Moreover, Miller, who did not even become an assignee of Huddleston's claim until more than a year later, lacked any interest in the litigation, was never mentioned in the FOIA requests,

had not been mentioned in the litigation, and was no more than a stranger to the proceedings. Doc. No. 204. Miller's later assignment—which cannot give him any greater rights than Huddleston possessed—therefore cannot establish standing at the relevant time.

Local Rule CV-7(k) is clear, unambiguous, and cuts against Plaintiff. For this reason, rather than address Local Rule CV-7(k) as written, Plaintiff rewrites the rule in an attempt to limit its application to questions of timeliness or docket administration. The Rule's text contains no such limitation and the Court should decline to read such a limitation into the Rule here. The FBI does not contend that Local Rule CV-7(k) creates, enlarges, or withdraws federal jurisdiction. The rule answers the antecedent procedural question: when was the Supplemental Complaint filed? Article III then determines whether the facts existing on that date establish standing.

The authorities Plaintiff cites do not change the result. None interprets Eastern District of Texas Local Rule CV-7(k) and none addresses whether events occurring after the filing of a supplemental complaint may retroactively establish standing. Plaintiff's reliance on *King v. Dogan*, 31 F.3d 244 (5th Cir. 1994) is misplaced. There, the Fifth Circuit explained that an amended complaint supersedes the original complaint and renders it of no legal effect. *King*, 31 F.3d at 346. That holding does not answer the question presented here: when was the Supplemental Complaint filed for purposes of evaluating Huddleston's standing.[2]

Therefore, the Court should conclude that April 10, 2023, is the relevant date. As of April 10, 2023, Huddleston had no additional FOIA requests pending before the FBI, and Miller had no interest in the litigation or the claims submitted in the Supplemental Complaint. Events occurring

---

[2] None of the cases Plaintiff cites are persuasive. At most, those cases stand for the basic proposition that after a party has amended his complaint as a matter of course and the time for amendments has expired, a party may only amend by obtaining leave of court. *See* 6 Charles Wright & Arthur E. Miller, *Federal Practice and Procedure* § 1484 (2d ed. 1990).

later, such as Miller's subsequent requests and assignment, cannot retroactively supply an injury that Huddleston lacked when the claims were asserted.

## II.    Miller's later requests cannot retroactively supply Huddleston's standing.

Plaintiff continues to focus his argument on Miller notwithstanding the Court's direction that the Parties address Plaintiff Biran Huddleston's standing to pursue the policy-or-practice claims. As explained in the FBI's brief on standing, Miller's later FOIA requests do not answer the question presented. As assignee, Miller acquires only the claim that the assignor possessed. An assignment cannot create standing that was absent when the claim was asserted. Because Huddleston lacked standing to pursue the claims, Miller's subsequent assignment and later requests cannot cure the defect.

Plaintiff's invocation of *Sprint Comm'n Co., L.P. v. APCC Services, Inc.*, 564 U.S. 269 (2008), is misplaced. *Sprint* held that the holder of a validly assigned claim may have standing to pursue the assigned claim. *Sprint*, 564 U.S. at 271. It does not hold that an assignment can create a claim or supply an injury when the assignor lacked standing in the first instance. And *Sprint* is factually distinguishable from this case. In *Sprint*, it was undisputed that the assignors possessed accrued claims before assigning them. By contrast, the issue here is whether Huddleston could establish standing to pursue the policy-or-practice claims when they were asserted. He could not, and *Sprint* does not alter this conclusion.

Plaintiff's reliance on *Lyon* and *Littleton* also conflates two distinct requirements. A controversy must remain live during the litigation, but standing must also exist when the claim is asserted. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000) ("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).") Miller's present circumstances may bear on

FBI's Sur-Reply Regarding Lack of Standing                                                    4

mootness if a valid claim had existed initially—it did not—but they cannot retroactively establish standing that was absent at inception.

### III. Huddleston cannot establish *any* injury to support his Section 552(g) claim, let alone a future injury or a claim seeking prospective relief.

Plaintiff argues that standing exists for the Section 552(g) policy-or-practice claim because it does not depend on any future FOIA request, the assignment to Miller, or on Miller's pending requests because Huddleston suffered a present informational injury. Doc. No. 235, at 7–8. The argument fails for two reasons. First, Huddleston did not request—and therefore was not denied—the information at issue. Second, Plaintiff pleaded purely prospective relief for his Section 552(g) claim, which requires future injury, which Huddleston has not alleged.

#### a. Huddleston did not suffer an informational injury because he did not request the information at issue.

First, Plaintiff has not suffered an injury because he did not request the information required by Section 552(g). Tacitly recognizing his inability to establish future harm, Plaintiff backs away from his opening brief on standing where he characterized the relief he seeks as "wholly prospective." Doc No. 226 at 2. Huddleston now characterizes his injury as an informational injury that is "present, not prospective." Doc No. 235 at 7. But an informational injury belongs to the person denied information to which the person is legally entitled. Huddleston cannot claim injury based on a request he never made.

The documents attached to the Supplemental Complaint establish that the request was made by Ty Clevenger, not Brian Huddleston. *See* Doc. No. 114-1. Clevenger's October 3, 2022 letter to Michael Seidel does not reference Huddleston, does not reference any of Huddleston's FOIA requests, and does not reference this litigation. *Id*. Seidel's November 3, 2022 response likewise does not reference Huddleston, his FOIA requests, or this litigation. Doc. No. 114-2.

Seidel's response references FOIPA Request No. 1563998-000. *Id.* That number was not assigned to any of Huddleston's FOIA requests. *Compare* Doc No. 114-2 *with* Doc. No. 227-1, at 3 (providing the FOIPA numbers assigned to Huddleston's FOIA requests). It is similarly not a FOIPA number assigned to any of Miller's request. *Compare* Doc. No. 114-2 *with* Doc No. 227-1, at 4 (providing FOIPA numbers for Miller's requests). Thus, the documents attached to the Supplemental Complaint establish that if was not *Huddleston* who made a request for information pursuant to Section 552(g).

If the attachments to the Supplemental Complaint left any doubt that Huddleston did not make the request—they do not—Clevenger's subsequent response confirms the request was not made on Huddleston's behalf. That response, attached hereto as Exhibit A, appears on letterhead for "The Transparency Project," and states, "On behalf of The Transparency Project, I request that you post the information to the FBI website or send me the information as soon as possible via email." Ex. A. The letter continues, "[i]f you maintain that a standard FOIA request is required, then please consider this a request submitted on behalf of The Transparency Project for all information described in § 552(g)." *Id.*

The record identifies either Clevenger or The Transparency Project as the requester. It does not identify Huddleston. Because Huddleston did not request the information, he was not the person to whom the information was denied and therefore did not suffer the informational injury the Plaintiff asserts.

The fact that Huddleston never requested information pursuant to Section 552(g) also distinguishes the cases Plaintiff cites for the proposition that "the denial of information that a statute requires the government to disclose is itself an injury in fact." Doc No. 235, at 8. In *Federal Election Commission v. Atkins*, a group of voters asked the Federal Election Commission to order

AIPAC "to make public the information that FECA demands of a 'political committee.'" 524 U.S. 11, 16 (1998). Thus, unlike Huddleston, the plaintiffs in *Atkins* sought and were denied information they sought to obtain.

The same is true for *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989). There, the Washington Legal Foundation sued the Department of Justice after its request for a list of potential judicial nominees was denied. *Pub. Citizen*, 491 U.S. at 447. The Court explained,

> Appellant WLF has specifically requested, and been refused, the names of candidates under consideration by the ABA Committee, reports and minutes of the Committee's meetings, and advance notice of future meetings… Our decisions interpreting the [FOIA] have never suggested that those requesting information under it need show more than they sought and were denied specific agency records.

*Id.* at 449. Huddleston's failure to have requested the information he claims he was denied,[3] preclude him from clearing even the low hurdle established in these cases.

Huddleston did not seek the Section 552(g) information at issue here. He, therefore, cannot establish the threshold recognized in cases on which Plaintiff relies: that the plaintiff personally sought and was denied the information underlying the asserted injury.

### b. Huddleston has not alleged future injury required to obtain prospective relief.

Even if Huddleston suffered a past informational injury, that alone would not establish standing for the prospective relief sought in the Supplemental Complaint. The Supplemental Complaint seeks injunctions requiring the FBI to comply with Section 552(g), disclose specified information to every FOIA requester, not merely Huddleston, and cease certain allegedly unlawful policies. Doc. No. 113 at 4, ¶¶ 10–12. Each form of requested relief is prospective, and Plaintiff has previously characterized the Supplemental Complaint as "wholly prospective."

---

[3] Additionally, as explained in the FBI's opposition to Plaintiff's motion to file the supplemental complaint, the premise of the Supplemental Complaint is simply incorrect. At the time of the request, the FBI disclosed, and still discloses, more than five information systems. The FBI's opposition provided step-by-step instructions on how to access the information. Those steps still work today. *See* Doc. No. 117, at 5–7.

Standing to seek prospective relief requires more than past injury. As explained in the FBI's supplemental brief, to obtain prospective relief—whether in the form of an injunction or a declaration invalidating an agency policy—it is not enough to allege a past injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *O'Shea v. Littelton*, 414 U.S. 488, 495-96 (1974).

Huddleston has not made this showing. He does not identify a pending request that could give rise to future harm. Instead, Huddleston argues that his injury "arose when [he] made his requests and it persists today." Doc. No. 231-1 But as explained *supra* and in FBI's opening brief on standing, an allegation of past injury does not establish the future injury required to obtain an injunction and, as discussed *supra*, Plaintiff cannot even show a past injury.

Huddleston, therefore, lacks standing for two independent reasons. He suffered no informational injury because he did not request the information at issue, and he has not alleged the future injury necessary to pursue the prospective relief sought in the Supplemental Complaint.

## IV. Huddleston's lack of standing is not curable, and Plaintiff's proposed cure is essentially commencing a new suit in the shadow of this one.

Plaintiff argues that any defect is curable and does not warrant dismissal. But Plaintiff is not merely asking to correct the name of the proper holder of an existing claim. He is asking to import Miller's later personal requests and later purported personal injury into this case to create standing that did not exist when Huddleston filed his policy-or-practice claims. The rules do not support effectively commencing a new action within the confines of this one, and the provisions he invokes do not support the relief he suggests.

Rule 17(a)(3) protects against forfeiture caused by an understandable mistake in selecting the party in whose name the action should be brought; it does not cure the absence of standing. Here, there is no suggestion that there was a mistake as to the real party in interest and therefore Rule 17(a)(3) is inapplicable. Rule 25(c) allows litigation of a validly transferred interest to

continue; it does not enlarge the transferred interest based on the transferee's post-transfer conduct. An assignee may be able to pursue the assigned claim, but the assignee's subsequent acts cannot create a claim that was never possessed.[4] Nor would a supplemental pleading under Rule 15(d) provide an appropriate cure. Although not before the Court, presumably the supplementation would not merely update the facts supporting an existing claim, it would seek to introduce Miller's independent cause of action into litigation that has been proceeding for six years based on Huddleston's separate requests.

In sum, Plaintiff's proposed cure would not supplement an existing claim or correct the identity of its proper holder. It would graft Miller's independent post-filing dispute onto Huddleston's legacy action. Standing is not such a malleable concept that it can be cured by the post-filing actions of a stranger to the litigation.

## V.    Jurisdictional discovery is not warranted.

The Court should reject Plaintiff's passing attempt to obtain jurisdictional discovery. Plaintiff argues that "[t]he FBI made standing a factual dispute … and the facts bearing on the injury and causation elements of standing lie within the FBI's exclusive control." Dkt. 223, at 11. This is not true.

The Court ordered briefing on Plaintiff Brian Huddleston's standing. Rather than submit evidence that Huddleston had additional requests pending or concrete plans to submit future requests, Plaintiff relied on a declaration from Miller identifying requests that he made in his own name—tellingly made three days following the Court's order for additional briefing on standing. Dkt # 226-1. The FBI's declaration did not create a factual dispute. It merely confirmed what

---

[4] Plaintiff has also already unsuccessfully sought to substitute Miller as the plaintiff in this action. Doc No. 164. The Court denied the motion more than a year ago, Doc. No. 204, and Plaintiff has never moved for reconsideration or otherwise sought to properly revisit that decision.

Plaintiff's submission conspicuously failed to show, that Huddleston did not have any FOIA requests pending with the FBI at the time he filed the Supplemental Complaint and has not issued any FOIA requests since it has been filed. Doc. No. 227-1, ¶¶ 6-7.

Plaintiff does not dispute those facts, nor does he identify any discovery that could alter the relevant record. Whether Huddleston had additional requests pending was known to Huddleston and not uniquely in the FBI's possession. Likewise, the timing of Miller's requests is already established by Plaintiff's evidence. Simply put, jurisdictional discovery is neither necessary nor warranted.

## CONCLUSION

Huddleston lacked standing to pursue the policy-or-practice claims when the Supplemental Complaint was filed. Miller's latter assignment and independently submitted FOIA requests do not retroactively cure that defect. Regarding Section 552(g), Huddleston never actually requested the information underlying the Section 552(g) claim. For these reasons, and those stated in FBI's original brief on standing, the Court should find Plaintiff lacks standing to pursue the policy-or-practice claims, dismiss the Supplemental Complaint, and grant the FBI's motion for protection from discovery that is predicated solely on those claims.

JAY R. COMBS
UNITED STATES ATTORNEY

*/s/ James Gillingham*
JAMES GILLINGHAM, AUSA
Texas Bar No. 24065295
110 N. College Ave.; Suite 700
Tyler, Texas 75702
Tel:  (903) 590-1400
Fax: (903) 590-1436
Email:  James.Gillingham@usdoj.gov

FBI's Sur-Reply Regarding Lack of Standing                                                      10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 3, 2026, a true and correct copy of the foregoing document was filed electronically with the court.

/s/ James Gillingham
JAMES GARLAND GILLINGHAM