**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| **BRIAN HUDDLESTON,** | |
| **Plaintiff,** | |
| **vs.** | **Case No. 4:20-cv-447-ALM** |
| **FEDERAL BUREAU OF INVESTIGATION and UNITED STATES DEPARTMENT OF JUSTICE** | |
| **Defendant** | |

**PLAINTIFF'S COMBINED RESPONSE IN OPPOSITION TO DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES Brian Huddleston, the Plaintiff, filing this combined response in opposition to the cross-motion for summary judgment (Dkt. #237) filed by Defendant Federal Bureau of Investigation ("FBI"), and reply in support of Plaintiff's motion for summary judgment (Dkt. #225):

**Introduction**

The FBI's cross-motion rests on a single proposition: that "the production of any data of any kind from any computer possessed or used by Seth Rich at the time of his death reasonably could be expected to interfere with law enforcement proceedings." Declaration of Michael P. Spence ("Spence Decl.") (Dkt. #237-3) ¶ 7. That is not just an overly-broad exemption claim; it is an outright refusal to perform the document-by-document analysis that this Court has now ordered three times, *see* Dkt. #136 at 24–25; Dkt. #178 at 6–7; Dkt. #214. If "any data of any kind" is exempt because of where it was found rather than what it says, then the review the Court ordered

was pointless, the *Vaughn* indexes are pointless, and FOIA itself is pointless for any record that ever passes through an open investigative file.

The cross-motion should be denied, and Plaintiff's motion granted, for three independent reasons that this response develops alongside Plaintiff's reply.

**First**, the government's own declarations conflict with one another. Special Agent Wickman swears that before any analysis of the work laptop "could begin, the forensic image would first need to be restored from its archived state and processed using forensic software." Wickman Decl. (Dkt. #237-2, Ex. B) ¶ 6. Yet Isabel Lara and Shannon Hammer swear that the FBI already "conducted a document-by-document review of the contents of the Work Laptop." Lara Decl. (Dkt. #237-2) ¶ 13; Dkt. #196-1 ¶ 5. It is impossible to tell which is true, and a movant whose sworn evidence contradicts itself is not entitled to summary judgment.

**Second**, the FBI seeks summary judgment on more than a thousand records that it admits it never reviewed and for which its own indexes cite no exemption at all — the so-called "corrupted" files. Plaintiff has never asked the FBI to create, repair, or restore anything. The FBI's obligation is simpler: either open the corrupted files for its own exemption-review purposes, or release them to Plaintiff exactly as they exist. If the FBI lacks the technical competence to open its own records, that incompetence is not one of the nine exemptions Congress enacted. And if the FBI is afraid to release the files as they are, that fear is an admission that the files can be opened and salvaged — in which case the FBI was obligated to open, review, and index them long ago.

**Third**, the FBI's "harm" showings do not exist. The revised indexes append to every record the identical sentence — that disclosure "could reasonably be expected to interfere with law enforcement proceedings or investigations" — which is nothing more than the text of the statute repeated 2,095 times. The Fifth Circuit has reversed summary judgment on precisely this kind of

conclusory showing. *Batton v. Evers*, 598 F.3d 169, 176–81 (5th Cir. 2010). The March 24, 2026 Order required explanations of "how disclosure would harm the interests protected by the claimed statutory exemptions." Dkt. #214. A find-and-replace macro is not an explanation.

Each point is developed below, together with Plaintiff's reply on the issues raised in his motion. Because the FBI's response and cross-motion rely on the same declarations and arguments, Plaintiff addresses them together.

## I.      The FBI has left much of Plaintiff's motion uncontested.

Before reaching the merits, the Court should take account of how much of Plaintiff's motion the FBI's thirty-two-page brief does not answer. Nearly thirty years ago, Judge Richard Posner warned that a party's failure to contest an adversary's points is "not necessarily a waiver, but it is a risky tactic, and sometimes fatal." *Law v. Medco Rsch., Inc.*, 113 F.3d 781, 787 (7th Cir. 1997). This Court's Local Rules put it more concretely: "A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion." E.D. Tex. Local R. CV-7(d). Plaintiff does not contend that every omission catalogued below works a forfeiture. He contends instead that the breadth of what the FBI declined to answer is a tacit admission that its positions are indefensible.

### A.  Legal and factual issues ignored by the FBI.

- **The Court's four prior rulings against the FBI on identical issues.** The FBI's brief does not acknowledge that this Court has already granted Plaintiff summary judgment on Exemptions 6 and 7(C) as to Seth Rich, on Exemption 7(D) as to the Personal Laptop, and on Exemption 7(E) as to the Personal Laptop — or that it twice held the FBI to a document-level review before categorical Exemption 7(A) withholding. *See infra* Part II.A.

- **Production of the "corrupted" files as they exist under 5 U.S.C. § 552(a)(3)(B).** Plaintiff argued that the FBI had at minimum two options, the first being to produce

the files in their original, uncorrected form. Dkt. #225 at 25. The FBI answers only the argument Plaintiff did not make — that it must repair the files. *See infra* Part IV.

- **Waiver of exemptions first asserted years into the litigation.** Dkt. #225 at 23 (citing *Maydak*). The words "waive" and "waiver" do not appear in the FBI's brief in any form, and it offers no timeliness argument of any kind. It just doesn't respond.

- **That a court's orders must be obeyed pending appeal.** Dkt. #225 at 13–14. The FBI's footnote responds on law of the case and Rule 54(b) only; it never engages the obedience authorities.

- **That the FBI's interlocutory remedies are foreclosed.** Plaintiff showed that the FBI never sought certification under 28 U.S.C. § 1292(b) and never petitioned for mandamus, and that both routes closed years ago. Dkt. #225 at 14. No response.

- **That filenames are metadata distinct from file contents, and that no exemption has been asserted as to filenames themselves.** Dkt. #225 at 8. The FBI's entire answer is that it "has redacted file names, but it explained why," followed by the Spence "any data of any kind" quotation. Dkt. #237 at 8–9. It never identifies an exemption applicable to a filename as such.

- **That Special Agent Wickman's stated reason for not examining USB artifacts is circular.** Dkt. #225 at 18–19. No response.

- **That the alternative transfer methods Wickman posits commonly leave their own artifacts.** Dkt. #225 at 21–22. No response.

- **That the public interest in disclosure must be weighed against any asserted privacy interest.** Dkt. #225 at 15. The FBI cites *Reporters Committee* but never performs the balance.

- **That segregability requires line-by-line analysis.** Dkt. #225 at 25–26. The FBI's entire segregability section is five sentences resting on a single presumption. Dkt. #237 at 31.

**B. Authorities Plaintiff cited that the FBI's brief never mentions.**

- *Bevis v. Dep't of State*, 801 F.2d 1386 (D.C. Cir. 1986), and *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 789 F.2d 64 (D.C. Cir. 1986) — the decisions governing categorical Exemption 7(A) withholding. The FBI's principal argument is categorical. Dkt. #225 at 11–12.

- *King v. U.S. Dep't of Justice*, 830 F.2d 210 (D.C. Cir. 1987), holding that a particularized *Vaughn* index must be furnished where supporting declarations are conclusory — the direct answer to the FBI's submission that its indexes and declarations be read together. Dkt. #225 at 9.

- *Wiener v. FBI*, 943 F.2d 972 (9th Cir. 1991); *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83 (D.D.C. 2009); *Watkins L. & Advoc., PLLC v. U.S. Dep't of Justice*, 78 F.4th 436 (D.C. Cir. 2023); and *Cause of Action Inst. v. IRS*, 253 F. Supp. 3d 149 (D.D.C. 2017).

- *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57 (D.C. Cir. 1990), and *Dep't of Air Force v. Rose*, 425 U.S. 352 (1976) (exemptions narrowly construed in favor of disclosure).

- *Maydak v. U.S. Dep't of Justice*, 218 F.3d 760 (D.C. Cir. 2000).

- *Arizona v. California*, 460 U.S. 605 (1983), and *Royal Ins. Co. of Am. v. Quinn-L Cap. Corp.*, 3 F.3d 877 (5th Cir. 1993) — the authorities establishing that law of the case reaches a court's own interlocutory rulings. The FBI's footnote states a narrower rule while omitting both. *See infra* Part II.C.

- *United States v. United Mine Workers of Am.*, 330 U.S. 258 (1947); *Maness v. Meyers*, 419 U.S. 449 (1975); *Howat v. Kansas*, 258 U.S. 181 (1922); and *Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787 (5th Cir. 2013).

- *In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc), and *In re Red Barn Motors, Inc.*, 794 F.3d 481 (5th Cir. 2015).

- *Porup v. CIA*, 997 F.3d 1224 (D.C. Cir. 2021), and *Ctr. for Immigr. Stud. v. U.S. Citizenship & Immigr. Servs.*, 2025 WL 405115 (D.D.C. Feb. 5, 2025) (segregability proceeds line-by-line).

- *Frazier v. Se. Georgia Health Sys., Inc.*, 2023 WL 10366708 (S.D. Ga. Nov. 8, 2023), *aff'd*, 2024 WL 4357399 (11th Cir. Oct. 1, 2024), and *United States v. Sawatzky*, 994 F.3d 919 (8th Cir. 2021) (**filenames are metadata subject to disclosure**).

Two of Plaintiff's authorities do appear, but not for anything Plaintiff argued. The FBI cites *Campbell* — by way of *Blackwell* — for deference to its assertion of a law-enforcement purpose, Dkt. #237 at 18, rather than for the proposition Plaintiff cited it for. And it cites *Pomares* only to restate Plaintiff's argument before announcing that it "fails." Dkt. #237 at 8. It never disputes that *Pomares* states the governing standard, never distinguishes it, and never argues it should not apply here. There's more:

**C. An exemption the FBI asserts but never defends.**

- **Exemption 7(E).** The Lara Declaration asserts Exemption 7(E) categorically as to both laptops and devotes a section of the declaration to justifying it. Lara Decl. ¶¶ 14, 30–31. The FBI's brief argues Exemptions 3, 4, 6, 7(A), 7(C), and 7(D). The characters "7(E)" appear nowhere in its thirty-two pages. The FBI thus asks this Court to enter summary judgment sustaining a ground of withholding it has not briefed at all. *See infra* Part VIII.D.

### D. Expert testimony the FBI does not rebut.

- Paragraphs 6, 8, 9, 11, 15, 18, 19, and 20 of the June 10, 2026 Apelbaum Declaration go unmentioned. Those are the paragraphs stating that the Wickman Declaration never says the FBI examined any artifact; that its difficulty conclusion is offered with no supporting estimate, artifact list, tool list, workflow, or result; that "creating new records" is a legal characterization rather than a forensic limitation; that alternative transfer methods leave their own artifacts; and the eleven categories of Windows artifacts bearing on external-storage activity.

- Plaintiff observed in his motion that "Mr. Apelbaum has contradicted the FBI's sworn testimony repeatedly, yet no witness for the FBI has ever contradicted any of Mr. Apelbaum's testimony." Dkt. #225 at 2 n.1. The FBI does not dispute that either. What it does instead is selectively quote the first halves of Mr. Apelbaum's sentences. *See infra* Part V.E.

None of this substitutes for the merits, which Plaintiff addresses in the balance of this brief. It matters because the FBI bears the burden on every one of these points, 5 U.S.C. § 552(a)(4)(B), and because a party carrying that burden does not ordinarily leave this much of its adversary's motion unanswered when it has answers to give.

## II.     The cross-motion re-litigates arguments this Court has already rejected, and offers no reason to revisit them.

The Court should also recognize how much of the cross-motion it has seen before. Plaintiff briefed the law-of-the-case doctrine in his motion. Dkt. #225 at 14–15. The FBI answered in a single footnote addressed to a single exemption, Dkt. #237 at 30 n.2, and otherwise proceeded as though the Court's prior rulings had never issued. They did issue, and the Court ruled against six of the positions that the FBI now advances.

### A. The catalog: six positions this Court has already resolved against the FBI.

On four of the exemption claims below, the Court did not merely decline to rule for the FBI — it granted summary judgment to Plaintiff. Each is asserted again in the cross-motion as if those rulings never happened.

- **Categorical Exemption 7(A) without a document-by-document review — rejected twice.** On August 16, 2024, the Court denied the FBI's Exemption 7(A) summary judgment motion because "[t]he Government has not put forward any evidence suggesting that it has conducted a document-by-document review," adding that "[e]ven if a document-by-document review may require arduous efforts by the Government, it remains a requirement of categorical withholding." Dkt. #175 at 5. On March 24, 2026, the Court repeated the rule and warned that "at summary judgment, the Government will be required to defend any further attempt it makes at including the unreviewed files in a categorical exclusion under FOIA Exemption 7(A)." Dkt. #214 at 18. The Government made no such effort.

- **Exemptions 6 and 7(C) as to Seth Rich — rejected once; summary judgment granted to Plaintiff.** "Accordingly, the Court finds the FBI improperly withheld this information under FOIA, and the Court is thus authorized to order its production. Huddleston is entitled to summary judgment on this issue." Dkt. #70 at 48; *accord id.* at 52.

- **Exemption 7(D) as to the Personal Laptop — rejected once; summary judgment granted to Plaintiff.** "[T]he FBI did not properly withhold the files on the images of the personal laptop under Exemption 7(D). Thus, Huddleston is entitled to summary judgment on this issue." Dkt. #136 at 12–13. The cross-motion withholds "the Personal Laptop pursuant to exemption[] 7(D)" once more. Dkt. #237 at 25.

- **Exemption 7(E) as to the Personal Laptop — rejected once; summary judgment granted to Plaintiff.** "[T]he FBI did not properly withhold the files on the images of the personal laptop under Exemption 7(E). Thus, the Huddleston is entitled to summary judgment on this issue." Dkt. #136 at 15. The Lara Declaration asserts Exemption 7(E) against both laptops again. Lara Decl. ¶¶ 14, 30–31.

- **Withholding the work laptop metadata — ordered against the FBI twice.** The November 28, 2023 Order required a *Vaughn* index that "must address the metadata contained within Seth Rich's work laptop." Dkt. #136 at 24–25. The March 24, 2026 Order found that "the FBI has failed to comply with the spirit of the 2023 Order" as to metadata. Dkt. #214 at 15. Yet every filename on both indexes remains redacted even now.

- **That the work laptop, DVD, and tape drive are not agency records — rejected once.** "[T]he FBI has not met its burden to demonstrate that the work laptop, the DVD, and the tape drive are not agency records under the *Rojas* test. Therefore, the Huddleston is entitled to summary judgment on this issue." Dkt. #136 at 19. The assertion that 215,699 items "cannot be viewed or processed pursuant to the FOIA," Lara Decl. ¶¶ 7, 9, is the same proposition in softer clothing. *See infra* Part VI.B.

An honest litigant would raise these issues in a motion for reconsideration. The FBI, however, keeps pretending that the orders never happened. It is little wonder, then, that the FBI tried to bury

the law-of-the-case doctrine in a footnote, namely because that doctrine forecloses most of the FBI's arguments.

### B. The FBI's central legal premise is the one the Court rejected in August 2024 and reaffirmed in March 2026.

On February 8, 2024, the FBI moved for summary judgment on Exemption 7(A). Dkt. #148. The Court denied that motion because the government "failed to provide evidence that it conducted a document-by-document review of the files on the laptops," and ordered exactly that review. Dkt. #175 at 6. The FBI now argues that it "was not required to prepare a document-by-document *Vaughn* index for records withheld under Exemption 7(A) because such records may be withheld on a categorical basis." Dkt. #237 at 10. That is not a new argument responsive to a new record; it is the position the Court rejected two years ago, restated as a legal conclusion. The FBI does not acknowledge the holding, identify any intervening change in law, or explain why a requirement the Court imposed twice has become optional. A party that loses an argument, receives an order directing it to do the thing it said it need not do, and then returns to argue it never had to do that thing in the first place, is not defending a judgment. Instead, it is expressing its contempt for the Court's order.

### C. The FBI re-asserts privacy exemptions this Court rejected in 2022.

In its September 29, 2022 Order, the Court rejected the FBI's global assertion of privacy interests on behalf of Seth Rich under Exemptions 6 and 7(C). Dkt. #70. Nearly four years later those exemptions appear again — not in a footnote preserving an objection, but as active withholding grounds cited across the revised indexes and justified at length in a sworn declaration. Lara Decl. ¶¶ 22–26. The FBI says this is to "preserve the argument for appeal," Dkt. #237 at 30, but Plaintiff rebutted that argument conclusively with citations to binding case law, *see* Dkt. #225 at 12-15, and the FBI ignored both the rebuttal and the binding case law.

**D. The FBI re-asserts Exemptions 7(D) and 7(E) as to the Personal Laptop, on which this Court granted Plaintiff summary judgment.**

The most striking instance of repetition goes unmentioned by the FBI entirely. Judgment was entered against it on Exemptions 7(D) and 7(E) as to the Personal Laptop in November 2023, after the Court examined the unredacted FD-302 in camera and found the FBI's justifications unpersuasive and "vague." Dkt. #136 at 12–13, 15. Both exemptions are back, *see supra* Part II.A, yet the FBI does not acknowledge the rulings, does not attempt to distinguish them, and identifies no new evidence bearing on either exemption. *See infra* Part VIII.C–D. Asking for judgment the other way, without acknowledging a judgment already entered on the very records at issue, is not advocacy on a contested question. It is defiance.

**E. The FBI's answer on law of the case states an incomplete rule, and Rule 54(b) discretion is not self-executing.**

The FBI's footnote asserts that "[t]he law of the case doctrine only applies to an issue of law or fact decided on appeal." Dkt. #237 at 30 n.2. That states the mandate rule and treats it as the whole doctrine. The second branch — addressed to a court's own prior rulings within a single case — is what Plaintiff invoked, and the authorities establishing it, Arizona v. California, 460 U.S. 605, 618 (1983), and Royal Ins. Co. of Am. v. Quinn-L Cap. Corp., 3 F.3d 877, 880–81 (5th Cir. 1993), appear nowhere in the FBI's brief. Its fallback — that Rule 54(b) permits revision — is true but beside the point. Reconsideration under Rule 54(b) "is not provided indiscriminately whenever some party may wish it," and courts "must protect themselves and the other parties against the delays and burdens that could be imposed by yielding to simple disappointment or a deliberate desire to inflict delay and burden." 18B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4478.1 (3d ed. 2019); *see Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1414–15 (5th Cir. 1993). Although the Rule 54(b) standard is less exacting than

the standard governing final judgments, courts applying it look to considerations similar to those that govern Rule 59(e) motions: an intervening change in controlling law, the availability of new evidence, and the need to correct clear error or prevent manifest injustice. *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017); *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004). The FBI invokes none of them; it asserts the same positions again and relies on the passage of time. If the passage of time sufficed, then no interlocutory ruling in this six-year case would ever be settled, and the Court's orders would function as mere suggestions.

III.   **The FBI's cross-motion rests on a "category" that swallows the statute and nullifies this Court's orders.**

Categorical treatment under Exemption 7(A) is permissible only when the agency defines its categories functionally — by the nature and content of the documents — so that the court can "trace a rational link between the nature of the document and the alleged likely interference." *Bevis v. Dep't of State*, 801 F.2d 1386, 1389–90 (D.C. Cir. 1986); *see NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 236 (1978). The category the FBI proposes — "any data of any kind from any computer possessed or used by Seth Rich," Spence Decl. ¶ 7 — is defined by provenance, not content. It makes no difference, on that theory, whether a file is a witness statement or an email about a video game. A "category" turning entirely on where a record was found forecloses the very analysis categorical review is supposed to enable, and it is irreconcilable with the document-by-document review this Court ordered in August 2024 and reaffirmed in March 2026. Dkt. #178 at 6–7; Dkt. #214. Plaintiff cited both governing decisions in his motion, Dkt. #225 at 11–12, but the FBI's brief mentions neither *Bevis* nor *Crooker*. And the FBI's answer to Plaintiff's record-specific examples, *i.e.*, its argument that "Plaintiff is not the prosecutor," Dkt. #237 at 9, is both unresponsive and sophomoric.

The FBI's own indexes refute its categorical harm theory. The revised *Vaughn* index for the personal laptop publicly describes, with particularity, a customer-service thread about a wrong-color cardigan, emails with a personal trainer, warranty emails, a student loan interest statement, and rosters of names from 2007 and 2008. Dkt. #237-1. If disclosing "any data of any kind" would trigger a flood of spurious tips and compromise the homicide investigation, Spence Decl. ¶¶ 6–7, the FBI's own public filings would have done so already. They did not. The government cannot describe these records publicly when description serves its litigation position and then insist their contents are too dangerous to disclose.

Nor can the FBI hide behind deference. The FBI's own brief quotes the controlling standard: deference to an agency's predictive judgment does not permit the agency "to simply assert that disclosure will interfere with enforcement proceedings; it must rather demonstrate how disclosure will do so." Dkt. #237 at 24 (quoting *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1098 (D.C. Cir. 2014)). Having quoted that standard, the FBI never attempts to satisfy it. Its answer to Plaintiff's record-specific examples — the 2008 campaign PowerPoints, the 2008 term paper, the 2010 video game notes, the 2013 Experian credit report, *see* Dkt. #225 at 10–11 — is only that "Plaintiff is not the prosecutor." Dkt. #237 at 9. That is a demand for blind trust, not a demonstration of harm, and blind trust is precisely what the March 24 Order rejected.

**IV.     Plaintiff never asked the FBI to create, repair, or restore anything. The FBI must either open the corrupted files for review or release them as they exist — and its refusal to do either is an admission.**

**A.  A corrupted file is an agency record that can be produced exactly as it exists.**

The FBI devotes numerous pages of its brief to a strawman. Invoking *Hagar v. FBI*, 170 F.4th 946, 953 (5th Cir. 2026), and Special Agent Wickman's observation that "a repaired file is

not the original file but rather a new file generated through deliberate intervention," Wickman Decl. ¶ 12, the FBI argues that FOIA does not require it to create new records. Dkt. #237 at 15. Plaintiff agrees. That is why Plaintiff has never asked the FBI to repair, restore, reconstruct, or otherwise "create" anything.

The corrupted files exist. They are electronic records within the meaning of 5 U.S.C. § 552(f)(2), and FOIA requires an agency to produce records "in any form or format requested" if they are "readily reproducible" in that form. 5 U.S.C. § 552(a)(3)(B). A byte-for-byte copy of a file that already sits on the government's storage media is the most readily reproducible form imaginable: producing it requires no repair, no restoration, no screenshot, and no new record — only copying. *See* Apelbaum Supp. Decl. (Exhibit 1) ¶¶ 43–44. *Hagar* is not remotely to the contrary. The requester there sought dynamic email header information that was "not plainly visible" in the record as the agency maintained it, so that production would have required an employee to extract the information and paste it into a new text file. 170 F.4th at 953. Here, by contrast, the records are static files that exist in final form on the laptops today. Copying an existing file is production; it is what FOIA is *for*.

Nothing in the record supports a contrary conclusion, because the FBI has never addressed the question. Congress directed that courts accord substantial weight to an agency affidavit concerning "reproducibility under paragraph (3)(B)," 5 U.S.C. § 552(a)(4)(B), and the FBI submitted no such affidavit — its brief does not cite § 552(a)(3)(B) once. Not one of the three May 2026 declarations states that the corrupted files cannot be copied or are not readily reproducible in their existing form. The Court has already put the provision before the FBI, quoting Plaintiff's position that it must either "produce the metadata in its native format pursuant to 5 U.S. Code § 552(a)(3)(B)" or "figure out a way to review" it, and declining to resolve it only because the

- 12 -

posture was contempt. Dkt. #214 at 18. The question was reserved for this stage, yet the FBI still has not answered it.

**B. The FBI withheld more than a thousand records without citing any exemption at all.**

The revised *Vaughn* index for the personal laptop lists 1,095 records — 332 Excel, 354 PDF, 78 PowerPoint, and 331 Word entries — bearing the notation "File corrupted/would not open" and nothing else. Dkt. #237-1; Apelbaum Supp. Decl. ¶ 41. No filename for any of them; for all but a single Word entry, no file size and no dates. And, critically, no exemption. The "Exemptions Cited" column for every one of these records is empty.

That is an improper withholding as a matter of law. FOIA places the burden on the agency "to sustain its action," 5 U.S.C. § 552(a)(4)(B), and a record withheld without any claimed exemption is, by definition, a record the agency has not justified withholding. *See U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 171 (1993). The problem runs deeper still. Under the FOIA Improvement Act of 2016, an agency may withhold a record only if it "reasonably foresees that disclosure would harm an interest protected by an exemption." 5 U.S.C. § 552(a)(8)(A)(i). The FBI swears it cannot open these files and does not know what they contain. Spence Decl. ¶ 9. An agency cannot "reasonably foresee" harm from the disclosure of contents it professes to be unable to read. The foreseeable-harm certification for these records is not merely absent — it is logically impossible on the government's own account of the facts.

**C. The FBI's dilemma: if the files are unreadable, releasing them is harmless; if releasing them is harmful, they are readable and should have been reviewed.**

The Court ordered the FBI to describe "what measures, if any, the FBI took to 'open,' view, or otherwise restore any allegedly corrupted or unreadable files." Dkt. #214. As to the personal laptop, the Spence Declaration describes exactly one: double-clicking each file in native format

- 13 -

within the Magnet Forensics review tool and noting the error message. Spence Decl. ¶ 9. The Lara Declaration's statement that FBI personnel "obtained and use[d] other software" identifies no software, no files, and no results. Lara Decl. ¶ 10. *See* Apelbaum Supp. Decl. ¶ 38. A native-application failure establishes only that the stated workflow failed; it does not establish that the underlying bytes are absent or that no content can be extracted by a different parser, by inspection of the file's container and internal structures, by repair applied to a working copy, or by partial extraction of embedded objects or text. Apelbaum Supp. Decl. ¶ 40. The FBI documented nothing, because it attempted nothing.

That failure is the FBI's problem, not Plaintiff's. The statutory burden of review sits with the agency. If the FBI lacks the technical capacity to open its own records in order to review them for exemption purposes, then it has failed to carry its burden, and the records must be released as they exist, corrupted bytes and all. Nothing in FOIA excuses an agency from its burden because the review is difficult, and "we couldn't figure out how to open the file" appears nowhere in the nine exemptions Congress enacted.

The FBI cannot have it both ways. If the corrupted files are truly unreadable — by the FBI, by Plaintiff, by anyone — then producing them as they exist can reveal nothing and interfere with nothing, and there is no lawful basis to withhold them. If, on the other hand, the FBI resists producing them because it fears what a competent examiner might extract from them, then the FBI necessarily believes the files can be opened and salvaged — and it was obligated to open, review, and index them long ago, when this Court first ordered a document-by-document review. Either the files come to Plaintiff, or they should already have been in the *Vaughn* index with a description and a claimed exemption. Under no reading of the statute may they simply vanish into an empty row of a spreadsheet.

Plaintiff accordingly renews, and narrows, his request: he will accept the corrupted files exactly as they exist on the government's media, with no repair or restoration of any kind. That offer eliminates every argument the FBI has made. *Hagar* drops out, because nothing new is created. Wickman ¶ 12 drops out, because no file is repaired. The only interests left for the FBI to assert are interests in the files' contents — contents it swears it cannot read.

**V.      The FBI is not entitled to summary judgment: the governing standard is de novo review, and the government's own declarations contradict one another.**

The cross-motion depends on two propositions, neither of which survives examination — that this Court owes the FBI's withholding decisions a deference approaching a mere plausibility check, and that the FBI's declarations present an uncontroverted account of the record.

**A.  Section 552(a)(4)(B) commands de novo review; the "logical or plausible" formulation is an out-of-circuit gloss that cannot displace the statute.**

The FBI asks this Court to measure its withholdings against a standard drawn entirely from outside this Circuit: that an agency's justification "is sufficient if it appears 'logical' or 'plausible.'" Dkt. #237 at 6 (quoting *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007)). That formulation developed in the D.C. Circuit's national-security docket, where courts confront classified predictive judgments; *Wolf* itself was a *Glomar* case concerning CIA records. The FBI asserts no classification exemption here. It asks this Court to apply a national-security deference standard to a decedent's college term papers, dental bills, and a customer-service exchange about a cardigan.

Congress supplied the standard, and it is not plausibility. Section 552(a)(4)(B) directs that the district court "shall determine the matter de novo," authorizes it to "examine the contents of such agency records in camera," and places "the burden … on the agency to sustain its action." The Fifth Circuit applies that text as written. *Cooper Cameron Corp. v. U.S. Dep't of Labor*, 280

- 15 -

F.3d 539, 543 (5th Cir. 2002). A rule under which the agency prevails whenever its account is merely plausible inverts all three commands at once: it converts de novo determination into deferential review, renders superfluous the in camera power Congress conferred, and shifts to the requester the practical burden of disproving an account of records he has never seen. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), confirms the point. A judge-made deference doctrine cannot displace a statute's assignment of decisional authority to the courts, and § 552(a)(4)(B) is more explicit than the provision at issue there, because it both prescribes the standard of review and supplies the mechanism for applying it. Plaintiff is aware of no Fifth Circuit decision adopting the "logical or plausible" formulation, and the FBI cites none.

The Court need not resolve the standard to deny the cross-motion, because the FBI's showing fails under any formulation of it. A "category" defined by where a record was found is not a logical application of Exemption 7(A); a harm "explanation" that reproduces the statutory text 2,095 times demonstrates nothing, plausibly or otherwise; and an account of the record that the government's own declarants contradict is neither logical nor plausible. What the standard governs here is the remedy: the more the FBI asks this Court to accept on faith, the stronger the case for examination by someone other than the party withholding.

## B. The presumption of good faith is conditional, and the government's contradictions defeat it.

Summary judgment on agency affidavits is available only when those affidavits "describe the basis for nondisclosure with reasonably specific detail" and "are not controverted by either contrary evidence in the record nor by evidence of bad faith." Dkt. #237 at 5–6 (quoting *Larson v. U.S. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)); *accord Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991); *Cooper Cameron Corp. v. U.S. Dep't of Labor*, 280 F.3d 539, 543 (5th Cir. 2002). The

presumption of good faith is conditional, not absolute, and it cannot paper over contradictions in the government's own evidence. *See Founding Church of Scientology v. NSA*, 610 F.2d 824, 830–31 (D.C. Cir. 1979); *Xanthopoulos v. IRS*, 35 F.4th 1135 (8th Cir. 2022) (reversing summary judgment for the agency on conflicting record evidence).

### C.  Wickman contradicts Lara and Hammer.

Special Agent Wickman — the FBI's own forensic examiner — swears that "[b]efore any analysis could begin, the forensic image would first need to be restored from its archived state and processed using forensic software." Wickman Decl. ¶ 6. That statement suggests that as of May 2026, the work laptop image had never been restored from archive or processed with forensic software. Yet the Lara and Hammer Declarations swear the FBI "conducted a document-by-document review of the contents of the Work Laptop" and built a *Vaughn* index from it. Lara Decl. ¶ 13; Dkt. #196-1 ¶ 5. What, exactly, did the FBI review, in what form, using what tools, if the image itself sat unprocessed in an archive? The government does not say, and the contradiction goes to the heart of the only issues remaining in this case: what the FBI actually reviewed and whether its withholdings are justified. A cross-movant whose declarations cannot be reconciled on the central factual question has not eliminated genuine disputes of material fact; it has created them. At a minimum, the filings never identify which dataset was used for the claimed document-by-document review, so no examiner outside the FBI can determine whether that review was conducted against the full forensic image or some narrower derivative. Apelbaum Supp. Decl. ¶ 22.

### D.  The Magnet Forensics double standard.

The same filings show that when the government wanted to conduct a file-by-file review, it had no difficulty doing so. The USAO-DC processed the personal laptop image with Magnet

- 17 -

Forensics and opened "[e]ach individual file… in native format." Spence Decl. ¶ 9. Wickman nonetheless describes restoring and processing the work laptop image as an undertaking of "extensive time and effort" whose results "would likely be inconclusive." Wickman Decl. ¶ 6. As Plaintiff's expert explains, restoring and indexing an archived forensic image is a standard forensic-laboratory operation. Apelbaum Supp. Decl. ¶ 23. The government's position is that forensic processing is trivial when it supports withholding and prohibitive when it might support disclosure. That is not a basis for summary judgment; it is a reason to question the truthfulness of the FBI's witnesses.

### E. The FBI's claim that the experts agree is built by quoting half of Plaintiff's expert's sentences.

The centerpiece of the cross-motion's forensic argument is the assertion that "Wickman and Apelbaum do not present a genuine disagreement." Dkt. #237 at 14. That assertion is manufactured, and the manufacture is flagrant. In each instance the FBI quotes the concessive clause of an Apelbaum sentence and omits the rebuttal that follows it in the same sentence or the next; in the most serious instance it attributes to him a concession he never made and that his declaration expressly contradicts. Because the misrepresentations are numerous, and because each requires the surrounding text to demonstrate, Plaintiff does not catalogue them here. Mr. Apelbaum addresses every one of them — quoting his own paragraphs in full alongside the FBI's truncated versions — at paragraphs 15 through 21 of his supplemental declaration, and Plaintiff respectfully directs the Court to that discussion. Two points suffice here. A movant seeking summary judgment on the ground that the opposing expert agrees with it must engage what that expert actually said. And the disagreement the FBI says does not exist appears in terms in the very declaration it quotes: Wickman's summary conclusion "is overbroad and materially misleading," and his declaration

"does not adequately answer the forensic question the Court directed the FBI to address." Dkt. #225-1 ¶¶ 13, 17. Neither sentence is quoted or acknowledged anywhere in the cross-motion.

### F. Wickman never says the FBI examined anything, and his conclusions remain controverted.

The dispositive fact is one the FBI's brief never confronts: Wickman does not state that he, or anyone at the FBI, ever examined the Work Laptop image. He identifies no artifact examined, no result obtained, and no finding of any kind — and his ¶ 6 concedes the image was never restored for analysis. His assertions that a transfer determination "is not achievable through examination of the Work Laptop alone," Wickman Decl. ¶ 14, and that any analysis "would likely be inconclusive," *id.* ¶ 6, are predictions about an examination that never took place. Plaintiff's expert testifies that source-computer artifacts can, in appropriate cases, establish or strongly support external-device use, identify specific removable volumes, show user interaction with files on those volumes, and correlate that activity with source files and file-system events. Apelbaum Supp. Decl. ¶¶ 25, 45–46. That conflict must be resolved in Plaintiff's favor on summary judgment.

### VI. The FBI seeks judgment on records it never reviewed, supported by harm recitals that merely repeat the statute.

#### A. The revised indexes' "harm" explanations are the statutory standard, copied 2,095 times.

The March 24, 2026 Order directed the FBI to explain "how disclosure would harm the interests protected by the claimed statutory exemptions." Dkt. #214; Lara Decl. ¶ 4. The FBI's response was to append to every entry in the revised indexes the identical sentence: "Exemption 7(A) was asserted to protect information, that if disclosed, could reasonably be expected to interfere with law enforcement proceedings or investigations." *See generally* Dkt. #237-1; Dkt. #237-2, Ex. A. That sentence is the text of 5 U.S.C. § 552(b)(7)(A) with the word "asserted" in front of it. Repeating the legal standard is the definition of a conclusory justification, and the Fifth

Circuit has held that conclusory, generalized affidavits — particularly for Exemption 7(A), which requires the agency to show how disclosure would interfere — cannot support summary judgment. *Batton*, 598 F.3d at 176–81; *see also Pomares v. Dep't of Veterans Affs.*, 113 F.4th 870, 881 (9th Cir. 2024); *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977); *Founding Church of Scientology*, 610 F.2d at 830. The FBI's reliance on the good-faith presumption, Dkt. #237 at 7, 10, gets it nowhere: the presumption attaches to affidavits that supply "reasonably specific detail," and these supply none.[1]

### B. The 215,000-item gap remains unexplained, and "cannot be viewed or processed" is not an exemption.

The FBI's answer to the missing 215,699 items — 217,794 items disclosed in Lara ¶ 9, minus the 2,095 records in the work laptop index — is to recast Plaintiff's argument as an attack on the adequacy of the FBI's *search* and then invoke the Court's prior search rulings. Dkt. #237 at 6–7. That is a strawman. Plaintiff does not contend the FBI failed to find the laptops; he contends the FBI failed to account for what is on them. The adequacy of a search and the completeness of a withholding index are different questions, and the Court's orders requiring a document-by-document review and a complete *Vaughn* index answer the second one.

On the merits, the FBI's position is that the unaccounted items are "operating system/application files" that "cannot be viewed or processed pursuant to the FOIA." Lara Decl. ¶¶ 7, 9. No such doctrine exists. Electronic files are agency records, 5 U.S.C. § 552(f)(2), and a responsive record must be produced or withheld under a claimed exemption — there is no third box marked "too inconvenient to process." The Court has been down a version of this road before:

---

[1] The Lara Declaration's treatment of Exemption 7(A) illustrates the point. Paragraph 16, which purports to introduce Exemption 7(A), actually recites the statutory text of Exemption 3 verbatim ("information which is 'specifically exempted from disclosure by statute…'"). Lara Decl. ¶ 16. A declarant who signs a sworn statement without noticing that the wrong exemption's statutory text has been pasted beneath a 7(A) heading is not conducting the individualized analysis the statute and this Court's orders require.

when the FBI argued that the work laptop, the DVD, and the tape drive were not agency records at all, it held that the FBI "has not met its burden" under the *Rojas* test and granted Plaintiff summary judgment. Dkt. #136 at 19. Nor is the claim verifiable. The FBI produced no file-type breakdown, no hash-set exclusion report, and no known-file filter output — reports that mainstream forensic tools commonly generate. Apelbaum Supp. Decl. ¶ 48. Its retort that Plaintiff's own expert acknowledged that new laptops carry roughly 100,000 preinstalled files, Dkt. #237 at 6, concedes the point twice over: 100,000 would account for less than half of the 215,699 unlisted items, and if known files can be identified as a class, the exclusion could have been documented in an afternoon.

## VII. The forensic artifact files are existing agency records. Producing them is copying, not "record creation."

The FBI's brief concedes the decisive fact: artifacts "such as the W[i]ndows registry USBSTOR keys, setup API logs, and event logs, if they are captured, may indicate a device was connected and the approximate timeframe." Wickman Decl. ¶ 9; *see* Dkt. #237 at 13–14 (acknowledging that the artifacts "may indicate that a device was connected"). What the FBI's brief obscures is that these artifacts are not analyses to be performed — they are files that exist. The registry hives, the setup API log, the Windows event logs, the link (.lnk) files, and the jump lists each exist, where preserved, as a discrete, static file with a path on the work laptop image. Apelbaum Supp. Decl. ¶ 45. They are electronic records under § 552(f)(2); they fall within Plaintiff's FOIA requests; and producing them requires exactly what producing any file requires — copying. *Hagar*'s bar on creating new records has no application to records that already exist. 170 F.4th at 953.

These files also bear directly on item (c) of the Court's March 24 Order — "whether and/or how many files were downloaded from the Work Laptop to one or more external storage devices."

Dkt. #214 at 20. The FBI's response to that directive was that "no such record exists." Dkt. #237 at 15. Its own declarant says otherwise: records exist that "may indicate a device was connected and the approximate timeframe," Wickman Decl. ¶ 9, and as Plaintiff's expert explains, link files and jump lists can store target paths and volume information — drive type and volume serial number — associating a user's activity with a particular removable volume and a particular target file: evidence that, correlated with other artifacts, speaks to transfers, not merely connections. Apelbaum Supp. Decl. ¶ 46. Whether or not FOIA obligates the FBI to perform Plaintiff's preferred analysis — and Plaintiff has not asked it to — FOIA unquestionably obligates the FBI to produce or justify withholding the artifact files themselves. The *Vaughn* indexes do neither. The artifacts are, presumably, among the 215,699 items the FBI unilaterally deemed beyond FOIA's reach.

## VIII.  The FBI's late-blooming exemptions fail on their own terms.

### A.  Exemption 3 and CISA: an entire laptop is not a "cyber threat indicator."

The FBI contends the entire work laptop — all 508.97 gigabytes, including term papers, poems, credit reports, and a decade of email — is a "cyber threat indicator" under CISA. Dkt. #237 at 25–27. The statute will not stretch that far. CISA protects "information that is necessary to describe or identify" enumerated threat attributes. 6 U.S.C. § 1501(6) (emphasis added). A definition keyed to what is necessary to describe a threat is a definition of targeted technical indicators, not of every byte on a device a victim once owned. The Senate Report says so directly: the definition "limits the information that can be shared under this Act to the techniques and 'malware' used by malicious actors to compromise the computer networks of their victims, not sensitive personal and business information contained in such networks." S. Rep. No. 114-32, at 4 (2015). And the guidance the Department of Justice issued jointly with the Department of

Homeland Security, as 6 U.S.C. § 1504(a)(4) required, addresses this precise scenario: "the entire contents of a hard drive of a personal computer that has been compromised by a cyber threat actor would be unlikely only to contain information constituting a cyber threat indicator or defensive measure; therefore, sharing it in its entirety may fall outside the scope of CISA 2015." Guidance to Assist Non-Federal Entities to Share Cyber Threat Indicators and Defensive Measures with Federal Entities under the Cybersecurity Information Sharing Act of 2015, at 12 (Oct. 2020). What CISA covers, the Department explains, is "cyber threat indicators extracted from the hard drive of a compromised computer." *Id*. The Defendants' own Department has answered the question presented here, and answered it against the position the FBI now takes. The claim fails for a second, independent reason: CISA's FOIA provision reaches only indicators "shared with the Federal Government under this subchapter," 6 U.S.C. § 1504(d)(3)(emphasis added) — that is, through CISA's procedures, which require the sharing entity to remove personal information of individuals not related to a cybersecurity threat, *id*. § 1503(d)(2). Handing the government a laptop loaded with an employee's credit report and personal correspondence is the opposite of CISA-compliant sharing, and the FBI offers no contemporaneous evidence that anyone invoked CISA in 2016. On the FBI's reading, every computer belonging to every hacking victim in America became categorically FOIA-exempt in December 2015, forever, the moment it was handed to the government. Congress enacted an information-sharing statute, not a records black hole.

### B. Exemption 4: the DNC is not a business, and a term paper is not commercial information.

Exemption 4 protects "trade secrets and commercial or financial information." 5 U.S.C. § 552(b)(4). The FBI never explains how the working files of a political committee staffer— much less his college term papers — constitute commercial information, and it cannot, because the exemption is asserted categorically over an entire device rather than over any identified

commercial record. The confidentiality showing is equally hollow: under *Food Marketing Institute v. Argus Leader Media*, 588 U.S. 427 (2019), the information must be provided under an assurance of privacy measured at the time of submission, and the FBI's evidence is a statement its lawyers obtained from DNC counsel during this litigation describing what the DNC now says it expected in 2016. Lara Decl. ¶¶ 14.B.1, 21. A litigation-driven, after-the-fact characterization is not an assurance of privacy.

### C.  Exemption 7(D): *Landano* forbids exactly the inference asserted by the FBI.

Exemption 7(D) requires the least discussion, because this Court has already resolved it as to one of the two devices. In November 2023, after examining the unredacted FD-302 in camera, the Court found no implied assurance of confidentiality and held that "the FBI did not properly withhold the files on the images of the personal laptop under Exemption 7(D)," granting Plaintiff summary judgment. Dkt. #136 at 12–13 & n.8. Nothing in the May 2026 declarations disturbs that finding, and the FBI does not argue otherwise — it simply asserts the exemption again. *See supra* Part II.D. As to the work laptop, *Landano* forecloses the categorical presumption the FBI needs: the government must identify "narrowly defined circumstances" supporting an inference of confidentiality, 508 U.S. at 179–81, and the DNC's identity as the provider has been public for years in the government's own filings in this case.

### D.  Exemption 7(E): asserted in the declarations, argued nowhere.

Exemption 7(E) has also been decided. In November 2023 the Court found the FBI's 7(E) justification "vague" and possessed of "minimal concrete information," and held that "the FBI did not properly withhold the files on the images of the personal laptop under Exemption 7(E)," granting Plaintiff summary judgment. Dkt. #136 at 15. The Lara Declaration nonetheless asserts Exemption 7(E) categorically as to both laptops, Lara Decl. ¶¶ 14, 30–31, while the FBI's brief

never argues it. *See supra* Part I.C. An exemption a summary-judgment movant declines to brief is not properly before the Court. Were the Court to reach it, the exemption fails on a showing materially identical to the one rejected in 2023: the technique at issue — receiving an item of evidence from a victim organization and from a sister law enforcement agency, and imaging it — is described in the FBI's own declarations and in this Court's published opinions, and a technique already disclosed on the public docket cannot be one whose disclosure risks circumvention of the law.

## IX. Exemption 7(A) still cannot survive the scrutiny this Court ordered.

Plaintiff's motion demonstrated that the FBI's Exemption 7(A) showing fails record by record: the government has never explained — because it cannot — how 2007-to-2014 personal documents that predate both the DNC intrusion and Seth Rich's July 2016 death could interfere with a hacking prosecution of Russian intelligence officers or with the homicide investigation. Dkt. #225 at 8–14. The FBI's response supplies three answers, none sufficient.

First, the FBI leans on the pendency of *United States v. Netyksho*. But pendency is one of three elements. The agency must also demonstrate that disclosure of *these records* could reasonably be expected to interfere with *that proceeding*, *CREW*, 746 F.3d at 1096–98, and the recycled boilerplate about fugitives altering evidence and intimidating witnesses never connects any category of laptop records to any of those risks. The suggestion that GRU officers in Moscow will tamper with witnesses if a 2008 college term paper is released does not become plausible through repetition. The Court's observation at Dkt. #136 concerned chain-of-custody documents intrinsically about the investigation; extending it to every byte Seth Rich ever created is the proposition the document-by-document orders rejected.

**Second**, the Spence Declaration's theory that the laptops matter "both for what [they] contain[] as well as for what [they] do[] not contain," Spence Decl. ¶ 5, proves far too much. Every record in every open case is significant for what it does and does not contain; if that sufficed, Exemption 7(A) would swallow FOIA for any collected evidence and § 552(b)'s segregability command would be a dead letter. The companion "spurious tips" theory, Spence Decl. ¶ 6, is self-refuting: the FBI's own indexes have already published detailed descriptions of the laptops' mundane contents, and no tip-flood followed. *See supra* Part III.

**Third**, the FBI's re-assertion of Exemptions 6 and 7(C) on behalf of Seth Rich — rejected by this Court in September 2022, Dkt. #70 — requires no separate treatment here. It is addressed in Part II above. The Court should treat the reassertion as what it is: defiance.

## X.    The FBI's segregability showing is one conclusory sentence, refuted by its own indexes.

FOIA commands that "[a]ny reasonably segregable portion of a record shall be provided… after deletion of the portions which are exempt." 5 U.S.C. § 552(b). The district court must make specific segregability findings, and the agency must supply the detail that makes them possible. *Mead Data*, 566 F.2d at 260–61. The FBI's entire showing is one sentence: "the FBI determined that all material was covered by one or more of the cited FOIA exemptions." Lara Decl. ¶ 33. The *Sussman* presumption it invokes is rebuttable, and the FBI's own work product rebuts it. An agency that can publicly describe these records with particularity, *see supra* Part III, has demonstrated that it can identify and segregate innocuous material; it has simply refused to release any of it. The refusal to release even filenames makes the point vividly: there is no coherent theory of harm on which a file's name is dangerous but a narrative description of its contents, already on the public docket, is not.

- 26 -

## XI.    Several of the questions presented appear to be matters of first impression in this Circuit.

Plaintiff notes, for the Court's convenience rather than as a separate ground for relief, that resolving this motion appears to require the Court to decide at least four questions of first impression in this Circuit. **First**, whether the Cybersecurity Information Sharing Act qualifies as an Exemption 3 withholding statute: the Department of Justice's own compilation of qualifying statutes lists 6 U.S.C. § 1504(d)(3)(B) with "N/A" in the case-citation column, and no court appears to have so held. **Second**, whether an agency may withhold electronic records it concedes it cannot open, without producing them in their existing state under 5 U.S.C. § 552(a)(3)(B). **Third**, whether forensic artifact files — registry hives, event logs, link files, jump lists — are agency records subject to production after *Hagar* and *Rutila*, neither of which addressed records that exist as discrete files but require technical knowledge to interpret. **Fourth**, whether the "logical or plausible" standard and the *Maydak* waiver rule apply in this Circuit. *See supra* Parts V.A, VIII. Novelty does not alter the burden, which rests on the agency in every FOIA case. 5 U.S.C. § 552(a)(4)(B). But a court asked to decide questions of first impression should not have to do so on an agency's dubious descriptions of records that no neutral party has ever seen.

## XII.    Relief.

Plaintiff does not contend that this record is pervaded by factual disputes requiring a trial, and the asymmetry between the two motions matters. The conflicts within the government's own evidence defeat the FBI's cross-motion, because an agency may not obtain summary judgment on affidavits that are controverted — here, controverted by each other. Plaintiff's own motion rests on different ground: as to most of the issues presented, the FBI has failed to carry a burden that is legal rather than factual, and those issues can be decided on the government's own submissions. Plaintiff therefore requests relief in the following order.

**A. Partial summary judgment for Plaintiff on the issues that turn on law rather than fact.**

(1) **The corrupted files.** No exemption was asserted over them; whether an agency may withhold a record without invoking one is a question of law. (2) **The categorical Exemption 7(A) claim.** Whether a category defined by a record's provenance rather than its contents permits the rational-link analysis *Bevis* and *Robbins Tire* require. (3) **The harm recitals.** Whether a sentence reproducing the statutory standard satisfies § 552(a)(8)(A)(i). (4) **Exemption 3.** Whether 6 U.S.C. § 1501(6) reaches an entire laptop. (5) **Exemption 4.** Whether a political committee's working files and a decedent's personal documents are "commercial" information. (6) **Waiver.** Whether exemptions first asserted years into litigation are forfeited. (7) **Filenames and segregability.** On the FBI's own published descriptions, no theory of harm distinguishes a filename from the narrative description of its contents already on the public docket. Plaintiff requests partial summary judgment on each.

**B. Denial of the FBI's cross-motion in its entirety.**

The cross-motion should be denied as to every exemption asserted. Its supporting declarations contradict one another on the central question of what the FBI actually did, *see supra* Parts V.C–V.D; its principal forensic argument is constructed from quotations of Plaintiff's expert that were truncated in bad faith, *see supra* Part V.E; and its central legal premise is the one this Court rejected in August 2024, *see supra* Part II.A.

**C. Appointment of a special master to examine the withheld records.**

Plaintiff's principal request as to the withheld records is that the Court appoint a special master under Rule 53(a)(1)(C), at the government's expense, to examine every record the FBI seeks to withhold. Because that relief requires its own showing under Rule 53 — including the

scope of the reference, the qualifications of the master, and the allocation of cost under Rule 53(g)(3) — Plaintiff will separately file a Motion for Appointment of a Special Master.

Two points bear mention now, because they answer the cross-motion directly. First, the FBI did not oppose the request. Plaintiff sought a special master at government expense in his motion, Dkt. #225 at 27, and the phrase "special master" appears nowhere in the FBI's thirty-two pages; it does not argue that appointment is unavailable, unnecessary, unduly expensive, or that a neutral examiner would compromise any investigation. *See* E.D. Tex. Local R. CV-7(d). Second, the objection that ordinarily defeats such a request has no application here: the FBI asserts no classification exemption, so nothing on either laptop is claimed to require security clearances. What remains is a finite, already-imaged collection and a review that this Court has twice ordered and twice not received.

## Conclusion

The FBI's cross-motion asks this Court to hold that a murdered man's cardigan emails, term papers, and credit report are categorically exempt from disclosure forever — on the strength of declarations that contradict one another, harm recitals that copy the statute, exemptions invented years after the fact, and a characterization of Plaintiff's expert that his own words refute. The cross-motion should be denied and Plaintiff's motion granted as set out in Part XII. As to what remains, six years of accepting the FBI's description of these records has produced two inadequate indexes and a set of declarations that contradict each other. The records should now be examined by someone other than the party withholding them.

Respectfully submitted,

**/s/ Ty Clevenger ----------**
Ty Clevenger
Texas Bar No. 24034380
212 S. Oxford Street #7D
Brooklyn, New York 11217
(979) 985-5289
(979) 530-9523 (fax)
tyclevenger@yahoo.com

Counsel for Plaintiff

## Certificate of Service

On August 10, 2026, I filed a copy of this document with the Court's ECF system, which

should result in automatic notification via email to Asst. U.S. Attorney James Gillingham, Counsel

for the Defendants, at james.gillingham@usdoj.gov.

**/s/ Ty Clevenger ----------**
Ty Clevenger