# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| BRIAN HUDDLESTON, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| FEDERAL BUREAU OF | § | Civil Action No. 4:20-cv-447 |
| INVESTIGATION and UNITED | § | Judge Mazzant |
| STATES DEPARTMENT OF | § | |
| JUSTICE, | § | |
| | § | |
| *Defendant.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendant Federal Bureau of Investigation's Motion for Protective Order (Dkt. #217) (the "Motion"). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **DENIED as moot**.

## BACKGROUND

The Court has discussed the procedural and factual background of this case repeatedly (*See* Dkt. #174; Dkt. #214) and thus limits its discussion to information relevant to the present Motion.

On July 7, 2020, Plaintiff filed his Amended Complaint against the Federal Bureau of Investigation ("FBI") and the United States Department of Justice, seeking production of "any and all non-exempt records responsive to . . . Plaintiff's FOIA requests" regarding one Seth Rich (Dkt. #3 at p. 6). Almost four years later, on June 27, 2024, Plaintiff purportedly assigned his claims in the present case to one Yehuda Miller ("Miller"). On July 5, 2024, Plaintiff filed a motion attempting to substitute Miller as the plaintiff in this action (Dkt. #164), which was ultimately denied. *Huddleston v. Fed. Bureau of Investigation*, No. 4:20-CV-447, 2025 WL 1668214, at \*2–3 (E.D. Tex. June 12, 2025). Apart from the brief response to Plaintiff's late motion to substitute, no

party to this action has challenged the notion that Plaintiff assigned his FOIA interest to Miller, and this case has since continued with procedural reference to Federal Rule of Civil Procedure 25(c) without an express ruling on its validity (Dkt. #169 at p. 4). *See Huddleston*, 2025 WL 1668214, at *2 n.3 ("Because the Court determines that Huddleston does not prove that Miller's substitution would facilitate, simplify, or expedite the litigation, the Court need not decide whether the assignment of interest in this FOIA request should ever be allowed—that is a question for another day."); *Huddleston v. Fed. Bureau of Investigation*, No. 4:20-CV-447, 2026 WL 810772, at *3 (E.D. Tex. Mar. 24, 2026) ("Plaintiff purportedly transferred his interest in this case to one 'Mr. Miller.'").[1]

Following Plaintiff's attempted substitution of Miller, the Court permitted Plaintiff to file a supplemental complaint (the "Supplemental Complaint") on July 15, 2024, which resulted in Plaintiff adding two additional claims to this FOIA action (Dkt. #166; Dkt. #114). The first claim alleges that the FBI's Digital Evidence Policy Guide constitutes a violation of 5 U.S.C. § 552(a)(3) "insofar as it purports to declare that a record is not a record" (Dkt. #166 at p. 1 (quoting Dkt. #114 ¶ 7)). The second claim alleges that the FBI is in active "violation of 5 U.S.C. § 552(g) because it fails to disclose all of its major information systems" (Dkt. #166 at p. 2 (internal quotation marks omitted) (quoting Dkt. #114 ¶ 8)).

---

[1] The Court's prior order has not cemented the legal effect of Plaintiff's purported transfer of his FOIA interest. *See Huddleston*, 2026 WL 810772, at *3. It did nothing but continue the status quo—briefing by both parties continues to assume that the identified assignment occurred. Both Plaintiff and the FBI agreed that "Huddleston transferred his interest in this case to another individual over a year ago" (Dkt. #212 at p. 2). The FBI's argument at that time hinged on the notion that "[a] plaintiff's assignment of his rights to a lawsuit terminates the personal interest necessary to establish [standing]" (Dkt. #212 at p. 3). In addressing this argument, the Court noted the "purported transfer" and proceeded "regardless of [Plaintiff's] prior transfer of interest" consistent with the purpose of Rule 25(c) without determining the unchallenged consequences of the purported assignment, just as it had done a few months prior. *Compare Huddleston*, 2025 WL 1668214, at *2 n.3, with *Huddleston*, 2026 WL 810772, at *3.

Almost two years after that date, on March 4, 2026, Plaintiff served interrogatories and requests for production related to these claims on the FBI. On April 3, 2026, the FBI filed the present Motion, seeking a protective order and arguing that Plaintiff's discovery requests are inappropriate considering this case's unique development and FOIA precedent (Dkt. #217). On April 9, 2026, Plaintiff filed his response, arguing that the discovery requests should be upheld because of their relation to the two claims added via the Supplemental Complaint (Dkt. #218). The FBI's reply (Dkt. #219) and Plaintiff's sur-reply (Dkt. #222) followed quickly thereafter. On June 3, 2026, the Court requested additional briefing on the standing issue raised by the FBI's reply (Dkt. #224). Both parties filed a variety of briefing in response, the contents of which will be considered under this Memorandum Opinion and Order.

The Motion is now ripe for adjudication.

## LEGAL STANDARD

The Freedom of Information Act ("FOIA") is intended to promote a more open and transparent government through the disclosure of government information. *Dep't of the Air Force v. Rose*, 425 U.S. 352, 360–62 (1976). "[T]he threshold question in any FOIA suit is whether the requester can even *see* the documents the character of which determines whether they can be released." *Batton v. Evers*, 598 F.3d 169, 175 (5th Cir. 2010). Although FOIA and civil discovery both involve the disclosure of information, FOIA and discovery disclosures serve two different purposes. *See John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151–52 (1989).

Because of the unique nature of FOIA actions, "discovery is [typically] not part of a FOIA case, and the decision whether to allow discovery rests within the discretion of the district court judge." *Schiller v. I.N.S.*, 205 F. Supp. 2d 648, 653 (W.D. Tex. 2002) (collecting cases); *Jobe v. Nat'l*

3

*Transp. Safety Bd.*, No. CV 18-10547, 2019 WL 13222971, at *1 (E.D. La. Aug. 29, 2019) ("As a general rule, courts have disallowed discovery in FOIA actions or have permitted discovery, when deemed necessary, only on a limited basis.").

In the context of discovery disputes, Federal Rule of Civil Procedure 26(c)(1) holds that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending." Upon a finding of "good cause," a district court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the [requested] disclosure or discovery." FED. R. CIV. P. 26(c)(1).

**ANALYSIS**

The question presently before the Court, when reduced to its most essential form, can be summarized quite succinctly (and perhaps rather rhetorically) in the following manner: "*who is the Plaintiff?*" If only the answer were so similarly constituted.[2]

## I.      Plaintiff's Supplemental Claims

Central to the Motion presently before the Court are Plaintiff's discovery requests. The FBI argues that the relevant discovery requests are "broad and untethered to the FOIA requests at issue in this case" and further asks the Court to quash the requested discovery in accordance with the rarity of discovery in FOIA cases (Dkt. #217 at p. 3). In response, Plaintiff agrees with the FBI that his discovery requests are "untethered" to the specific FOIA requests, but argues that the observed divergence is intentional. Plaintiff avers that the new discovery requests pertain to the two "policy-or-practice" FOIA claims contained in his Supplemental Complaint, which Plaintiff

---

[2]   Unless otherwise indicated, the phrase "Plaintiff" refers to Huddleston.

describes as "claims for general injunctive relief" as opposed to claims for specific document requests related to Seth Rich (Dkt. #218 at p. 2). More specifically, Plaintiff posits that the Supplemental Complaint permits him to pursue discovery along a different and perhaps more relaxed avenue than those traditionally traveled by plaintiffs in FOIA actions. In its reply, the FBI challenged Plaintiff's standing to bring policy-or-practice claims altogether (Dkt. #219).

Plaintiff's argument is rather unique in this Circuit, as it is scarcely addressed. *See Atchafalaya Basinkeeper, Inc. v. United States Army Corps of Eng'rs*, No. CV 21-317, 2022 WL 219050, at *10 (E.D. La. Jan. 25, 2022) ("To date, there exists no Fifth Circuit case law acknowledging or addressing pattern, practice, or policy claims . . . in the FOIA context."). Other courts across the nation, however, have already marked a clear divide between a *specific* FOIA request claim and a *policy-or-practice* FOIA claim. These include the "[t]he D.C. Circuit, the federal appellate court with the most experience in this field," *Cooper Cameron Corp. v. U.S. Dept of Lab.*, 280 F.3d 539, 543 (5th Cir. 2002), and the Ninth Circuit. *See Nat'l Sec. Couns. v. C.I.A.*, 960 F. Supp. 2d 101, 132 (D.D.C. 2013) ("[T]he D.C. Circuit has recognized that, separate from claims seeking relief for specific requests made under the FOIA, requesting parties may also assert a 'claim that an agency *policy or practice* will impair the party's lawful access to information in the future.'" (quoting *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988))); *Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1102 (9th Cir. 2016). This distinction is plausibly reflected in Plaintiff's claims, as the Supplemental Complaint facially targets the operation of the FBI's policies as opposed to specific information pertaining to Seth Rich.

Although the Fifth Circuit has not yet identified its position on the viability of policy-or-practice claims, "deciding whether to recognize these claims is unnecessary. For now, the

5

Court will assume arguendo that [a FOIA] policy-or-practice claim is permissible" and proceed to determine whether Plaintiff has standing to bring these claims in the first place, and, in the event that he does, determine whether the FBI has carried its burden to prove that a protective order is warranted. *La Union del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, 762 F. Supp. 3d 552, 565 (S.D. Tex. 2024); *see also S. Env't L. Ctr. v. Bernhardt*, 432 F. Supp. 3d 626, 632 n.2 (W.D. Va. 2020) ("The Fourth Circuit has not decided whether an independent policy-or-practice claim exists under FOIA. For purposes of the pending motion, the court assumes, as the parties do, that such a claim is available.").

### A.     Whether Plaintiff has Standing to Bring "Policy-or-Practice" Claims

Objections to standing are jurisdictional concerns which may be raised by any party, at any time. *See Bankston v. Burch*, 27 F.3d 164, 167 (5th Cir. 1994). By questioning Plaintiff's standing, the FBI has brought the matter directly within the Court's purview. Furthermore, courts have an "independent obligation" to police their own subject matter jurisdiction, including the parties' standing. *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). Thus, the next portion of the Court's analysis will concern Plaintiff's standing to bring the claims contained in his Supplemental Complaint. *See In re United States*, 583 U.S. 29, 32 (2017) (per curiam) (holding that a district court should address threshold reviewability questions before examining the administrative record).

In order to possess standing to sue under Article III, a plaintiff must sufficiently allege three elements identified by the Supreme Court. That is, a plaintiff must allege that they "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Deep S. Ctr. for Env't Just. v. U.S. Env't Prot. Agency*, 138 F.4th 310, 317 (5th Cir. 2025) (internal quotation marks omitted) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016)). Furthermore,

because Plaintiff's policy-or-practice claims are, by his own description, "wholly prospective," they "implicate the intersection of the redressability and injury-in-fact requirements." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019). Because Plaintiff has not identified a personal injury-in-fact that is sufficient to satisfy the constitutional standing requirements for policy-or-practice claims, Plaintiff will not be permitted to bring either claim listed in his Supplemental Complaint.

The Court begins and ends its standing analysis by addressing the "intersection of the redressability and injury-in-fact requirements." *Id.* To satisfy Article III standing, the claimed injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation modified). In the absence of any direct Fifth Circuit precedent on the standing requirements for policy-or-practice claims in particular, the Court turns to both the D.C. and Ninth Circuits for guidance. In either circuit, a plaintiff bringing such a claim must sufficiently allege a continuing injury under the challenged policy or practice. *Khine v. U.S. Dep't. of Homeland Sec.*, 943 F.3d 959, 966 (D.C. Cir. 2019); *Hajro*, 811 F.3d at 1104. This aligns with Fifth Circuit precedent regarding prospective relief, which requires a plaintiff seeking such relief to "allege a continuing (*i.e.*, ongoing) or 'imminent' future injury to establish standing." *Jackson v. Wright*, 82 F.4th 362, 369 (5th Cir. 2023) (*citing City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

In *Khine*, the D.C. Circuit analyzed the constitutional standing of "a non-repeat FOIA requester" to bring a policy-or-practice claim. 943 F.3d at 965. The D.C. Circuit ultimately held that the plaintiff lacked standing to bring such a claim, as "[t]he problem for [the plaintiff] is that only *repeat requesters* who 'will suffer continuing injury' have standing to bring such claims." *Id.*

(emphasis added) (quoting *Newport Aeronautical Sales v. Dep't of the Air Force*, 684 F.3d 160, 164 (D.C. Cir. 2012)). Because the plaintiff in that case indicated that "she will not make future requests and she is not in a business that will file requests in the future," the D.C. Circuit found that she was "not likely to be subject again to the agency practice she seeks to challenge" and thus did "not have standing to seek a 'reformation'" of the defendant's practices. *Id.* (citation modified).

Likewise, the Ninth Circuit in *Hajro* included the element of future harm at the end of its injury-in-fact test: "the plaintiff has shown injury in fact if he demonstrates the three following prongs: (1) the agency's FOIA violation was not merely an isolated incident, (2) the plaintiff was personally harmed by the alleged policy, and (3) the plaintiff himself has a *sufficient likelihood of future harm* by the policy or practice." 811 F.3d at 1103 (emphasis added). This specific element defeated a plaintiff's policy-or-practice contention in *Civ. Beat L. Ctr. for the Pub. Int., Inc. v. Centers for Disease Control & Prevention*, 929 F.3d 1079 (9th Cir. 2019). There, the Ninth Circuit determined that the plaintiff's "vague allusions" to future requests were not enough to suggest that it would be adversely affected by a government agency's invocation of an exemption to FOIA. *Id.* Because the plaintiff could not identify any future harm with specificity, its contention was ultimately rendered moot. *Id.* at 1086; *see also Nightingale v. U.S. Citizenship & Immigration Services*, 333 F.R.D. 449, 459 (N.D. Cal. 2019) ("*Hajro* reveals that pattern or practice claims by individuals are especially susceptible to becoming moot.").

In an attempt to satisfy the injury-in-fact standing requirements outlined by either circuit, Plaintiff has taken three actions before this Court. First, Plaintiff has filed two affidavits which collectively indicate that he has transferred his interest to Miller. Second, Plaintiff has alleged that Miller has filed multiple FOIA requests to the FBI (three days after the Court ordered additional

briefing on standing) (*See* Dkt. #222-2; Dkt. #222-3; Dkt. #226-1). Third, Plaintiff has indicated in his sur-reply that he "intends to seek class certification in this case" and also attempts to "request[] a reasonable opportunity to file a motion for class certification" (Dkt. #222 at p. 5). None of these actions enable the Court to find in Plaintiff's favor on the issue of standing.

### 1.    Huddleston's injury-in-fact

After denying Plaintiff's attempt at substitution, this Court declined to expressly rule on the legal effect of Plaintiff's "purported transfer" and subsequently proceeded in a manner consistent with the purpose of Federal Rule of Civil Procedure 25(c). *See Huddleston*, 2026 WL 810772, at *3 (citation modified); FED. R. CIV. P. 25(c). But while "Rule 25(c) is designed to allow the action to continue unabated when an interest in the lawsuit changes hands," it is not designed to allow an original party to reach out into the ether and pluck additional injuries from potential assignees to satisfy constitutional standing requirements. *In re Covington Grain Co., Inc.*, 638 F.2d 1362, 1364 (5th Cir. 1981). In the absence of any substitution and further procedural development, the central question is not whether "Miller . . . satisfies Article III under every test any court has applied to FOIA policy-or-practice claims," but rather whether Huddleston[3] has standing to bring his FOIA policy-or-practice claims and had anything to transfer in the first place (Dkt. #226 at p. 1).

**The 5 U.S.C. § 552(a)(3) Claim**. The Court first addresses Huddleston's 5 U.S.C. § 552(a)(3) cause of action, which concerns the process of producing "records" under FOIA. Huddleston's claim alleges that the FBI's "Digital Evidence Policy Guide" (the "Policy Guide") violates FOIA "insofar as it purports to declare that a record is not a record" (Dkt. #114 at p. 3). Specifically, the Policy Guide declared that "electronic surveillance data" and "digital evidence"

---

[3]    The Court will conduct its standing analysis with reference to "Huddleston" to support clarity.

were not records subject to FOIA (*See* Dkt. #114 at p. 1). The Supplemental Complaint argues that both the Policy Guide and Huddleston's previous motion for summary judgment (Dkt. #112) identify "multiple information systems that are omitted from the FBI's records and search indexes" because of the Policy Guide (Dkt. #114 at p. 2).

Huddleston's harm under this cause of action is insufficient to satisfy the standing requirements outlined by the Ninth and D.C. Circuits. As applied to Huddleston, the § 552(a)(3) claim is more closely aligned with his argument regarding the legal adequacy of the FBI's search of various electronic media associated with Seth Rich than a general policy-or-practice concern. Careful analysis of the late summary judgment motion listed beside Huddleston's 5 U.S.C. § 552(a)(3) claim in the Supplemental Complaint reveals that it shares strikingly similar language with his policy-or-practice allegation. For instance, the motion similarly asked the Court to determine "(1) Whether the FBI should be compelled to search its *digital evidence* files" and "(4) Whether the FBI should be compelled to search *electronic surveillance* and geolocation data" despite the presence of the challenged Policy Guide (Dkt. #112 at p. 1 (emphasis added)). The Court has repeatedly addressed the sufficiency of the FBI's search (*See, e.g.*, Dkt. #70; Dkt. #174; Dkt. #176), and, in addressing the consequences of the Policy Guide in particular, the Court rendered it inapplicable to Huddleston's FOIA requests when it held that "the FBI has not met its burden to demonstrate that the work laptop, the DVD, and the tape drive are not agency records under the *Rojas* test." *Huddleston v. Fed. Bureau of Investigation*, No. 4:20-CV-00447, 2023 WL 8235243, at *10 (E.D. Tex. Nov. 28, 2023).

In this context, Huddleston's prior injury pertaining to the Policy Guide is no evidence of a "continuing injury" warranting prospective relief as outlined in *Khine*, 943 F.3d at 965. Like the

plaintiff in that case, Huddleston is "not likely to be subject again to the agency practice []he seeks to challenge." *Id*. Importantly, Huddleston has not submitted any FOIA requests to the FBI since filing the supplemental complaint (*See* Dkt. #227 at p. 2). Huddleston has also made no indication to the Court that he intends to submit specific FOIA requests that will be implicated[4] by the challenged policy in the future, which severely dampens his injury-in-fact showing. *See, e.g.*, *Nat'l Sec. Couns. v. C.I.A.*, 931 F. Supp. 2d 77, 92 (D.D.C. 2013) ("[P]laintiffs do not have standing to pursue policy-or-practice claims if they cannot demonstrate that they have any outstanding FOIA requests (*other than the requests challenged in the litigation*) that are likely to implicate the alleged policies and lead to future injury." (emphasis added)); *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, No. 17-CV-03903-PJH, 2018 WL 2387812, at *3 (N.D. Cal. May 25, 2018) ("The facts described in the complaint pertain mostly to an individual FOIA request for records relating to Tony, and much of the complaint describes the particular facts of that request. However, plaintiff alleges that it is a *repeat player* with respect to animal protection issues." (emphasis added)), *aff'd*, 933 F.3d 1088 (9th Cir. 2019). Not only that, but the Court's prior rulings on this issue have rendered the evidence "insufficient for the Court to find that there is a cognizable danger of recurrent violation," as the FBI has made no indication that it will not "follow the [Court's rulings] when evaluating [the relevant] documents" in this specific instance. *La Union*, 762 F. Supp. 3d at 567; *Lowery v. Tex. A&M Univ.*, 696 F. Supp. 3d 272, 280 (S.D. Tex. 2023) ("Recent precedent

---

[4] Huddleston's general assertion in the Supplemental Complaint, that he "wishes to submit additional requests in the future," is insufficient to carry his policy-or-practice claims before this Court (Dkt. #114 at p. 1). This generalization fails to claim that Huddleston *will* submit additional *FOIA* requests to *the FBI* that specifically fall under purview of *this* challenged policy or practice. *See Tipograph v. Dep't of Justice*, 146 F. Supp. 3d 169, 176 (D.D.C. 2015) ("A 'passing allegation that' a plaintiff plans to file additional FOIA requests to the agency in the future will not suffice to 'establish . . . standing to pursue a pattern or practice claim.'" (citation modified) (quoting *Quick v. U.S. Dep't of Comm.*, 775 F.Supp.2d 174, 187 (D.D.C. 2011))

from the Fifth Circuit makes clear that change compelled by force of law isn't voluntary."), *aff'd*, No. 23-20481, 2024 WL 4614714 (5th Cir. Oct. 30, 2024); *Lyons*, 461 U.S. at 95–96 ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."). Because Huddleston has not identified a sufficient future or ongoing injury under this policy-or-practice cause of action, the claim cannot survive this Court's standing analysis.

**The 5 U.S.C. § 552(g) Claim**. The Court next addresses Huddleston's 5 U.S.C. § 552(g) cause of action. Under the relevant statute, "[t]he head of each agency shall prepare and make available for public inspection in an electronic format, reference material or a guide for requesting records or information from the agency, subject to [certain] exemptions." *Id*. Huddleston alleges that the FBI has violated 5 U.S.C. § 552(g) by failing to disclose all of its major information systems. Huddleston argues that he suffers a live, continuing injury under Article III because "[t]he FBI's refusal to disclose its major information systems is an ongoing breach of [its] duty, and it injured Mr. Huddleston directly" (Dkt. #230-1 at p. 7). Huddleston further argues that "the FBI must search the systems likely to contain responsive records, and a requestor cannot test whether it did so when the systems are concealed" (Dkt. #230 at pp. 7–8).

The Supreme Court has previously held that "[o]ur decisions interpreting the Freedom of Information Act have never suggested that those requesting information under it need show more than that they sought and were denied specific agency records." *Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 449 (1989). And, in a standing analysis context, it has further explained that "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998).

However, the Supreme Court has also "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right,'" as "an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 414, (2021) (quoting *Spokeo*, 578 U.S. at 331.

The Fifth Circuit has identified this type of injury as an "informational injury," which "can arise from a statute (such as FOIA or FACA) that aims to provide information to the public and then clearly creates a right to such information." *US Inventor Inc. v. Vidal*, No. 21-40601, 2022 WL 4595001, at *7 (5th Cir. Sept. 30, 2022) (per curiam) (unpublished). Standing to support an "informational injury" requires, at a minimum, a plaintiff's failure to obtain information "despite his search for such reports." *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 429 (5th Cir. 2013). The informational injury doctrine is implicated by 5 U.S.C. § 552(g), as the statute requires the head of each agency to "prepare and make available for public inspection . . . reference material or a guide for requesting records or information from the agency." Whether Huddleston's alleged informational injury is sufficient to confer standing upon a party to bring a prospective "policy-or-practice" claim depends upon the Court's jurisdiction under Article III.

To that end, the Court will utilize the standing test outlined by the Ninth Circuit in *Hajro* to assess Huddleston's policy-or-practice claims, and examine the case to determine whether Huddleston has sufficiently alleged: "(1) the agency's FOIA violation was not merely an isolated incident, (2) the plaintiff was personally harmed by the alleged policy, and (3) the plaintiff himself has a sufficient likelihood of future harm by the policy or practice." 811 F.3d at 1103. "For the purposes of [the] standing inquiry, [this Court] simply review[s] whether the plaintiff asserted that

13

the federal agency has a pattern or practice of violating FOIA" and supported his assertion with specific facts beyond "mere allegations." *Id.* at 1103–04 (internal quotation marks omitted) (quoting *Lujan*, 504 U.S. at 561). Under the relevant standard, the Court spots a glaring issue with Huddleston's claim: speculation.

Even as applied to prospective policy-and-practice claims, the "informational injury" analysis cannot resolve Huddleston's standing issue in his favor, as his personal injury is purely speculative. *See, e.g.*, *Pub. Int. Legal Found., Inc. v. Nago*, No. CV 23-00389 LEK-WRP, 2024 WL 3233994, at *5 (D. Haw. June 28, 2024) ("[T]he informational injury doctrine is not directly applicable, because Plaintiff has yet to be denied information."), *judgment entered*, No. CV 23-00389 LEK-WRP, 2024 WL 4606088 (D. Haw. Oct. 29, 2024), *aff'd on other grounds*, 174 F.4th 664 (9th Cir. 2026). Indeed, the Supplemental Complaint contains no factual allegations pertaining to Huddleston's inability to obtain any information covered by 5 U.S.C. § 552(g). It also critically fails to allege that Huddleston has submitted any request for information pertaining to the 5 U.S.C. § 552(g) claim, or that Huddleston was unable to obtain information under the statute as a result of the FBI's policies or practices. And, unlike the plaintiffs in *Biological Diversity*, Huddleson has not gone so far as to allege that he was unable to find the relevant information "despite his search" for the same. 704 F.3d at 429. Rather, the Supplemental Complaint alleges only that "Plaintiff's Counsel sent a letter to Michael G. Seidel, Chief of the FBI's Records / Information Dissemination Section" and that the response was deemed unsatisfactory by the requester in light of the requester's interpretation of caselaw (Dkt. #114 at p. 2). The letter in its entirety reads as follows:

> I recently became aware of *Pub. Citizen, Inc. v. Lew*, 127 F. Supp. 2d 1, 19–20 (D.D.C. 2000), which appears to require the FBI to index its email systems pursuant to 5 USC § 552(g). I request the opportunity to view all of the information described in § 552(g), as permitted by the subsection itself.

(Dkt. #114-1).

By its terms, the request does not mention Huddleston or any fact pertaining to this case, and the requester does not claim or otherwise indicate that he is acting in a representative capacity (Dkt. #114-1). As a result, the Court finds that Huddleston has not sufficiently alleged, through his Supplemental Complaint, that he has personally suffered any injury in fact sufficient to satisfy the Court's standing analysis pertaining to his 5 U.S.C. § 552(g) claim. The Court's holding is further supported by *Nat'l Sec. Couns. v. C.I.A.*, 898 F. Supp. 2d 233, 263 (D.D.C. 2012), *aff'd*, 969 F.3d 406 (D.C. Cir. 2020). In that case, a district court analyzed a plaintiff's "pattern or practice" claim that the CIA had violated FOIA by "refus[ing] to provide estimated dates of completion" for certain requests. *Id.* at 263. The district court found that because "[t]he plaintiff cites requests filed by non-parties" rather than itself, "the plaintiff has not alleged that it has been subject to the . . . policy that it seeks to challenge." *Id.* The district court subsequently dismissed the claim, holding that "[w]ithout an allegation that the plaintiff itself has been subject to the [relevant policy], the plaintiff has no standing to bring its claim challenging that policy." *Id.*

In this case, the Supplemental Complaint fails to even generally allege that Huddleston first sought or that Huddleston did not ultimately receive information as required by 5 U.S.C. § 552(g). At its best, the pleading offers only the vague assertion that "the FBI is not disclosing all of its major information systems as required" (Dkt. #114 at p. 3). As such, Huddleston has not alleged that he himself has been subject to the purported "policy-or-practice" of the FBI's violation of 5

15

U.S.C. § 552(g). In the face of an Article III analysis, this showing simply will not do.[5] *See generally Razzoli v. US Att'y Exec. Off.*, No. 21-CV-4138 (LTS), 2021 WL 4254996, at *3 (S.D.N.Y. Sept. 17, 2021) (finding that a plaintiff's § 552(g) claim must be dismissed because his "allegations d[id] not show that he made a request to a federal agency for documents"). As a result, the Court finds that Huddleston does not have standing to bring his 5 U.S.C. § 552(g) claim.

### 2.   Huddleston's attempted transfer to Miller

The Court cannot rest on its determination that Huddleston does not possess standing to bring the two claims identified above. Instead, the Court has been asked by both parties to determine whether Miller, as a third party, has standing to possess the same.

Huddleston proposes that, "[f]or a claim seeking only prospective relief . . . the relevant injury is the injury of the party who now holds the claim and who will be subject to the challenged policy going forward" (Dkt. #247). Huddleston argues that he successfully transferred his FOIA interest to Miller before the Court granted the filing of his Second Amended Complaint, and that Miller's future FOIA requests therefore satisfy Huddleston's standing to continue bringing his policy-or-practice claims (*See* Dkt. #226 at p. 7). The FBI, on the other hand, does not go so far as to challenge the transfer of interest, but argues that "[t]he assignment did not take place prior to Huddleston filing the Supplemental Complaint on April 10, 2023. Therefore, only Huddleston is

---

[5]   To the extent that Plaintiff believes the § 552(g) request identified by the letter pertains to him, the Court cannot agree. The FOIA request number assigned to the letter, FOIA Request No. 1563998-000, is not associated with any of Huddleston's FOIA requests (*Compare* Dkt. #114-2 *with* Dkt. #227-1 at p. 3). Furthermore, the requester followed up with an additional letter, noting that he was either requesting it personally or requesting the information "[o]n behalf of The Transparency Project," and asked the FBI to "please consider this a request submitted on behalf of The Transparency Project for all information described in § 552(g)" (Dkt. #240-1 at p. 2). The Supplemental Complaint controls, and while an attorney's request made on a client's behalf is the client's request, the Court will not blindly assume, absent sufficient allegations or evidence to the contrary, that any given request was made on another's behalf. *See The Haskell Co. v. Dep't of Justice*, No. 05–CV–1110, 2006 WL 627156, at *2 (D.D.C. Mar. 13, 2006) (dismissing case for lack of standing because FOIA request was "submitted solely by" plaintiff's attorney and plaintiff was "not the real party in interest").

relevant to the question of standing" (Dkt. #227 at p. 3). Thus, the Court has been called to determine whether Huddleston's purported transfer of interest to Miller modifies its standing analysis regarding the policy-and-practice claims.

To simplify the Court's review, the Court offers the following procedural recounting: on April 8, 2023, Plaintiff filed a motion for leave to file the relevant Supplemental Complaint (Dkt. #113). Two days later, on April 10, 2023, Plaintiff filed his Supplemental Complaint, which contained the two relevant policy-or-practice claims (Dkt. #114). On June 24, 2024, Plaintiff purportedly transferred his interest in this FOIA action to Miller (*See* Dkt. #226 at p. 8). On July 5, 2024, Plaintiff filed his motion to substitute Miller (Dkt. #164). On July 15, 2024, the Court granted Plaintiff's motion for leave to file his Supplemental Complaint (Dkt. #166). On June 12, 2025, the Court denied Plaintiff's motion to substitute parties and declined to expressly rule on the effect of the transfer (Dkt. #204). On March 24, 2026, the Court found that Plaintiff had standing despite his "purported transfer" consistent with Rule 25(c) (Dkt. #214).

In the Court's view, repeated emphasis on the relation-back doctrine and the precise timing of the filing of the Supplemental Complaint misses the crux of the issue. Even assuming *arguendo* that Huddleston assigned his FOIA interest to Miller before the Supplemental Complaint was deemed filed and that this case has been proceeding directly under Rule 25(c) (as previously contemplated by this Court), a valid assignment provides the assignee only "standing to assert the injury in fact suffered by the assignor." *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000). The Fifth Circuit has recognized that "an assignee takes all of the rights of the assignor, no greater and no less." *FDIC v. McFarland*, 243 F.3d 876, 887 n.42 (5th Cir. 2001) (internal quotation marks omitted) (quoting *In re New Haven Projects Ltd. Liab. Co. v. City of New Haven*, 225

17

F.3d 283, 290 n.4 (2d Cir. 2000)). Thus, "an assignee . . . stands in the same position as its assignor stood." *Houk v. Comm'r*, 173 F.2d 821, 825 (5th Cir. 1949) (citations omitted). The Supplemental Complaint, and the accompanying policy-or-practice claims, are expressly limited to injuries suffered by "Plaintiff Brian Huddleston" (Dkt. #114 at p. 1). Under the Court's present assumption, it was the interest related to these specific injuries that Miller received as an assignee—he received Huddleston's FOIA interest, "no greater and no less." *McFarland*, 243 F.3d at 887 n.42. As a result, Miller received Huddleston's prospective right to be free from future FOIA violations according to Huddleston's FOIA requests, as opposed to his own.

In the absence of Miller's substitution or any express ruling on the legal effect of Huddleston's purported transfer of interest, the Court declines to enlarge the scope of Huddleston's FOIA interest with reference to a third-party potential assignee. *See, e.g.*, *Feinman v. F.B.I.*, 680 F. Supp. 2d 169, 175 (D.D.C. 2010) (denying an attempted assignment of a FOIA interest, as "[u]nlike previous cases where the plaintiff claims to act on behalf of the original requestor, [the alleged assignee] purports to act in her own right."). Huddleston has not clearly indicated why any injury sustained by a non-substituted third party (Miller) should weigh on the Article III requirement that "[o]ne who seeks to initiate or continue proceedings in federal court must demonstrate . . . standing to obtain the relief requested." *Bond v. United States*, 564 U.S. 211, 217 (2011). While the Supreme Court has previously held that "the assignee of a claim has standing to assert the injury in fact suffered by the assignor," the opposite is not necessarily true. *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 286 (2008). In other words, while Miller might be able to bring his own FOIA claim against the FBI's policies or practices in federal court,

18

this fact alone does not assist the Court in determining whether Huddleston has provided enough evidence to show the same.

The justiciability aspect of standing also weighs against Huddleston's ability to bring multiple claims on account of injuries suffered by a third-party potential assignee. "Even if a court determines that the litigant has satisfied the constitutional aspects of standing, it must also consider whether any prudential limitations restrain it from exercising its judicial power." *Mugworld, Inc. v. G.G. Marck & Assocs., Inc.*, 563 F. Supp. 2d 659, 664 (E.D. Tex. 2007), *aff'd*, 351 F. App'x 885 (5th Cir. 2009). One such limitation includes "whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties." *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 363 (5th Cir. 1999). As a result, the standing doctrine boasts a "general prohibition on a litigant's raising another person's legal rights." *Allen v. Wright*, 468 U.S. 737, 751 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). Under this analysis, Huddleston's injuries relate to his interactions under FOIA, which are distinct from any injury suffered by Miller on account of his own personal interactions with the same statute.

Importantly, neither this Court nor the Fifth Circuit has determined whether a plaintiff's interest in a FOIA action can ever be successfully transferred from one individual to another, much less whether Huddleston succeeded in transferring his interest to Miller. *See Huddleston*, 2025 WL 1668214, at *2 n.3; *Huddleston*, 2026 WL 810772, at *3; *see also* 7C WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1958 (3d ed. 2026) ("The most significant feature of Rule 25(c) is that it does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party . . . ."). The absence of a concrete ruling on assignment

offers an additional reason for the Court to refuse to conflate the injuries suffered by Huddleston and Miller in the relevant injury-in-fact analysis—Huddleston's right to be free from the alleged future injury associated with his FOIA requests remains separate from Miller's right to the same under his own FOIA requests, regardless of whether the purported assignment was successful. Despite the Court's prior reference of Rule 25 as a procedural stopgap, the answer to the Court's rhetorical question—"*who is the Plaintiff?*"—can ultimately be found in the margins of the case style, and does not work to revive Plaintiff's policy-or-practice claims.

### 3.      Huddleston's attempted class certification

Plaintiff's last-minute attempt at class certification does not change this Court's holding. Plaintiff's Amended Complaint and Supplemental Complaint were not initially "brought as a class action," and "Plaintiff's arguments regarding class certification are a non-starter because he lost standing [over the claims], and the Court lost jurisdiction [over the claims], before he initiated his class efforts" in his recent sur-reply. *Frascogna v. Sec. Check, LLC*, No. CIV.A. 3:07CV686DPJJ, 2009 WL 57102, at *4 (S.D. Miss. Jan. 7, 2009). Not only that, but the Court has little basis to find that any proposed class-action complaint would actually "benefit the original plaintiff" given the absence of any allegations pertaining to future FOIA filings. *Summit Off. Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1282, 1284 (5th Cir. 1981) ("A pleading which abandons the original plaintiff and class and asserts new claims upon which the original plaintiff and class could not recover, has the characteristics of a new lawsuit rather than an amended complaint."). Because even the "[i]nclusion of class action allegations in a complaint does not relieve a plaintiff of himself meeting the requirements for constitutional standing," the Court finds that Plaintiff has not made a sufficient showing of his standing to bring the claims contained in his Supplemental Complaint. *Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. 1981).

### B.      Procedural Update

To summarize, the Court previously denied Plaintiff's request to substitute Miller "at this time" and continued the case in accordance with the purpose of Rule 25(c), which states that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." FED. R. CIV. P. 25(c); *Huddleston*, 2025 WL 1668214, at *2. Given the lack of any express challenge to the purported assignment of Huddleston's FOIA interest, the Court did not determine whether such assignment in this FOIA case "should ever be allowed." *Huddleston*, 2025 WL 1668214, at *2 n.3; *Tex. v. Am. Tobacco Co.*, No. 5:96-CV-00091-JRG, 2019 WL 13219407, at *2 (E.D. Tex. May 22, 2019) ("[A] preliminary determination that an interest has been transferred for Rule 25 purposes does not constitute a decision on the merits or otherwise affect the legal relationship between the parties."). This litigation has continued, and the proverbial "can" of assignment has been "kicked down the road" for around one year, up until the Court was recently met with the obligation to re-evaluate Plaintiff's Article III standing as to each claim in his Supplemental Complaint, as "standing is not dispensed in gross." *Fontenot v. McCraw*, 777 F.3d 741, 746 (5th Cir. 2015). In fulfilling this obligation, the Court presently determined that Huddleston's injuries, as identified by the Supplemental Complaint, were insufficient to confer constitutional standing to bring his policy-or-practice claims under the relevant caselaw, including the D.C. and Ninth Circuit Court of Appeals. The Court has now elected to dismiss Plaintiff's claims without prejudice and declare the FBI's motion for protective order moot.

In one of the many filings associated with the present Motion, Plaintiff noted that "Plaintiff remains ready to substitute or join Mr. Miller should the Court find that step appropriate" (Dkt. #235 at p. 7). While Rule 25(c) permits a district court to, "on motion, order[] the transferee

to be substituted in the action or joined with the original party," the Court declines to do so in the absence of briefing addressing the effect of Plaintiff's purported transfer of interest and an updated consideration of the standards previously identified by this Court in *Huddleston*, 2025 WL 1668214, at *2. FED. R. CIV. P. 25(c). Whether this case must continue to proceed with reference to the lenient Rule 25(c) standard remains to be seen—the Court finds that, for now, the weight of substitution and transfer falls on the parties, and either party remains invited to address any relevant concern as they deem appropriate under the Federal Rules of Civil Procedure moving forward.

## CONCLUSION

It is therefore **ORDERED** that that Plaintiff's claim, located in his Supplemental Complaint, that "[t]he FBI's 'Digital Evidence Policy Guide' violates 5 U.S.C. § 552(a)(3) insofar as it purports to declare that a record is not a record" (Dkt. #114 at ¶ 7) is hereby **DISMISSED without prejudice** for want of standing.

It is further **ORDERED** that Plaintiff's claim, located in his Supplemental Complaint, that "[t]he FBI is in violation of 5 U.S.C. § 552(g) because it fails to disclose all of its major information systems" (Dkt. #114 at ¶ 8) is hereby **DISMISSED without prejudice** for want of standing.

It is further **ORDERED** that Defendant Federal Bureau of Investigation's Motion for Protective Order (Dkt. #217) is hereby **DENIED as moot**.

**IT IS SO ORDERED.**
**SIGNED this 14th day of August, 2026.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE