**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| BRIAN HUDDLESTON,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION and UNITED STATES DEPARTMENT OF JUSTICE,<br><br>Defendants. | CIVIL ACTION No. 4:20CV447<br><br>JUDGE AMOS MAZZANT |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR APPOINTMENT OF A SPECIAL MASTER**

Plaintiff asks the Court to appoint a special master to undertake an extensive independent investigation into virtually every aspect of FBI's response to his Freedom of Information Act ("FOIA") requests. His proposal would authorize a third party to examine all withheld records, review the forensic images of Seth Rich's laptops, attempt to repair files that could not be opened, investigate multiple FBI case files and classified repositories, direct new searches across numerous record systems, question FBI personnel under oath, authorize discovery, ultimately recommend factual findings and legal conclusions for the Court's review in an attempt to redo the work of this Court for the past six years. Doc 258, at 11–13. The Motion should be denied because Plaintiff cannot show that the matters he proposed to refer "cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(C).

The reality is that the Motion is merely a repackaging of arguments that he has previously made—and some that are *pending*—into a new form. The Motion rehashes Plaintiff's disagreements with the Court's past rulings concerning the FBI's searches, declarations, and withholdings as grounds for appointing a special master to conduct a parallel investigation of the

issues in this case. But Plaintiff's disagreements are just that—disagreements regarding the very issues that Courts resolve in all FOIA cases. In fact, many of the issues Plaintiff raises are currently the subject of fully-briefed cross-motions for summary judgment. Doc. 225, 237, 246, 255.[1]

The Court therefore has the FBI's declarations, evidence, the *Vaughn* indices, Plaintiff's objections and competing evidence, and the Parties' briefing. If, after considering that record, the Court decides that the FBI failed to carry its burden concerning a particular search or withholding, the Court can remedy that issue with traditional FOIA tools. It can deny summary judgment, order a supplemental declaration or further search, order a more particularized explanation, or conduct targeted *in camera* review. The possibility that the Court may find that the FBI did not carry its burden does not establish that a special master is necessary to preemptively evaluate all issues.

The contrary approach Plaintiff proposes would dramatically alter FOIA litigation. FOIA requests to the FBI frequently involve large productions, classified or sensitive records, complex systems and disagreements regarding the adequacy of the agency's search, withholdings, and declarations supporting its efforts. If those characteristics—the same characteristics underpinning the Motion—are sufficient to warrant a special master, it would flip the Advisory Committee's admonishment on its head and make special masters the rule rather than the exception. Perhaps this is what the Plaintiff wants, but it is not what the rules provide.

Plaintiff's reliance on *Loper Bright v. Raimondo*, 603 U.S. 369 (2024) does not support his request for a special master. *Loper Bright* addressed judicial deference to federal agency's interpretations of statutes during rulemaking. It did not consider—let alone eliminate—the

---

[1] Plaintiff's separate motion for reconsideration, Doc. 257, likewise asks the Court to revisit its prior search-adequacy rulings, and practically every other substantive ruling in this case, purportedly due to newly released records and an intervening United States Supreme Court decision. Plaintiff incorporates much of that motion into his request for a special master.

established jurisprudence regarding agency declarations in FOIA cases. The Motion fails to offer any cases that extend *Loper Bright* to FOIA and fails to distinguish cases that have rejected such an expansion. But even if it did alter the weight afforded agency declarations, that would merely affect whether the FBI carried its burden under the FOIA. It would not justify appointing a special master to investigate the agency's responses.

Ultimately, Plaintiff has failed to identify a discrete issue that the Court cannot effectively and timely resolve through ordinary judicial procedures. Much like the motion to reconsider, where Plaintiff demands the Court reconsider virtually everything, here he demands a special master to review "everything." This type of broad parallel proceeding is not contemplated by the FOIA and not consistent with Rule 53(a)(1)(C). The Motion should be denied.

## ARGUMENT

### I. Plaintiff cannot satisfy Rule 53(a)(1)(C)'s requirement that the matters he seeks to refer cannot be effectively and timely addressed by the Court.

Rule 53 governs the appointment and use of special masters in civil litigation. Fed. R. Civ. P. 53. Special masters are intended to aid the judge in performance of specific judicial duties as they may arise in a case and not to displace the court. *La Buy v. Howes Leather Co.*, 352 U.S. 249, 256 (1957). Reference to a special master should be the exception and not the rule. Fed. R. Civ. P. 53, advisory committee notes (2003) ("The core of the original Rule 53 remains, including its prescription that appointment of a master must be the exception and not the rule.").

Rule 53(a)(1) permits a district court to appoint a special master to: (1) "perform duties consented to by the parties;" (2) "hold trial proceedings and make recommended findings of fact on issues to be decided without a jury" when the appointment is warranted by "exceptional condition; or the need to perform an accounting or resolve a difficult computation of damages;" or (3) "address pretrial and posttrial matters that cannot be effectively and timely addressed by an

available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a). Plaintiff invokes the third category. That provision imposes its own substantial limitation: the matter must be one that "cannot be effectively and timely addressed by an available district judge or magistrate judge."

The Supreme Court has cautioned against transferring ordinary judicial responsibilities to special masters based on the complexity or burdens of litigation. The standard set forth in Subsection (C) is not satisfied merely because a case is complex, time-consuming, or involves a substantial record. In *LaBuy*, the Supreme Court rejected complexity, docket congestion, and the length of time to trial as sufficient reasons to transfer the adjudicative work of a case to a special master. 352 U.S. at 258–59. Although that case involved the "exceptional condition" ground for appointing a special master under an earlier version of Rule 53, those principles remain relevant to Rule 53(a)(1)(C), particularly given the Advisory Committee's notes that appointment should remain exceptional and appointment of a special master must not become a means for transferring the ordinary work of adjudication away from the judiciary. As the Advisory Committee emphasized in 2003, appointment of a master should remain "the exception and not the rule."

Plaintiff identifies three reasons that a special master is required in this case. Doc. 258, at 2–3. First, Plaintiff argues that the scale and technical character of his proposed review requires a special master's involvement, Second, Plaintiff argues that because the FBI's declarations should not be trusted, a special master should be appointed to undertake an extensive investigation of the records at issue in this case. Third, Plaintiff argues that other courts have employed additional judicial oversight, and the Court should similarly do so here. None of Plaintiff's arguments establishes that the matters before the Court in this case require the reference Plaintiff seeks.

**a. The volume and technical character of certain records do not establish that judicial review is inadequate to resolve the issues presented in this case.**

Plaintiff invokes the number of withheld and redacted pages, the length of the FBI's *Vaughn* indices, the two forensic laptop images, the existence of unreadable files, and the existence of multiple investigative records, some unrelated to his FOIA requests, as justification for the appointment he proposes. Doc. 258, at 2. These categories of record, however, do not establish that the Court cannot effectively and timely adjudicate the issues before it without a special master.

Consider the laptops. The issues surrounding the laptops are already the subject of cross-motions for summary judgment that have been extensively briefed and are currently pending before the Court. Doc. 225, 237, 246, 255. The Parties have addressed the FBI's processing of the laptop materials, including the files that were corrupted or could not be open, files that are not practically reviewable for purposes of the FOIA, and the various FOIA exemptions that justify the FBI's decision to withhold records responsive to Plaintiff's FOIA requests. *See id.* Plaintiff's disagreement with the FBI's explanations of its processing of the laptops and invocation of FOIA exemptions to withhold certain records presents issues that are commonly reviewed under the FOIA, it does not establish an independent justification for transferring the issues to a special master for consideration. The Court can, and should, evaluate those arguments and determine that the FBI has satisfied its statutory burden. If, however, the Court determines that the FBI has failed to present evidence sufficient to satisfy its burden under the FOIA, then there are common remedies available short of referral of a review of the entirety of the records underpinning this litigation to a special master. For instance, the Court could order supplemental declarations, review records *in camera*, or deny the FBI's motion for summary judgment. These are common tools courts regularly employ in FOIA litigation. A special master is unnecessary.

Plaintiff's reliance on the volume of withheld records suffers from the same fundamental flaw. FOIA expressly authorizes a Court to examine records *in camera* if necessary. 5 U.S.C. §

552(a)(4)(B). The Court possesses discretion to determine whether to seek such review, order supplemental declarations, and other procedures that are significantly more focused and targeted than referring the entire case to a special master to conduct a wide-ranging investigation.

Plaintiff's argument also confuses the scope of the examination he requests with the scope of the examination that would be necessary for the Court to resolve the issues presented in this case. By proposing a review encompassing virtually every withheld record, investigative file, and records system mentioned in this litigation, Plaintiff creates the volume of work that he simultaneously invokes as a justification for appointing a special master. Plaintiff's justification is inherently circular. Rule 53 does not permit a litigant to establish the need for a special master simply by defining the scope of the review sought so expansively that it would be burdensome for the Court—or anyone—to perform the review. And the purpose of agency declarations and *Vaughn* indices is to permit meaningful judicial review without requiring an examination of every withheld document in every case, which is what Plaintiff's proposed referral encompasses. *See Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C. Cir. 1973).

The D.C. Circuit rejected a similar special master request in litigation involving the FBI in *Meeropol v. Meese*, 790 F.2d 942 (D.C. Fir. 1986). The Court affirmed the district court's decision to retain direct supervision over the litigation involving thousands of pages of records. observing:

> If the master makes significant decisions without careful review by the trial judge, judicial authority is effectively delegated to an official who has not been appointed pursuant to article III of the Constitution; if the trial judge carefully reviews each decision made by the master, it is doubtful that judicial time or resources will have been conserved to any significant degree. We think the district court acted well within its discretion in maintaining direct personal supervision over this case, and we do not disturb its decision to do so.

*Meeropol* 790 F.2d at 961. The same concerns are present here, where Plaintiff proposes an expansive investigation followed by judicial review of the master's findings. At bottom, Plaintiff's reference to the volume of documents at issue does not support appointing a special master here.

**b. Plaintiff's challenges to the FBI's declarations do justify a special master.**

Plaintiff next contends that a special master is necessary because the FBI's declarations are not reliable. Plaintiff contends that because the FBI's declarations are not reliable, the Court therefore cannot resolve the Parties' disputes based on the existing record and therefore a special master is required to develop a sufficient evidentiary record to resolve the pending issues. Doc. 258, at 2, 8–10. Plaintiff's allegations concern, among other things, records maintained in restricted or prohibited status, the use of placeholder entries, purported limitations in the FBI's electronic search systems, and the status of an evidence-room search. Plaintiff argues that these matters demonstrate the need for independent examination of the FBI's representations.

The FBI disputes Plaintiff's characterization of the subsequently released materials and the inferences he draws from them. Those allegations, including issues relating to prohibited access and restricted access records, including their significant to the adequacy of the FBI's prior searches are extensively discussed in the FBI's response in opposition to Plaintiff's motion for reconsideration of the search-adequacy rulings. Doc. 257. The FBI incorporates those arguments by reference but does not repeat them herein because this issue presented in this Motion is more focused—whether Plaintiff's allegations regarding the unreliability of the FBI's declarations requires appointment of a special master. They do not.

Plaintiff's argument assumes that because he challenges the reliability of the FBI's declarations, the Court does not have the capacity to resolve the issues before it and a special master must be appointed to evaluate them. Of course, this is not the case. Courts routinely resolve issues where the parties dispute the credibility of witness statements. The Court has done so on

multiple occasions in *this very case*, notwithstanding Plaintiff's consistent accusation that the FBI cannot be trusted. The Court's ability to successfully complete these tasks is not surprising given that assessing the sufficiency of agency declarations, weighing the declarations against purportedly inconsistent evidence, and determining whether additional information or searches are warranted are familiar judicial responsibilities in FOIA litigation. The Court need not accept the FBI's representations uncritically. But it also need not appoint a special master simply because Plaintiff questions them. The Court can evaluate the competing submissions, determine whether the FBI has carried its burden, and direct any additional proceedings necessary to resolve the issues presented should it identify a deficiency. Plaintiff's allegations therefore do not establish that the Court lacks the means to scrutinize the FBI's representations. As most, they present disputed issues for the Court to resolve. And those disputes are already before the Court on the Parties' fully-briefed cross-motions for summary judgment. Plaintiff's identification of the disputes does not, without more, satisfy Rule 53(a)(1)(C).

**c. The authorities Plaintiff invokes do not establish that a special master is necessary for the resolution of this case.**

Plaintiff also attempts to justify a special master by pointing to other courts that have exercised additional judicial oversight in litigation, including appointing special masters. But the mere fact that Courts have the discretion to use a remedy and have done so in other cases, does not satisfy Plaintiff's burden under Rule 53(a)(1)(C) here.

Plaintiff principally relies on *Trentadue v. CIA*, No. 2:08-cv-0788 (D. Utah Apr. 30, 2015), Dkt. 249, in which the court appointed a special master following allegations of FBI witness tampering. But the circumstances of that appointment differ substantially from those presented here. In *Trentadue*, the court had conducted a bench trial, identified a specific evidentiary concern involving possible interference with a witness, held additional proceedings, and confronted the

FBI's failure to timely comply with an order directing an investigation and report. The appointment followed the court's own determination that further investigation was necessary to protect the integrity of its proceedings.

Plaintiff identifies no comparable judicial finding here. In this case, Plaintiff has already filed multiple motions accusing the FBI of bad faith. As a remedy, the Plaintiff has repeatedly sought discovery—which is generally not available in FOIA actions—sought to examine FBI witnesses, and sought to hold both the FBI and its declarants in contempt of court. *See* Doc. 174, at 9; Doc. 68 at 12; Doc 46, at 6; Doc. 217, at 7. In each instance, following the Court rejected Plaintiff's arguments. Thus, this lacks a similar predicate to that presented in *Trentadue.* Lacking that predicate, Plaintiff asks for a special master to be appointed based on his interpretation of records and allegations regarding the FBI's prior representations. Those allegations are disputed and do not establish the need for an investigative process authorized in *Trentadue*.

Plaintiff's remaining authorities likewise do not support the particular relief requested. In *Electronic Privacy Information Center v. Department of Justice*, 442 F. Supp. 3d 37 (D.D.C. 2020), the court employed in camera review—an established mechanism authorized by FOIA. This shows that traditional FOIA tools are available to the Court to resolve any issues it identifies when evaluating the Parties' cross-motions for summary judgment without resorting to a special master.

And the *Judicial Watch v. Department of Commerce* litigation involved findings that the Department of Commerce, among other things, destroyed documents to thwart the FOIA. 34 F.Supp.2d 47, 48–49 (D.D.C. 1998). Even there, the court did not appoint a special master. And there is no evidence in this case of bad faith, let alone an effort to thwart the FOIA. . These cases do not establish that this case requires the comprehensive reference Plaintiff proposes.

## II. The Court can apply FOIA's *de novo* review standard without appointing a special master. *Loper Bright* does not compel otherwise.

Plaintiff separately argues that FOIA's requirement that the Court perform a *de novo* judicial review, especially in light of *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), supports appointment of a special master. Doc 258, at 4–8. The argument conflates FOIA's standard governing judicial review with the procedures available to conduct the review.

FOIA provides that the Court should resolve the matter *de novo*, may examine agency records *in camera*, and must place the burden on the agency to sustain its actions. 5 U.S.C. § 552(a)(4)(B). But nothing in FOIA prescribes a particular way the Court has to carry out that review. More to the point, nothing in the FOIA requires the Court to conduct a comprehensive independent examination of every withheld record or to delegate the examination to a special master whenever challenges the agency's declarations are challenged. Rather, FOIA provides the Court tools, such as *in camera* review, while leaving the use of those tools to the court's discretion.

*Loper Bright* also does not support Plaintiff's argument. *Loper Bright* did not address the presumption of good faith regularly afforded agency declarations in FOIA litigation. Indeed, District Judge Sean Jordan has previously rejected an attempt to invoke *Loper Bright* in a FOIA case where neither the Government nor the Magistrate Judge relied on *Chevron* deference. In *Ivanovskis v. Fed. Bureau of Investigation*, No. 4:23-cv-531-SDJ, 2025 WL 2778978 (E.D. Tex. Sept. 29, 2025), Judge Jordan explained *Loper Bright* formally overturned *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), and "'eliminated the 'judicial invention' of deference to administrative action and rulemaking,'" *Ivanovskis*, 2025 WL 2778978, at *1 (quoting *Van Loon v. Dep't of the Treasury*, 122 F.4th 549, 562 (5th Cir. 2024)). The court found that *Loper Bright* was inapplicable because the Government did not ask for, and the Magistrate Judge did not apply, *Chevron* deference. *Id.; see also Stevens v. United States Customs and Border Protection*, No. 25-c-2719, 2026 WL 2056856, *4 (N.D. Ill. July 16, 2026); *Brodsky v. FBI*, No. 24-2619,

2025 WL 1983885, *1 n.2 (7th Cir. July 17, 2025) ("[*Loper Bright*] has no applicability to the weight accorded to declarations made by agency officials in a FOIA case."). *Loper Bright* does not tip the scale in favor of appointing a special master.

Plaintiff attempts to distinguish *Brodsky* and *Stevens* on the ground that the cases merely rejected a challenge to the presumption "at large," and without a contradiction in the record. Doc. 258, at 6. But Plaintiff's distinction is both legally immaterial and factually incorrect. The Plaintiff in *Stevens* expressly alleged that CBP's declarant had submitted sworn declarations in other FOIA cases that contradicted his declaration in that litigation in material and significant ways. She argued that CBP's declarations "include sworn statements that, in material and significant ways, [the declarant's] declaration in [that] matter." *Stevens v. U.S. Customs & Border Protection*, Case No. 25-cv-2719, Dkt. No. 43, at 5 (N.D. Ill). Indeed, the *Stevens* court expressly acknowledged the plaintiff's reliance on declarations that Howard submitted in other FOIA. *Stevens*, 2026 WL 2056856, at *5. Nevertheless, the court rejected plaintiff's contention that *Loper Bright* displaced the presumption of good faith applicable to agency declarations. *Id.* at *4. The distinction Plaintiff attempts to draw, therefore, does not undermine *Stevens.* Whether evidence contradicts a specific declaration is separate, inquiry that courts remain fully capable of resolving under established FOIA principles. And *Stevens* demonstrates precisely that point: notwithstanding the court's rejection of plaintiff's *Loper Bright* theory, the court independently scrutinized the agency's evidence, identified deficiencies, and ordered targeted relief. *Id.* at *6–12. Plaintiff's allegations of contradictions here may bear on the sufficiency of the FBI's evidence, but they do not, even after *Loper Bright*, change the governing legal principles or mandate referral to a special master.

**III. The scope of the proposed reference would create an expansive investigation that is unnecessary to resolve this case.**

The breadth of Plaintiff's proposed reference provides an additional reason to deny the Motion. Plaintiff does not seek the appointment of a special master to resolve a narrowly identified technical or evidentiary issue. Instead, he proposes an examination that would reach nearly every aspect of the FBI's response to his FOIA requests. Doc. 258 at 11–13.

Under Plaintiff's proposal, the special master would conduct a *de novo* examination of all withheld and redacted records, review the forensic images of both laptops, and direct efforts to repair unreadable files. The master would also examine multiple investigative case files, including physical materials maintained in restricted facilities, and determine whether those files contain responsive records. Beyond document review, the master would search or supervise searches of the FBI's electronic systems, examine the adequacy of prior searches, investigate records maintained under special access restrictions, and pursue additional investigative leads. Finally, the master would be empowered to compel testimony, obtain documents, and authorize discovery.

The request is also problematic considering the Court's prior rulings. Throughout the litigation, Plaintiff attempted to obtain discovery from the FBI. He has alleged the FBI has acted in bad faith and purposely concealed the existence of documents responsive to his FOIA requests. Doc. No. 58. The Court has reiterated the general principal that discovery in FOIA cases is rare and that court should "only order it 'where there is evidence—either in the affidavit state or (in rarer cases) before—that the agency acted in bad faith concerning the search.'" Doc. 174, at 9. Applying this principal, the Court has consistently rejected Plaintiff's allegations of bad faith and requests for discovery. *Id.*; Doc. 68 at 12; Doc 46, at 6; Doc. 217, at 7. Plaintiff's repackaging the arguments in a motion to have a special master appointed do not make them more convincing.

These proposed responsibilities extend well beyond assisting the Court with a discrete issue requiring specialized attention. They would establish a parallel investigative process in which the

special master could revisit previously litigated matters, direct additional searches, investigate new leads, and authorize discovery based on information uncovered during the reference. Plaintiff provides no persuasive explanation why this extraordinary breadth is necessary to resolve the specific disputes pending before the Court.

Nor does Rule 53(c), which defines the authority a properly appointed master may exercise, independently justify such an assignment. The availability of investigative or evidentiary powers following a valid appointment does not eliminate the threshold requirement of Rule 53(a)(1)(C). Plaintiff must first demonstrate why the matters proposed for reference cannot be effectively and timely addressed by the Court or an available magistrate judge. He has not done so.

The proposed reference is particularly problematic to the extent it would authorize an open-ended inquiry into investigative files and records systems based on Plaintiff's belief that additional responsive materials might exist. FOIA requires agencies to conduct reasonable searches for responsive records; it does not authorize unlimited discovery into agency operations merely because a requester remains dissatisfied with the results. The Court can evaluate specific challenges to the adequacy of the FBI's searches and order additional searches if warranted. But Plaintiff's proposal would effectively reverse that sequence, authorizing an extensive investigation before the Court has determined that such relief is necessary.

Similarly, Plaintiff proposes that the master examine whether the FBI's previously asserted withholdings remain justified in light of subsequent declassifications or disclosures. Such questions, to the extent properly presented, can be addressed through the Court's consideration of the applicable record and any appropriate motions. They do not require delegating a wholesale reconsideration of every exemption determination to a special master.

The FBI does not suggest that Rule 53 categorically prohibits special masters from performing investigative tasks. Rather, the concern is that Plaintiff proposes to use the Rule to create an expansive inquiry without first establishing the necessity of that inquiry or identifying a sufficiently confined assignment that the Court cannot perform effectively and timely. Appointment under those circumstances would risk substantially increasing the cost, complexity, and duration of this already lengthy litigation.

**IV. The FBI did not consent to appointment of a special master.**

Despite acknowledging the Motion is opposed, Doc. 258, at 15, Plaintiff argues that the FBI cannot oppose this Motion. This is not the first time Plaintiff has made this argument, which Defendant has already addressed. *See* Doc. 255. As explained in the FBI's combined reply in support of its cross-motion for summary judgment and sur-reply in opposition to Plaintiff's motion for summary judgment, Plaintiff's motion for summary judgment only referenced a special master as alternative relief and did not invoke Rule 53 or present a separate motion for appointment of a special master. Doc. 225, at 21–27. The FBI opposed the motion for summary judgment in its entirety, asking the Court to deny the motion and grant the FBI's motion for summary judgment. Doc. 237, at 32. Plaintiff later represented that he would file a separate motion for appointment of a special master, Doc. 246, at 29, but then elected not to do so, Doc. 252. Therefore, notion the FBI did not oppose appointing a special master is wrong. This is the first time the Plaintiff has invoked Rule 53 to seek a master to be appointed, and it is opposed.

**V. The proposed qualifications and cost allocation wrongly assume a special master should be appointed and cannot cure Plaintiff's failure to establish a basis for the appointment.**

Plaintiff's proposal regarding the special master's qualifications and an allocation of costs assumes the Court will appoint a special master, but as explained above, Plaintiff has failed to carry his burden under Rule 53. Plaintiff proposes that the special master be an attorney or former

judicial officer eligible for a Top Secret/SCI security clearance, with authority to retain a digital-forensics expert. Doc 258 at 13. But a proposed master's qualifications do not establish the necessity of an appointment. Nor does the possibility of obtaining security clearances resolve whether the contemplated examination, including the review of classified or otherwise protected material, is warranted in the first place.

Plaintiff also requests that the costs of the special master and any retained expert be assessed against Defendants. *Id.* at 13–14. Rule 53(a)(3) requires the Court to consider the fairness of imposing the likely expenses of a master and to protect against unreasonable expense or delay. Rule 53(g)(3) identifies factors governing the allocation of compensation. Plaintiff's proposal contemplates extensive document review, technical analysis, classified-material procedures, additional searches, and potentially substantial discovery. Those responsibilities would entail considerable expense and delay, particularly where their scope could expand as additional investigative leads are identified. Plaintiff's contention that Defendants should bear those costs rests on the same disputed allegations that he invokes to justify appointment and does not relieve him of the obligation to demonstrate that the reference is necessary. It is also inconsistent with the record in this case. As the Court is aware, Plaintiff has continuously accused the FBI of bad faith and sought remedies as a result of the purported "bad faith" including discovery, testimony from agency officials, and to hold the FBI and its officials in contemp. The Court has rejected each of these requests. Therefore, given the lack of any prior finding of bad faith, the fact Plaintiff has not satisfied his burden here, and given the overly broad scope of the referral Plaintiff has requested, Plaintiff should be required to bear any costs associated with the referral he seeks.

## **CONCLUSION**

The Court should deny Plaintiff's Motion for Appointment of Special Master.

Respectfully submitted,

JAY R. COMBS
UNITED STATES ATTORNEY

*/s/ James Gillingham*
JAMES GILLINGHAM
Assistant United States Attorney
Texas Bar No. 24065295
110 N. College Ave.; Suite 700
Tyler, Texas 75702
Tel: (903) 590-1400
Fax: (903) 590-1436
Email: James.Gillingham@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2026, a true and correct copy of the foregoing document was filed electronically with the court and has been sent to counsel of record via the court's electronic filing system.

*/s/ James Gillingham*
JAMES GILLINGHAM
Assistant United States Attorney